KING & SPALDING

1185 Avenue of the Americas
New York, NY 10036
www.kslaw.com

**Peter Isajiw**
Partner
Tel: +1 212 556 2235
Fax: +1 212 556 2222
pisajiw@kslaw.com

April 13, 2020

**VIA ECF**

The Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 705
New York, NY 10007

Re: *Emigrant Bank and Pacific Mercantile Bank v. SunTrust Bank, et al.*, No. 1:20-cv-02391 (S.D.N.Y.): Request for Pre-Motion Conference

Dear Judge Gardephe:

We represent Defendants Truist Bank and SunTrust Bank (collectively, for convenience, "SunTrust") and write pursuant to Rule IV.A of Your Honor's Individual Rules of Practice to request a pre-motion conference concerning Defendants' anticipated motion to dismiss all counts of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Defendants have conferred with Plaintiffs and have been advised that Plaintiffs intend to oppose the motion to dismiss, but Plaintiffs acknowledge Defendants' right to respond under Rule 12(b)(6).

The allegations in the Complaint relate to an Amended and Restated Revolving Credit and Term Loan Agreement dated July 9, 2015 (the "Credit Agreement," ECF 1-1), under which a group of sophisticated lenders (the "Lenders") loaned money to Our Alchemy, LLC ("Borrower"), an independent film and video distributor. SunTrust serves as the Administrative Agent under the Credit Agreement. SunTrust, Plaintiff Pacific Mercantile Bank ("PMB"), and non-party Preferred Bank were the original Lenders on the Credit Agreement, and Plaintiff Emigrant Bank ("Emigrant") became a Lender under the Credit Agreement pursuant to a Term Loan Joinder Agreement dated July 10, 2015 (ECF 1-4). The Credit Agreement was secured by a Guaranty and Security Agreement (ECF 1-2), executed by Calrissian L.P. ("Guarantor").

In 2016, Borrower defaulted on the Credit Agreement. On June 15, 2016, SunTrust, as Administrative Agent, exercised the remedy under the Credit Agreement to accelerate Borrower's outstanding debt of approximately $46 million and demand immediate payment from both Borrower and Guarantor. Borrower failed to repay the debt and subsequently filed for Chapter 7 bankruptcy protection. When Guarantor also failed to perform, SunTrust sued Guarantor in an action styled *SunTrust Bank v. Calrissian LP*, Index No. 654148/2016 (N.Y. Sup. Ct., N.Y. Cty.) (the "Guaranty Action"), seeking the entirety of Borrower's outstanding debt as damages from Guarantor. Guarantor subsequently filed for Chapter 11 bankruptcy protection in 2017, and its bankruptcy proceedings were converted into a Chapter 7 case in 2018. Guarantor's bankruptcy petition automatically stayed the proceedings in the Guaranty Action. On January 9, 2020, the

Bankruptcy Court for the District of Delaware entered an order closing the Guarantor's bankruptcy proceedings. On January 14, 2020, the court in the Guaranty Action lifted the stay, and the litigation has resumed.

On December 13, 2019, Plaintiffs demanded that SunTrust, as Administrative Agent, either (a) file a lawsuit against Virgo Investment Group, LLC—a non-party to the loan documents—or its unspecified affiliates (collectively, "Virgo"), seeking to hold Virgo liable for Borrower's debt and Guarantor's guaranty obligations based on theories of alter ego liability or principal-agent liability, or (b) face suit itself. SunTrust's former counsel responded by letter dated January 3, 2020, declining Plaintiffs' request and expressing concern that SunTrust had not seen information or evidence to support at least one element of Plaintiffs' theorized claim. However, SunTrust subsequently retained King & Spalding as counsel to further assess these and other issues. King & Spalding informed counsel for Plaintiffs of its retention and that SunTrust was actively evaluating potential claims against Virgo. Since then, SunTrust has been analyzing, and continues to analyze, whether it has a good-faith basis to assert such a claim, and has so advised counsel for Plaintiffs. In addition, SunTrust is exploring avenues for a potential recovery beyond those demanded by Plaintiffs. For example, SunTrust might be able to add a claim in the Guaranty Action against Guarantor's general partner, Virgo Service Company, LLC, to hold Virgo Service Company liable for Guarantor's partnership obligations pursuant to Delaware limited partnership law. At present, however, SunTrust cannot file anything in the Guaranty Action because the New York courts have prohibited non-essential filings due to the coronavirus pandemic. Once the New York courts resume normal operations, SunTrust intends to immediately resume prosecuting the Guaranty Action against Guarantor and, perhaps, its general partner, too.

On March 13, 2020, counsel for SunTrust updated counsel for Plaintiffs that SunTrust continued to analyze potential claims against Virgo and asked for additional time to make a final determination. Although the statute of limitations on a claim against Virgo does not expire until June 15, 2022 at the earliest, Plaintiffs nevertheless carried through on their demand and filed this lawsuit on March 18, 2020, seeking to hold SunTrust liable for failing to sue Virgo. Their Complaint fails for several reasons.

