quinn emanuel trial lawyers | new york
51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7471**

WRITER'S EMAIL ADDRESS
**coreyworcester@quinnemanuel.com**

April 23, 2020

<u>**VIA ECF**</u>

The Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 2204
New York, NY 10007

Re:   <u>*Emigrant Bank and Pacific Mercantile Bank v. SunTrust Bank, et al.*, No. 1:20-cv-02391: Response to Defendants' Request for Pre-Motion Conference</u>

Dear Judge Gardephe:

  We represent Plaintiffs Emigrant Bank ("Emigrant") and Pacific Mercantile Bank ("PMB" and, together with Emigrant, "Plaintiffs") in the above-captioned matter. We write in response to the April 13, 2020 letter filed by Defendants SunTrust Bank and Truist Bank (together, "SunTrust") requesting a pre-motion conference relating to SunTrust's anticipated motion to dismiss (ECF 13). While Plaintiffs do not oppose SunTrust's request for a pre-motion conference, SunTrust's letter fails to establish any basis for a successful motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). SunTrust attempts to rewrite the contract, essentially absolving itself of express and implied contractual obligations while also declaring—erroneously—that it has no liability even if it intentionally breached the contract to secure a collateral benefit from Plaintiffs.

  As alleged in the Complaint, SunTrust served as the Administrative Agent under the Amended and Restated Revolving Credit and Term Loan Agreement dated July 9, 2015 (the "Credit Agreement," ECF 1-1). Pursuant to the Credit Agreement, SunTrust, Emigrant, PMB, and non-party Preferred Bank ("Lenders") lent approximately $46 million to borrower Our Alchemy, LLC ("Alchemy"). The loans were secured by a Guaranty and Security Agreement ("Guaranty Agreement," ECF 1-2), executed by Calrissian L.P. ("Calrissian") and SunTrust as Administrative Agent on behalf of the Lenders. The Complaint further alleges that Calrissian entered into the Guaranty Agreement as the agent and/or alter-ego of private investment firm Virgo Investment Group, LLC and its affiliates (collectively, "Virgo"). After Alchemy defaulted under the loan,

SunTrust accelerated the debt, and Alchemy filed for Chapter 7 bankruptcy protection on July 1, 2016. Calrissian filed for bankruptcy protection in 2017, but emerged from bankruptcy this year.

The Credit Agreement defines "Required Lenders" as "Lenders holding more than 50% of the aggregate outstanding Revolving Commitments and Term Loans." (ECF 1-1, § 1.1). Plaintiffs hold approximately 51.67% of that amount, and therefore constitute Required Lenders. Section 8.1 of the Credit Agreement states that if an "Event of Default" has occurred (such as Alchemy's bankruptcy, which is ongoing) and "upon the written request of the Required Lenders," SunTrust "*shall*, by notice to the Borrower, take any or all of the following actions: . . . (iii) exercise all remedies contained in any other Loan Document, and (iv) exercise any other remedies available at law or in equity[.]" (ECF 1-1, § 8.1) (emphasis added). The Credit Agreement also provides that only SunTrust has the right to enforce the Guaranty Agreement. (ECF 1-1, § 9.13)

After Calrissian, the guarantor, filed for bankruptcy, SunTrust and Plaintiffs considered how to enforce the Guaranty Agreement. As Plaintiffs allege, Calrissian, the 100% owner of Alchemy, was in turn wholly owned by Virgo; Virgo completely controlled Calrissian; Calrissian had virtually no assets, no independent offices, and no employees; Virgo directed that funds distributed to Calrissian be paid to Virgo entities, leaving Calrissian insolvent; and Virgo used Calrissian as a shell to control Alchemy, misrepresent Alchemy's finances to Lenders, and misappropriate funds advanced to Alchemy and Calrissian (ECF 1, ¶¶ 76-78). Therefore, SunTrust and Plaintiffs concluded three years ago that Lenders had colorable claims against Virgo (*id.* ¶ 84).

For the last three years, Plaintiffs sought to persuade SunTrust to pursue a claim against Virgo to recover the $46 million that Alchemy and Calrissian failed to repay (and much of which Virgo pocketed). Emigrant even offered—with no obligation to do so—to manage and pay for such litigation. However, SunTrust refused to cooperate in any action unless Plaintiffs gave it a release of all claims, known *and* unknown. Plaintiffs were not willing to release unknown claims.

On December 13, 2019, Plaintiffs made a formal request, as Required Lenders under the Credit Agreement, that SunTrust "exercise all remedies contained in any other Loan Document" and "exercise any other remedies available at law or in equity" by pursuing litigation against Virgo. Plaintiffs repeated their offer to manage and pay for the litigation (ECF 1-7). Despite the requirement in Section 8.1 of the Credit Agreement that SunTrust "shall" take such actions upon the written request of the Required Lenders, SunTrust refused. Plaintiffs gave SunTrust months to reconsider its position. When it became clear that SunTrust would not fulfill its contractual obligations in the absence of a general release, Plaintiffs filed suit.

