**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

EMIGRANT BANK AND PACIFIC
MERCANTILE BANK,

       Plaintiffs,

      v.

SUNTRUST BANK; TRUIST BANK; AND
DOES 1 THROUGH 10 INCLUSIVE,

              Defendants.

Civil Action No. 1:20-cv-02391-PGG


**DEFENDANTS SUNTRUST BANK AND TRUIST BANK'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**


David Tetrick, Jr. (admitted *pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, GA 30309-3521
Phone: 404-572-4600
Fax: 404-572-5100
dtetrick@kslaw.com

Peter Isajiw
Kenneth B. Fowler (admitted *pro hac vice*)
1185 Avenue of the Americas
New York, NY 10036
Phone: 212-556-2235
Fax: 212-556-2222
pisajiw@kslaw.com
kfowler@kslaw.com

*Attorneys for Defendants*
*SunTrust Bank and Truist Bank*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 3

    I.   Factual Background ............................................................................... 3

        A.  The Credit Agreement................................................................. 3

        B.  The Term Loan Joinder Agreement .............................................. 5

        C.  Borrower and Guarantor Default, Borrower Enters Bankruptcy, and
            SunTrust Sues Guarantor ............................................................ 5

        D.  Plaintiffs' Demand .................................................................... 6

        E.  SunTrust's Motion to Amend the Guaranty Action Complaint to Add a
            Claim Against Virgo Service Company LLC .................................. 7

    II.  Procedural History ............................................................................... 8

        A.  Plaintiffs' Complaint................................................................. 8

        B.  Subsequent Procedural History ................................................... 9

LEGAL STANDARD............................................................................................ 9

ARGUMENT .................................................................................................... 10

    I.   Plaintiffs Fail to State a Claim for Breach of Contract (Counts I and III)...................... 10

        A.  Plaintiffs Fail to State a Claim for Breach of the Credit Agreement Because
            They Have No Contractual Right to Force SunTrust to Sue Nonparties to
            the Loan Documents. ................................................................. 10

        B.  Plaintiffs Fail to State a Claim for Breach of the Term Loan Joinder
            Agreement Because That Breach Claim Depends Entirely on the Alleged
            Breach of the Credit Agreement. ................................................. 12

    II.  Plaintiffs Fail to State a Claim for Breach of the Implied Covenant (Count II). .............. 13

        A.  Plaintiffs Expressly Waived Any Implied-Covenant Claim................................ 13

        B.  The Court Should Dismiss the Implied-Covenant Claim as Duplicative of
            the Breach-of-Contract Claim. .................................................... 15

III. Plaintiffs Fail to State a Claim for Damages on All Counts of the Complaint. ................ 17

    A.  The Credit Agreement's Exculpatory Clause Bars Plaintiffs' Claims.................. 17

    B.  Plaintiffs Lack Damages Because Their Claim Is Not Ripe................................ 19

CONCLUSION.................................................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ace Arts, LLC v. Sony/ATV Music Pub., LLC*,
   56 F. Supp. 3d 436 (S.D.N.Y. 2014) .........................................................9

*Allen v. Credit Suisse Sec. (USA) LLC*,
   895 F.3d 214 (2d Cir. 2018) ......................................................................9

*Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*,
   70 A.D.3d 423 (N.Y. App. Div., 1st Dep't 2010) ....................................16

*Andrews v. Sotheby Int'l Realty, Inc.*,
   No. 12-cv-8824, 2014 WL 626968 (S.D.N.Y. Feb. 18, 2014),
   *aff'd*, 586 F. App'x 76 (2d Cir. 2014) ....................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................9

*Beninati v. F.D.I.C.*,
   55 F. Supp. 2d 141 (E.D.N.Y. 1999) .......................................................14

*Bentley v. Dennison*,
   852 F.Supp.2d 379 (S.D.N.Y. 2012), *aff'd*, 519 F. App'x 39 (2d Cir. 2013) ...........................6

*Citadel Equity Fund Ltd. v. Aquila, Inc.*,
   371 F. Supp. 2d 510 (S.D.N.Y. 2005), *aff'd*, 168 F. App'x 474 (2d Cir. 2006) ...............15, 17

*Commerzbank AG v. U.S. Bank Nat'l Ass'n*,
   277 F. Supp. 3d 483 (S.D.N.Y. 2017) .....................................................13

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010) ......................................................................7

*Eaton Vance Management v Wilmington Sav Fund Soc., FSB*,
   No. 654397/2017, 2018 WL 1947405 (N.Y. Sup. Ct., N.Y. Cty. Apr. 25,
   2018) .........................................................................................................18

*In re Enron Corp.*,
   292 B.R. 752 (Bankr. S.D.N.Y. 2003) ...............................................13, 14

*Friedman v. Maspeth Fed. Loan & Sav. Ass'n*,
   30 F. Supp. 3d 183 (E.D.N.Y. 2014) .......................................................15

*God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*,
   845 N.E.2d 1265 (N.Y. 2006) ..................................................................11

*Harz v. United States*,
   711 F. Supp. 114 (S.D.N.Y. 1989) ...................................................................20

*HSH Nordbank AG New York Branch v. Street*,
   421 F. App'x 70 (2d Cir. 2011) ......................................................................14

*JM Vidal, Inc. v. Texdis USA, Inc.*,
   764 F. Supp. 2d 599 (S.D.N.Y. 2011)...........................................................15, 16

*Kenard v. Nussbaum*,
   No. 87-cv-0318, 1988 WL 25240 (S.D.N.Y. Feb. 26, 1988) ...............................20

*Kirschner as Tr. of Millennium Lender Claim Tr. v. JPMorgan Chase Bank, N.A.*,
   No. 17-cv-6334, 2020 WL 2614765 (S.D.N.Y. May 22, 2020).......................15, 16

*Milan v. Wertheimer*,
   808 F.3d 961 (2d Cir. 2015)..............................................................................9

