**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EMIGRANT BANK; AND PACIFIC MERCANTILE BANK,<br><br>     Plaintiffs,<br><br>  -against-<br><br>SUNTRUST BANK; TRUIST BANK; AND DOES 1 THROUGH 10, INCLUSIVE,<br><br>     Defendants. | Civil Action No. 1:20-cv-02391-PGG |

**PLAINTIFFS EMIGRANT BANK AND PACIFIC MERCANTILE BANK'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**Table of Contents**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND....................................................................................................4

     A.     SunTrust Enters Into the Original Credit Agreement and the Guaranty.................4

     B.     The Parties Amend the Credit Agreement in 2015 ..................................................5

     C.     Section 8.1 of the Credit Agreement.......................................................................6

     D.     Alchemy and Calrissian Default, and SunTrust Sues Calrissian ............................7

     E.     The Lenders Conclude There Are Potential Claims Against Calrissian's
            Parent Company, Virgo ...........................................................................................8

     F.     SunTrust Refuses Plaintiffs' Written Request to Sue Virgo....................................9

PROCEDURAL HISTORY........................................................................................................10

LEGAL STANDARD.................................................................................................................11

ARGUMENT ..............................................................................................................................11

I.      SunTrust's Motion to Dismiss Counts I and III Should Be Denied Based on
       SunTrust's Erroneous Interpretation of the Contracts .......................................................11

     A.     SunTrust's Interpretation of Section 8.1 Ignores the Plain Language of the
            Provision and Its Own Prior Actions .....................................................................12

     B.     Plaintiffs Adequately Allege That SunTrust Breached the Joinder
            Agreement................................................................................................................15

     C.     SunTrust Fails to Challenge Plaintiffs' Allegation That SunTrust Breached
            the Implied Covenant in the Joinder Agreement ...................................................16

II.     The Court Should Deny SunTrust's Motion to Dismiss the Claim for Breach of
       the Implied Covenant in the Credit Agreement (Count II)...............................................16

     A.     The Credit Agreement Does Not Contain a Waiver of the Implied
            Covenant .................................................................................................................17

     B.     The Implied Covenant Claim Is Not Duplicative of the Breach of Contract
            Claim.......................................................................................................................20

III.    Plaintiffs Adequately Allege Damages ............................................................................21

     A.     Section 9.2 of the Credit Agreement Does Not Shield SunTrust From
            Liability for Its Intentional Breaches .....................................................................21

     B.     Plaintiffs Have Been Damaged By SunTrust's Breaches, Thus Their
            Claims Are Ripe.......................................................................................................25

CONCLUSION............................................................................................................................25

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Banc of Am. Sec. LLC v. Solow Bldg. Co. II*,
    47 A.D.3d 239 (2007) ........................................................................... 22, 23

*Bank Itec N.V. v. J. Henry Schroder Bank & Trust Co.*,
    612 F. Supp. 134 (S.D.N.Y. 1985) ................................................................ 12

*Bank of New York Tr., N.A. v. Franklin Advisors, Inc.*,
    522 F. Supp. 2d 632 (S.D.N.Y. 2007) ..................................................... 11, 19

*Banks v. Corr. Servs. Corp.*,
    475 F. Supp. 2d 189 (E.D.N.Y. 2007) ........................................................... 11

*Beal Sav. Bank v. Sommer*,
    8 N.Y.3d 318 (2007) ..................................................................................... 15

*Bell v. Leakas*,
    1993 WL 77320 (S.D.N.Y. Mar. 13, 1993) .................................................. 11

*In re CCT Commc'ns, Inc.*,
    464 B.R. 97 (Bankr. S.D.N.Y. 2011) ........................................................... 23

*Commerzbank AG v. U.S. Bank Nat'l Ass'n*,
    277 F. Supp. 3d 483 (S.D.N.Y. 2017) .......................................................... 18

*CompuDyne Corp. v. Shane*,
    453 F. Supp. 2d 807 (S.D.N.Y. 2006) .......................................................... 11

*Dale v. Indus. Ceramics, Inc.*,
    571 N.Y.S.2d 185 (N.Y. Sup. Ct., N.Y. Cty. 1991) ..................................... 14

*Dalton v. Educ. Testing Serv.*,
    87 N.Y.2d 384 (1995) ................................................................................... 17

*Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v. DB Structured Prod., Inc.*,
    958 F. Supp. 2d 488 (S.D.N.Y. 2013) ..................................................... 23, 24

*Eaton Vance Mgmt. v. Wilmington Sav. Fund Soc., FSB*,
    2018 WL 1947405 (N.Y. Sup. Ct., N.Y. Cty. Apr. 25, 2018) ...................... 24

*In re Enron Corp.*,
    292 B.R. 752 (Bankr. S.D.N.Y. 2003) ..................................................... 18, 19

*Fantozzi v. Axsys Technologies, Inc.*,
    2008 WL 4866054 (S.D.N.Y. Nov. 6, 2008) ................................................ 20

*Fasolino Foods Co. v. Banca Nazionale del Lavoro*,
    961 F.2d 1052 (2d Cir. 1992) ................................................................. 19

*Freeman & Mills, Inc. v. Belcher Oil Co.*,
    900 P.2d 669 (Cal. 1995) ...................................................................... 18

*God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*,
    6 N.Y.3d 371 (2006) ............................................................................. 14

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*,
    17 F. Supp. 2d 275 (S.D.N.Y. 1998) ..................................................... 19

*Greylock Glob. Opportunity Master Fund Ltd. v. Province of Mendoza*,
    2004 WL 2290900 (S.D.N.Y. Oct. 12, 2004) ......................................... 24

*Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*,
    2013 WL 1191895 (S.D.N.Y. Mar. 22, 2013) ................................... 18, 19

*Int'l Multifoods Corp. v. Commercial Union Ins. Co.*,
    309 F.3d 76 (2d Cir. 2002) ............................................................. 13, 14

*In Touch Concepts, Inc. v. Cellco P'ship*,
    949 F. Supp. 2d 447 (S.D.N.Y. 2013) ................................................... 17

*JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*,
    2009 WL 321222 (S.D.N.Y. Feb. 9, 2009) ............................................ 20

*Kalisch-Jarcho v. City of New York*,
    58 N.Y.2d 377 (1983) ........................................................................... 23

*Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*,
    255 F. Supp. 3d 443 (S.D.N.Y. 2015) ............................................. 24, 25

*MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*,
    842 F. Supp. 2d 682 (S.D.N.Y. 2012) ................................................... 22

*Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*,
    84 N.Y.2d 430 (1994) ............................................................... 22, 24, 25

*Morgan Stanley & Co. Inc. v. Peak Ridge Master SPC Ltd.*,
    930 F. Supp. 2d 532 (S.D.N.Y. 2013) ............................................. 23, 24

*Northwest, Inc. v. Ginsberg*,
    572 U.S. 273 (2014) .............................................................................. 18

*Outback/Empire I, Ltd. P'ship v. Kamitis, Inc.*,
    35 A.D.3d 563 (2d Dep't 2006) ............................................................ 17

*Pearce v. Manhattan Ensemble Theater, Inc.*,
    528 F. Supp. 2d 175 (S.D.N.Y. 2007) ........................................................................ 20

*Pearson Capital Partners LLC v. James River Ins. Co.*,
    151 F. Supp. 3d 392 (S.D.N.Y. 2015) ........................................................................ 11

*Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*,
    2016 WL 1169515 (S.D.N.Y. Mar. 22, 2016) .......................................................... 18

