**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EMIGRANT BANK AND PACIFIC MERCANTILE BANK,<br><br>      Plaintiffs,<br><br>      v.<br><br>SUNTRUST BANK; TRUIST BANK; AND DOES 1 THROUGH 10 INCLUSIVE,<br><br>               Defendants. | Civil Action No. 1:20-cv-02391-PGG |

## DEFENDANTS SUNTRUST BANK AND TRUST BANK'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

David Tetrick, Jr. (admitted *pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, GA 30309-3521
Phone: 404-572-4600
Fax: 404-572-5100
dtetrick@kslaw.com

Peter Isajiw
Kenneth B. Fowler (admitted *pro hac vice*)
1185 Avenue of the Americas
New York, NY 10036
Phone: 212-556-2235
Fax: 212-556-2222
pisajiw@kslaw.com
kfowler@kslaw.com

*Attorneys for Defendants*
*SunTrust Bank and Truist Bank*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 1

   I.  Plaintiffs Fail to State a Claim for Breach of Contract. ....................................... 1

      A.  Plaintiffs Fail to State a Claim for Breach of the Credit Agreement. ..................... 1

      B.  Plaintiffs Fail to State a Claim for Breach of the Term Loan Joinder
           Agreement. .......................................................................................................... 3

  II.  Plaintiffs Fail to State a Claim for Breach of the Implied Covenant. ................. 4

      A.  Plaintiffs Expressly Waived Any Implied-Covenant Claims. ............................. 4

      B.  Any Implied-Covenant Claim Is Duplicative of the Breach Claims. ................... 5

 III. Plaintiffs Fail to State a Claim for Damages on All Counts of the Complaint. ................ 6

      A.  The Credit Agreement's Exculpatory Clause Bars Plaintiffs' Claims. .................. 6

      B.  Plaintiffs Lack Damages Because Their Claim Is Not Ripe. .................................. 9

CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fed'n of Musicians v. Atl. Recording Corp.*,
  203 F. Supp. 3d 301 (S.D.N.Y. 2016) ................................................................ 2

*Base Vill. Owner LLC v. Hypo Real Estate Capital Corp.*,
  92 A.D.3d 541 (N.Y. 1st Dep't 2012) ................................................................ 8

*Commerzbank AG v. U.S. Bank Nat'l Ass'n*,
  277 F. Supp. 3d 483 (S.D.N.Y. 2017) ............................................................ 4, 5

*Deutsche Alt-A Securities Mortgage Loan Trust, Series 2006-OA1 v. DB
  Structured Prod., Inc.*,
  958 F. Supp. 2d 488 (S.D.N.Y. 2013) ................................................................ 8

*Eaton Vance Management v Wilmington Sav Fund Soc., FSB*,
  No. 654397/2017, 2018 WL 1947405 (N.Y. Sup. Ct., N.Y. Cty. Apr. 25,
  2018) ................................................................................................................... 8

*Elie v. Ifrah PLLC*,
  No. 2:13-CV-888, 2014 WL 547958 (D. Nev. Feb. 10, 2014) .......................... 10

*In re Enron Corp.*,
  292 B.R. 752 (Bankr. S.D.N.Y. 2003) ................................................................ 5

*Fruition, Inc. v. Rhoda Lee, Inc.*,
  1 A.D.3d 124 (N.Y. 1st Dep't 2003) ................................................................ 10

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*,
  17 F. Supp. 2d 275 (S.D.N.Y. 1998) .................................................................. 6

*Harz v. United States*,
  711 F. Supp. 114 (S.D.N.Y. 1989) .................................................................. 10

*Hotel 71 Mezz Lender LLC v. Mitchell*,
  63 A.D.3d 447 (N.Y. 1st Dep't 2009) ................................................................ 5

*Metro. Capital Funding, LLC v. Nomura Credit & Capital, Inc.*,
  880 N.Y.S.2d 874 (N.Y. Sup. Ct., N.Y. Cty. Feb. 9, 2009) ............................... 7

*Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*,
  84 N.Y.2d 430 (1994) ......................................................................................... 9

*Morgan Stanley & Co. Inc. v. Peak Ridge Master SPC Ltd.*,
  930 F. Supp. 2d 532 (S.D.N.Y. 2013) ........................................................ 7, 8, 9

*Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*,
    392 F.3d 520 (2d Cir. 2004)...............................................................................................10

*Repsol, S.A. v The Bank of New York Mellon*,
    No. 652653/2012, 2014 WL 468910 (N.Y. Sup. Ct., N.Y. Cty. Feb. 04, 2014) ......................8

*Retty Fin., Inc. v. Morgan Stanley Dean Witter & Co.*,
    293 A.D.2d 341 (N.Y. Ct. App., 1st Dep't 2002)....................................................................9

**Other Authorities**

Fed. R. Civ. P. 8...........................................................................................................................5

## INTRODUCTION

Plaintiffs are large, sophisticated banks that entered into arms-length transactions whereby they agreed to loan money to a borrower through a syndicated loan arrangement memorialized in heavily-negotiated loan documents that also established the relationship between the Lenders and the Administrative Agent. The Borrower defaulted, and SunTrust, as Administrative Agent, is actively pursuing the Guarantor and its general partner to enforce the Lenders' rights (including SunTrust's, as one of the lenders) under the terms of the loan documents. Plaintiffs want SunTrust to immediately expand the litigation to include contractual nonparties, based on unspecified legal theories, or turn over the litigation to them. But the loan documents do not provide the lenders the power to control or take over the litigation. This lawsuit is an attempt to rewrite the terms of the loan documents to give the lenders more power than they bargained for to control the manner and means by which SunTrust enforces the lenders' rights. Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opp.") confirms that Plaintiffs' claims have no basis and fact or law, and the Court should dismiss the Complaint.

## ARGUMENT

**I.    Plaintiffs Fail to State a Claim for Breach of Contract.**

      **A.    Plaintiffs Fail to State a Claim for Breach of the Credit Agreement.**

As demonstrated in SunTrust's opening brief, Plaintiffs fail to state a claim for breach of the Credit Agreement because Section 8.1's unambiguous language expressly authorizes SunTrust to take, and the Required Lenders to require, only those actions that can be completed "by notice to the Borrower." (Mot. at 10–12.) SunTrust, however, retains sole discretion as Administrative Agent to take other actions—like suing third parties—pursuant to the residual powers clause found in Section 10.2(a) of the Credit Agreement. (*Id.*) Plaintiffs' scattershot counter-arguments fail.

First, Plaintiffs insist that the contractual language "by notice to the Borrower" "simply means that SunTrust is to provide notice to the Borrower prior to taking certain actions (except where notice is waived)."  (Opp. at 14.)  In other words, according to Plaintiffs, the preposition "by" in "by notice to the borrower" doesn't mean "through" or "via" as it is usually and ordinarily understood; instead, Plaintiffs contend that "by" means "with advance," such that the provision requires SunTrust to "provide notice to the Borrower prior to taking certain actions."  (Opp. at 14.)  But interpretations giving "ordinary meaning to the plain language" of a contract do not require substituting a different, preferable word to vary the actual plain language.  The Court should reject Plaintiff's attempt to re-write the contract so that "by" means "with."  *See Am. Fed'n of Musicians v. Atl. Recording Corp.*, 203 F. Supp. 3d 301, 309 (S.D.N.Y. 2016) ("[A] court must not rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous.").

