quinn emanuel trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7471**

WRITER'S EMAIL ADDRESS
**coreyworcester@quinnemanuel.com**

October 22, 2021

<u>VIA ECF</u>

The Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 2204
New York, NY 10007

Re:     <u>*Emigrant Bank and Pacific Mercantile Bank v. SunTrust Bank, et al.*, No. 1:20-cv-02391: Response to Defendants' Request for Pre-Motion Conference</u>

Dear Judge Gardephe:

We represent Plaintiffs Emigrant Bank ("Emigrant") and Pacific Mercantile Bank ("PMB" and, together with Emigrant, "Plaintiffs") in the above-captioned matter.  We write in response to the October 12, 2021 letter filed by Defendants SunTrust Bank and Truist Bank (together, "SunTrust") requesting a pre-motion conference relating to SunTrust's anticipated motion to dismiss the new claims in Plaintiffs' First Amended Complaint (ECF 46, the "SunTrust Letter").

Plaintiffs filed the original Complaint in this action on March 18, 2020 (ECF 1), which Defendants moved to dismiss on October 9, 2020 (ECF 36).  Defendants' motion to dismiss the original Complaint is still pending.  On September 10, 2021, based on events that occurred after Plaintiffs filed the original Complaint, Plaintiffs sought leave to amend the Complaint to allege additional claims against SunTrust.  ECF 43.  On September 13, 2021, the Court granted Plaintiffs leave to file an Amended Complaint and ordered that Defendants be permitted to respond, by answer or motion, "only to any new cause or causes of action and any new factual allegations added in support of such cause of action."  ECF 44.  Plaintiffs filed their Amended Complaint on September 27, 2021, alleging three additional claims against SunTrust.  ECF 45 (the "AC").  Defendants now seek a pre-motion conference related to its proposed motion to dismiss the new claims in the Amended Complaint.  While Plaintiffs do not oppose SunTrust's request for a pre-motion conference, SunTrust's letter fails to establish any basis for a successful motion to dismiss Plaintiffs' new claims pursuant to Fed. R. Civ. P. 12(b)(6).

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

As alleged in the original Complaint, SunTrust served as the Administrative Agent under the Amended and Restated Revolving Credit and Term Loan Agreement dated July 9, 2015 (the "Credit Agreement," ECF 45-1).[1]  Pursuant to the Credit Agreement, SunTrust, Emigrant, PMB, and non-party Preferred Bank ("Lenders") lent approximately $46 million to borrower Our Alchemy, LLC ("Alchemy").  The loans were secured by a Guaranty and Security Agreement ("Guaranty," ECF 45-2), executed by a shell company, Calrissian L.P. ("Calrissian").  SunTrust acted as Administrative Agent on behalf of the Lenders.  After Alchemy defaulted under the loan, SunTrust accelerated the debt, and both Alchemy and Calrissian filed for bankruptcy.

The original Complaint states claims against SunTrust for its failure to take required actions in its role as Administrative Agent on behalf of the Lenders to enforce the Lenders' rights under the Credit Agreement and the Guaranty.  As provided in Section 8.1 of the Credit Agreement, the majority of Lenders provided a written request to SunTrust in December of 2019, demanding that SunTrust file an action against the company that created Calrissian as a shell company, induced the Lenders to enter into the Credit Agreement, and then siphoned funds through Alchemy and Calrissian for its own use.  Despite being required under the terms of the Credit Agreement to take such action to protect the Lenders' interests, SunTrust refused unless Plaintiffs would agree to a general release of all claims, known and unknown, against SunTrust.  Based on SunTrust's failure to enforce the rights of the Lenders in good faith, the original Complaint alleges claims for breach of contract and breach of the implied covenant of good faith and fair dealing against SunTrust.

On April 2, 2020, SunTrust informed the Lenders that it intended to seek indemnification from the Lenders "for all attorney's fees, court costs, litigation expenses, and other amounts incurred in connection with" this lawsuit, citing Section 10.3 of the Credit Agreement, and stated that SunTrust would be sending the Lenders written demands to that effect.  AC ¶ 93.

Plaintiffs responded on April 9, 2020, explaining that the Credit Agreement did not entitle SunTrust to indemnification for expenses relating to this lawsuit. *Id.* ¶ 94.  While Section 10.3 of the Credit Agreement sets forth limited circumstances in which the Lenders may seek indemnification or reimbursement, it explicitly excludes indemnification for expenses resulting from (i) SunTrust's willful misconduct or breach of the Credit Agreement; and (ii) disputes solely among Lenders and not arising out of action or inaction by Alchemy or other specified third parties. *Id.* ¶ 100.  Because this lawsuit is premised on SunTrust's willful misconduct and breach of the Credit Agreement, and is a dispute solely among the Lenders, SunTrust is not entitled to reimburse itself for expenses relating to this lawsuit. *Id.*  SunTrust never responded to Plaintiffs' letter, nor did SunTrust ever send any written demand for payment. *Id.* ¶¶ 93, 94.

