**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

EMIGRANT BANK AND PACIFIC
MERCANTILE BANK,

        Plaintiffs,

      v.

SUNTRUST BANK; TRUIST BANK; AND
DOES 1 THROUGH 10 INCLUSIVE,

           Defendants.

Civil Action No. 1:20-cv-02391-PGG

## DEFENDANTS SUNTRUST BANK AND TRUIST BANK'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

David Tetrick, Jr. (admitted *pro hac vice*)
Paige Burroughs (*pro hac vice* application forthcoming)
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, GA 30309-3521
Phone: 404-572-4600
Fax: 404-572-5100
dtetrick@kslaw.com
pburroughs@kslaw.com

Peter Isajiw
Kenneth B. Fowler (admitted *pro hac vice)*
1185 Avenue of the Americas
New York, NY 10036
Phone: 212-556-2235
Fax: 212-556-2222
pisajiw@kslaw.com
kfowler@kslaw.com

*Attorneys for Defendants*
*SunTrust Bank and Truist Bank*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ....................................................................................................3

    I.   Factual Background .........................................................................................3

        A. SunTrust's Extensive Efforts to Recover on Behalf of the Lenders .......................3

        B. SunTrust's Right to Indemnification Under the Credit Agreement........................5

        C. Distributions from the Alchemy Trustee and SunTrust's Allocation
           Pursuant to the Credit Agreement.............................................................7

    II.  Relevant Procedural History .............................................................................9

LEGAL STANDARD ...........................................................................................................10

ARGUMENT ....................................................................................................................11

    I.   Plaintiffs Fail to State a Claim for Breach of Contract (Counts 4 and 6). ......................11

        A. SunTrust Is Entitled to Indemnification and Reimbursement for Expenses
           Incurred in Connection with This Action. ...............................................11

        B. SunTrust Properly Distributed Funds Pursuant to the Credit Agreement.............16

        C. Plaintiffs Fail to State a Claim for Breach of the Term Loan Joinder
           Agreement Because That Breach Claim Depends Entirely on the Alleged
           Breach of the Credit Agreement. ...........................................................18

    II.  Plaintiffs Fail to State a Claim for Breach of the Implied Covenant (Count 5)
        Because Plaintiffs Expressly Waived Any Implied-Covenant Claim...............................18

    III. Plaintiffs Fail to State a Claim for Damages on All Counts Because the Credit
        Agreement's Exculpatory Clause Bars Plaintiffs' Claims.................................20

CONCLUSION..................................................................................................................22

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ace Arts, LLC v. Sony/ATV Music Pub., LLC,*
    56 F. Supp. 3d 436 (S.D.N.Y. 2014) ......................................................................11

*Allen v. Credit Suisse Sec. (USA) LLC,*
    895 F.3d 214 (2d Cir. 2018) ...................................................................................11

*Andrews v. Sotheby Int'l Realty, Inc.,*
    No. 12-cv-8824, 2014 WL 626968 (S.D.N.Y. Feb. 18, 2014), *aff'd*, 586 F.
    App'x 76 (2d Cir. 2014) .....................................................................................11, 12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................................10

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 554 (2007) ................................................................................................21

*Beninati v. F.D.I.C.,*
    55 F. Supp. 2d 141 (E.D.N.Y. 1999) ......................................................................19

*Bentley v. Dennison,*
    852 F.Supp.2d 379 (S.D.N.Y. 2012), *aff'd*, 519 F. App'x 39 (2d Cir. 2013) ..........4

*Brooklyn 13th Street Holding Corp. v. Nextel of New York, Inc.,*
    No. 11-cv-1048, 2011 WL 6945862 (E.D.N.Y. Dec. 30, 2011) ..............................14

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002) .....................................................................................7

*Commerzbank AG v. U.S. Bank Nat'l Ass'n,*
    277 F. Supp. 3d 483 (S.D.N.Y. 2017) .....................................................................19

*Country-Wide Ins. Co. v. Excelsior Ins. Co.,*
    147 A.D.3d 407 (N.Y. App. Div., 1st Dep't 2017) ..................................................15

*Deutsche Bank AG v. JPMorgan Chase Bank,*
    No. 04-cv-7192, 2007 WL 2823129 (S.D.N.Y. Sept. 27, 2007), *aff'd*, 331 F.
    App'x 39 (2d Cir. 2009) .....................................................................................17, 18

*In re Enron Corp.,*
    292 B.R. 752 (Bankr. S.D.N.Y. 2003) ...............................................................19, 20

*George L. Miller, in his capacity as Chapter 7 Trustee v. ANConnect, LLC, et al.,*
    Case No. 18-bk-50633 ...............................................................................................4

*HSH Nordbank AG New York Branch v. Street*,
   421 F. App'x 70 (2d Cir. 2011) ........................................................................18

*JM Vidal, Inc. v. Texdis USA, Inc.*,
   764 F. Supp. 2d 599 (S.D.N.Y. 2011).................................................................19

*Kenard v. Nussbaum*,
   No. 87-cv-0318, 1988 WL 25240 (S.D.N.Y. Feb. 26, 1988) .................................22

*KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*,
   600 B.R. 214 (S.D.N.Y. 2019)....................................................................13, 14

*Landpen Co., L.P. v. Maryland Cas. Co.*,
   No. 03-cv-3624, 2005 WL 356809 (S.D.N.Y. Feb. 15, 2005) ...............................12

*Maple Med., LLP v. Scott*,
   191 A.D.3d 81 (N.Y. App. Div., 2d Dep't 2020) ................................................14

*Milan v. Wertheimer*,
   808 F.3d 961 (2d Cir. 2015)...........................................................................10

*Morgan Stanley & Co. Inc. v. Peak Ridge Master SPC Ltd.*,
   930 F. Supp. 2d 532 (S.D.N.Y. 2013).............................................................21

*In re Our Alchemy LLC*,
   Case No. 16-bk-11596 (Bankr. Ct. D. Del.) .......................................................4

*Repsol, S.A. v The Bank of New York Mellon*,
   No. 652653/2012, 2014 WL 468910 (N.Y. Sup. Ct., N.Y. Cty. Feb. 04, 2014) ....................21

*Retty Fin., Inc. v. Morgan Stanley Dean Witter & Co.*,
   293 A.D.2d 341 (N.Y. Ct. App., 1st Dep't 2002)................................................21

*SunTrust Bank v. Calrissian LP*,
   Index No. 654148/2016 ...................................................................................5

*Zyburo v. Cont'l Cas. Co.*,
   60 F. Supp. 3d 531 (S.D.N.Y. 2014)...............................................................14

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...................................................................................1, 10

Defendants Truist Bank and SunTrust Bank (collectively, "SunTrust") submit this Memorandum of Law in support of their Motion to Dismiss the First Amended Complaint.

