# Attachment B

# EXHIBIT "A"

Virgo Defendants Settlement Agreement

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into as of October 5, 2021, by and among the following parties (referred to collectively as the "Settling Parties" and individually as a "Settling Party"): (a) George L. Miller, solely in his capacity as the Chapter 7 Trustee (the "Trustee") of the jointly administered bankruptcy estates of Our Alchemy, LLC ("Alchemy") and Anderson Digital, LLC ("Anderson Digital," and collectively with Alchemy, the "Debtors"), on one hand, and Virgo Investment Group, LLC; Virgo Societas Partners, LLC; Virgo Societas Partnership III (Onshore), L.P.; Virgo Societas Partnership III (Offshore), L.P.; Virgo Service Company, LLC; OA Investment Partners, LLC; OA Investment Holdings, LLC; Jesse Watson; Mark Perez; and Todd Dorfman (collectively, the "Settling Defendants" or the "Virgo Defendants").

## RECITALS

WHEREAS, on July 1, 2016 (the "Petition Date"), Debtors filed voluntary petitions for relief under Chapter 7 of Title 11 of the United State Code (the "Bankruptcy Code") in the United States Bankruptcy Court of the District of Delaware (the "Bankruptcy Court");

WHEREAS, on December 6, 2016, the Bankruptcy Court entered an *Order Directing Joint Administration and Procedural Consolidation* (Dkt. No. 347) of the Debtors' bankruptcy cases ("Debtors' Chapter 7 Cases") which proceeded under the caption *In re Our Alchemy, LLC, et al.*, U.S.B.C.D. Del., Case No. 16-11596 (JTD);

WHEREAS, on June 29, 2018, the Trustee commenced an adversary proceeding in the Bankruptcy Court against the Settling Defendants, and certain other defendants that are not parties to this Agreement (the "Non-Settling Defendants")[1], in a case styled *George L. Miller v. ANConnect, LLC, et al.*, 18-50633 (JTD), asserting causes of action against the Defendants for, *inter alia*, the avoidance and recovery of certain transfers by or on behalf of the Debtors under the Bankruptcy Code and Delaware Uniform Fraudulent Transfer Act, unjust enrichment, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and breach of contract (the "Adversary Proceeding");

WHEREAS, the Settling Defendants deny the Trustee's allegations in the Adversary Proceeding and have asserted defenses to each of the Trustee's causes of action;

WHEREAS, the Trustee is the only party with authority to bring causes of action on behalf of the Debtors or the Debtors' bankruptcy estates;

WHEREAS, in order to avoid the high costs and uncertainties of litigation, the Settling Parties have decided to compromise, settle, forever resolve, and finally dispose of any and all claims between the Settling Parties relating in any way to the Debtors or the Debtors' bankruptcy estates;

---

[1] The "Non-Settling Defendants" are ANConnect, LLC; Anderson Merchandisers, LLC; Anderson Merchandisers Canada, Inc.; ARC Entertainment, LLC; Ardon Moore; Bill Lee; Stephen Lyons; and Freyr Thor.

- 1 -

WHEREAS, the Settling Parties desire to settle all claims between them in any way, directly or indirectly, arising from or relating to the facts, circumstances, events and/or transactions underlying the Adversary Proceeding, whether or not asserted therein, the Debtors and the Debtors' bankruptcy estates;

WHEREAS, no settlement has been reached between the Trustee on the one hand and the Non-Settling Defendants on the other, and the Adversary Proceeding will continue against the Non-Settling Defendants.

NOW, THEREFORE, in consideration of the premises aforesaid and the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and subject to the Bankruptcy Court's approval of this Agreement, the Settling Parties hereby agree as follows:

1. Recitals. Each of the recitals set forth above are incorporated herein, and the Settling Parties acknowledge that each recital is true and correct.

