# Attachment H

# KING & SPALDING

1180 Peachtree Street N.E.
Atlanta, GA 30309
Tel: +1 404 572 4600
Fax: +1 404 572 5100
www.kslaw.com

**David Tetrick**
Partner
Direct Dial: +1 404 572 3526
Direct Fax: +1 404 572 5100
dtetrick@kslaw.com

April 2, 2020

**VIA FIRST-CLASS MAIL AND E-MAIL**

Gary E. Gans
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543

*Counsel for Emigrant Bank and
Pacific Mercantile Bank*

Ms. Anna Bagdasarian
SVP, Group Manager
Preferred Bank
600 California Street, Suite 550
San Francisco, CA 94108-2729

Re:   **Indemnification Notice Arising Out of the Amended and Restated Revolving Credit and Term Loan Agreement (Our Alchemy, LLC, as Borrower)**

*Emigrant Bank and Pacific Mercantile Bank v. SunTrust Bank, Truist Bank and Does 1 Through 10, Inclusive*, Civil Action No. 1:20-cv-02391 (S.D.N.Y.)

Dear Mr. Gans and Ms. Bagdasarian:

We write on behalf of our client SunTrust Bank, now Truist Bank ("SunTrust"). This letter serves as notice that SunTrust will seek indemnification from Pacific Mercantile Bank ("PMB"), Emigrant Bank ("Emigrant"), and Preferred Bank ("Preferred") for all attorney's fees, court costs, litigation expenses, and other amounts that SunTrust incurs in connection with the referenced lawsuit filed against SunTrust based on its actions as Administrative Agent.

**A.   Background**

As you know, SunTrust, PMB, Emigrant, and Preferred are parties to the Amended and Restated Revolving Credit and Term Loan Agreement dated July 9, 2015 (the "Amended Credit Agreement"), pursuant to which Our Alchemy, LLC ("Our Alchemy") as "Borrower" obtained a $59.5 million revolving credit and term loan facility. SunTrust is the Administrative Agent, and SunTrust, PMB, Emigrant, and Preferred are the "Lenders" under the Amended Credit Agreement.[1]

---

[1] Although Emigrant Bank was not an original party to the Amended Credit Agreement, Emigrant became a Lender under the Amended Credit Agreement upon execution of the Term Loan Joinder Agreement dated July 10, 2015.

April 2, 2020
Page 2

The Credit Agreement was secured by a Guaranty and Security Agreement dated September 4, 2014 (the "Guaranty Agreement"),[2] entered into by and among SunTrust as Administrative Agent, Our Alchemy, and Calrissian L.P. ("Calrissian"). Under the Guaranty Agreement, Calrissian, the sole owner of Our Alchemy, agreed to guaranty certain Alchemy obligations under the Amended Credit Agreement.

In 2016, Our Alchemy defaulted on the Amended Credit Agreement. SunTrust, as Administrative Agent, exercised the remedy under the Amended Credit Agreement to accelerate Our Alchemy's outstanding debt of approximately $46 million and demand immediate payment from both Our Alchemy and Calrissian as guarantor. Our Alchemy failed to repay the debt and subsequently filed for Chapter 7 bankruptcy protection. When Calrissian also failed to perform, SunTrust sued Calrissian in an action styled as *SunTrust Bank v. Calrissian LP*, Index No. 654148/2016 (N.Y. Spr. Ct., N.Y. Cty.) (the "Guaranty Action"), seeking the entirety of Our Alchemy's outstanding debt as damages from Calrissian. Calrissian subsequently filed for Chapter 11 bankruptcy protection in 2017, and its bankruptcy proceedings were converted into a Chapter 7 case in 2018. The 2017 Calrissian bankruptcy petition automatically stayed the proceedings in the Guaranty Action. On January 9, 2020, the Bankruptcy Court for the District of Delaware entered an order closing the Calrissian bankruptcy proceedings. On January 14, 2020, the court in the Guaranty Action lifted the stay, and the litigation has resumed.[3]

