**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EMIGRANT BANK; AND PACIFIC MERCANTILE BANK, <br><br>                            Plaintiffs, <br><br>        -against- <br><br> SUNTRUST BANK; TRUIST BANK; AND DOES 1 THROUGH 10, INCLUSIVE, <br><br>                     Defendants. | Civil Action No. 1:20-cv-02391-PGG |

**PLAINTIFFS EMIGRANT BANK AND PACIFIC MERCANTILE BANK'S**
**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO**
**DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

## **Table of Contents**

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND ................................................................................................3

    A.    The Parties Enter Into The Credit Agreements And The Guaranty .......................3

    B.    Alchemy And Calrissian Default And Declare Bankruptcy....................................5

    C.    SunTrust And The Lenders Conclude There Are Potential Claims Against Virgo, But SunTrust Refuses To Sue Virgo Without A Release From Plaintiffs ...............................................................................................................5

    D.    Plaintiffs File The Initial Complaint......................................................................6

    E.    SunTrust Is Not Entitled To Indemnify Itself For Its Expenses In This Action ...................................................................................................................7

    F.    SunTrust Improperly Allocates Distributions From The Alchemy Bankruptcy ..........................................................................................................8

PROCEDURAL HISTORY ................................................................................................10

LEGAL STANDARD ........................................................................................................10

ARGUMENT ....................................................................................................................11

I.    SunTrust's Motion To Dismiss Counts IV And VI Should Be Denied ...........................11

    A.    SunTrust Is Not Entitled To Indemnification Under Section 10.3 Of The Credit Agreement ...............................................................................................11

    B.    SunTrust Did Not Properly Distribute The Funds Pursuant To Section 8.2 Of The Credit Agreement .................................................................................17

    C.    SunTrust's Breach Of The Credit Agreement Constitutes A Breach Of The Term Loan Joinder Agreement.................................................................20

II.    The Court Should Deny SunTrust's Motion To Dismiss The Claim For Breach Of The Implied Covenant In The Credit Agreement (Count V)............................................20

III.    The Credit Agreement Does Not Bar The Damages Sought Here ...................................23

CONCLUSION ..................................................................................................................25

# TABLE OF AUTHORITIES

**Page**

### Cases

*Abacus Fed. Sav. Bank v. ADT Sec. Services*,
18 N.Y.3d 675 (2012)...........................................................................................15

*Banc of Am. Sec. LLC v. Solow Bldg. Co. II, L.L.C.*,
47 A.D.3d 239 (1st Dep't 2007)...........................................................................15

*Bank Itec N.V. v. J. Henry Schroder Bank & Trust Co.*,
612 F. Supp. 134 (S.D.N.Y. 1985).......................................................................11

*Bank of New York Tr., N.A. v. Franklin Advisors, Inc.*,
522 F. Supp. 2d 632 (S.D.N.Y. 2007)............................................................10, 21

*Banks v. Corr. Servs. Corp.*,
475 F. Supp. 2d 189 (E.D.N.Y. 2007)............................................................11, 21

*Beninati v. F.D.I.C.*,
55 F. Supp. 2d 141 (E.D.N.Y. 1999).....................................................................22

*Brooklyn 13th Street Holding Corp. v. Nextel of New York, Inc.*,
2011 WL 6945862 (E.D.N.Y. Dec. 30, 2011)......................................................14

*Commerzbank AG v. U.S. Bank Nat'l Ass'n*,
277 F. Supp. 3d 483 (S.D.N.Y. 2017)............................................................21, 22

*CompuDyne Corp. v. Shane*,
453 F. Supp. 2d 807 (S.D.N.Y. 2006)...................................................................10

*Conzo v. City of New York*,
438 F. Supp. 2d 432 (S.D.N.Y. 2006)............................................................17, 19

*Country-Wide Ins. Co. v. Excelsior Ins. Co.*,
147 A.D.3d 407 (1st Dep't 2017)..........................................................................15

*Dalton v. Educ. Testing Serv.*,
87 N.Y.2d 384 (1995)............................................................................................21

*Deutsche Bank AG v. JPMorgan Chase Bank*,
2007 WL 2823129 (S.D.N.Y. Sept. 27, 2007).....................................................19

*Empire Merchants, LLC v. Merinoff*,
2018 WL 317848 (S.D.N.Y. Jan. 5, 2018)...........................................................13

*Fagan v. First Security Inv.*,
2006 WL 2671044 (S.D.N.Y. Sept. 15, 2006)......................................................25

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*,
    17 F. Supp. 2d 275 (S.D.N.Y. 1998) ........................................................22

*Greylock Glob. Opportunity Master Fund Ltd. v. Province of Mendoza*,
    2004 WL 2290900 (S.D.N.Y. Oct. 12, 2004) ...........................................18

*Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*,
    2013 WL 1191895 (S.D.N.Y. Mar. 22, 2013) ..........................................21

*Hoyt v. Andreucci*,
    433 F.3d 320 (2d Cir. 2006) .....................................................................16

*HSH Nordbank AG New York Branch v. Street*,
    421 F. App'x 70 (2d Cir. 2011) ...............................................................23

*In re CCT Commc'ns, Inc.*,
    464 B.R. 97 (Bankr. S.D.N.Y. 2011) .......................................................24

*In re Enron Corp.*,
    292 B.R. 752 (Bankr. S.D.N.Y. 2003) ...............................................21, 22

*In re Platinum-Beechwood Litig.*,
    378 F. Supp. 3d 318 (S.D.N.Y. 2019) ......................................................13

*In Touch Concepts, Inc. v. Cellco P'ship*,
    949 F. Supp. 2d 447 (S.D.N.Y. 2013) ......................................................20

*Inter-American Dev. Bank v. Nextg Telecom Ltd.*,
    503 F. Supp. 2d 687 (S.D.N.Y. 2007) ......................................................15

*JM Vidal, Inc. v. Texdis USA, Inc.*,
    764 F. Supp. 2d 599 (S.D.N.Y. 2011) ......................................................22

*Kalisch-Jarcho v. City of New York*,
    58 N.Y.2d 377 (1983) ...............................................................................24

*Landpen Co., L.P. v. Maryland Cas. Co.*,
    No. 03-cv-3624, 2005 WL 356809 (S.D.N.Y. Feb. 15, 2005) .................15

*Maple Med., LLP v. Scott*,
    191 A.D.3d 81 (2d Dep't 2020).................................................................14

*MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*,
    842 F. Supp. 2d 682 (S.D.N.Y. 2012) ......................................................23

*Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*,
    84 N.Y.2d 430 (1994)...............................................................................25

*Morgan Stanley & Co. Inc. v. Peak Ridge Master SPC Ltd.*,
 930 F. Supp. 2d 532 (S.D.N.Y. 2013) .......................................................25

*Morris v. Lee*,
 2011 WL 2947009 (S.D.N.Y. July 18, 2011).............................................19

*Outback/Empire I, Ltd. P'ship v. Kamitis, Inc.*,
 35 A.D.3d 563 (2d Dep't 2006)...................................................................20

*Pearson Cap.Partners LLC v. James River Ins. Co.*,
 151 F. Supp. 3d 392 (S.D.N.Y. 2015) .......................................................10

*Readick v. Avis Budget Grp., Inc.*,
 2013 WL 3388225 (S.D.N.Y. July 3, 2013)..........................................10, 25

*Repsol, S.A. v. The Bank of New York Mellon*,
 2014 WL 468910 (N.Y. Sup. Ct. Feb. 4, 2014) .........................................25

