UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMIGRANT BANK AND PACIFIC MERCANTILE BANK,<br><br>       Plaintiffs,<br><br>       v.<br><br>SUNTRUST BANK; TRUIST BANK; AND DOES 1 THROUGH 10 INCLUSIVE,<br><br>       Defendants. | Civil Action No. 1:20-cv-02391-PGG |

**DEFENDANTS SUNTRUST BANK AND TRUIST BANK'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

David Tetrick, Jr. (admitted *pro hac vice*)
Paige Burroughs (*pro hac vice* application forthcoming)
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, GA 30309-3521
Phone: 404-572-4600
Fax: 404-572-5100
dtetrick@kslaw.com
pburroughs@kslaw.com

Peter Isajiw
Kenneth B. Fowler (admitted *pro hac vice*)
1185 Avenue of the Americas
New York, NY 10036
Phone: 212-556-2235
Fax: 212-556-2222
pisajiw@kslaw.com
kfowler@kslaw.com

*Attorneys for Defendants*
*SunTrust Bank and Truist Bank*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.   Plaintiffs Fail to State a Claim for Breach of Contract. .......................................................2

        A.  SunTrust's Fees Incurred in this Action are Reimbursable Expenses. ....................2

        B.  SunTrust Properly Distributed the Funds from the Alchemy Trustee. ....................5

        C.  Plaintiffs Fail to State a Claim for Breach of the Term Loan Joinder Agreement. ................................................................................................................8

    II.  Plaintiffs Fail to State a Claim for Breach of the Implied Covenant Because Plaintiffs Expressly Waived Any Such Claim. ...................................................................8

    III. The Credit Agreement's Exculpatory Clause Bars Plaintiffs' Claims. ...............................9

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brooklyn 13th Street Holding Corp. v. Nextel of New York, Inc.*,
    No. 11-cv-1048, 2011 WL 6945862 (E.D.N.Y. Dec. 30, 2011)..............................................10

*Country-Wide Ins. Co. v. Excelsior Ins. Co.*,
    147 A.D.3d 407 (N.Y. App. Div., 1st Dep't 2017)....................................................................4

*In re Enron Corp.*,
    292 B.R. 752 (Bankr. S.D.N.Y. 2003)......................................................................................9

*In Touch Concepts, Inc. v. Cellco P'ship*,
    949 F. Supp. 2d 447 (S.D.N.Y. 2013) ......................................................................................9

*Inter-American Development Bank v. Nextg Telecom Ltd.*,
    503 F. Supp. 2d 687 (S.D.N.Y. 2007)......................................................................................4

*KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*,
    600 B.R. 214 (S.D.N.Y. 2019).................................................................................................6

*Maple Med., LLP v. Scott*,
    191 A.D.3d 81 (N.Y. App. Div., 2d Dep't 2020) ....................................................................3

*Morgan Stanley & Co. Inc. v. Peak Ridge Master SPC Ltd.*,
    930 F. Supp. 2d 532 (S.D.N.Y. 2013)....................................................................................10

*Zyburo v. Cont'l Cas. Co.*,
    60 F. Supp. 3d 531 (S.D.N.Y. 2014).......................................................................................3

Defendants Truist Bank and SunTrust Bank (collectively, "SunTrust") respectfully submit this reply brief in support of their Motion to Dismiss the First Amended Complaint (ECF 45).

## PRELIMINARY STATEMENT

Plaintiffs' opposition brief ("Opposition" or "Opp.") confirms that the Court should dismiss the First Amended Complaint (ECF 45, the "Amended Complaint" or "FAC") and clarifies several issues.

*First*, in the Amended Complaint, Plaintiffs alleged that "SunTrust is prohibited by Section 10.3 [of the Credit Agreement] from reimbursing itself in the amount of $955,854.47." (FAC ¶ 101.) But as explained in SunTrust's opening brief ("SunTrust Mem."), that sum was comprised mostly of SunTrust's fees and expenses incurred in the Alchemy Bankruptcy[1] proceedings (including the Adversary Actions) and the Guaranty Action, not the present action. (SunTrust Mem. at 7.) SunTrust's expenses for those litigations are unquestionably covered by the indemnification provision and subject to first-priority distribution under the Credit Agreement. (*Id.* at 7, 11–12.) Plaintiffs now concede this point and assert that their claim relates to only a limited portion of the $955,854.47—the fraction relating to SunTrust's fees incurred in this action. (Opp. at 7 n.3.)

