# KING & SPALDING

1185 Avenue of the Americas
New York, NY 10036
www.kslaw.com

**Kenneth B. Fowler**
Partner
Tel:  +1 212 556 2227
Fax:  +1 212 556 2222
kfowler@kslaw.com

January 17, 2023

**VIA ECF**

The Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 705
New York, NY 10007

> Re:  *Emigrant Bank and Pacific Mercantile Bank v. SunTrust Bank, et al.*,
> No. 1:20-cv-02391: Response to Letter from Plaintiffs Dated January 3, 2023

Dear Judge Gardephe:

We represent Defendants SunTrust Bank and Truist Bank (collectively, "SunTrust") in the captioned matter.  We write in response to Plaintiffs' letter dated January 3, 2023 (ECF 62, the "January 3 Letter"), in which Plaintiffs attempt to transform their recent defeat in the New York State Supreme Court Appellate Division into a positive development for them here.  The January 3 Letter, like Plaintiffs' letter after their earlier defeat in the New York State Supreme Court (ECF 57), includes several dubious assertions that require corrections, clarifications, or both.

**First**, Plaintiffs assert that the "Supreme Court dismissed [Plaintiffs' case against certain non-parties (collectively, "Virgo") to the Amended Credit Agreement at issue here] because it determined that Section 8.1 of the Amended Credit Agreement . . . granted SunTrust, as Administrative Agent . . ., the exclusive authority to bring any action in law or equity in an Event of Default **and** required SunTrust to bring an action against Virgo upon the request of Plaintiffs."  *See* ECF 62, at 1 (emphasis added).[1]  The latter part of that sentence—every word after "and"—is a complete fabrication.  Tellingly, Plaintiffs do not cite the Supreme Court's order in support of their fabrication, and for good reason: because there is absolutely nothing in the order saying anything of the sort.  *See* ECF 57-1 (Supreme Court order).  To the contrary, the Supreme Court held that Plaintiffs lacked standing to bring their claims against Virgo—**not** that SunTrust was "required to bring an action against Virgo upon the request of Plaintiffs."  *Contrast id. with* ECF 62, at 5.

As SunTrust previously explained (*see, e.g.*, ECF 36, at 10–12; ECF 58, at 1–2), SunTrust was not required to bring the action against Virgo that Plaintiffs demanded because, among other things, a lawsuit against contractual non-parties cannot be completed "by notice to the Borrower," which is a requirement for compulsory actions under the Credit Agreement.  *See* ECF 1-1, Credit Agreement § 8.1.  The New York Supreme Court had no reason to address the "by notice to the

---

[1] In this litigation, the parties have referred to the Amended Credit Agreement simply as the "Credit Agreement."

Hon. Paul G. Gardephe
January 17, 2023
Page 2

Borrower" issue because SunTrust was not a party to Plaintiffs' state-court lawsuit, and neither Plaintiffs nor the state-court defendants raised the argument in that case. Plaintiffs could have argued that the "by notice to the Borrower" clause limited SunTrust's authority to act upon an Event of Default, and dramatically bolstered their standing argument in state court, but they could not do so —perhaps at their own expense—without admitting the fundamental flaw in their claims against SunTrust in this case.

*Second*, and relatedly, Plaintiffs claim that the Appellate Division's "First Department also left undisturbed the Supreme Court's opinion that SunTrust was required to bring an action against Virgo on the request of Plaintiffs." ECF 62, at 2. But there wasn't any such opinion to disturb or "leave undisturbed." The Supreme Court's order was decided solely on standing grounds, and the First Department had no reason to consider whether SunTrust was "required" to bring any action.

*Third*, Plaintiffs assert that the "First Department did not find any limitation on SunTrust's duty imposed by Section 8.1's notice [to the Borrower] requirement." ECF 62, at 2. That statement is accurate, but only because the First Department did not make any findings about SunTrust's "duty" (or limitation thereof) under Section 8.1. The First Department referenced Section 8.1 just once, when it addressed SunTrust's "power" to act under Section 8.1, without addressing the limitations on that power, and with no discussion of SunTrust's duties. *See* ECF 62-1, at 3. That makes sense because the question before the First Department was whether Plaintiffs had delegated such *powers* to SunTrust to sue under the Credit Agreement, and the First Department could (and did) decide that question without reaching SunTrust's *duties* to exercise those powers under Section 8.1. *Id.* at 2–4. Indeed, the First Department's order does not mention duties or requirements at all, let alone suggest that SunTrust's duties were limitless, as Plaintiffs insist. Nor does the First Department's order address *Plaintiffs'* alleged power to force SunTrust to sue contractual non-parties on a whim, which is the basis of their claims here. That, too, makes sense, given that no such power exists under the Credit Agreement. *See generally* ECF 36; ECF 52.

*Fourth*, in their previous letter, Plaintiffs asserted that that they sued Virgo for "fraud and other non-contractual claims" in 2021 "[b]ecause SunTrust refused to bring suit against Virgo." ECF 57, at 3. We previously clarified the record on that front, explaining that Plaintiffs never demanded that SunTrust bring any fraud or non-contractual claims against Virgo prior to Plaintiffs suing Virgo—and, in fact, never made any such demand until after the Supreme Court dismissed their complaint for lack of standing. ECF 58, at 2. As we pointed out, Plaintiffs failed to disclose those facts to the Supreme Court. Nine months later, Plaintiffs now retort that they "expressly raised at oral argument [before the First Department] the distinction between the claims in issue here that SunTrust has refused to bring and the fraud and other non-contractual claims that Plaintiffs brought in the Virgo Action" and, yet the First Department affirmed anyway. ECF 62, at 2. In other words, Plaintiffs concede they did not demand that SunTrust assert fraud-based claims against Virgo until after the Supreme Court dismissed their complaint—and Plaintiffs failed to disclose that fact to the Supreme Court—but no blood, no foul.

*Fifth*, and finally, Plaintiffs contend that dismissal of this case "could leave Plaintiffs without an effective remedy." ECF 62, at 2–3. As an initial matter, the decision to bring this case against SunTrust and the resulting limitations it placed on their subsequent case against Virgo is the primary reason they now lack a remedy in state court. Moreover, Plaintiffs' contention is

Hon. Paul G. Gardephe
January 17, 2023
Page 3

patently false.  Plaintiffs unquestionably *do* have remedies.  Indeed, SunTrust is pursuing several remedies on behalf of the Lenders.  SunTrust is currently advancing the Lenders' interests in the Alchemy Bankruptcy and suing both Calrissian LP (the guarantor under the Credit Agreement) and Virgo Service Company (Calrissian's general partner).  By "effective remedy," Plaintiffs mean the ability to act unilaterally and to impose obligations on SunTrust that go well beyond the bargain they made when they decided to participate in the Credit Agreement.  *Cf.* ECF 62-2, at 28:22–29:17.  But the orderly (and proper) remedies SunTrust is actively pursuing are very much available and "effective."

In sum, the First Department's order does not undercut the arguments SunTrust advanced in support of its Motion to Dismiss the Amended Complaint.  The New York courts have only decided that Plaintiffs lack standing to sue Virgo for the claims they alleged.  For the reasons explained in SunTrust's motion to dismiss, Plaintiffs cannot sue SunTrust, either.  This Court, like the New York courts, should hold Plaintiffs to the terms of the Credit Agreement, and dismiss the Amended Complaint.

Respectfully,

*Kenneth B. Fowler*

Kenneth B. Fowler

cc:    All counsel via ECF