UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMIGRANT BANK, and PACIFIC
MERCANTILE BANK,

                    Plaintiffs,

          - against -

SUNTRUST BANK, TRUIST BANK, and
DOES 1 THROUGH 10,

                    Defendants.

**MEMORANDUM
OPINION & ORDER**

20 Civ. 2391 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

　　　　　Emigrant Bank and Pacific Mercantile Bank ("Pacific") bring this action against

SunTrust Bank and Truist Bank (collectively, "SunTrust") asserting breach of contract and

breach of the implied covenant of good faith and fair dealing.  (Am. Cmplt. (Dkt. No. 45) ¶¶

102-41)

　　　　　SunTrust has moved to dismiss for failure to state a claim, pursuant to Federal

Rule of Civil Procedure 12(b)(6).  (First Def. MTD (Dkt. No. 35); Second Def. MTD (Dkt. No.

51))

　　　　　For the reasons stated below, SunTrust's motions to dismiss will be granted in

part and denied in part.

## BACKGROUND

**I.      FACTS**

　　　　　According to the Amended Complaint, Emigrant is a New York corporation with

its principal place of business in New York; Pacific is a California corporation with its principal

place of business in California; SunTrust Bank is a Georgia corporation with its principal place

of business in Georgia; and Truist Bank is a North Carolina corporation with its principal place of business in North Carolina.  (Am. Cmplt. (Dkt. No. 45) ¶¶ 20-23)  On December 6, 2019, SunTrust Bank merged with Branch Banking and Trust Company to become Truist Bank.  (Id. ¶ 1)

On September 4, 2014, Pacific, SunTrust, and Preferred Bank ("Preferred") entered into a Revolving Credit and Term Loan Agreement ("Credit Agreement") with Our Alchemy, LLC ("Alchemy"), an independent film and video distributor.  (Id. ¶¶ 2, 32)  On July 9, 2015, the Credit Agreement was amended.  (Id. ¶¶ 2, 55; see Am. Cmplt., Ex. A ("Credit Agmt.") (Dkt. No. 45-1))  On July 10, 2015, Emigrant entered into a Term Loan Joinder Agreement with Alchemy, SunTrust, Pacific, and Preferred.  (Id. ¶ 56; see Am. Cmplt., Ex. D ("Term Loan Joinder Agmt.") (Dkt. No. 45-4))  Under the Term Loan Joinder Agreement, Emigrant agreed to an Incremental Term Commitment[1] of $14.5 million, and joined Pacific,

---

[1]  The Credit Agreement defines "Incremental Term Commitment" as follows:

> From time to time after the Closing Date and in accordance with this Section, the Borrower and one or more Increasing Term Lenders or Additional Lenders (each as defined below) may enter into an agreement to increase the aggregate Term Loan Commitments hereunder (each such increase, an "Incremental Term Commitment") so long as [several] conditions are satisfied[.] . . .

(Credit Agmt. (Dkt. No. 45-1) § 2.21(B)(a) (emphasis omitted))  "Term Loan Commitments" are, "with respect to each Lender, the commitment[s] of such Lender to make Term Loans."  (Id. at 46)  "Term Loans" are "term loan[s] made by a Lender to the Borrower, pursuant to [the Credit Agreement]."  (Id.)  Such loans are made "to the Borrower in an aggregate principal amount not exceeding the amount set forth with respect to such Lender" in Schedule I of the Credit Agreement.  (Id.)  The "Increasing Term Lenders" are "those Lenders . . . that agree to increase the principal amount of their Term Loan Commitments."  (Id. § 2.21(B)(b))  "The Borrower may accept some or all of the offered amounts or designate Additional Lenders, which Additional Lenders may assume all or a portion of such Incremental Term Commitment."  (Id.)

2

SunTrust, and Preferred as a lender under the Credit Agreement.  (Id. ¶ 56)  Together, Emigrant,

Pacific, SunTrust, and Preferred are the "Lenders" under the "Loan Documents."[2]  (Id. ¶¶ 2, 4)

In the Credit Agreement, the Lenders established a $59.5 million revolving credit

and term loan facility for Alchemy.  (Id. ¶¶ 2, 58)  SunTrust is the Administrative Agent under

the Credit Agreement on behalf of the Lenders, with responsibilities and duties that include

enforcing the Loan Documents.[3]  (Id. ¶ 4)  The Credit Agreement also grants Emigrant and

Pacific certain rights as the Lenders with a majority stake (the "Required Lenders"), such as the

right to demand that SunTrust – as the Administrative Agent – exercise all Lender remedies

provided in the Loan Documents.  (Id. ¶ 5)

The Credit Agreement is secured by a Guaranty and Security Agreement (the

"Guaranty"), dated September 4, 2014.  (Id. ¶¶ 3, 33; see Am. Cmplt., Ex. B ("Guaranty") (Dkt.

No. 45-2))  The parties to the Guaranty are SunTrust – on behalf of the Lenders – Alchemy, and

Calrissian L.P.  (Id. ¶¶ 3, 33)  Calrissian is the 100% owner of Alchemy, and Calrissian is itself

wholly owned by Virgo Investment Group, LLC and its affiliates (collectively, "Virgo").  (Id. ¶¶

3, 30-31)  In the Guaranty, Calrissian guarantees Alchemy's obligations under the Credit

Agreement, including full repayment of the loans when due, whether by acceleration or

otherwise, and Alchemy's timely performance of all obligations under the Credit Agreement.

---

[2]  The Credit Agreement defines "Loan Documents" to include, inter alia, "th[e] [Credit]
Agreement, the Collateral Documents, . . . and any and all other instruments, agreements,
documents and writings executed in connection with any of the foregoing, in each case as
amended, supplemented or otherwise modified, renewed, restated or replaced from time to time."
(Credit Agmt. (Dkt. No. 45-1) at 33)  The Credit Agreement defines "Collateral Documents" to
include, inter alia, "the Guaranty and Security Agreement" discussed below.  (Id. at 16)
[3]  SunTrust is both the "Administrative Agent" and a "Lender" under the Loan Documents.
(Am. Cmplt. (Dkt. No. 45) ¶¶ 2, 4, 32, 56-57; see also Credit Agmt. (Dkt. No. 45-1) at 145
(SunTrust officer signing Credit Agreement on behalf of SunTrust, "as the Administrative Agent
and as a Lender"))

(Id. ¶¶ 3, 34, 36-37, 57)  At the time that it executed the Guaranty, however, Calrissian had

virtually no assets and had no ability to repay Alchemy's loan obligations.  (Id. ¶ 40)

In early 2016, Alchemy did not pay amounts due under the Credit Agreement,

which Plaintiffs allege constitutes an event of default under the Credit Agreement.  (Id. ¶¶ 6, 63)

On January 19, 2016, SunTrust sent Alchemy a reservation of rights letter, notifying Alchemy of

the occurrence and continuation of certain events of default under the Credit Agreement and

reserving its right to exercise its rights and remedies under the Loan Documents.  (Id. ¶¶ 62, 64)

On March 3, 2016, SunTrust sent a second reservation of rights letter to Alchemy.  (Id. ¶¶ 65-66)

On April 20, 2016, SunTrust – as the Administrative Agent – the Lenders,

Alchemy, and Calrissian entered into a Forbearance Agreement.  (Id. ¶ 67; see Am. Cmplt., Ex.

E ("Forbearance Agmt.") (Dkt. No. 45-5))  Under the Forbearance Agreement, SunTrust and the

other Lenders agreed not to take certain legal action against Alchemy and Calrissian relating to

existing or anticipated defaults during the forbearance period.  (Id. ¶ 68)  Upon expiration of that

period, however, SunTrust, on behalf of the Lenders, would be entitled to exercise all remedies

under the Credit Agreement.  (Id.)

On May 5, 2016, SunTrust sent Alchemy a third reservation of rights letter (id. ¶¶

69-70), and on May 18, 2016, SunTrust sent Alchemy a fourth reservation of rights letter,

notifying Alchemy that the forbearance period had expired, that the existing defaults were

continuing, that anticipated defaults had occurred, and that SunTrust – as the Administrative

Agent – was entitled to exercise any and all rights and remedies under the Credit Agreement, the

Guaranty, the Forbearance Agreement, and "all other documents, instruments or agreements

executed in connection therewith."  (Id. ¶¶ 71-72; Am. Cmplt., Ex. F (Dkt. No. 45-6) at 3)

On June 15, 2016, SunTrust sent Alchemy and Calrissian a debt acceleration notice, notifying them that they had not cured any of the existing defaults and that all obligations owed under the Credit Agreement were immediately due and payable, accelerating the debt due to approximately $46 million.  (Am. Cmplt. ¶¶ 6, 73-74)  Neither Alchemy nor Calrissian has made any payment.  (Id. ¶¶ 6, 76)

On July 1, 2016, Alchemy filed a Chapter 7 bankruptcy petition in U.S. Bankruptcy Court for the District of Delaware (the "Alchemy bankruptcy"), which Plaintiffs allege triggered an additional event of default.  (Id. ¶¶ 7, 75)  The bankruptcy proceeding remains pending.  (Id.)  On August 5, 2016, SunTrust – as Administrative Agent – filed a lawsuit against Calrissian in Supreme Court of the State of New York, New York County, alleging a breach of the Guaranty.  (Id. ¶ 8)

On February 16, 2017, Calrissian filed a Chapter 11 bankruptcy petition, which was converted to a Chapter 7 petition, in U.S. Bankruptcy Court for the District of Delaware. (Id. ¶ 9)  This bankruptcy proceeding closed on January 9, 2020.  (Id.)

According to Plaintiffs, SunTrust performed all of its duties and obligations under the Guaranty, but Calrissian and Virgo – as Calrissian's principal and alter ego – breached the Guaranty by failing to satisfy the guaranteed obligations.  (Id. ¶¶ 79-80)  According to Plaintiffs, as of the date of the debt acceleration notice, Virgo was required to pay SunTrust all amounts owed under the Loan Documents, but has not done so.  (Id. ¶ 80)  Plaintiffs further allege that the Lenders have been damaged by Virgo's breach, and that SunTrust – as Administrative Agent on behalf of the Lenders – has a claim for relief against Virgo.  (Id.)

