**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

June 14, 2023

WRITER'S DIRECT DIAL NO.
(212) 849-7471

WRITER'S EMAIL ADDRESS
coreyworcester@quinnemanuel.com

<u>VIA ECF</u>

Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 2204
New York, NY 10007

Re:   <u>Emigrant Bank and Pacific Mercantile Bank v. SunTrust Bank, et al.</u>, No. 1:20-cv-02391

Dear Judge Gardephe:

We represent Plaintiffs Emigrant Bank ("Emigrant") and Pacific Mercantile Bank ("PMB" and, together with Emigrant, "Plaintiffs"), and write in response to the June 11, 2023 letter filed by non-parties Virgo Investment Group LLC, Virgo Societas Partnership III (Onshore), L.P., and Virgo Societas Partnership III (Offshore), L.P. (collectively "Virgo") requesting a pre-motion conference relating to a proposed motion to intervene and for a protective order in connection with the subpoena served by Plaintiffs on non-party Nu Image, Inc. ("Nu Image"). ECF No. 80 (the "Virgo Letter").

Virgo's motion should be denied for three reasons. *First*, the documents at issue are plainly relevant to Plaintiffs' claims in this litigation. They include business records relating to the same events and transactions that are at issue in this case, as well as sworn testimony from key witnesses involved in these transactions. Plaintiffs will be highly prejudiced if they are denied this discovery.

*Second*, Virgo does not, and cannot, show that *any* of the requested materials are so confidential that they should be shielded from disclosure. Plaintiffs seek documents from a six-year-old arbitration, concerning a nine-year-old transaction, involving a company that has been in bankruptcy for seven years. The protective order from the arbitration relied on by Virgo is not binding on Plaintiffs or this Court, and it specifically contemplates the production of documents in response to a subpoena. Moreover, even if any documents do contain confidential information, the Protective Order in this case protects any purported confidentiality interest. Virgo's real interest is to prevent Plaintiffs from proving that it is the alter ego of another company, not to protect the confidentiality of old documents.

*Third*, Plaintiffs will be prejudiced if the production of these documents is delayed pending the contemplated motion, as the end of fact discovery is just two months away. The Court should deny Virgo's request and permit Nu Image to comply with the subpoena promptly.

I.   **Background**

In 2014, Virgo purchased a DVD distribution company, Our Alchemy, LLC ("Alchemy"), from Nu Image using a shell company, Calrissian, L.P. ("Calrissian"), as the purchaser. Calrissian guaranteed loans made by Plaintiffs and other lenders (collectively, the "Lenders") to Alchemy to finance the transaction. In Virgo's due diligence for the transaction, it learned about problems with Alchemy's finances, including a poor quality of earnings that did not appear on Alchemy's books, but later withheld this information from the Lenders. Calrissian, which was completely owned and controlled by Virgo, acted as Virgo's alter ego and agent in order to purchase Alchemy, guarantee the loans through a Guaranty Agreement, and shield Virgo from any potential liability.

After Calrissian completed the purchase, and with Alchemy struggling with liquidity issues, Virgo siphoned funds from Alchemy, causing its insolvency, while concealing Alchemy's financial problems from the Lenders. Within a year, Alchemy declared bankruptcy. Then, when SunTrust sought to collect on Calrissian's Guaranty Agreement, Calrissian declared bankruptcy.

In February 2016, Nu Image commenced an arbitration against Calrissian and Virgo, alleging that Calrissian had failed to make post-closing payments under the Alchemy purchase agreement (the "Nu Image Arbitration"). Virgo and Calrissian brought counterclaims, alleging that Nu Image had misrepresented Alchemy's finances. The arbitration took place in 2016 and included exhibits and testimony from Virgo concerning the Alchemy purchase in 2014 and Alchemy's financial performance in 2014 and 2015. The arbitrator ruled in Nu Image's favor, finding, among other things, that Virgo knew about Alchemy's poor finances. The claims in the Nu Image Arbitration were resolved by Nu Image and Virgo in a settlement agreement in 2018, a draft of which Virgo's counsel shared with the Lenders.

In 2019, Plaintiffs—as majority stake Lenders in the syndicated loans to Alchemy—invoked their rights under the Credit Agreement to demand that SunTrust, as administrative agent for the Lenders, bring suit against Virgo as Calrissian's alter ego or principal. SunTrust refused. Plaintiffs then brought this action against SunTrust for breach of contract. Discovery commenced in April 2023, and the Court ordered that discovery be completed by August 14, 2023. As part of this discovery, Plaintiffs issued document subpoenas to Virgo, Calrissian, and Nu Image concerning the alter ego and agency issues. Virgo has failed to provide any documents, and its counsel has represented that Calrissian is defunct. Nu Image has agreed to produce documents concerning the Nu Image Arbitration, but Virgo seeks to prevent that production.

