# ALLEN & OVERY

**BY ECF**

The Honorable Paul G. Gardephe
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007-1312

Allen & Overy LLP
1221 Avenue of the Americas
New York, NY  10020
Tel               212 610 6300
Fax              212 610 6399
Direct line    212 610 6384
Emanuel.Grillo@AllenOvery.com

July 18, 2023

*Re:  Emigrant Bank and Pacific Mercantile Bank v. SunTrust Bank et. al.,*
*No. 1:20-cv-02391 (PGG)*

Dear Judge Gardephe:

We write in our role as co-counsel with Daniels & Tredennick, PLLC, on behalf of non-party Virgo Investment Group LLC ("VIG"), in connection with the subpoena dated May 8, 2023 (the "Subpoena")[1] served on non-party Baker Tilly US LLP ("Baker Tilly") by plaintiffs Emigrant Bank ("Emigrant") and Pacific Mercantile Bank ("PMB" and when taken together with Emigrant, "Plaintiffs") in the above-referenced action. We write pursuant to Your Honor's Individual Rule IV.A to respectfully request a pre-motion conference regarding VIG's request for leave to file a motion to intervene and motion to quash or, in the alternative, for a protective order with respect to the Subpoena.[2] This request is distinct from, though inextricably related to, the request previously submitted by VIG, Virgo Societas Partnership III (Offshore), L.P. ("Offshore") and Virgo Societas Partnership III (Onshore) ("Onshore") (collectively, the "Virgo Parties") to the Court on June 11, 2023 [ECF 80], relating to a third-party subpoena to Nu Image, Inc.

Plaintiffs claim that the documents they seek from Baker Tilly "are relevant to the strength of the underlying alter ego claim against Virgo"—specifically, whether Calrissian L.P. ("Calrissian") is the alter ego of the Virgo Parties (*see* First Am. Compl. ("FAC") ¶ 35 [ECF 45]).  But in reality, the discovery materials that Plaintiffs seek are wholly unrelated to the claims and defenses raised by the parties in this proceeding, including the alter ego theory. The reason is simply one of timing: in January 2014, VIG, as investment manager of Onshore and Offshore, hired Baker Tilly as a consultant to assist VIG in analyzing the financial performance of Our Alchemy, LLC f/k/a Millennium Entertainment, LLC ("Alchemy") to determine whether to invest in Alchemy.  In August 2014, nearly ***seven months after VIG engaged***

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning(s) ascribed to them in the Subpoena. A copy of the Subpoena is attached hereto as **Exhibit 1**. Filings made to this action's docket are referenced as "ECF."

[2] Andrea L. Kim of Daniels & Tredennick, PLLC attended a meet and confer teleconference with Plaintiffs and Baker Tilly on July 5, 2023, regarding the Subpoena. On July 7, 2023, Plaintiffs sent a letter to Baker Tilly providing its response to Baker Tilly's objections to the Subpoena, offering to further meet and confer on the issues. On July 17, 2023, Plaintiffs, Baker Tilly, and VIG held a further meet and confer teleconference, during which time VIG expressed its opposition to production by Baker Tilly of the report and other documents not relevant to this action. The parties have, therefore, reached an impasse.

Allen & Overy LLP is a limited liability partnership registered in England and Wales with registered number OC306763. It is authorized and regulated by the Solicitors Regulation Authority of England and Wales (SRA number 401323). Allen & Overy LLP is a multi-jurisdictional law firm with lawyers admitted to practice in a variety of jurisdictions. A list of the members of Allen & Overy LLP and their professional qualifications is open to inspection at its registered office, One Bishops Square, London, E1 6AD and at the above address. The term partner is used to refer to a member of Allen & Overy LLP or an employee or consultant with equivalent standing and qualifications.

