# KING & SPALDING

David Tetrick
King & Spalding LLP
1180 Peachtree Street N.E. Ste. 1600
Atlanta, GA 30309-3521
Direct Dial: +1 404 572 3526
Direct Fax: +1 404 572 5100
dtetrick@kslaw.com

May 26, 2023

**VIA ECF**

**MEMO ENDORSED:**
Defendants will file any amended answer by **July 24, 2023**. The Clerk of Court is directed to terminate the motions at Dkt. Nos. 77 and 78.

SO ORDERED.

*[signature]*

Paul G. Gardephe
United States District Judge

Dated: July 19, 2023

Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 2204
New York, NY 10007

Re: *Emigrant Bank and Pacific Mercantile [...]* -02391

Dear Judge Gardephe:

We represent Defendants SunTrust Bank and Truist Bank ("Truist") and write pursuant to Rule IV(A) of Your Honor's Individual Rules in response to Plaintiffs' request for a pre-motion conference regarding a proposed motion to dismiss Truist's counterclaims and strike certain affirmative defenses (ECF 77, the "Letter"). We also respectfully request a pre-motion conference regarding a proposed motion for leave to amend Truist's Answer Affirmative Defenses, and Counterclaims (ECF 72).

*First*, Truist's counterclaims are not, as Plaintiffs assert, narrowly cabined to seek only declarations that Truist is not liable for the breaches of contract that Plaintiffs allege. Truist's counterclaims seek to finalize the controversy over what actions the Required Lenders can force Truist, as Administrative Agent, to take pursuant to the terms of the governing agreements. Plaintiffs' surviving claims will resolve whether they can force Truist to sue Virgo Investment Group, LLC and its affiliates based on Plaintiffs' December 2019 demand letter. But the dispute over whether Plaintiffs can force Truist to sue contractual non-parties will remain, and Truist's claims for declaratory judgment ensures that this litigation finally resolves that live and ripe dispute. Although this Court held that Truist was not entitled to dismissal of Plaintiffs' claims under Rule 12 (ECF 65), the facts developed in this litigation will establish that Truist is entitled to a declaratory judgment as to its rights and obligations under the contracts.

*Second*, contrary to Plaintiffs' contention, Truist has pleaded more than sufficient facts in support of its second, third, fourth, sixth, seventh, eighth, and tenth affirmative defenses. (Plaintiffs do not challenge Truist's first affirmative defense; Truist will withdraw its fifth, ninth, and eleventh affirmative defenses.) Plaintiffs focus myopically on the section of Truist's pleading titled "Affirmative Defenses," but the law demands that the Court assess a defendant's pleadings *as a whole*, and Truist's pleading contains ample factual support sufficient to meet the pleading standard for its second, third, fourth, sixth, seventh, eighth, and tenth affirmative defenses.

*Third*, to eliminate any doubt as to whether Plaintiffs can understand the basis for Truist's affirmative defenses, Truist seeks leave to file the attached proposed Amended Answer, Affirmative Defenses, and Counterclaims. Granting Truist leave to file the proposed amended pleading would moot Plaintiffs' proposed motion to strike without causing any prejudice.

### A. The Court Should Deny Any Motion to Dismiss Truist's Counterclaims

The Court has discretion to exercise jurisdiction over Truist's counterclaims and should exercise jurisdiction here. *See* 28 U.S.C. § 2201(a). In determining whether to hear a declaratory judgment claim, district courts ask, "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005). To constitute an "actual controversy," the disagreement between the parties "must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010) (citing *Jenkins v. United States,* 386 F.3d 415, 417–18 (2d Cir. 2004)).

Here, the Court should deny any motion to dismiss the counterclaims because a declaratory judgment in favor of Truist would finally resolve the parties' controversy. Moreover, such declaratory judgments would eliminate uncertainty on issues that go beyond those that must be necessarily decided to resolve Plaintiffs' breach of contract claims.

