**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

July 28, 2023

WRITER'S DIRECT DIAL NO.
**(212) 849-7471**

WRITER'S EMAIL ADDRESS
**coreyworcester@quinnemanuel.com**

**VIA ECF**

Honorable Ona T. Wang
United States Magistrate Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

Re:   *Emigrant Bank,, et al. v. SunTrust Bank, et al.*, No. 1:20-cv-02391-PGG-OTW

Dear Judge Wang:

We represent Plaintiffs Emigrant Bank and Pacific Mercantile Bank ("Plaintiffs") and write in response to the July 18, 2023 letter filed by non-party Virgo Investment Group LLC ("Virgo") requesting a pre-motion conference for a proposed motion to intervene and to quash, or for a protective order, in connection with the subpoena served by Plaintiffs on non-party Baker Tilly US LLP ("Baker Tilly").  ECF 85 ("Letter").

Virgo's motion should be denied for two principal reasons.  *First*, Virgo does not have standing to move to quash the subpoena issued to Baker Tilly.  Virgo fails to articulate any privilege or other justification for a protective order or an order to quash, and any confidentiality concerns are adequately addressed by the existing Protective Order in this action (ECF No. 75).[1]

*Second*, the subpoena seeks highly relevant documents, and Plaintiffs would be prejudiced if the documents are not produced.  Baker Tilly was hired by Virgo to perform due diligence regarding the finances of Our Alchemy, LLC ("Alchemy") in advance of the purchase of Alchemy by Virgo's alter ego and agent, Calrissian, L.P. ("Calrissian").  Baker Tilly's documents are relevant to Plaintiffs' allegations that Virgo knowingly misled Plaintiffs regarding Alchemy's finances while improperly using its alter ego Calrissian to perpetuate a fraud on Plaintiffs.  These issues go directly to the alter ego claim Plaintiffs demanded that Defendant SunTrust bring.

**I.   Background**

In 2014, Virgo purchased Alchemy from Nu Image, Inc. using a shell company, Calrissian, as the purchaser and guarantor of loans made by certain lenders (collectively, the "Lenders") to finance the transaction and Alchemy's operations.  Prior to closing, Virgo engaged Baker Tilly, a

---

[1]   Further, Baker Tilly has stated that it is willing to produce documents in response to the subpoena (and has not moved for any relief).

forensic accounting firm, to perform due diligence on Alchemy's finances. Plaintiffs allege that Baker Tilly issued a draft report to Virgo stating that Alchemy had a low quality of earnings and that some of Alchemy's financial reporting could provide a misleading view of its true earnings. ECF No. 45 ("Compl.") ¶ 28. Plaintiffs allege that Virgo directed Baker Tilly to change these negative assessments in the final report and concealed them from the Lenders. *Id.*

Calrissian was formed by Virgo to shield itself from potential liability. After Calrissian purchased Alchemy, and as Alchemy struggled with liquidity issues, Virgo siphoned funds from Alchemy through Calrissian, causing both Alchemy and Calrissian to default on their obligations and declare bankruptcy. Plaintiffs demanded that SunTrust, as administrative agent for the Lenders, sue Virgo as Calrissian's alter ego under the guaranty, which SunTrust refused to do.[2] Compl. ¶¶ 86-92. Plaintiffs have sued SunTrust for breach of contract, and whether Virgo is the alter ego of Calrissian—and thus a suit against it would have been successful—is a major issue in this action.

## II.     Legal Standard

Rule 26 permits a court, for good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 45 permits a Court to quash a subpoena if it "requires disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d)(3)(iii). "Ordinarily, good cause exists when a party shows that disclosure will result in a clearly defined, specific and serious injury." *Rocky Aspen Management 204 LLC v. Hanford Holdings LLC*, 394 F. Supp. 3d 461, 465 (S.D.N.Y. 2019).

## III.    Virgo Does Not Have Standing To Challenge The Subpoena

As a threshold issue, Virgo does not have standing to object to the subpoena. Virgo argues the subpoena seeks documents "unrelated" to the claims in this action. Letter at 1. However, only a party to whom a subpoena is directed may object on relevance grounds. *See, e.g., US Bank Nat. Ass'n v. PHL Variable Ins. Co.*, 2012 WL 5395249, at *2 (S.D.N.Y. Nov. 5, 2012) ("A party lacks standing to challenge, on grounds of relevance or burden, a subpoena served on a non-party.").