### A. Plaintiffs Fail to State a Claim That SunTrust Breached the Loan Documents.

In counts one and three of the Complaint, Plaintiffs contend that SunTrust breached the Credit Agreement, and therefore the Term Loan Joinder Agreement, by not suing Virgo.[1] Plaintiffs assert that they can require SunTrust to sue Virgo based on Section 8.1 of the Credit Agreement. That provision provides, in relevant part, that, in the event of a default:

> The Administrative Agent may, and upon the written request of the Required Lenders shall, ***by notice to the Borrower***, take any or all of the following actions, at the same or different times: (i) terminate the Commitments, whereupon the Commitment of each Lender shall terminate immediately, (ii) declare the principal of and any accrued interest on the Loans, and all other Obligations owing

[1] In the Term Loan Joinder Agreement, Plaintiff Emigrant agreed to be "subject to and bound by" the Credit Agreement, so all of the arguments based on the Credit Agreement apply to counts one (Breach of Contract–Credit Agreement) and three (Breach of Contract–Term Loan Joinder Agreement). (Term Loan Agreement, ¶ 3.)

> hereunder, to be, whereupon the same shall become, due and payable immediately, without presentment, demand, protest or other notice of any kind, all of which are hereby waived by the Borrower, (iii) exercise all remedies contained in any other Loan Document, and (iv) exercise any other remedies available at law or in equity[.]"

(Credit Agreement § 8.1) (emphasis added).

A plain reading of this language demonstrates that Section 8.1 authorizes the Required Lenders to demand that the Administrative Agent exercise only remedies that can be completed "by notice to the Borrower."[2] Because SunTrust cannot initiate a suit against a third-party like Virgo "by notice to the Borrower," Plaintiffs do not have a contractual right to demand that SunTrust sue Virgo. Any other result would render meaningless the phrase "by notice to the Borrower." *Contra God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*, 845 N.E.2d 1265, 1267 (N.Y. 2006) (A "contract should be read to give effect to all its provisions." (citation omitted)).[3]

Moreover, the Credit Agreement anticipates, and rejects, the broad reading of the Lenders' powers to obligate SunTrust to undertake the third-party collection efforts urged in the Complaint. Specifically, Section 9.2 of the Credit Agreement provides that the "Administrative Agent shall not have any . . . obligations except those expressly set forth in this Agreement and the other Loan Documents." Nothing in the Credit Agreement nor the other Loan Documents contains an explicit provision permitting the Required Lenders to force SunTrust to sue third parties as a "remedy." And even if the Credit Agreement did not foreclose Plaintiffs' attempt to impose such an implied obligation on SunTrust, any credit agreement that intends to foist such an extraordinary obligation on its administrative agent (and empower the lenders) ought to say so explicitly. That is especially true here, where an interpretation of Section 8.1 allowing Plaintiffs to compel SunTrust to sue non-parties to the loan documents based on undeveloped theories of liability would upend prevailing market practice in the orderly and efficient corporate loan market.

Accordingly, the Court should permit SunTrust to move to dismiss the first and third counts of the Complaint.

### B. Plaintiffs Fail to State a Claim for Breach of the Implied Covenant.

In addition, Plaintiffs' second cause of action, for breach of the implied covenant of good faith and fair dealing, fails for two reasons.

#### 1. <u>Plaintiffs Expressly Waived An Implied-Covenant Claim.</u>

A claim for breach of the implied covenant of good faith and fair dealing is a claim that a party has breached an implied duty under an existing contract. *See, e.g.*, *HSH Nordbank AG New York Branch v. Street*, 421 F. App'x 70, 73 (2d Cir. 2011) (referring to implied-covenant claim as

---

[2] Plaintiffs assert that they satisfy the conditions necessary to constitute the "Required Lenders."

[3] The Credit Agreement and the Term Loan Joinder Agreement are governed by New York law. (Credit Agreement § 10.5(a).)

a claim for breach of the "implied duty of good faith and fair dealing" and holding that administrative agent under a loan did not breach); *Soward v. Deutsche Bank AG*, 814 F. Supp. 2d 272, 285 (S.D.N.Y. 2011) (dismissing claim for breach of the "implied duty of good faith and fair dealing" under a credit agreement); *Beninati v. F.D.I.C.*, 55 F. Supp. 2d 141, 146 (E.D.N.Y. 1999) (referring to an implied-covenant claim as a "claim for breach of an implied duty").