Plaintiffs set forth three claims for relief: (i) breach of the Credit Agreement, based upon SunTrust's failure to comply with Plaintiffs' request; (ii) breach of the implied covenant of good faith and fair dealing; and (iii) breach of the Term Loan Joinder Agreement (ECF 1, ¶¶ 92-110).

**A.     SunTrust Breached Its Obligation to Act Upon the Direction of the Required Lenders**

SunTrust argues that Plaintiffs have no contractual right to demand that SunTrust sue Virgo, and, therefore, the first and third claims should be dismissed. SunTrust's argument is that "Section 8.1 [of the Credit Agreement] authorizes the Required Lenders to demand that the

2

Administrative Agent exercise only remedies that can be completed 'by notice to the Borrower.'" (ECF 13). SunTrust argues that this excludes lawsuits against third-parties such as Virgo (*id.*).

SunTrust's interpretation of Section 8.1 is wrong. While Section 8.1 specifies that the Administrative Agent should provide "notice to the Borrower," it does not state that the only action SunTrust must take is giving a notice. Nor would such a reading make sense: Section 8.1 lists "exercise all remedies contained in any other Loan Document" as an action that the Administrative Agent shall take upon the request of the Required Lenders. Other "Loan Documents" include the Guaranty Agreement, which permits SunTrust to pursue remedies against parties other than the Borrower (*see*, *e.g.*, ECF 1-2, §§ 7.4, 7.5). Under SunTrust's reading, the Required Lenders could not demand that SunTrust exercise contractual remedies against Calrissian—the guarantor of the loans—since this action could not be completed through a "notice to the Borrower." SunTrust's reading would also foreclose actions that SunTrust has *already* taken on its own volition pursuant to Section 8.1, including sending a notice to Calrissian accelerating the debt (ECF 1-6), and bringing suit against Calrissian for breach of the Guaranty Agreement. *See SunTrust Bank v. Calrissian LP*, Index No. 654148/2016 (N.Y. Sup. Ct., N.Y. Cty.). If the parties intended to limit the Administrative Agent's obligations to merely sending notices to the Borrower, they could have expressly stated so in the Credit Agreement. They did not.

Section 8.1 also permits the Required Lenders to require that the Administrative Agent "exercise any other remedies available at law or in equity." No lawsuit, not even a lawsuit against the Borrower, could be brought through a mere notice to the Borrower. SunTrust's textual argument requires nullifying this entire portion of Section 8.1. As SunTrust recognizes, "a contract should be read to give effect to all its provisions." *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs.*, LLP, 6 N.Y.3d 371, 374 (2006) (internal quotation marks omitted).

SunTrust also relies upon Section 9.2 of the Credit Agreement, which states in relevant part that the "Administrative Agent shall not have any . . . obligations except those expressly set forth in this Agreement and the other Loan Documents." But as alleged in the Complaint, SunTrust has breached its obligation set forth *expressly* in Section 8.1 that it "shall" act upon the written request of the Required Lenders. *See Beal Sav. Bank v. Sommer*, 8 N.Y.3d 318, 326 (2007) (recognizing "unequivocal collective design" of loan documents requiring Administrative Agent to act at direction of contractually defined Required Lenders). Therefore, Section 9.2 provides no basis to dismiss the first or third claims for relief.

### B. Plaintiffs State a Claim for Breach of the Implied Covenant

SunTrust argues that Section 9.2 of the Credit Agreement contains a waiver of any claim for breach of the implied covenant of good faith and fair dealing. Section 9.2 is titled "Nature of Duties of the Administrative Agent" and states in part that "the Administrative Agent shall not be subject to any fiduciary or other implied duties, regardless of whether a Default or an Event of Default has occurred and is continuing." (ECF 1-1, § 9.2). As a preliminary matter, SunTrust has failed to identify *any* case in which a court dismissed an implied covenant claim based on contractual language regarding "implied duties." Instead, the two cases cited by SunTrust involved contracts where the parties expressly disclaimed "implied covenants." *See Commerzbank AG v. U.S. Bank Nat'l Ass'n*, 277 F. Supp. 3d 483, 498 (S.D.N.Y. 2017) (contractual provision regarding

"implied covenants or obligations"); *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, 2016 WL 1169515, at *10 (S.D.N.Y. Mar. 22, 2016) (same).

Moreover, a waiver of the implied covenant of good faith and fair dealing must be expressly stated and unambiguous to support a motion to dismiss. *See*, *e.g.*, *Commerzbank*, 277 F. Supp. 3d at 498 (requiring that the implied covenant of good faith and fair dealing be "expressly disclaimed"); *Bank of New York Tr., N.A. v. Franklin Advisors, Inc.*, 522 F. Supp. 2d 632, 637 (S.D.N.Y. 2007) ("The Court's role on a 12(b)(6) motion to dismiss is not to resolve contract ambiguities."). Here, the phrase "other implied duties" is ambiguous and undefined, and its meaning should not be resolved on a motion to dismiss.