*Morgan Stanley & Co. Inc. v. Peak Ridge Master SPC Ltd.*,
   930 F. Supp. 2d 532 (S.D.N.Y. 2013)......................................................17, 18, 19

*Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*,
   No. 14-cv-10116, 2016 WL 1169515 (S.D.N.Y. Mar. 22, 2016)..........................13

*Repsol, S.A. v The Bank of New York Mellon*,
   No. 652653/2012, 2014 WL 468910 (N.Y. Sup. Ct., N.Y. Cty. Feb. 04, 2014) ....................18

*Retty Fin., Inc. v. Morgan Stanley Dean Witter & Co.*,
   293 A.D.2d 341 (N.Y. Ct. App., 1st Dep't 2002)..........................................18, 19

*SunTrust Bank v. Calrissian LP*,
   Index No. 654148/2016 (N.Y. Sup. Ct., N.Y. Cty.) ......................................5, 6, 7

*U.S. Bank Nat. Ass'n v. Dexia Real Estate Capital Markets*,
   959 F. Supp. 2d 443 (S.D.N.Y. 2013)...............................................................19

*Weizmann Inst. of Sci. v. Neschis*,
   229 F.Supp.2d 234 (S.D.N.Y. 2002).................................................................6

**Statutes**

11 U.S.C. § 362(a) ..........................................................................................6

**Other Authorities**

Fed. R. Civ. P. 3..............................................................................................10

Fed. R. Civ. P. 4..............................................................................................10

Fed. R. Civ. P. 5 ................................................................................................................. 10

Fed. R. Civ. P. 12 ............................................................................................................... 9

N.Y. C.P.L.R. § 3012 ......................................................................................................... 10

Defendants Truist Bank and SunTrust Bank (collectively, "SunTrust") hereby move to dismiss the Complaint (ECF 1) filed by Plaintiffs Emigrant Bank and Pacific Mercantile Bank.

## PRELIMINARY STATEMENT

SunTrust is the administrative agent under a credit agreement pursuant to which four sophisticated lenders loaned money to Our Alchemy, LLC, an independent film and video distributor. The four lenders were SunTrust, Plaintiff Pacific Mercantile Bank, Plaintiff Emigrant Bank, and non-party Preferred Bank. The credit agreement was secured by a guaranty executed by Calrissian LP, Our Alchemy's direct parent and an affiliate of the private equity firm Virgo Investment Group ("Virgo"). Virgo, however, is not a party to the credit agreement, the relevant loan documents, nor to this case.

Borrower Our Alchemy defaulted in 2016 with an outstanding balance of $46 million and entered bankruptcy. Shortly thereafter, SunTrust sued Calrissian, the guarantor, in New York state court. Earlier this year, SunTrust moved to amend the complaint in that case to add a claim against Calrissian's general partner, another Virgo affiliate. But that's not enough for Plaintiffs, who claim the credit agreement gives them the right to demand that SunTrust broaden the litigation to sue additional, mostly unspecified Virgo affiliates as well, and assert specific legal theories of Plaintiffs' choosing. According to Plaintiffs, SunTrust's failure to also sue those other Virgo entities, within the time chosen by Plaintiffs, breached the credit agreement, a related loan document, and the implied covenant of good faith and fair dealing. Plaintiffs assert that SunTrust's actions caused damages equal to Plaintiffs' portion of Our Alchemy's unpaid debt under the credit agreement—even though SunTrust has pending litigation seeking to recover that balance, and the statute of limitations on additional claims does not expire until June 2022 at the earliest.

Far from breaching the credit agreement or the implied covenant, SunTrust has fulfilled its contractual duties, and it has acted in good faith by seeking recovery of the unpaid debt on behalf

of the lenders.  As noted above, when Our Alchemy entered bankruptcy, SunTrust sued Calrissian, the guarantor and a Virgo affiliate, in an attempt to recover Our Alchemy's unpaid debt.  When Plaintiffs asked SunTrust to also sue unspecified Virgo entities under an alter ego or principal-agent theory of liability, SunTrust considered that approach but chose not to make any such claims until it has sufficient evidence to support them.  Nonetheless, SunTrust continued assessing ways to recover the unpaid debt.  To that end, SunTrust proactively explored potential avenues of recovery and identified one that Plaintiffs had not: suing Calrissian's general partner, a Virgo affiliate, for Calrissian's unpaid debt based on Delaware partnership law.  And SunTrust promptly moved for leave to amend the state-court complaint to add such a claim.

As detailed herein, Plaintiffs' Complaint fails as a matter of law because their claims assume powers and authority that do not exist under the credit agreement.  First, Plaintiffs' breach claims fail because Plaintiffs do not have a contractual right to force SunTrust to sue nonparties to the credit agreement.  Second, Plaintiffs' implied-covenant claim fails because Plaintiffs waived the claim and because it is duplicative of the breach claims.  Third, and finally, Plaintiffs fail to state a claim for damages because the credit agreement's exculpatory provision bars Plaintiffs' claims and because they are not ripe, either.

The Court should therefore dismiss Plaintiffs' claims with prejudice.

## STATEMENT OF FACTS

I.    **Factual Background**

A.    **The Credit Agreement**

In 2014, SunTrust, Plaintiff Pacific Mercantile Bank ("PMB"), and non-party Preferred Bank executed an agreement with independent film and video distributor Our Alchemy, LLC ("Borrower"),[1] pursuant to which the banks, with SunTrust as Administrative Agent, provided Borrower with a $20 million loan and a $20 million revolving credit facility.  (ECF 1-3.)

In 2015, SunTrust, PMB, and Preferred Bank executed an Amended and Restated Revolving Credit and Term Loan Agreement dated July 9, 2015 (the "Credit Agreement"[2]), which superseded the 2014 agreement.  (ECF 1 ("Compl.") ¶ 54.)  SunTrust continues to serve as Administrative Agent under the Credit Agreement.  (*Id.* ¶ 4; ECF 1-1, Credit Agreement, at 1.) The Credit Agreement is secured by a Guaranty and Security Agreement (ECF 1-2) executed by Borrower's direct parent, Calrissian LP ("Guarantor"), which is an affiliate of Virgo Investment Group, LLC.  (Compl. ¶ 3.)  The Credit Agreement and the other Loan Documents are governed by New York law.  (ECF 1-1, Credit Agreement § 10.5.)