*Queens Ballpark Co., LLC v. Vysk Commc'ns*,
    226 F. Supp. 3d 254 (S.D.N.Y. 2016) ........................................................................ 16

*Readick v. Avis Budget Grp., Inc.*,
    2013 WL 3388225 (S.D.N.Y. July 3, 2013) ...................................................... 11, 22

*Repsol, S.A. v. The Bank of New York Mellon*,
    2014 WL 468910 (N.Y. Sup. Ct., N.Y. Cty. Feb. 4, 2014) ...................................... 24

*Retty Fin., Inc. v. Morgan Stanley Dean Witter & Co.*,
    293 A.D.2d 341 (1st Dep't 2002) .............................................................................. 24

*Rexnord Holdings, Inc. v. Bidermann*,
    21 F.3d 522 (2d Cir. 1994) ........................................................................................ 12

*Semple v. Eyeblaster, Inc.*,
    2009 WL 1457163 (S.D.N.Y. 2009) .......................................................................... 20

*Spadoni v. United Airlines, Inc.*
    47 N.E.3d 1152 (2015) .............................................................................................. 18

*In re St. Casimir Dev. Corp.*,
    358 B.R. 24 (S.D.N.Y. 2007) .................................................................................... 14

*Stark v. Circle K Corp.*,
    751 P.2d 162 (Mont. 1988) ........................................................................................ 18

*UBS AG v. Cournot Fin. Prod., LLC*,
    2010 WL 3001884 (S.D.N.Y. Jul. 26, 2010) ............................................................ 25

## Rules and Regulations

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 11

Fed. R. Civ. P. 8(d) ...................................................................................................... 20

Plaintiffs Emigrant Bank ("Emigrant") and Pacific Mercantile Bank ("PMB") respectfully submit this memorandum of law in opposition to the motion to dismiss filed by Defendants SunTrust Bank and Truist Bank (together, "SunTrust").

## PRELIMINARY STATEMENT

In 2015, Defendant SunTrust, Plaintiffs Emigrant and PMB, and non-party Preferred Bank (collectively, the "Lenders") entered into an Amended and Restated Revolving Credit and Term Loan Agreement (the "Credit Agreement").[1]  Through the Credit Agreement, the Lenders established a $59.5 million revolving credit and term loan facility for the borrower, Our Alchemy LLC ("Alchemy").  The loans were secured by Calrissian, L.P. ("Calrissian"), the 100% owner of Alchemy, through a Guaranty and Security Agreement (the "Guaranty").  Calrissian was, in turn, wholly owned and controlled by Virgo Investment Group, LLC and its affiliates (collectively, "Virgo").

SunTrust is the Administrative Agent under the Credit Agreement.  It was entrusted with the sole power to enforce the Guaranty on behalf of the Lenders.  Section 8.1 of the Credit Agreement, however, specifies that in the event of a default by Alchemy, Lenders with a majority stake may require SunTrust to "exercise all remedies contained in any other Loan Document" and "exercise any other remedies available at law or in equity."

In 2016, Alchemy defaulted and declared bankruptcy with $46 million in loans still outstanding.  SunTrust sued the guarantor, Calrissian, which also was insolvent.  Calrissian then declared bankruptcy as well.  In December 2019, Plaintiffs—as majority stake Lenders— invoked their right under the Credit Agreement to demand that SunTrust pursue legal remedies against Calrissian's alter ago and principal, Virgo, to recover the outstanding debt.  Despite

---

[1]  Emigrant became a Lender under the Credit Agreement through a Term Loan Joinder Agreement (the "Joinder Agreement") also executed in 2015.

unambiguous language in the Credit Agreement that SunTrust "***shall***, by notice to the Borrower … exercise all remedies contained in any other Loan Document, and … exercise any other remedies available at law or in equity," SunTrust refused.  Instead of fulfilling its contractual obligations, SunTrust offered to do so if, and only if, Plaintiffs provided SunTrust with a release of all known *and unknown* claims, whether or not related to the exercise of any such remedy.  SunTrust's attempt to coerce a full release before it would comply with its contractual obligations was unsuccessful.  Plaintiffs even offered to manage and pay for litigation against Virgo.  SunTrust still refused unless it received a complete, general release.

In this action, Plaintiffs bring three claims against SunTrust: (i) breach of the Credit Agreement, (ii) breach of the implied covenant of good faith and fair dealing, and (iii) breach of the Joinder Agreement.  SunTrust's motion to dismiss these claims should be denied for the reasons set forth below.

*First*, SunTrust's argument to dismiss the claim for breach of the Credit Agreement fails because SunTrust's interpretation of Section 8.1 is baseless.  In SunTrust's view, Section 8.1 merely requires it to provide "notice" to Alchemy and does not require it to take any action against nonparties.  That reading of the Credit Agreement is contradicted by both the unambiguous terms of the Credit Agreement and SunTrust's own prior interpretation of that provision.  SunTrust previously sued nonparty Calrissian and expressly invoked its authority under Section 8.1 in doing so.  Moreover, SunTrust's current interpretation conflicts with the interpretation it used to defend its actions in its pre-litigation communications with Plaintiffs.  Pre-litigation, Sun Trust *never* raised its current interpretation of Section 8.1.  On the contrary, it stated that it could not bring suit against Virgo *unless Plaintiffs released all known and unknown claims against it.*

2

Plaintiffs' interpretation of Section 8.1, meanwhile, gives ordinary meaning to the plain language.  Section 8.1 states in relevant part that if an Event of Default occurs:

> … the Administrative Agent may, ***and upon the written request of the Required Lenders shall***, by notice to the Borrower, take any or all of the following actions, at the same or different times: … (iii) ***exercise all remedies contained in any other Loan Document***, and (iv) ***exercise any other remedies available at law or in equity***[.]"

(ECF 1-1) (emphasis added).  While Section 8.1 reasonably requires SunTrust to provide "notice to the Borrower" prior to pursuing certain remedies, it does not prohibit the Lenders from requiring that SunTrust pursue remedies, such as a legal action, against other parties.  Instead, Section 8.1 expressly requires SunTrust to pursue ***all*** remedies contained in the loan documents when requested to do so by majority stake Lenders during an event of default.

*Second*, SunTrust argues that Plaintiffs' cause of action for breach of the Joinder Agreement should be dismissed on the ground that it is derivative of the claim for breach of the Credit Agreement.  But the Joinder Agreement is a separate contract.  It contains enforceable promises by SunTrust to fulfill its duties as Administrative Agent.  Because SunTrust refused to honor its obligations under the Credit Agreement, it *also* failed to fulfill the terms of the Joinder Agreement.

*Third*, SunTrust's arguments for dismissal of Plaintiffs' implied covenant claim are also meritless.  Sun Trust argues that the implied covenant of good faith and fair dealing was waived.  But none of the contractual language referenced by SunTrust mentions, much less waives, the implied covenant of good faith and fair dealing.  Any waiver of the implied covenant must be explicit and unambiguous.  Moreover, the implied covenant claim is not duplicative of Plaintiffs' breach of contract claim.  To the extent there is overlap between the predicate facts underlying the two claims, that is appropriate at this stage of the litigation and does not require dismissal.

*Fourth*, SunTrust's argument that Plaintiffs' damages are limited by an exculpatory clause in the Credit Agreement fails because, again, SunTrust's interpretation of the contract is wrong.  In essence, SunTrust argues that it has no liability **even if** it intentionally and willfully breached the contract, so long as it acted in its own financial self-interest.  Such an interpretation is unsupported by the case law, would render the contract illusory, and is contradicted by other provisions of the contract that set forth SunTrust's contractual duties.  Moreover, Plaintiffs have sufficiently alleged that by willfully breaching the contract because Plaintiffs would not give SunTrust a general release including unknown claims, SunTrust engaged in conduct that falls outside even SunTrust's expansive interpretation of the exculpatory clause.