Second, Plaintiffs misleadingly assert that SunTrust delivered a Notice of Acceleration of Debt to "[Borrower] Alchemy *and* [Guarantor] Calrissian pursuant to Section 8.1" of the Credit Agreement, suggesting that SunTrust effectively conceded that Section 8.1 authorizes notices to loan non-parties.  (Opp. at 7, 14–15 (emphasis added).)  But that is not true.  The express language of the Notice states that it was sent "[i]n accordance with Section 8.1 of the Credit Agreement and Section 7.5 of the Guaranty" Agreement and that SunTrust "inten[ded] to exercise its rights pursuant to Section 7.1(b) of the Guaranty."  (ECF 1-6, at 3.)  This text shows that SunTrust relied on Section 8.1 of the Credit Agreement for purposes of serving the Notice on Borrower, while it relied on Section 7.5 of the Guaranty Agreement for purposes of serving it on Guarantor.

Third, Plaintiffs' argument that "[w]hile Section 8.1 specifies that [SunTrust] must provide 'notice to the Borrower,' it does not state that the *only* action SunTrust must take is to give notice to the Borrower" (Opp. at 13.) is a strawman because it's predicated on Section 8.1 containing

2

different language than it actually does.  The tell is that Plaintiffs' quotation omits the word "by" from Section 8.1's "by notice to the borrower."  For Plaintiffs' interpretation to work, Section 8.1 would need to use the proposition "with" (i.e., "accompanied by").  But it does not.  Moreover, Plaintiffs' argument ignores that, although nothing in Section 8.1 gives Plaintiffs the authority to compel the SunTrust to sue loan nonparties, the Credit Agreement's residual powers clause empowers SunTrust to take actions in the event of default, such as initiating lawsuits where appropriate.  (ECF 1-1, § 10.2(a).)

> **B.    Plaintiffs Fail to State a Claim for Breach of the Term Loan Joinder Agreement.**

While Plaintiffs note that the Term Loan Joinder Agreement was a separate contract with its own language, they do not actually contest the point that their breach of contract claim with respect to the Term Loan Joinder Agreement is entirely dependent on establishing a breach of the Credit Agreement.  (*See* Opp. at 15–16.)  Indeed, Plaintiffs expressly contend that "SunTrust breached this obligation when it failed to comply with Plaintiffs' written request under Section 8.1 of the Credit Agreement." (*Id.* at 16.)  Because Plaintiffs' breach of Credit Agreement claim fails, so does their claim for breach of contract with respect to the Term Loan Joinder Agreement.

Likewise, to the extent that Plaintiffs claim that SunTrust breached the implied covenant of good faith and fair dealing with respect to the Term Loan Joinder Agreement, that claim fails for the same reasons that their implied-covenant claim fails with respect to the Credit Agreement.[1]

The Court should therefore dismiss the third count of the Complaint.

---

[1] Plaintiffs wrongly contend that SunTrust waived this argument.  Not so.  In response to Plaintiffs' allegation that SunTrust "breached the Term Loan Joinder Agreement, including the implied covenant of good faith and fair dealing therein" (Compl. ¶ 109), SunTrust argued that the claim failed for the same reason that any breach of contract claim fails under the Credit Agreement (Mot. at 12–13).  Just as Plaintiffs incorporated an implied-covenant claim within the breach claim, SunTrust's reference to any breach claims incorporates arguments under the implied covenant.

**II.     Plaintiffs Fail to State a Claim for Breach of the Implied Covenant.**

Nothing in Plaintiffs' opposition saves their claim for breach of the implied covenant of good faith and fair dealing from dismissal.  The claim fails because they waived it and because the claim is duplicative of their breach-of-contract claims.  (Mot. at 13–17.)

**A.     Plaintiffs Expressly Waived Any Implied-Covenant Claims.**

Plaintiffs expressly waived their implied covenant claims in two related contractual provisions: (1) the provision that SunTrust "shall not be subject to any fiduciary or other implied duties"; and (2) the provision that "the Administrative Agent shall not have any duties or obligations except those expressly set forth in this Agreement and the other Loan Documents." (Mot. at 14–15 (citing ECF 1-1, Credit Agreement, § 9.2).)  Plaintiffs' counter-arguments fail.