On March 11, 2021, SunTrust informed the Lenders that SunTrust had received two distributions on behalf of the Lenders from the Alchemy bankruptcy:  (i) $29,769.36 on December 17, 2020, and (ii) $1,164,367.65 on February 10, 2021. *Id.* ¶ 96.  SunTrust did not inform the other Lenders about the distributions when they were received. *Id.*  Then, without any prior notice or

---

[1]  Emigrant became a lender under the Credit Agreement pursuant to a Term Loan Joinder Agreement, dated July 10, 2015.  ECF 45-4 (the "Joinder Agreement").

demand for payment, SunTrust paid itself $955,854.47 from the money it received on behalf of Lenders, asserting that it was entitled to unilaterally take this sum as "reimbursable expenses." *Id.*

SunTrust distributed the remaining $238,282.54 to Lenders, which included another $87,000 it paid to itself as a Lender, without paying Plaintiffs for any of their reimbursable expenses. *Id.* ¶ 97. In contrast, before Plaintiffs initiated this lawsuit, SunTrust had reimbursed Plaintiffs for their expenses from distributions received from the Alchemy bankruptcy. *Id.* SunTrust did not explain why it suddenly changed its approach to distributions. *Id.*

Based on SunTrust's new misconduct, Plaintiffs amended the Complaint to include breaches of the Credit Agreement and the Joinder Agreement (Claims IV & VI) and breaches of the implied covenant of good faith and fair dealing (Claims V & VI). Defendants' proposed motion to dismiss these new claims would be futile.

A.  **SunTrust Breached Its Contractual Obligations by Failing to Properly Distribute Funds Received on Behalf of All Lenders**

SunTrust selectively quotes the Credit Agreement to mislead the Court into believing that it provides for SunTrust to use funds belonging to the Lenders to reimburse itself for its expenses incurred in connection with this action. It does not. SunTrust ignores the limited circumstances in which it may reimburse itself, the clear exceptions carved out in Section 10.3 of the Credit Agreement, and the proper procedure for reimbursement. SunTrust breached the Credit Agreement by paying itself nearly $1 million in claimed "reimbursable expenses," including an amount which was allocable to its defense of this action and therefore ineligible for reimbursement, and by failing to reimburse Plaintiffs' expenses.

*First*, SunTrust points to Section 10.3(b) of the Credit Agreement, which provides that the "Borrower shall indemnify the Administrative Agent" for expenses arising out of, among other things, the parties' performance "of their respective obligations hereunder" or "the consummation of the transactions contemplated hereby." However, SunTrust's claim for indemnity does not arise out of the listed events but rather arises out of SunTrust's failure to take actions required under the Credit Agreement. SunTrust's expenses are therefore not subject to reimbursement.

*Second*, Section 10.3(b) explicitly provides that an indemnitee (here, SunTrust) is not entitled to indemnification for expenses resulting from "willful misconduct of or breach of this Agreement." This action is the result of exactly that. SunTrust has breached its obligations under the Credit Agreement by refusing to exercise remedies to protect Lenders' interests and the repayment of their loans, unless Plaintiffs would give SunTrust a general release of all claims including unrelated claims. The Credit Agreement explicitly forecloses SunTrust's assertion that it may breach the Credit Agreement and then use the money belonging to the Lenders to fund its defense.

*Third*, under Section 10.3, SunTrust is not entitled to indemnification for expenses incurred in a lawsuit solely between SunTrust and other Lenders. Section 10.3(b) explicitly excludes from indemnification the expenses incurred as a result of "any disputes solely among [Lenders] and not arising out of any action or inaction of the Borrower, any other Loan Party, the Sponsor or any of

3

their respective Affiliates."[2]  This lawsuit is solely between Lenders and arises out of ***SunTrust's*** refusal to take actions required by Plaintiffs unless it received a general release of unknown claims. SunTrust is thus not entitled to use monies belonging to the Lenders to fund its defense here.

*Fourth*, even if it could reimburse itself for expenses incurred in this action, SunTrust failed to make a written demand to the Lenders, which is required under Section 10.3(f) of the Credit Agreement.  The Credit Agreement is clear that no amounts are payable to SunTrust as an indemnitee until it has issued a "written demand" for such amounts.  Because SunTrust failed to issue any written demand (AC ¶¶ 93, 95), it was not entitled to reimburse itself.