## PRELIMINARY STATEMENT

This Memorandum of Law and Defendants' Memorandum of Law in Support of Their Motion to Dismiss the original Complaint (ECF 36) provide the bases for the Court to dismiss all six claims in Plaintiffs' First Amended Complaint (ECF 45, "FAC") under Fed. R. Civ. P. 12(b)(6). This Memorandum addresses only Counts 4–6 in the First Amended Complaint because, under the Court's September 13, 2021 Order (ECF 44), Defendants' motion to dismiss the First Amended Complaint need only respond to "new . . . causes of action" asserted in the First Amended Complaint. Counts 4–6 are the new causes of action in the First Amended Complaint. Per the September 13, 2021 Order, the Court will consider Defendants' pending Motion to Dismiss the original Complaint with respect to Counts 1–3 (ECF 45 ¶¶ 102–120) in the First Amended Complaint and the present Motion to Dismiss with respect to Counts 4–6 (ECF 45 ¶¶ 121–141). Because Defendants' Memorandum of Law in Support of its Motion to Dismiss the original Complaint contains a detailed statement of the underlying facts and the procedural history of this dispute (ECF 36, at 3–9), and to avoid redundancy, this Memorandum of Law incorporates by reference the Statement of Facts and Procedural History from ECF 36 and relates only the underlying facts and procedural history necessary to address Counts 4–6.

The parties to this case are some of the parties to an Amended and Restated Revolving Credit and Term Loan Agreement dated July 9, 2015 (the "Credit Agreement"), under which SunTrust, non-party Preferred Bank, and Plaintiffs Pacific Mercantile Bank ("PMB") and Emigrant Bank (collectively, "Lenders") provided non-party Our Alchemy, LLC ("Borrower") with a loan and revolving credit facility. (ECF 45 ¶¶ 6, 57; ECF 45-1, Credit Agreement.) SunTrust also serves as the Administrative Agent under the Credit Agreement. (ECF 45 ¶ 4).

Borrower defaulted on the loan in 2016.  Much litigation has ensued since then.  In addition to this case, the various proceedings include:

- Borrower's bankruptcy proceedings (the "Alchemy Bankruptcy");

- Adversary actions instituted by the Borrower's Bankruptcy Trustee (the "Alchemy Trustee" and the "Trustee Adversary Actions");

- A lawsuit that SunTrust filed in New York state court against Calrissian LP ("Guarantor"), which was Borrower's direct parent and which executed a Guaranty and Security Agreement ("Guaranty Agreement," ECF 45-2) of Borrower's obligations under the Credit Agreement (the "SunTrust Guaranty Action") (*see id.* ¶ 8);

- This action; and

- A lawsuit that Plaintiffs furtively filed in July 2021 against Virgo Investment Group, LLC ("Virgo") and various Virgo affiliates, seeking recovery of Plaintiffs' losses under the Credit Agreement ("Plaintiffs' State Court Action").  Plaintiffs filed their complaint in the same New York state court where the SunTrust Guaranty Action is pending but failed to identify their lawsuit as related to the SunTrust Guaranty Action in their court-required Request for Judicial Intervention.  *See* Exhibit 1, Decl. of Kenneth Fowler Dated December 10, 2021 ("Fowler Decl."), Attachment A.  Plaintiffs did not inform SunTrust of the Plaintiffs' State Court Action when negotiating the stipulation to allow Plaintiffs to amend the complaint in this action in August and September 2021.  Nor did they disclose the existence of the Plaintiffs' State Court Action to this Court in their First Amended Complaint, even though the Plaintiffs' State Court Action creates the possibility that they could obtain a windfall double recovery by maintaining this action.

After Plaintiffs filed this case, the Alchemy Trustee distributed approximately $1.2 million to SunTrust as the Administrative Agent under the Credit Agreement following his recovery of proceeds on behalf Borrower's creditors, including the Lenders.  (ECF 45 ¶ 96).  SunTrust then distributed the $1.2 million pursuant to the plain terms of the Credit Agreement—which mandates the order in which proceeds realized after default are applied—and deducted its own reimbursable expenses incurred in the various proceedings before distributing the balance to the Lenders.  In response, Plaintiffs added three new counts in the First Amended Complaint addressing SunTrust's supposed improper exercise of its indemnification rights under the Credit Agreement: Counts 4 and 6, alleging that SunTrust's action breached the Credit Agreement and the Term Loan Joinder Agreement by which Emigrant became a Lender, respectively; and Count 5, alleging that SunTrust breached the implied covenant of good faith and fair dealing.  Plaintiffs' bluster about SunTrust's alleged "misappropriation of the bankruptcy distributions" and "willful and malicious breaches of the Credit Agreement" (ECF 45 ¶¶ 6, 99) cannot disguise the fact that these new claims (indeed, the entire case) are based on what Plaintiffs would like the loan documents to say instead of what they actually say.

As explained below, this Court need only apply the plain language of the loan documents and New York law to determine that Counts 4–6 fail to state a claim.

## STATEMENT OF FACTS

### I.    Factual Background

#### A.    SunTrust's Extensive Efforts to Recover on Behalf of the Lenders

##### 1.    The Notice of Acceleration of Debt and the Alchemy Bankruptcy

As a result of Borrower's defaults on the loan, on June 15, 2016, SunTrust, as Administrative Agent, exercised the remedy under the Credit Agreement to accelerate Borrower's outstanding debt of approximately $46 million—and thus demand immediate payment from both

Borrower under the Credit Agreement and Guarantor under the Guaranty Agreement. (FAC ¶ 6; ECF 45-6, Notice of Acceleration of Debt.)