2. Effective Date. The term "Effective Date" shall mean the date on which an order approving this Agreement that has been entered by Bankruptcy Court (the "Approval Order") has become a final order. The Approval Order shall be deemed a final order (a) when the time for appeal has passed without an appeal having been taken, or (b) if a timely appeal has been taken, when the appeal has been resolved with the Approval Order intact (or modified in a manner acceptable to the Settling Parties). Notwithstanding the foregoing, the filing of an appeal by the "Usurping Banks" (or any of them), or by a party without standing to object to the Agreement shall not constitute the filing of an appeal for purposes of impacting or delaying the Effective Date unless a stay of the Approval Order has been entered.

3. Settlement Payment. Within fifteen (15) days of the Effective Date, the Settling Defendants shall pay to the Trustee the total sum of Five Million Two Hundred Thousand Dollars ($5,200,000.00) in immediately available funds (the "Settlement Payment"), by wire transfer pursuant to the wire instructions to be provided separately by the Trustee.

4. Additional Settlement Payment. Should the Trustee succeed in obtaining a Bar Order against the "Usurping Banks," as hereinafter described (the "Bar Order"), the Settling Defendants shall pay to the Trustee the additional sum of Three Hundred Thousand Dollars ($300,000.00) in immediately available funds (the "Additional Settlement Payment"), by wire transfer pursuant to the wire instructions to be provided separately by the Trustee. The Additional Settlement Payment shall be due within fifteen (15) days of the Bar Order becoming a final order, meaning an order for which the time for appeal has passed with no appeal having been taken, or if an appeal has been taken, the appeal has been finally resolved in a manner which leaves the Bar Order substantially intact.

5. Bankruptcy Court Approval. Promptly after all Settling Parties have executed this Agreement, the Trustee shall file a motion (the "9019 Motion") with the Bankruptcy Court requesting approval of this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. The form of the 9019 Motion shall be subject to approval by the Settling Defendants, which approval shall not be unreasonably withheld.

6. **Trustee's / Debtors' Releases**. Upon receipt of the Settlement Payment, except for the obligations under this Agreement, the Trustee (but only in his capacity as such), the Debtors, and the Debtors' estates shall, without further action, irrevocably and unconditionally, fully, finally and forever waive, release, acquit and discharge the Settling Defendants, and their respective spouses, heirs, parents, subsidiaries, affiliates, members, directors, officers, managers, employees, attorneys (but only in their capacities as such), agents (but only in their capacities as such), successors, or assigns, and their professionals and agents (but only in their capacities as such), excluding, however the Non-Settling Defendants, Stroock & Stroock & Lavan LLP, against whom the Trustee has asserted claims in the matter of *George L. Miller v. Stroock & Stroock & Lavan LLP*, Bankr. D. Del. Adv. No. 18-50630 (JTD), Charles C. Anderson, Jr. a/k/a Charlie Anderson, Bill Lee, any member, partner, owner or affiliate of the Non-Settling Defendants, Ardon Moore, ARC Entertainment, LLC and any defendant in the Adversary Proceeding (who is not a Settling Defendant) (collectively, the "Settling Defendant Releasees") of and from any claim (as that term is defined in section 101(5) of the Bankruptcy Code), obligation, suit, judgment, damages, demand, debt, right (including without limitation, rights of indemnity, contribution, payment, and reimbursement), liability, or cause of action, whether known or unknown, direct or indirect, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, statute, or otherwise, including without limitation any of the foregoing arising under theories of contract, successor liability, tort, agency, unjust enrichment, alter ego, substantive consolidation, extension, or veil piercing, and any and all fraudulent conveyance or transfer claims that, in either instance, could be brought by the Trustee or Debtors under state, federal or foreign law, including but not limited to the claims that were or could have been asserted against the Settling Defendants in the Adversary Proceeding or any other action or proceeding. Notwithstanding the foregoing, this release shall not release, discharge, or prejudice the Trustee's claims against the Non-Settling Defendants except to the extent required under Section 11 of this Agreement as to Contribution Claims.