Emigrant and PMB demanded that SunTrust, as Administrative Agent, file a lawsuit against Virgo Investment Group, LLC ("Virgo")—a non-party to the Loan Documents—seeking to hold Virgo liable for Our Alchemy's debt and Calrissian's guaranty obligations. SunTrust has been analyzing, and continues to analyze, whether it has a good-faith basis to assert such a claim against Virgo. To this end, counsel for SunTrust asked counsel for Emigrant and PMB to explain the legal and factual basis for filing such a claim against a non-party to the Loan Documents. Emigrant and PMB, which were demanding that such a suit be filed, should have been able to provide a detailed explanation for such a basis, especially because SunTrust in 2017 provided Emigrant and PMB with the 2 million documents that SunTrust obtained from Our Alchemy through the Our Alchemy bankruptcy trustee. Despite SunTrust's requests, and despite SunTrust having provided those 2 million documents to Emigrant and PMB, counsel for Emigrant and PMB provided no specific explanation for how SunTrust or the Lenders could hold Virgo legally responsible for Calrissian's obligations, other than citing certain loan transactions and reciting general principles about alter ego liability and the liability of principals.

Even though SunTrust informed Emigrant and PMB that it was continuing to assess whether it has a good-faith basis to sue Virgo, on March 18, 2020, Emigrant and PMB filed a lawsuit against SunTrust styled as *Emigrant Bank and Pacific Mercantile Bank v. SunTrust Bank, Truist Bank and Does 1 Through 10, Inclusive*, No. 1:20-cv-02391 (S.D.N.Y.) (the "S.D.N.Y. Action"). A copy of the complaint is attached. In the complaint, Emigrant and PMB allege that SunTrust breached its obligations as Administrative Agent by "refusing" to sue Virgo.[4] Emigrant

---

[2] We refer to the Amended Credit Agreement, the Guaranty Agreement, and the other agreements executed in connection with the term loan and revolving credit facility, collectively, as the "Loan Documents."

[3] The court had scheduled a status conference for March 24, 2020. The court, however, has adjourned that conference due to the protocols the court adopted as a result of the COVID-19 pandemic.

[4] Contrary to Emigrant and PMB's allegation, and as explained above, SunTrust has not foreclosed any such suit.

April 2, 2020
Page 3

and PMB's claims are meritless, and SunTrust intends to defend itself vigorously in the S.D.N.Y. Action.

**B.      Indemnification**

SunTrust will seek indemnification from the Lenders for all attorney's fees, court costs, litigation expenses, and other amounts incurred in connection with the S.D.N.Y. Action to the maximum extent allowed by law, under contract, in equity, or otherwise.

Without limiting the foregoing, SunTrust directs the Lenders' attention to Section 10.3 of the Amended Credit Agreement. Section 10.3(b) of the Amended Credit Agreement provides, in relevant part, as follows:

> The Borrower shall indemnify the Administrative Agent (and any subagent thereof), each Lender and each Related Party of any of the foregoing Persons (each such Person being called an "Indemnitee") against, and hold each Indemnitee harmless from, any and all losses, claims, damages, liabilities and related expenses (including the reasonable fees, charges and disbursements of any outside counsel for any Indemnitee), and shall indemnify and hold harmless each Indemnitee from, and shall reimburse each Indemnitee upon its demand for, all fees and time charges and disbursements for outside attorneys of any Indemnitee, incurred by any Indemnitee or asserted against any Indemnitee by any third Person or by the Borrower, any other Loan Party, the Sponsor or any of their respective Affiliates arising out of, in connection with, or as a result of any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory, whether brought by a third Person or by the Borrower, any other Loan Party, the Sponsor or any of their respective Affiliates, and regardless of whether any Indemnitee is a party thereto; <u>provided</u> that such indemnity shall not, as to any Indemnitee, be available to the extent that such losses, claims, damages, liabilities or related expenses are determined by a court of competent jurisdiction by final and non-appealable judgment to have resulted from (x) the gross negligence or willful misconduct of or breach of this Agreement or any other Loan Document by such Indemnitee or any Related Party of such Indemnitee or (y) any disputes solely among Indemnitees and not arising out of any action or inaction of the Borrower, any other Loan Party, the Sponsor or any of their respective Affiliates.