*Retty Fin., Inc. v. Morgan Stanley Dean Witter & Co.*,
 293 A.D. 2d 341 (1st Dep't 2002) .............................................................25

*Rexnord Holdings, Inc. v. Bidermann*,
 21 F.3d 522 (2d Cir. 1994) ........................................................................11

*Tucker v. Chase Bank USA, N.A.*,
 399 F. Supp. 3d 105, 112 (S.D.N.Y. 2019) ...............................................11

*United Fire & Casualty Co. v. Arkwright Mutual Ins. Co.*,
 53 F. Supp. 2d 632 (S.D.N.Y. 1999) .........................................................16

*Zyburo v. Cont'l Cas. Co.*,
 60 F. Supp. 3d 531 (S.D.N.Y. 2014) .........................................................14

**Rules/Statutes**

Fed. R. Civ. P. 12(b)(6) ....................................................................................10

Plaintiffs Emigrant Bank ("Emigrant") and Pacific Mercantile Bank ("PMB") respectfully submit this Memorandum of Law in opposition to Defendants SunTrust Bank and Truist Bank's (together, "SunTrust") motion to dismiss Plaintiffs' First Amended Complaint ("Mot.").

## PRELIMINARY STATEMENT

Plaintiffs' new claims in their Amended Complaint arise from SunTrust's improper payments to itself—from funds belonging to a group of lenders for which it acts as an agent—to cover SunTrust's defense in this action which, in turn, arises from SunTrust's refusal to perform its duties as the agent for those lenders unless they gave SunTrust a general release from yet other wrongful conduct. And to punish the other lenders for filing this action to protect their rights, SunTrust not only paid itself from the lenders' money, but failed to make required payments to them. Such self-dealing is not only prohibited by the relevant contracts but constitutes willful misconduct. SunTrust's efforts to justify its conduct as a matter of law on a motion to dismiss fail for a multitude of reasons.

In 2015, SunTrust, Emigrant, PMB, and non-party Preferred Bank (collectively, the "Lenders") entered into an Amended and Restated Revolving Credit and Term Loan Agreement (the "Credit Agreement"). Through the Credit Agreement, the Lenders established a $59.5 million loan facility for the borrower, Our Alchemy LLC ("Alchemy"). The loans were secured by Calrissian, L.P. ("Calrissian"), a shell company created by Virgo Investment Group, LLC and its affiliates (collectively, "Virgo"). SunTrust is the Administrative Agent under the Credit Agreement, entrusted with the duty to protect the Lenders' rights by taking certain actions on behalf of the Lenders and to distribute funds received on their behalf.

After Alchemy and Calrissian declared bankruptcy, and SunTrust failed to take action to protect the Lenders' rights, Plaintiffs—as majority stake Lenders—invoked their right under the

Credit Agreement to demand that SunTrust pursue legal remedies against Virgo.  Despite unambiguous language in the Credit Agreement that SunTrust "***shall***" exercise all remedies in any of the "Loan Documents" and "exercise any other remedies available at law or in equity," SunTrust refused unless Plaintiffs agreed to release SunTrust from all known and unknown claims for other wrongful conduct.  The initial Complaint in this action alleged claims based on SunTrust's breaches of its obligations under the Credit Agreement to take action to protect the Lenders' interests when a majority of Lenders so request.  The Credit Agreement does not require Lenders to release SunTrust from other claims as a condition to SunTrust's performance of its duties as their agent.

While this action has been pending, SunTrust has received distributions from the trustee in the Alchemy bankruptcy.  SunTrust delayed informing the other Lenders about these distributions, choosing to reimburse itself for fees incurred in defense of this action without Lenders' knowledge so that the Lenders could not submit their own expenses for reimbursement as had been the parties' course of performance for years.  SunTrust's actions constitute willful and malicious conduct designed to conceal other willful and malicious conduct.

SunTrust tries to argue that it was entitled to indemnify itself for its defense of this action at the Lenders' expense, and to refuse to reimburse Lenders for their costs, through a number of arguments that contradict the language of the Credit Agreement and their own actions.  But SunTrust cannot justify its conduct for a number of reasons.

*First*, the Credit Agreement excludes indemnification for actions solely among the parties and for expenses arising from a breach of the Credit Agreement or willful misconduct.  ECF No. 45-1, § 10.3(b).  This action is a dispute solely among the parties, and Plaintiffs have alleged that SunTrust breached the Credit Agreement and engaged in willful misconduct.  While

SunTrust argues that these exclusions do not apply because a final judgment is required, no such judgment is required to show that this is an action solely between Plaintiffs and SunTrust, and nothing allows SunTrust to take Plaintiffs' money while this action is pending.

*Second*, although SunTrust argues that it does not have to give notice before paying itself, the Credit Agreement plainly requires notice, and SunTrust itself wrote to Plaintiffs stating that it would give notice before taking their money.

*Third,* SunTrust acknowledges that Plaintiffs are entitled to have their expenses reimbursed before SunTrust distributes principal.   However, SunTrust tries to avoid its contractual obligation by claiming that Plaintiffs did not submit their reimbursable expenses. SunTrust ignores that the reason Plaintiffs did not submit their expenses was because SunTrust concealed its receipt of the money from the bankruptcy trustee and distributed principal before Plaintiffs knew about it in contradiction to the parties' years-long course of performance.

*Fourth*, SunTrust's conduct surrounding its receipt of the distributions, including its concealment of its receipt of money and payment to itself without notice or demand, constitutes a breach of the implied covenant of good faith and fair dealing.

*Finally*, because the Amended Complaint unquestionably alleges that SunTrust acted with gross negligence or willful misconduct, SunTrust cannot exonerate itself from its conduct through the purported exculpatory clause of the Credit Agreement.

### **FACTUAL BACKGROUND**[1]

### A.    **The Parties Enter Into The Credit Agreements And The Guaranty**

In 2014, private investment fund Virgo Investment Group LLC formed Calrissian, a Delaware limited partnership, for the purpose of purchasing Alchemy, an independent film and

---

[1]    This memorandum incorporates by reference the Factual Background section from Plaintiffs' Opposition to Defendants' Motion to Dismiss the Original Complaint (ECF No. 39).

video distribution company.  ECF No. 45 ("AC"), ¶¶ 25-30.  Calrissian had virtually no assets, was entirely controlled by Virgo, and Virgo paid the entire purchase price.  *Id*. ¶ 30.

On September 4, 2014, SunTrust, PMB, and Preferred Bank entered into a Revolving Credit and Term Loan Agreement (the "Original Credit Agreement") with Alchemy as the borrower.  *Id*. ¶ 32.  The Original Credit Agreement was secured by a Guaranty and Security Agreement executed by Calrissian (the "Guaranty").  *Id*. ¶¶ 33-34.  SunTrust executed the Guaranty as Administrative Agent on behalf of the original lenders.  *Id.* ¶ 33; ECF No. 45-2.

On July 9, 2015, the Original Credit Agreement was amended and superseded by the Credit Agreement.  AC ¶ 55; ECF No. 45-1.  On July 10, 2015, Emigrant became a party to the Credit Agreement through a Term Loan Joinder Agreement (the "Joinder Agreement").  AC ¶ 56; ECF No. 45-4.  SunTrust agreed to be Emigrant's agent and to exercise the powers delegated to the Administrative Agent under the Credit Agreement.  AC ¶ 117.