*Second*, Plaintiffs are confused about who is suing whom. Plaintiffs argue that "it is black letter law that indemnification claims do not typically ripen until after the merits of an action have been decided, and all appeals have been resolved." (Opp. at 13–14.) This axiom might be helpful to them if they were defending *against* an indemnification claim that was either silent about when it ripened or required the entry of a final judgment. But it does Plaintiffs no good here, where they are claiming that SunTrust's exercise of its contractual indemnification rights to retain

---

[1] Unless otherwise defined, capitalized terms retain their meaning from SunTrust's opening brief.

reimbursable expenses—which Plaintiffs concede do not require the entry of a final judgment, at least with respect to the Alchemy Bankruptcy and the Guaranty Action—breached the Credit Agreement. Instead, the axiom neatly explains why their arguments invoking the indemnification exceptions in Section 10.3 (both requiring the entry of a final judgment), based on their *filing* of this case, fail as a matter of law.

*Third*, as SunTrust explained in its opening brief, SunTrust was entitled to indemnification for its fees in this action because this action arises out of SunTrust's performance under the Credit Agreement regardless of "[w]hether Plaintiffs characterize their claims as based on SunTrust's allegedly improper action or inaction." (SunTrust Mem. at 13.) Plaintiffs offer no case law in response, instead relying solely on *ipse dixit* to assert that the Credit Agreement is inapplicable here because this action supposedly arises out of SunTrust's "complete refusal to perform [its] obligations." (Opp. at 12.) The Court should reject Plaintiffs' unsupported argument.

In sum, all of Plaintiffs' arguments fail. For the reasons expressed in SunTrust's opening brief and those herein, the Court should grant SunTrust's motion to dismiss with prejudice.

## ARGUMENT

**I.      Plaintiffs Fail to State a Claim for Breach of Contract.**

      **A.      SunTrust's Fees Incurred in this Action are Reimbursable Expenses.**

SunTrust is entitled to indemnification for its fees and expenses incurred in connection with this action because this action "aris[es] out of," is "in connection with," and "is the result of" Borrower's default under the Credit Agreement and Guarantor's default under the Guaranty Agreement—and because Plaintiffs' breach-of-contract and implied covenant claims depend entirely on the existence of the Credit Agreement and SunTrust's "performance" thereunder. (*See*

ECF 45-1, Credit Agreement § 10.3(b)[2]; SunTrust Mem. at 11–15.)  Indeed, Plaintiffs have expressly alleged claims for breach of contract and breach of the implied covenant of good faith and fair dealing premised on the Loan Documents.  (*See* FAC ¶¶ 102–41; ECF 45-1, Credit Agreement § 1.1.)  While Plaintiffs contend that indemnification is unavailable here because this litigation arises out of SunTrust's alleged "refusal" to perform its obligations (Opp. at 12), Plaintiffs offer no case law support for their argument and entirely ignore a case from this Court that SunTrust cited, which undermines Plaintiffs' spurious argument.  (*See* SunTrust Mem. at 13, citing *KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*, 600 B.R. 214, 233 (S.D.N.Y. 2019).)

Moreover, no exception to SunTrust's indemnification right applies, as Plaintiffs do not dispute that no court of competent jurisdiction has entered a "final and non-appealable judgment" establishing the facts required to invoke the two exceptions to SunTrust's right to indemnification. (*See* Opp. at 13–14.)  Nor do they contest that such a judgment is an unambiguous condition precedent to the indemnification exceptions.  (*See* SunTrust Mem. at 14; ECF 45-1, Credit Agreement § 10.3(b).)  This concession alone is fatal to Plaintiffs' position that either exception applies.  *See Zyburo v. Cont'l Cas. Co.*, 60 F. Supp. 3d 531, 533 (S.D.N.Y. 2014); *Maple Med., LLP v. Scott*, 191 A.D.3d 81, 105 (N.Y. App. Div., 2d Dep't 2020).