On September 28, 2016, SunTrust retained Hemming Morse, LLP to assist in an investigation of potential claims against Alchemy, Calrissian, Virgo, and other entities.  (Id. ¶

83)  The Lenders contributed to the payment of Hemming Morse's fees.  (Id.)  On March 23, 2017, Plaintiffs – as the Required Lenders – requested that SunTrust disclose the results of Hemming Morse's investigation.  (Id. ¶ 84)  SunTrust denied that request on April 27, 2017. (Id.)

Based on Hemming Morse's investigation and other information, however, SunTrust concluded that the Lenders have colorable claims against Virgo.  (Id. ¶ 85)  Although Plaintiffs discussed with SunTrust the Lenders' potential claims against Virgo – including a claim for breach of the Guaranty – those discussions did not lead to an agreement that SunTrust would bring claims against Virgo.  (Id. ¶ 86)  SunTrust instead insisted that Plaintiffs give SunTrust a general release of all claims, known and unknown, before it would proceed or cooperate with Plaintiffs in filing a lawsuit against Virgo.  (Id.)

On December 13, 2019, Plaintiffs made a formal demand on SunTrust – pursuant to Section 8.1 of the Credit Agreement – that it sue Virgo for breach of the Guaranty on behalf of all of the Lenders.  (Id. ¶¶ 10, 87-88)  In the demand, Plaintiffs assert that Virgo acted as the alter ego and principal of Calrissian, and that as a result, Virgo owes the Lenders more than $50 million, pursuant to the Guaranty.  (Id. ¶¶ 10, 12, 88)  Plaintiffs further point out that Section 9.13 of the Credit Agreement authorizes SunTrust, as the Administrative Agent, to enforce the Guaranty (id. ¶¶ 12, 88; see Credit Agmt. (Dkt. No. 45-1) § 9.13), and that Section 8.1 of the Credit Agreement provides that, following an event of default, SunTrust – as the Administrative Agent – "'may, and upon the written request of the Required Lenders shall, by notice to the Borrower, . . . exercise all remedies contained in any other Loan Document, and . . . exercise any other remedies available at law or in equity.'"  (Id. ¶¶ 13, 81 (emphasis omitted) (quoting Credit Agmt. (Dkt. No. 45-1) § 8.1))

Although Plaintiffs presented a written proposal to SunTrust in which Emigrant offered to finance and manage the litigation against Virgo, SunTrust refused to initiate suit, stating that it would cooperate in a litigation against Virgo only if Plaintiffs gave SunTrust a full release of all claims, known and unknown.  (Id. ¶¶ 10-12, 88-90)

In a December 19, 2019 letter to SunTrust, Plaintiffs again demanded that SunTrust take legal action against Virgo on behalf of the Lenders, or agree to Plaintiffs' proposal that Emigrant finance and manage the litigation against Virgo.  (Id. ¶ 89)  On January 3, 2020, SunTrust rejected both the demand to file suit and Plaintiffs' proposal, again stating that it would only cooperate in a litigation against Virgo if Plaintiffs gave SunTrust a full release of all claims, whether known or unknown.  (Id. ¶ 90)

In a January 9, 2020 letter to SunTrust, Plaintiffs again requested that SunTrust comply with its obligations under Section 8.1 of the Credit Agreement by filing a lawsuit on behalf of the Lenders against Virgo for breach of the Guaranty, or by agreeing to Plaintiffs' proposal that Emigrant finance and manage the litigation against Virgo, and to do so without insisting on a general release from Plaintiffs.  (Id. ¶ 91)  Despite further discussions, SunTrust has not agreed to file a lawsuit against Virgo or to Plaintiffs' proposal, absent a general release of known and unknown claims.  (Id. ¶ 92)

According to Plaintiffs – by refusing to pursue a lawsuit against Virgo for breach of the Guaranty – SunTrust has breached its obligations under the Credit Agreement, and has caused Plaintiffs to suffer damages amounting to $26 million.  (Id. ¶ 13)

Plaintiffs filed the instant action on March 18, 2020 (Cmplt. (Dkt. No. 1)), and on April 2, 2020, SunTrust informed the Lenders that it intended to seek indemnification from the Lenders for the attorneys' fees, costs, and expenses associated with the instant lawsuit, citing

Section 10.3 of the Credit Agreement.  (Am. Cmplt. (Dkt. No. 45) ¶ 93)  SunTrust stated that it would send the Lenders written demands for payment of expenses relating to this litigation.  (Id.) SunTrust has not sent any written demands for payment of legal expenses relating to this litigation, however, and in an April 9, 2020 letter to SunTrust, Plaintiffs deny that SunTrust is entitled to indemnification under Section 10.3 of the Credit Agreement.  (Id. ¶¶ 93-94)

In a December 16, 2020 letter to the Lenders, SunTrust states that it intends to seek indemnification from the Lenders for SunTrust's attorneys' fees and costs incurred in responding to two subpoenas it received from the Alchemy bankruptcy trustee.  (Id. ¶ 95) SunTrust has not sent any written demands for payment of expenses relating to these subpoenas, however.  (Id.)

In a March 11, 2021 letter, SunTrust informed the Lenders that – as Administrative Agent – it had received distributions on behalf of the Lenders from the Alchemy bankruptcy proceeding.  (Id. ¶¶ 14, 96)  SunTrust received these distributions on December 17, 2020, and February 10, 2021.  (Id. ¶ 96)  According to Plaintiffs, SunTrust did not promptly inform the Lenders of its receipt of these funds, and did not consult with the Lenders about the proper allocation of the distributions.  (Id. ¶¶ 14, 96)  SunTrust instead used these distributions to reimburse itself for costs associated with (1) defending the instant action; (2) the Alchemy bankruptcy; and (3) the New York state court action that it brought against Calrissian in August 2016 for breach of the Guaranty.  (Id. ¶¶ 14, 98)  SunTrust claims that it was entitled, under the Credit Agreement, to utilize the distributions it received on behalf of the Lenders to reimburse itself for expenses it incurred, and refused to pay Plaintiffs monies due to them.  (Id. ¶¶ 14, 96-98)

The Amended Complaint asserts claims for breach of the Credit Agreement (id. ¶ 102-08, 121-28), breach of the Term Loan Joinder Agreement (id. ¶¶ 114-20, 135-141), and breach of the implied covenant of good faith and fair dealing associated with those agreements. (Id. ¶¶ 109-13, 129-34).  Plaintiffs seek damages of more than $26 million, as well as an award of attorneys' fees, costs, and pre-judgment interest.  (Id. at 33)

## II.   PROCEDURAL BACKGROUND

The Complaint was filed on March 18, 2020.  (Cmplt. (Dkt. No. 1))  On April 13, 2020, SunTrust requested a pre-motion conference concerning its anticipated motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Apr. 13, 2020 Def. Ltr. (Dkt. No. 13)) On April 23, 2020, Plaintiffs filed a response letter, opposing SunTrust's request and anticipated motion.  (Apr. 23, 2020 Pltf. Ltr. (Dkt. No. 17))  On June 24, 2020, SunTrust requested a stay of discovery pending resolution of its motion to dismiss.  (June 24, 2020 Def. Ltr. (Dkt. No. 25)) On June 29, 2020, Plaintiffs filed a response letter, opposing SunTrust's request.  (June 29, 2020 Pltf. Ltr. (Dkt. No. 28))  On July 29, 2020, this Court set a briefing schedule for SunTrust's motion, and stayed discovery pending resolution of the motion.  (July 29, 2020 Order (Dkt. No. 33))  On October 9, 2020, SunTrust filed its motion to dismiss the Complaint.  (First Def. MTD (Dkt. No. 35))

On September 10, 2021, the parties filed a joint letter in which Plaintiffs requested leave to file an amended complaint asserting additional claims against SunTrust. (Sept. 10, 2021 Jt. Ltr. (Dkt. No. 43) at 1)  SunTrust consented to Plaintiffs' request, and the parties agreed that the amendment would not moot SunTrust's pending motion to dismiss.  (Id. at 1-2)  On September 13, 2021, this Court granted the parties' requests.  (Sept. 13, 2021 Order (Dkt. No. 44))

On September 27, 2021, Plaintiffs filed the Amended Complaint.  (Am. Cmplt. (Dkt. No. 45))  On October 12, 2021, SunTrust requested a pre-motion conference concerning its anticipated motion to dismiss the additional claims in the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Oct. 12, 2021 Def. Ltr. (Dkt. No. 46))  On October 22, 2021, Plaintiffs filed a response letter, opposing SunTrust's anticipated motion.  (Oct. 22, 2021 Pltf. Ltr. (Dkt. No. 49))  On November 19, 2021, this Court set a briefing schedule for SunTrust's motion to dismiss the new claims in the Amended Complaint.  (Nov. 19, 2021 Order (Dkt. No. 50))  On January 7, 2022, SunTrust filed its motion to dismiss the new claims in the Amended Complaint.  (Second Def. MTD (Dkt. No. 51))

On May 13, 2022, Plaintiffs requested a pre-motion conference concerning their anticipated motion to partially lift the stay of discovery.  (May 13, 2022 Pltf. Ltr. (Dkt. No. 60))  On May 18, 2022, SunTrust filed a response letter, opposing Plaintiffs' request.  (May 18, 2022 Def. Ltr. (Dkt. No. 61))

## DISCUSSION

## I.      LEGAL STANDARDS

### A.      Rule 12(b)(6) Standard

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff."  Id. (citing

Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006); Leibowitz v. Cornell Univ., 445 F.3d 586, 591-92 (2d Cir. 2006)).

Under this standard, a plaintiff is required only to set forth a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft 'to sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right of relief above the speculative level," id. at 555, and a plaintiff's claims must be "plausible on [their] face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Moreover, where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," Twombly, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed." Id. at 570. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (alteration in original) (quoting Twombly, 550 U.S. at 557).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner,

Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. Cnty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)).