II.   **Legal Standard**

Rule 26 permits a court, for good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The burden of persuasion in a motion to quash a subpoena and for a protective order is borne by the movant." *McCutcheon v. Colgate-Palmolive Co.*, 2018 WL 5818255, at *2 (S.D.N.Y. Aug. 3, 2018). "Ordinarily, good cause exists when a party shows that disclosure will result in a clearly defined, specific and serious injury." *Rocky Aspen Management 204 LLC v. Hanford Holdings LLC*, 394 F. Supp. 3d 461, 465 (S.D.N.Y. 2019) (citation and quotation marks omitted).

Virgo does not address this standard, nor does it meet its burden. As explained above, the subpoena seeks documents relevant to Plaintiffs' allegations that Virgo was an alter ego or

principal of Calrissian, and used its alter ego relationship to defraud the Lenders and for other wrongful purposes. Virgo has not even attempted to show that (i) any responsive document is confidential; (ii) it is not protected by the Protective Order in this case; or (iii) it would suffer a "specific and serious," or any, injury.

### III. The Subpoena Seeks Highly Relevant Documents

Rule 45 allows a party to issue a subpoena to a nonparty seeking documents in its possession, custody, or control. Fed. R. Civ. P. 45. The scope of such discovery is the same as the scope under Rule 26, where the standard for discoverability is relevance. *Kenyon v. Simon & Schuster, Inc.*, 2016 WL 5930265, at *5 (S.D.N.Y. Oct. 11, 2016). Under Rule 26, "[r]elevance is . . . to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Hoxhaj v. Michael Cetta, Inc.*, 2022 WL 1664963, at *1 (S.D.N.Y. May 25, 2022) (citation and quotations omitted). The documents sought from Nu Image fall within this category.

Virgo argues that the documents "do not relate to the causes of action" here (Virgo Letter at 5), but Virgo is plainly wrong. For example, a central issue in this lawsuit is whether Virgo is the alter ego of Calrissian. Factors in determining whether an alter ego relationship existed include whether Virgo exercised control over Calrissian and whether Virgo used its control to commit a fraud or other wrong. *See In re Adler, Coleman Clearing Corp.*, 469 F. Supp. 2d 112, 117 (S.D.N.Y. 2007). The documents at issue are therefore highly relevant to this dispute, as they involve Virgo's control over Calrissian in the purchase of Alchemy, Calrissian's inadequate capitalization, and Virgo's knowledge of Alchemy's finances. The Nu Image Arbitration involves the same transactions, witnesses, documents, and issues as this litigation, including who managed the transaction, what Virgo knew about Alchemy's finances, what Virgo disclosed to the Lenders, and how Virgo used its control over Calrissian to purchase Alchemy and shield itself from liability.

Plaintiffs seek this discovery to demonstrate that Virgo controlled Calrissian, knew Alchemy's finances were misstated, and misled the Lenders regarding both Alchemy's and Calrissian's finances. Unquestionably, these materials are relevant and should be produced.

Among other documents, the transcripts from the arbitration are critical to Plaintiffs' case. Because many of the witnesses will be the same, Plaintiffs need transcripts of prior testimony for a multitude of reasons, including impeachment and to refresh recollections. For instance, Plaintiffs need the prior testimony of Mark Perez, Virgo's founding partner, regarding his management and control of Calrissian and his instructions to accounting firm Baker Tilly to change its report regarding Alchemy's financials to make the company appear more financially stable. ECF No. 45 ¶ 28. Now, nearly nine years after the transaction and six years after the arbitration, the memory of Mr. Perez—and other witnesses—may have materially faded. There is simply no substitute for this prior testimony. The transcripts also may lead to the discovery of other relevant evidence. If Virgo's motion is granted, Plaintiffs will be unfairly prejudiced by their inability to use these relevant materials in this litigation.

### IV. Virgo Fails To Establish That The Materials Must Be Protected From Disclosure

Virgo objects to four categories of documents from the arbitration: (i) documents produced by Virgo; (ii) transcripts of depositions, hearings, or other proceedings; (iii) exhibits and expert

reports; and (iv) orders, rulings, and the award. But aside from referencing the protective order in the arbitration agreement (which is binding on neither Plaintiffs nor this Court), Virgo does not even argue, let alone establish, that any of these documents are confidential such that they should not be produced subject to the Protective Order in this action (ECF No. 75).

It is telling that Virgo fails to identify a *single* category of documents that would reveal sensitive business information, trade secrets, or any other information that could be protected from discovery. In fact, the documents concern a transaction nine years ago involving a company in bankruptcy (Alchemy) and a company that is defunct (Calrissian).

Virgo argues that a party seeking disclosure of confidential mediation communications "must show (1) a special need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that the need for the evidence outweighs the interest in maintaining confidentiality." Virgo Letter at 5, citing *Accent Delight Int'l Ltd. v. Sotheby's*, 505 F. Supp. 3d 281, 284 (S.D.N.Y. 2020) (quoting *In re Teligent, Inc.*, 640 F.3d 53, 57 (2d Cir. 2011)). But these cases are inapposite. *In re Teligent* and *Accent Delight* concerned confidential **mediation communications**. Here, Plaintiffs are not seeking mediation communications.