Allen & Overy LLP or an affiliated undertaking has an office in each of: Abu Dhabi, Amsterdam, Antwerp, Bangkok, Beijing, Belfast, Boston, Bratislava, Brussels, Budapest, Casablanca, Dubai, Dublin, Düsseldorf, Frankfurt, Hamburg, Hanoi, Ho Chi Minh City, Hong Kong, Istanbul, Jakarta (associated office), Johannesburg, London, Los Angeles, Luxembourg, Madrid, Milan, Munich, New York, Paris, Perth, Prague, Rome, San Francisco, São Paulo, Seoul, Shanghai, Silicon Valley, Singapore, Sydney, Tokyo, Warsaw, Washington, D.C.

***Baker Tilly, Calrissian was formed*** by Onshore and Offshore to purchase a substantial portion of the membership interests in Alchemy (the "Alchemy Purchase"). The Subpoena seeks (a) the report that Baker Tilly prepared for VIG (which is dated June 13, 2014), including drafts thereof; (b) underlying materials related to Alchemy (irrespective of whether they were relied on by Baker Tilly in preparing the report); (c) the engagement letter between VIG and Baker Tilly; and (d) documents and communications related to (i) the engagement, (ii) the report, and (iii) Baker Tilly's work. Materials prepared months ***before*** Calrissian's formation cannot constitute evidence as to whether Calrissian was an alter ego of the Virgo Parties. Rather, the Subpoena is yet another attempt by Plaintiffs to abuse the discovery process in this action to seek documents for use in the dismissed New York Supreme Court action against VIG that Plaintiffs are currently attempting to appeal to the New York Court of Appeals. Such abuses should not be countenanced; and thus, VIG's request for intervention and leave to move to quash the Subpoena or, in the alternative, for the entry of a protective order should be granted.

## I.   Relevant Background.

**Baker Tilly Engagement.** In advance of the Alchemy Purchase, VIG engaged Baker Tilly as a consultant to perform due diligence and prepare a report for VIG's use alone in performing its own due diligence of Alchemy on behalf of the investment funds it advises. VIG was also contractually obligated not to disclose the report to any third party without Baker Tilly's written consent. VIG did not share the report with SunTrust Robinson Humphries (the Agent's sister entity and investment bank selling Alchemy) or PMB (Alchemy's incumbent lender in 2014).[3] As Baker Tilly's counsel has told Plaintiffs they would swear to in a formal declaration as needed, the documents relied on by Baker Tilly in creating the report came solely from a confidential data-room hosted by Alchemy for the sale process, to which, upon information and belief, the Agent also had access. Baker Tilly's report was dated June 13, 2014, two months before the Alchemy Purchase.

**Creation of Calrissian.** Calrissian was formed on August 4, 2014 as a holding company solely to own the membership interests in Alchemy. FAC ¶ 29-30.[4] On August 18, 2014, Calrissian, Offshore, and Onshore executed a Purchase Agreement with respect to the Alchemy Purchase. FAC ¶ 31. Thus, Baker Tilly's final work product was completed months before Calrissian was formed. As such, Baker Tilly's work could not relate to any act by Calrissian; nor is it relevant to the allegation that Calrissian was the alter ego of any Virgo Party. Yet, Emigrant's first loan to Alchemy took place in June 2015, a *year* after Baker Tilly's diligence report was completed solely for VIG. FAC ¶¶ 55-61.

**The Calrissian Alter Ego Claim.** On September 27, 2021, Plaintiffs filed the First Amended Complaint (the "<u>Complaint</u>") against SunTrust Bank and Truist Bank (collectively, the "<u>Agent</u>") in this action. The claims in the Complaint are premised on the Agent's failure to commence a claim on Plaintiffs' behalf against the Virgo Parties "under the Guaranty, on the grounds that Virgo is the principal and/or alter ego of Calrissian." Plaintiffs further allege the Agent was obligated to do so upon Plaintiffs' request. FAC ¶¶ 106, 118.[5]

---

[3] Plaintiffs allege—inaccurately—that VIG asked Baker Tilly to change its negative assessments of Alchemy's finances but such allegations are not relevant, and cannot make the report relevant, when neither the Agent nor Plaintiffs ever saw it.