*First*, Truist's Counterclaims are not merely "mirror images" of Plaintiffs' breach of contract claims. Truist's claims for declaratory judgment enlarge the scope of this dispute to include the live controversy broader than Plaintiffs' breach of contract claims by seeking to clarify or settle the parties' rights under the Loan Documents. For example, in Counts I and II of Truist's Counterclaims, Truist seeks "a judgment declaring that [Truist] ha[s] no obligation" under the Credit Agreement (Count I) and under the Term Loan Joinder Agreement (Count II) "to sue Virgo Investment Group and/or its affiliates for breach of the Guaranty Agreement under an alter ego or principal-agent theory of liability." (ECF 72 ¶¶ 42, 47.) These counterclaims go further than what is—or may be—necessary to decide Plaintiffs' breach of contract claims. For instance, Plaintiffs made their demand that Truist sue Virgo as Calrissian's "alter ego" while Calrissian was a bankruptcy debtor. As the Bankruptcy Court has already held with respect to Our Alchemy, such alter ego claims belong to the Trustee, and any lawsuit by Truist at the time would have violated the automatic stay under the Bankruptcy Code. Accordingly, Plaintiffs' claims should fail for that reason alone. But, even if the Court holds that Plaintiffs' claims fail on those grounds, Truist would still be at risk of being sued if Plaintiffs sent a new demand for Truist to sue contractual non-parties on various grounds. *Cf. Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-CV-5075, 2020 WL 3472597, at *14 (S.D.N.Y. June 25, 2020) (counterclaims not redundant where, in the absence of a merits ruling, defendants "would remain vulnerable to liability on the same claims"). Truist is thus entitled to a declaration clarifying its rights because the relevant contracts do not require Truist to sue such contractual non-parties on Plaintiffs' demand.[1] And,

---

[1] In addition to the arguments Truist made in its motion to dismiss the Amended Complaint, the Credit Agreement does not require Truist to file such a suit because, among other things, (a)

without a declaratory judgment to that effect, the Required Lenders' and Truist's rights will remain in doubt even if the Court entered judgment in Truist's favor on narrower grounds. Accordingly, Plaintiffs' reliance on *Josie Maran Cosms., LLC v. Shefa Grp. LLC*, 2022 WL 3586746 (E.D.N.Y. Aug. 22, 2022), is misplaced. *Contra* ECF 77, at 2 (Plaintiff's Letter, quoting *Josie Moran* for the proposition that, where a lawsuit "will necessarily settle the issues for which the declaratory judgment is sought suggests that the declaratory judgment will serve no useful purpose").

*Second*, even if Plaintiffs voluntarily dismissed their claims, an actual controversy still exists as to the parties' rights, as Truist's efforts to recover amounts for the Lenders' benefit continue. Truist seeks judgment that Plaintiffs do not have the right to demand that Truist, in its capacity as Administrative Agent, sue Virgo or any other contractual non-party Plaintiffs identify as a target. *See Clark St. Wine & Spirits v. Emporos Sys. Corp.*, 754 F. Supp. 2d 474, 488 (E.D.N.Y. 2010) (a claim for declaratory judgment that any fines, penalties or other judgments against the plaintiff were the defendant's responsibility could proceed alongside a claim seeking the damages for past losses, because it covered future, as yet undiscovered, loss).