To have standing to move to quash or for a protective order, "the moving party must assert some right or privilege personal to it, such as an interest in proprietary, confidential information that would be disclosed or an interest in maintaining a privilege that would be breached by disclosure." *US Bank*, 2012 WL 5395249, at *2. Virgo does not do so. Nor does Virgo identify any specific proprietary information it has an interest in protecting or any "specific and serious injury." Virgo merely asserts the documents subpoenaed "implicate the Virgo Parties' proprietary and confidential investment strategy." Letter at 4. But to have standing, there must be more than "a conclusory assertion that the subpoenas seek documents that are private, confidential, and commercially sensitive." *Universitas Educ., LLC v. Nova Group, Inc.*, 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013) (internal quotations omitted). Virgo's vague, conclusory allegation is insufficient, particularly because Virgo admits that the subpoena seeks documents related to

---

[2]  Virgo incorrectly states that the only remaining claims relate to SunTrust's alleged misuse of payments from the Alchemy bankruptcy. Letter at 2 n.5. In fact, Plaintiffs' principal claims are for breach of contract for SunTrust's failure to bring suit against Virgo. *See* ECF No. 65 at 20.

Alchemy's financials, not Virgo's. Letter at 3. Furthermore, the subpoena seeks documents regarding due diligence performed nine years ago regarding a company (Alchemy) that is now in bankruptcy that was purchased by a company (Calrissian) that is now defunct.

Rather than assert any privilege or other interest in confidentiality, Virgo argues that Plaintiffs' subpoena is a backdoor attempt to obtain documents relevant to Plaintiffs' dismissed claims against Virgo in New York state court. But that is no basis to quash the subpoena. Plaintiffs have appealed the dismissal to the New York Court of Appeals. If the dismissal is affirmed, Plaintiffs have no need for any documents in that case; and if the dismissal is reversed, Plaintiffs can obtain the documents relevant to the state court action in separate discovery from Virgo in that action. Given the overlap in the relevant parties and issues in both actions, some discovery Plaintiffs pursue here is inevitably going to be similar to discovery Plaintiffs would have pursued in the New York state action against Virgo. Further, Virgo's interests are adequately protected by the Protective Order in this case, which limits the use of confidential documents to the prosecution and defense of this action and not for any other purpose or proceeding. ECF No. 75 at ¶ 14.

## IV. The Subpoena Seeks Highly Relevant Documents

The scope of discovery under a subpoena is the same as the scope under Rule 26. *Kenyon v. Simon & Schuster, Inc.*, 2016 WL 5930265, at *5 (S.D.N.Y. Oct. 11, 2016). "Relevance is . . . to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Hoxhaj v. Michael Cetta, Inc.*, 2022 WL 1664963, at *1 (S.D.N.Y. May 25, 2022) (citation and quotations omitted).

Virgo would be liable under the guaranty as Calrissian's alter ego if (1) it had control of Calrissian and (2) it used that control to commit a fraud or other wrong. *See, e.g., In re Adler, Coleman Clearing Corp.*, 469 F. Supp. 2d 112, 117 (S.D.N.Y. 2007). Plaintiffs allege that Virgo had knowledge of Alchemy's financials including its poor earnings, failed to disclose that to the Lenders, and caused Alchemy to present improper financial information to them. *See, e.g.*, Compl. ¶ 60. Specifically, Plaintiffs allege that Virgo knew about Alchemy's financials from Baker Tilly. *Id.* ¶¶ 28, 46-48. The Baker Tilly documents thus relate to Virgo's knowledge that Alchemy's financial reporting was overstated, its control of Calrissian in the transaction with Nu Image, and its failure to disclose material facts to the Lenders, all of which bear on the alter ego issue which underlies Plaintiffs' claims against SunTrust.

## V. Plaintiffs Will Be Prejudiced If Virgo Is Permitted To File Its Motion

Virgo claims that Plaintiffs will suffer no prejudice if its proposed motion is granted because it produced documents relevant to Calrissian. Letter at 5. But although Virgo has made a small, limited production, its production is missing several key categories of documents, *including documents relating to the Baker Tilly report*.

Further, the deadline for party discovery in this action is quickly approaching in mid-September. Plaintiffs may need to use documents produced by Baker Tilly in party depositions, and it would be inefficient to require either party to recall a witness in response to further discovery. Virgo continues to stonewall Plaintiffs at every turn, and they should not be permitted additional time to do so while their proposed motion is briefed, argued, and decided.

3

Respectfully submitted,

*/s/ Corey Worcester*
Corey Worcester