Under New York law, parties can waive claims under the implied covenant of good faith and fair dealing in their contracts. *See Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, 2016 WL 1169515, at *10 (S.D.N.Y. Mar. 22, 2016) ("Every contract is assumed to incorporate a covenant of good faith and fair dealing unless such obligation is expressly disclaimed."); *Commerzbank AG v. U.S. Bank Nat'l Ass'n*, 277 F. Supp. 3d 483, 498 (S.D.N.Y. 2017) (enforcing contractual provision that "no implied covenants or obligations shall be read into this Agreement").

Here, the Credit Agreement expressly provides that "the Administrative Agent shall not have any duties or obligations except those expressly set forth in this Agreement and the other Loan Documents", and "[w]ithout limiting the foregoing . . . shall not be subject to any fiduciary or other implied duties, regardless of whether a Default or an Event of Default has occurred and is continuing . . . ." (Credit Agreement, § 9.2.) Accordingly, Plaintiffs' implied-covenant claim fails. *See Phoenix Light*, 2016 WL 1169515, at *10; *Commerzbank AG*, 277 F. Supp. 3d at 498.

2. <u>The Implied-Covenant Claim Should Be Dismissed As Redundant of the Breach-of-Contract Claim.</u>

"Under New York law, the same facts cannot give rise to both a claim for breach of contract and a claim for breach of implied duty of good faith and fair dealing." *Friedman v. Maspeth Fed. Loan & Sav. Ass'n*, 30 F. Supp. 3d 183, 195 (E.D.N.Y. 2014); *see also Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*, 70 A.D.3d 423, 426 (N.Y. App. Div., 1st Dep't 2010) ("The claim that defendants breached the implied covenant of good faith and fair dealing was properly dismissed as duplicative of the breach-of-contract claim, as both claims arise from the same facts and seek the identical damages for each alleged breach." (citation omitted)).

Here, Plaintiffs' implied-covenant claim is based on the very same facts, and alleges the very same damages, as their breach-of-contract claims. *Compare* ECF 1, at ¶¶ 92–98 *with id.* at ¶¶ 99–103. Accordingly, the second count of the Complaint also should be dismissed. *See Friedman*, 30 F. Supp. 3d at 195; *Amcan Holdings*, 70 A.D.3d at 426.

The Court should therefore permit SunTrust to move to dismiss the second count of the Complaint.

**C. Plaintiffs Fail to State a Claim for Damages on All Counts of the Complaint.**

Even if Plaintiffs could require SunTrust to sue Virgo under Section 8.1 or the implied covenant, they fail to state a claim for damages on all three counts of the Complaint.

1. <u>The Credit Agreement's Exculpatory Clause Bars Plaintiffs' Claim.</u>

Plaintiffs' claim for damages is barred by the contract's exculpatory provision. Section 9.2(c) of the Credit Agreement relieves SunTrust, as Administrative Agent, of all liability "in the

absence of its own gross negligence or willful misconduct." There are no allegations in the Complaint that SunTrust ever acted with gross negligence or that its actions amount to willful misconduct. Plaintiffs' claims therefore fail as a matter of law. *See Eaton Vance Management v Wilmington Sav Fund Soc., FSB*, No. 654397/2017, 2018 WL 1947405, at *5 (N.Y. Sup. Ct., N.Y. Cty. Apr. 25, 2018) (dismissing claim against administrative agent for, among other things, stipulating to dismiss a lawsuit about the propriety of certain contested transactions because "[n]either gross negligence nor willful misconduct are alleged" in the complaint); *see also Repsol, S.A. v The Bank of New York Mellon*, No. 652653/2012, 2014 WL 468910 (N.Y. Sup. Ct., N.Y. Cty. Feb. 04, 2014) (applying same exculpatory language and dismissing complaint because "the complaint contains only a conclusory assertion, and no factual allegations, that [the agent] acted in a 'grossly negligent' manner").

2. Plaintiffs Lack Damages Because Their Claim Is Not Ripe.

In addition, Plaintiffs have no damages because their claim is not ripe. The statute of limitations for a claim against Virgo does not expire until June 15, 2022 at the earliest. *See U.S. Bank Nat. Ass'n v. Dexia Real Estate Capital Markets*, 959 F. Supp. 2d 443, 448 (S.D.N.Y. 2013) (applying six-year statute of limitations to guaranty agreement). Accordingly, SunTrust can still sue Virgo and, as noted above, is actively considering whether to bring such an action against Virgo separately or in the Guaranty Action. Plaintiffs therefore cannot sustain a claim for damages. *Cf. Harz v. United States*, 711 F. Supp. 114, 118 n.2 (S.D.N.Y. 1989) ("[P]laintiffs cannot allege that plaintiff would have succeeded in the underlying action for the simple reason that the action remains viable and, indeed, plaintiffs may fully recover.").

* * *

In sum, Plaintiffs' Complaint fails to state a claim for numerous, independent reasons. Defendants therefore seek leave to move to dismiss the Complaint in its entirety.

Sincerely,

*/s/ Peter Isajiw*

Peter Isajiw

cc: All counsel via ECF