SunTrust also argues that the implied covenant claim is duplicative of the breach of contract claim. *First*, Plaintiffs may plead in the alternative. Fed. R. Civ. P. 8(d)(2-3); *Fantozzi v. Axsys Technologies, Inc.*, 2008 WL 4866054, at *7 (S.D.N.Y. Nov. 6, 2008) ("A claim for breach of contract does not preclude a party from bringing a claim for breach of the implied covenant of good faith and fair dealing when they are brought in the alternative."). *Second*, the implied covenant claim goes far beyond the breach of the express terms of the Credit Agreement. The claim is based on SunTrust's wrongful demand that Plaintiffs release all known and unknown claims against it as a condition to performing its obligations under the agreement. SunTrust tried to use its position as Administrative Agent for the other Lenders—*i.e.*, its exclusive power to enforce the Guaranty Agreement—as leverage to obtain a collateral benefit from its own principals who hold the majority of the debt. Because the claims do not have identical factual bases, Plaintiffs' implied covenant claim should not be dismissed as duplicative of its breach of contract claim. *See Lehman Bros. Intern. (Europe) v AG Financial Products*, 2013 WL 1092888, at *8 (N.Y. Sup. Ct. Mar. 12, 2013) (denying motion to dismiss even where "the allegations of the breach of contract and implied covenant causes of action overlap in significant respects"). Further, if Defendants prevail on their argument that there has been no breach of the express terms of Section 8.1, then the implied covenant claim would not be duplicative.

### C.  Plaintiffs Adequately Allege Damages

SunTrust asserts that it is protected by the Credit Agreement's exculpatory clause and that Plaintiffs' claims are not ripe. Both arguments lack merit.

#### 1.  The Credit Agreement's Exculpatory Clause Does Not Shield SunTrust From Liability

SunTrust argues that Section 9.2 of the Credit Agreement contains an exculpatory clause that insulates SunTrust from liability even in the case of intentional breach, so long as SunTrust did not engage in "gross negligence or willful misconduct." (ECF 1-1, § 9.2). Exculpatory provisions are "disfavored by the law and closely scrutinized by the courts." *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 842 F. Supp. 2d 682, 707 (S.D.N.Y. 2012). Thus, such clauses "should be strictly construed against the person seeking exemption from liability." *Id*. Moreover, the meaning of the phrases "gross negligence" and "willful misconduct" must be ascertained from the intent of the parties and not from general tort law principles. *See Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 435–38 (1994). SunTrust's interpretation of the exculpatory clause would leave Plaintiffs without remedy for SunTrust's deliberate breach of its obligations

under the Credit Agreement. It would be inappropriate to dismiss the Complaint without proof that the parties intended such an extreme outcome, particularly given that such a reading is inconsistent with the structure of the contract as a whole.

SunTrust writes that the Complaint does not assert "willful misconduct" or "gross negligence," but such formalism is not required. *See Markey v. Cameron Compression Systems*, 2011 WL 90318, at *2 (W.D.N.Y. Jan. 11, 2011) ("[P]laintiff did not need to use the actual word 'willful' to plead successfully that defendant intentionally violated the FLSA."); Wright & Miller, *9 Fed. Prac. & Proc. Civ.* § 2304 (3d ed. 2020) ("The district court must consider the nature of the issues in the case regardless of what they have been called by the pleader or whether they technically are part of a claim or a defense.").

Here, Plaintiffs' claims are based on SunTrust's willful misconduct, *i.e.*, its conscious and deliberate decision to withhold performance as Administrative Agent as leverage to obtain a general release from Plaintiffs. *See Banc of Am. Sec. LLC v. Solow Bldg. Co. II*, 47 A.D.3d 239, 242–43(1st Dep't 2007) ("The allegations of the complaint suffice to raise the issue of defendant's resort to coercion to derive a benefit not bestowed by the parties' agreement . . . . BAS has adequately asserted that Solow's withholding of performance was willful, malicious or in bad faith[.]"). Exculpatory clauses should not be read to leave plaintiffs alleging this kind of intentional wrongdoing without remedy. *See Kalisch-Jarcho v City of New York*, 58 N.Y.2d 377, 385 (1983).

2. Plaintiffs' Claims Are Ripe

SunTrust also argues that Plaintiffs' claims are not ripe because SunTrust could in theory file a claim against Virgo up until June 2022, when the statute of limitations will run. This unsound position would leave Plaintiffs without recourse for the next two years—at least—for the repayment of over $26 million in loans and interest to which they are entitled.

Plaintiffs repeatedly demanded that SunTrust bring an action against Virgo on behalf of the Lenders to enforce the Lenders' rights. Although SunTrust acknowledged years ago that a claim was colorable, it has repeatedly refused to do so, instead withholding performance unless Plaintiffs give SunTrust a general release, a condition not required by any agreement between the parties. This plainly constitutes an actionable breach, and Plaintiffs' claims are ripe now. *See UBS AG v. Cournot Financial Products, LLC*, 2010 WL 3001884, at *1 (S.D.N.Y. Jul. 26, 2010) (a breach of contract action is ripe "immediately upon the [alleged] breach").

SunTrust's arguments in support of its potential motion to dismiss are without merit, and Plaintiffs therefore intend to oppose such a motion.

Respectfully submitted,

*/s/ Corey Worcester*
Corey Worcester

cc: All counsel via ECF