Four of the Credit Agreement's provisions are particularly relevant to this motion.  First, the Credit Agreement defines "Event of Default" to include, among other things, Borrower's failure to pay any principal when due and payable, Borrower's breach of any covenant, Borrower or Guarantor commencing a voluntary bankruptcy proceeding, and Borrower or Guarantor becoming unable to pay debts as they become due.  (ECF 1-1, Credit Agreement § 8.1.)

---

[1] At the time of the 2014 agreement, Borrower was known as Millennium Entertainment, LLC.

[2] Consistent with Plaintiffs' Complaint, SunTrust refers to the amended and restated agreement simply as the "Credit Agreement" because it is the contract upon which Plaintiffs base their claims.

Second, upon an Event of Default, the Credit Agreement empowers the Administrative Agent to take (and the Required Lenders to demand it take) certain actions that it can accomplish "by notice to the Borrower":

> [T]he Administrative Agent may, and upon the written request of the Required Lenders shall, *by notice to the Borrower*, take any or all of the following actions, at the same or different times: (i) terminate the Commitments, whereupon the Commitment of each Lender shall terminate immediately, (ii) declare the principal of and any accrued interest on the Loans, and all other Obligations owing hereunder, to be, whereupon the same shall become, due and payable immediately, without presentment, demand, protest or other notice of any kind, all of which are hereby waived by the Borrower, (iii) exercise all remedies contained in any other Loan Document, and (iv) exercise any other remedies available at law or in equity . . . .

(ECF 1-1, Credit Agreement § 8.1 (emphasis added).)

Third, lest there be any doubt that Section 8.1 means what it says, the Credit Agreement expressly limits SunTrust's requirement to act on the Lenders' request to those "duties and obligations . . . expressly set forth in [the Credit] Agreement and other Loan Documents":

> The Administrative Agent shall not have any duties or obligations except those expressly set forth in this Agreement and the other Loan Documents. Without limiting the generality of the foregoing, (a) the Administrative Agent shall not be subject to any fiduciary or other implied duties, regardless of whether a Default or an Event of Default has occurred and is continuing, (b) the Administrative Agent shall not have any duty to take any discretionary action or exercise any discretionary powers, except those discretionary rights and powers expressly contemplated by the Loan Documents that the Administrative Agent is required to exercise in writing by the Required Lenders . . . .

(ECF 1-1, Credit Agreement § 9.2.)

And fourth, the Credit Agreement provides that "[t]he Administrative Agent shall not be liable for any action taken or not taken by it, its sub-agents or its attorneys-in-fact . . . in the absence of its own gross negligence or willful misconduct."  (ECF 1-1, Credit Agreement § 9.2.)

### B.     The Term Loan Joinder Agreement

Plaintiff Emigrant Bank ("Emigrant") became a Lender under the Credit Agreement pursuant to a Term Loan Joinder Agreement dated July 10, 2015.  (ECF 1-4.)  The Term Loan Joinder Agreement provides that Emigrant "shall become a 'Lender' under, and for all purposes of, the Credit Agreement and the other Loan Documents, and shall be subject to and bound by the terms thereof, and shall perform all the obligations of and shall have all rights of a Lender thereunder."  (*Id.* at 2.)  The Term Loan Joinder Agreement further provides that Emigrant "appoints and authorizes the Administrative Agent to take such action as agent on its behalf and to exercise such powers under the Credit Agreement and the other Loan Documents as are delegated to the Administrative Agent, as the case may be, by the terms thereof, together with such powers as are reasonably incidental thereto."  (*Id.* at 1.)

Pursuant to the Credit Agreement and the Term Loan Joinder Agreement, in 2015, Borrower's loan and credit facility increased to $33.5 million and $26 million, respectively. (Compl. ¶ 57.)

### C.     Borrower and Guarantor Default, Borrower Enters Bankruptcy, and SunTrust Sues Guarantor

In 2016, Borrower defaulted on the Credit Agreement.  (Compl. ¶ 6.)  On June 15, 2016, SunTrust, as Administrative Agent, exercised the remedy under the Credit Agreement to accelerate Borrower's outstanding debt of approximately $46 million and demand immediate payment from both Borrower and Guarantor.  (*Id.*; ECF 1-6, Notice of Acceleration of Debt.)  Borrower failed to repay the debt and filed for Chapter 7 bankruptcy protection.  (Compl. ¶¶ 6–7.)  When Guarantor also failed to perform, SunTrust sued Guarantor in New York Supreme Court, seeking Borrower's outstanding debt as damages from Guarantor (the "Guaranty Action").  (Compl. ¶ 8; *SunTrust Bank v. Calrissian LP*, Index No. 654148/2016 (N.Y. Sup. Ct., N.Y. Cty.).)

5

Guarantor subsequently filed for Chapter 11 bankruptcy protection in 2017, and in 2018 its bankruptcy proceedings were converted into a Chapter 7 case.  (Compl. ¶ 9.)  Guarantor's bankruptcy petition automatically stayed the proceedings in the Guaranty Action.  *See* 11 U.S.C. § 362(a); Suggestion of Bankruptcy, *SunTrust Bank v. Calrissian LP*, Index No. 654148/2016, NYSCEF Doc. No. 19 (N.Y. Sup. Ct., N.Y. Cty. Feb. 27. 2017).[3]  On January 9, 2020, the Bankruptcy Court for the District of Delaware entered an order closing Guarantor's bankruptcy case without discharging its debts.  (Compl. ¶ 9.)  On January 14, 2020, the New York Supreme Court lifted the stay, and the Guaranty Action litigation resumed.  *See* Order Reopening Case, *SunTrust Bank v. Calrissian LP*, Index No. 654148/2016, NYSCEF Doc. No. 21 (N.Y. Sup. Ct., N.Y. Cty. Jan. 14, 2020).