*Finally*, SunTrust argues that Plaintiffs' claims are not ripe because the statute of limitations on any contractual claims against Virgo do not expire until 2022.  SunTrust fails to cite any case supporting its view that it does not have to respond timely to a demand from the entities for which it is an Administrative Agent.  Plaintiffs are owed tens of millions in unpaid debt now, and thus have substantial damages for which they may seek a remedy.  Plaintiffs are not required to wait nearly two years until the statute of limitation expires before they can bring suit.

SunTrust's motion to dismiss misinterprets the contracts, the facts, and the law.  Plaintiffs respectfully request that the Court dismiss the motion in its entirety.

## FACTUAL BACKGROUND

### A.    SunTrust Enters Into the Original Credit Agreement and the Guaranty

In 2014, private investment fund Virgo Investment Group LLC formed Calrissian, a Delaware limited partnership, for the purpose of purchasing Alchemy, an independent film and video distribution company.  (ECF 1 ("Compl.") ¶¶ 24-29.)  Calrissian, a shell vehicle for Virgo,

never had offices or employees of its own, and has been entirely controlled and managed by Virgo.  (*Id.* ¶ 29).  Virgo paid the entire purchase price for Alchemy. (*Id.*)

On September 4, 2014, SunTrust, PMB, and non-party Preferred Bank entered into a Revolving Credit and Term Loan Agreement (the "Original Credit Agreement") with Alchemy as the borrower.  (*Id.* ¶ 31.)  The Original Credit Agreement provided Alchemy with a $20 million revolving loan and a $20 million term loan.  (*Id.*)  The Original Credit Agreement was secured through the Guaranty, executed by Calrissian as Virgo's agent and/or alter ego.  (*Id.* ¶ 33.)  At that time, and unknown to the lenders, Calrissian had virtually no assets and no ability to repay the loans other than by payment by its principal and/or alter ego, Virgo.  (*Id.* ¶ 39).

SunTrust executed the Guaranty as Administrative Agent on behalf of the original lenders.  (Id. ¶ 32; ECF 1-2.)

### B.    The Parties Amend the Credit Agreement in 2015

On July 9, 2015, the Original Credit Agreement was amended, restated and superseded by the Amended and Restated Revolving Credit and Term Loan Agreement, *i.e.*, the Credit Agreement.  (Compl. ¶ 54; ECF 1-1.)  On July 10, 2015, Emigrant became a party to the Credit Agreement through the Term Loan Joinder Agreement (the "Joinder Agreement").  (Compl. ¶ 55.)  Pursuant to the Joinder Agreement, SunTrust agreed that Emigrant would "have all rights of a Lender" under the Credit Agreement.  (ECF 1-4, p. 2.)  SunTrust further agreed to be an "agent on [Emigrant's] behalf and to exercise such powers under the Credit Agreement and the other Loan Documents as are delegated to the Administrative Agent."  (*Id.*)

Following the Joinder Agreement, Alchemy's revolving and term loan facility was increased to $59.5 million, as set forth in the table below. (Compl. ¶ 57.)

| Lender | Revolver Allocation | Term Loan Allocation | Total Allocation | Percentage |
|---|---|---|---|---|
| SunTrust | $9,533,333.34 | $12,283,333.34 | $21,816,666.68 | 36.67% |
| PMB | 6,933,333.33 | 8,933,333.33 | 15,866,666.66 | 26.67% |
| Emigrant | 6,500,000.00 | 8,375,000.00 | 14,875,000.00 | 25.00% |
| Preferred | 3,033,333.33 | 3,908,333.33 | 6,941,666.66 | 11.67% |
| **Total** | **$26,000,000.00** | **$33,500,000.00** | **$59,500,000.00** | **100%** |

The Credit Agreement detailed the rights and responsibilities of SunTrust and the other Lenders. (ECF 1-1.) Section 1.1 defined "Required Lenders" as "Lenders holding more than 50% of the aggregate outstanding Revolving Commitments and Term Loans." (Compl. ¶ 81; ECF 1-1, § 1.1.) Plaintiffs Emigrant and PMB combined have held and continue to hold approximately 51.67% of the aggregate outstanding Revolving Commitments and Term Loans, and thus constitute Required Lenders. (*Id*.) As with the Original Credit Agreement, the amended Credit Agreement was secured by the Guaranty. (ECF 1-1, § 4.20). SunTrust, as Administrative Agent, was vested with the sole right to enforce the Guaranty. (ECF 1-1, § 9.13.)

### C.     Section 8.1 of the Credit Agreement

Section 8.1 of the Credit Agreement, titled "Events of Default," established the right of the Required Lenders to cause SunTrust, as Administrative Agent, to enforce the Lenders' rights in the event of a default by Alchemy. (Compl. ¶¶ 13, 80.) Events of Default include Alchemy's failure to pay any loans when due and Alchemy's declaration of bankruptcy. (ECF 1-1, § 8.1).

Section 8.1 states in part that if an Event of Default occurs:

> then, and in every such event … and at any time thereafter during the continuance of such event, the Administrative Agent may, ***and upon the written request of the Required Lenders shall***, by notice to the Borrower, take any or all of the following actions, at the same or different times: … (iii) ***exercise all remedies contained in any other Loan Document***, and (iv) ***exercise any other remedies available at law or in equity***[.]"

(ECF 1-1, § 8.1) (emphasis added).

### D.      Alchemy and Calrissian Default, and SunTrust Sues Calrissian

In early 2016, Alchemy triggered an Event of Default by failing to pay amounts due under the Credit Agreement.  (Compl. ¶¶ 61-71.)  On June 15, 2016, SunTrust, as Administrative Agent, notified Alchemy and Calrissian pursuant to Section 8.1 that all obligations owed under the Credit Agreement were immediately due and payable (the "Debt Acceleration Notice"). (Compl. ¶¶ 6, 71; ECF 1-6.)  The accelerated debt includes approximately $46 million in unpaid loans, plus interest and other costs.  (*Id*.)  Neither Alchemy nor Calrissian made any payment to SunTrust or the other Lenders after the Debt Acceleration Notice.  (Compl. ¶ 6.)

On July 1, 2016, Alchemy filed a petition under Chapter 7 of Title 11 of the United States Code in the Bankruptcy Court for the District of Delaware, under the caption *In re Our Alchemy, LLC*, Case No. 16-11596-KG (the "Alchemy Bankruptcy").  The Alchemy Bankruptcy is still pending and being administered by a Chapter 7 trustee.  (Compl. ¶ 7.)

On August 5, 2016, SunTrust filed a lawsuit for breach of the Guaranty against Calrissian in the Supreme Court of the State of New York, under the caption *SunTrust Bank v. Calrissian LP*, Index No. 654148/2016 (the "Guaranty Action").   SunTrust sought damages of approximately $46 million based on Calrissian's breach of the Guaranty.  (Compl. ¶ 8).