First, an implied-covenant claim requires a breach of an implied duty under an existing contract.  (Mot. at 14 (citing *HSH Nordbank AG New York Branch v. Street*, 421 F. App'x 70 (2d Cir. 2011), *Beninati v. F.D.I.C.*, 55 F. Supp. 2d 141 (E.D.N.Y. 1999), and *JM Vidal, Inc. v. Texdis USA, Inc.*, 764 F. Supp. 2d 599 (S.D.N.Y. 2011)).)  Plaintiffs' lead implied-covenant case, *In Touch Concepts, Inc. v. Cellco Partnership*, confirms this by describing a claim for breach of the implied covenant as a claim that a party is "in breach of the duty."  949 F. Supp. 2d 447, 466 (S.D.N.Y. 2013).  Plaintiffs, however, disclaimed imposing *any* "implied duties" and any "obligations except those expressly set forth" in the Credit Agreement on SunTrust, as Administrative Agent.  (ECF 1-1, § 9.2.)  Plaintiffs' own case and express contractual agreement therefore bar their implied covenant claims.

Second, in the face of authority from this District applying New York law and dismissing implied-covenant claims based on contractual waivers, Plaintiffs muse about other states that do not permit waivers of the implied covenant and question whether such waivers are really enforceable under New York law.  (Opp. at 16–17, 18 n.5.)  They are.  *See Commerzbank AG v.*

*U.S. Bank Nat'l Ass'n*, 277 F. Supp. 3d 483, 498 (S.D.N.Y. 2017) (applying New York law and dismissing implied-covenant claim based on contractual provision that "no implied covenants or obligations shall be read into this Agreement"); *In re Enron Corp.*, 292 B.R. 752, 783 (Bankr. S.D.N.Y. 2003) ("declin[ing] to find that the implied duty of good faith should be used to evaluate [defendant bank's] conduct"); *accord Hotel 71 Mezz Lender LLC v. Mitchell*, 63 A.D.3d 447, 448 (N.Y. 1st Dep't 2009) ("express waivers of any and all defenses to enforcement of the guaranty" barred a defense that the plaintiff breached "the covenant of good faith and fair dealing").  This is especially true where, as here, the parties are highly sophisticated.  *See Enron*, 292 B.R. at 783 (recognizing that "sophisticated parties drafted contract language that clearly defined their rights").

### B.    Any Implied-Covenant Claim Is Duplicative of the Breach Claims.

SunTrust established in its opening brief that, if a plaintiff's implied-covenant claim rests on the same provision as a breach-of-contract claim, or if it is based on the same alleged breach and seeks the same damages as the breach-of-contract claim, a court will dismiss the implied-covenant claim.  (Mot. at 15–16 (citing *Friedman v. Maspeth Fed. Loan & Sav. Ass'n*, 30 F. Supp. 3d 183 (E.D.N.Y. 2014); *JM Vidal, Inc.*, 764 F. Supp. 2d at 620; *Kirschner as Tr. of Millennium Lender Claim Tr. v. JPMorgan Chase Bank, N.A.*, No. 17-cv-6334, 2020 WL 2614765 (S.D.N.Y. May 22, 2020); and *Citadel Equity Fund Ltd. v. Aquila, Inc.*, 371 F. Supp. 2d 510 (S.D.N.Y. 2005), *aff'd*, 168 F. App'x 474 (2d Cir. 2006)).)  Plaintiffs' Opposition fails to address any of these cases.

Instead, Plaintiffs resort to the truism that Rule 8 permits pleading in the alternative.  The problem is that not all claims can be pleaded in the alternative, and, while Plaintiffs assert that their implied-covenant claims rely on different facts, their Complaint and Opposition cite only facts that are alleged also with respect to the breach-of-contract claims.  (Opp. at 20– 21.)  Here, Plaintiffs' implied-covenant and breach claims (1) are based on the same contractual provisions; (2) rely on the same assertion that SunTrust had a contractual duty to sue Virgo entities; (3) assert

that SunTrust's breach was its failure to do so; (4) assert that SunTrust would not sue unspecified Virgo entities unless Plaintiffs provided SunTrust with a release; and (5) seek the same remedy— damages "in excess of $26,000,000." (Mot. at 16.) Accordingly, the Court should dismiss Plaintiffs' implied-covenant claim as duplicative of their express breach claims.