*Finally*, even setting aside whether SunTrust was permitted to reimburse itself for its costs of defense of this lawsuit, SunTrust admits that Section 8.2 of the Credit Agreement requires that the funds received from the Alchemy bankruptcy must be distributed first to SunTrust for specific reimbursable expenses, second to SunTrust for other reimbursable expenses, ***and then to Lenders for their reimbursable expenses***.  SunTrust Letter at 2, 3.  SunTrust also admits that it applied the funds, without giving notice to the other Lenders, first to SunTrust for its purportedly reimbursable expenses and then to all four lenders *pro rata*, including $87,000 to itself, without reimbursing Plaintiffs for their expenses.  *Id.* at 2.  Therefore, by its own admission, SunTrust has breached Section 8.2 of the Credit Agreement.  Although SunTrust claims that Plaintiffs do not allege that any reimbursable expenses were payable to them, that is flatly untrue.  *See* AC ¶¶ 97, 101 (SunTrust refused "to reimburse Plaintiffs for their expenses as required by Section 8.2 of the Credit Agreement"), 125, 126.  At a minimum, Plaintiffs have stated a claim for relief and, accordingly, this Court should not be burdened with yet another motion to dismiss in this action.

**B.     Plaintiffs State a Claim for Breach of the Implied Covenant**

SunTrust argues that the Amended Complaint's claims for breaches of the implied covenant of good faith and fair dealing have been waived and are duplicative.  SunTrust Letter at 4-5.  SunTrust is wrong on both counts.

1.  <u>Plaintiffs Did Not Waive Implied Covenant Claims</u>

SunTrust argues that Section 9.2 of the Credit Agreement contains a waiver of any claim for breach of the implied covenant of good faith and fair dealing.  Section 9.2 is titled "Nature of Duties of the Administrative Agent" and states in part that "the Administrative Agent shall not be subject to any fiduciary or other implied duties."

A waiver of the implied covenant of good faith and fair dealing must be expressly stated and unambiguous to support a motion to dismiss.  *See*, *e.g.*, *Commerzbank AG v. U.S. Bank Nat'l Ass'n*, 277 F. Supp. 3d 483, 498 (S.D.N.Y. 2017) (requiring that the implied covenant of good faith and fair dealing be "expressly disclaimed").  Here, the Credit Agreement includes only a waiver of "fiduciary or other implied duties," not an express waiver of the implied covenant of good faith and fair dealing.  *See Bank of New York Tr., N.A. v. Franklin Advisors, Inc.*, 522 F.

---

[2]  "Loan Parties" is defined as the Borrower and the Guarantor—SunTrust is not a Loan Party, a sponsor, or an affiliate of a Loan Party or Sponsor.  Credit Agreement § 1.1.

Supp. 2d 632, 637 (S.D.N.Y. 2007) ("The Court's role on a 12(b)(6) motion to dismiss is not to resolve contract ambiguities."). The phrase "other implied duties" is ambiguous, and its meaning should not be resolved on a motion to dismiss.[3]

> 2. Plaintiffs' Implied Covenant Claim Is Not Duplicative of the Breach of Contract Claims

SunTrust also argues that the implied covenant claim is duplicative of the breach of contract claims. *First*, Plaintiffs may plead in the alternative. Fed. R. Civ. P. 8(d)(2-3); *Fantozzi v. Axsys Technologies, Inc.*, 2008 WL 4866054, at *7 (S.D.N.Y. Nov. 6, 2008) ("A claim for breach of contract does not preclude a party from bringing a claim for breach of the implied covenant of good faith and fair dealing when they are brought in the alternative."). *Second*, the implied covenant claim goes far beyond the claim for breach of the express terms of the Credit Agreement. The implied covenant claim is based on SunTrust's failure to inform the Lenders about the distributions when SunTrust received them, instead waiting months and secretly reimbursing itself for ineligible expenses without giving other Lenders the chance to submit reimbursable expenses or have input into how the funds should be distributed. Separate and apart from breaching its express contractual obligations, SunTrust failed to fairly and in good faith inform the Lenders about the distributions and distribute the funds.

Because the claims do not have identical factual bases, Plaintiffs' implied covenant claim should not be dismissed as duplicative of its breach of contract claim. *See Lehman Bros. Intern. (Europe) v AG Financial Products*, 2013 WL 1092888, at *7 (N.Y. Sup. Ct. Mar. 12, 2013) (denying motion to dismiss even where "the allegations of the breach of contract and implied covenant causes of action overlap in significant respects"). Further, if SunTrust prevails on its argument that there has been no breach of the express terms of the Credit Agreement, then the implied covenant claim would not be duplicative.

Thus, SunTrust's arguments in support of its proposed motion to dismiss are without merit.

Respectfully submitted,

*/s/ Corey Worcester*
Corey Worcester

cc:   All counsel via ECF

---

[3] SunTrust's authority is inapposite, as two of the cited cases were dismissed on grounds other than waiver. *See In re Enron Corp.*, 292 B.R. 752, 782–84 (Bankr. S.D.N.Y. 2003) (granting summary judgment on implied covenant claim after finding that plaintiff did not violate a duty of good faith); *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, 2016 WL 1169515, at *10 (S.D.N.Y. Mar. 22, 2016) (dismissing implied covenant claim as duplicative of breach of contract claim). In the third cited case, the court *denied* Defendants' motion for summary judgment on the claim. *See JM Vidal, Inc. v. Texdis USA, Inc.*, 764 F. Supp. 2d 599, 620 (S.D.N.Y. 2011).