Borrower failed to repay the debt and petitioned for Chapter 7 bankruptcy protection. (FAC ¶¶ 6–7.) The Alchemy Bankruptcy remains pending and is being administered by the Alchemy Trustee, who has also filed the Trustee Adversary Actions against various entities. (*Id.* ¶ 95.) In connection with the Alchemy Bankruptcy and Trustee Adversary Actions, SunTrust has incurred hundreds of thousands of dollars of legal expenses, including for document productions and responding to subpoenas. SunTrust's efforts in the Trustee Adversary Actions are focused on helping the Lenders, who are the largest secured creditors in the Alchemy Bankruptcy, maximize their recovery. (*See id.*)

In addition, on November 17, 2021, the bankruptcy court approved a $5.2 million settlement between the Alchemy Trustee and Virgo-related defendants in one of the Trustee Adversary Actions, and a settlement between the Trustee and a separate individual defendant in that same Trustee Adversary Action for $100,000. *See* Fowler Decl. Attachments B & C, *In re Our Alchemy LLC*, Case No. 16-bk-11596 (Bankr. Ct. D. Del.), ECF 927-3 & 946 (Virgo settlement agreement and order); Fowler Decl. Attachments D & E, *In re Our Alchemy LLC*, Case No. 16-bk-11596, ECF 928-3 & 945 (Lyons settlement agreement and order).[1] Although the Alchemy Trustee has settled some claims in the Trustee Adversary Actions, the Alchemy Trustee continues to pursue other claims—for more than $30 million—against ANConnect, LLC and other defendants unaffiliated with Virgo. *See George L. Miller, in his capacity as Chapter 7 Trustee v.*

---

[1] The Virgo settlement contemplates an additional $300,000 payment to the Alchemy Trustee if it obtains an order barring Plaintiffs' State Court Action. *See* Fowler Decl., Attachment B, ¶ 13. The Court may take judicial notice of such court pleadings, motions, and orders. *See Bentley v. Dennison*, 852 F.Supp.2d 379, 382 n.5 (S.D.N.Y. 2012), *aff'd*, 519 F. App'x 39 (2d Cir. 2013).

*ANConnect, LLC, et al.*, Case No. 18-bk-50633, Complaint (June 29, 2018), ECF 1, at ¶¶ 208(c),(f),(g) & ¶ 227.

### 2.    The SunTrust Guaranty Action

As detailed in SunTrust's brief in support of its Motion to Dismiss the original Complaint, SunTrust instituted the SunTrust Guaranty Action in New York state court against Guarantor (Calrissian LP) after Borrower defaulted, and SunTrust subsequently amended the complaint to add a Virgo affiliate, Virgo Service Company LLC, as a defendant in the SunTrust Guaranty Action based its status as a general partner of Guarantor.  (ECF 36 at 6–7.)  *See* Fowler Decl., Attachment F, Order Granting Leave to Amend, *SunTrust Bank v. Calrissian LP*, Index No. 654148/2016, NYSCEF Doc. No. 43 (Oct. 6, 2020).  After SunTrust filed an amended complaint, Guarantor and Virgo Service Company failed to respond, and SunTrust moved for a default judgment. *See* Fowler Decl., Attachment G, Order Granting in Part Motion for Default Judgment, *SunTrust Bank v. Calrissian LP*, Index No. 654148/2016, NYSCEF Doc. No. 86 (Nov. 4, 2021), at 1.  On November 4, 2021, the court granted SunTrust's motion as to liability and referred the matter to a special referee for the purposes of calculating damages, which SunTrust contends are at least $65.9 million.  *See id.* at 2–3.  SunTrust intends to pursue collection on the ultimate judgment aggressively and seek all appropriate post-judgment discovery.

### B.    SunTrust's Right to Indemnification Under the Credit Agreement

### 1.    The Credit Agreement's Indemnification Provision

The Credit Agreement provides for indemnification of "Indemnitees" including SunTrust, as the Administrative Agent, and its related parties.  (ECF 45-1, Credit Agreement § 10.3(b).) Specifically, "Borrower shall indemnify the Administrative Agent" for "any and all losses, claims, damages, liabilities and related expenses (including the reasonable fees, charges and disbursements

of any outside counsel for any Indemnitee) . . . arising out of, in connection with, or as a result of,"

among other things:

> (i) the execution or delivery of this Agreement, any other Loan Document[2] or any agreement or instrument contemplated hereby or thereby, the performance by the parties hereto of their respective obligations hereunder or thereunder or the consummation of the transactions contemplated hereby or thereby, [and]
>
> . . .
>
> (iv) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory, whether brought by a third person or by the Borrower, any other Loan Party,[3] the Sponsor or any of their respective Affiliates, and regardless of whether any Indemnitee is a party thereto[.]

(*Id.*)

Pursuant to Section 10.3(d) of the Credit Agreement, if the Borrower fails to reimburse SunTrust for such indemnified losses, "each Lender severally agrees to pay to the Administrative Agent such Lender's *pro rata* share . . . of such unpaid amount" if the indemnified losses were incurred by or asserted against SunTrust in its capacity as Administrative Agent.  (*Id*. § 10.3(d).) Section 10.3(f) states that "[a]ll amounts due under this Section [10.3] shall be payable promptly after written demand therefor."  (*Id*. § 10.3(f).)

The right to indemnification includes two narrow exceptions "to the extent that" such "losses, claims, damages, liabilities or related expenses *are determined by a court of competent jurisdiction by final and non-appealable judgment* to have resulted from":

> (x) the gross negligence or willful misconduct of or breach of this Agreement or any other Loan Document by such Indemnitee or any Related party of such indemnitee or (y) any disputes solely among Indemnitees *and*

---

2 "Loan Document[s]" include, among others, the Credit Agreement, the Guaranty Agreement, and agreements "executed in connection with any of the foregoing," such as the Term Loan Joinder Agreement.  (ECF 45-1, Credit Agreement § 1.1.)

3 "Loan Parties" include Borrower and Guarantor.  (ECF 45-1, Credit Agreement § 1.1.)

6

not arising out of any action or inaction of the Borrower, any other Loan
Party, the Sponsor or any of their respective Affiliates.

(*Id*. (emphasis added).)