7. **Settling Defendants' Releases**. Upon the Effective Date, except for the obligations under this Agreement, each of the Settling Defendants shall, without further action, irrevocably and unconditionally, fully, finally and forever waive, release, acquit and discharge the Trustee (solely in his capacity as such), the Trustee's professionals and agents (but only in their capacities as such), the Debtors, the Debtors' estates, and their respective spouses, heirs, parents, subsidiaries, affiliates, members, directors, officers, managers, employees, attorneys (but only in their capacities as such), agents (but only in their capacities as such), successors, or assigns (collectively, the "Debtor Releasees"), of and from any claim (as that term is defined in section 101(5) of the Bankruptcy Code), obligation, suit, judgment, damages, demand, debt, right (including without limitation, rights of indemnity, contribution, payment, and reimbursement), liability, or cause of action, whether known or unknown, direct or indirect, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, including without limitation any of the foregoing arising under theories of contract, successor liability, tort, agency, unjust enrichment, alter ego, substantive consolidation, extension, or veil piercing, that were or could have been asserted in the Adversary Proceeding, or any other action or proceeding. Upon the Effective Date, the Settling Defendants shall have relinquished any claim to any right, title or interest in or to the property of the Debtors and any right to assert a claim of any sort against the Debtors.

8.  **Release of Unknown Claims.** The releases provided by the Trustee, Debtors, and Settling Defendants in this Agreement include the release of unknown claims, which include claims which, if known by such person, might have affected its decision with respect to the settlement or the releases provided as part of the settlement. Each of those persons voluntarily and knowingly waives and relinquishes any and all rights and benefits which they have or may have under the laws of any jurisdiction. Each of the Settling Parties acknowledges that it has been advised by its attorneys concerning, and is familiar with, California Civil Code Section 1542 and expressly waives any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to the provisions of the California Civil Code Section 1542, including that provision itself, which reads as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Settling Parties acknowledge that inclusion of the provisions of this Section was a material and separately bargained for element of this Agreement. The Trustee, Debtors, and Settling Defendants are aware that they may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of this Agreement, but except as expressly provided in the releases, it is their intention fully, finally, and forever to settle and release any and all of the claims, demands, and causes of action falling within the scope of the releases provided for in this Agreement upon the Effective Date.

9.  **Claim / Objection Waivers.**

    9.1  As of the Effective Date, the Settling Defendants waive any and all claims they have or might have had against the Debtors' estates in Debtors' Chapter 7 Cases, including without limitation any filed proof of claim or scheduled claim, and waive the right to file or assert any claim in Debtors' Chapter 7 Cases.

    9.2  The Settling Defendants irrevocably, unconditionally, fully, finally and forever waive and release any and all rights to object to the fees and expenses of the Trustee and the Trustee's professionals incurred in Debtors' Chapter 7 Cases, and to the Trustee's administration of Debtors' Chapter 7 Cases.

10. **Dismissal of Various Defendants and Claims in the Adversary Proceeding.** No later than five (5) business days after the Trustee's receipt of the Settlement Payment, the Settling Parties will execute, and the Trustee will file in the Adversary Proceeding, a stipulation dismissing *with prejudice*, with each Party to bear its own fees and costs (the "Dismissal Stipulation"), all claims asserted in the Adversary Proceeding by the Trustee against the Settling Defendants;