Section 10.3(d) further provides, in relevant part, as follows:

> To the extent that the Borrower fails to pay any amount required to be paid to the Administrative Agent under subsection (a), (b) or (c) hereof, each Lender severally agrees to pay to the Administrative Agent such Lender's *pro rata* share (in accordance with its respective Revolving Commitment (or Revolving Credit Exposure, as applicable) and Term Loan determined as of the time that the unreimbursed expense or indemnity payment is sought) of such unpaid amount; <u>provided</u> that the unreimbursed expense or indemnified payment, claim, damage, liability or related expense, as the case may be, was incurred by or asserted against the Administrative Agent in its capacity as such.

April 2, 2020
Page 4

Additionally, Section 10.3(f) provides that "[a]ll amounts due under this Section [10.3] shall be payable promptly after written demand therefor."

Here, the S.D.N.Y. Action falls within the scope of Section 10.3(b). SunTrust is the Administrative Agent, a Lender, and an Indemnitee under the Amended Credit Agreement. The lawsuit will cause SunTrust to incur "losses, claims, damages, liabilities and related expenses (including the reasonable fees, charges and disbursements of any outside counsel for any Indemnitee)." Moreover, the complaint asserts claims "arising out of, in connection with, or as a result of any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing . . . whether brought by a third Person or by the Borrower, any other Loan Party, the Sponsor or any of their respective Affiliates."

In addition, the carve-outs in Section 10.3(b) do not apply. At this time, there have been no court rulings or judgments. Accordingly, no "court of competent jurisdiction by final and non-appealable judgment" has determined that the claim "resulted from (x) the gross negligence or willful misconduct of or breach of this Agreement or any other Loan Document by such Indemnitee or any Related Party of such Indemnitee or (y) any disputes solely among Indemnitees and not arising out of any action or inaction of the Borrower, any other Loan Party, the Sponsor or any of their respective Affiliates."[5]

SunTrust is therefore entitled to indemnification from Our Alchemy. However, because Our Alchemy is unable to fulfill its indemnification obligation to SunTrust, the Administrative Agent, each Lender must "pay to the Administrative Agent such Lender's *pro rata* share."[6] And, pursuant to Section 10.3(f), all amounts due for such indemnification "shall be payable promptly after written demand therefor."

\*   \*   \*

SunTrust will be sending the Lenders written demands for payment as it incurs expenses and receives invoices arising out of the S.D.N.Y. Action. SunTrust will enforce its right to prompt payment following such written demands.

---

[5] SunTrust notes that the claims asserted in the S.D.N.Y Action did not "result[] from . . . any disputes solely among Indemnitees *and* not arising out of any action or inaction of the Borrower, any other Loan Party, the Sponsor or any of their respective Affiliates" (emphasis added). Among other things, the claims clearly arose out of the action or inaction of the Borrower and its "respective Affiliates." The primary focus of the complaint is the contention that Our Alchemy, Calrissian, and Virgo are liable to the Lenders based on Our Alchemy and Calrissian's breaches of contract.

[6] SunTrust notes that the Amended Credit Agreement provides that the Lenders must indemnify only those costs incurred by the Administrative Agent, and it does not require indemnification for costs incurred by Lenders other than the Administrative Agent (e.g., Emigrant or PMB). *See* Section 10.3(d) ("[E]ach Lender severally agrees to pay to the Administrative Agent such Lender's *pro rata* share . . . <u>provided</u> that the unreimbursed expense or indemnified payment, claim, damage, liability or related expense, as the case may be, was incurred by or asserted against the Administrative Agent in its capacity as such.").

April 2, 2020
Page 5

      SunTrust has retained King & Spalding to represent it regarding this indemnification notice. Accordingly, please direct all questions regarding this matter to me.

Sincerely,

David Tetrick

cc:    SunTrust Bank now Truist Bank
       Peter Isajiw (pisajiw@kslaw.com)
       Kenneth Fowler (kfowler@kslaw.com)

(Enclosure)