The Credit Agreement states the rights and duties of SunTrust and the other Lenders.  ECF 45-1.  "Required Lenders" are defined as "Lenders holding more than 50% of the aggregate outstanding Revolving Commitments and Term Loans."  AC ¶ 82; ECF No. 45-1, § 1.1.  Emigrant and PMB, together, are Required Lenders.  AC ¶ 82.  Section 8.1 of the Credit Agreement establishes the right of the Required Lenders to cause SunTrust, as Administrative Agent, to enforce the Lenders' rights in the event of a default by Alchemy.  AC ¶¶ 13, 81.  If an "Event of Default" occurs:

> then, and in every such event … and at any time thereafter during the continuance of such event, the Administrative Agent may, ***and upon the written request of the Required Lenders shall***, by notice to the Borrower, take any or all of the following actions, at the same or different times: … (iii) ***exercise all remedies contained in any other Loan Document***, and (iv) ***exercise any other remedies available at law or in equity***[.]"

ECF 45-1, § 8.1 (emphasis added).

4

### B.   Alchemy And Calrissian Default And Declare Bankruptcy

In early 2016, Alchemy triggered an Event of Default by failing to pay amounts due under the Credit Agreement.   AC ¶¶ 62-72.   On July 1, 2016, Alchemy filed a Chapter 7 bankruptcy proceeding in the Bankruptcy Court for the District of Delaware (the "Alchemy Bankruptcy").   The Alchemy Bankruptcy is still pending and being administered by a Chapter 7 trustee (the "Trustee").   *Id.* ¶ 7.

On August 5, 2016, SunTrust filed a lawsuit for breach of the Guaranty against Calrissian in state court in New York (the "Guaranty Action").   SunTrust sought damages of approximately $46 million based on Calrissian's breach of the Guaranty.   *Id.* ¶ 8.   On February 15, 2017, Calrissian filed a Chapter 11 bankruptcy proceeding in the Bankruptcy Court for the District of Delaware (the "Calrissian Bankruptcy").   The Calrissian Bankruptcy was closed in January 2020, and the Guaranty Action was revived.   *Id.* ¶ 9.

### C.   SunTrust And The Lenders Conclude There Are Potential Claims Against Virgo, But SunTrust Refuses To Sue Virgo Without A Release From Plaintiffs

After Calrissian filed for bankruptcy, SunTrust and Plaintiffs considered remedies to recover the unpaid debt under the Credit Agreement.   *Id.* ¶ 86.   Virgo not only had formed Calrissian without assets and controlled Calrissian, but it also had used its management of Calrissian to misrepresent Alchemy's finances to the Lenders.   Virgo then had directed that proceeds from the loans be funneled through Calrissian to other Virgo-owned entities, leaving both Alchemy and Calrissian insolvent.   *Id*. ¶¶ 77-79.   Therefore, both SunTrust and Plaintiffs concluded that the Lenders had colorable claims against Virgo.   *Id*. ¶¶ 85-86.

For several years thereafter, Plaintiffs sought to persuade SunTrust to pursue a claim against Virgo to recover the $46 million that Alchemy and Calrissian failed to repay (much of which Virgo had pocketed).   *Id.* ¶¶ 10, 86.   Emigrant even offered—with no obligation to do

so—to manage and pay for such litigation.  ECF No. 45-7.  However, SunTrust refused to cooperate in any action unless Plaintiffs gave it a release of all claims, known *and* unknown.  *Id*. Plaintiffs were not willing to release unknown claims against SunTrust.  AC ¶ 86.

On December 13, 2019, Plaintiffs, as Required Lenders, made a formal written request to SunTrust, pursuant to Section 8.1 of the Credit Agreement, that SunTrust, as Administrative Agent, "exercise all remedies at law and in equity, including all remedies available under any of the Loan Documents, to seek payment in full of all Obligations under the Loan Documents[.]" AC ¶ 87; ECF No. 45-7.  In particular, Plaintiffs requested that SunTrust file a lawsuit on behalf of all Lenders against Virgo under the Guaranty.  AC ¶ 10.  Plaintiffs alternatively offered to manage and pay for such a lawsuit if SunTrust would just cooperate.  *Id.*

On January 3, 2020, SunTrust rejected both the demand to file suit and the cooperation proposal.  *Id*. ¶ 90.  SunTrust stated that it would only cooperate in any litigation if Plaintiffs gave SunTrust a general release of all known and unknown claims whether or not related to such a lawsuit.  *Id*.

Plaintiffs responded on January 9, 2020, again requesting that SunTrust comply with its obligations under the Credit Agreement by filing a lawsuit on behalf of the Lenders against Virgo or by entering into a litigation cooperation agreement.  AC ¶ 91.  Once again, SunTrust refused to fulfill its obligations or even cooperate in litigation funded and managed by Plaintiffs. *Id*. ¶ 92.  Plaintiffs gave SunTrust months to reconsider its position.  *Id*.  When it became clear that SunTrust would not comply with Plaintiffs' request, Plaintiffs filed this lawsuit.

### D.   Plaintiffs File The Initial Complaint

Plaintiffs filed their original Complaint on March 8, 2020.  ECF No. 1.  The original Complaint states claims against SunTrust for breach of contract and breach of the implied covenant of good faith and fair dealing based on SunTrust's failure to take contractually required

actions as Administrative Agent on behalf of the Lenders to enforce the Lenders' rights under the

Credit Agreement and the Guaranty unless Plaintiffs agreed to give SunTrust a general release of

all claims.[2]  SunTrust moved to dismiss on October 9, 2020.  ECF No. 36.  SunTrust's motion to

dismiss the original Complaint is still pending.

### E.    SunTrust Is Not Entitled To Indemnify Itself For Its Expenses In This Action

On April 2, 2020, SunTrust informed the Lenders that it intended to seek indemnification

from the Lenders "for all attorney's fees, court costs, litigation expenses, and other amounts

incurred in connection with" this lawsuit, citing Section 10.3 of the Credit Agreement, and stated

that SunTrust would be sending the Lenders written demands to that effect.[3]  AC ¶ 93.

Section 10.3 of the Credit Agreements sets forth limited circumstances in which SunTrust

and the other Lenders may seek indemnification, stating in relevant part:

> The Borrower shall indemnify the Administrative Agent . . . [and] each Lender . . .
> against, and hold each Indemnitee harmless from, any and all losses, claims,
> damages, liabilities and related expenses . . . arising out of, in connection with, or
> as a result of (i) the execution or delivery of this Agreement, any other Loan
> Document or any agreement or instrument contemplated hereby or thereby, the
> performance by the parties hereto of their respective obligations hereunder or
> thereunder or the consummation of the transactions contemplated hereby or
> thereby, (ii) any Loan or the use or proposed use of the proceeds therefrom . . . or
> (iv) any actual or prospective claim, litigation, investigation or proceeding relating
> to any of the foregoing . . . .

---

[2]    Plaintiffs also filed suit against Virgo in New York state court, alleging claims for
fraudulent inducement into the Credit Agreement, among other things (the "State Court Action").
SunTrust points out that, in the State Court Action, Plaintiffs did not identify the Guaranty
Action as related to the State Court Action, but that is because the claims are different and are
asserted against different parties.  The Guaranty Action is a breach of contract action against
Calrissian for failing to perform under the Guaranty, while the State Court Action alleges that
Virgo fraudulently induced Plaintiffs to enter in the Credit Agreement in the first place.
SunTrust has the exclusive right to sue Calrissian for breach of the Guaranty, but not to sue
Virgo for fraudulent inducement related to the Credit Agreement.  *See* ECF No. 45-1, § 8.1.