Plaintiffs try to avoid this result by arguing that "indemnification claims" are not "typically ripe[]" until the merits of an action have been decided.  (*See* Opp. at 13–14.)  Plaintiffs confuse both facts and law.  It is *Plaintiffs*, not SunTrust, that effectively bring a claim for indemnification here (by alleging SunTrust has not properly allocated the funds for indemnification), and Plaintiffs'

---

[2] This provision applies to claims brought by *any* plaintiff, including Emigrant and PMB, regardless of whether they are a Loan Party, as it covers "any actual or prospective claim . . . whether brought **by a third person** or by the Borrower**,** any other Loan Party, the Sponsor or any of their respective Affiliates, and regardless of whether any Indemnitee is a party thereto." (ECF 45-1, Credit Agreement § 10.3(b)(iv) (emphasis added).)

3

own ripeness caselaw (*see* Opp. at 13–14 (citing *Empire Merchants, LLC v. Merinoff*, 2018 WL 317848, *3 (S.D.N.Y. Jan. 5, 2018)) shows that their new claims are premature because the contractual exceptions at issue cannot be applied until their original breach of contract claims are decided.³ (*See* SunTrust Mem. at 16–18; ECF 45-1, Credit Agreement § 10.3(b).)

Separately, Plaintiffs admit that SunTrust's conduct "may have an attenuated relationship to the fact that Borrower defaulted on its loan," but maintain that SunTrust's expenses here are not reimbursable because Borrower's default "is not at issue in this lawsuit," and thus the dispute does not "arise[] out [of] the action of the Borrower" or other Loan Party. (*See* Opp. at 15.) Plaintiffs, however, ignore that but-for Borrower's default—and Guarantor's subsequent default under the Guaranty Agreement—Plaintiffs would not have sued SunTrust for declining to sue Virgo affiliates "for breach of the Guaranty." (FAC ¶ 10; ECF 45-2.) And Plaintiffs' sole reliance on *Inter-American Development Bank v. Nextg Telecom Ltd.*, 503 F. Supp. 2d 687, 698 (S.D.N.Y. 2007), is misplaced. This Court in *Inter-American* reasoned that the lawsuit there did not "arise out of" a contract because "[n]either the terms of the [contract] nor the obligations of the parties thereto were at issue." 503 F. Supp. 2d 687, 698 (S.D.N.Y. 2007). Here, the "terms of the [contract]"—the Credit Agreement—and "the obligations of the parties thereto" are the precise questions "at issue."⁴

---

³ Plaintiffs also muse that "there is no need for a final, non-appealable judgment to determine that the action is solely between SunTrust and other Lenders." (Opp. at 14.) But the Credit Agreement says otherwise, and the exclusion requires not just that the action be solely between Indemnitees, but also that the dispute not arise out of the action or inaction of Borrower or any other Loan Party. (ECF 45-1, Credit Agreement § 10.3(b).)

⁴ Plaintiffs claim, without explanation, that SunTrust's authority regarding the meaning of the phrase "arising out of" is "distinguishable" because it draws from "the context of insurance coverage." (Opp. at 15 n.9.) To the contrary, interpretations of the phrase "arising out of" appear frequently in insurance cases precisely because the vast majority of those cases address parties' *indemnification* obligations. *See, e.g.*, *Country-Wide Ins. Co. v. Excelsior Ins. Co.*, 147 A.D.3d 407, 409 (N.Y. App. Div., 1st Dep't 2017).