### B.    General Principles of Contract Interpretation[4]

"The fundamental objective of contract interpretation is to give effect to the expressed intentions of the parties." Klos v. Lotnicze, 133 F.3d 164, 168 (2d Cir. 1997) (citing Hunt Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir. 1989)).  "Given that objective, 'the first principle of contract interpretation' is that 'where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms.'" Glob. Reinsurance Corp. of Am. v. Century Indem. Co., 22 F.4th 83, 94 (2d Cir. 2021) (quoting Lilly v. City of New York, 934 F.3d 222, 236 (2d Cir. 2019)).  "When ascertaining the meaning of contractual language, . . . 'words and phrases should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions.'" Id. at 95 (quoting LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp., 424 F.3d 195, 206 (2d Cir. 2005)).  In particular, "a contract should be interpreted so as not to render its terms nonsensical." InterDigital Commc'ns Corp. v. Nokia Corp., 407 F. Supp. 2d 522, 530 (S.D.N.Y. 2005) (collecting cases).

A contract is unambiguous when its language has "'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 66 (2d Cir. 2000) (alteration in original) (quoting Hunt Ltd., 889 F.2d at 1277).

---

[4]  New York law governs the Credit Agreement (Credit Agmt. (Dkt. No. 45-1) § 10.5(a)), the Term Loan Joinder Agreement (Term Loan Joinder Agmt. (Dkt. No. 45-4) § 14), and the Guaranty (Guaranty (Dkt. No. 45-2) § 10.6(a)).

By contrast,

> [a]n ambiguity [in a contract] exists where the terms of [the] . . . contract could suggest "more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."

Morgan Stanley Grp. Inc. v. New Eng. Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000) (quoting

Lightfoot v. Union Carbide Corp., 110 F.3d 898, 906 (2d Cir.1997)).  Of course, "[t]he language

of a contract is not made ambiguous simply because the parties urge different interpretations."

Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992).

Where a contract is ambiguous, "'its construction presents a question of fact,

which of course precludes summary dismissal' on a Rule 12(b)(6) motion."  Maniolos v. United

States, 741 F. Supp. 2d 555, 567 (S.D.N.Y. 2010), aff'd, 469 F. App'x 56 (2d Cir. 2012)

(quoting Crowley v. VisionMaker, LLC, 512 F. Supp. 2d 144, 152 (S.D.N.Y. 2007) (collecting

cases).  While a court is not "obliged" on a motion to dismiss "to accept the allegations of the

complaint as to how to construe" a contract, it "should resolve any contractual ambiguities in

favor of the plaintiff."  Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir.

2005) (citing Int'l Audiotext Network, Inc. v. AT&T Co., 62 F.3d 69, 72 (2d Cir. 1995) (per

curiam)).

## II.   <u>ANALYSIS</u>

SunTrust contends that Plaintiffs do not state a claim for breach of contract

because

> (1) "Section 8.1 [of the Credit Agreement] does not empower Plaintiffs to compel SunTrust to file a lawsuit against any non-parties to the Loan Documents because such a lawsuit cannot be commenced 'by notice to the Borrower'" (First Def. MTD Br. (Dkt. No. 36) at 16 (emphasis omitted));

> (2) "pursuant to [Section 10.3(b)] of the Credit Agreement, SunTrust is entitled to indemnification for its expenses, including attorneys' fees, [associated with] the

Alchemy [b]ankuptcy (including the [t]rustee [a]dversary [a]ctions), . . . the [New York state court action SunTrust brought against Calrissian for breach of the Guaranty], and . . . this action," and may reimburse itself for its expenses "from the funds received from the Alchemy [bankruptcy] [t]rustee" (Second Def. MTD Br. (Dkt. No. 52) at 14, 19)[5];

(3) "SunTrust was entitled – and, in fact, required – to distribute the funds received from the Alchemy [bankruptcy] [t]rustee precisely the way it did," and "SunTrust followed the distribution procedure [set forth in Section 8.2 of the Credit Agreement] to the letter" (Second Def. MTD Br. (Dkt. No. 52) at 20); and

(4) Plaintiffs' claims that SunTrust breached the Term Loan Joinder Agreement depend entirely on the alleged breaches of the Credit Agreement, and Plaintiffs have not pled facts demonstrating that SunTrust breached the Credit Agreement. (First Def. MTD Br. (Dkt. No. 36) at 18-19; Second Def. MTD Br. (Dkt. No. 52) at 22)

As to Plaintiffs' claim for breach of the implied covenant of good faith and fair

dealing, SunTrust asserts that (1) Plaintiffs expressly waived any implied covenant claim in the

Credit Agreement; and (2) the implied covenant claims must be dismissed as duplicative of

---

[5]  The Amended Complaint asserts that SunTrust sought indemnification and reimbursement from the Lenders for, inter alia, expenses associated with the instant lawsuit.  (See Am. Cmplt. (Dkt. No. 45) ¶¶ 93, 95)  Section 10.3(b) of the Credit Agreement provides, however, that "[t]he Borrower shall indemnify the Administrative Agent" for expenses "arising out of, in connection with, or as a result of, . . . the performance by the parties hereto of their respective obligations" under the Loan Documents, or "any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing."  (Credit Agmt. (Dkt. No. 45-1) § 10.3(b))

In moving to dismiss, SunTrust appears to argue not that it is entitled to direct indemnification and reimbursement payments from the Lenders, but rather that it is entitled to reimburse itself for expenses associated with, inter alia, the instant lawsuit, from distributions SunTrust has received from the Alchemy bankruptcy trustee as the Administrative Agent on behalf of the Lenders. (See Second Def. MTD Br. (Dkt. No. 52) at 14-19)

Plaintiffs dispute that SunTrust may reimburse itself for expenses incurred in the instant lawsuit from funds it received from the Alchemy bankruptcy trustee, for the benefit of all Lenders.  (See Second Pltf. MTD Opp. Br. (Dkt. No. 54) at 16 ("The terms of the Credit Agreement did not permit SunTrust to indemnify itself for expenses incurred in this action using funds received from the Alchemy [b]ankruptcy [t]rustee for the benefit of all Lenders."))

Plaintiffs' breach of contract claims.  (First Def. MTD Br. (Dkt. No. 36) at 19-23; Second Def.

MTD Br. (Dkt. No. 52) at 22-24)

Finally, SunTrust argues that Plaintiffs do not state a claim for damages, because

(1) the Credit Agreement's exculpatory clause bars Plaintiffs' claims; and (2) Plaintiffs' claims

are not ripe.  (First Def. MTD Br. (Dkt. No. 36) at 23-26; Second Def. MTD Br. (Dkt. No. 52) at

24-26)

In response, Plaintiffs contend that

(1) "SunTrust's interpretation of Section 8.1 is wrong" (First Pltf. MTD Opp. Br. (Dkt. No. 39) at 17);

(2) "[t]he terms of the Credit Agreement [do] not permit SunTrust to indemnify itself for expenses incurred in this action using funds received from the Alchemy [b]ankruptcy [t]rustee for the benefit of all Lenders," and "SunTrust was first required to give notice, but failed to do so" (Second Pltf. MTD Opp. Br. (Dkt. No. 54) at 16);

(3) "SunTrust breached the Credit Agreement by improperly paying itself for expenses incurred in defending this action, and failing to reimburse Plaintiffs for their expenses" (id. at 22); and

(4) SunTrust's breach of the Credit Agreement constitutes a breach of the Term Loan Joinder Agreement.  (First Pltf. MTD Opp. Br. (Dkt. No. 39) at 20-21; Second Pltf. MTD Opp. Br. (Dkt. No. 54) at 25)

As to Plaintiffs' breach of the implied covenant of good faith and fair dealing

claims, Plaintiffs argue that (1) Section 9.2 of the Credit Agreement does not constitute a waiver

of such claims; and (2) these claims are not duplicative of Plaintiffs' breach of contract claims.

(First Pltf. MTD Opp. Br. (Dkt. No. 39) at 21-26; Second Pltf. MTD Opp. Br. (Dkt. No. 54) at

25-28)

Finally, Plaintiffs argue that the Amended Complaint states a claim for damages

because (1) Plaintiffs allege that SunTrust engaged in gross negligence and willful misconduct,

and the Credit Agreement's exculpatory clause does not extend to gross negligence and willful

misconduct; and (2) Plaintiffs' claims are ripe, because they allege a breach.  (First Pltf. MTD

Opp. Br. (Dkt. No. 39) at 26-30; Second Pltf. MTD Opp. Br. (Dkt. No. 54) at 28-30)

> ### A.   Whether SunTrust's Alleged Refusal to Sue
> ### Virgo Constitutes a Breach of Contract

Section 8.1 of the Credit Agreement lists seventeen events that constitute an event

of default (Credit Agmt. (Dkt. No. 45-1) § 8.1), and it is undisputed here that an event of default

has occurred.[6]  (See Am. Cmplt. (Dkt. No. 45) ¶¶ 6-7, 63, 75; Forbearance Agmt. (Dkt. No. 45-

5) at 2-3)

---

[6]  The undisputed events of default arise from the following provisions of the Credit Agreement:

(a) the Borrower shall fail to pay any principal of any Loan, when and as the same
shall become due and payable, whether at the due date thereof or at a date fixed for
prepayment or otherwise; or . . .

(d) the Borrower shall fail to observe or perform any covenant or agreement
contained in Section 5.1, 5.2, or 5.3 (with respect to the Borrower's legal existence)
or Article VI or VII; or . . .

(g) [Calrissian], the Borrower, or any Subsidiary of the Borrower shall (i) commence
a voluntary case or other proceeding or file any petition seeking liquidation,
reorganization or other relief under any federal, state or foreign bankruptcy,
insolvency or other similar law now or hereafter in effect or seeking the appointment
of a custodian, trustee, receiver, liquidator or other similar official of it or any
substantial part of its property, (ii) consent to the institution of, or fail to contest in a
timely and appropriate manner, any proceeding or petition described in subsection (i)
of this subsection, (iii) apply for or consent to the appointment of a custodian, trustee,
receiver, liquidator or other similar official for, [Calrissian], the Borrower, or any
Subsidiary of the Borrower or for a substantial part of such Person's assets, (iv) file
an answer admitting the material allegations of a petition filed against it in any such
proceeding, (v) make a general assignment for the benefit of creditors, or (vi) take
any action for the purpose of effecting any of the foregoing . . . .