Further, the three-part test in *Teligent* does not apply in the absence of a court-ordered protective order or to non-settlement documents such as are at issue here. *See Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*, 394 F. Supp. 3d 461, 464-65 (S.D.N.Y. 2019) ("the heightened test articulated in *In re Teligent* applies to situations in which there has been a prior court promise of confidentiality — not to discussions between parties without court involvement and not to a settlement agreement with a private promise to maintain its confidentiality").[1]

Even to the extent there is a public policy supporting the confidentiality of arbitrations, that does not establish an "arbitration privilege" shielding all documents in an arbitration from disclosure in litigation. *See In re Brizinova*, 565 B.R. 488, 498 (Bankr. E.D.N.Y. 2017) ("[I]nformation that must be produced in response to an appropriate discovery request does not become exempt from disclosure simply because it may have also been disclosed in a mediation."); *Tribune Co. v. Purcigliotti*, 1996 WL 337277, at *3 (S.D.N.Y. June 19, 1996) ("[T]he mere fact that the settling parties agreed to maintain the confidentiality of their agreement cannot serve to shield it from discovery."); *Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 665 (7th Cir. 2009) ("Contracts bind only the parties. No one can 'agree' with someone else that a stranger's resort to discovery under the Federal Rules of Civil Procedure will be cut off.").

Virgo's reliance on *dicta* from *Pasternak v. Dow Kim*, 2013 WL 1729564 (S.D.N.Y. April 22, 2013) is also misplaced. This decision does not apply here where the protective order in the arbitration specifically contemplates that arbitration materials may be sought through a subpoena. *See* ECF No. 80-2 § IV(D); *see also Gotham Holdings*, 580 F.3d at 665 (affirming motion to compel discovery of arbitration materials in part because the arbitration protective order provided

---

[1] Even if the test in *In re Teligent* applied here, disclosure would be justified because all three factors are satisfied. *See, e.g.*, *In re Outlaw Lab., LP Litig.*, 2020 WL 2838680, at *4 (S.D. Cal. June 14, 2020) (compelling discovery because unfairness would result where denying discovery "would deny [plaintiffs] evidence to support their claims").

for disclosures in response to a subpoena). Moreover, the court in *Pasternak* determined that the subpoena at issue was untimely, so the court's ruling regarding confidentiality was entirely *dicta*.

Virgo also makes the irrelevant argument that Nu Image should have returned or destroyed the arbitration materials pursuant to the protective order in the arbitration, but this argument is a red herring. *First,* the argument is flatly contradicted by *Gotham Holdings*, where the Seventh Circuit enforced a subpoena seeking arbitration materials that were inadvertently retained rather than destroyed. *See generally Gotham Holdings*, 580 F.3d 664; *see also Gotham Holdings, LP v. Health Grades, Inc.*, 2009 WL 2251060 at 5-6 (7th Cir. July 14, 2009) (Appellant's Brief). *Second*, the protective order in the Nu Image Arbitration is not binding on Plaintiffs or this Court. *Third*, the protective order permits Nu Image to retain a copy of discovery responses, transcripts, and exhibits. ECF No. 80-2 § IV(F). *Fourth*, the protective order provides that Virgo's remedy if Nu Image fails to comply with its terms is to seek relief from the arbitrator, relief that Virgo has not pursued. *Id.* § IV(K). Indeed, if Nu Image's failure to return or certify the destruction of documents was a violation of the order, Virgo knew about it when the dispute concluded, and Virgo waived its rights by failing to take any such action for five years.

Finally, even if any of the documents responsive to the subpoena were confidential, any such confidentiality will be maintained by the Protective Order in this action, which provides adequate protections against improper use or disclosure. The Protective Order provides for appropriate confidentiality designations and states that Plaintiffs may use documents designated as confidential "solely for the prosecution and defense of this action and any appeals thereto, and not for any business, commercial, or competitive purpose or in any other litigation proceeding." ECF No. 75 ¶ 14. This is sufficient to protect Virgo's interests. *See In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 522 (S.D.N.Y. 2016) ("As Vale's confidentiality issues can be addressed by a protective order, the Court is persuaded that such concerns are not severe enough to warrant quashing the subpoena.").

**V.     Plaintiffs Will Be Prejudiced If Virgo Is Permitted To File Its Motion**

Virgo's request for a pre-motion conference or for permission to file a motion for a protective order should be denied. The fact discovery deadline in this action is quickly approaching in mid-August, and the parties need to proceed with document collection and review so that they may proceed with depositions. Virgo continues to stonewall Plaintiffs at every turn, and they should not be permitted additional time to do so while their proposed motion is briefed, argued, and decided. Plaintiffs respectfully submit that the issue should be decided on the letters submitted or at a conference, if it is convenient for the Court's schedule.

\*\*\*

Plaintiffs' need for the evidence sought outweighs any interest Virgo has in the confidentiality of an arbitration resolved years ago and related to entities (Alchemy and Calrissian) that are now bankrupt or defunct. None of the materials embody privileged settlement communications, and the Protective Order here fully protects any confidential information. Plaintiffs therefore oppose Virgo's anticipated motion for a protective order.

Respectfully submitted,

*/s/ Corey Worcester*
Corey Worcester