[4] The Agent and PMB were aware that Calrissian was a holding company with no assets other than Calrissian's membership interests. *See* Revolving Credit and Term Loan Agreement, FAC, Ex. C at 20 (referring to Calrissian throughout as "HoldCo"); Emails dated August 29, 2014 between, among others, Mark Perez, Sutton Fannon of SunTrust and Alissa Miller of Akin Gump Straus Hauer & Feld LLP, attached hereto as **Exhibit 2** (discussing the Calrissian guaranty, with SunTrust's counsel acknowledging that Calrissian "is just a shell company.").

[5] Two of the claims in the FAC were dismissed. *See* Memorandum Opinion & Order [ECF 65]. The remaining claims allege that SunTrust improperly paid to itself proceeds received from the Alchemy's chapter 7 trustee (the "Alchemy Trustee") rather

## II.     The Baker Tilly Documents Are Irrelevant to the Present Action.

Rule 26(b)(1) provides that the scope of permissible discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ." Fed. R. Civ. P. 26(b)(1). However, discovery of information that is unrelated to claims and defenses is not permitted. *See, e.g., Collens v. City of New York*, 222 F.R.D. 249, 252-253 (S.D.N.Y. 2004) ("[C]ourts should not grant discovery requests based on pure speculation that amount to nothing more than a fishing expedition into actions or past wrongdoing not related to the alleged claims or defenses."). The documents sought from Baker Tilly in the Subpoena are not relevant for two primary reasons.

First, the documents requested in the Subpoena pre-date any conduct relevant to Plaintiffs' claims. The Baker Tilly engagement took place between January and June of 2014 and the work was completed before the creation of Calrissian, the Alchemy Purchase, or the loans made under the Credit Agreement. Accordingly, the Baker Tilly report and all related materials have no relevance to the claims in this case.

Second, and more significantly, the Subpoena calls for documents that would only yield information as to whether Alchemy—not Calrissian—was an alter ego of a Virgo Party. It seeks Alchemy-provided documents and a report on Alchemy from Baker Tilly. In determining whether to pierce the corporate veil under New York law, a plaintiff must establish that: "(1) the owner exercised such control that the corporation has become a mere instrumentality of the owner, who is the real actor; (2) the owner used this control to commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to the plaintiff." *Babitt v. Vebeliunas (In re Vebeliunas)*, 332 F.3d 85, 91-92 (2d Cir. 2003) (internal quotations omitted).

In this instance, based on Plaintiffs' own allegations, the relevant "corporation" at issue is Calrissian, not Alchemy.  Moreover, the "fraud or other wrong" involved would have to have been perpetrated through Calrissian as guarantor of the obligations under the Credit Agreement, not through the inducement of Plaintiffs to extend loans to Alchemy under the Credit Agreement. Alchemy's financial condition and what the Virgo Parties knew of it has no bearing on (i) whether the Virgo Parties exercised sufficient control over Calrissian to make it a mere instrumentality, (ii) whether the Virgo Parties used Calrissian to commit a fraud or wrongdoing through its guaranty, or (iii) whether such alleged wrongdoing resulted in unjust loss or injury—or whether such loss or injury was the result of another cause such as Plaintiffs' own deficient diligence into Calrissian's sole asset, that is, its interests in Alchemy.

The documents that Plaintiffs seek from Baker Tilly, all of which concern Alchemy and not Calrissian, will not provide any relevant information regarding the Calrissian-Virgo Parties relationship in accordance with the factors or the other considerations identified by the Second Circuit. Accordingly, the information sought from Baker Tilly in the subpoena is wholly irrelevant to Plaintiffs' claims and not discoverable under Rule 26.

Notably absent from the Complaint is any claim premised on SunTrust's refusal to bring a claim against the Virgo Parties as the alter ego of Alchemy under the Credit Agreement.[6]  Plaintiffs cannot plausibly

---

than remitting such proceeds to Plaintiffs. FAC ¶¶ 121-128, 135-141. As such payments would have occurred in 2021, any documents related to Baker Tilly's 2014 engagement cannot possibly be relevant to such claims.