*Third*, and finally, Plaintiffs miss the mark in arguing that a declaratory judgment is only a remedy and not a cause of action. In *Chiste v. Hotels.com L.P.,* Judge McMahon ruled that "declaratory judgments . . . are remedies, not causes of action", *under New York's consumer protection statute*, G.B.L. Section 349. 756 F. Supp. 2d 382, 406–07 (S.D.N.Y. 2010) (dismissing a claim for declaratory judgment that defendants violated the New York Deceptive Trade Practices Act and for injunctive relief against further violations because plaintiffs had not pleaded a viable claim under that statute); *MarketShare Corp. v. Transactis, Inc.,* 2021 WL 1948283, at *6 (S.D.N.Y. May 12, 2021) (citing only to *Chiste* for this proposition); *Weinstein v. Trump*, 2017 WL 6544635, at *5 (S.D.N.Y. Dec. 21, 2017) (plaintiff failed to allege a legal cause of action whatsoever). The Counterclaims state a claim under New York law and nothing in any of Plaintiffs' cases abrogates the plain language in 28 U.S.C. § 2201 providing that this Court, "upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

B. **The Court Should Deny Any Motion to Strike Affirmative Defenses**

Courts disfavor motions to strike. *Rich v. New York*, No. 21-cv-3835, 2022 WL 4241380 (S.D.N.Y. Sept. 15, 2022). As the movant, Plaintiffs bear the burden of showing a compelling reason for this Court to strike Truist's second, third, fourth, sixth, seventh, eighth, and tenth defenses. *Id.* at * 2. In their Letter, Plaintiffs provide no compelling reason for the Court to strike Truist's defenses, especially affirmative defenses two, three, and ten, which Plaintiffs dismiss as "simply conclusions that Plaintiffs' claims are flawed." (ECF 77 at 4.) Plaintiffs' claims are flawed, but affirmative defenses asserting the denial of liability are *not* legally insufficient. In fact, the *Coach, Inc. v. Kmart Corp.* order that Plaintiffs cite (ECF 77 at 3) declined to strike Kmart's

---

Section 9.2 of the Credit Agreement provides that "the Administrative Agent shall not be required to take any action that, in its opinion or the opinion of its counsel, may expose the Administrative Agent to liability or that is contrary to any Loan Document or applicable law" (ECF 45-1 § 9.2), and (b) Section 7.4 of the Guaranty Agreement grants SunTrustTruist "sole discretion" to pursue certain remedies and provides that SunTrustTruist "shall be under no obligation to do so" (ECF 45-2 § 7.4).

affirmative defenses as mere "denials of liability." 756 F.Supp.2d 421, 431 (S.D.N.Y. 2010). As Judge McKenna found, "the inclusion of these defenses, although redundant, does not prejudice Plaintiffs" and does not make them legally insufficient. *Id*.

Truist's Answer, Affirmative Defenses, and Counterclaims (ECF 72) exceeds the standard for pleading affirmative defenses, at least with respect to Truist's second, third, fourth, sixth, seventh, eighth, and tenth defenses. *First,* the application of the *Twombly* plausibility standard to a pleading is "context-specific." *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 99 (2d Cir. 2019) (clarifying the standard for a motion to strike an affirmative defense). The "key aspect of the context relevant to the standard for pleading an affirmative defense is that an affirmative defense, rather than an affirmative claim for relief, is at issue," so the "degree of rigor appropriate for testing the pleading" is lessened. *Id.* at 98. Additionally, the context is "shaped by the nature of the affirmative defense." *Id.* A court may decline to strike a defense where "sufficient factual content" in the pleadings, taken as a whole, adequately supports the defense. *Town & Country,* 2020 WL 3472597, at *12. Here, the pleadings, taken as a whole—including Truist's 59-paragraph counterclaims—already contain alleged facts more than adequate to meet the plausibility standard for asserting Truist's affirmative defenses.

*Second*, an affirmative defense should be stricken only "if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims." *GEOMC Co.*, 918 F.3d at 98. To strike a defense, the court must be able to say that, as a matter of law, the defendants cannot avail themselves of the defense. *Dorce v. City of New York*, 2022 WL 16639141, at *4 (S.D.N.Y. Oct. 14, 2022) (quoting *GEOMC Co.*). No basis exists to make such a finding here. Truist's defenses present legally sufficient bases for precluding Plaintiffs' claims, whether they are construed as affirmative defenses for which Truist bears the burden of proving, or as defenses pertaining to Plaintiffs' inability to prove elements of their claims.