### D.    Plaintiffs' Demand

On December 13, 2019, Plaintiffs demanded that SunTrust, as Administrative Agent, either (a) file a lawsuit against Virgo Investment Group, LLC—a non-party to the loan documents—and its unspecified affiliates, seeking to hold the unspecified defendants liable for Borrower's debt and Guarantor's guaranty obligations based on theories of alter ego liability or principal-agent liability, or (b) face suit itself.  (ECF 1-7.)

---

[3] The Court may take judicial notice of pleadings and documents filed in the Guaranty Action.  *See Bentley v. Dennison*, 852 F.Supp.2d 379, 382 n.5 (S.D.N.Y. 2012) ("Judicial notice of public records is appropriate—and does not convert a motion to dismiss into a motion for summary judgment—because the facts noticed are not subject to reasonable dispute and are capable of being verified by sources whose accuracy cannot be reasonably questioned."), *aff'd*, 519 F. App'x 39 (2d Cir. 2013); *Weizmann Inst. of Sci. v. Neschis*, 229 F.Supp.2d 234, 247 n.20 (S.D.N.Y. 2002) (taking judicial notice of documents filed in New York state court on motion to dismiss).  The Guaranty Action documents cited in this brief are appended as attachments to Exhibit 1, the Declaration of Kenneth B. Fowler.

Counsel for SunTrust responded by letter dated January 3, 2020, declining Plaintiffs' request and expressing concern that SunTrust had not seen information or evidence to support at least one element of Plaintiffs' theorized claim.  *See* Exhibit 1, Decl. of Kenneth B. Fowler, Attachment A.[4]  Despite the parties' continued discussions regarding the matter (*see* Compl. ¶ 91), and although the statute of limitations on a claim against Virgo does not expire until June 15, 2022 at the earliest,[5] Plaintiffs nevertheless filed this lawsuit on March 18, 2020 (*id.* at 24–25).

### E.  SunTrust's Motion to Amend the Guaranty Action Complaint to Add a Claim Against Virgo Service Company LLC

On June 24, 2020, after the New York courts lifted coronavirus-related restrictions on non-essential filings, SunTrust moved to amend the complaint in the Guaranty Action in New York Supreme Court to add Guarantor's general partner, Virgo Service Company LLC, as a defendant. *See* Memorandum of Law in Support of Plaintiff's Motion for Leave to Amend the Complaint, *SunTrust Bank v. Calrissian LP*, Index No. 654148/2016, NYSCEF Doc. No. 28 (N.Y. Sup. Ct., N.Y. Cty. June 24, 2020).  SunTrust contends that Virgo Service Company, as Guarantor's general partner, is liable for Guarantor's debts because Guarantor is a Delaware limited partnership, and general partners are liable as a matter of law for the partnership obligations of limited partnerships under Delaware law.  *See id.* at 4–5 (citing 6 Del. C. §§ 17-303(a), 17-403(b)).  The motion was unopposed and remains pending.

---

[4] Because Plaintiffs reference and rely on SunTrust's January 3, 2020 letter in the Complaint (Compl. ¶ 89), the Court may consider the contents of that letter on SunTrust's motion to dismiss. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

[5] *See infra*, Argument, Part III.B.

## II.      Procedural History

### A.      Plaintiffs' Complaint

Here, Plaintiffs assert three claims for relief ("counts") in the Complaint.  (Compl. ¶¶ 92–110.)  All three counts focus on Plaintiffs' demand that SunTrust sue "Virgo," which Plaintiffs define as "Virgo Investment Group, LLC and its affiliates."  (*Id.* ¶ 3.)

In the first count of the Complaint (Compl. ¶¶ 92–98), Plaintiffs assert that SunTrust breached the Credit Agreement because Plaintiffs made a formal request that SunTrust sue "Virgo" as "the principal and/or alter ego" of Guarantor, and SunTrust has not yet done so.  (*Id.* ¶ 96.)  Plaintiffs do not identify which of "Virgo Investment Group, LLC and its affiliates" Plaintiffs believe were the principal and/or alter ego of Guarantor.  (*See* Compl. ¶¶ 77–78, 92–98; ECF 1-7, Plaintiffs' Formal Demand Letter.)

The second count of the Complaint (Compl. ¶¶ 99–103) asserts that SunTrust breached the implied covenant of good faith and fair dealing "by failing to enforce the Guaranty against Virgo" (*id.* ¶ 101).  Plaintiffs allege that SunTrust breached the implied covenant "by requiring that Emigrant and PMB agree to a release of all known and unknown claims before SunTrust would agree to take action to enforce the Guaranty."  (*Id.* ¶ 102.)  These allegations are in paradox to the Complaint's allegations that Calrissian LP—not "Virgo"—is the sole guarantor under the Guaranty (*id.* ¶ 3; ECF 1-2), and Plaintiffs' concession that SunTrust took action to enforce the Guaranty in 2016 when it sued Guarantor (Compl. ¶ 8).  Again, however, Plaintiffs do not specify which Virgo entities they want SunTrust to sue to somehow "enforce the Guaranty against Virgo." (*See id.* ¶¶ 99–103.)

In the third count of the Complaint (Compl. ¶¶ 104–110), Plaintiffs assert that SunTrust breached the Term Loan Joinder Agreement by failing to sue Virgo because "SunTrust was appointed and authorized" under the Term Loan Joinder Agreement "to exercise such powers

under the Credit Agreement and the other Loan Documents as are delegated to the Administrative Agent, as the case may be, by the terms thereof, together with such powers as are reasonable [*sic*] incidental thereto" (*id.* ¶ 107).  Once again, Plaintiffs do not specify which Virgo entities they wanted SunTrust to sue.  (*See id.* ¶¶ 104–110.)