On February 16, 2017, Calrissian filed a petition under Chapter 11 of Title 11 of the United States Code in the Bankruptcy Court for District of Delaware, under the caption *In re Calrissian LP*, Case No. 17-10356-KG.  (Compl. ¶ 9.)  On August 10, 2018, the proceeding was converted to Chapter 7.  (*Id*.)  On January 9, 2020, the Bankruptcy Court entered an order closing Calrissian's bankruptcy.  (*Id*.)  On June 24, 2020, SunTrust moved to amend the complaint in the Guaranty Action to add Calrissian's general partner, Virgo Service Company LLC, as a defendant.  *See* Plaintiff's Memorandum of Law in Support of Its Motion for Leave to

Amend the Complaint, *SunTrust Bank v. Calrissian LP*, Index No. 654148/2016, NYSCEF 28 (N.Y. Sup. Ct., N.Y. Cty. June 24, 2020).

### E.    The Lenders Conclude There Are Potential Claims Against Calrissian's Parent Company, Virgo

After Calrissian filed for bankruptcy, SunTrust and Plaintiffs considered additional actions to enforce the Guaranty and recover the unpaid debts.  (Compl. ¶ 85.)  Prior to Calrissian's bankruptcy, Virgo had directed that funds distributed to Calrissian be paid to Virgo entities, leaving Calrissian insolvent.  (Id. ¶ 77.)  Moreover, Virgo had used Calrissian as a shell to control Alchemy, misrepresent Alchemy's finances, and misappropriate funds advanced to Alchemy and Calrissian, leaving both entities insolvent.  (*Id*. ¶¶ 76-78.)  Therefore, SunTrust and Plaintiffs concluded in 2017 that the Lenders had colorable claims against Virgo.  (*Id*. ¶¶ 84-85.)

Specifically, Calrissian had entered into the Guaranty as Virgo's actual or ostensible agent.  (Id. ¶ 76.)  The Lenders were led to believe by Virgo's actions and representations that Virgo was Calrissian's principal and would secure the obligations under the Guaranty.  (*Id*.)  Furthermore, Calrissian is Virgo's alter ego.  (*Id*. ¶ 77.)  Virgo dominated, controlled and managed Calrissian, and Calrissian had virtually no assets, no independent offices, and no employees.  (*Id*.)  Therefore, Virgo, as the principal and/or alter ego of Calrissian, is responsible for the debts owed under the Guaranty.  (*Id*. ¶ 78.)

For the last three years, Plaintiffs sought to persuade SunTrust to pursue a claim against Virgo to recover the $46 million that Alchemy and Calrissian failed to repay (and much of which Virgo pocketed).  (Id. ¶¶ 10, 85.)  Emigrant even offered—with no obligation to do so—to manage and pay for such litigation.  (ECF 1-7.)  However, SunTrust refused to cooperate in any action unless Plaintiffs gave it a release of all claims, known *and* unknown.  (*Id*.; ECF ¶ 12.)  Plaintiffs were not willing to release unknown claims against SunTrust.  (ECF 1-7.)

F.      **SunTrust Refuses Plaintiffs' Written Request to Sue Virgo**

On December 13, 2019, Plaintiffs, as Required Lenders, served SunTrust with a formal written request pursuant to Section 8.1 of the Credit Agreement.  (Compl. ¶ 86.)  Plaintiffs identified ongoing Events of Default (including, *inter alia*, Alchemy's failure to pay its debts when due and Alchemy's bankruptcy), and requested that SunTrust, as Administrative Agent, "exercise all remedies at law and in equity, including all remedies available under any of the Loan Documents, to seek payment in full of all Obligations under the Loan Documents[.]"  (*Id.*)

In particular, Plaintiffs requested that SunTrust, as Administrative Agent, file a lawsuit on behalf of the Lenders against Virgo on the grounds that it was Calrissian's principal and/or alter ego.  (*Id.* ¶ 87; ECF 1-7.)  Plaintiffs also offered to manage and pay for the lawsuit against Virgo, with SunTrust having no liability for any litigation costs.  (*Id.*)

After receiving no response to their letter of December 13, 2019, Plaintiffs again wrote to SunTrust on December 19, 2019, reiterating their request that SunTrust take legal action against Virgo on behalf of the Lenders or agree to a cooperation proposal.  (Compl. ¶ 88.)

On January 3, 2020, SunTrust rejected both the demand to file suit and the cooperation proposal.  (*Id.* ¶ 89.)  SunTrust stated that it would only cooperate in any litigation if Plaintiffs gave SunTrust a full general release of all known and unknown claims.  (*Id.*)  SunTrust claimed that the Credit Agreement did not require it to sue Virgo.  (Mot. Ex. 1 [Decl. of Kenneth B. Fowler in Support of SunTrust Bank and Truist Bank's Motion to Dismiss] ("Fowler Decl."), Attachment A).  Finally, SunTrust offered to sell its *pro rata* share of a claim against Virgo, again contingent on a full general release.  (*Id.*)

Plaintiffs responded to SunTrust on January 9, 2020, again requesting that SunTrust comply with its obligations under Section 8.1 of the Credit Agreement to "exercise all remedies contained in any other Loan Document" and "exercise any other remedies available at law or in

9

equity" by filing a lawsuit on behalf of the Lenders against Virgo for breach of the Guaranty or by entering into a litigation cooperation agreement.  (Compl. ¶ 90.)

Once again, SunTrust refused to fulfill its obligations.  (Id. ¶ 91.)  Plaintiffs gave SunTrust months to reconsider its position.  (*Id.*)  When it became clear that SunTrust would not comply with Plaintiffs' request in the absence of a general release, Plaintiffs filed this lawsuit.

## PROCEDURAL HISTORY

Plaintiffs' Complaint sets forth three claims for relief.  In the **first count**, Plaintiffs assert that SunTrust breached the Credit Agreement when it failed to comply with Plaintiffs' request under Section 8.1 that SunTrust exercise remedies contained in the Loan Documents or other remedies available at law or in equity by suing Virgo under the Guaranty.  (Compl. ¶¶ 92–98).

In the **second count**, Plaintiffs assert that SunTrust breached the implied covenant of good faith and fair dealing in the Credit Agreement based on (i) SunTrust's failure to enforce the Guaranty despite its sole right to do so pursuant to Section 9.13 of the Credit Agreement, and (ii) SunTrust's bad faith demand that Plaintiffs provide it with a release of all claims as a condition to fulfilling its contractual obligations.  (*Id*. ¶¶ 99–103).

In the **third count**, Plaintiffs assert that SunTrust breached the Joinder Agreement, including the implied covenant of good faith and fair dealing therein, by failing to fulfill its obligation to "exercise such powers under the Credit Agreement and the other Loan Documents as are delegated to the Administrative Agent," and by demanding a full release as a condition to performing its contractual duties.  (*Id*. ¶¶ 104–110).

Plaintiffs allege actual damages exceeding $26 million as a direct and proximate result of these breaches, representing "their *pro rata* share of the amount due under the Credit Agreement and the Guaranty."  (*Id*. ¶ 13; *see also id*. ¶¶ 98, 103, 110.)

10

## LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), "[t]he court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor." *Pearson Capital Partners LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392, 399 (S.D.N.Y. 2015). "A court should not grant a motion to dismiss unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *CompuDyne Corp. v. Shane*, 453 F. Supp. 2d 807, 817 (S.D.N.Y. 2006) (internal quotation marks omitted).