Finally, Plaintiffs' suggestion that their implied-covenant claim might survive because SunTrust did not sue unspecified Virgo entities *before* Plaintiffs made a demand (Opp. at 20–21) is an attempt to "create independent obligations beyond those agreed upon and stated in the express language of the" Credit Agreement. *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 306 (S.D.N.Y. 1998). As Plaintiffs recognize, New York law does not permit using the implied covenant to do so. (Opp. at 19 (quoting *Granite Partners*, 17 F. Supp. 2d at 306). Here, Plaintiffs assigned SunTrust discretion to determine when and whether to file lawsuits in its role as Administrative Agent (ECF 1-1, § 10.2(a)), and, consistent with that discretion, SunTrust has sued two Virgo affiliates against whom SunTrust believes it has meritorious claims (Mot. at 5–7). Because the Credit Agreement contains "express language" outlining and limiting when Plaintiffs can force SunTrust to act, Plaintiffs cannot use the implied covenant to create an independent obligation that SunTrust forego its discretion and file any additional suit Plaintiffs conceive (but thus far cannot support). *Cf. Granite Partners*, 17 F. Supp. 2d at 306.

### III.   Plaintiffs Fail to State a Claim for Damages on All Counts of the Complaint.

Even if Plaintiffs could otherwise state a claim for any of their three counts, the Court should dismiss the Complaint because Plaintiffs cannot maintain a suit for damages.

### A.   The Credit Agreement's Exculpatory Clause Bars Plaintiffs' Claims.

Section 9.2(c) of the Credit Agreement relieves SunTrust, as Administrative Agent, of all liability "in the absence of its own gross negligence or willful misconduct." (ECF 1-1, § 9.2.) This language requires Plaintiffs to plead "egregious intentional misbehavior evincing extreme

6

culpability: malice, recklessness, deliberate or callous indifference to the rights of others, or an extensive pattern of wanton acts"—and that Plaintiffs had failed to do so.  *Morgan Stanley & Co. Inc. v. Peak Ridge Master SPC Ltd.*, 930 F. Supp. 2d 532 (S.D.N.Y. 2013) (cited at Mot. at 17–19).  Plaintiffs' counterarguments are unavailing.

First, relying on SunTrust's letter date January 3, 2020, Plaintiffs wrongly suggest SunTrust "engaged in 'gross negligence' or 'willful misconduct' by refusing in bad faith to perform its contractual obligations unless Plaintiffs executed a full release of known and unknown claims."  (Opp. at 9, 22.)  But that letter requested a release not before SunTrust would sue Virgo (and SunTrust did sue Virgo Service Company without a release), but before SunTrust would agree to allow Plaintiffs' counsel take over the claims and in response to Plaintiffs' indication that SunTrust's failure to pursue the claims constituted a breach of their contractual obligations. Fowler Decl., Attachment A, at 1 (release requested with respect to cooperation proposal, which was separate from the demand that SunTrust file a lawsuit).  In that context, a release request is a rational response, not gross negligence.  In any event, a release request is clearly protected by New York law, which protects actions motivated exclusively by "economic self-interest" as insufficient to constitute "gross negligence or willful misconduct."  *Peak Ridge*, 930 F. Supp. 2d at 545; *see also Metro. Capital Funding, LLC v. Nomura Credit & Capital, Inc.*, 880 N.Y.S.2d 874 (N.Y. Sup. Ct., N.Y. Cty. Feb. 9, 2009).