2.     SunTrust's Expenses and Indemnification Correspondence

SunTrust has incurred legal fees and expenses as a result of: (1) the Alchemy Bankruptcy
proceedings and related Trustee Adversary Actions; (2) the SunTrust Guaranty Action; and (3)
this action against SunTrust as Administrative Agent.  Shortly after Plaintiffs initiated this case,
SunTrust informed the Lenders by letter dated April 2, 2020 that SunTrust was entitled to
indemnification from the Borrower for its expenses incurred in connection with this lawsuit, and
if the Borrower failed to fulfill its indemnification obligation to SunTrust, the Lenders would be
severally required to pay any outstanding amounts directly to SunTrust.  (*See* FAC ¶ 93; Fowler
Decl., Attachment H.[4])

Subsequently, on December 16, 2020, SunTrust informed the Lenders that it was likewise
entitled to indemnification for its expenses incurred as a result of third-party subpoenas that
SunTrust and a related entity, SunTrust Robinson Humphrey, Inc., received in one of the Trustee
Adversary Actions.  (*See* FAC ¶ 95; Fowler Decl., Attachment I.)  Plaintiffs, for their part, never
made any written demands for indemnification.

**C.     Distributions from the Alchemy Trustee and SunTrust's Allocation Pursuant
to the Credit Agreement**

In December 2020 and February 2021, SunTrust received approximately $1.2 million in
distributions from the Alchemy Trustee.  (FAC ¶ 125.)  The Credit Agreement mandates, in

---

[4] On this Motion to Dismiss, the court may consider the April 2, 2020 letter, which Plaintiffs
referenced and upon which Plaintiffs relied for key allegations in their amended complaint.  *See,
e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

relevant part, that "[a]ll proceeds from each sale of, or other realization upon, all or any part of the

Collateral[5] by any Secured Party after an Event of Default arises shall be applied as follows":

> (a) <u>first</u>, to the reimbursable expenses of the Administrative Agent incurred in connection with such sale or other realization upon the Collateral, until the same shall have been paid in full;

> (b) <u>second</u>, to the fees and other reimbursable expenses of the Administrative Agent then due and payable pursuant to any of the Loan Documents, until the same shall have been paid in full;

> (c) <u>third</u>, to all reimbursable expenses, if any, of the Lenders then due and payable pursuant to any of the Loan Documents, until the same shall have been paid in full;

> (d) <u>fourth</u>, to the fees and interest then due and payable under the terms of this Agreement, until the same shall have been paid in full;

> (e) <u>fifth</u>, to the aggregate outstanding principal amount of the Loans [and other loan documents] . . .

> . . .

> All amounts allocated pursuant to the foregoing clauses third through fifth to the Lenders as a result of amounts owed to the Lenders under the Loan Documents shall be allocated among, and distributed to, the Lenders *pro rata* . . . .

(ECF 45-1, Credit Agreement § 8.2 (emphasis in original).)

"[R]eimbursable expenses," on which Section 8.2(a)–(c) turn, include:

> [A]ll out-of-pocket costs and expenses (including, without limitation, the reasonable fees, charges and disbursements of outside counsel and the allocated cost of inside counsel) incurred by the Administrative Agent or any Lender in connection with the enforcement or protection of its rights in connection with this Agreement, including its rights under this Section [10.3], or in connection with the Loans made hereunder, including all such out-of-pocket expenses incurred during any workout, restructuring or negotiations in respect of such Loans.

(*Id*. § 10.3(a)(ii).)

---

[5] The Credit Agreement defines "Collateral" to include "all tangible and intangible property, real and personal, of any Loan Party that is or purports to be the subject of a Lien to the Administrative Agent to secure the whole or any part of the Obligations or any Guarantee thereof." (ECF 45-1, Credit Agreement § 1.1.)

SunTrust applied the distributions from the Alchemy Trustee according to these terms, first distributing proceeds to itself, as Administrative Agent, for fees and expenses incurred "in connection with" the "realization upon the Collateral"—*i.e.*, the Alchemy Bankruptcy, Trustee Adversary Actions, and SunTrust Guaranty Action—and those "incurred . . . in connection with the enforcement or protection of its rights in connection with [the] Agreement"—*i.e.*, this action. (*See* FAC ¶ 96.)  SunTrust then distributed the remainder to all four Lenders *pro rata*.  (*See id.* ¶ 97.)

## II.   Relevant Procedural History

In June 2021, Plaintiffs informed SunTrust of their intent to seek leave to file an amended complaint.  In order to reduce the burden on the Court and avoid mooting SunTrust's fully-briefed motion to dismiss the original Complaint, the parties stipulated, in pertinent part, that: (1) SunTrust would consent to Plaintiffs filing an amended complaint solely to add new claims (and new facts related to those claims); (2) the amended complaint would reassert the original claims in the same order as in the original Complaint; (3) SunTrust would be required to respond only to the new causes of action and any new factual allegations by motion or answer; (4) the amended complaint would not moot SunTrust's pending motion to dismiss.  (ECF 43, at 2.)  The Court approved the proposed procedure, ordering that "in the event that the Court grants the Motion to Dismiss [the original Complaint], in whole or in part, the ruling shall apply with full force and effect to the amended complaint, and any count dismissed shall be deemed dismissed from the amended complaint." (ECF 44.)  On September 27, 2021, Plaintiffs filed the First Amended Complaint. (ECF 45.)

Plaintiffs' First Amended Complaint asserts three new claims in addition to the claims asserted in the original Complaint, all of which relate to SunTrust's distribution of the December 2020 and February 2021 proceeds from the Alchemy Trustee.  (*See* FAC ¶¶ 121–41.)

In Count 4 (FAC ¶¶ 121–28), Plaintiffs assert that SunTrust breached the Credit Agreement by "unilaterally" distributing itself $955,854.47 from the funds received from the Alchemy Trustee, "distributing only $238,282.54 to Lenders," and "failing and refusing to reimburse Plaintiffs for any of their expenses." (*Id.* ¶ 126.) Plaintiffs complain that SunTrust allocated to itself funds obtained from the Alchemy Trustee "without notice or written demand to the other Lenders," but they do not identify any Credit Agreement provision that requires a written demand *to the Lenders* for reimbursement received from the Alchemy Trustee. (*See id.* ¶¶ 121–28.)

Count 5 of the First Amended Complaint (FAC ¶¶ 129–34) asserts that SunTrust breached the implied covenant of good faith and fair dealing by distributing the funds from the Alchemy Trustee the way it did and by "failing to give the other Lenders an opportunity to submit their reimbursable expenses" (*id.* ¶ 132).