11. **Protection from Contribution Claims by Non-Settling Defendants.**

   11.1 In the event that the Non-Settling Defendants (or any of them), any affiliate of the Non-Settling Defendants, or any other person or entity hereafter assert a claim or claims for contribution or indemnification against the Settling Defendants (or any of them) arising out of claims prosecuted by the Trustee against the Non-Settling Defendants, any affiliate of the Non-Settling Defendants, or any other person or entity (the "Contribution Claims"), the Trustee, at his expense and with counsel of his choosing and with the cooperation and participation of counsel selected by the Settling Defendants (provided, however, that the Settling Defendants shall be responsible to pay the fees and expenses of the counsel selected by them and the Trustee shall have no obligation to pay or reimburse the Settling Defendants for such counsel fees or expenses), shall defend the Settling Defendants against such Contribution Claims and shall reduce, satisfy or extinguish his claims or any judgment(s) obtained thereon to the extent necessary to satisfy or extinguish the liability of the Settling Defendants for the Contribution Claims. Notwithstanding the foregoing, the Trustee's obligations to defend, reduce, satisfy or extinguish the Settling Defendants' liability in connection with Contribution Claims shall be conditioned upon: (1) the Settling Defendants' prompt tender of the defense to the Trustee, and the reasonable cooperation of the Settling Defendants with the Trustee's defense of the Contribution Claims; and, (2) the absence of any admission of liability or settlement by the Settling Defendants in connection with the Contribution Claims. To the maximum extent permitted under the governing principles or applicable rules of professional responsibility, the Settling Parties consent to being represented by the Trustee's special counsel and waive any actual or potential conflict of interest that may arise from counsel's joint representation of the Trustee and the Settling Defendants.

   11.2 In connection with any future settlement by the Trustee of the Adversary Proceeding or any other proceeding against the Non-Settling Defendants, any affiliate of the Non-Settling Defendants, or any other person or entity who may thereafter assert Contribution Claims, the Trustee will obtain as a condition of any such settlement a release for the benefit of Settling Defendants, releasing and extinguishing any claims of the Non-Settling Defendants to recover from the Settling Defendants (or any of them) any portion of the settlement proceeds paid by the Non-Settling Defendants to the Trustee or to otherwise seek or obtain indemnification and/or contribution from the Settling Defendant in connection with such settlement.

12. **Cooperation with Litigation.** This Adversary Proceeding will continue against the Non-Settling Defendants. The Settling Defendants agree that their respective counsel will accept service of subpoenas from the Trustee in the Adversary Proceeding for documents or testimony, provided that any document subpoenas shall not request documents previously sought by the Trustee and produced by the Settling Defendants. The Settling Defendants also agree to participate in informal interviews with counsel for the Trustee as relates to matters relevant to the Trustee's continued litigation against the Non-Settling Defendants, and the Trustee agrees to

conduct the interviews at times and in a manner convenient to the Settling Defendants. Any testimony provided by the Settling Defendants shall be at a location mutually agreed upon by each Settling Defendant and the Trustee.

13. <u>Trustee to Request a Bar Order</u>. A group of lenders (the "<u>Pre-Petition Lenders</u>") made loans to Debtor Alchemy under two Credit Agreements: that certain Revolving Credit and Term Loan Agreement, dated as of September 4, 2014, and that certain Amended and Restated Revolving Credit and Term Loan Agreement, dated as of July 9, 2015 (collectively, the "<u>Credit Agreements</u>"). In Section 9.1 of the Credit Agreements, the Pre-Petition Lenders irrevocably appointed SunTrust Bank as the Administrative Agent, with the sole authority to enforce the Credit Agreements on behalf of the Pre-Petition Lenders. Two of the Pre-Petition Lenders—Emigrant Bank and Pacific Mercantile Bank (collectively, the "<u>Usurping Banks</u>")—have commenced litigation in state court against certain of the Settling Defendants in the matter of *Emigrant Bank, et al., v. Virgo Investment Group LLC, et al.*, N.Y. Supreme. Ct. N.Y. Cty. Index No. 654350/2021 (the "<u>State Court Litigation</u>"). It is the Trustee's view that the State Court Litigation (a) purports to usurp and attempts to assert claims that are property of the Debtors' Bankruptcy Estate and may only be prosecuted by the Trustee, (b) constitutes a violation of the automatic stay of the Bankruptcy Code to the substantial detriment of the Debtors' bankruptcy estates, (c) prejudiced and devalued the Trustee's claims in the context of the Bankruptcy Court approved mediation that resulted in the settlement with the Virgo Defendants, complicated the settlement process, and resulted in the Trustee receiving less than he would have otherwise received. Given, among other things, the timing of the State Court Litigation, the Usurping Banks lack of standing to prosecute claims of the Pre-Petition Lenders, the pendency of the Adversary Proceeding in which the Trustee is prosecuting overlapping claims on behalf of the Debtors, it is the Trustee's view that the Usurping Banks brought the State Court Litigation as a tactic to inject themselves into the Trustee's efforts to monetize property of the estate, to the detriment of the Debtors' bankruptcy estates. Accordingly, within fifteen (15) days of the Effective Date, the Trustee shall seek a Bar Order (the "<u>Bar Order</u>") prohibiting, restraining and enjoining the Usurping Banks from continuing to prosecute the State Court Litigation against the Virgo Defendants and from otherwise asserting claims against the Virgo Defendants arising out of or related to the Pre-Petition Loans or loan relationships with the Debtors. The Settling Defendants shall be afforded the opportunity to review and comment on the form of proposed Bar Order before it is filed with the Bankruptcy Court. The Trustee will consider in good faith any suggested changes requested by the Settling Defendants, provided that the Trustee shall have the final discretion and say as to the form and content thereof.