[3]    The Amended Complaint does not assert that SunTrust's payment to itself for fees and
expenses in the Alchemy Bankruptcy or the Guaranty Action were breaches of contract, but
Plaintiffs reserve the right to make such allegations depending on future discovery.

ECF No. 45-1, §10.3(b).

Plaintiffs responded to SunTrust on April 9, 2020, explaining that the Credit Agreement did not entitle SunTrust to indemnify itself for its expenses in this lawsuit.  AC ¶ 94.  Plaintiffs pointed out, among other things, that the Credit Agreement explicitly excludes indemnification for expenses resulting from (i) SunTrust's willful misconduct or breach of the Credit Agreement; and (ii) disputes solely among Lenders and not arising out of action or inaction by Alchemy or other specified third parties.  *Id.* ¶ 100.  In relevant part, the Credit Agreement states:

> such indemnity shall not, as to any Indemnitee, be available to the extent that such losses, claims, damages, liabilities or related expenses are determined by a court of competent jurisdiction by final and non-appealable judgment to have resulted from (x) ***the gross negligence or willful misconduct of or breach of this Agreement or any other Loan Document by such Indemnitee*** or any Related Party of such Indemnitee or (y) ***any disputes solely among Indemnitees*** and not arising out of any action or inaction of the Borrower, any other Loan Party, the Sponsor or any of their respective Affiliates.

ECF No. 45-1, §10.3(b) (emphasis added).

Because this lawsuit is premised on SunTrust's willful misconduct and breach of the Credit Agreement, and is a dispute solely among the Lenders, SunTrust is not entitled to pay itself from the Lenders' money for expenses relating to this lawsuit.  *Id.*; AC ¶ 100.  SunTrust never responded to Plaintiffs' letter, nor did SunTrust ever send any written demand for payment.  AC ¶¶ 93, 94.

## F.    SunTrust Improperly Allocates Distributions From The Alchemy Bankruptcy

The Credit Agreement sets forth the process by which SunTrust must distribute funds received from the Alchemy Bankruptcy.  Specifically, all funds received shall be applied:

> (a) first, to the reimbursable expenses of the Administrative Agent incurred in connection with [a] sale or other realization upon the Collateral . . . ;
>
> (b) second, to the fees and other reimbursable expenses of the Administrative Agent then due and payable pursuant to any of the Loan Documents . . . ;

(c) third, to all reimbursable expenses, if any, of the Lenders then due and payable pursuant to any of the Loan Documents . . . ;

(d) fourth, to the fees and interest then due and payable under the terms of this Agreement . . . ;

(e) fifth, to the aggregate outstanding principal amount of the Loans . . .

ECF No. 45-1, §8.2.

The "reimbursable expenses" referred to in Section 8.2(a)-(c) are only:

out-of-pocket costs and expenses (including, without limitation, the reasonable fees, charges and disbursements of outside counsel and the allocated cost of inside counsel) incurred by the Administrative Agent or any Lender in connection with the enforcement or protection of its rights in connection with this Agreement, including its rights under this Section [10.3], or in connection with the Loans made hereunder, including all such out-of-pocket expenses incurred during any workout, restructuring or negotiations in respect of such Loans.

*Id.* at §10.3(a)(ii).

On March 11, 2021, SunTrust informed the Lenders that SunTrust had received two distributions on behalf of the Lenders from the Alchemy bankruptcy:   (i) $29,769.36 three months earlier on December 17, 2020, and (ii) $1,164,367.65 one month earlier on February 10, 2021.  AC ¶ 96.  SunTrust did not inform the other Lenders about the distributions when they were received.  *Id.*  Then, without any prior notice or demand for payment, SunTrust paid itself $955,854.47 from the money it received on behalf of Lenders, asserting that it was entitled to unilaterally take this sum as "reimbursable expenses."  *Id.*  SunTrust distributed the remaining $238,282.54 to the Lenders *pro rata*, which included another $87,000 it paid to itself as a Lender, without paying Plaintiffs for any of their reimbursable expenses.  *Id.* ¶ 97.  In contrast, before Plaintiffs initiated this lawsuit, SunTrust had notified Plaintiffs of distributions from the Trustee and reimbursed Plaintiffs for their expenses from the funds received.  *Id.*  SunTrust did not explain why it changed its performance under the Credit Agreement.  *Id.*

## PROCEDURAL HISTORY

On September 10, 2021, based on the events described above, which occurred after Plaintiffs filed the original Complaint, Plaintiffs sought leave to amend the Complaint to allege additional claims against SunTrust.  ECF No. 43.  On September 13, 2021, the Court granted Plaintiffs leave to file an Amended Complaint alleging new claims and new factual allegations related to those new claims.  ECF No. 44.  The Court also ordered that SunTrust be permitted to respond, by answer or motion, "only to any new cause or causes of action and any new factual allegations added in support of such cause of action."  *Id.*

Plaintiffs filed their Amended Complaint on September 27, 2021, alleging three additional claims against SunTrust, including breaches of the Credit Agreement and the Joinder Agreement (Claims IV & VI) and breaches of the implied covenant of good faith and fair dealing (Claims V & VI).  ECF No. 45.

## LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), "[t]he court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor."  *Pearson Cap. Partners LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392, 399 (S.D.N.Y. 2015).  "A court should not grant a motion to dismiss unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief."  *CompuDyne Corp. v. Shane*, 453 F. Supp. 2d 807, 817 (S.D.N.Y. 2006) (internal quotation marks omitted).

Where breach of contract is at issue, "[a] motion to dismiss can be granted only where the language of a contract is clear and unambiguous."  *Readick v. Avis Budget Grp., Inc.*, 2013 WL 3388225, at *4 (S.D.N.Y. July 3, 2013).  This is because "the Court's role on a 12(b)(6) motion to dismiss is not to resolve contract ambiguities."  *Bank of New York Tr., N.A. v. Franklin*

10

*Advisors, Inc.*, 522 F. Supp. 2d 632, 637 (S.D.N.Y. 2007).  On a motion to dismiss, the Court "is required [to] resolve all contractual ambiguities in favor of Plaintiff[s]."  *Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 196 (E.D.N.Y. 2007).  At the motion to dismiss stage, a plaintiff need only show that its interpretation of the contract is reasonable to defeat the motion.  *See Tucker v. Chase Bank USA, N.A.*, 399 F. Supp. 3d 105, 112 (S.D.N.Y. 2019).

## ARGUMENT

## I.      SunTrust's Motion To Dismiss Counts IV And VI Should Be Denied

"Under New York law, an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994) (citing *Bank Itec N.V. v. J. Henry Schroder Bank & Trust Co.*, 612 F. Supp. 134, 137–38 (S.D.N.Y. 1985)).  Here, there is no dispute that a contract exists and that Plaintiffs performed.  SunTrust argues that it did not breach the Credit Agreement by paying itself for expenses related to this action from distributions from the Alchemy Trustee, or by failing to reimburse Plaintiffs for their expenses, but the terms of the Credit Agreement provide otherwise.

### A.      SunTrust Is Not Entitled To Indemnification Under Section 10.3 Of The Credit Agreement

The terms of the Credit Agreement did not permit SunTrust to indemnify itself for expenses incurred in this action using funds received from the Alchemy Bankruptcy Trustee for the benefit of all Lenders.  Not only do expenses incurred in lawsuits like this not fall within the specific circumstances in which indemnification is permitted, but such expenses are explicitly excluded from indemnification under Section 10.3.  In any event, SunTrust was first required to give notice, but failed to do so.