Finally, Plaintiffs argue that SunTrust's expenses are not reimbursable under Section 10.3 because, when SunTrust asserted its right to indemnification in writing, it said it would make future written demands on the Lenders but then failed to do so.  (Opp. at 16–17.)  Plaintiffs' argument ignores the terms of SunTrust's initial indemnification demand.  (*See* Fowler Aff., Attachment H.) When SunTrust sent that notice in April 2020, upon the filing of this case, it had not received any distributions from the Alchemy Trustee in some time, anticipated that the Borrower would be unable to indemnify SunTrust pursuant to Section 10.3(a)–(b) for the expenses it would incur in this case, and thus told the Lenders that it would enforce its right under a separate provision, Section 10.3(d), to require "each Lender" to individually indemnify SunTrust if and when "Our Alchemy is unable to fulfill its indemnification obligation to SunTrust, the Administrative Agent."  (*Id.* at 4.)  SunTrust thus said it would make future written demands to the Lenders to exercise its rights under Section 10.3(d).  When the Trustee made the $1.2 million distribution from the Alchemy Bankruptcy, however, there was no need to make a separate, written demand on the Borrower (or any other party to the Loan Documents) pursuant to Section 10.3(d):  The Borrower paid SunTrust pursuant to SunTrust's rights under Section 10.3(a)–(b) without further action required by SunTrust.  (*See supra*.)  Plaintiffs' reliance on SunTrust's April 2, 2020 letter is therefore wholly misplaced.

In sum, SunTrust is entitled to indemnification for its fees and expenses incurred in this action.

### B.     SunTrust Properly Distributed the Funds from the Alchemy Trustee.

Because SunTrust incurred indemnifiable fees and expenses, when SunTrust received funds from the Alchemy Trustee, SunTrust applied the plain terms of the Credit Agreement and distributed to itself $955,854.47 for fees incurred in three sets of litigation: (1) the Alchemy

Bankruptcy and related Adversary Actions, (2) the SunTrust Guaranty Action, and (3) this action. (FAC ¶ 101; SunTrust Mem. at 7.) That distribution was entirely proper.

As an initial matter, Plaintiffs now concede they have not made any argument that SunTrust improperly distributed to itself its expenses for the Alchemy Bankruptcy (and related Adversary Actions) and the SunTrust Guaranty Action, which comprise the majority of the $955,854.47 at issue. (Opp. at 7 n.3.) Accordingly, Plaintiffs' claim now relates solely to the fraction of the distribution relating to fees incurred in this action. (*See id.*)

SunTrust also properly distributed to itself its expenses incurred here. As explained in SunTrust's opening brief, the Credit Agreement provides that SunTrust must first distribute funds "to the reimbursable expenses of the Administrative Agent incurred in connection with such sale or other realization upon the Collateral, until the same shall have been paid in full," and then second "to the fees and other reimbursable expenses of the Administrative Agent then due and payable pursuant to any of the Loan Documents, until the same shall have been paid in full." (ECF 45-1, Credit Agreement § 8.2; SunTrust Mem. at 7–8, 16.) Because SunTrust's fees incurred in this action were indemnifiable (*see supra*, Part I.A), they fell within the second distribution priority. And SunTrust was required to fulfill its second-priority distribution obligation *before* making *any* distributions to other Lenders, who are entitled to certain amounts beginning with the third distribution priority. (*See* ECF 45-1, Credit Agreement § 8.2.)

Plaintiffs' arguments to the contrary are unavailing. *First*, Plaintiffs baldly assert that SunTrust's distribution was improper because this action is not an "enforcement or protection" of SunTrust's rights, but rather a case where SunTrust breached its obligations. (Opp. at 18.) Plaintiffs' argument fails because SunTrust's fees in defending against this meritless action are incurred to protect its rights. *Cf. KeyBank*, 600 B.R. at 231–33. Indeed, Plaintiffs' original three

6

claims in this lawsuit fail as a matter of law, and SunTrust did not breach any obligations. (*See* ECF 36, SunTrust Motion to Dismiss Original Complaint; ECF 40, SunTrust Reply in Support of Original Motion to Dismiss.)

*Second*, Plaintiffs wrongly contend that following Section 8.2's plain text to confirm the appropriateness of SunTrust's distribution while this action is pending would render Section 10.3(b)'s indemnification exclusions "meaningless." (Opp. at 18.) Not so. Plaintiffs' own case shows Plaintiffs' resort to the indemnification exceptions of Section 10.3 are premature. (*See* Opp. at 13–14, quoting *Empire Merchants*, 2018 WL 317848, at *3.) Based on the contractual language to which Plaintiffs—unquestionably sophisticated parties—agreed, their claims would ripen, if at all, only upon the entry of a final judgment on the breach of contract claims that are currently subject to a motion to dismiss in this matter. (*See* ECF 45-1, Credit Agreement § 10.3(b).) If such a judgment is ever entered and conclusively determines that SunTrust's actions trigger one of the exclusions, Plaintiffs can then invoke the exclusions to preclude indemnification. This structure ensures consistent judgments; it does not vitiate the exclusions.