(Credit Agmt. (Dkt. No. 45-1) § 8.1 (emphasis omitted))

In connection with these provisions, it is undisputed that Alchemy's failure to pay
amounts due under the Credit Agreement constitutes an event of default.  (Am. Cmplt.
(Dkt. No. 45) ¶¶ 6, 63)  Similarly, there is no dispute that Alchemy did not comply with
the financial covenants set forth in Article VI of the Credit Agreement, and did not
provide prompt written notice of the events of default.  (Am. Cmplt. (Dkt. No. 45) ¶ 63;

Section 8.1 further provides that, when an event of default has occurred,

> then, and in every such event (other than an event described in subsection (h) or
> (i) of this Section) and at any time thereafter during the continuance of such
> event, the Administrative Agent may, and upon the written request of the
> Required Lenders shall, by notice to the Borrower, take any or all of the following
> actions, at the same or different times:  (i) terminate the Commitments,
> whereupon the Commitment of each Lender shall terminate immediately, (ii)
> declare the principal of and any accrued interest on the Loans, and all other
> Obligations owing hereunder, to be, whereupon the same shall become, due and
> payable immediately, without presentment, demand, protest or other notice of any
> kind, all of which are hereby waived by the Borrower, (iii) exercise all remedies
> contained in any other Loan Document, and (iv) exercise any other remedies
> available at law or in equity; provided that, if an Event of Default specified in
> either subsection (h) or (i) shall occur, the Commitments shall automatically
> terminate and the principal of the Loans then outstanding, together with accrued
> interest thereon, and all fees and all other Obligations shall automatically become
> due and payable, without presentment, demand, protest or other notice of any
> kind, all of which are hereby waived by the Borrower.

(Credit Agmt. (Dkt. No. 45-1) § 8.1) (emphasis omitted))

The Credit Agreement defines the "Borrower" as Alchemy.  (Id. at 2, 8)  As

discussed above, the Credit Agreement defines "Loan Document[s]" to include, inter alia, "th[e]

[Credit] Agreement, the Collateral Documents, . . . and any and all other instruments,

agreements, documents and writings executed in connection with any of the foregoing, in each

case as amended, supplemented or otherwise modified, renewed, restated or replaced from time

to time."  (Id. at 33)  And, as also noted above, the Credit Agreement defines "Collateral

Documents" to include, inter alia, the Guaranty.  (Id. at 16)

According to SunTrust, Section 8.1 of the Credit Agreement does not authorize

Plaintiffs to compel SunTrust to file a lawsuit against an entity such as Virgo, which is not a

party to the Credit Agreement and the remaining Loan Documents.  (First Def. MTD Br. (Dkt.

No. 36) at 16)  SunTrust contends that the language "by notice to the Borrower" limits its

---

Forbearance Agmt. (Dkt. No. 45-5) at 2-3)  Finally, Alchemy's bankruptcy petition
constitutes an event of default.  (Am. Cmplt. (Dkt. No. 45) ¶¶ 7, 75)

obligations to pursuing only remedies that may be accomplished merely by serving notice on Alchemy.  (Id. (emphasis omitted) (citing Credit Agmt. (Dkt. No. 45-1) § 8.1; Fed. R. Civ. P. 3-5; N.Y. C.P.L.R. § 3012) ("By its plain language, Section 8.1 applies only to those remedies that can be completed 'by notice to the Borrower.' . . . Thus, Section 8.1 does not empower Plaintiffs to compel SunTrust to file a lawsuit against any non-parties to the Loan Documents because such a lawsuit cannot be commenced 'by notice to the Borrower.'"))

SunTrust's interpretation of Section 8.1 is not objectively reasonable, because it is obvious from the language used in Section 8.1 that SunTrust's obligations go beyond merely providing notice to Alchemy.  Indeed, Section 8.1 uses the mandatory word "shall" to make clear that SunTrust must, "upon the written request of the Required Lenders," "exercise all remedies contained in any other Loan Document, and . . . exercise any other remedies available at law or in equity."  (Credit Agmt. (Dkt. No. 45-1) § 8.1)  In sum, Section 8.1 imposes broad duties on SunTrust to pursue remedies available to the Lenders once (1) there has been an "event of default"; and (2) the Lenders have requested that SunTrust pursue the Lenders' remedies.  Under the Credit Agreement, SunTrust's duties and responsibilities in this regard are mandatory and go far beyond merely providing notice to Alchemy.

While SunTrust is obligated to provide notice to Alchemy of its actions related to Alchemy's default, SunTrust's duties under Section 8.1 are not limited to merely providing notice to Alchemy.  Adopting SunTrust's interpretation of the phrase "by notice to the Borrower" would lead to absurd and nonsensical results, because such an interpretation would render Section 8.1 (iii) and (iv) null and void.  See InterDigital Commc'ns Corp., 407 F. Supp. 2d at 530.

Section 7.4 of the Guaranty also addresses SunTrust's duties and responsibilities when an event of default has occurred.  Oddly, in its motion to dismiss papers, SunTrust does not discuss this provision at all.  Section 7.4 states that,

> [u]pon the occurrence and during the continuance of an Event of Default, the Administrative Agent may, in its sole discretion, in its name (on behalf of the Secured Parties) or in the name of any Grantor or otherwise, demand, sue for, collect or receive any money or property at any time payable or receivable on account of or in exchange for, or make any compromise or settlement deemed desirable with respect to, any of the Collateral, but shall be under no obligation to do so, or the Administrative Agent may extend the time of payment, arrange for payment in installments, or otherwise modify the terms of, or release, any of the Collateral, without thereby incurring responsibility to, or discharging or otherwise affecting any liability of, any Grantor.

(Guaranty (Dkt. No. 45-1) § 7.4)

Under the Guaranty, the "Grantors" are "[Calrissian] and certain Subsidiaries of the Borrower," which is Alchemy.  (Id. at 6)  "Collateral" is defined as

> all of [each Grantor's] personal and real property, tangible and intangible, whether now owned or at any time hereafter acquired by such Grantor or in which such Grantor now has or at any time in the future may acquire any right, title or interest, wherever located or situated, and whether now existing or hereafter coming into existence.

(Id. § 3.1)

Plaintiffs contend that the Guaranty – which is a "Loan Document" under Section 8.1 of the Credit Agreement – "empowers SunTrust to pursue remedies against parties other than the Borrower," including by suing non-parties, such as Virgo.  (First Pltf. MTD Opp. Br. (Dkt. No. 39) at 18 (citing Guaranty (Dkt. No. 45-2) §§ 7.4-7.5))  But Plaintiffs do not address the language in Section 7.4 of the Guaranty that grants SunTrust "sole discretion" to pursue certain remedies, including "su[ing] for . . . any money or property at any time payable or receivable on account of or in exchange for . . . any of the Collateral," and provides that SunTrust "shall be under no obligation to do so."  (Guaranty (Dkt. No. 45-2) § 7.4)

This Court need not address the apparent conflict between Section 8.1 of the Credit Agreement and Section 7.4 of the Guaranty, because the parties have not briefed the issue. Suffice it to say, however, that there is an apparent conflict in these provisions that may render the governing agreements in this case ambiguous, and thus not susceptible to interpretation as a matter of law.  See Revson, 221 F.3d at 66 (quoting Hunt Ltd., 889 F.2d at 1277); Morgan Stanley Grp. Inc., 225 F.3d at 275 (quoting Lightfoot, 110 F.3d at 906); see also Maniolos, 741 F. Supp. 2d at 567 (quoting Crowley, 512 F. Supp. 2d at 152).  In any event, SunTrust has not demonstrated that its reading of the Credit Agreement is correct as a matter of law.  Accordingly – to the extent that its motion to dismiss is predicated on the argument that its duties under Section 8.1 of the Credit Agreement are limited to providing notice to Alchemy – the motion will be denied.

SunTrust also argues that Plaintiffs have not adequately pled a claim for breach of the Term Loan Joinder Agreement.  (First Def. MTD Br. (Dkt. No. 36) at 19)  In the Term Loan Joinder Agreement, Emigrant

> appoints and authorizes the Administrative Agent to take such action as agent on its behalf and to exercise such powers under the Credit Agreement and the other Loan Documents as are delegated to the Administrative Agent, as the case may be, by the terms thereof, together with such powers as are reasonably incidental thereto.

(Term Loan Joinder Agmt. (Dkt. No. 45-4) at 3)  Given that Plaintiffs' claim for breach of the Credit Agreement survives SunTrust's motion to dismiss, Plaintiffs' claim for breach of the Term Loan Joinder Agreement likewise survives.