[6] Plaintiffs have at various times characterized their claims against the Agent as being premised on the Virgo Parties being alter egos of Calrissian alone or both Alchemy and Calrissian, depending on which is advantageous at the time. *See, e.g.* FAC, Ex G at 2 ("Emigrant and PMB believe that [. . . ] (iii) Virgo is liable to the Lenders as Alchemy's and Calrissian's alter ego and/or principal.").

assert that SunTrust breached the Credit Agreement by failing to bring claims against the Virgo Parties as the alter egos of Alchemy because any claim based on the notion that any of the Virgo Parties are Alchemy's alter ego belongs to Alchemy's bankruptcy estate. *See Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 627 (D. Del. 2018) (holding a creditor lacked standing to bring claims that defendant was alter ego of bankrupt debtor because such claims are property of bankruptcy estate). The Bankruptcy Court barred such claims, holding that Plaintiffs "may not pursue causes of action or theories of recovery in the State Court Litigation against a party on the basis that that party was the alter ego of" Alchemy.[7] Indeed, such a claim is so lacking in merit that neither Alchemy's chapter 7 bankruptcy trustee nor Calrissian's chapter 7 bankruptcy trustee chose to pursue it despite their rights to bring such claims.

### III.   Plaintiffs' Ulterior Purpose Is to Use Discovery in this Matter Against the Virgo Parties.

As set forth more fully in the Virgo Parties' pre-motion conference letter filed on June 11, 2023 [ECF 80], the Virgo Parties have been or currently remain in litigation in multiple forums that concern Plaintiffs and nearly identical claims and allegations to those raised here. Given the lack of relevance of the documents requested in the Subpoena to this action, it is evident that the Plaintiffs intend to try to use such documents against the Virgo Parties in another forum.

Plaintiffs should not be able to pursue the materials through the Subpoena when their obvious intent in doing so is to use such materials to further one or more other litigations against the Virgo Parties. Courts routinely prohibit parties from engaging in such gamesmanship. *See, e.g., Nicholas v. Poughkeepsie Sav. Bank/FSB*, 1991 WL 113279, at *2 (S.D.N.Y. June 14, 1991) ("[A] court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery is properly denied.") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 n.17 (1978)).

### IV.   The Limited Request for Leave to Intervene Should Be Granted.

The Virgo Parties respectfully request to intervene here as a matter of right. To prevail on a motion to intervene as a matter of right under Rule 24(a), the applicant must: (i) file a timely application, (ii) show an interest in the action; (iii) demonstrate that the interest may be impaired by the disposition of the action; and (iv) show that the interest is not adequately protected by the parties to the action. *In re Hornbeam Corp.*, No. 14-MISC-424-PART1, 2015 WL 13647606, at *2 (S.D.N.Y. Sept. 17, 2015), *aff'd*, 722 F. App'x 7 (2d Cir. 2018), and *aff'd*, 722 F. App'x 7 (2d Cir. 2018). Each of the requirements to intervene as a matter of right are satisfied here.

*First*, the Virgo Parties filed the application timely because they submitted the filing shortly after reaching impasse with Plaintiffs regarding the Subpoena and the materials have not been produced.

*Second*, the Virgo Parties have an interest in objecting to the Subpoena. The Plaintiffs seek discovery of the Virgo Parties' documents indirectly through Baker Tilly for purposes of continuing Plaintiffs' quixotic, multi-forum litigation elsewhere against the Virgo Parties. Additionally, the documents sought from Baker Tilly implicate the Virgo Parties' proprietary and confidential investment strategy.

*Third*, the Virgo Parties' will be directly impacted by Plaintiffs obtaining unwarranted discovery to continue their vexatious litigation strategy. Additionally, disclosure of their confidential information would provide competitors and potential acquisition targets with information regarding how the Virgo Parties conduct diligence on, assess and negotiate potential investments, thereby risking placing the Virgo Parties at a competitive disadvantage.