*Third*, and finally, timing matters. As the Second Circuit explained, prejudice "will normally depend on when the defense is presented." *GEOMC Co*., 918 F.3d at 98. Thus, "[a] factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation." *Id.* Here, Plaintiffs are challenging affirmative defenses included in Truist's Answer filed less than a month ago, shortly after its motions to dismiss were denied, and the day after discovery opened. Accordingly, the Court should deny any motion to strike affirmative defenses pleaded in Truist's Answer, Affirmative Defenses, and Counterclaims.

### C. The Court Should Grant Truist Leave to Amend Its Affirmative Defenses

Although Truist has sufficiently pleaded its affirmative defenses, to avoid any further dispute about whether Truist has provided Plaintiffs with a sufficient factual description of its affirmative defenses, Truist requests, pursuant to Fed. R. Civ P. 15(a) and 16, that the Court grant it leave to amend its affirmative defenses. To that end, Truist has attached a proposed Amended Answer and Counterclaims, which contains revised affirmative defenses that, without question, exceed the relevant standards. *See* Exhibit A. For the Court's convenience, attached is a redline comparing the proposed amended pleading to the original pleading. *See* Exhibit B.

May 26, 2023
Page 5

      "To show good cause [for leave to amend its pleading], a movant must demonstrate diligence before filing her motion, such that despite the movant's effort, the deadline to amend the pleadings could not have been reasonably met." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 336 F.R.D. 400, 407 (S.D.N.Y. 2020). And "where a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend "shall be freely given," must be balanced against the requirement under Rule 16(b) that the Court's scheduling order "shall not be modified except upon a showing of good cause." *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003).

      In this case, on April 13, 2023, more than two weeks before Truist filed its Answer, Affirmative Defenses, and Counterclaims—and thus before Truist knew or could have known that Plaintiffs intended to move to strike certain affirmative defenses—the Court entered its Scheduling Order (ECF 71, the "Scheduling Order," ¶ 4). Absent the scheduling order, Truist would be entitled to amend its Answer, Affirmative Defenses, and Counterclaims as of right until 21 days after service of Plaintiffs' Rule 12 motion or responsive pleading. Fed. R. Civ. P. 12(a)(1). Under the Scheduling Order, however, Truist must request leave to amend for any amendment filed after May 13, 2023. Accordingly, balancing Rule 15's liberal standard with Rule 16's good cause standard is appropriate in this case. *See Grochowski*, 318 F.3d at 86.

      Good cause exists to grant Truist leave to amend. Truist has demonstrated diligence in promptly responding to Plaintiffs' contemplated motion to strike the affirmative defenses, which created this dispute *after* the deadline for amendments without good cause. Plaintiff first identified the affirmative defenses it intended to move to strike on May 16, 2023. Truist has filed its proposed amended pleading within 10 days. Given such diligence, good cause exists to support leave to amend. *See In re Keurig*, 336 F.R.D. at 407.

      Moreover, Plaintiffs cannot show any prejudice based on Truist's amendment. *See Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 198 (S.D.N.Y. 2014) ("The burden of demonstrating prejudice rests with the non-movant."). Here, the proposed amendment would neither require Plaintiffs to expend "significant additional resources," nor would it "significantly delay" trial. *See id.* at 200. Truist's amended pleading will not affect any other deadline in this case. Responses to initial discovery are due next week; no parties have produced *any* documents yet; and no depositions have been scheduled. Where, as here, "discovery has barely begun," no prejudice will result from the proposed amendment. *See id.*

      Truist respectfully requests that the Court deny any motion to dismiss Truist's counterclaims and any motion to strike affirmative defenses. Truist further requests permission to file a motion for leave to file an Amended Answer and Counterclaims.

      Respectfully submitted,

      */s/ David Tetrick*

      David Tetrick
      *Counsel for Truist*