Plaintiffs allege they suffered damages exceeding $26 million as a result of each breach, "representing their *pro rata* share of the amount due under the Credit Agreement and the Guaranty."  (Compl. ¶¶ 13, 98, 103, 110.)

### B.     Subsequent Procedural History

On April 13, 2020, SunTrust requested a pre-motion conference on its anticipated motion to dismiss the Complaint, pursuant to this Court's Individual Rules of Practice.  (ECF 13.) Plaintiffs responded on April 23, 2020, but they did not oppose SunTrust's request for a pre-motion conference or challenge SunTrust's right to move to dismiss.  (ECF 17.)  By Order entered July 29, 2020, this Court established a briefing schedule for SunTrust's motion to dismiss.  (ECF 33.)

### <u>LEGAL STANDARD</u>

A court will dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) if it lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  On a motion to dismiss, the court "need not accept conclusory allegations or legal conclusions couched as factual [] allegations."  *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (quotation marks omitted).  Accordingly, "bald assertions and conclusions of law will not suffice to avoid dismissal, nor will factual allegations that are wholly conclusory."  *Allen v. Credit Suisse Sec. (USA) LLC*, 895 F.3d 214, 222 (2d Cir. 2018).

Moreover, dismissal is appropriate where the allegations, if accepted as true, do not establish "an actual breach of the contract."  *Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F.

Supp. 3d 436, 451 (S.D.N.Y. 2014).  And "[i]n the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint . . . ." *Andrews v. Sotheby Int'l Realty, Inc.*, No. 12-cv-8824, 2014 WL 626968, at *5 (S.D.N.Y. Feb. 18, 2014), *aff'd*, 586 F. App'x 76 (2d Cir. 2014).

## ARGUMENT

**I.      Plaintiffs Fail to State a Claim for Breach of Contract (Counts I and III).**

The Court should dismiss the first and third counts of the Complaint because Plaintiffs fail to state a claim that SunTrust breached the Credit Agreement or the Term Loan Joinder Agreement.

> **A.      Plaintiffs Fail to State a Claim for Breach of the Credit Agreement Because They Have No Contractual Right to Force SunTrust to Sue Nonparties to the Loan Documents.**

Plaintiffs assert in their first count that SunTrust breached the Credit Agreement because SunTrust has not sued Virgo Investment Group and unspecified affiliates as the principal and/or alter ego of Guarantor.  (Compl. ¶¶ 92–98.)  This claim is barred by the plain language of the Credit Agreement.

Plaintiffs ignore the unambiguous language of the Credit Agreement's Section 8.1 in crafting their breach claim.  Section 8.1 states, in relevant part, that the Administrative Agent "upon the written request of the Required Lenders shall, *by notice to the Borrower* . . . (iii) exercise all remedies contained in any other Loan Document, and (iv) exercise any other remedies available at law or in equity."  (ECF 1-1, Credit Agreement § 8.1 (emphasis added).)  By its plain language, Section 8.1 applies only to those remedies that can be completed "by notice to the Borrower."  (*Id.*)  Thus, Section 8.1 does not empower Plaintiffs to compel SunTrust to file a lawsuit against *any* non-parties to the Loan Documents because such a lawsuit cannot be commenced "by notice to the Borrower."  *See, e.g.*, Fed. R. Civ. P. 3–5; N.Y. C.P.L.R. § 3012.  As applied here, SunTrust cannot sue Virgo Investment Group, LLC or any of its unspecified affiliates as an alleged

"principal" or "alter ego" of Guarantor, as Plaintiffs purport to require, "by notice to the Borrower," because, as the Complaint repeatedly alleges, Guarantor's purported principal(s) or alter ego(s) are entities separate and apart from the Borrower. (*See* Compl. ¶¶ 10, 34–36, 77–78, 85, 87, 96, 108 (describing the Virgo entities as the alter ego of Guarantor, not the alter ego of the Borrower).)

Accordingly, Plaintiffs cannot compel SunTrust to sue Virgo Investment Group or the unspecified Virgo entities under Section 8.1. Any other result would render the contractual phrase "by notice to the Borrower" meaningless. *Contra God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*, 845 N.E.2d 1265, 1267 (N.Y. 2006) (A "contract should be read to give effect to all its provisions." (citation omitted)).[6]

Plaintiffs try to avoid this result by incorrectly suggesting that giving effect to the phrase "by notice to the Borrower" would mean that SunTrust lacked the authority to demand payment of Calrissian in 2016 or sue Calrissian in the Guaranty Action. (*See* ECF 17, Plaintiffs' Motion to Dismiss Response Letter, at 3.) Not so. Section 8.1 expressly authorizes SunTrust to take, and gives the Required Lenders the right to demand, certain enumerated actions upon an Event of Default. Nothing in Section 8.1 limits SunTrust as Administrative Agent from taking any other actions it is legally entitled to take. (*See* ECF 1-1, Credit Agreement § 8.1.) To the contrary, the Credit Agreement specifies that "[t]he rights and remedies of the Administrative Agent and the Lenders hereunder and under the other Loan Documents are cumulative and are not exclusive of any rights or remedies provided by law." (*Id.* § 10.2(a).) Accordingly, although Plaintiffs lack

---

[6] New York law governs both the Credit Agreement and the Term Loan Joinder Agreement. (ECF 1-1, Credit Agreement § 10.5(a); ECF 1-4, Term Loan Joinder Agreement § 14.)

the contractual right to force SunTrust to sue nonparties to the Credit Agreement, SunTrust, as Administrative Agent, retains the discretion to file such a suit if appropriate.

Indeed, the Credit Agreement anticipates, and rejects, Plaintiffs' suggestion that the "Required Lenders" have broad powers to force SunTrust to take specific actions beyond those specified in Section 8.1. The Credit Agreement specifies that the "Administrative Agent shall not have any . . . obligations except those expressly set forth in this Agreement and the other Loan Documents." (ECF 1-1, Credit Agreement § 9.2.) Nothing in the Credit Agreement or the other Loan Documents specifies that the Required Lenders can force SunTrust to sue nonparties to the loan documents parties as a "remedy." And any credit agreement intending to foist such an extraordinary obligation on its administrative agent ought to say so explicitly—especially where, like here, interpreting Section 8.1 to allow Plaintiffs to compel SunTrust to sue unspecified nonparties to the loan documents based on undeveloped theories of liability would upend prevailing market practice in the orderly and efficient corporate loan market.