Where breach of contract is at issue, "[a] motion to dismiss can be granted only where the language of a contract is clear and unambiguous." *Readick v. Avis Budget Grp., Inc.*, 2013 WL 3388225, at *4 (S.D.N.Y. July 3, 2013) (Gardephe, J.). This is because "the Court's role on a 12(b)(6) motion to dismiss is not to resolve contract ambiguities." *Bank of New York Tr., N.A. v. Franklin Advisors, Inc.*, 522 F. Supp. 2d 632, 637 (S.D.N.Y. 2007). On a motion to dismiss, the Court "is required resolve all contractual ambiguities in favor of Plaintiff[s]." *Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 196 (E.D.N.Y. 2007); *see also Bell v. Leakas*, 1993 WL 77320, at *7 (S.D.N.Y. Mar. 13, 1993) (ruling that, where "there are at least two rational interpretations of the [contract] . . . the meaning ascribed to the text by [the plaintiff] will be taken as true for purposes of [a motion to dismiss]").

## ARGUMENT

I.      **SunTrust's Motion to Dismiss Counts I and III Should Be Denied Based on SunTrust's Erroneous Interpretation of the Contracts**

SunTrust argues that Plaintiffs have no contractual right to demand that SunTrust sue nonparties to the Credit Agreement (including Virgo), and, therefore, the first and third claims

for breach of contract should be dismissed. SunTrust's argument is based on flawed interpretations of the Credit Agreement and the Joinder Agreement.

### A.     SunTrust's Interpretation of Section 8.1 Ignores the Plain Language of the Provision and Its Own Prior Actions

"Under New York law, an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994) (citing *Bank Itec N.V. v. J. Henry Schroder Bank & Trust Co.*, 612 F.Supp. 134, 137–38 (S.D.N.Y. 1985)). Here, there is no dispute that a contract exists and that Plaintiffs performed. SunTrust argues that it did not breach the Credit Agreement and Plaintiffs have failed to state a claim for damages.[2]

SunTrust argues that it did not breach the Credit Agreement because, in its view, Section 8.1 does not require SunTrust to pursue remedies that cannot be completed by merely sending a notice to Alchemy: "By its plain language, Section 8.1 applies only to those remedies that can be completed 'by notice to the Borrower.'" (Mot. at 10.) According to SunTrust, "Section 8.1 does not empower Plaintiffs to compel SunTrust to file a lawsuit against *any* non-parties to the Loan Documents because such a lawsuit cannot be commenced 'by notice to the Borrower.'" (*Id.*)

SunTrust's interpretation of Section 8.1 is wrong. The provision states in part that during an Event of Default:

> the Administrative Agent may, and upon the written request of the Required Lenders shall, by notice to the Borrower, take any or all of the following actions, at the same or different times: (i) terminate the Commitments, whereupon the Commitment of each Lender shall terminate immediately, (ii) declare the principal of and any accrued interest on the Loans, and all other Obligations owing hereunder, to be, whereupon the same shall become, due and payable immediately, without presentment, demand, protest or other notice of any kind, all of which are hereby waived by the Borrower, **(iii) *exercise all remedies***

---

[2]  Plaintiffs' address SunTrust's damages arguments in Section III of this memorandum.

*contained in any other Loan Document, and (iv) exercise any other remedies available at law or in equity*[.]

(ECF 1-1 § 8.1) (emphasis added).

While Section 8.1 specifies that the Administrative Agent must provide "notice to the Borrower," it does not state that the ***only*** action SunTrust must take is to give notice to the Borrower (Alchemy). Nor would such a reading make sense. For example, Section 8.1 lists "exercise all remedies contained in any other Loan Document" as an action that the Administrative Agent "*shall*" take upon the written request of the Required Lenders. (*Id.*) "Loan Documents" is defined to include the Guaranty (*see id.* § 1.1), which in turn empowers SunTrust to pursue remedies against parties other than the Borrower (*see, e.g.*, ECF 1-2, §§ 7.4, 7.5). The remedies in the Guaranty are wide-ranging, permitting the Administrative Agent to "demand, sue for, collect or receive any money or property at any time payable or receivable on account of or in exchange for, or make any compromise or settlement deemed desirable with respect to, any of the Collateral" (*id.* § 7.4) and "collect, receive, appropriate and realize upon the Collateral, or any part thereof, and/or may forthwith sell, lease, assign, give option or options to purchase, or otherwise dispose of and deliver the Collateral or any part thereof" (*id.* § 7.5). It is nonsensical to read Section 8.1 as merely requiring notice to the Borrower, when it specifically references remedies that *cannot* be performed by notice to the Borrower alone.

Section 8.1 also permits the Required Lenders to require that the Administrative Agent "exercise any other remedies available at law or in equity." No lawsuit, not even a lawsuit against the Borrower, could be brought by just sending notice. Accordingly, SunTrust's textual argument would nullify this entire portion of Section 8.1. When interpreting a contract, the court should "safeguard against adopting an interpretation that would render any individual provision superfluous." *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir.

13

2002) (internal quotation marks omitted); *accord God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs.*, LLP, 6 N.Y.3d 371, 374 (2006) ("A contract should be read to give effect to all its provisions.") (internal quotation marks omitted).  If the parties intended to limit the Administrative Agent's obligations to merely sending notices to the Borrower, they could have expressly stated so.  They did not.

The phrase "by notice to the Borrower" simply means that SunTrust is to provide notice to the Borrower prior to taking certain actions (except where notice is waived).  Such a meaning is consistent with the plain language of the entire provision, and reflects that the purpose of the notice requirement is to let the Borrower respond, if necessary, to the actions taken.  *See, e.g.*, *In re St. Casimir Dev. Corp.*, 358 B.R. 24, 37–38 (S.D.N.Y. 2007) ("It is the purpose of the default notice to give the borrower one final chance to avoid default.") (quoting *Dale v. Indus. Ceramics, Inc.*, 571 N.Y.S.2d 185, 186 (N.Y. Sup. Ct., N.Y. Cty. 1991)).

SunTrust's reading is not just inconsistent with the rest of the contract; it conflicts with actions that SunTrust *already* took pre-dispute.  On June 15, 2016, SunTrust sent the Debt Acceleration Notice to Calrissian (ECF 1-6), and on August 5, 2016, SunTrust brought the Guaranty Action against Calrissian.  While SunTrust now attempts to convince the Court that these actions were taken pursuant to its discretionary powers (Mot. at 11-12), in both instances SunTrust expressly acknowledged that its actions were taken under Section 8.1.[3]

---

[3]  In the Debt Acceleration Notice sent to Calrissian, SunTrust expressly stated that it was acting "[i]n accordance with Section 8.1 of the Credit Agreement."  (ECF 1-6 at p. 2). Similarly, SunTrust admitted in its complaint in the Guaranty Action that Section 8.1 gave it the "right" to send the Debt Acceleration Notice.  *SunTrust Bank*, Index No. 654148/2016, NYSCEF 2, ¶ 23; *see also id*. ¶ 42 ("[I]n accordance with Section 8.1 of the Credit Agreement, SunTrust … notified Alchemy and Calrissian that it was, *inter alia*, accelerating the obligations owed under the Credit Agreement.").  SunTrust further alleged that Calrissian breached the Guaranty Agreement by failing to pay certain obligations triggered by the Debt Acceleration Notice.  *Id*. ¶¶

Equally telling, when SunTrust first responded to Plaintiffs' written request in January 2020, it did not rely upon the interpretation it now claims.  Instead, SunTrust alleged that Section 8.1 contained a "scrivener's error," and that the "clear intent of section 8.1 is to empower the Administrative Agent to render the Obligations 'due and payable', not to force it to pursue 'any' remedy that the Lenders can imagine."  (Fowler Decl. Attachment A).  The Court should not accept SunTrust's evolving, inconsistent, and made-for-litigation view of the meaning of Section 8.1.[4]

### B.   Plaintiffs Adequately Allege That SunTrust Breached the Joinder Agreement

SunTrust argues that Plaintiffs' "claim for breach of the Term Loan Joinder Agreement fails because its claim under the Credit Agreement fails," asserting that "Plaintiffs do not allege that SunTrust breached any provision of the Term Loan Joinder Agreement independent of the Credit Agreement."  (Mot. at 13).