Second, Plaintiffs suggest that the Court look past *Peak Ridge* because, they misleadingly assert, *Peak Ridge* "actually *allowed the recovery of actual damages* even in the absence of gross negligence or willful misconduct."  (Opp. at 23 (emphasis in original).)  But the reason *Peak Ridge* allowed for the recovery of actual damages is because the exculpatory clause at issue there applied, by its own terms, only to "consequential, incidental, punitive or special damages."  *Peak Ridge*,

7

930 F. Supp. 2d at 544.  Nothing in *Peak Ridge* suggests that the court would have reached a different outcome if the exculpatory provision, like the provision here, barred *all* liability in the absence of gross negligence or willful misconduct.  *See* ECF 1-1, § 9.2.

Third, Plaintiffs suggest that the Court should not enforce the plain language of the exculpatory clause with respect to "actual damages."  (Opp. at 23–24.)  Plaintiffs argue that *Deutsche Alt-A Securities Mortgage Loan Trust, Series 2006-OA1 v. DB Structured Prod., Inc.*, 958 F. Supp. 2d 488, 500–01 (S.D.N.Y. 2013) "collect[s] cases allowing actual damages despite exculpatory provisions."  (Opp. at 23–24).  But none of the cases collected stand for Plaintiffs' proposition, and Plaintiffs fail to cite to a single case where a New York court refused to enforce an exculpatory clause like the one here.[2]  Contrary to Plaintiffs' suggestion, the cases cited in SunTrust's opening brief establish that New York courts *will* enforce exculpatory clauses to bar breach-of-contract cases.  *See Eaton Vance Management v Wilmington Sav Fund Soc., FSB*, No. 654397/2017, 2018 WL 1947405, at *5 (N.Y. Sup. Ct., N.Y. Cty. Apr. 25, 2018) (dismissing claim against administrative agent because "[n]either gross negligence nor willful misconduct are alleged" in the complaint); *see also Repsol, S.A. v The Bank of New York Mellon*, No. 652653/2012, 2014 WL 468910 (N.Y. Sup. Ct., N.Y. Cty. Feb. 04, 2014) (applying same exculpatory language as used here and dismissing complaint because "the complaint contains only a conclusory assertion, and no factual allegations, that [the agent] acted in a 'grossly negligent' manner").  And Plaintiffs cannot distinguish *Eaton Vance* and *Repsol* on this point.  Although Plaintiffs suggest these cases are inapposite because the plaintiffs there failed to sufficiently plead bad faith (Opp. at

---

[2] Indeed, one of the cases collected by *Deutsche Alt-A* in the section referenced by Plaintiffs supports SunTrust's reliance on *Peak Ridge*, as the court in that case held that an exculpatory clause barred *any* claim for damages.  *Base Vill. Owner LLC v. Hypo Real Estate Capital Corp.*, 92 A.D.3d 541, 541 (N.Y. 1st Dep't 2012) (holding that "defendants' alleged economic self-interest" failed to establish "intentional wrongdoing or willful, malicious or bad faith conduct").

24), that fact doesn't distinguish those cases; to the contrary, it proves the point. Where a plaintiff fails to sufficiently plead bad faith, a court applying New York law will dismiss a breach of contract claim based on an exculpatory clause like the one at issue here.

Fourth, Plaintiffs assert that the exculpatory clause is ambiguous (Opp. at 22), but they fail to address the cases that SunTrust cited in its opening brief establishing that, where an agreement bars liability for "gross negligence or willful misconduct," courts routinely enforce the provision as unambiguous at the pleadings stage. (*See* Mot. at 19 (citing *Peak Ridge*, 930 F. Supp. 2d at 544, and *Retty Fin., Inc. v. Morgan Stanley Dean Witter & Co.*, 293 A.D.2d 341 (N.Y. Ct. App., 1st Dep't 2002)).) Plaintiffs rely only on a case holding that "tort law principles" do not necessarily govern construction. (Opp. at 22 (citing *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430 (1994).) *Metro. Life*, however, did *not* hold that the term was ambiguous and actually affirmed a lower court's order enforcing an exculpatory provision. 84 N.Y.2d at 435–39.