In Count 6, Plaintiffs contend that SunTrust breached the Term Loan Joinder Agreement based on the same allegations pleaded in Count 4. (*Id.* ¶¶ 135–41.) Although referencing the Term Loan Joinder Agreement, Count 6 is derivative of Count 4 and turns entirely on SunTrust's "contractual duties and obligations [] under the *Credit Agreement*." (*Id.* ¶ 138.)

Plaintiffs do not specify the damages they claim to have suffered as a result of SunTrust's breaches and state only that those alleged damages are "substantial." (FAC ¶¶ 128, 134, 141.)

## **LEGAL STANDARD**

A court will dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) if it lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). On a motion to dismiss, the court "need not accept conclusory allegations or legal conclusions couched as factual [] allegations." *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (quotation marks omitted). Accordingly, "bald assertions and conclusions of law will

not suffice to avoid dismissal, nor will factual allegations that are wholly conclusory." *Allen v. Credit Suisse Sec. (USA) LLC*, 895 F.3d 214, 222 (2d Cir. 2018).

Moreover, dismissal is appropriate where the allegations, if accepted as true, do not establish "an actual breach of the contract." *Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436, 451 (S.D.N.Y. 2014). "In the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint . . . ." *Andrews v. Sotheby Int'l Realty, Inc.*, No. 12-cv-8824, 2014 WL 626968, at *5 (S.D.N.Y. Feb. 18, 2014), *aff'd*, 586 F. App'x 76 (2d Cir. 2014).

## ARGUMENT

### I. Plaintiffs Fail to State a Claim for Breach of Contract (Counts 4 and 6).

The facts alleged in the First Amended Complaint demonstrate SunTrust followed the terms of the Credit Agreement, and that Plaintiffs' new breach of contract claims in Counts 4 and 6 fail as a matter of law.[6]

#### A. SunTrust Is Entitled to Indemnification and Reimbursement for Expenses Incurred in Connection with This Action.

##### 1. SunTrust's Losses Fall Within the Indemnification Provision

The Credit Agreement provides, in pertinent, that "Borrower shall indemnify the Administrative Agent" and its related parties for "any and all losses, claims, damages, liabilities and related expenses (including the reasonable fees, charges and disbursements of any outside counsel for any Indemnitee) . . . arising out of, in connection with, or as a result of" the parties' "performance" of obligations under the Loan Documents or "any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract,

---

[6] New York law governs both the Credit Agreement and the Term Loan Joinder Agreement. (ECF 45-1, Credit Agreement § 10.5(a); ECF 45-4, Term Loan Joinder Agreement § 14.)

tort or any other theory, whether brought by a third Person or by the Borrower, [or] any other Loan Party."  (ECF 45-1, Credit Agreement § 10.3(b).)

As detailed above, SunTrust sought and obtained indemnity for amounts incurred as a result of (1) pursuing recovery on behalf of the Lenders in the Alchemy Bankruptcy, including the Trustee Adversary Actions; (2) pursuing recovery on behalf of the Lenders in the SunTrust Guaranty Action; and (3) defending itself against Plaintiffs' claims in this action.  It is beyond dispute, and Plaintiffs do not contest (*see generally* FAC), that SunTrust's legal fees and expenses incurred in connection with the Alchemy Bankruptcy (including the Trustee Adversary Actions) and the SunTrust Guaranty Action are losses covered by the Credit Agreement's indemnification provision because they relate, arise out of, and are in connection with, or a result of, SunTrust performing its obligations under the Loan Documents—and independently because they arise out of litigation and proceedings related to Borrower's performance under the Loan Documents.

The same is true of SunTrust's fees and expenses incurred as a result of this action for at least two reasons.  First, both the original Complaint and the First Amended Complaint assert claims "arising out of, in connection with, or as a result of actual . . . claim[s], litigation[s], . . . [and] proceedings relating to" the parties' performance under Loan Documents—specifically, the Credit Agreement.  (*See id.*)  The entire action arises out of, is in connection with, and is the result of Borrower's default under the Credit Agreement and Guarantor's default under the Guaranty Agreement.  But for those defaults, Plaintiffs would not have demanded that SunTrust sue unspecified Virgo affiliates, which demand was the basis for Plaintiff's original claims in this action.  *See, e.g.*, *Landpen Co., L.P. v. Maryland Cas. Co.*, No. 03-cv-3624, 2005 WL 356809, at *6 (S.D.N.Y. Feb. 15, 2005) ("[C]ourts in New York have deemed the words 'arising out of' to be

broad, general, comprehensive terms ordinarily understood to mean originating from, incident to, or having connection with" the subject of the instrument.).

Second, SunTrust's expenses incurred in connection with this action are indemnifiable for the independent reason that Plaintiffs' claims are premised on SunTrust's performance under the Loan Documents. Indeed, Plaintiffs allege that SunTrust breached the Credit Agreement (Counts 1 and 4) and the Term Loan Joinder Agreement (Counts 3 and 6), which are Loan Documents as defined in the Credit Agreement, by failing to sue various Virgo entities and by distributing funds obtained from the Alchemy Trustee the way that it did. (*See* FAC ¶¶ 102–41; ECF 45-1, Credit Agreement § 1.1.) Similarly, Plaintiffs implied-covenant claims (Counts 2 and 5) depend entirely on the existence of the underlying Credit Agreement. (*See* FAC ¶¶ 109–13, 129–34.)

Plaintiffs' contention that SunTrust's claim for indemnity does not "arise out of" any of the "listed events" in Credit Agreement Section 10.3(b), but rather from SunTrust's "failure to take actions required under the Credit Agreement" (ECF 49, at 3), is spurious. Plaintiffs allege that SunTrust breached its obligations under the Credit Agreement and the Term Loan Joinder Agreement. (*See* FAC ¶¶ 102–41.) Whether Plaintiffs characterize their claims as based on SunTrust's allegedly improper action or inaction is immaterial. In either case, Plaintiffs' claims unquestionably "aris[e] out of," are "in connection with," or are "a result of" parties' "performance" of their "obligations" under the Loan Documents or "any actual or prospective claim, litigation, investigation or proceeding relating to" those Loan Documents. *See, e.g.*, *KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*, 600 B.R. 214, 231–33 (S.D.N.Y. 2019) (rejecting plaintiffs' contention that their breach of contract and implied covenant claims fell outside the scope of the parties substantively identical indemnification provision).