14. <u>Covenant Not to Sue</u>. The Trustee and the Debtors, and their respective successors and assigns, further covenant and agree not to pursue or prosecute any of the claims released in this Agreement or that arise out of or relate to any of the facts, circumstances, events and/or transactions underlying the Adversary Proceeding in any suit, claim, action, or proceeding seeking recovery against or from any one or more of the Settling Defendant Releases or Calrissian, L.P.

15. <u>Settling Party Representations</u>. Each Settling Party hereby represents and warrants that: (a) such Settling Party and the signatory hereto has the power and authority to execute, deliver and perform this Agreement; (b) such Settling Party has taken all necessary actions to authorize the execution, delivery and performance of this Agreement; (c) this Agreement has been duly executed and delivered by such Settling Party and constitutes the legal,

valid, and binding obligations of such Settling Party, enforceable against it in accordance with their respective terms; (d) such Settling Party's execution, delivery, and performance of this Agreement does not and will not conflict with, or constitute a violation or breach of, or constitute a default under any obligation of such Settling Party and will not violate any applicable law, or any order or decree of any court or government instrumentality applicable to such Settling Party; and (e) such Settling Party has entered into this Agreement in reliance on its own independent investigation and analysis of the facts underlying the subject matter of this Agreement, and no representations, warranties, or promises of any kind have been made directly or indirectly to induce it to execute this Agreement other than those that are expressly set forth in this Agreement.

16. **Cancellation of Agreement.** If the Effective Date does not occur, unless the Settling Parties otherwise agree in writing, this Agreement will be null and void as of the date that an order denying the 9019 Motion becomes a final, non-appealable order, and each of the Settling Parties will revert to their respective positions that existed on the date immediately prior to execution of this Agreement.

17. **No Assignment.** Each of the Settling Parties represents and warrants that it has not assigned or transferred any released matter or any right to consideration provided pursuant to this Agreement.

18. **No Admission of Liability.** This Agreement constitutes a compromise of the Settling Parties' disputes. Nothing contained herein shall in any way constitute or be deemed to be an admission or concession by any Settling Party as to any matter, including with respect to the truth of any fact alleged by the Trustee against the Settling Defendants, or any Settling Party against another, or the validity of any claim or cause of action that has been or could be asserted in any of the claims that are settled herein. Except in a dispute seeking enforcement of this Agreement, nothing in this Agreement or any of its terms, or any negotiations or proceedings connected with this Agreement, or any documents or statements referred to therein, shall be admissible in evidence against any Settling Party in any litigation, matter, or proceeding between any of the Settling Parties.