11

1.      Expenses Incurred By SunTrust Are Not Subject To Indemnification
          Pursuant To Section 10.3

SunTrust relies on Section 10.3(b) of the Credit Agreement, which provides that the "Borrower shall indemnify the Administrative Agent" for expenses arising out of, among other things, the parties' performance "of their respective obligations hereunder" (Section 10.3(b)(i)) or litigation relating to the same (Section 10.3(b)(iv)).  However, this litigation does not arise out of or relate to SunTrust's performance of its obligations under the Credit Agreement, but rather its complete ***refusal*** to perform those obligations.  Plaintiffs made a demand on SunTrust to take action against Virgo, and SunTrust failed to do anything at all.  SunTrust's interpretation of Section 10.3(b) would turn the provision on its head, permitting a party that refused to perform its contractual duties to seek indemnification when the other parties seek to enforce the contract. SunTrust's expenses for this lawsuit are therefore not subject to reimbursement.[4]

2.      SunTrust's Expenses In This Action Are Specifically Excluded From
          Indemnification Under The Credit Agreement

Even if SunTrust's expenses resulting from its refusal to perform its obligations under the Credit Agreement were subject to indemnification in general—and they are not—its expenses defending this action are explicitly excluded from indemnification under Section 10.3(b). Section 10.3(b) provides that there shall be no indemnity to the extent that the expenses resulted from "gross negligence or willful misconduct [] or breach of this Agreement" or from any dispute "solely among Indemnitees and not arising out of any action or inaction of the Borrower,

---

[4]  Another clause of Section 10.3(b) of the Credit Agreement turns on the "action or ***inaction***" of a certain entity.  ECF No. 45-1, § 10.3(b) (emphasis added.)  However, that language is not used in Section 10.3(b) to describe the expenses for which SunTrust is entitled to indemnification.

any other Loan Party, the Sponsor or any of their respective Affiliates."[5]   ECF No. 45-1,
§10.3(b).

*First*, this action is the result of SunTrust's breach of contract as well as its gross
negligence or willful misconduct.  SunTrust breached its obligations under the Credit Agreement
by refusing to exercise remedies to protect Lenders' interests and the repayment of their loans
unless Plaintiffs would give SunTrust a general release of all claims, including unknown and
unrelated claims.  The Credit Agreement explicitly forecloses SunTrust's claim that it may
breach the Credit Agreement and then use the Lenders' money to fund its defense.

*Second*, this action is solely between SunTrust and other Lenders.  The Credit Agreement
explicitly excludes from indemnification the expenses incurred as a result of a lawsuit brought by
a Lender against SunTrust as Administrative Agent.  This is consistent with New York law
which "imposes a strong presumption against reading indemnification provisions to cover
expenses incurred in litigation between the parties."  *In re Platinum-Beechwood Litig.*, 378 F.
Supp. 3d 318, 323 (S.D.N.Y. 2019) ("the test is whether the intent to indemnify is unmistakably
clear from the language of the promise, not whether the agreement could be read to provide for
indemnification").

SunTrust argues that these exclusions do not apply because no court has entered a "final
and non-appealable judgement" that it has breached the agreement or engaged in willful
misconduct, or that the action is solely between SunTrust and two Lenders.  Mot. 14-15.
However, the law is clear that SunTrust is not entitled to indemnify itself while this action is
pending. *See Empire Merchants, LLC v. Merinoff*, 2018 WL 317848, *3 (S.D.N.Y. Jan. 5, 2018)
("it is black letter law that indemnification claims do not typically ripen until ***after*** the merits of

---

[5]   "Loan Parties" are defined as the Borrower and the Guarantor—SunTrust is not a Loan
Party, a sponsor, or an affiliate of a Loan Party or Sponsor.  ECF No. 45-1, § 1.1.

an action have been decided, and all appeals have been resolved") (emphasis in original).[6]  This

is particularly true because the outcome of this action will determine whether the indemnification

exclusions apply.  *Id.* (denying indemnification claim where outcome of action would determine

whether carve-out for fraud, bad faith, or willful misconduct applied).[7]  Furthermore, there is no

need for a final, non-appealable judgment to determine that the action is solely between SunTrust

and other Lenders.

SunTrust also argues that its intentional breaches of the Credit Agreement do not

constitute gross negligence or willful misconduct.  Mot. 14-15.  But SunTrust ignores that the

Complaint and the Amended Complaint are replete with allegations of SunTrust's malicious and

intentional (or grossly negligent) misconduct, not only as it relates to the breach of the relevant

contracts but also specifically by SunTrust refusing to take the required action absent a waiver of

all possible causes of action against it and its refusal to reimburse Plaintiffs for their expenses.[8]

*E.g.*, AC ¶ 139.  New York law is clear that when the conduct alleged "smacks of intentional

wrongdoing and evinces a reckless indifference to the rights of others[,]" a breach of contract can

---

[6]   SunTrust's authorities are inapposite, as none speak to the question of whether
reimbursement for expenses incurred defending an action that may be excluded from an
indemnification provision is appropriate prior to a final judgment.  *See Zyburo v. Cont'l Cas.
Co.*, 60 F. Supp. 3d 531, 533 (S.D.N.Y. 2014) (Plaintiff lacked standing to bring declaratory
judgment action based on wrongful denial of coverage where plaintiff had not yet secured a
judgment against the insured to form the basis of the action.); *Maple Med., LLP v. Scott*, 191
A.D.3d 81, 105 (2d Dep't 2020) (escrow agent wrongfully disbursed funds to a judgment
creditor when the judgment was not final).

[7]   While Defendants in *Merinoff* were permitted to advancement of certain expenses
subject to repayment if they were determined to not be entitled to indemnification, that
advancement was explicitly provided for in the relevant contract.  *Merinoff*, 2018 WL 317848,
*3.  Here, the Credit Agreement contains no such advancement provision.

[8]   This distinguishes this action from Plaintiffs' authority, which stands only for the
proposition that a mere breach of contract, "without more," does not constitute willful
misconduct.  *See Brooklyn 13th Street Holding Corp. v. Nextel of New York, Inc.*, 2011 WL
6945862, at *5 (E.D.N.Y. Dec. 30, 2011).  Here, not only have Plaintiffs alleged much more, but
the Credit Agreement excludes indemnity for a mere breach of contract.

constitute gross negligence or willful misconduct.  *Abacus Fed. Sav. Bank v ADT Sec. Services*, 18 N.Y.3d 675, 684 (2012) (finding breach of contract was grossly negligent); *Banc of Am. Sec. LLC v Solow Bldg. Co. II, L.L.C.*, 47 A.D.3d 239, 243 (1st Dep't 2007) ("[plaintiff] has adequately asserted that [defendant]'s withholding of performance was willful, malicious or in bad faith").  Regardless, Plaintiffs allege that SunTrust breached the Credit Agreement, and that alone is sufficient to trigger the exclusion in Section 10.3(b).