*Third*, after distributing the funds from the Alchemy Trustee to itself according to the first and second fund distribution priorities, SunTrust properly distributed the remaining funds *pro rata* to all the Lenders. While Plaintiffs now assert that their expenses were payable to them before SunTrust distributed the remaining funds *pro rata* (Opp. at 19), nowhere in their Amended Complaint do they ever allege that their expenses were "payable" at the time SunTrust made the distribution (*see generally* FAC). Indeed, Plaintiffs' contention makes no sense because they never advised SunTrust of any amount to which they claimed an entitlement—an error they remedied only *after* filing the Amended Complaint. Faced with this reality, Plaintiffs implausibly contend it was "impossible for Plaintiffs to submit a demand for reimbursement" because SunTrust failed

7

to inform them the Trustee made a distribution. (Opp. at 19–20.) But Plaintiffs could have submitted their expenses at any time, regardless of when the Alchemy Trustee distributed funds to the Administrative Agent. Plaintiffs' lack of foresight does not convert SunTrust's proper performance into a breach of contract. Accordingly, the Court should dismiss Count 4.

### C. Plaintiffs Fail to State a Claim for Breach of the Term Loan Joinder Agreement.

SunTrust previously explained that "Plaintiffs' claim for breach of the Term Loan Joinder Agreement [Count 6] . . . depends entirely on Plaintiffs' breach of the Credit Agreement claim." (SunTrust Mem. at 18.) Plaintiffs now concede that the breach of contract claim with respect to the Term Loan Joinder Agreement depends entirely on the Credit Agreement. (*See* Opp. at 20.)

Plaintiffs attempt a game of "gotcha" with regard to Count 6, however, by arguing that while SunTrust "seeks to dismiss Plaintiffs' implied covenant claim as to the Credit Agreement (Count V), SunTrust does not present any argument as to why the implied covenant portion of Count VI should be dismissed." (Opp. at 23.) Plaintiffs apparently rely on their allegation that "SunTrust has breached the Term Loan Joinder Agreement, including the implied covenant of good faith and fair dealing therein" (FAC ¶ 139) to support their waiver argument. Not so fast. SunTrust's argument in its main brief that "Plaintiffs' claim for breach of the Term Loan Joinder Agreement is [] derivative and depends entirely on Plaintiffs' breach of the Credit Agreement claim[, and . . .] because Plaintiffs' claim for breach of the Credit Agreement fails, their claim for breach of the Term Loan Joinder Agreement also fails as a matter of law" disposes of both claims on their terms. (SunTrust Mem. at 18.) The Court should dismiss Count 6.

### II. Plaintiffs Fail to State a Claim for Breach of the Implied Covenant Because Plaintiffs Expressly Waived Any Such Claim.

The Court should dismiss Count 5 of the Amended Complaint because Plaintiffs waived implied covenant claims against SunTrust, as Administrative Agent, in the Credit Agreement.

8

An implied covenant claim requires a breach of an implied duty under an existing contract. (SunTrust Mem. at 18–19 (collecting cases).)  Plaintiffs' lead implied covenant case, *In Touch Concepts, Inc. v. Cellco Partnership*, confirms this, describing a claim for breach of the implied covenant as a claim that a party is "in breach of the duty."  949 F. Supp. 2d 447, 466 (S.D.N.Y. 2013).  Plaintiffs, however, disclaimed imposing *any* "implied duties" and any "obligations except those expressly set forth" in the Credit Agreement on SunTrust, as Administrative Agent.  (ECF 1-1, § 9.2.)  Plaintiffs' express contractual agreement therefore bars their implied covenant claims.