### B. Whether SunTrust Breached the Credit Agreement by Using Plaintiffs' Funds Without Authorization

In the Amended Complaint, Plaintiffs contend that SunTrust breached the Credit Agreement by misappropriating certain funds provided by the Alchemy bankruptcy trustee –

funds that SunTrust received on behalf of Lenders.  (See Am. Cmplt. (Dkt. No. 45) ¶¶ 124-27)
In moving to dismiss this claim, SunTrust argues that, under the Credit Agreement, it "is entitled
to indemnification for its expenses, including attorney's fees, . . . in this action," as well as in
connection with the Alchemy bankruptcy proceeding and the New York state court action
against Calrissian.[7]  (Second Def. MTD Br. (Dkt. No. 52) at 19)  SunTrust further argues that it
is entitled to indemnification from the funds received from the Alchemy bankruptcy trustee,
because the instant action "arises out of, is in connection with, and is the result of Borrower's
default under the Credit Agreement and Guarantor's default under the Guaranty Agreement,"
and "[b]ut for those defaults, Plaintiffs would not have demanded that SunTrust sue unspecified
Virgo affiliates, which demand was the basis for Plaintiff[s'] original claims in this action."  (Id.
at 16)

        Plaintiffs contend that the instant action does not arise out of and does not relate
to SunTrust's performance of its obligations under the Credit Agreement, but instead arises out
of SunTrust's refusal to perform its obligations under the Credit Agreement, and that the Credit
Agreement's indemnification provisions do not authorize indemnification under these
circumstances.  (Second Pltf. MTD Opp. Br. (Dkt. No. 54) at 16-17)

        SunTrust also argues that it is entitled to reimburse itself for expenses associated
with this lawsuit pursuant to Section 8.2 of the Credit Agreement, which states that

> [a]ll proceeds from each sale of, or other realization upon, all or any part of the
> Collateral by any Secured Party after an Event of Default arises shall be applied
> as follows: . . . (b) second, to the fees and other reimbursable expenses of the

---

[7]  Plaintiffs do not dispute that SunTrust is entitled to indemnification for expenses it incurred in
connection with the Alchemy bankruptcy proceeding and the New York state court action that it
brought against Calrissian for breach of the Guaranty.  (See Second Pltf. MTD Opp. Br. (Dkt.
No. 54) at 16 (arguing that "[t]he terms of the Credit Agreement did not permit SunTrust to
indemnify itself for expenses incurred in this action using funds received from the Alchemy
[b]ankruptcy [t]rustee for the benefit of all Lenders.")).

> Administrative Agent then due and payable pursuant to any of the Loan
> Documents, until the same shall have been paid in full. . . .

(Second Def. MTD Br. (Dkt. No. 52) at 20); Credit Agmt. (Dkt. No. 45-1) § 8.2 (emphasis

omitted))

Plaintiffs argue that SunTrust is not entitled to either indemnification or to

reimbursement of its expenses in connection with the instant lawsuit, and that SunTrust was

obligated to use monies obtained from the Alchemy bankruptcy trustee to reimburse the Lenders

for their expenses associated with the instant lawsuit.  (Second Pltf. MTD Opp. Br. (Dkt. No. 54)

at 16, 22)

### 1.   <u>Credit Agreement Indemnification Provisions</u>

Section 10.3(b) of the Credit Agreement states that

> [t]he Borrower shall indemnify the Administrative Agent (and any subagent
> thereof), each Lender and each Related Party of any of the foregoing Persons
> (each such Person being called an "Indemnitee") against, and hold each
> Indemnitee harmless from, any and all losses, claims, damages, liabilities and
> related expenses (including the reasonable fees, charges and disbursements of any
> outside counsel for any Indemnitee), and shall indemnify and hold harmless each
> Indemnitee from, and shall reimburse each Indemnitee upon its demand for, all
> fees and time charges and disbursements for outside attorneys of any Indemnitee,
> incurred by any Indemnitee or asserted against any Indemnitee by any third
> Person or by the Borrower, any other Loan Party, the Sponsor or any of their
> respective Affiliates arising out of, in connection with, or as a result of (i) the
> execution or delivery of this Agreement, any other Loan Document or any
> agreement or instrument contemplated hereby or thereby, the performance by the
> parties hereto of their respective obligations hereunder or thereunder or the
> consummation of the transactions contemplated hereby or thereby, (ii) any Loan
> or the use or proposed use of the proceeds therefrom, (iii) any actual or alleged
> presence or Release of Hazardous Materials on or from any property owned or
> operated by the Borrower or any of its Subsidiaries, or any Environmental
> Liability related in any way to the Borrower or any of its Subsidiaries, or (iv) any
> actual or prospective claim, litigation, investigation or proceeding relating to any
> of the foregoing, whether based on contract, tort or any other theory, whether
> brought by a third Person or by the Borrower, any other Loan Party, the Sponsor
> or any of their respective Affiliates, and regardless of whether any Indemnitee is a
> party thereto. . . .

(Credit Agmt. (Dkt. No. 45-1) § 10.3(b) (emphasis omitted))  The Credit Agreement defines the

"Loan Parties" as "the Borrower and the Guarantors," which are Alchemy, and Calrissian and

any subsidiaries of Alchemy, respectively.  (Id. at 2, 8, 27-28, 33, 45)  The "Sponsor" is "Virgo

Service Company LLC."[8]  (Id. at 45)

   Under Section 10.3(b) of the Credit Agreement, the Indemnitees have no right to

indemnification

> to the extent that [their] losses, claims, damages, liabilities or related expenses are
> determined by a court of competent jurisdiction by final and non-appealable
> judgment to have resulted from [(1)] the gross negligence or willful misconduct of
> or breach of this Agreement or any other Loan Document by such Indemnitee or
> any Related Party of such Indemnitee or [(2)] any disputes solely among
> Indemnitees and not arising out of any action or inaction of the Borrower, any
> other Loan Party, the Sponsor or any of their respective Affiliates.

(Id. § 10.3(b))

   Section 10.3(a) of the Credit Agreement provides that

> [t]he Borrower shall pay (on the Closing Date and thereafter on demand) . . . (ii)
> all out-of-pocket costs and expenses (including, without limitation, the reasonable
> fees, charges and disbursements of outside counsel and the allocated cost of inside
> counsel) incurred by the Administrative Agent or any Lender in connection with
> the enforcement or protection of its rights in connection with this Agreement,
> including its rights under this Section, or in connection with the Loans made
> hereunder, including all such out-of-pocket expenses incurred during any
> workout, restructuring or negotiations in respect of such Loans.

(Id. § 10.3(a))

   Section 10.3(f) states that "[a]ll amounts due under this Section shall be payable

promptly after written demand therefor."  (Id. § 10.3(f))

---

[8]  As discussed above, Plaintiffs plead that "Virgo" is "Virgo Investment Group, LLC and its
affiliates."  (See Am. Cmplt. (Dkt. No. 45) ¶ 3)  The parties do not address whether Virgo
Service Company LLC is an affiliate of Virgo, or the significance, if any, of the reference to a
Virgo entity in the Credit Agreement.

**(a)**     **New York Law Regarding Indemnification**
            **for Ongoing Litigation Between the Parties**

New York law "imposes a strong presumption against reading indemnification

provisions to cover expenses incurred in litigation between the parties."  In re Platinum-

Beechwood Litig., 378 F. Supp. 3d 318, 323 (S.D.N.Y. 2019).  "'[A] contract assuming that

obligation must be strictly construed to avoid reading into it a duty which the parties did not

intend to be assumed.'"  Gibbs-Alfano v. Burton, 281 F.3d 12, 19 (2d Cir. 2002) (quoting

Hooper Assocs., Ltd. v. AGS Computs., Inc., 74 N.Y. 2d 487, 491 (1989)).  Courts "are wary of

the inference that indemnification clauses apply to litigation between the parties in the absence of

express wording."  Bank of N.Y. Tr. Co., N.A. v. Franklin Advisers, Inc., 726 F.3d 269, 283 (2d

Cir. 2013) (citing Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir. 2003)).

To determine whether the presumption against indemnification in a lawsuit

between parties is rebutted in a particular case,

> courts look to several factors, including:  (1) whether the provision
> "unequivocally indicate[s] that the parties intended to indemnify attorneys' fees in
> lawsuits between themselves," or whether it instead "contain[s] only broad
> language," . . . and (2) whether "future third-party claims were possible at the
> time of the contract," or whether "it is apparent that no third party claims were
> contemplated by the parties" . . . .  Where a provision "is subject to a reasonable
> interpretation one way or another, the agreement must be construed not to
> indemnify [one party's] legal expenses in defending against [the other party's]
> claims."

In re Platinum-Beechwood Litig., 378 F. Supp. 3d at 324 (first, second, and third alterations in

original) (omissions added) (quoting In re Refco Sec. Litig., 890 F. Supp. 2d 332, 343-44

(S.D.N.Y. 2012)).

**(b)**     **Analysis**

As discussed above, SunTrust argues that it did not misappropriate the funds it

received from the Alchemy bankruptcy on behalf of the Lenders because – under the Credit

Agreement – "SunTrust is entitled to indemnification for its expenses, including attorney's fees, . . . in this action."  (Second Def. MTD Br. (Dkt. No. 52) at 15-17, 19)  According to SunTrust, it is entitled to indemnification because "[t]he entire action arises out of, is in connection with, and is the result of Borrower's default under the Credit Agreement and Guarantor's default under the Guaranty Agreement."  (Id. at 16)

As noted above, Plaintiffs argue that the instant action does not arise out of or relate to SunTrust's performance of its obligations under the Credit Agreement, but instead arises out of SunTrust's refusal to perform those obligations.  (Second Pltf. MTD Opp. Br. (Dkt. No. 54) at 16-17)  Plaintiffs further contend that the Credit Agreement's indemnification provisions preclude SunTrust's recovery of expenses related to the instant lawsuit.  (Id. at 16, 22)

This Court concludes that SunTrust's expenses incurred in the instant action "aris[e] out of, [are] in connection with, [and] [are] a result of" SunTrust's performance of its alleged obligations under the Credit Agreement.  Indeed, Plaintiffs contend that SunTrust breached the Credit Agreement by not performing its obligations under that agreement, including its obligation to sue Virgo once there was an event of default and a written demand from Plaintiffs.  (Am. Cmplt. (Dkt. No. 45) ¶¶ 102-08)  Moreover, SunTrust's expenses incurred in connection with the instant action "aris[e] out of, [are] in connection with, [and] [are] a result of" an "actual . . . claim, litigation, . . . or proceeding relating to" SunTrust's performance of its alleged obligations under the Credit Agreement.  Accordingly, for purposes of the Credit Agreement's indemnification provisions, SunTrust's expenses in the instant lawsuit arise out of its performance under the Credit Agreement.

The Credit Agreement's indemnification provisions preclude indemnification where a court has determined – in a final and non-appealable judgment – that the losses, claims,

damages, liabilities, or expenses to be indemnified resulted from SunTrust's "gross negligence or willful misconduct," or from disputes "solely among Indemnitees and not arising out of any action or inaction of the Borrower, any other Loan Party, the Sponsor or any of their respective Affiliates." (Credit Agmt. (Dkt. No. 45-1) § 10.3(b))  No court has made any such determination here.  Accordingly, this exception does not apply.