---

[7] A copy of the Bankruptcy Court's order is attached hereto as **Exhibit 3**.

***Finally***, the existing parties, and the subpoenaed party, Baker Tilly, do not adequately represent the Virgo Parties' interests since those parties do not have an interest in putting an end to Plaintiffs' abuse of the discovery process and preserving the Virgo Parties' confidences.[8]

## V.       Request for Leave to Move to Quash or, in the Alternative, for Entry of a Protective Order, Should Also Be Granted.

The Virgo Parties respectfully request leave to move to quash the subpoena pursuant to Rule 45 or, in the alternative, for entry of a protective order pursuant to Rule 26, to prevent disclosure of confidential information held by Baker Tilly that is not relevant to this case. Rule 45 permits this Court, "[o]n timely motion … [to] quash or modify a subpoena that … requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" Fed. R. Civ. P. 45(d)(3)(A)(iii). Pursuant to Rule 26, a court may, for good cause, issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including by forbidding the disclosure or discovery. Fed. R. Civ. P. 26(c)(1).

Here, the materials sought are irrelevant to the claims and defenses in this matter and are, instead, intended to harass and oppress the Virgo Parties. Plaintiffs have suggested that the Baker Tilly information is relevant to what the Virgo Parties knew and/or failed to disclose about *Alchemy's* financial situation to the Agent and to Plaintiffs. However, they make no attempt to draw a link between that inquiry and their actual claims and defenses in respect of Calrissian.[9] Put simply, what the Virgo Parties may or may not have known about Alchemy **before Calrissian's formation** has no bearing on whether any of the Virgo Parties is Calrissian's alter ego or used Calrissian to perpetrate fraud or other wrongdoing.

There is no unfairness to Plaintiffs if they are not provided with such discovery for nearly the same reason: as set forth above, the documents sought are not relevant to any claim or defense asserted by Plaintiffs or Defendants in this action. Furthermore, the Virgo Parties—in responding to the subpoena directed at VIG—have provided Plaintiffs with requested documents relevant to Calrissian, along with additional documents previously produced to the Alchemy Trustee. Moreover, as Plaintiffs have been informed, the documents Baker Tilly relied upon for its work and analysis came from an Alchemy-hosted data-room to which Baker Tilly no longer has access. Plaintiffs should therefore seek such information from the Defendants, **who had access to the same data-room**, or the Alchemy Trustee, who would have access to the underlying records that would have been in the data-room.

For these reasons, the Court should grant the Virgo Parties the relief sought herein.

---

[8] Alternatively, the Virgo Parties should be permitted to intervene by virtue of the Court's broad discretion to allow intervention under Rule 24(b). *In re Hornbeam Corp.*, 2015 WL 13647606, at *2. A court considers the same factors as intervention as a matter of right, as well as whether the proposed intervention will unduly delay or prejudice the adjudication of the parties' rights. *Id*. Here, for the same reasons outlined above, intervention will not delay the proceedings or cause any prejudice as Plaintiffs are not entitled to discovery that is irrelevant to the any party's claims or defenses.

[9] Plaintiffs do not allege in the Complaint that the Agent should have brought claims on the premise that Alchemy was the Virgo Parties' alter ego or that the Virgo Parties used Alchemy to perpetuate wrongdoing against Plaintiffs. Pursuant to the Bar Order entered in the Alchemy bankruptcy case, they cannot. Rather, the relevant claims rely on the purported alter ego relationship between Calrissian and the Virgo Parties and the resulting liability of the Virgo Parties on Calrissian's Guaranty.

        Respectfully submitted,

        ALLEN & OVERY LLP

        By: /s/ *Emanuel C. Grillo*
        Emanuel C. Grillo
        1221 Avenue of the Americas
        New York, New York 10020
        Tel: 212-610-6300
        Emanuel.Grillo@allenovery.com

        *Attorneys for non-party Virgo Investment Group LLC*