Accordingly, the Court should dismiss the first count of the Complaint.

> **B.    Plaintiffs Fail to State a Claim for Breach of the Term Loan Joinder Agreement Because That Breach Claim Depends Entirely on the Alleged Breach of the Credit Agreement.**

Plaintiffs also contend that SunTrust breached the Term Loan Joinder Agreement by breaching the Credit Agreement because the Term Loan Joinder Agreement provides that Emigrant "appoints and authorizes [SunTrust] to take such action as agent on its behalf and to exercise such powers under the Credit Agreement and the other Loan Documents as are delegated to the Administrative Agent, as the case may be, by the terms thereof, together with such powers as are reasonably incidental thereto." (Compl. ¶ 107; ECF 1-4, Term Loan Joinder Agreement, at 1.) Again, Plaintiffs' assertion is not supported by any contractual language.

Notably, Plaintiffs do not allege that SunTrust breached any provision of the Term Loan Joinder Agreement independent of the Credit Agreement.  (*See* Compl. ¶ 109.)  Plaintiffs' claim for breach of the Term Loan Joinder Agreement is therefore derivative and depends entirely on Plaintiffs' breach of the Credit Agreement claim.  Thus, Plaintiffs' claim for breach of the Term Loan Joinder Agreement fails because its claim under the Credit Agreement fails.  The Court should therefore dismiss the third count of the Complaint.

## II.    Plaintiffs Fail to State a Claim for Breach of the Implied Covenant (Count II).

The Court should dismiss the second count of the Complaint, for breach of the implied covenant of good faith and fair dealing, for two independent reasons: (1) Plaintiffs waived implied-covenant claims against SunTrust, as Administrative Agent, in the Credit Agreement, and (2) the claim is impermissibly derivative of the breach of Credit Agreement claim.

### A.    Plaintiffs Expressly Waived Any Implied-Covenant Claim.

Under New York law, parties may contractually disclaim implied covenant of good faith and fair dealing claims.  *See Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, No. 14-cv-10116, 2016 WL 1169515, at *10 (S.D.N.Y. Mar. 22, 2016) ("Every contract is assumed to incorporate a covenant of good faith and fair dealing unless such obligation is expressly disclaimed."); *Commerzbank AG v. U.S. Bank Nat'l Ass'n*, 277 F. Supp. 3d 483, 498 (S.D.N.Y. 2017) (enforcing contractual provision that "no implied covenants or obligations shall be read into this Agreement").  A contractual provision stating that a party shall have no obligations other than those "expressly set forth in this Agreement" waives claims for breach of the implied covenant against that party. *See In re Enron Corp.*, 292 B.R. 752, 783 (Bankr. S.D.N.Y. 2003) (applying New York law).

The *Enron* court recognized that New York law will not imply a covenant into a contract that is "inconsistent with other terms of the contractual relationship."  *Id.* at 782–83 (citing *Banco Espanol de Credito v. Security Pacific Nat'l Bank,* 763 F. Supp. 36, 45 (S.D.N.Y 1991)).  In *Enron*,

the contract at issue provided that the defendant bank "shall have no obligation to [plaintiff bank] in respect of the Participating Interests, which is not expressly set forth in this Agreement."  292 B.R. at 764.  Nonetheless, the plaintiff bank alleged that the defendant bank breached the implied covenant of good faith and fair dealing.  *Id.* at 782.  The court explained that the provision concerning obligations "not expressly set forth in this Agreement" "directly contradicts . . . any claim that [defendant bank] had an obligation to act pursuant to the covenant of good faith and fair dealing . . . ."  *Id.* at 783.  Recognizing that "sophisticated parties drafted contract language that clearly defined their rights," the court "decline[d] to find that the implied duty of good faith should be used to evaluate [defendant bank's] conduct . . . ."  *Id.*

The same is true here.  Just as the agreement in *Enron* disclaimed any "obligation . . . not expressly set forth in this Agreement," the Credit Agreement specifies that "the Administrative Agent shall not have any duties or obligations except those expressly set forth in this Agreement and the other Loan Documents."  (ECF 1-1, Credit Agreement, § 9.2.)  By agreeing that SunTrust would not have any duties or obligations except those expressly set forth in the Credit Agreement, Plaintiffs, unquestionably sophisticated parties (*see* Compl. ¶ 1), waived any claim that SunTrust breached the implied covenant of good faith and fair dealing.  *See Enron*, 292 B.R. at 783.

Moreover, an implied-covenant claim requires a breach of an implied duty under an existing contract.  *See, e.g.*, *HSH Nordbank AG New York Branch v. Street*, 421 F. App'x 70, 73 (2d Cir. 2011) (referring to implied-covenant claim as a claim for breach of the "implied duty of good faith and fair dealing" and holding that administrative agent under a loan did not breach); *Beninati v. F.D.I.C.*, 55 F. Supp. 2d 141, 146 (E.D.N.Y. 1999) (referring to an implied-covenant claim as a "claim for breach of an implied duty").  Where "a plaintiff asserts both express and implied contract claims, the plaintiff must allege an implied duty that is consistent with the express

14

contractual terms . . . ."  *JM Vidal, Inc. v. Texdis USA, Inc.*, 764 F. Supp. 2d 599, 620 (S.D.N.Y. 2011) (quotation marks omitted).  Here, Plaintiffs expressly agreed in Section 9.2 that SunTrust "shall not be subject to any fiduciary or other implied duties."  (ECF 1-1, Credit Agreement, § 9.2.)  By disclaiming any duties on SunTrust's part, Plaintiffs waived any implied-covenant claim because such a claim "must allege an implied duty that is consistent with the express contractual terms."  *JM Vidal, Inc.*, 764 F. Supp. 2d at 620.