SunTrust fails to acknowledge that (i) the Joinder Agreement was a separate contract between SunTrust and the other Lenders, and (ii) the Joinder Agreement contained independent promises that SunTrust intentionally breached.  In the Joinder Agreement, Emigrant "appoint[ed] and authorize[ed] the Administrative Agent to take such action as agent on its behalf and to exercise such powers under the Credit Agreement and the other Loan Documents as are

---

4, 5, 43, 52.  Thus, SunTrust's present interpretation of Section 8.1 is contradicted by its own pre-litigation statements and actions.

[4] SunTrust also relies upon Section 9.2 of the Credit Agreement (Mot. at 12), which states in relevant part that the "Administrative Agent shall not have any . . . obligations except those expressly set forth in this Agreement and the other Loan Documents."  But as alleged in the Complaint, SunTrust has breached its obligation set forth *expressly* in Section 8.1 that it "shall" act upon the written request of the Required Lenders.  *See Beal Sav. Bank v. Sommer*, 8 N.Y.3d 318, 326 (2007) (recognizing "unequivocal collective design" of loan documents requiring Administrative Agent to act at direction of contractually defined Required Lenders).  Therefore, Section 9.2 provides no basis to dismiss the first or third claims for relief.

delegated to the Administrative Agent, as the case may be, by the terms thereof, together with such powers as are reasonably incidental thereto." (ECF 1-4 at 2). In addition, Emigrant was granted "all rights of a Lender" under the Credit Agreement. (*Id*.)

By its plain terms, the Joinder Agreement requires SunTrust to exercise such powers as are delegated to the Administrative Agent in the Credit Agreement. SunTrust breached this obligation when it failed to comply with Plaintiffs' written request under Section 8.1 of the Credit Agreement. (Compl. ¶ 109). As stated above, Plaintiffs' claim under the Credit Agreement is adequately supported by Plaintiffs' reasonable interpretation of Section 8.1. SunTrust does not cite any support for its argument that a breach of one contract may not form the basis for a breach of a second contract, and Plaintiffs are not aware of any. *See Queens Ballpark Co., LLC v. Vysk Commc'ns*, 226 F. Supp. 3d 254, 260 (S.D.N.Y. 2016) (granting summary judgment for breach of two related contracts, but prohibiting double recovery).

### C.     SunTrust Fails to Challenge Plaintiffs' Allegation That SunTrust Breached the Implied Covenant in the Joinder Agreement

In Count III, Plaintiffs allege that SunTrust breached the implied covenant of good faith and fair dealing inherent in the Joinder Agreement by, *inter alia*, demanding a full release from Plaintiffs prior to complying with its contractual obligations. (Compl. ¶ 109). While SunTrust seeks to dismiss Plaintiffs' implied covenant claim as to the Credit Agreement (Count II), SunTrust does not present any argument as to why the good and faith and fair dealing portion of Count III should be dismissed. Therefore, any such argument is waived.

### II.     The Court Should Deny SunTrust's Motion to Dismiss the Claim for Breach of the Implied Covenant in the Credit Agreement (Count II)

SunTrust argues that the Court should dismiss Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing in the Credit Agreement on two grounds: "(1) Plaintiffs waived implied-covenant claims against SunTrust, as Administrative Agent, in the Credit

16

Agreement, and (2) the claim is impermissibly derivative of the breach of Credit Agreement claim." (Mot. at 13). SunTrust's waiver argument fails because the contract never mentions, much less expressly waives, the implied covenant. In addition, the implied covenant claim is not duplicative of the breach of contract claim because it is not based solely on SunTrust's breach of Section 8.1.

### A.      The Credit Agreement Does Not Contain a Waiver of the Implied Covenant

SunTrust first argues that Section 9.2 of the Credit Agreement waives any claim for breach of the implied covenant of good faith and fair dealing. Section 9.2 is titled "Nature of Duties of the Administrative Agent" and states in part that "[t]he Administrative Agent shall not have any duties or obligations except those expressly set forth in this Agreement and the other Loan Documents" and "the Administrative Agent shall not be subject to any fiduciary or other implied duties[.]" (ECF 1-1, § 9.2). This section of the Credit Agreement does not mention, much less *expressly and unambiguously waive*, the implied covenant of good faith and fair dealing.

"For all contracts, New York law imposes an implied covenant of good faith and fair dealing such that a party may be in breach of the duty even when it has abided by the express terms of the contract." *In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 466 (S.D.N.Y. 2013) (declining to decide whether the implied covenant may be waived under New York law); *Outback/Empire I, Ltd. P'ship v. Kamitis, Inc*., 35 A.D.3d 563 (2d Dep't 2006) ("It is well settled that in every contract there exists an implied covenant of good faith and fair dealing.") (internal quotation marks omitted). The implied covenant constitutes a pledge that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Dalton v. Educ. Testing Serv*., 87 N.Y.2d 384, 389 (1995).

17

As a preliminary matter, SunTrust's cases provide little support for the proposition that the implied covenant can be impliedly waived in a contract. *Enron* and *Phoenix Light* do not cite any prior authority holding that the implied covenant of good faith may be waived under New York law. *In re Enron Corp.*, 292 B.R. 752, 782–84 (Bankr. S.D.N.Y. 2003); *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, 2016 WL 1169515, at \*10 (S.D.N.Y. Mar. 22, 2016). SunTrust's third case, *Commerzbank*, merely cites to *Phoenix Light*. *See Commerzbank AG v. U.S. Bank Nat'l Ass'n*, 277 F. Supp. 3d 483, 498 (S.D.N.Y. 2017).[5] Moreover, each of these cases dismisses the implied covenant claim on separate and independent grounds from waiver, thus their statements that the implied covenant may be waived constitute *dicta*. *Phoenix Light*, 2016 WL 1169515, at \*10 (dismissing implied covenant claim as duplicative of breach of contract claim); *Commerzbank*, 277 F. Supp. 3d at 498 (same); *Enron*, 292 B.R. at 784–85 (granting summary judgment on implied covenant claim after finding that plaintiff did not violate a duty of good faith).

More fundamentally, even if the implied covenant may be waived, such waiver must be expressly stated and unambiguous to support a motion to dismiss. *See*, *e.g.*, *Commerzbank*, 277 F. Supp. 3d at 498 (requiring that the implied covenant of good faith and fair dealing be "expressly disclaimed"). "A party's intention to relinquish its known contractual rights must be clear, unmistakable, and without ambiguity." *Highland CDO Opportunity Master Fund, L.P. v.*

---

[5]   Although it appears to be an undecided question in New York, many jurisdictions prohibit parties from waiving the implied covenant of good faith and fair dealing as a matter of public policy. *See Freeman & Mills, Inc. v. Belcher Oil Co.*, 900 P.2d 669, 672 (Cal. 1995) (parties to a commercial contract are not free to disclaim the implied covenant); *Spadoni v. United Airlines, Inc.*, 47 N.E.3d 1152, 1159-60 (2015) (the implied covenant may not be disavowed in a contract in Illinois) ; *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 287 (2014) (recognizing that "under Minnesota law parties cannot contract out of the covenant"); *Stark v. Circle K Corp.*, 751 P.2d 162, 166 (Mont. 1988) (the implied covenant is not subject to express or implicit waiver in employment contracts).