Finally, Plaintiffs argue that enforcing the exculpatory clause would "nullify many portions of the Credit Agreement" and deprive them of any remedy for damages resulting from SunTrust's alleged "deliberate breaches." (Opp. at 24.) Not so. "Malice, recklessness, deliberate or callous indifference to the rights of others, or an extensive pattern of wanton acts," are all outside the limitation. *See Peak Ridge*, 930 F. Supp. 2d at 544. None, however, occurred here. Moreover, the exculpatory provision does not bar Plaintiffs from seeking a declaratory judgment. If Plaintiffs won a declaratory judgment and SunTrust refused to take an action that the Court declared they could require SunTrust to take, Plaintiffs could then seek damages by potentially showing "deliberate . . . indifference to the rights of others."

Accordingly, the Credit Agreement's exculpatory provision bars Plaintiffs' claims.

### B.  Plaintiffs Lack Damages Because Their Claim Is Not Ripe.

Plaintiffs' claims also fail as a matter of law because their prayer for damages is not ripe.

In order to succeed on a breach of contract or implied-covenant claim, Plaintiffs must show that *SunTrust* damaged them—not that *Alchemy* damaged them.  *See Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 525 (2d Cir. 2004) ("[A] plaintiff must prove that *a defendant's breach* directly and proximately caused his or her damages." (emphasis added)).  That means that they must show that, but for SunTrust's actions, they *would have recovered* against some unspecified Virgo affiliate.  Plaintiffs cannot meet their burden at the pleading stage because SunTrust is in the process of trying to recover from Virgo Service Company and may sue additional Virgo affiliates for at least another two years.  (Mot. at 7, 19.)

Indeed, Plaintiffs fail to cite any case allowing a plaintiff to maintain a claim under analogous circumstances.  *Contra Harz v. United States*, 711 F. Supp. 114, 118 n.2 (S.D.N.Y. 1989) ("[P]laintiffs cannot allege that plaintiff would have succeeded in the underlying action for the simple reason that the action remains viable and, indeed, plaintiffs may fully recover.") (cited in Mot. at 20); *Elie v. Ifrah PLLC*, No. 2:13-CV-888, 2014 WL 547958, at *3 (D. Nev. Feb. 10, 2014) ("Because the plaintiff's personal liability is still being litigated . . . , it is unknown or unclear what plaintiff's damages will be.").

Dismissing Plaintiffs' claim on ripeness grounds would be consistent with New York's rule that the "damages for which a party may recover for a breach of contract . . . must be proximate and certain, or capable of certain ascertainment, and not remote, speculative or contingent." *Fruition, Inc. v. Rhoda Lee, Inc.*, 1 A.D.3d 124, 125 (N.Y. 1st Dep't 2003) (quotation marks omitted).  Here, any alleged damages *caused by SunTrust* are contingent on SunTrust failing to recover in the Guaranty Action or any other action that SunTrust may bring for at least another two years.  Accordingly, the Court should dismiss Plaintiffs' Complaint as unripe.

## CONCLUSION

For the foregoing reasons, the Court should grant SunTrust's motion to dismiss.

Dated: October 9, 2020                    KING & SPALDING LLP

By:  _____
     Peter Isajiw
     Kenneth B. Fowler (admitted *pro hac vice*)
     1185 Avenue of the Americas
     New York, NY 10036
     Phone: 212-556-2235
     Fax: 212-556-2222
     pisajiw@kslaw.com
     kfowler@kslaw.com

     David Tetrick, Jr. (admitted *pro hac vice*)
     1180 Peachtree Street, NE
     Atlanta, GA 30309-3521
     Phone: 404-572-4600
     Fax: 404-572-5100
     dtetrick@kslaw.com

     *Attorneys for Defendants*
     *SunTrust Bank and Truist Bank*

11