13

2.     The Exceptions to the Indemnification Provision Do Not Apply

No exception to the right to indemnification applies here.  The Credit Agreement provides that indemnity is unavailable where the "losses, claims, damages, liabilities or related expenses *are determined by a court of competent jurisdiction by final and non-appealable judgment* to have resulted from": (1) "the gross negligence or willful misconduct of or breach of this Agreement or any other Loan Document"; or (2) "any disputes solely among indemnities *and* not arising out of any action or inaction of the Borrower, any other Loan Party, the Sponsor or any of their respective Affiliates."  (ECF 45-1, Credit Agreement § 10.3(b) (emphasis added).)

As a threshold matter, neither exception can apply as a matter of law because both require a "court of competent jurisdiction" to have entered a "final and non-appealable judgment" establishing the facts required to invoke the exception.  (*Id.*)  Plaintiffs do not allege—nor could they—that any such judgment has been rendered.  That shortcoming alone is fatal to any argument that Credit Agreement Section 10.3(b) forecloses indemnity.  *See, e.g.*, *Zyburo v. Cont'l Cas. Co.*, 60 F. Supp. 3d 531, 533 (S.D.N.Y. 2014) (dismissing claim requiring a "final and non-appealable judgment" as "premature" where "[p]laintiff has not obtained a judgment" against defendant in parallel liability action); *Maple Med., LLP v. Scott*, 191 A.D.3d 81, 105 (N.Y. App. Div., 2d Dep't 2020) (clause preventing escrow agent from disbursing funds pending a "final non-appealable order or judgment" barred disbursement because underlying judgments "were appealable").

In any event, Plaintiffs' attempts to invoke either exception fail on the merits.  First, Plaintiffs rely on the exception for gross negligence or willful conduct, but SunTrust committed no such breach.  (*See* ECF 36, ECF 40 (SunTrust briefs in support of motion to dismiss).)  Regardless, even had a court entered a final judgment, breaches of contract—even intentional breaches—cannot support a finding of gross negligence or willful misconduct.  *See Brooklyn 13th*

*Street Holding Corp. v. Nextel of New York, Inc.*, No. 11-cv-1048, 2011 WL 6945862, at *5 (E.D.N.Y. Dec. 30, 2011) ("An intentional breach of contract, without more, cannot constitute 'willful' misconduct").  Accordingly, the exception for gross negligence or willful conduct does bar indemnification here.

Second, the exception for losses arising out of disputes solely among Indemnitees does not apply because the parties' dispute here plainly "aris[es] out of any action or inaction of the Borrower, [] other Loan Party . . . or any of their respective Affiliates," a situation which is expressly carved out of the exception.  (ECF 45-1, Credit Agreement § 10.3(b).)  Plaintiffs' claims relate to fees that SunTrust obtained from the Alchemy Trustee as a result of actions or inactions of Borrower and Guarantor, which defaulted.   Indeed, this action also arises from actions or inactions of the Loan Parties.  The very claim Plaintiffs have sued SunTrust for not asserting was a claim that Virgo—a Guarantor affiliate—failed to fulfill contractual obligations under the Guaranty Agreement, and Plaintiffs assert that the contractual obligations were imputed to Virgo as Guarantor's alter ego and/or agent.  (FAC ¶ 10.)  Put simply, *all* of Plaintiffs' claims against SunTrust "aris[e] out of" Borrower's and Guarantor's default.  *See Country-Wide Ins. Co. v. Excelsior Ins. Co.*, 147 A.D.3d 407, 409 (N.Y. App. Div., 1st Dep't 2017) ("[T]he phrase arising out of is unambiguous, and is interpreted broadly to mean originating from, incident to, or having connection with[.]" (internal quotations omitted)).[7]

Accordingly, pursuant to the plain terms of the Credit Agreement, SunTrust is entitled to indemnification for its expenses, including attorney's fees, in the Alchemy Bankruptcy (including the Trustee Adversary Actions), in the SunTrust Guaranty Action, and in this action.

---

[7] Plaintiffs do not contend that the Alchemy Bankruptcy, Trustee Adversary Actions, and SunTrust Guaranty Action each arise from the Borrower and Guarantor's failure to pay the debts due.

### B.     SunTrust Properly Distributed Funds Pursuant to the Credit Agreement.

SunTrust was entitled—and, in fact, required—to distribute the funds received from the Alchemy Trustee precisely the way it did.  The Credit Agreement establishes the following priorities and distribution procedure:

> (a) first, to the reimbursable expenses of the Administrative Agent incurred in connection with such sale or other realization upon the Collateral, until the same shall have been paid in full;
>
> (b) second, to the fees and other reimbursable expenses of the Administrative Agent then due and payable pursuant to any of the Loan Documents, until the same shall have been paid in full;
>
> (c) third, to all reimbursable expenses, if any, of the Lenders [pro rata] then due and payable pursuant to any of the Loan Documents, until the same shall have been paid in full;
>
> (d) fourth, to the fees and interest then due and payable under the terms of this Agreement [pro rata], until the same shall have been paid in full . . . .

(ECF 45-1, Credit Agreement § 8.2 (emphasis in original).)

SunTrust followed the distribution procedure to the letter.  First, because SunTrust's legal fees and expenses incurred in connection with the Alchemy Bankruptcy (including the Trustee Adversary Actions) and SunTrust Guaranty Action were incurred by the Administrative Agent to recover on behalf of the Lenders to realize upon the collateral provided by the Loan Documents, SunTrust's expenses incurred in connection with those matters were required to be reimbursed prior to any other distributions.  (Id. §§ 8.2(a), 10.3(a)(i).)

Second, SunTrust's fees and expenses incurred in connection with this action are "reimbursable expenses of the Administrative Agent" (Id. § 8.2(b)), which include "all out-of-pocket costs and expenses (including, without limitation, the reasonable fees, charges and disbursements of outside counsel and the allocated cost of inside counsel) incurred by the Administrative Agent or any Lender in connection with the enforcement or protection of its rights in connection with" the Credit Agreement (id. § 10.3(a)(ii)).  Even if SunTrust's expenses in the

Alchemy Bankruptcy and in the SunTrust Guaranty Action were not qualifying expenses under the first provision of the distribution waterfall, those expenses would nonetheless qualify for second priority here, ahead of any distributions to the other Lenders. (*Id*. § 8.2(b).) Accordingly, SunTrust was required to reimburse itself for all expenses incurred in the Alchemy Bankruptcy, the SunTrust Guaranty Action, and this action before making any distributions to the Lenders. (*Id*. § 10.3(a).)