19. **Continuing Bankruptcy Court Jurisdiction.** The Settling Parties agree that the Bankruptcy Court shall retain exclusive jurisdiction to enforce this Agreement and the Settling Parties consent to the jurisdiction of the Bankruptcy Court over the enforcement of the provisions of this Agreement.

20. **Voluntary Agreement.** Each Settling Party acknowledges that it has read all the terms of this Agreement, has had an opportunity to consult with counsel of its own choosing or voluntarily waived such right, and enters into this Agreement voluntarily and without duress.

21. **Joint Drafting.** This Agreement shall be deemed to have been jointly drafted by the Settling Parties, and in construing or interpreting this Agreement, no provision shall be construed or interpreted for or against any Settling Party because such provision or any other provision of the Agreement was purportedly prepared or requested by such Settling Party.

22. <u>Applicable Law</u>. The validity, interpretation and performance of this Agreement shall be construed and interpreted according to the laws of the State of Delaware, except to the extent inconsistent with federal law.

23. <u>Attorneys' Fees, Costs and Expenses</u>. Each of the Settling Parties agrees to bear its own costs and expenses, including attorneys' fees, arising out of the matters raised in the Debtors' cases, the Adversary Proceeding and/or this Agreement.

24. <u>Successors and Assigns</u>. This Agreement shall be binding on and inure to the benefit of the Settling Parties and their respective agents, employees, affiliates, successors and assigns.

25. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Agreement. Delivery of a signature page to this Agreement by facsimile or other electronic means shall be effective as delivery of the original signature page to this Agreement.

26. <u>Effectiveness</u>. The effectiveness of this Agreement is conditioned upon the occurrence of the Effective Date, and in the event the Effective Date shall not occur: (1) this Agreement shall be null and void ab initio; (2) neither this Agreement nor any negotiations, proceedings or statements had or made in connection with this Agreement shall be used or referred to by any of the Settling Parties hereto in any manner or for any purpose; and (3) the Settling Parties shall be restored to their respective positions immediately prior to the execution and delivery of this Agreement.

27. <u>Entire Agreement</u>. This document contains the entire Agreement between the Settling Parties and may be modified only in a writing signed by all of the Settling Parties or their duly appointed agents. All prior agreements and understandings between the Parties concerning the subject matter hereof are superseded by the terms of this document.

28. <u>Divisions and Headings.</u> The divisions of this Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Agreement.

*[Signatures on Following Pages]*

WHEREFORE, the Settling Parties have executed this Agreement as of the date first set forth above.

**GEORGE L. MILLER, CHAPTER 7 TRUSTEE FOR THE JOINTLY ADMINISTERED BANKRUPTCY ESTATES OF OUR ALCHEMY, LLC AND ANDERSON DIGITAL, LLC**

By: *George L. Miller*

**VIRGO INVESTMENT GROUP, LLC**

By: Jesse Watson
Its: Authorized Representative

**VIRGO SOCIETAS PARTNERS, LLC**

By: Jesse Watson
Its: Authorized Representative

**VIRGO SOCIETAS PARTNERSHIP III (ONSHORE), L.P.**

By: Jesse Watson
Its: Authorized Representative

**VIRGO SOCIETAS PARTNERSHIP III (OFFSHORE), L.P.**

By: Jesse Watson
Its: Authorized Representative

**VIRGO SERVICE COMPANY, LLC**

- 9 -

By: */s/ Jesse Watson/*
Its: Authorized Representative

**OA INVESTMENT PARTNERS, LLC**

By: */s/ Jesse Watson/*
Its: Authorized Representative

**OA INVESTMENT HOLDINGS, LLC**

By: */s/ Jesse Watson/*
Its: Authorized Representative

**JESSE WATSON**

By: Jesse Watson


**MARK PEREZ**

*/s/ Mark Perez/*
By: Mark Perez


**TODD DORFMAN**

*/s/ Todd Dorfman/*
By: Todd Dorfman