SunTrust further argues that this exception does not apply because this action arises out the action of the Borrower, rather than that of SunTrust.  Mot. 15.  SunTrust is wrong.  This action arises out of ***SunTrust's*** failure to take contractually required actions to protect the interests of the Lenders unless it received a general release of unknown claims.  While SunTrust's misconduct as Administrative Agent may have an attenuated relationship to the fact that the Borrower defaulted on its loan years earlier, that default is not at issue in this lawsuit. Only SunTrust's conduct is at issue, and this lawsuit arises from SunTrust's action and inaction. *See Inter-American Dev. Bank v. Nextg Telecom Ltd.*, 503 F. Supp. 2d 687, 698 (S.D.N.Y. 2007) (lawsuit did not "arise out of" a contract where "[n]either the terms of the [contract] nor the obligations of the parties thereto were at issue").[9]  SunTrust is thus not entitled to use monies belonging to the Lenders to fund its defense here.[10]

---

[9]   SunTrust's authority—all in the context of insurance coverage—is distinguishable. *See Country-Wide Ins. Co. v. Excelsior Ins. Co.*, 147 A.D.3d 407, 409 (1st Dep't 2017) (discussing the phrase "arising out of" specifically "[i]n the context of a[n insurance] policy exclusion"); *Landpen Co., L.P. v. Maryland Cas. Co.*, No. 03-cv-3624, 2005 WL 356809, at *6 (S.D.N.Y. Feb. 15, 2005) (discussing how courts have interpreted "arising out of" "[i]n the insurance context").

[10]  If the Court determines that SunTrust's indemnification for expenses incurred in this action is not barred by the exclusions of Section 10.3(b), Plaintiffs are entitled to indemnification for their expenses in prosecuting this action.

Similarly, SunTrust argues that "Plaintiffs' claims relate to fees that SunTrust obtained from the Alchemy Trustee" (Mot. 15), but the claims in the original Complaint, which SunTrust reimbursed itself for defending, were based not on fees obtained from the Trustee but on SunTrust's failure to pursue claims against Virgo.  And the claims in the Amended Complaint arise from SunTrust's improper distribution of funds, not any action by the Trustee.

### 3.  SunTrust Failed To Give Notice Or Make A Written Demand

Even if it could reimburse itself for expenses incurred in this action, no amount was payable until SunTrust made a written demand for indemnification.  The Credit Agreement provides:  "All amounts due under this Section shall be payable promptly ***after written demand therefore***."  ECF No. 45-1, § 10.3(f) (emphasis added).[11]  SunTrust failed to make any such written demand.  AC ¶¶ 93, 95.

SunTrust argues that Section 10.3(f) does not require a written demand to *the Lenders*.  Mot. 10.  But SunTrust did not make a written demand to *anyone*.  AC ¶¶ 93, 95.  Furthermore, the parties' course of performance had always been that SunTrust gave notice to the Lenders before reimbursing itself for its expenses incurred in the bankruptcy proceedings and the Guaranty Action.  AC ¶ 97.  A party's course of performance during the life of a contract can prove the meaning of its terms.  *See Hoyt v. Andreucci*, 433 F.3d 320, 331-32 (2d Cir. 2006) ("the parties' course of conduct throughout the life of the contract" is relevant to contract interpretation).  Indeed, even seemingly unambiguous terms may be interpreted by evidence of a party's course of performance.  *United Fire & Casualty Co. v. Arkwright Mutual Ins. Co.*, 53 F. Supp. 2d 632, 640-41 (S.D.N.Y. 1999).  Here, SunTrust's course of performance was established

---

[11]   This is a material provision of the Credit Agreement.  Written notice and demand permits the other Lenders to (i) contest SunTrust's reimbursement of its own expenses, and (ii) submit their own written demands for reimbursement of their expenses.

over several years.  AC ¶ 97.  *See Conzo v. City of New York*, 438 F. Supp. 2d 432, 436 (S.D.N.Y. 2006) ("where an agreement involves repeated occasions for performance . . . any course of performance . . . is given great weight") (internal citations omitted).

Finally, SunTrust itself confirmed that a written demand had to be made on the Lenders. On April 2, 2020, it wrote to the Lenders that it "will be ***sending the Lenders written demands for payment*** as it incurs expenses and receives invoices arising out of [this action].  SunTrust will enforce its right to prompt payment ***following such written demands*.**"  AC ¶ 93 (emphasis added).  Indeed, the Lenders were the only logical recipient of such required written demands because the borrower was insolvent.

**B.     SunTrust Did Not Properly Distribute The Funds Pursuant To Section 8.2 Of The Credit Agreement**

SunTrust further breached the Credit Agreement by refusing to distribute the funds from the Trustee pursuant to Section 8.2.  As SunTrust acknowledges, it was obligated to distribute the funds it received first to its reimbursable expenses in connection with realizations on the Collateral; second, to its reimbursable expenses pursuant to the Loan Documents; third, to all reimbursable expenses of the Lenders pursuant to the Loan Documents; fourth, to the fees and interest payable under the Credit Agreement; and fifth, to the outstanding principal of the Loans. Mot. 16; ECF No. 45-1, § 8.2.  SunTrust breached the Credit Agreement by improperly paying itself for expenses incurred in defending this action, and failing to reimburse Plaintiffs for their expenses.[12]

---

[12]     Plaintiffs, like SunTrust, are entitled to indemnification for their expenses in connection with the Alchemy and Calrissian bankruptcies, the Guaranty Action, and other matters.  And, if SunTrust were entitled to indemnification for its expenses in this action, Plaintiffs also would be so entitled.

1. <u>SunTrust's Expenses Incurred Defending This Action Are Not "Reimbursable Expenses"</u>

For the reasons discussed above, SunTrust was not entitled to indemnification for expenses incurred in this action.  Such expenses also are not reimbursable under Section 8.2 of the Credit Agreement because SunTrust's defense of this action is not an "enforcement or protection of" its rights under the Credit Agreement.  Rather, Plaintiffs allege that SunTrust has **breached** its obligations to protect Plaintiffs' rights under the Credit Agreement.  Thus, SunTrust was not authorized to reimburse itself for expenses incurred in this action.

Further, the express exclusions of Section 10.3(b) preclude expenses incurred by SunTrust in defending this action from being "reimbursable expenses" pursuant to Section 10.3(a).  Otherwise, the exclusions in Section 10.3(b) would be meaningless, as any expense falling within a Section 10.3(b) exclusion would still be covered as a "reimbursable expense" in Section 10.3(a).  *See Greylock Glob. Opportunity Master Fund Ltd. v. Province of Mendoza*, 2004 WL 2290900, at *3 (S.D.N.Y. Oct. 12, 2004) ("It is well settled that, under New York law, courts will refuse, wherever possible, to interpret a contractual term in such a way as to nullify other provisions.").

2. <u>SunTrust Failed To Reimburse Plaintiffs For Their "Reimbursable Expenses"</u>

SunTrust concedes that Section 8.2 of the Credit Agreement requires that funds received from the Trustee must be distributed to the Lenders for their reimbursable expenses before paying Lenders *pro rata* for interest or principal.  Mot. 8.  SunTrust also concedes that it applied those funds, without giving notice to the other Lenders, first to SunTrust for its purportedly reimbursable expenses and then to all four Lenders *pro rata*, including $87,000 paid to itself,

without reimbursing Plaintiffs for their expenses.  Mot. 9.  Therefore, by its own admission, SunTrust has breached the Credit Agreement.[13]

SunTrust claims that Plaintiffs do not allege that any reimbursable expenses were payable to them.  That is untrue.  *See* AC ¶¶ 97, 101 (SunTrust refused to reimburse Plaintiffs for their expenses "as required by Section 8.2 of the Credit Agreement"), ¶¶ 125, 126 (SunTrust failed to pay Plaintiffs for their expenses).