Indeed, as SunTrust pointed out in its opening brief, *In re Enron Corp.*, 292 B.R. 752 (Bankr. S.D.N.Y. 2003), demonstrates that the specific language in the Credit Agreement here confirms that Plaintiffs waived any claim under the implied covenant.  (SunTrust Mem. at 19–20.)  Plaintiffs' first response to *Enron* is to incorrectly claim that the portion SunTrust cited was *dicta*.  (Opp. at 21.)  In fact, the *Enron* court rejected the implied covenant claim based on waiver, before concluding in the alternative that the defendant's actions would not have breached the implied covenant in any event.  *See* 292 B.R. at 782–85.  Plaintiffs' second response is to assert that *Enron* is "rarely cited."  (Opp. at 21.)  Regardless, it's cited here because of how similar the language it interpreted is to the language at issue here.  The contract in *Enron* provided that the defendant bank "shall have no obligation to [plaintiff bank] in respect of the Participating Interests, which is not expressly set forth in this Agreement."  292 B.R. at 764.  Likewise, the Credit Agreement specifies that "the Administrative Agent shall not have any duties or obligations except those expressly set forth in this Agreement and the other Loan Documents."  (ECF 45-1, Credit Agreement § 9.2.)  Plaintiffs' attempts to diminish *Enron* fail.  The Court should dismiss Count 5.

### III. The Credit Agreement's Exculpatory Clause Bars Plaintiffs' Claims.

Section 9.2(c) of the Credit Agreement relieves the Administrative Agent of all liability "in the absence of its own gross negligence or willful misconduct."  (ECF 45-1, Credit Agreement

9

§ 9.2.)  This language requires Plaintiffs to make a "compelling demonstration of egregious intentional misbehavior evincing extreme culpability: malice, recklessness, deliberate or callous indifference to the rights of others, or an extensive pattern of wanton acts."  *Morgan Stanley & Co. Inc. v. Peak Ridge Master SPC Ltd.*, 930 F. Supp. 2d 532, 544 (S.D.N.Y. 2013).  Even allegations of *intentional breaches* are insufficient.  *See, e.g.*, *Brooklyn 13th Street Holding Corp. v. Nextel of New York, Inc.*, No. 11-cv-1048, 2011 WL 6945862, at *5 (E.D.N.Y. Dec. 30, 2011).

While Plaintiffs assert they meet this standard because they alleged SunTrust knowingly and "improperly reimbursed itself for expenses related to this lawsuit" while "refus[ing]" to reimburse Plaintiffs' for theirs and failing to give Plaintiffs advance notice of the impending distribution (Opp. at 24), Plaintiffs do not dispute that these allegations are precisely the same ones upon which they base their run-of-the-mill breach of contract and implied covenant claims.  (*See* SunTrust Mem. at 20.)  As a matter of law, such allegations fail to plead "egregious intentional misbehavior evincing extreme culpability" required for gross negligence or willful misconduct.  *See Peak Ridge*, 930 F. Supp. 2d at 544.  Likewise, as explained in SunTrust's prior briefing (ECF 40, at 7), SunTrust did request a release from Plaintiffs—but did so in response to Plaintiffs' request to control litigation and suggestion that SunTrust breached its contractual obligations.  (*See* ECF 37-1, SunTrust January 3, 2020 Letter, at 1.)  This request reflects only "economic self-interest" insufficient to constitute "gross negligence or willful misconduct."  *See Peak Ridge*, 930 F. Supp. 2d at 545; ECF 40, at 7.

The Credit Agreement's exculpatory clause plainly prohibits Plaintiffs' damages claims, and the First Amended Complaint should be dismissed on that basis alone.

## **CONCLUSION**

For the foregoing reasons, the Court should grant SunTrust's motion and dismiss.

Dated: January 7, 2022                          KING & SPALDING LLP

                                                                                  By: *Peter Isajiw*
                                                                                       Peter Isajiw
Kenneth B. Fowler (admitted *pro hac vice*)
1185 Avenue of the Americas
New York, NY 10036
Phone: 212-556-2235
Fax: 212-556-2222
pisajiw@kslaw.com
kfowler@kslaw.com

David Tetrick, Jr. (admitted *pro hac vice*)
Paige Burroughs (*pro hac vice* application forthcoming)
1180 Peachtree Street, NE
Atlanta, GA 30309-3521
Phone: 404-572-4600
Fax: 404-572-5100
dtetrick@kslaw.com
pburroughs@kslaw.com

*Attorneys for Defendants*
*SunTrust Bank and Truist Bank*