The Credit Agreement's indemnification provisions do not address, however, whether they apply to legal disputes between the Lenders and the Administrative Agent.  These provisions require the Borrower to indemnify the Indemnitees – including the Administrative Agent and the Lenders – against "any and all losses, claims, damages, liabilities and related expenses . . . incurred by any Indemnitee or asserted against any Indemnitee by any third Person or by the Borrower, any other Loan Party, the Sponsor or any of their respective Affiliates," but they do not address claims by the Lenders against the Administrative Agent.  (Id. § 10.3(b))  In particular, the indemnification provisions do not "'unequivocally indicate[] that the parties intended to indemnify attorneys' fees in lawsuits between themselves.'"  In re Platinum-Beechwood Litig., 378 F. Supp. 3d at 324 (quoting In re Refco Sec. Litig., 890 F. Supp. 2d at 343).  SunTrust – as both the Administrative Agent and a Lender – and Plaintiffs – as Lenders – are parties to the Credit Agreement.  (Am. Cmplt. (Dkt. No. 45) ¶¶ 2, 4, 32, 56-57; see also Credit Agmt. (Dkt. No. 45-1) at 145, 147 (SunTrust officer signing Credit Agreement on behalf of SunTrust, "as the Administrative Agent and as a Lender," and Pacific officer signing Credit Agreement on behalf of Pacific, "as a Lender"); Term Loan Joinder Agmt. (Dkt. No. 45-4) at 2 (Emigrant agreeing to join as a Lender under the Credit Agreement))  Given that the Credit Agreement's indemnification provisions do not clearly provide that the Lenders must indemnify

the Administrative Agent where the Lenders have sued the Administrative Agent, the presumption against an indemnification obligation is not overcome.

Accordingly, SunTrust has not demonstrated as a matter of law that it is entitled to indemnification, pursuant to Section 10.3(b) of the Credit Agreement, for the costs associated with the instant lawsuit. To the extent that its motion to dismiss is premised on this argument, the motion will be denied.[9]

SunTrust again argues that Plaintiffs' claim for breach of the Term Loan Joinder Agreement depends entirely on Plaintiffs' claim for breach of the Credit Agreement, and thus that Plaintiffs' claim for breach of the Term Loan Joinder Agreement fails because the claim for breach of the Credit Agreement fails. (Second Def. MTD Br. (Dkt. No. 52) at 22) Plaintiffs argue that SunTrust breached the Term Loan Joinder Agreement by breaching the Credit Agreement. (Second Pltf. MTD Opp. Br. (Dkt. No. 54) at 25)

As discussed above, because Plaintiffs' claim for breach of the Credit Agreement survives SunTrust's motion to dismiss, to the extent that Plaintiffs allege that SunTrust has no right to indemnification under the Credit Agreement (see Am. Cmplt. (Dkt. No. 45) ¶¶ 121-28), Plaintiffs' claim for breach of the Term Loan Joinder Agreement likewise survives.

---

[9] SunTrust's motion also fails because the Amended Complaint alleges that SunTrust has not made a written demand for indemnification regarding the costs associated with the instant lawsuit. Section 10.3(f) of the Credit Agreement states that indemnifiable expenses are only "due . . . [and] payable promptly after written demand therefor." (Credit Agmt. (Dkt. No. 45-1) § 10.3(f)) Although SunTrust contends that the expenses it has incurred in this action are indemnifiable (Second Def. MTD Br. (Dkt. No. 52) at 15-19), the Amended Complaint alleges that SunTrust has not made any written demand for reimbursement of those expenses. (Am. Cmplt. (Dkt. No. 45) ¶ 93) Accordingly, SunTrust's motion to dismiss fails for this reason as well.

    2.    **Whether SunTrust Is Entitled to Reimbursement of Expenses Associated with the Instant Lawsuit Pursuant to the Credit Agreement**

SunTrust next argues that – pursuant to Sections 10.3 and 8.2 of the Credit Agreement – it was allowed to reimburse itself for expenses associated with the instant lawsuit from funds it received from the Alchemy bankruptcy trustee, on behalf of the Lenders.  (Second Def. MTD Br. (Dkt. No. 52) at 20-21)  As discussed above, Section 8.2. states that where there has been an event of default, and proceeds have been realized from the sale of collateral, SunTrust is authorized to reimburse itself for, inter alia, "fees and other reimbursable expenses of the Administrative Agent then due and payable pursuant to any of the Loan Documents."  (Credit Agmt. (Dkt. No. 45-1) § 8.2(a))

Plaintiffs contend that SunTrust breached the Credit Agreement by (1) using monies obtained from the Alchemy bankruptcy trustee on behalf of the Lenders to reimburse itself for expenses it incurred in connection with the instant lawsuit; and (2) not reimbursing the Lenders for expenses they incurred in connection with the instant lawsuit.  (Second Pltf. MTD Opp. Br. (Dkt. No. 54) at 22)

    (a)    **Reimbursement Provisions in the Credit Agreement**

Section 10.3(a)(ii) of the Credit Agreement authorizes reimbursement of "all out-of-pocket costs and expenses . . . incurred by the Administrative Agent or any Lender in connection with the enforcement or protection of its rights in connection with this Agreement." (Credit Agmt. (Dkt. No. 45-1) § 10.3(a)(ii))

Section 8.2 of the Credit Agreement provides, in part, as follows:

> All proceeds from each sale of, or other realization upon, all or any part of the Collateral by any Secured Party after an Event of Default arises shall be applied as follows:

(a) first, to the reimbursable expenses of the Administrative Agent incurred in connection with such sale or other realization upon the Collateral, until the same shall have been paid in full;

(b) second, to the fees and other reimbursable expenses of the Administrative Agent then due and payable pursuant to any of the Loan Documents, until the same shall have been paid in full;

(c) third, to all reimbursable expenses, if any, of the Lenders then due and payable pursuant to any of the Loan Documents, until the same shall have been paid in full; . . . .

All amounts allocated pursuant to the foregoing clauses third through fifth to the Lenders as a result of amounts owed to the Lenders under the Loan Documents shall be allocated among, and distributed to, the Lenders pro rata based on their respective Pro Rata Shares.[10]

(Id. § 8.2 (emphasis omitted))

### (b)   Analysis

Because SunTrust incurred expenses while defending itself in the instant action –

which was brought against SunTrust for its alleged breaches of the Credit Agreement – it has

---

[10]  "Collateral" is defined as

(a) all tangible and intangible property, real and personal, of any Loan Party that is or purports to be the subject of a Lien to the Administrative Agent to secure the whole or any part of the Obligations or any Guarantee thereof, and shall include, without limitation, all casualty insurance proceeds and condemnation awards with respect to any of the foregoing and (b) 100% of the issued and outstanding capital stock, partnership interests, membership interests, beneficial interests or other equity interests of or in each of the Loan Parties, whether now formed or formed hereafter and whether now owned or hereafter acquired; provided, however, that Collateral shall not include any Capital Stock of OA Investment Holdings.

(Credit Agmt. (Dkt. No. 45-1) at 16 (emphasis omitted))  "Secured part[y]" is defined as, inter alia, "the Administrative Agent[ and] the Lenders."  (Id. at 44)

incurred expenses "in connection with the enforcement or protection of [SunTrust's] rights in connection with th[e Credit] Agreement."  (Id. § 10.3(a)(ii))

Section 10.3(f) of the Credit Agreement provides, however, that reimbursable expenses under Section 10.3 are only "due . . . [and] payable promptly after written demand therefor."  (Id. § 10.3(f))  The Amended Complaint pleads that SunTrust has not made any written demand for the expenses it has incurred in connection with the instant action.  (Am. Cmplt. (Dkt. No. 45) ¶ 93)  Accordingly, SunTrust's reimbursable expenses were not "due and payable," pursuant to Section 8.2(b) of the Credit Agreement, and the Amended Complaint adequately pleads that SunTrust improperly distributed funds to itself as reimbursable expenses. Moreover, because the Lenders' right to reimbursable expenses under Section 8.2(c) is subordinate to SunTrust's right to reimbursement under Section 8.2(b), SunTrust's alleged improper reimbursement of its own expenses pursuant to Section 8.2(b) by definition caused harm to Plaintiffs.  Accordingly, to the extent that SunTrust's motion to dismiss is premised on the argument that it had a right under Section 8.2(b) of the Credit Agreement to reimburse itself for its expenses associated with the instant lawsuit, the motion to dismiss will be denied.

SunTrust again argues that Plaintiffs' claim for breach of the Term Loan Joinder Agreement depends entirely on Plaintiffs' claim for breach of the Credit Agreement, and thus that Plaintiffs' claim for breach of the Term Loan Joinder Agreement fails because the claim for breach of the Credit Agreement fails.  (Second Def. MTD Br. (Dkt. No. 52) at 22)  Plaintiffs again argue that SunTrust breached the Term Loan Joinder Agreement by breaching the Credit Agreement.  (Second Pltf. MTD Opp. Br. (Dkt. No. 54) at 25)

As discussed above, because Plaintiffs' claim for breach of the Credit Agreement survives SunTrust's motion to dismiss, to the extent that Plaintiffs allege that SunTrust

improperly reimbursed itself for expenses incurred in this action under Section 8.2(b) of the

Credit Agreement (<u>see</u> Am. Cmplt. (Dkt. No. 45) ¶¶ 96-98, 125-26), Plaintiffs' claim for breach

of the Term Loan Joinder Agreement likewise survives.