The Court should therefore dismiss the second count of the Complaint.

### B.  The Court Should Dismiss the Implied-Covenant Claim as Duplicative of the Breach-of-Contract Claim.

Even if Plaintiffs had not waived their implied-covenant claim, the Court should nonetheless dismiss the claim because it is duplicative of the breach-of-contract claims.  "Under New York law, the same facts cannot give rise to both a claim for breach of contract and a claim for breach of implied duty of good faith and fair dealing."  *Friedman v. Maspeth Fed. Loan & Sav. Ass'n*, 30 F. Supp. 3d 183, 195 (E.D.N.Y. 2014).  Where "a plaintiff asserts both express and implied contract claims, the plaintiff must . . . base its implied covenant theory on allegations that are distinct from the factual predicate for its contract claims."  *JM Vidal, Inc.*, 764 F. Supp. 2d at 620 (quotation marks omitted).

Accordingly, "claims for breach of the implied covenant of good faith and fair dealing are routinely dismissed where the conduct at issue is also the predicate for a claim that the defendant breached an express contract."  *Citadel Equity Fund Ltd. v. Aquila, Inc.*, 371 F. Supp. 2d 510, 522 (S.D.N.Y. 2005), *aff'd*, 168 F. App'x 474 (2d Cir. 2006).  If a plaintiff's implied-covenant claim rests on the same provision as a breach-of-contract claim, or if it is based on the same alleged breach and seeks the same damages as the breach-of-contract claim, a court will dismiss the implied-covenant claim.  *See Kirschner as Tr. of Millennium Lender Claim Tr. v. JPMorgan Chase*

15

*Bank, N.A.*, No. 17-cv-6334, 2020 WL 2614765, at *17 (S.D.N.Y. May 22, 2020) ("[T]o the extent that Plaintiff's good faith and fair dealing claim rests on the . . . provisions that form the basis for Plaintiff's breach of contract claims, its good faith and fair dealing claim must be dismissed as duplicative of its breach of contract claims."); *Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*, 70 A.D.3d 423, 426 (N.Y. App. Div., 1st Dep't 2010) ("The claim that defendants breached the implied covenant of good faith and fair dealing was properly dismissed as duplicative of the breach-of-contract claim, as both claims arise from the same facts and seek the identical damages for each alleged breach." (citations omitted)).[7]

Here, Plaintiffs' implied-covenant claim is based on the same contractual provisions and facts as the first count's breach-of-contract claim, and Plaintiffs allege the same damages for both claims.  (*Compare* Compl. ¶¶ 92–98 *with id.* at ¶¶ 99–103.)  Both claims rely on Plaintiffs' assertion that SunTrust had a contractual duty to sue various (and mostly unspecified) Virgo entities under Section 8.1 of the Credit Agreement.  (*See id.* ¶¶ 97, 101.)  Both claims assert that SunTrust's breach was its failure to do so.  (*See id.* ¶¶ 92–103.)  Both claims assert that SunTrust would not sue unspecified Virgo entities unless Plaintiffs provided SunTrust with a release—even though SunTrust had already sued Guarantor, a Virgo affiliate, and has now moved to sue another Virgo affiliate, Virgo Service Company.  (*See id.* ¶¶ 97, 102.)  And both claims seek the same remedy—damages "in excess of $26,000,000."  (*Id.* ¶¶ 98, 103.)

Accordingly, the Court should dismiss Plaintiffs' implied-covenant claim as duplicative of their breach-of-contract claim.  *See Kirschner*, 2020 WL 2614765, at *17, *Amcan Holdings*, 70 A.D.3d at 426; *JM Vidal, Inc.*, 764 F. Supp. 2d at 620.  Dismissal is especially appropriate because

---

[7] Dismissal of the implied-covenant claim is appropriate even if the Court also dismisses the breach-of-contract claim.  *See Kirschner*, 2020 WL 2614765, at *15–17 (dismissing both claims); *Amcan Holdings, Inc.*, 70 A.D.3d at 426–27 (same).

Plaintiffs' implied-covenant claim is based on an alleged "contractual dut[y]" to sue Virgo (Compl. ¶ 102) that does not exist (*see supra*, Argument, Part I).  *Accord Citadel Equity Fund*, 371 F. Supp. 2d at 522 (no breach of implied covenant of good faith and fair dealing under a credit agreement where plaintiffs did not have contractual right to demand the action that served as basis for its claim).

## III.  Plaintiffs Fail to State a Claim for Damages on All Counts of the Complaint.

The Court should also dismiss all three counts of the Complaint because their damages claims are prohibited by the Credit Agreement's exculpatory clause and are not ripe.[8]

### A.    The Credit Agreement's Exculpatory Clause Bars Plaintiffs' Claims.

Section 9.2(c) of the Credit Agreement relieves SunTrust, as Administrative Agent, of all liability "in the absence of its own gross negligence or willful misconduct."  (ECF 1-1, Credit Agreement, § 9.2.)  New York law sets a high bar for sophisticated parties, like Plaintiffs, seeking to nullify an exculpatory or liability limitations provision to which they agreed:

> [Several decisions] illustrate the far higher mark at which New York courts place the bar and, also, the effects of wrongful conduct sufficient as a matter of law to nullify a limitations of liability clause in contract—demanding nothing short of in a compelling demonstration of egregious intentional misbehavior evincing extreme culpability: malice, recklessness, deliberate or callous indifference to the rights of others, or an extensive pattern of wanton acts.

*Morgan Stanley & Co. Inc. v. Peak Ridge Master SPC Ltd.*, 930 F. Supp. 2d 532, 544 (S.D.N.Y. 2013) (citing *Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y.,* 273 F. Supp. 2d 436, 449–50 (S.D.N.Y. 2003)).