*Citibank, N.A.*, 2013 WL 1191895, at *6 (S.D.N.Y. Mar. 22, 2013) (internal quotation marks omitted).

Here, there is no reference to the implied covenant of good faith and fair dealing in the Credit Agreement, let alone an express, unambiguous waiver.  Instead, SunTrust implies a waiver from a reference to the scope of SunTrust's duties.  This claim should not be dismissed based on ambiguous contract language.  *See Franklin*, 522 F. Supp. 2d at 637 ("The Court's role on a 12(b)(6) motion to dismiss is not to resolve contract ambiguities.").

SunTrust cites a portion of Section 9.2 that states "the Administrative Agent shall not have any duties or obligations except those expressly set forth in this Agreement and the other Loan Documents."  SunTrust then relies upon *dicta* from a single, rarely cited bankruptcy case—*Enron*—to support its argument that this language is sufficient to waive the implied covenant.  Contrary to Sun Trust's view, however, this language in Section 9.2 is entirely consistent with the implied covenant, which "cannot be used to create independent obligations beyond those agreed upon and stated in the express language of the contract[s]." *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 306 (S.D.N.Y. 1998) (citing *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir.1992)).

SunTrust also cites language from Section 9.2 stating that the Administrative Agent shall not be subject to any "fiduciary or other implied duties."  (ECF 1-1, § 9.2).  SunTrust does not cite *any* case in which a court dismisses an implied covenant claim based on contract language concerning "other implied duties," and this Court should not be the first.  Moreover, the Credit Agreement explicitly disclaims certain implied duties in Section 9.2 (*i.e.*, fiduciary duties, the duty to disclose, the duty to exercise discretionary powers), but makes no mention of the implied

covenant of good faith and fair dealing.  The phrase "other implied duties" is ambiguous, and therefore it would be inappropriate to resolve the meaning of the phrase on a motion to dismiss.

### B.      The Implied Covenant Claim Is Not Duplicative of the Breach of Contract Claim

SunTrust also argues, incorrectly, that the implied covenant claim is duplicative of the breach of contract claim.  To begin with, Plaintiffs are permitted to plead in the alternative, particularly in a case such as this where there is a dispute as to SunTrust's duties under the Credit Agreement.  Fed. R. Civ. P. 8(d)(2–3); *Fantozzi v. Axsys Technologies, Inc.*, 2008 WL 4866054, at *7 (S.D.N.Y. Nov. 6, 2008) ("A claim for breach of contract does not preclude a party from bringing a claim for breach of the implied covenant of good faith and fair dealing when they are brought in the alternative.").

In addition, "New York courts do . . . recognize a separate cause of action for breaches of the covenant of good faith and fair dealing in cases involving efforts by one party to a contract to subvert the contract itself."  *Semple v. Eyeblaster, Inc.*, 2009 WL 1457163, at *10 (S.D.N.Y. 2009).  Thus, an implied covenant claim may be brought "where one party's conduct, though not breaching the terms of the contract in a technical sense, nonetheless deprived the other party of the benefit of its bargain."  *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, 2009 WL 321222, at *4 (S.D.N.Y. Feb. 9, 2009) (quoting *Pearce v. Manhattan Ensemble Theater, Inc.*, 528 F. Supp. 2d 175, 180–81 (S.D.N.Y. 2007)).  "[A] plaintiff adequately states an implied covenant claim by alleging conduct that subverts the contract's purpose without violating its express terms."  *IDW*, 2009 WL 321222, at *5.

Here, Plaintiffs' alternative implied covenant claim is based on allegations that SunTrust subverted the Credit Agreement without violating express terms of the agreement.  *First*, Plaintiffs allege that SunTrust breached the implied covenant by "by failing to enforce the

Guaranty against Virgo."  (ECF 1, ¶ 101.)  Prior to Plaintiffs' December 13, 2019 demand letter, SunTrust did not have an express contractual duty to sue Virgo for breach of the Guaranty.  Its failure to do so for nearly three years after acknowledging that the Lenders had colorable claims, when it had the sole right to do so, violated the implied covenant and deprived Plaintiffs of the benefit of their bargain.

*Second*, Plaintiffs allege that SunTrust breached the implied covenant by "insisting on a full release of all claims before fulfilling its contractual duties." (ECF 1, ¶ 102).  The Credit Agreement is silent as to whether SunTrust may coerce the other Lenders into signing a release prior to fulfilling its duties, thus this action alone does not violate an express term of the Credit Agreement.  But it is unavoidably an act of bad faith.  SunTrust tried to use its position as Administrative Agent for the other Lenders—*i.e.*, its exclusive power to enforce the Guaranty — as leverage to obtain a collateral benefit for itself, and then refused to perform its duties when Plaintiffs declined to submit to its demand.  Because the breach of contract claim and the implied covenant claim do not have identical factual bases, Plaintiffs' implied covenant claim should not be dismissed as duplicative.

## III.  Plaintiffs Adequately Allege Damages

SunTrust further asserts that Plaintiffs' damages claims are prohibited by the Credit Agreement's exculpatory clause, and that Plaintiffs' claims are not ripe.  Both arguments lack merit and should be denied.

### A.  Section 9.2 of the Credit Agreement Does Not Shield SunTrust From Liability for Its Intentional Breaches

SunTrust argues that Section 9.2 of the Credit Agreement contains an exculpatory clause that exempts SunTrust from any liability even in the case of an intentional, material breach, so long as it did not engage in "gross negligence or willful misconduct."  (Mot. at 17 (quoting ECF

1-1, § 9.2)).  This argument fails for three reasons.  *First*, the exculpatory clause is ambiguous, and thus presents a question of fact that should not be determined on a motion to dismiss. *Second*, even if SunTrust's interpretation was accepted, Plaintiffs have alleged that SunTrust engaged in "gross negligence" or "willful misconduct" by refusing in bad faith to perform its contractual obligations unless Plaintiffs executed a full release of known and unknown claims. *Third*, SunTrust argues that it may intentionally breach the contract so long as it acted in its own financial self-interest.  But such an extreme interpretation, which would permit SunTrust to avoid even actual damages for a knowing, intentional breach costing Plaintiffs over $26 million, would nullify or render meaningless other provisions of the Credit Agreement relating to SunTrust's duties.

Exculpatory provisions are "disfavored by the law and closely scrutinized by the courts." *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 842 F. Supp. 2d 682, 707 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).  Thus, such clauses "should be strictly construed against the person seeking exemption from liability."  *Id*.  The terms "gross negligence" and "willful misconduct" are ambiguous in the context of a breach of contract, and therefore must be ascertained from the intent of the parties and not from general tort law principles, making this determination highly fact-intensive.  *See, e.g.*, *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 435–38 (1994) (disagreeing that "tort law principles apply in all cases in which the word willful is at issue").  Because "[a] motion to dismiss can be granted only where the language of a contract is clear and unambiguous," *Readick*, 2013 WL 3388225, at *4, the Court should deny SunTrust's motion.