Next, pursuant to the Credit Agreement, SunTrust was required to pay any reimbursable expenses of the lenders then "due and payable." (ECF 45-1, Credit Agreement § 8.2(c).) Plaintiffs appear to rely on this provision to allege that SunTrust should have distributed funds to them, but they do not and cannot allege that any such reimbursable expenses were due and payable to them at the time SunTrust made the distributions in question. For such expenses to be payable, Plaintiffs must make a "written demand therefor." (ECF 45-1, Credit Agreement § 10.3(f).) Plaintiffs, however, made no such written demand for indemnification.[8] (*See generally* ECF 45.)

Finally, SunTrust was required to distribute any remaining funds to the Lenders—which include SunTrust—"*pro rata*." (ECF 45-1, Credit Agreement § 8.2(d).) And that is precisely what SunTrust did, as Plaintiffs concede. (FAC ¶ 96–97.)

Plaintiffs make much of the fact that SunTrust allegedly made the distributions of the funds obtained from the Alchemy Trustee "unilaterally." (*See, e.g.*, FAC ¶¶ 96, 98, 124–26, 132, 138–29.) They do not, however, point to any provision of the Credit Agreement (or any other Loan Document) that prevents SunTrust, as the Administrative Agent, from doing so. At bottom, Plaintiffs' gripe is with the priorities in the distribution procedure to which they agreed in the

---

[8] Plaintiffs appear to recognize this and now allege that SunTrust breached the implied covenant of good faith and fair dealing by failing to encourage them to submit a written demand. (ECF 49, at 5.) Plaintiffs' implied covenant fails for the reasons explained *infra*, Argument Section II.

Credit Agreement.  Accordingly, Plaintiffs' claim for breach of the Credit Agreement fails as a matter of law, and the Court should dismiss Count 4.  *Cf. Deutsche Bank AG v. JPMorgan Chase Bank*, No. 04-cv-7192, 2007 WL 2823129, at *22 (S.D.N.Y. Sept. 27, 2007) (administrative agent's interpretation and proposed disbursement following the terms of distribution provision was proper), *aff'd*, 331 F. App'x 39 (2d Cir. 2009).

        **C.**      **Plaintiffs Fail to State a Claim for Breach of the Term Loan Joinder Agreement Because That Breach Claim Depends Entirely on the Alleged Breach of the Credit Agreement.**

Plaintiffs contend that SunTrust breached the Term Loan Joinder Agreement by breaching the Credit Agreement because the Term Loan Joinder Agreement provides that SunTrust was appointed and authorized "to exercise such powers under the Credit Agreement . . . ." (FAC ¶ 138; ECF 45-4, Term Loan Joinder Agreement, at 1.)  In other words, Plaintiffs do not allege that SunTrust breached any provision of the Term Loan Joinder Agreement independent of the Credit Agreement.  (*See* FAC ¶ 138; ECF 49, at 3–4.)  Instead, Count 6 explicitly relies on SunTrust's "contractual duties and obligations [] under the *Credit Agreement*."  (*Id*. (emphasis added).)  Plaintiffs' claim for breach of the Term Loan Joinder Agreement is therefore derivative and depends entirely on Plaintiffs' breach of the Credit Agreement claim.

As a result, because Plaintiffs' claim for breach of the Credit Agreement fails, their claim for breach of the Term Loan Joinder Agreement also fails as a matter of law.  The Court should thus dismiss the Count 6 of the First Amended Complaint.

**II.**      **Plaintiffs Fail to State a Claim for Breach of the Implied Covenant (Count 5) Because Plaintiffs Expressly Waived Any Implied-Covenant Claim.**

The Court should dismiss Count 5 of the First Amended Complaint, for breach of the implied covenant of good faith and fair dealing, because Plaintiffs waived implied-covenant claims against SunTrust, as Administrative Agent, in the Credit Agreement.

An implied-covenant claim requires a breach of an implied duty under an existing contract. *See, e.g.*, *HSH Nordbank AG New York Branch v. Street*, 421 F. App'x 70, 73 (2d Cir. 2011) (referring to implied-covenant claim as a claim for breach of the "implied duty of good faith and fair dealing" and holding that administrative agent under a loan did not breach); *Beninati v. F.D.I.C.*, 55 F. Supp. 2d 141, 146 (E.D.N.Y. 1999) (referring to an implied-covenant claim as a "claim for breach of an implied duty").  Where "a plaintiff asserts both express and implied contract claims, the plaintiff must allege an implied duty that is consistent with the express contractual terms . . . ."  *JM Vidal, Inc. v. Texdis USA, Inc.*, 764 F. Supp. 2d 599, 620 (S.D.N.Y. 2011) (quotation marks omitted).

Here, Plaintiffs expressly agreed in Credit Agreement Section 9.2 that SunTrust "shall not be subject to any fiduciary or other implied duties."  (ECF 45-1, Credit Agreement § 9.2.)  By disclaiming *any* "implied duties" on SunTrust's part, Plaintiffs waived any implied-covenant claim because such a claim "must allege an implied duty that is consistent with the express contractual terms."  *JM Vidal, Inc.*, 764 F. Supp. 2d at 620; *see also Commerzbank AG v. U.S. Bank Nat'l Ass'n*, 277 F. Supp. 3d 483, 498 (S.D.N.Y. 2017) (applying New York law and dismissing implied-covenant claim based on contractual provision that "no implied covenants or obligations shall be read into this Agreement").