SunTrust further argues that Plaintiffs' reimbursable expenses were not "due and payable" because Plaintiffs had not submitted a written demand, citing Section 10.3(f) of the Credit Agreement.  Mot. 17.  Again, SunTrust contradicts itself; it paid itself its purported reimbursable expenses without submitting a written demand under Section 10.3(f).  *See supra* at Section I(A)(3).  Section 10.3(f) applies to *all* parties' expenses, not just Plaintiffs'.  If Plaintiffs were required to submit a written demand, so was SunTrust.  Accordingly, SunTrust breached the Credit Agreement either by reimbursing itself or by failing to reimburse Plaintiffs (or both).

Finally, the reason that Plaintiffs did not make a written demand is that SunTrust failed to inform Plaintiffs that it had received the two distributions from the Trustee for three months and one month respectively, making it impossible for Plaintiffs to submit a demand for reimbursement.  *E.g.*, AC ¶ 132.  In fact, the parties had a course of performance that SunTrust gave notice to the Lenders of its receipt of funds from the Trustee so that Plaintiffs could submit a demand for payment.  Again, the parties' course of performance shows the meaning of the contract.  *Conzo*, 438 F. Supp. 2d at 436.  SunTrust cannot avoid its obligation to reimburse Plaintiffs by means of its breach of its obligation to give notice to Plaintiffs.  *See Morris v. Lee*,

---

[13]   *Deutsche Bank AG v. JPMorgan Chase Bank*, cited by Plaintiffs, is inapposite.  2007 WL 2823129, at \*22 (S.D.N.Y. Sept. 27, 2007).  In *Deutsche Bank*, the relevant contract required the administrative agent to distribute funds "ratably" with no other relevant priority, and the court found a *pro rata* distribution to be a "ratable" distribution.  *Id.*

2011 WL 2947009, at *1 (S.D.N.Y. July 18, 2011) ("under New York law, when a breaching party's actions contribute materially to the nonoccurrence of the other party's duties, the non-occurrence is excused").

**C.    SunTrust's Breach Of The Credit Agreement Constitutes A Breach Of The Term Loan Joinder Agreement**

Because SunTrust has breached the Credit Agreement, it also has breached the Term Loan Joinder Agreement, which required SunTrust to comply with the obligations assigned to it in the Credit Agreement.  AC ¶¶ 135-41.

**II.    The Court Should Deny SunTrust's Motion To Dismiss The Claim For Breach Of The Implied Covenant In The Credit Agreement (Count V)**

SunTrust argues that Plaintiffs waived any claim for breach of the implied covenant of good faith and fair dealing.  Mot. 18-20.  Section 9.2 of the Credit Agreement states in part that "[t]he Administrative Agent shall not have any duties or obligations except those expressly set forth in this Agreement and the other Loan Documents" and "the Administrative Agent shall not be subject to any fiduciary or other implied duties[.]"  ECF No. 45-1, § 9.2.  However. Section 9.2 does not mention, much less *expressly and unambiguously waive*, the implied covenant of good faith and fair dealing.

"For all contracts, New York law imposes an implied covenant of good faith and fair dealing such that a party may be in breach of the duty even when it has abided by the express terms of the contract."  *In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 466 (S.D.N.Y. 2013) (declining to find that the implied covenant was waived under New York law; *Outback/Empire I, Ltd. P'ship v. Kamitis, Inc.*, 35 A.D.3d 563, 563 (2d Dep't 2006) ("It is well settled that in ***every contract*** there exists an implied covenant of good faith and fair dealing.") (internal quotation marks omitted) (emphasis added).  The implied covenant constitutes a pledge that "neither party shall do anything which will have the effect of destroying or injuring the right

of the other party to receive the fruits of the contract." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995) (citation omitted).

The implied covenant can be waived only if the waiver is ***expressly stated and unambiguous***. *See*, *e.g.*, *Commerzbank AG v. U.S. Bank Nat'l Ass'n*, 277 F. Supp. 3d 483, 498 (S.D.N.Y. 2017) (requiring that the implied covenant be "expressly disclaimed"). "A party's intention to relinquish its known contractual rights must be clear, unmistakable, and without ambiguity." *Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*, 2013 WL 1191895, at *6 (S.D.N.Y. Mar. 22, 2013) (internal quotation marks omitted).

Here, there is no reference to the implied covenant in the Credit Agreement, let alone an express, unambiguous waiver. Instead, SunTrust implies a waiver from a reference to the scope of SunTrust's duties. Plaintiffs' claim should not be dismissed based on SunTrust's interpretation of ambiguous contract language. *See Franklin*, 522 F. Supp. 2d at 637 ("The Court's role on a 12(b)(6) motion to dismiss is not to resolve contract ambiguities."); *Banks*, 475 F. Supp. 2d at 196 (on a motion to dismiss, the Court "is required resolve all contractual ambiguities in favor of Plaintiff[s].").

SunTrust cites the language in Section 9.2 stating that it has no duties "except those expressly set forth in this Agreement and the other Loan Documents," and relies upon *dicta* from a single, rarely cited bankruptcy case—*In re Enron Corp.*, 292 B.R. 752, 782–83 (Bankr. S.D.N.Y. 2003)—to support its argument that this language is sufficient to waive the implied covenant because it is "inconsistent with other terms of the contractual relationship." Mot. 19. However, as the Second Circuit has held, the implied covenant simply "cannot be used to create independent obligations beyond those agreed upon and stated in the express language of the

contract[s]."  *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 306 (S.D.N.Y. 1998).

Plaintiffs' implied covenant claims are entirely consistent with SunTrust's obligations under the express language of the Credit Agreement:  Plaintiffs allege that SunTrust had an implied duty to distribute funds received from the Trustee under Section 8.2 of the Credit Agreement "in good faith," and "in such a manner as to not interfere with" Plaintiffs' right to receive the benefits of the agreement.  AC ¶ 131.  Plaintiffs allege that SunTrust breached that duty by failing to inform them of the receipt of funds from the Trustee in a timely manner and to provide them with notice prior to making reimbursements, failing to give them an opportunity to demand reimbursement of their expenses, and failing to distribute the funds fairly and in good faith.  *Id.* ¶ 132.  SunTrust does not even argue that these claims are inconsistent with its obligations under the express terms of the Credit Agreement.

SunTrust also cites language from Section 9.2 stating that the Administrative Agent shall not be subject to any "fiduciary or other implied duties."  ECF No. 45-1, § 9.2.  SunTrust does not cite *any* case in which a court dismissed an implied covenant claim based on contract language concerning "other implied duties," and this Court should not be the first.  Moreover, the Credit Agreement explicitly disclaims certain implied duties in Section 9.2 (*i.e.*, fiduciary duties, the duty to disclose, the duty to exercise discretionary powers), but makes no mention of the implied covenant.  The phrase "other implied duties" is ambiguous, and therefore it would be inappropriate to resolve the meaning of the phrase on a motion to dismiss.[14]

---

[14]   Many of SunTrust's authorities dismiss the implied covenant claim on other grounds, *see In re Enron Corp.*, 292 B.R. 752, 782–83 (Bankr. S.D.N.Y. 2003), *Beninati v. F.D.I.C.*, 55 F. Supp. 2d 141, 146 (E.D.N.Y. 1999), *Commerzbank AG v. U.S. Bank Nat'l Ass'n*, 277 F. Supp. 3d 483, 498 (S.D.N.Y. 2017), and one even ***denied*** defendants' summary judgment motion, allowing the implied covenant claim to go forward, *see JM Vidal, Inc. v. Texdis USA, Inc.*, 764

Finally, Plaintiffs make no argument concerning Plaintiffs' claim for breach of the implied covenant in Count VI. In Count VI, Plaintiffs allege that SunTrust breached the implied covenant in the Joinder Agreement by, *inter alia*, failing to inform the Lenders about the distributions from the Alchemy Bankruptcy and failing to distribute the money in good faith. AC ¶ 139. While SunTrust seeks to dismiss Plaintiffs' implied covenant claim as to the Credit Agreement (Count V), SunTrust does not present any argument as to why the implied covenant portion of Count VI should be dismissed. Therefore, any such argument is waived.