### C. Claims for Breach of the Implied Covenant of Good Faith and Fair Dealing

SunTrust argues that Plaintiffs' claims for breach of the implied covenant of good

faith and fair dealing (Am. Cmplt. (Dkt. No. 45) ¶¶ 109-13, 129-34) must be dismissed because

(1) in Section 9.2 of the Credit Agreement, Plaintiffs expressly waive any implied-covenant

claim; and (2) Plaintiffs' implied covenant claims are duplicative of their breach of contract

claims.  (First Def. MTD Br. (Dkt. No. 36) at 19-23; Second Def. MTD Br. (Dkt. No. 52) at 22-

24)

### 1. Credit Agreement Provisions Regarding Implied Duties

Section 9.2 of the Credit Agreement states that

> [t]he Administrative Agent shall not have any duties or obligations except those
> expressly set forth in this Agreement and the other Loan Documents.  Without
> limiting the generality of the foregoing, (a) the Administrative Agent shall not be
> subject to any fiduciary or other implied duties, regardless of whether a Default or
> an Event of Default has occurred and is continuing, (b) the Administrative Agent
> shall not have any duty to take any discretionary action or exercise any
> discretionary powers, except those discretionary rights and powers expressly
> contemplated by the Loan Documents that the Administrative Agent is required to
> exercise in writing by the Required Lenders (or such other number or percentage
> of the Lenders as shall be necessary under the circumstances as provided in
> Section 10.2), provided that the Administrative Agent shall not be required to take
> any action that, in its opinion or the opinion of its counsel, may expose the
> Administrative Agent to liability or that is contrary to any Loan Document or
> applicable law, including for the avoidance of doubt any action that may be in
> violation of the automatic stay under any Debtor Relief Law or that may effect a
> forfeiture, modification or termination of property of a Defaulting Lender in
> violation of any Debtor Relief Law; and (c) except as expressly set forth in the
> Loan Documents, the Administrative Agent shall not have any duty to disclose,
> and shall not be liable for the failure to disclose, any information relating to the
> Borrower or any of its Subsidiaries or [Calrissian] that is communicated to or
> obtained by the Administrative Agent or any of its Affiliates in any capacity.

(Credit Agmt. (Dkt. No. 45-1) § 9.2 (emphasis omitted))

        2.      **New York Law Regarding Implied Covenant Claims**

"Every contract is assumed to incorporate a covenant of good faith and fair dealing unless such obligation is expressly disclaimed." Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n, No. 14 Civ. 10116 (KBF), 2016 WL 1169515, at *10 (S.D.N.Y. Mar. 22, 2016). Courts in this District have found that the implied covenant of good faith and fair dealing is disclaimed where an agreement provides that "no implied covenants or obligations shall be read into this Agreement." See, e.g., id.; Commerzbank AG v. U.S. Bank Nat'l Ass'n, 277 F. Supp. 3d 483, 498 (S.D.N.Y. 2017). Moreover, "a court cannot imply a covenant inconsistent with terms expressly set forth in the contract. . . . Nor can a court imply a covenant to supply additional terms for which the parties did not bargain." Banco Espanol de Credito v. Sec. Pac. Nat. Bank, 763 F. Supp. 36, 44 (S.D.N.Y. 1991), aff'd, 973 F.2d 51 (2d Cir. 1992) (omission in original) (quoting Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc., 723 F. Supp. 976, 991 (S.D.N.Y. 1989)).

"Under New York law, claims are duplicative when both 'arise from the same facts and seek the identical damages for each alleged breach.'" Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc., 810 F.3d 861, 869 (2d Cir. 2015) (quoting Amcan Holdings, Inc. v. Canadian Imperial Bank of Com., 70 A.D. 3d 423, 426 (1st Dep't 2010)). "Courts 'regularly dismiss any freestanding claim for breach of the covenant of fair dealing where the claims derive from the same set of facts' as a breach of contract claim." Commerzbank AG, 277 F. Supp. 3d at 498 (quoting Ret. Bd. of Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon ("Policeman's Annuity"), 11 Civ. 5459 (WHP), 2014 WL 3858469, at *3 (S.D.N.Y. July 30, 2014); citing Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002)).

By contrast, "a claim for breach of the implied covenant of good faith and fair dealing is not duplicative when the claim 'depends on facts in addition to those that might support a breach of contract claim.'"  Advanced Oxygen Therapy Inc. v. Orthoserve Inc., 572 F. Supp. 3d 26, 35 (S.D.N.Y. 2021) (quoting Fantozzi v. Axsys Techs., Inc., No. 07 Civ. 2667 (LMM), 2007 WL 2454109, at *3 (S.D.N.Y. Aug. 20, 2007)).  "The duty of good faith and fair dealing, however, 'cannot be used to create independent obligations beyond those agreed upon and stated in the express language of the contract[].'"  JPMorgan Chase Bank, N.A. v. IDW Grp., LLC, No. 08 Civ. 9116 (PGG), 2009 WL 321222, at *5 (S.D.N.Y. Feb. 9, 2009) (quoting Granite Partners, L.P. v. Bear, Stearns & Co. Inc., 17 F. Supp. 2d 275, 306 (S.D.N.Y. 1998)).  Moreover, "a plaintiff adequately states an implied covenant claim by alleging conduct that subverts the contract's purpose without violating its express terms."  Id.

### 3.   Analysis

SunTrust argues that Section 9.2 of the Credit Agreement limits SunTrust's duties to "'those expressly set forth in th[e Credit] Agreement and the other Loan Documents.'"  (First Def. MTD Br. (Dkt. No. 36) at 20 (quoting Credit Agmt. (Dkt. No. 45-1) § 9.2); see also Second Def. MTD Br. (Dkt. No. 52) at 22-24)  SunTrust contends that – in agreeing to this provision – Plaintiffs expressly waived any implied-covenant claim.  (First Def. MTD Br. (Dkt. No. 36) at 19-23; Second Def. MTD Br. (Dkt. No. 52) at 22-24)

Plaintiffs respond that they did not expressly and unambiguously waive the implied covenant of good faith and fair dealing.  (First Pltf. MTD Opp. Br. (Dkt. No. 39) at 22-25; Second Pltf. MTD Opp. Br. (Dkt. No. 54) at 25-27)

Section 9.2 of the Credit Agreement provides that SunTrust "shall not have any duties or obligations except those expressly set forth in th[e Credit] Agreement [or] the other

Loan Documents."  (Credit Agmt. (Dkt. No. 45-1) § 9.2)  Section 9.2(a) further provides that

"the Administrative Agent shall not be subject to any fiduciary or other implied duties."  (Id. §

9.2(a))  This Court concludes that – in these provisions – Plaintiffs "expressly disclaim[]" any

implied covenant of good faith and fair dealing and thereby expressly waived any implied

covenant claim.  See Phoenix Light SF Ltd., 2016 WL 1169515, at *10.  Accordingly, Plaintiffs'

implied covenant claims will be dismissed.

        Plaintiffs' implied covenant claims must likewise be dismissed because they are

duplicative of Plaintiffs' breach of contract claims.

        In an effort to avoid this result, Plaintiffs argue that "SunTrust subverted the

Credit Agreement" and thus breached the implied covenant of good faith and fair dealing by not

enforcing the Guaranty against Virgo.  (First Pltf. MTD Opp. Br. (Dkt. No. 39) at 25)  According

to Plaintiffs – prior to Plaintiffs' demand letter – SunTrust had no express contractual duty to sue

Virgo for breach of the Guaranty, but its failure to do so deprived Plaintiffs of the benefit of their

bargain in entering into the Credit Agreement.  (Id. at 26)  Prior to Plaintiffs' written demand,

however, SunTrust had complete discretion to determine what remedies should be exercised in

the event of a default.  (See Credit Agmt. (Dkt. No. 45-1) § 8.1)  Because the implied covenant

of good faith and fair dealing "'cannot be used to create independent obligations beyond those

agreed upon and stated in the express language of the contract,'" JPMorgan Chase Bank, N.A.,

2009 WL 321222, at *5 (quoting Granite Partners, L.P., 17 F. Supp. 2d at 306), SunTrust did not

subvert the Credit Agreement by failing to sue Virgo for breach of the Guaranty prior to

Plaintiffs' written demand.  Accordingly, Plaintiffs' argument is unavailing.

        Plaintiffs further argue that SunTrust breached the implied covenant by insisting

on a full release of all claims before it would agree to sue Virgo.  (First Pltf. MTD Opp. Br. (Dkt.

No. 39) at 26)  Plaintiffs' implied covenant claim, however, "'derive[s] from the same set of facts' as [their] breach of contract claim."  Commerzbank AG, 277 F. Supp. 3d at 498 (quoting Policemen's Annuity, 2014 WL 3858469, at *3).  Plaintiffs allege that SunTrust breached the Credit Agreement by "insisting on a full general release by [Plaintiffs] as a condition to performing its duties under the contract" (Am. Cmplt. (Dkt. No. 45) ¶ 107), and that SunTrust breached the implied covenant of good faith and fair dealing "by requiring that [Plaintiffs] agree to a release of all known and unknown claims before SunTrust would agree to take action to enforce the Guaranty."  (Id. ¶ 112).  In sum, Plaintiffs' implied covenant claims are entirely duplicative of their breach of contract claims.

SunTrust's motion to dismiss Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing (Second and Fifth Claims for Relief) will be granted.