Hence, courts applying New York law routinely apply and enforce such unambiguous exculpatory clauses.  *See Peak Ridge*, 930 F. Supp. 2d at 544 (granting, in relevant part, motion to

---

[8] Plaintiffs do not seek declaratory or injunctive relief (Compl., at 24–25) and for the reasons set forth herein, fail to state a claim for damages.

dismiss based on "the unambiguous liability limitation" of an exculpatory provision applying to damage "caused by its gross negligence or willful misconduct"); *Retty Fin., Inc. v. Morgan Stanley Dean Witter & Co.*, 293 A.D.2d 341 (N.Y. Ct. App., 1st Dep't 2002) ("The limitation of liability provision within the parties' contract, providing that defendant would be subject to liability only for gross negligence or willful misconduct . . . , was unambiguous and applicable to the instant matter.") (affirming trial court order granting motion to dismiss).

Here, Plaintiffs' claims fail because they do not expressly allege that SunTrust ever acted with gross negligence or that SunTrust's actions amount to willful misconduct. *See Eaton Vance Management v Wilmington Sav Fund Soc., FSB*, No. 654397/2017, 2018 WL 1947405, at *5 (N.Y. Sup. Ct., N.Y. Cty. Apr. 25, 2018) (dismissing claim against administrative agent for because "[n]either gross negligence nor willful misconduct are alleged" in the complaint); *see also Repsol, S.A. v The Bank of New York Mellon*, No. 652653/2012, 2014 WL 468910 (N.Y. Sup. Ct., N.Y. Cty. Feb. 04, 2014) (applying same exculpatory language as used here and dismissing complaint because "the complaint contains only a conclusory assertion, and no factual allegations, that [the agent] acted in a 'grossly negligent' manner").

Plaintiffs incorrectly suggest they sufficiently pleaded gross negligence or willful misconduct by alleging that SunTrust, at some point, requested a release. (*See* ECF 17, Plaintiffs' Motion to Dismiss Response Letter, at 5.)  That's well short of the sort of "egregious intentional misbehavior evincing extreme culpability: malice, recklessness, deliberate or callous indifference to the rights of others, or an extensive pattern of wanton acts" required to establish gross negligence or willful misconduct under New York law. *See Peak Ridge*, 930 F. Supp. 2d at 544.  Indeed, even if SunTrust's demanding a release before "enforcing the Guaranty" constituted intentional non-performance of the Credit Agreement motivated by financial self-interest—which SunTrust denies

occurred here—that would "not [be] enough to constitute gross negligence or willful misconduct." *See id.* at 545 (citing *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.,* 643 N.E.2d 504, 507 (N.Y. 1994)).

Likewise, Plaintiffs' suggestion that the Court might need to consider extrinsic evidence before applying the exculpatory clause is without merit.  (*See* ECF 17, Plaintiffs' Motion to Dismiss Response Letter, at 4–5; ECF 28, Plaintiffs' Motion to Stay Response Letter, at 4.)  Where, as here, an agreement bars liability for "gross negligence or willful misconduct," courts routinely enforce the provision as unambiguous at the pleadings stage.  *See Peak Ridge Master*, 930 F. Supp. 2d at 544; *Retty Fin.*, 293 A.D.2d 341.

Accordingly, the Court should dismiss all three counts of the Complaint because the Credit Agreement's exculpatory provision bars Plaintiffs' claims for damages.

## B.   Plaintiffs Lack Damages Because Their Claim Is Not Ripe.

Plaintiffs' claims also fail as a matter of law because their prayer for damages is not ripe. As noted above, SunTrust has already sued Guarantor, and has moved to sue Virgo Service Company, to recover Borrower's outstanding balance in the Guaranty Action.  The statute of limitations for any additional claim against any additional Virgo affiliates would not expire until June 15, 2022—six years after the Notice of Acceleration of Debt (ECF 1-5)—at the earliest.  *See U.S. Bank Nat. Ass'n v. Dexia Real Estate Capital Markets*, 959 F. Supp. 2d 443, 448 (S.D.N.Y. 2013) (applying six-year statute of limitations to an alleged breach of a guaranty agreement). Accordingly, Plaintiffs could potentially recover the outstanding loan balances either in the Guaranty Action or through a future lawsuit that SunTrust may bring against other Virgo entities, if appropriate.

Because Plaintiffs might recover the entire loan balances through the actions SunTrust has already commenced, Plaintiffs' assertion that *SunTrust's* purported lack of additional action

somehow damaged them are entirely speculative and insufficient to sustain a claim for damages. *Cf. Harz v. United States*, 711 F. Supp. 114, 118 n.2 (S.D.N.Y. 1989) ("[P]laintiffs cannot allege that plaintiff would have succeeded in the underlying action for the simple reason that the action remains viable and, indeed, plaintiffs may fully recover.").

The Court should dismiss Plaintiffs' Complaint for this additional, independent reason.

## CONCLUSION

For the foregoing reasons, the Court should grant SunTrust's motion and dismiss the Complaint. Because Plaintiffs lack a contractual right to force SunTrust to sue nonparties to the loan documents, and because Plaintiffs waived their implied-covenant claim, the Court should dismiss the Complaint with prejudice. *See Kenard v. Nussbaum*, No. 87-cv-0318, 1988 WL 25240, at *4 (S.D.N.Y. Feb. 26, 1988) ("Because under this complaint, no facts can be stated which provide a basis for relief, dismissal with prejudice is appropriate.").

Dated: August 28, 2020

KING & SPALDING LLP

By: _____
Peter Isajiw
Kenneth B. Fowler (admitted *pro hac vice*)
1185 Avenue of the Americas
New York, NY 10036
Phone: 212-556-2235
Fax: 212-556-2222
pisajiw@kslaw.com
kfowler@kslaw.com

David Tetrick, Jr. (admitted *pro hac vice*)
1180 Peachtree Street, NE
Atlanta, GA 30309-3521
Phone: 404-572-4600
Fax: 404-572-5100
dtetrick@kslaw.com

*Attorneys for Defendants*
*SunTrust Bank and Truist Bank*