Furthermore, SunTrust argues, incorrectly, that Plaintiffs did not explicitly allege "gross negligence" or "willful misconduct."  (Mot. at 17.)  But such formalism is not required.  *See*

*Banc of Am. Sec. LLC v. Solow Bldg. Co. II*, 47 A.D.3d 239, 242 (2007) ("That the complaint does not use the words 'malice' and 'willful' is not material.").  At most, Plaintiffs need only allege "tortious intent, such as fraud, malice, a dishonest purpose or bad faith" to meet this standard.  *In re CCT Commc'ns, Inc.*, 464 B.R. 97, 106 (Bankr. S.D.N.Y. 2011) (citing *Kalisch-Jarcho v City of New York*, 58 N.Y.2d 377, 385 (1983).  Pleading gross negligence requires even less, as Plaintiffs must merely allege "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing."  *CCT*, 464 B.R.  at 106 (citation omitted).

Under any of these standards, Plaintiffs have adequately alleged that SunTrust engaged in gross negligence or willful misconduct through its deliberate, intentional and "bad faith" refusal to perform its obligations as Administrative Agent unless Plaintiffs gave it a general release. (Compl. ¶¶ 85, 89, 102.)  Similar coercive action has been held to constitute willful misconduct. *See Solow*, 47 A.D.3d at 242–43 ("The allegations of the complaint suffice to raise the issue of defendant's resort to coercion to derive a benefit not bestowed by the parties' agreement."). SunTrust's bad faith breach of its contractual duties in order to coerce Plaintiffs to sign a release also showed a "reckless indifference to the rights of [Plaintiffs]" which cannot be immunized through an exculpatory provision.  *See Kalisch-Jarcho*, 58 N.Y.2d at 385.

None of the cases relied upon by SunTrust hold that an exculpatory provision may bar actual, as opposed to consequential, damages for a breach of a material term of a contract.  In fact, the primary case relied upon by SunTrust actually *allowed the recovery of actual damages* even in the absence of gross negligence or willful misconduct, despite an exculpatory provision limiting liability to "loss, liability, damage or expense that is directly caused by its gross negligence or willful misconduct." *Morgan Stanley & Co. Inc. v. Peak Ridge Master SPC Ltd.*, 930 F.Supp.2d 532, 544-45 (S.D.N.Y. 2013); *see also Deutsche Alt-A Sec. Mortg. Loan Tr.*,

*Series 2006-OA1 v. DB Structured Prod., Inc.*, 958 F. Supp. 2d 488, 500-501 (S.D.N.Y. 2013) (collecting cases allowing actual damages despite exculpatory provisions).  The other cases cited by SunTrust involve alleged breaches of "ministerial duties" with no allegation of bad faith, much less the type of coercion engaged in by SunTrust.  *See Eaton Vance Mgmt. v. Wilmington Sav. Fund Soc., FSB*, 2018 WL 1947405, at *5, 10 (N.Y. Sup. Ct., N.Y. Cty. Apr. 25, 2018), (administrative agent with "no skin in the game" engaged in "mere ministerial duties" at the direction of the Required Lenders); *Repsol, S.A. v The Bank of New York Mellon*, 2014 WL 468910 (N.Y. Sup. Ct., N.Y. Cty. Feb. 4, 2014) (plaintiff "failed to plead bad faith"); *Retty Fin., Inc. v. Morgan Stanley Dean Witter & Co.*, 293 A.D. 2d 341, 341 (1st Dep't 2002) (the complaint failed to make allegations "'smack[ing]' of intentional wrongdoing") (citation omitted).

Finally, SunTrust argues that, as a matter of law, it did not engage in willful misconduct by intentionally breaching the Credit Agreement because it acted in its own financial self-interest.  Such an interpretation would, if accepted, nullify many portions of the Credit Agreement relating to SunTrust's duties by making SunTrust's promises unenforceable.  "It is well settled that, under New York law, courts will refuse, wherever possible, to interpret a contractual term in such a way as to nullify other provisions."  *Greylock Glob. Opportunity Master Fund Ltd. v. Province of Mendoza*, 2004 WL 2290900, at *3 (S.D.N.Y. Oct. 12, 2004).  Under SunTrust's interpretation, Plaintiffs would have no remedy for their actual damages resulting from SunTrust's deliberate breaches.  Such an interpretation should be rejected. *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 255 F. Supp. 3d 443, 457 (S.D.N.Y. 2015) ("Under New York law, courts should avoid a contractual interpretation that renders an agreement illusory and unenforceable for lack of mutual obligation."); *See Noble Lowndes*, 84

N.Y.2d at 438 ("Language in contracts placing one party at the mercy of the other is not favored by the courts.").

Therefore, it would be inappropriate to dismiss the Complaint at this stage based on SunTrust's interpretation of Section 9.2 of the Credit Agreement.

### B.      Plaintiffs Have Been Damaged By SunTrust's Breaches, Thus Their Claims Are Ripe

SunTrust also argues that Plaintiffs' claims are not ripe because SunTrust could in theory file a claim against Virgo up until June 2022, when the statute of limitations will run.  If Plaintiffs could not bring this lawsuit until then, that would leave Plaintiffs without a remedy for more than an additional  two years for the repayment of over $26 million in loans and interest to which they have been entitled since 2016.[6]  SunTrust's action in refusing Plaintiff's December 2019 request constitutes an actionable breach, and Plaintiffs' claims are ripe now.  *See UBS AG v. Cournot Fin. Prod., LLC*, 2010 WL 3001884, at *1 (S.D.N.Y. Jul. 26, 2010) (a breach of contract action is ripe "immediately upon the [alleged] breach").

### CONCLUSION

SunTrust's arguments in support of its motion to dismiss are without merit, and thus Plaintiffs respectfully request that the Court deny the motion in its entirety.  However, should the Court grant SunTrust's motion in full or in part, Plaintiffs request leave to amend.

---

[6]   While SunTrust has moved to sue Virgo Service Company, LLC in the Guaranty Action, this does not satisfy Plaintiffs' written request under Section 8.1 to bring suit against "Virgo Investment Group LLC and related persons and entities."  (ECF 1-7; Compl. ¶¶ 3, 86-90.)

Dated: New York, New York
September 25, 2020

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By:   */s/ Corey Worcester*
Corey Worcester
Leigha Empson
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Gary E. Gans (*pro hac vice*)
Sage R. Vanden Heuvel (*pro hac vice*)
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Plaintiffs Emigrant Bank and
Pacific Mercantile Bank*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EMIGRANT BANK; AND PACIFIC MERCANTILE BANK,<br><br>                     Plaintiffs,<br><br>        -against-<br><br>SUNTRUST BANK; TRUIST BANK; AND DOES 1 THROUGH 10, INCLUSIVE,<br><br>                     Defendants. | Civil Action No. 1:20-cv-02391-PGG |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2020, I caused to be served upon the following counsel to Defendants, by electronic mail, with consent of Defendants, a true and correct copy of the foregoing Memorandum of Law in Opposition to Defendants' Motion to Dismiss:

| | |
|---|---|
| Peter Isajiw<br>Kenneth B. Fowler<br>KING & SPALDING<br>1185 Avenue of the Americas<br>New York, NY 10036<br>Telephone:  (212) 556-2235<br>Facsimile:  (212) 556-2222<br>Email:  pisajiw@kslaw.com<br>        kfowler@kslaw.com | David Tetrick, Jr.<br>KING & SPALDING<br>1180 Peachtree Street, NE<br>Suite 1600<br>Atlanta, GA 30309<br>Telephone:  (404) 572-3526<br>Email:  dtetrick@kslaw.com |

Dated: September 25, 2020

                    QUINN EMANUEL URQUHART &
                       SULLIVAN, LLP

            By:    */s/ Sage R. Vanden Heuvel*
                   Sage R. Vanden Heuvel

                   *Attorneys for Plaintiffs Emigrant Bank and*
                   *Pacific Mercantile Bank*

1