Moreover, New York law does not imply a covenant into a contract that is "inconsistent with other terms of the contractual relationship."  *In re Enron Corp.*, 292 B.R. 752, 782–83 (Bankr. S.D.N.Y. 2003) (applying New York law) (citing *Banco Espanol de Credito v. Security Pacific Nat'l Bank,* 763 F. Supp. 36, 45 (S.D.N.Y 1991)).  In *Enron*, a contract provided that the defendant bank "shall have no obligation to [plaintiff bank] in respect of the Participating Interests, which is not expressly set forth in this Agreement."  292 B.R. at 764.  Nonetheless, the plaintiff bank alleged

that the defendant bank breached the implied covenant of good faith and fair dealing. *Id.* at 782. The court explained that the provision concerning obligations "not expressly set forth in this Agreement" "directly contradicts . . . any claim that [defendant bank] had an obligation to act pursuant to the covenant of good faith and fair dealing . . . ." *Id.* at 783. Recognizing that "sophisticated parties drafted contract language that clearly defined their rights," the court "decline[d] to find that the implied duty of good faith should be used to evaluate [defendant bank's] conduct . . . ." *Id.*

The same is true here. Just as the agreement in *Enron* disclaimed any "obligation . . . not expressly set forth in this Agreement," the Credit Agreement here specifies that "the Administrative Agent shall not have any duties or obligations except those expressly set forth in this Agreement and the other Loan Documents." (ECF 1-1, Credit Agreement § 9.2.) By agreeing that SunTrust would have no duties or obligations except those expressly set forth in the Credit Agreement, Plaintiffs, unquestionably sophisticated parties (*see* FAC ¶ 1), waived any claim that SunTrust breached the implied covenant of good faith and fair dealing. *See Enron*, 292 B.R. at 783. The Court should therefore dismiss Count 5.

## III. Plaintiffs Fail to State a Claim for Damages on All Counts Because the Credit Agreement's Exculpatory Clause Bars Plaintiffs' Claims.

The Court should also dismiss the First Amended Complaint in its entirety for the separate and independent reason that Plaintiffs' damages claims are prohibited by the Credit Agreement's exculpatory clause.[9]

Section 9.2(c) of the Credit Agreement relieves SunTrust, as Administrative Agent, of all liability "in the absence of its own gross negligence or willful misconduct." (ECF 45-1, Credit

---

[9] Plaintiffs do not seek declaratory or injunctive relief (*see* FAC at 33), and for the reasons set forth herein, fail to state a claim for damages.

Agreement § 9.2.)  New York law sets a high bar for sophisticated parties, like Plaintiffs, seeking

to nullify an exculpatory or liability limitations provision to which they agreed:

> [Several decisions] illustrate the far higher mark at which New York courts place
> the bar and, also, the effects of wrongful conduct sufficient as a matter of law to
> nullify a limitations of liability clause in contract—demanding nothing short of in
> a compelling demonstration of egregious intentional misbehavior evincing extreme
> culpability: malice, recklessness, deliberate or callous indifference to the rights of
> others, or an extensive pattern of wanton acts.

*Morgan Stanley & Co. Inc. v. Peak Ridge Master SPC Ltd.*, 930 F. Supp. 2d 532, 544 (S.D.N.Y.

2013) (citing *Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y.,* 273 F. Supp. 2d 436, 449–50

(S.D.N.Y. 2003)).

Courts applying New York law thus routinely apply and enforce such unambiguous

exculpatory clauses.  *See Peak Ridge*, 930 F. Supp. 2d at 544 (granting, in relevant part, motion to

dismiss based on "the unambiguous liability limitation" of an exculpatory provision applying to

damage "caused by its gross negligence or willful misconduct"); *Retty Fin., Inc. v. Morgan Stanley

Dean Witter & Co.*, 293 A.D.2d 341 (N.Y. Ct. App., 1st Dep't 2002) ("The limitation of liability

provision within the parties' contract, providing that defendant would be subject to liability only

for gross negligence or willful misconduct . . . , was unambiguous and applicable to the instant

matter.") (affirming trial court order granting motion to dismiss).

Plaintiffs new claims baldly allege that SunTrust's actions in allocating the Alchemy

Trustee's distributions "constitute grossly negligent and willful misconduct."  (FAC ¶¶ 127, 133,

140.)  But merely "label[ing]" SunTrust's conduct "gross[] negligence" and "willful misconduct"

does not meet the clear the pleading standard.  *Twombly*, 550 U.S. at 555–56; *see also Repsol, S.A.

v The Bank of New York Mellon*, No. 652653/2012, 2014 WL 468910 (N.Y. Sup. Ct., N.Y. Cty.

Feb. 04, 2014) (applying same exculpatory language as used here and dismissing complaint

because "the complaint contains only a conclusory assertion, and no factual allegations, that [the agent] acted in a 'grossly negligent' manner").

In the absence of specific facts supporting their allegations of gross negligence and willful misconduct, Plaintiffs apparently rely on the same factual content they contend supports their claims for breach. (*See generally* FAC ¶¶ 121–41.) Plaintiffs merely allege garden-variety contractual violations, which they disingenuously characterize as "gross negligence" and "willful misconduct." (*See* FAC ¶ 101.) But, as explained above, mere allegations of contractual breaches—even intentional breaches—are insufficient to demonstrate gross negligence or willful misconduct. *See supra*, at 14 (citing *Brooklyn 13th Street*, 2011 WL 6945862, at \*5). Plaintiffs have thus failed to meet their pleading burden.

Accordingly, the Court should dismiss Counts 4, 5, and 6 because the Credit Agreement's exculpatory provision bars Plaintiffs' claims for damages.

## CONCLUSION

For the foregoing reasons, the Court should grant SunTrust's motion and dismiss the First Amended Complaint. Because the plain language of the Credit Agreement forecloses Plaintiffs' claims for breach of contract, and because Plaintiffs waived their implied-covenant claim, the Court should dismiss the First Amended Complaint with prejudice. *See Kenard v. Nussbaum*, No. 87-cv-0318, 1988 WL 25240, at \*4 (S.D.N.Y. Feb. 26, 1988) ("Because under this complaint, no facts can be stated which provide a basis for relief, dismissal with prejudice is appropriate.").

Dated: December 10, 2021                                KING & SPALDING LLP

                                                        By:   */s/  Peter Isajiw*
                                                              Peter Isajiw

Kenneth B. Fowler (admitted *pro hac vice*)
1185 Avenue of the Americas
New York, NY 10036
Phone: 212-556-2235
Fax: 212-556-2222
pisajiw@kslaw.com
kfowler@kslaw.com

David Tetrick, Jr. (admitted *pro hac vice*)
Paige Burroughs (*pro hac vice* application
                               forthcoming)
1180 Peachtree Street, NE
Atlanta, GA 30309-3521
Phone: 404-572-4600
Fax: 404-572-5100
dtetrick@kslaw.com
pburroughs@kslaw.com

*Attorneys for Defendants*
*SunTrust Bank and Truist Bank*