## III.   The Credit Agreement Does Not Bar The Damages Sought Here

SunTrust argues that Section 9.2 of the Credit Agreement contains an exculpatory clause that exempts SunTrust from any liability even for an intentional, material breach, so long as it did not engage in "gross negligence or willful misconduct." Mot. 20-22. This argument fails for two primary reasons. *First*, Plaintiffs have alleged that SunTrust engaged in "gross negligence" or "willful misconduct" by improperly reimbursing itself while failing to give notice or reimburse other Lenders, and the Court must accept those allegations as true for purposes of this motion. *Second*, at the very least, the exculpatory clause is ambiguous, and thus presents a question of fact that should not be determined on a motion to dismiss.

Exculpatory provisions are "disfavored by the law and closely scrutinized by the courts." *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 842 F. Supp. 2d 682, 707 (S.D.N.Y. 2012) (internal quotation marks and citation omitted). Thus, such clauses "should be strictly construed against the person seeking exemption from liability." *Id*.

---

F. Supp. 2d 599, 620 (S.D.N.Y. 2011). *HSH Nordbank AG New York Branch v. Street*, 421 F. App'x 70, 73 (2d Cir. 2011) is similarly distinguishable. In that case, the court found that a guarantor whose obligations were "unconditional and irrevocable" and waived "all legal or equitable defenses" could not raise a breach of the implied covenant claim as a defense.

23

SunTrust argues that Plaintiffs have failed to allege that SunTrust's actions constituted gross negligence and willful misconduct. Mot. 21-22. That is plainly incorrect. To allege willful misconduct, a complaint must simply allege "tortious intent, such as fraud, malice, a dishonest purpose or bad faith." *In re CCT Commc'ns, Inc.*, 464 B.R. 97, 106 (Bankr. S.D.N.Y. 2011) (citing *Kalisch-Jarcho v City of New York*, 58 N.Y.2d 377, 385 (1983)). Pleading gross negligence requires even less, as Plaintiffs must merely allege "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *CCT*, 464 B.R. at 106 (citation omitted).

The Amended Complaint alleges SunTrust, as Plaintiffs' agent, improperly reimbursed itself for expenses related to this lawsuit, knowing it was not entitled to do so for the reasons explained above (*see supra* at Section I(A)); refused in bad faith to reimburse Plaintiffs for any of their expenses; and concealed the distributions from the Trustee so that Plaintiffs could not make a demand for payment. AC ¶¶ 126-27, 139. The Amended Complaint further alleges that SunTrust's misappropriation of funds it held as an agent on behalf of Plaintiffs, in the context of its refusal to pursue any remedy against Virgo without a general release of unknown claims, was part of an extensive pattern of wanton conduct, and was malicious and in conscious disregard of Plaintiffs' rights. *Id.* Finally, it is alleged that SunTrust's actions constitute grossly negligent and willful misconduct, as well as breaches of the Credit Agreement. *Id.* SunTrust's bad faith breach of its contractual duties in order to improperly compensate itself without reimbursing other Lenders showed a "reckless indifference to the rights of [Plaintiffs]" which cannot be immunized through an exculpatory provision. *See Kalisch-Jarcho*, 58 N.Y.2d at 385.[15]

---

[15]   The primary case relied upon by SunTrust allowed recovery of actual damages even in the absence of gross negligence or willful misconduct, and despite an exculpatory clause limiting liability to damages "directly caused by its gross negligence or willful misconduct."

The terms "gross negligence" and "willful misconduct" are at least ambiguous in the context of a breach of contract, and therefore must be ascertained from the intent of the parties and not from general tort law principles, making this determination highly fact-intensive. *See, e.g.*, *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 435–38 (1994) (disagreeing that "tort law principles apply in all cases in which the word willful is at issue"). Because "[a] motion to dismiss can be granted only where the language of a contract is clear and unambiguous," *Readick*, 2013 WL 3388225, at *4, it would be inappropriate to dismiss the Amended Complaint at this stage based on SunTrust's interpretation of Section 9.2 of the Credit Agreement.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the motion to dismiss in its entirety. However, should the Court grant SunTrust's motion in full or in part, Plaintiffs request leave to amend.[16]

---

*Morgan Stanley & Co. Inc. v. Peak Ridge Master SPC Ltd.*, 930 F. Supp. 2d 532, 544-45 (S.D.N.Y. 2013). The other cases cited by SunTrust involve alleged breaches of "ministerial duties" with no allegation of bad faith, much less the type of conduct engaged in by SunTrust. *See Repsol, S.A. v. The Bank of New York Mellon*, 2014 WL 468910 (N.Y. Sup Ct. Feb. 4, 2014) (plaintiff "failed to plead bad faith"); *Retty Fin., Inc. v. Morgan Stanley Dean Witter & Co.*, 293 A.D. 2d 341, 341 (1st Dep't 2002) (the complaint failed to make allegations "'smack[ing]' of intentional wrongdoing") (citation omitted).

[16] "[A] plaintiff generally is to be afforded an opportunity to test his claim on the merits if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief." *Fagan v. First Security Inv.*, 2006 WL 2671044 at *5 (S.D.N.Y. Sept. 15, 2006) (granting leave to amend a complaint asserting breach of contract claims).

Dated: New York, New York
        December 31, 2021

                                     QUINN EMANUEL URQUHART &
                                         SULLIVAN, LLP

By:     */s/ Corey Worcester*
           Corey Worcester
           Leigha Empson
           51 Madison Avenue, 22nd Floor
           New York, NY 10010
           Telephone: (212) 849-7000
           Facsimile: (212) 849-7100

           Gary E. Gans (*pro hac vice*)
           Sage R. Vanden Heuvel (*pro hac vice*)
           865 S. Figueroa Street, 10th Floor
           Los Angeles, CA 90017
           Telephone: (213) 443-3000
           Facsimile: (213) 443-3100

           *Attorneys for Plaintiffs Emigrant Bank and*
           *Pacific Mercantile Bank*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EMIGRANT BANK; AND PACIFIC MERCANTILE BANK,<br><br>             Plaintiffs,<br><br>     -against-<br><br>SUNTRUST BANK; TRUIST BANK; AND DOES 1 THROUGH 10, INCLUSIVE,<br><br>             Defendants. | Civil Action No. 1:20-cv-02391-PGG |

**CERTIFICATE OF SERVICE**

I hereby certify that on December 31, 2021, I caused to be served upon the following counsel to Defendants, by electronic mail, with consent of Defendants, a true and correct copy of the foregoing Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint:

Peter Isajiw
Kenneth B. Fowler
KING & SPALDING
1185 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 556-2235
Facsimile:  (212) 556-2222
Email:  pisajiw@kslaw.com
             kfowler@kslaw.com

David Tetrick, Jr.
KING & SPALDING
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309
Telephone:  (404) 572-3526
Email:  dtetrick@kslaw.com

Dated: December 31, 2021

QUINN EMANUEL URQUHART &
    SULLIVAN, LLP

By:    */s/ Leigha Empson*
         Leigha Empson

         *Attorneys for Plaintiffs Emigrant Bank and
         Pacific Mercantile Bank*