### D.   Whether the Amended Complaint States a Claim For Damages

Section 9.2 of the Credit Agreement states that "[t]he Administrative Agent shall not be liable for any action taken or not taken by it . . . in the absence of its own gross negligence or willful misconduct."  (Credit Agmt. (Dkt. No. 45-1) § 9.2)

SunTrust contends that Plaintiffs' breach of contract claims must be dismissed, because (1) the Amended Complaint does not adequately allege that SunTrust acted with gross negligence or willful misconduct; and (2) Plaintiffs' breach claims are not ripe.  (First Def. MTD Br. (Dkt. No. 36) at 23-26; Second Def. MTD Br. (Dkt. No. 52) at 24-26)

Plaintiffs counter that the Credit Agreement's exculpatory clause is ambiguous, that Plaintiffs have adequately alleged that SunTrust acted with gross negligence or willful misconduct, and that Plaintiffs' breach claims are ripe.  (First Pltf. MTD Opp. Br. (Dkt. No. 39) at 26-30; Second Pltf. MTD Opp. Br.  (Dkt. No. 54) at 28-30)

35

1.      **Applicable Law**

"Contractual provisions that 'clearly, directly and absolutely' limit liability for 'any act or omission' are enforceable, 'especially when entered into at arm's length by sophisticated contracting parties.'"  Baidu, Inc. v. Register.com, Inc., 760 F. Supp. 2d 312, 317 (S.D.N.Y. 2010) (quoting Kalisch-Jarcho, Inc. v. City of New York, 58 N.Y. 2d 377, 384 (1983)).  "'The common business practice of limiting liability by restricting or barring recovery by means of an exculpatory provision, although disfavored by the law and closely scrutinized by the courts, is accorded judicial recognition where it does not offend public policy.'"  MBIA Ins. Corp. v. Patriarch Partners VIII, LLC, 842 F. Supp. 2d 682, 707 (S.D.N.Y. 2012) (quoting Banc of Am. Sec. LLC v. Solow Bldg. Co. II, L.L.C., 47 A.D. 3d 239, 244 (1st Dep't 2007)).  Pursuant to public policy, "New York courts will decline to enforce a contractual limitation or waiver of liability clause when there is willful or grossly negligent or recklessly indifferent conduct."  Baidu, Inc., 760 F. Supp. 2d at 318 (citing Kalisch-Jarcho, Inc., 58 N.Y. 2d at 384-85).

> Even given restrictions on enforcing an exculpatory clause[,] New York [c]ourts set the bar quite high in placing misconduct within the exceptions, "demanding nothing short of . . . a compelling demonstration of egregious intentional misbehavior evincing extreme culpability:  malice, recklessness, deliberate or callous indifference to the rights of others, or an extensive pattern of wanton acts."

Deutsche Lufthansa AG v. Boeing Co., No. 06 Civ. 7667 (LBS), 2007 WL 403301, at *3 (S.D.N.Y. Feb. 2, 2007) (omission in original) (quoting Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y., 273 F. Supp. 2d 436, 454 (S.D.N.Y. 2003)).  "When the setting is, as here, a contract between two sophisticated parties 'the conduct must evince a reckless disregard for the rights of others, or be of a kind that smacks of intentional wrongdoing.'"  Id. (quoting Indus. Risk Insurers v. Port Authority of N.Y. and N.J., 387 F. Supp. 2d 299, 305 (S.D.N.Y. 2005)).

"'Intentional' . . . is not the legal equivalent of 'willful[,]'" and a plaintiff must establish "more than an intentional abandonment of the agreement by defendant." Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc., 192 A.D. 2d 83, 90 (1st Dep't 1993), aff'd, 84 N.Y. 2d 430 (1994). Moreover, "[a] party acting in their own economic self-interest is not enough to constitute gross negligence or willful misconduct." Morgan Stanley & Co. Inc. v. Peak Ridge Master SPC Ltd., 930 F. Supp. 2d 532, 545 (S.D.N.Y. 2013) (citing Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc., 84 N.Y.2d 430, 439 (1994); DynCorp v. GTE Corp., 215 F. Supp. 2d 308, 318 (S.D.N.Y. 2002)).

"A breach of contract case[] . . . is ripe immediately upon the breach, even where damages remain uncertain." Argonaut P'ship, L.P. v. Bankers Tr. Co., No. 96 Civ. 1970 (MBM), 1997 WL 45521, at *5 (S.D.N.Y. Feb. 4, 1997); see also UBS AG v. Cournot Fin. Prods., LLC, No. 10 Civ. 0494 (GBD), 2010 WL 3001884, at *1 (S.D.N.Y. July 26, 2010). "New York law provides that '[s]ince nominal damages are always available in breach of contract actions, all of the elements necessary to maintain a lawsuit and obtain relief in court [are] present at the time of the alleged breach.'" Argonaut P'ship, L.P., 1997 WL 45521, at *5 (alterations in original) (quoting Ely-Cruikshank Co., Inc. v. Bank of Montreal, 81 N.Y. 2d 399, 402 (1993)).

## 2.   Analysis

The Amended Complaint asserts that SunTrust engaged in an "extensive pattern of deliberate and malicious actions designed to damage Plaintiffs and deprive them of their contractual rights," including (1) "refusing to pursue any remedy against Virgo unless Plaintiffs provided SunTrust with a release of unknown claims"; (2) "refusing in bad faith to share the results of the Hemming Morse investigation, thus undermining Plaintiffs' ability to protect their

contractual rights against SunTrust"; (3) "misappropriating funds from the Alchemy

[b]ankruptcy in complete disregard of the rights of the other Lenders"; and (4) "refusing to

reimburse Plaintiffs for their expenses as required by Section 8.2 of the Credit Agreement."

(Am. Cmplt. (Dkt. No. 45) ¶ 101)  The Amended Complaint further alleges that Plaintiffs

repeatedly transmitted written requests to SunTrust to meet its obligations under the Credit

Agreement and Loan Documents, and repeatedly spoke with SunTrust about SunTrust's

violation of Plaintiffs' contractual rights (id. ¶¶ 10, 84, 86-89, 91-92, 94, 98), but SunTrust either

did not respond to Plaintiffs' communications or refused to take the requested action.  (Id. ¶¶ 11-

12, 14, 89-90, 92, 94, 98)

>    Accepting as true all facts alleged in the Amended Complaint, this Court finds

that Plaintiffs have adequately alleged that SunTrust displayed a "'deliberate . . . indifference to

the rights of [Plaintiffs]'" by refusing to perform its duties and responsibilities under the Credit

Agreement unless Plaintiffs provided SunTrust with a general release of all claims.  See

Deutsche Lufthansa AG, 2007 WL 403301, at *3 (quoting Net2Globe Int'l, Inc., 273 F. Supp. 2d

at 454).  SunTrust's alleged refusal to perform its duties and responsibilities under the Credit

Agreement and the Loan Documents absent Plaintiffs providing SunTrust with a general release

"'smacks of intentional wrongdoing.'"  Id. (quoting Indus. Risk Insurers, 387 F. Supp. 2d at

305).  By alleging that SunTrust insisted on obtaining a general release before performing its

contractual obligations (Am. Cmplt. (Dkt. No. 45) ¶¶ 11, 86, 90, 92), Plaintiffs have shown more

than SunTrust's "intentional abandonment" of their contractual obligations.  Metro. Life Ins. Co.,

192 A.D. 2d at 90.  Accordingly, this Court finds that the Amended Complaint sufficiently

alleges SunTrust's gross negligence and willful misconduct.

SunTrust also argues that Plaintiffs' claim for damages is not ripe, because Plaintiffs might recover the entire outstanding loan balances through actions that SunTrust has already taken.  (First Def. MTD Br. (Dkt. No. 36) at 25-26)  SunTrust also notes that the statute of limitations for bringing additional claims had not expired.  (Id. at 25)

Plaintiffs respond that their breach of contract claims became ripe as soon as SunTrust breached the Credit Agreement and the Loan Documents by refusing to comply with their demand that SunTrust sue Virgo for breach.  (First Pltf. MTD Opp. Br. (Dkt. No. 39) at 30)

On December 13, 2019, Plaintiffs formally demanded that SunTrust file a claim against Virgo, and proposed that Emigrant manage and fund the lawsuit against Virgo, with SunTrust having no liability for litigation costs.  (Am. Cmplt. (Dkt. No. 45) ¶¶ 10, 87-88) Plaintiffs allege that SunTrust rejected Plaintiffs' demand to file suit as well as Plaintiffs' proposal that Emigrant manage and pay for the lawsuit against Virgo, stating that SunTrust would only cooperate in a litigation against Virgo if Plaintiffs provided SunTrust with "a full and final general release of all known and unknown claims."  (Id. ¶¶ 11, 90)  SunTrust's refusal to sue Virgo constitutes the alleged breaches of the Credit Agreement and Term Loan Joinder Agreement, and Plaintiffs' breach of contract claims became "ripe immediately upon the breach[es]."  Argonaut P'ship, L.P., 1997 WL 45521, at *5.

Accordingly, to the extent that SunTrust's motion to dismiss is premised on the argument that Plaintiffs' breach claims are (1) barred by the Credit Agreement's exculpatory clause; and (2) not ripe, its motion to dismiss will be denied.

E. **Leave to Amend**

"When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."  Hayden, 180 F.3d at 53 (citing Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990)).  "Leave to amend should be freely granted, but the district court has the

discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." Jin v. Metro. Life Ins. Co., 310 F.3d 84, 101 (2d Cir. 2002) (citing Foman v. Davis, 371 U.S. 178, 182 (1962); Koehler v. Bank of Berm. (N.Y.) Ltd., 209 F.3d 130, 138 (2d Cir. 2000)).

Here, Plaintiffs have requested leave to amend in the event that this Court grants SunTrust's motions to dismiss in full or in part.  (First Pltf. MTD Opp. Br. (Dkt. No. 39) at 30; Second Pltf. MTD Opp. Br. (Dkt. No. 54) at 30)

This Court has granted SunTrust's motion to dismiss only as to Plaintiffs' implied covenant of good faith and fair dealing claims, however, and the implied covenant claims are barred both by explicit language in the Credit Agreement and by well-established case law holding that implied covenant claims that are duplicative of breach of contract claims cannot survive a motion to dismiss.  There is no reason to believe that any amendment could cure the defects in Plaintiffs' implied covenant claims.  Accordingly, leave to amend is denied.

## CONCLUSION

For the reasons stated above, SunTrust's motions to dismiss are granted as to Plaintiffs' implied covenant of good faith and fair dealing claims, and otherwise denied.

Plaintiffs' request for a pre-motion conference concerning a partial lift of the discovery stay while the motions to dismiss are pending (Dkt. No. 60) is denied as moot.  A Rule 16 conference in this matter is scheduled for **April 13, 2023, at 11:15 a.m.**  By **April 6, 2023**, the parties will file a joint letter and proposed case management plan, in accordance with this

Court's Individual Rules of Practice in Civil Cases.  The Clerk of Court is directed to terminate

the motions (Dkt. Nos. 35, 51, and 60).

Dated:  New York, New York
        March 27, 2023

SO ORDERED.

Paul G. Gardephe
United States District Judge