# Exhibit 2

**ALLEN & OVERY**

**BY ECF**

The Honorable Paul G. Gardephe
Thurgood Marshall
United States Courthouse
40 Foley, New York, NY 10007-1312

**Allen & Overy LLP**
1221 Avenue of the Americas
New York , NY 10020

Tel          212 610 6300
Fax          212 610 6399
Direct line   212 610 6384
Emanuel.Grillo@AllenOvery.com

June 11, 2023

*Re:*     *Emigrant Bank and Pacific Mercantile Bank v. SunTrust Bank et. al.,* No. 1:20-cv-02391
**(PGG)**

Dear Judge Gardephe:

We write in our role as co-counsel with Daniels & Treddenick, PLLC, on behalf of our clients, non-parties Virgo Societas Partnership III (Onshore), L.P. ("Onshore"), Virgo Societas Partnership III (Offshore), L.P. ("Offshore"), and Virgo Investment Group LLC ("VIG,"collectively, with Onshore and Offshore, the "Virgo Parties"), in connection with the subpoena dated May 9, 2023 (the "Subpoena")[1] served on non-party Nu Image, Inc. ("Nu Image") by plaintiffs Emigrant Bank and Pacific Mercantile Bank (together, the "Plaintiffs") in the above-referenced action. We write pursuant to Your Honor's Individual Rule IV.A to respectfully request a pre-motion conference regarding the Virgo Parties' motion to intervene and for a protective order in connection with the Subpoena.[2]

The Subpoena at issue here seeks documents produced, used, and created in connection with a confidential arbitration between Nu Image (and related entities) and the Virgo Parties (the "Arbitration"). Plaintiffs seek to benefit from Nu Image's apparent breach of a Stipulation and Joint Application for

---

[1]      Capitalized terms not otherwise defined herein shall have the same meaning(s) ascribed to them in the Subpoena. A copy of the Subpoena is attached hereto as **Exhibit 1**. Filings made to this action's docket are referenced as "ECF."

[2]      The undersigned attended a meet and confer teleconference with Plaintiffs on June 1, 2023, regarding both the Subpoena and a subpoena directed at VIG.  During the meet and confer teleconference, VIG offered to provide the Alchemy Production (as defined herein) to satisfy both subpoenas. To that end, on June 2, 2023, counsel for the Virgo Parties supplied Plaintiffs' counsel with requested documentation relating to the Alchemy Production. Plaintiffs did not respond. On June 8, the compliance date for both subpoenas, counsel for the Virgo Parties requested a further meet and confer teleconference in light of the June 8 compliance date and to avoid the need for court intervention. Plaintiffs promised to provide a response by June 9. Then, at 6:17pm, on June 9, Plaintiffs feigned ignorance, claimed to be unaware that the Virgo Parties' offer to produce the Alchemy Production was meant to satisfy the Subpoena, and demanded production by Nu Image. Plaintiffs have therefore refused to meet and confer with the Virgo Parties further, and the parties have reached an impasse.

Allen & Overy LLP is a limited liability partnership registered in England and Wales with registered number OC306763. It is authorized and regulated by the Solicitors Regulation Authority of England and Wales (SRA number 401323). Allen & Overy LLP is a multi-jurisdictional law firm with lawyers admitted to practice in a variety of jurisdictions. A list of the members of Allen & Overy LLP and their professional qualifications is open to inspection at its registered office, One Bishops Square, London, E1 6AD and at the above address. The term partner is used to refer to a member of Allen & Overy LLP or an employee or consultant with equivalent standing and qualifications.

Allen & Overy LLP or an affiliated undertaking has an office in each of: Abu Dhabi, Amsterdam, Antwerp, Bangkok, Beijing, Belfast, Boston, Bratislava, Brussels, Budapest, Casablanca, Dubai, Dublin, Düsseldorf, Frankfurt, Hamburg, Hanoi, Ho Chi Minh City, Hong Kong, Istanbul, Jakarta (associated office), Johannesburg, London, Los Angeles, Luxembourg, Madrid, Milan, Munich, New York, Paris, Perth, Prague, Rome, San Francisco, São Paulo, Seoul, Shanghai, Silicon Valley, Singapore, Sydney, Tokyo, Warsaw, Washington, D.C.

Protective Order, dated May 10, 2016 (the "Protective Order")[3] that was entered into by Nu Image and the Virgo Parties in connection with the Arbitration. That Protective Order was signed on behalf of Nu Image by its then counsel, Robert M. Schwartz, who left his prior firm and subsequently joined Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel")—counsel for Plaintiffs here—apparently without having complied with the Protective Order.

Under the Protective Order, Mr. Schwartz and his former firm Irell & Manella LLP, as counsel to Nu Image, were obligated "[u]pon the conclusion of [the Arbitration], including confirmation of the award and the exhaustion of any appeals" "(a) within thirty (30) days" to either return Confidential Information (as defined in the Protective Order) to the producing party or confirm that the confidential material had been destroyed. *See* Protective Order ¶ F. The Arbitration concluded on or about December 2017, and it is the Virgo Parties' understanding that Mr. Schwartz failed to comply with the obligations to destroy or return the Confidential Information. As a result, the Virgo Parties' Confidential Information remains in Nu Image's possession—and by extension, within the knowledge of Plaintiffs' counsel—five years after the conclusion of the Arbitration, a clear breach of the Protective Order. Now, Plaintiffs seek to obtain that undestroyed, unreturned Confidential Information from Nu Image through their Subpoena.

Setting this aside, the Subpoena seeks the production of discovery materials that are wholly unrelated to this proceeding. As set forth below, the Arbitration concerned a dispute regarding the August 2014 purchase of Our Alchemy, LLC f/k/a Millennium Entertainment, LLC ("Alchemy") by the Virgo Parties and Calrissian L.P. ("Calrissian") from Nu Image Holdings, Nu Image, and certain other equity holders (collectively, the "Nu Image Sellers"). Thus, it predated the September 2014 and July 2015 credit agreements that are the subject of the dispute underlying this action (the "Credit Agreements"). Accordingly, the Subpoena does not seek material relevant to establishing any of the claims or defenses asserted by the parties here. Rather, the Subpoena represents yet another endless fishing expedition by Plaintiffs directed at multiple non-parties to abuse the discovery process in this action. Plaintiffs attempt to uncover documents for their use[4] against the Virgo Parties to manufacture other claims to assert or revive claims that have already been litigated and resolved in other courts. The irrelevance and broad scope of the Subpoena, taken alongside the subpoenas to numerous other non-parties—including a separate subpoena directed at VIG—underscores the scope of harassment here. Such abuses should not be countenanced; the Virgo Parties request for intervention and a protective order should be granted.[5]

---

[3]     A copy of the Protective Order is attached hereto as **Exhibit 2**.

[4]     The Virgo Parties recognize that the Stipulated Confidentiality Agreement and Protective Order, ECF 75, (the "Court's Protective Order") prohibits the parties to this action from using any Confidential Discovery Material (as defined in this Court's Protective Order) in any other litigation proceeding. *See* Court's Protective Order ¶ 14. However, due to the discovery sought in this action against Nu Image and VIG being largely duplicative of that sought in other proceedings, the Virgo Parties strongly believe that the Plaintiffs seek to use this proceeding as a road map to conduct discovery in other proceedings in an attempt to circumvent the Court's Protective Order. In the event that the Court denies this motion, the Virgo Parties respectfully request that the Court's Protective Order be amended to bar Plaintiffs' use of any discovery produced in this action, or arising from discovery produced in this action, in any other proceeding against the Virgo Parties.

[5]     Pursuant to the Protective Order, the Virgo Parties may "object thereto or to intervene for the purpose of seeking a protective order to prevent or limit the disclosure." *See* Protective Order ¶ D. In Nu Image's responses and objections to the Subpoena, Nu Image states that certain discovery materials will only be produced subject to Plaintiffs resolving the Virgo Parties' objections to their production. *See* **Exhibit 3** at 9–11.

## I.     THE ARBITRATION IS IRRELEVANT TO THE PRESENT ACTION

**The Dispute with the Nu Image Sellers.** On August 18, 2014, Calrissian, Offshore, and Onshore executed a Purchase Agreement to purchase all of the outstanding equity interests in Alchemy (then known as Millennium). First Am. Compl. ("FAC") ¶ 27, ECF 45. The Purchase Agreement contained representations by the Nu Image Sellers regarding Alchemy's finances and accounting practices and provided for indemnification of Calrissian by the Nu Image Sellers related to any breaches of the representations in the Purchase Agreement and other claims. *See In re Calrissian LP*, 17-10356 (Bankr. D. Del. Aug. 10, 2018) ("Calrissian Bankruptcy"), Dkt. 52 at ¶ 10. Prior to Alchemy's bankruptcy, Calrissian made a post-closing payment in the amount of $900,000. *See* Calrissian Bankruptcy, Dkt. 102 at 2. However, Calrissian withheld three further post-closing payments because the Nu Image Sellers allegedly made material misrepresentations regarding Alchemy's financial condition prior to the sale and breached other terms of the Purchase Agreement. *Id.* Shortly after the execution of the Purchase Agreement, Alchemy faced financial difficulties and ultimately filed a voluntary petition for relief under chapter 7 of title 11 of the Bankruptcy Code on July 1, 2016. *Calrissian Bankruptcy,* Dkt. 52 at ¶ 10.[6] Calrissian filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code thereafter.[7]

**The Confidential Arbitration.** On February 29, 2016, Nu Image, on behalf of the Nu Image Sellers, commenced a confidential arbitration proceeding before JAMS against Calrissian and the Virgo Parties. *See* Calrissian Bankruptcy, Dkt. 102 at 2. In the Arbitration, Nu alleged that Calrissian failed to make three post-closing payments. *See* Calrissian Bankruptcy, Dkt. 22-1 at 4. Mr. Schwartz acted as lead counsel to the Nu Image Sellers and signed the Demand for Arbitration before JAMS on their behalf. *See id.* Pursuant to the Protective Order in effect in the Arbitration, the Virgo Parties produced discovery materials to Nu Image during the Arbitration. In the Subpoena, Plaintiffs seek not only the production of documents produced by the Virgo Parties in connection with the Arbitration, but also the entire record of the confidential Arbitration. *See* Subpoena, 9-11.

**Plaintiffs' Multi-Forum Dispute with the Virgo Parties.** Plaintiffs have had the opportunity to litigate their dispute with the Virgo Parties in multiple different forums. Each action concerns exactly the same facts: loans made by Plaintiffs, and others, as lenders, and SunTrust Bank, now known as Truist Bank, both defendants here, in their capacity as "Administrative Agent," pursuant to the terms of the Credit Agreements. FAC ¶ 2, ECF 45. A summary and the status of each litigation is set forth below.

a.     ***Trustee Action.*** On June 29, 2018, the Alchemy Trustee, acting for the benefit of Alchemy's creditors—including Plaintiffs—commenced an action against eighteen defendants including the Virgo Parties. *Miller v. ANConnect, LLC,* 18-50633-JTD (Bankr. D. Del.) (the "Trustee Action"). As relevant here, the Alchemy Trustee sought damages from the Virgo Parties, Jesse Watson (VIG's Founding Partner), and Mark Perez (VIG's Managing Partner and Chief Investment Officer) in relation to certain alleged transfers made prior to the Alchemy Bankruptcy. On November 17, 2021, the claims against the Virgo Parties and Watson and Perez were settled (the "Alchemy Settlement"). Plaintiffs opposed the Alchemy Settlement solely with respect to the settlement contemplating a bar

---

[6]     That petition was filed under the caption *In re Our Alchemy, LLC*, Case No. 16-11596-KG (Bankr. D. Del.) (the "Alchemy Bankruptcy"). FAC ¶ 7, ECF 45. The Alchemy Bankruptcy remains pending and is being administered by a Chapter 7 trustee (the "Alchemy Trustee").

[7]     On February 16, 2017, Calrissian filed a petition under the caption *In re Calrissian LP*, 17-10356-KG (Bankr. D. Del) FAC ¶ 9, ECF 45. On August 10, 2018, the Calrissian Bankruptcy was converted to Chapter 7. FAC ¶ 9, ECF 45. On January 9, 2020, the Calrissian Bankruptcy was dismissed.

order in favor of the Virgo Parties, Perez, and Watson. *See* Trustee Action, Dkt. 248; Dkt. 251. Pursuant to the Alchemy Settlement, all Alchemy Bankruptcy estate claims against the Virgo Parties, Perez, and Watson were released.

b.  **State Court Litigation**. On July 7, 2021, Plaintiffs commenced an action against the Virgo Parties and Watson and Perez in the Commercial Division of the Supreme Court of the State of New York: *Emigrant Bank v. Virgo Investment Group LLC*, No. 654350/2021 (the "State Court Litigation"). In the State Court Litigation, Plaintiffs sought damages arising from the exact same disputes settled in the Trustee Action. On September 17, 2021, the Virgo Parties, Watson, and Perez filed a motion to dismiss the State Court Litigation on the grounds that Plaintiffs, among other things, lacked standing to bring such claims under the Credit Agreements and New York law. Plaintiffs' complaint was dismissed for lack of standing on February 9, 2022. *Emigrant Bank v. Virgo Inv. Grp. LLC*, No. 654350/2021, 2022 WL 406656, at *2 (N.Y. Sup. Ct. Feb. 09, 2022).[8] The Appellate Division for the First Department unanimously affirmed the Supreme Court's decision. *See Emigrant Bank v. Virgo Inv. Grp. LLC*, 211 A.D.3d 526, 526 (N.Y. App. Div. 2022). Plaintiffs have since sought leave to further appeal to the New York Court of Appeals. Their motion is pending.

c.  **The Bar Order Proceedings.** Pursuant to the Alchemy Settlement, the Alchemy Trustee agreed to seek a bar order against Plaintiffs. Trustee Action, Dkt. 202-3 § 13. On October 13, 2022, the Alchemy Bankruptcy court entered a bar order, ordering that Plaintiffs "may not pursue causes of action or theories of recovery in the State Court Litigation against a [Virgo] party on the basis that that party was the alter ego of the [Alchemy or Anderson Digital, LLC]." *Id.*, Dkt. 264 at 2 (¶ 1).

## II.  THE LIMITED REQUEST FOR LEAVE TO INTERVENE SHOULD BE GRANTED

The Virgo Parties respectfully request to intervene here as a matter of right. To prevail on a motion to intervene as a matter of right under Rule 24(a), the applicant must: (i) file a timely application, (ii) show an interest in the action; (iii) demonstrate that the interest may be impaired by the disposition of the action; and (iv) show that the interest is not adequately protected by the parties to the action. *In re Hornbeam Corp.*, No. 14-MISC-424-PART1, 2015 WL 13647606, at *2 (S.D.N.Y. Sept. 17, 2015), *aff'd*, 722 F. App'x 7 (2d Cir. 2018), and *aff'd*, 722 F. App'x 7 (2d Cir. 2018).

Each of the requirements to intervene as a matter of right are satisfied here. **First**, the Virgo Parties filed the application timely because they submitted the filing as quickly as possible[9] after reaching an impasse with Plaintiffs regarding the Subpoena and the materials have not been produced. **Second**, the Virgo Parties have an interest in objecting to the Subpoena because it seeks documents and testimony produced in an arbitration proceeding in which the Virgo Parties expressly bargained for confidentiality. As a result, the record and the discovery produced in the arbitration contain the Virgo Parties' confidential materials, which the Virgo Parties have an interest in keeping confidential. New York courts have recognized that there is an "important public interest in protecting the rights of parties who submit to confidential arbitration," *Those Certain Underwriters at Lloyds v. Occidental Gems, Inc.*, 41 A.D.3d 362,

---

[8]     The Virgo Parties also note that Plaintiffs could have participated in the action in the Supreme Court of the New York State of New York, entitled, *SunTrust Bank v. Calrissian, LP*, Index No. 654148/2016, that the defendants commenced against Calrissian and Virgo Services Company ("VSC") in which the defendants brought claims against Calrissian under the Guaranty and against VSC as the general partner of Calrissian. *See* NYSCEF Doc. No. 49 § 2.

[9]     Immediately after reaching an impasse with Plaintiffs on Friday, June 9, the Virgo Parties sought to file this letter. However, e-filing was suspended from Friday, June 9 at 3pm until Sunday, June 11 at 8pm. The Virgo Parties shared a copy of this letter with Plaintiffs on Friday evening.

365 (1st Dep't 2007), because "confidentiality is a paradigmatic aspect of arbitration," *Guyden v. Aetna, Inc.*, 544 F.3d 376, 385 (2d Cir. 2008). ***Third***, the Virgo Parties' interests in confidentiality will be impaired by disclosure. Disclosure will likely result in further and protracted litigation by Plaintiffs against the Virgo Parties, even in the face of the bar order and the rulings in the State Court litigation. Furthermore, there will be no impairment to Plaintiffs other than a limitation on their already inappropriate fishing expedition. ***Finally***, the existing parties, and the subpoenaed-party, Nu Image, do not adequately represent the Virgo Parties' interests since those parties do not have an interest in preserving Virgo Parties' confidences.[10]

## III.    REQUEST FOR LEAVE FOR A PROTECTIVE ORDER SHOULD ALSO BE GRANTED

The Virgo Parties respectfully request leave to move for a protective order pursuant to Rule 26, to prevent disclosure of the Virgo Parties' confidential productions made in the Arbitration, as well as the Arbitration's record (the "Arbitration Materials"). For discovery requests involving confidential materials from an "alternative dispute resolution process," courts in the Second Circuit apply a "heightened standard." *Accent Delight Int'L Ltd. v. Sotheby's*, 505 F. Supp. 3d 281, 286 (S.D.N.Y. 2020) (quoting *In re Teligent, Inc.*, 640 F.3d 53, 57 (2d Cir. 2011)). To obtain disclosure of confidential materials, the propounding party must show: "(1) a special need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that the need for the evidence outweighs the interest in maintaining confidentiality." *Id.* at 284 (citations omitted).

Plaintiffs cannot meet the heightened standard here. ***First***, there is no "special need" for the Arbitration Materials to be produced. These materials simply do not relate to the causes of action asserted in this case, but instead a commercial dispute that predated the Credit Agreements. ***Second***, there is no unfairness to Plaintiffs if they are not provided with such discovery for nearly the same reason: the Arbitration Materials are not relevant to this action or any underlying claim that defendants could have brought against the Virgo Parties. ***Finally***, Plaintiffs' desire to obtain a roadmap for discovery to use in other proceedings after a partner in Plaintiffs' counsel's firm apparently breached the Protective Order, certainly does not override the public policy interest in maintaining the confidentiality of arbitration. *See Pasternak v. Dow Kim*, No. 10 CIV. 5045, 2013 WL 1729564, at *6 (S.D.N.Y. Apr. 22, 2013). These factors each weigh against the production of such documents and in favor of granting a protective order.[11]

For these reasons, the Court should grant the Virgo Parties the relief sought herein.

---

[10]    Alternatively, the Virgo Parties should be permitted to intervene by virtue of the Court's broad discretion to allow intervention under Rule 24(b). *In re Hornbeam Corp.*, 2015 WL 13647606, at *2. A court considers the same factors as intervention as a matter of right, as well as whether the proposed intervention will unduly delay or prejudice the adjudication of the parties' rights. *Id.* Here, for the same reasons outline above, intervention will not delay the proceedings or cause any prejudice as the parties are not entitled to discovery that is irrelevant to the any party's claims or defenses.

[11]    Plaintiffs will also not be disadvantaged by a protective order here because the Virgo Parties—in responding to the subpoena directed at VIG—have agreed, subject to certain terms and conditions, to provide Plaintiffs with copies of all of the discovery that the Virgo Parties produced to the Alchemy Trustee in the Trustee Action (the "Alchemy Production"). While the Virgo Parties question whether the Arbitration has any relevance whatsoever to the claims in this action, any possibly relevant documents from the Arbitration that would arguably bear on the claims in this action were already produced as part of the Alchemy Production. Thus, if Plaintiffs agree to accept the Alchemy Production, they likely will receive everything they need without disturbing the confidential nature of the Arbitration.

Respectfully submitted,

ALLEN & OVERY LLP

By: /s/ *Emanuel C. Grillo*
Emanuel C. Grillo
1221 Avenue of the Americas
New York, New York 10020
Tel: 212-610-6300
Emanuel.Grillo@allenovery.com

*Attorneys for non-parties Virgo Societas Partnership III (Onshore), L.P., Virgo Societas Partnership III (Offshore), L.P., and Virgo Investment Group LLC*

# Exhibit 1

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

## for the

Southern District of New York

|  |  |  |
|---|---|---|
| Emigrant Bank and Pacific Mercantile Bank | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  1:20-cv-02391-PGG |
| SunTrust Bank et al. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:           Nu Image, Inc. c/o DelMarie Broco
15260 Ventura Blvd., Suite 1705, Sherman Oaks, CA 91403

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A, attached

| Place: Quinn Emanuel Urquhart & Sullivan, LLP<br>865 S Figueroa St 10th Floor<br>Los Angeles, CA 90017 | Date and Time:<br><br>06/08/2023 9:35 pm |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:          05/09/2023

|  |  |  |
|---|---|---|
| *CLERK OF COURT* | | |
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Emigrant Bank and Pacific Mercantile Bank , who issues or requests this subpoena, are:

Corey Worcester, 51 Madison Ave., 22nd Floor, New York, NY 10010, coreyworcester@quinnemanuel.com, (212) 849-7000

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:20-cv-02391-PGG

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00   .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                                         *Server's signature*

                                              _____
                                                          *Printed name and title*

                                              _____
                                                           *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c)  Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS

As used herein, the following terms shall have the meanings indicated below:

1.     "**Action**" shall mean the above-captioned action.

2.     "**Alchemy**" means Our Alchemy, LLC and its predecessors (including Millennium Entertainment LLC), successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf.

3.     "**Alchemy Purchase**" shall refer to the sale of Alchemy (then named Millennium Entertainment, LLC) by Nu Image, *et al*. to Calrissian, *et al*. as reflected in the Alchemy Purchase Agreement.

4.     "**Alchemy Purchase Agreement**" shall refer to the Purchase Agreement dated August 18, 2014 between Calrissian, *et al*. and Nu Image, *et al*.

5.     "**Any**" and "**All**" are mutually interchangeable and are meant to encompass one another.

6.     "**Baker Tilly**" means Baker Tilly Virchow Krause, LLP and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, or any person who otherwise acted or is acting on its behalf.

7.     "**Calrissian**" means Calrissian L.P. and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf.

1

8. "**Communication**" means any transmittal of information (in the form of facts, ideas, inquiries, or otherwise) whether orally or by document, telephone, telecopier, mail, fax, email, voicemail, cellular phone text message, instant message, personal delivery, or by any other means, be they analog, electronic, or otherwise.

9. "**Complaint**" shall mean the First Amended Complaint filed in the Action on September 27, 2021, and any amendments thereto.

10. "**Document**" shall be construed to the fullest extent permissible under the Federal Rules of Civil Procedure and means, without limitation, the original and all copies and translations of any information in any written, recorded, electronic, or graphic form including all memoranda, notes, interoffice and intra-office communications, telegrams, telecopies, letters, reports, stenographic notes, bulletins, notices, emails, text messages or other messaging-application messages, instant messages or other electronic-chat messages, telephonic or personal communications, computer models, spreadsheets, data, accounts, records, calendars, diaries, minutes, contracts or other legal papers, resolutions, written policies or procedures, insurance policies, audio records, photographs, microform, film, and any electronically stored information stored in any medium, including computer backup devices, hard drives, electronic share drives, or any other virtual or physical space. A draft or non-identical copy is a separate Document within the meaning of this term.

11. "**Including**" shall be construed to mean "including, without limitation" or "including, but not limited to."

12. "**Nu Image**" means Nu Image, Inc. and its predecessors, successors, divisions, related entities, direct or indirect subsidiaries, parent companies, and affiliates thereof (including Millennium Media, Inc.), and all of its officers, directors, employees, agents, assigns

attorneys, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf.

13.     "**Nu Image Arbitration**" means the JAMS arbitration between Claimant Nu Image and Respondents Virgo, *et al*., with JAMS Reference number 1210033079.

14.     "**Perez**" means Mark Perez, a partner in Virgo Investment Group.

15.     "**Person**" means, without limitation, any natural person, corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, group, organization or entity, and shall include the present and former officers, executives, partners, members, controlling shareholders and any other person acting or purporting to act on behalf of any of them, and any of their present or former parent corporations, subsidiaries, affiliates, divisions, predecessors and successors in interest.

16.     "**Plaintiffs**" means Emigrant and PMB.

17.     "**PMB**" means Plaintiff Pacific Mercantile Bank.

18.     "**Relating to**," "**Related to**," "**Concerning**," or "**Regarding**" in addition to their customary and usual meanings, means regarding, concerning, referring to, reflecting, discussing, describing, analyzing, supporting, evidencing, comprising, constituting, setting forth, containing, showing, disclosing, explaining, summarizing, or mentioning.

19.     "**SunTrust**" means SunTrust Bank and all of its divisions, subdivisions, affiliates (including SunTrust Robinson Humphreys), parents, predecessors, successors (including Truist Bank), joint ventures, present and former officers, directors, employees, representatives, agents, attorneys, accountants, advisors, assigns, and any other persons who otherwise acted or is acting on its behalf.

20.     **"Virgo"** collectively means Virgo Investment Group, Virgo Societas, Virgo Onshore, Virgo Offshore, Virgo Service, Watson, and Perez as well as their predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of their officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on their behalf.

21.     **"Virgo Investment Group"** means Virgo Investment Group, LLC and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf.

22.     **"Virgo Societas"** means Virgo Societas Partners, LLC and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf.

23.     **"Virgo Onshore"** means Virgo Societas Partnership III (Onshore), L.P. and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf.

24.     **"Virgo Offshore"** means Virgo Societas Partnership III (Offshore), L.P. and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent

companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf.

25.     "**Virgo Service**" means Virgo Service Company, LLC and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf.

26.     "**Watson**" means Jesse Watson, the founder and chief investment officer of Virgo Investment Group.

27.     "**You**" and "**Your**" means Nu Image (as defined in these requests).

## <u>INSTRUCTIONS</u>

1.     Unless otherwise indicated, the Documents requested to be inspected and produced in this request include all Documents in Your possession, custody, or control.  Without limiting the terms "possession, custody, or control" as used in the preceding sentence, a Document is in Your possession, custody, or control if You have actual possession or custody or the right to obtain the Document or a copy thereof upon demand from one or more of Your members, employees, representatives, agents, attorneys, assigns, affiliates, parents, subsidiaries, independent contractors, consultants, or any other Person or public or private entity that has actual physical possession thereof.  In respect of email, the terms "possession, custody, or control" include, without regard to the subdirectory path where stored: (a) "deleted" emails that have not been permanently deleted, (b) "sent" emails, (c) "received" emails, (d) emails stored in any personal accounts, and (e) any Drafts of the foregoing that have not been permanently deleted.

2.     Produce each Document as it is kept in the usual course of business.

3.      Select Documents from files and other sources and number such Documents so that the source of each Document may be readily determined.

4.      Produce file folders with tabs or labels intact with such Documents.

5.      Produce complete electronic-file directories intact with such Documents.

6.      A document with handwritten, typewritten or other recorded notes, editing marks, etc., is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

7.      Do not separate Documents attached to each other.

8.      Produce each Document in its entirety, without abbreviation or redaction, and include all attachments, transmittal sheets, notes, cover letters, exhibits, appendices, enclosures, and all Drafts and non-identical copies of each Document.

9.      Produce Documents not otherwise responsive to a request if such Documents are attached to, or enclosed with, any responsive Document.  In respect of email, produce the email and all attachments if either the email or any attachment is responsive.

10.      Produce Documents not otherwise responsive to these requests if such Documents mention, discuss, refer to, or explain the Documents that are called for by the requests, or if such Documents are attached to Documents called for by these requests and constitute routing slips, transmittal memoranda, letters, emails, comments, evaluations, or similar materials.

11.      If You withhold any Document requested herein on the basis of any assertion of privilege or other immunity from discovery, comply with the requirements of FRCP 45.

12.      You are further requested to provide all portions of requested Documents that are not subject to a claim of privilege or other reason for nonproduction by excising or otherwise

protecting the portions for which a privilege is asserted, if such a technique does not result in disclosing the contents of the portions for which some privilege is asserted.

13.     If Your response to a particular request is a statement that You lack the ability to comply with that request, specify whether the inability to comply is because the particular item or category of information never existed; was destroyed, lost, misplaced, or stolen; or was never, or is no longer, in Your possession, custody, or control.  Provide the name and address of any Person known or believed by You to have possession, custody, or control of that particular item or category of information.

14.     In the event that any Document responsive to the Requests was, but is no longer, in Your possession, custody, or control, or has been lost, destroyed, discarded, or otherwise disposed of, You are requested to identify such Document as completely as possible, including without limitation, the following information:  (a) the nature of the Document; (b) the person who prepared or authorized the Document and, if applicable, the person to whom the Document was sent; (c) the date on which the Document was prepared or transmitted; and (d) if possible, what has happened to the Document and where it or any copies of it may be located, or if the Document was lost or destroyed, the date on which the Document was lost or destroyed, and, if destroyed, the conditions of and the reasons for such destruction and the persons requesting and performing the destruction.

15.     If no Documents are responsive to a particular Request, you are to state that no responsive Documents exist.

16.     In the event that you object to any Request on the ground that it is overbroad or unduly burdensome for any reason, respond to that Request as narrowed to the least extent necessary, in your judgment, to render it not overbroad/unduly burdensome and state specifically

the extent to which you have narrowed that Request for purposes of your response and the factual basis for your conclusion.

17.     Production of any Document by another Person does not relieve You of Your obligation to produce Your copy of the same Document, even if the two Documents are identical.

18.     The singular includes the plural and vice versa.  The words "and" and "or" are either conjunctive or disjunctive so that the scope of any request is most inclusive.  The words "all" and "any" mean "any and all."  The words "each" and "every" shall mean "each and every."

19.     These requests are continuing.  Supplement Your responses in the event You obtain or discover additional information after any of Your responses.

20.     Each request is independent.  No request limits the scope of any other request.

21.     Capitalized terms not defined herein shall have the meaning ascribed to them in the Complaint.

22.     The use of defined terms apply whether or not they are capitalized.

23.     References to a gender shall be interpreted to include the masculine, feminine, and neuter.

24.     The past tense shall be construed to include the present tense and vice versa.

25.     References to entities or corporations other than natural persons, including Nu Image, Alchemy, Virgo, and Calrissian, shall be deemed to include, in addition to the entity named, its divisions, departments, subsidiaries, affiliates, parents, predecessors, present or former officers, present or former directors, employees, agents, representatives, accountants and attorneys, successors, and all other persons acting or purporting to act on behalf of each such entity or corporation.

26.     Documents in electronic form, including emails, should be produced in color in single page tagged image file format ("TIFF").  TIFFs shall show all text and images that would be visible in the original electronic format (native format), including redlines and speaker notes, and Plaintiffs reserve the right to make a reasonable request for the production of any Documents in native format.  An associated load file linking the images to the corresponding Document should be provided.  All metadata associated with any electronically stored information shall be produced in text format linked to the associated Document.  Extracted text or, if extracted text is not available, optical character recognition (OCR) text should be provided in Document-level text files.  Alternatively, Documents in electronic form may be produced in a manner consistent with any e-discovery stipulation that is filed in this Action.

27.     Unless otherwise specified, these requests seek Documents prepared, sent, provided, received, in possession during, or relating to, the period from January 1, 2013 to January 1, 2019 (the "Relevant Period"), or relating to such period whenever prepared.

## DOCUMENT REQUESTS

**DOCUMENT REQUEST NO. 1**

All Documents produced by any party in the Nu Image Arbitration.

**DOCUMENT REQUEST NO. 2**

All transcripts (partial or whole), DVDs, or other records of any depositions (including exhibits), hearings, arguments or other proceedings in the Nu Image Arbitration.

**DOCUMENT REQUEST NO. 3**

All exhibits and expert reports in the Nu Image Arbitration.

**DOCUMENT REQUEST NO. 4**

All Documents containing orders, rulings, or awards (both interim and final) issued by the arbitrator in the Nu Image Arbitration.

**DOCUMENT REQUEST NO. 5**

All Documents and Communications exchanged between You and the following entities or individuals regarding the Alchemy Purchase:

      (a) Virgo;

      (b) Calrissian;

      (c) Baker Tilly;

      (d) SunTrust; and

      (e) PMB.

**DOCUMENT REQUEST NO. 6**

All Documents and Communications related to the negotiation and drafting of the Alchemy Purchase Agreement, including but not limited to all drafts of the Alchemy Purchase Agreement.

**DOCUMENT REQUEST NO. 7**

Alchemy's financial statements including, but not limited to, balance sheets, profit and loss statements, cash flow statements, income statements, and equity statements, for the period from January 2012 through August 2014.

Exhibit 2

# JAMS ARBITRATION

|  |  |
|---|---|
| NU IMAGE, INC,, | ) [Assigned to Hon. Diane Wayne (Ret.)] |
| Claimant, | ) Reference No. 1210033079 |
| v. | ) **STIPULATION AND JOINT** |
| CALRISSIAN LP, VIRGO SOCIETAS | ) **APPLICATION FOR PROTECTIVE** |
| PARTNERSHIP III (ONSHORE), L.P., | ) **ORDER** |
| VIRGO SOCIETAS PARTNERSHIP | ) Demand Filed: February 29, 2016 |
| III (OFFSHORE), L.P., AND VIRGO | ) |
| INVESTMENT GROUP LLC, | ) |
| Respondents. | ) |

Claimant Nu Image, Inc. and Respondents Calrissian LP, Virgo Societas Partnership III (Onshore), L.P., Virgo Societas Partnership III (Offshore), L.P., and Virgo Investment Group LLC, by and through their respective counsel, hereby submit the following stipulated protective order.

## I.    RECITALS

Whereas, the parties expect that discovery in this action will require the production of business information that is confidential and proprietary in nature, the unrestricted disclosure or dissemination of which could subject them and/or others to commercial or competitive injury.

Whereas, the parties desire to establish mechanisms and protocols that will permit efficient discovery in this action and also protect themselves and others from the risk of misuse, unrestricted disclosure and dissemination of such confidential and proprietary information.

Accordingly, the parties stipulate to the following protective order, and jointly apply and request that the Arbitrator order, as follows:

## II.    DEFINITIONS

A.    "Designating Party" means any Party or any third party from whom discovery is sought in this action, invoking the protections of this Protective Order.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8880704

- 1 -
STIPULATION AND JOINT APPLICATION FOR PROTECTIVE ORDER

B.     "Receiving Party" means any Party who has received discovery from any other Party or any third party.

C.     "Outside Counsel" means the outside counsel of record for each Party, including all attorneys, staff, and clerical and support personnel affiliated with or employed by such outside counsel, as well as temporary personnel retained by such law firm(s) to perform legal or clerical duties, or to provide logistical litigation support; provided that no person who is or becomes a director, officer or employee of a Party shall be considered Outside Counsel.

D.     "In-House Litigation Counsel" means an attorney who is an employee in the legal department of a Party whose responsibilities consist of overseeing this case.

E.     "Party" means every party to this action and every director, officer, and employee of every party to this action.

F.     "Communicate" means disclose, provide, show, or make available in any way to another person or entity.

G.     "CONFIDENTIAL" is a designation that, for purposes of expediency only, may be applied to any document or thing produced in this action.  However, if such designation is challenged, the Designating Party shall bear the burden of showing that such document or thing constitutes, contains, or reveals its confidential research, development, technical, commercial, financial, or personnel information relating to its business, whereby the unrestricted disclosure or dissemination of such information to third parties could adversely impact its business, or other information of a confidential, proprietary, private, or personal nature.  Information designated as "CONFIDENTIAL" may be used and communicated only as provided in this Protective Order.

H.     "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" is a designation that shall be limited to confidential non-public information which the disclosing Party or non-party in good faith believes will result in significant risk of competitive disadvantage or harm if disclosed to another Party without restriction upon use or further disclosure.  Information designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" may only be used and disclosed as provided in this Protective Order.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8880704

- 2 -
STIPULATION AND JOINT APPLICATION FOR PROTECTIVE ORDER

I. "Confidential Information" is any document or thing designated with any of the "CONFIDENTIAL" designations provided herein.

J. "Copy" means any reproduction, depiction, or sample of any document, material, tangible thing, audio or video tape, computer disk, or information, regardless of format, by photographic, scanning, imaging, recording, manual input, or other electronic, magnetic, optical, or manual reproduction means.

**III.   LEVELS AND METHODS OF PROTECTION**

A. <u>Materials Subject to Designation</u>.  Any Party or third party from whom discovery is sought may designate any of the following as a form of Confidential Information under the terms of this Protective Order: deposition testimony; written discovery; documents and things produced pursuant to document production requests or third party subpoenas; expert witness reports; hearing testimony; briefs or argument submitted to the Arbitrator or from one Party to another; and facilities or other physical locations made available for inspection (and the material inspected within those facilities or other physical locations).

B. <u>Derivative Materials</u>.  Any extract, summary, compilation or other material derived in whole or in part from Confidential Information shall itself be deemed to be Confidential Information, and the dissemination and use thereof shall be governed by this Protective Order.

C. <u>Manner of Designation of Confidential Information</u>.

1. <u>Designation of Documents and Things</u>.  A Designating Party shall designate Confidential Information by placing a clear, permanent legend on each page of any document being designated or, in the case of physical objects, computer disks, or other tangible things, on the thing itself or on the container in which it is produced.  The legend shall bear the words "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," as appropriate.  All documents and things shall be so designated by the Designating Party prior to their production or delivery, except as set forth below.

2. <u>Designation of Electronic Documents</u>.  All documents of a Party that are electronic in their native format, shall be produced to the Requesting Party in electronic

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

8880704

- 3 -

STIPULATION AND JOINT APPLICATION FOR PROTECTIVE ORDER

format.  The Designating Party shall designate Confidential Information by affixing a permanent legend on the device or disk containing the production.  The legend shall bear the appropriate level of confidentiality using all capitalized letters.  If the designation applies to all of the information contained on the device or disk, the Designating Party shall also affix the applicable designation to each page of the production.  If only a portion or portions of the information warrants protection, the Designating Party shall identify the protected portion(s), by affixing the appropriate designation to each page or document to which the designation applies.  If the Parties agree on some other method of electronic production, such as by secure internet file transfer, the Designating Party shall affix the applicable designation to each document or page of the production to which the designation applies.

3.      To expedite discovery in this action, a Designating Party may make documents and things available for inspection prior to the placement of a legend thereon, without thereby waiving the protections of this Protective Order.  Thus, the Designating Party may advise the requesting Party that some or all of the documents or things to be produced for inspection are designated under one of the available levels of confidentiality pursuant to this Protective Order and that the information or materials may be inspected by a Party only in a manner that is consistent with the terms of this Protective Order.  After the inspection, the Designating Party may then designate the documents and things by marking them with a legend indicating the applicable level of confidentiality prior to delivery of copies to the Receiving Party's counsel.  In such cases, permitting such initial inspections shall not constitute waiver of confidentiality with respect to any document or thing so inspected.

4.      <u>Designation of Deposition Testimony</u>.  If in the course of a deposition any Confidential Information is used (whether as an exhibit or otherwise) with or elicited from a witness, the portion of the transcript in which such Confidential Information is contained shall be designated under this Protective Order.  To so designate such portion of a transcript, the witness (or his/her counsel) or Party intending to invoke this Protective

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8880704

Order shall state on the record that the testimony or portion thereof is being designated as Confidential Information, or alternatively state that the entire testimony is being designated as Confidential Information, subject to a good faith obligation to identify any non-confidential portions of the testimony upon receipt of the transcript of the testimony.  The reporter shall separately transcribe and bind the testimony so designated with the applicable level of confidentiality, and shall mark the face of the separate bound transcript containing such testimony with such applicable level of confidentiality.  In the alternative, any Party may advise all other parties in writing, and with page and line identifications, of the designation of such testimony, within thirty (30) days after receipt of the transcript of a deposition.  Until thirty (30) days have passed after the receipt of any transcript, the entire transcript shall be deemed to be designated "CONFIDENTIAL."  Unless otherwise ordered by the Arbitrator, the Designating Party shall have the right to have all persons, except the deponent and his/her counsel and such other persons as are permitted under the terms of this Protective Order to have access to Confidential Information, excluded from a deposition during the taking of the testimony designated pursuant to this Protective Order.

D.     <u>Inadvertent Production or Failure to Designate</u>.

1.     In the event that a Party claims that any document or thing qualifying for designation as Confidential Information was inadvertently produced without the proper designation, the producing Party shall identify such document or thing promptly after its inadvertent production is discovered and provide a copy of such document or thing with the proper designation to counsel for the Receiving Party, upon receipt of which the Receiving Party shall promptly return or destroy all copies of the undesignated document or thing.  Upon written request by the producing Party, the Receiving Party will provide written verification of compliance with this provision.  Nothing herein shall prevent the Receiving Party from contending that any such document or thing was not inadvertently produced, or that the document does not contain Confidential Information.

2.     In the event that a Party claims that any document or thing containing or constituting privileged attorney-client communications or attorney work product was

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8880704

- 5 -

STIPULATION AND JOINT APPLICATION FOR PROTECTIVE ORDER

inadvertently produced, the producing Party shall notify the Receiving Party promptly after it is discovered that the privileged material was inadvertently produced for inspection or provided, and upon receipt of such notification the Receiving Party shall promptly return to counsel for the disclosing party any and all copies of such document or thing and thereafter refrain from any use whatsoever, in this case or otherwise, of such document or thing.  Nothing herein shall prevent the Receiving Party from contending that any such document or thing was not inadvertently produced, or that privilege was waived for reasons other than the mere inadvertent production thereof.

3.      In the event that a Receiving Party receives a document or thing containing privileged attorney-client communications or attorney work product that the Receiving Party believes has been inadvertently produced, the Receiving Party should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the producing Party that he or she possesses material that appears to be privileged.  See Rico v. Mitsubishi Motors Corp., 42 Cal. 4th 807, 817, 171 P.3d 1092, 1099 (2007).  If a producing Party has notified the Receiving Party of inadvertent production hereunder, or has confirmed the inadvertent production called to its attention by the Receiving Party, the Receiving Party shall promptly return to counsel for the producing Party any and all copies of such document or thing and thereafter refrain from any use whatsoever, in this case or otherwise of such document or thing. Nothing herein shall prevent the Receiving Party from contending that any such document or thing was not inadvertently produced, or that privilege was waived for reasons other than the mere inadvertent production thereof.

E.      Treatment of Confidential Information.

1.      "CONFIDENTIAL."  All information designated with this legend, and all information derived from the information so designated (excluding such information as is derived lawfully from an independent source without reference to, or use of, the Confidential Information of a Party), shall be used only for the purposes of and in connection with this action, and not for any business, commercial, or other purpose

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8880704

- 6 -
STIPULATION AND JOINT APPLICATION FOR PROTECTIVE ORDER

whatsoever. Such information shall not be Communicated to any person or entity other than:

a. Outside Counsel to whom it is necessary to disclose Confidential Information for purposes of this action;

b. Any natural person who is a Party or a current officer, director or other employee, including In-House Litigation Counsel, but: (i) only to the extent necessary to assist in the conduct or preparation of this litigation; and (ii) only after that individual executes a Confidentiality Agreement in the form attached hereto as Exhibit A and an executed copy is provided to each Party;

c. Subject to Section III.F below, any person who is expressly retained or sought to be retained by a Party as an outside consultant or as an outside testifying expert, provided that the CONFIDENTIAL document shall be disclosed to any such person only to the extent necessary for that person to perform his or her work in connection with this action;

d. With respect to any particular document that has been designated as CONFIDENTIAL, the author or addressee of that particular document, as well as any person who prepared or reviewed that document prior to the date this action was filed;

e. Any person who is designated to receive CONFIDENTIAL documents by order of the Arbitrator or by written stipulation of the Parties;

f. The Arbitrator, JAMS personnel, any hearing or deposition reporters used in connection with this action, and any such reporter's support personnel; and

g. Outside litigation support vendors, including commercial photocopying vendors, scanning service vendors, electronic discovery vendors, coders and keyboard operators who are employed in connection with this action only after that individual executes a Confidentiality Agreement in the form attached hereto as Exhibit A and an executed copy is provided to each Party.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8880704

- 7 -
STIPULATION AND JOINT APPLICATION FOR PROTECTIVE ORDER

2.     "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."  All information designated with this legend, and all information derived from the information so designated (excluding such information as is derived lawfully from an independent source without reference to, or use of, the Confidential Information of a Party), shall be used only for the purposes of and in connection with this action, and not for any business, commercial, or other purpose whatsoever.  Such information shall not be Communicated to any person or entity other than:

a.     Outside Counsel and In-House Litigation Counsel to whom it is necessary to disclose such information for purposes of this action;

b.     Subject to Section III.F below, any person who is expressly retained or sought to be retained by a Party as an outside consultant or as an outside testifying expert, provided that such HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY information shall be disclosed to any such person only to the extent necessary for that person to perform his or her work, in connection with this action;

c.     The author or addressee of the document so designated;

d.     Any person who is designated to receive "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information by order of the Arbitrator or by written stipulation of the Parties;

e.     The Arbitrator, JAMS personnel, any hearing or deposition reporters used in connection with this action, and any such reporter's support personnel; and

f.     Outside litigation support vendors, including commercial photocopying vendors, electronic discovery vendors, scanning service vendors, coders and keyboard operators only after that individual executes a Confidentiality Agreement in the form attached hereto as Exhibit A and an executed copy is provided to each Party.

F.     Outside Experts and Consultants.

1.     Pursuant to subsections E(1) through (2) above, Confidential Information may be Communicated to outside experts or consultants retained by a Party in connection

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8880704

- 8 -
STIPULATION AND JOINT APPLICATION FOR PROTECTIVE ORDER

with preparation for expert testimony or attorney consultation in this action, provided that before any Confidential Information is disclosed to any expert or consultant, that person shall execute a Confidentiality Agreement in the form attached hereto as Exhibit A and provide an executed copy to each Party.

2.    In addition, before any Confidential Information is disclosed to any expert or consultant, the Party seeking to disclose such information shall provide the other Parties with: (i) the name of the person; (ii) the present employer and title of the person: (iii) an up-to-date curriculum vitae of the person; (iv) a list of cases in which that person has testified in the last five (5) years; and (v) an identification of any work performed for or on behalf of any Party, or any Party's competitor (including work performed as a consultant), by that person within the five (5) year period before the filing of the above-captioned action.

3.    Within ten (10) business days of receipt of this information, another Party may object to the proposed outside expert or consultant on any reasonable basis. If objection to disclosure is made within the time required, the Parties shall meet and confer within five (5) business days; and, if not resolved, the Party objecting to the disclosure of the information to the expert or consultant shall move for a protective order precluding the disclosure of the information to the designated expert or consultant within three (3) business days after the meet and confer. Where objection is made, no such information shall be disclosed to the consultant or expert until the day after the last day to file such a motion, or upon entry of the Arbitrator's order denying the objecting Party's motion for protection. Failure to object to a proposed outside expert or consultant shall not preclude the non-objecting Party from later objecting to continued access by that outside expert or consultant where facts suggesting a basis for objection could not have been discovered by the objecting Party or its counsel, exercising due diligence, within the period for making a timely objection. If a later objection is made, no further Confidential Information shall be disclosed to the outside expert or consultant until the matter is resolved by the Arbitrator or the objecting Party withdraws its objection.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8880704

G.  <u>Maintenance of Designated Information</u>.  Counsel to the Parties and those persons to whom disclosure is permitted under the terms of this Protective Order who have received Confidential Information that is provided pursuant to this Protective Order shall maintain such Confidential Information in a secure and safe location and shall exercise due and proper care with respect to the storage, custody, use, and disposal of all Confidential Information, so as to prevent the unauthorized or inadvertent disclosure of any of it.

H.  <u>Stenographers and Videographers</u>.  Any stenographer or videographer shall be entitled to hear Confidential Information and receive and handle exhibits containing Confidential Information as necessary or appropriate for the performance of his or her duties, as long as that stenographer or videographer has executed and delivered to the Parties' counsels of record a Confidentiality Agreement in the form attached hereto as Exhibit A.  The stenographer may allow a deponent to review the original transcript or may deliver the original transcript for such review to the attorney for a deponent, if that attorney has executed and delivered to the Party's counsel of record a Confidentiality Agreement in the form attached hereto as Exhibit A or is one of the Outside Counsel or In-House Counsel defined above.

## IV.  <u>ADDITIONAL PROVISIONS</u>

A.  <u>No Effect on Party's Own Use</u>.  A Designating Party's designation of information as Confidential Information shall not affect its own right to Communicate or use any of its information so designated.

B.  <u>Information Excluded From This Protective Order</u>.  The restrictions set forth in this Protective Order shall not apply to any information which the Receiving Party can demonstrate:

1.  is available to the public at the time of disclosure hereunder; or

2.  becomes available to the public after disclosure hereunder through no act, or failure to act, by the Receiving Party.

C.  <u>No Legal Effect of Confidentiality Designations</u>.  The designation by a Designating Party of any document, material, tangible thing, or information as Confidential Information is intended solely to facilitate discovery in this action, and neither such designation nor treatment in conformity with such designation shall be construed in any way as an admission or agreement by a

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8880704

- 10 -

STIPULATION AND JOINT APPLICATION FOR PROTECTIVE ORDER

Receiving Party that the designated disclosure constitutes or contains any trade secret or proprietary information.

D.     _Legal Process Seeking Production of Confidential Information_.  In the event a Receiving Party is served with legal process seeking production of Confidential Information obtained through discovery and protected under the terms of this Protective Order, the Receiving Party shall promptly notify the Designating Party or non-party whose material is sought of the service of legal process, as well as provide the Designating Party or non-party a copy of the legal process.  The Receiving Party shall afford the Designating Party or non-party a minimum of 30 days, or the maximum allowable time if fewer than 30 days are allowed under applicable law, to object thereto or to intervene for the purpose of seeking a protective order to prevent or limit the disclosure.

E.     _Materials Held Under Obligations of Confidentiality Toward Third Parties_.  A Party shall not fail to disclose or otherwise withhold from discovery any document or information on grounds of claimed obligation of confidentiality toward third parties, except in compliance with this provision.  In the event a discovery request (or deposition question) calls for information deemed by a Party to be subject to a contractual obligation of confidentiality to a third party, the Party shall: (a) promptly notify the third party that, unless objection is lodged with the Arbitrator within ten (10) days or within the time period set forth in a prior agreement between the producing party and the third party, whichever is longer, the information will be disclosed subject to this protective order; or (b) make prompt motion to the Arbitrator demonstrating that its compliance with the third party notice-and-opportunity-to-object-before-disclosure procedure in subsection (a) of this paragraph would in and of itself violate its contractual obligation to the third party.

F.     _Final Disposition of Action_.  Upon the conclusion of this action, including confirmation of the award and the exhaustion of any appeals, each counsel of record shall: (a) within thirty (30) days return to counsel of record for the Designating Party, or confirm to the Designating Party the destruction of all Confidential Information, and all Copies made of such materials; and (b) within thirty (30) days destroy or see to the destruction of all materials related to Confidential Information, including, but not limited to notes, analyses, memoranda or reports

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8880704

- 11 -
STIPULATION AND JOINT APPLICATION FOR PROTECTIVE ORDER

provided to or by other persons, and certify to the Designating Party that such destructions have been done.  As an exception to the above, counsel of record may retain a single file Copy of any document filed with the Arbitrator, a Copy of any written discovery response, and a transcript of any deposition or hearing, along with all exhibits to that transcript.  The Copy of these retained documents shall be treated as Confidential Information, and counsel of record shall immediately notify opposing counsel of record of any attempt by third parties to inspect or Copy said documents.

      G.    <u>Motion for Relief from Designation</u>.  If, after a Party receives information designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL –ATTORNEYS' EYES ONLY, it appears to the Receiving Party that any such information is not entitled to the protection afforded under this Protective Order, such Receiving Party shall first notify counsel of record for the Designating Party in writing, providing its reasons for challenging the designation.  If, three (3) days after such notice is given, the Parties have been unable to reach an agreement as to whether the information should be afforded its designated level of protection as Confidential Information, the Receiving Party may then or thereafter submit the matter for decision by the Arbitrator.  The Designating Party shall bear the burden of proving that the designated information warrants its designated level of protection under this Protective Order, which may include showing the information constitutes, contains, reveals, or reflects trade secrets or other confidential research, development, commercial, financial, or personnel information that relates to the Designating Party's business or that was disclosed to it in confidence by any third party, and that disclosure of the designated information to competitors, customers, or others (including the general public) would adversely prejudice the Designating Party or its business or would violate an obligation of confidentiality to a third party.  No Party, however, shall be obligated to challenge the propriety of any designation by any other Party, and a failure to do so shall not constitute a waiver or in any way preclude a subsequent challenge in this or any other action of the propriety of such designations.

      H.    <u>Survival of Terms</u>.  Absent written modification by the Parties, the provisions of this Protective Order that restrict the disclosure and use of Confidential Information shall survive

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8880704

STIPULATION AND JOINT APPLICATION FOR PROTECTIVE ORDER

the final disposition of this matter and continue to be binding on all persons and entities subject to the terms of this Protective Order.

I.     Effect on Discovery.  This Protective Order shall not preclude or limit the right of any Party to object to or resist discovery on any ground that would otherwise be available, except that no Party shall object to or resist discovery conducted in accordance with this Protective Order on the ground that such information is of a sensitive or confidential nature.

J.     Submitting to the Jurisdiction of the Arbitrator.  Outside Counsel, the Parties, and every person to whom Confidential Information is disclosed pursuant to the terms of this Protective Order agrees to submit to the *in personam* jurisdiction of the Los Angeles office of JAMS for purposes of enforcing his or her obligations under this Protective Order.

K.     Violation of Order.  The Parties stipulate that in the event of any violation or threatened violation of this Protective Order, the Arbitrator may impose any relief that the Arbitrator deems just, including, but not limited to, injunctive relief and/or an order in aid of action against any Party, person or entity violating or threatening to violate this Protective Order. The Party, person or entity committing or threatening to commit such violation shall not argue or otherwise employ as a defense that the Designating Party has an adequate remedy at law.  The prevailing Party in any dispute concerning a violation of the Protective Order shall be entitled to recover its reasonable attorneys' fees and costs incurred enforcing the Protective Order from the non-prevailing Party, person or entity.  The foregoing remedies are in addition to, and not in substitution for, any remedy, sanction or penalty deemed appropriate by the Arbitrator for violation of this Protective Order.

Dated: May 10, 2016                          IRELL & MANELLA LLP

                                             Robert M. Schwartz
                                             Michael H. Strub, Jr.


                                             By:___/s/ Robert M. Schwartz_____
                                                  Robert M. Schwartz
                                                  Attorneys for Claimant
                                                  Nu Image, Inc.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8880704
STIPULATION AND JOINT APPLICATION FOR PROTECTIVE ORDER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Stroock & Stroock & Lavan LLP

John R. Loftus

By: _____

John R. Loftus
Attorneys for Respondents
Calrissian LP, Virgo Societas
Partnership III (Onshore), L.P., Virgo
Societas Partnership III (Offshore),
L.P., and Virgo Investment Group
LLC

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8880704

- 14 -

STIPULATION AND JOINT APPLICATION FOR PROTECTIVE ORDER

1

2

**ORDER**

3

     The Arbitrator, having reviewed and considered the Stipulation and Joint

4

Application for Protective Order ("Proposed Protective Order"), and finding good cause for the

5

entry thereof,

6

     HEREBY ORDERS that the Proposed Protective Order is approved and shall and

7

does hereby become the Order of this Arbitrator.

8

9

DATED: ___5/12/16___

10

11

12

_____

13

HON. DIANE WAYNE (Ret.)
ARBITRATOR

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8880704

- 1 -
STIPULATION AND JOINT APPLICATION FOR PROTECTIVE ORDER

1

2      EXHIBIT A

3      CONFIDENTIALITY AGREEMENT

4

5      I, _____, declare under penalty of perjury under the laws of

6      the United States and California that:

7      1.      My address is _____

8      _____

9

10     2.      My present employer is _____

11     _____

12     3.      My present occupation or job description is _____

13     _____

14     _____

15     _____

16     4.      I HEREBY CERTIFY AND AGREE that I have read and understand the terms of

17     the Protective Order in the matter Nu Image, Inc. v. Calrissian LP, et al., pending before Hon.

18     Diane Wayne (Ret.) in the Santa Monica office of JAMS; that I will not use or disclose to anyone

19     any of the contents of any Confidential Information received under the protection of the Protective

20     Order except in accordance with the Protective Order; that I will comply with and be bound by the

21     terms and conditions of the Protective Order; that I understand that a violation of the Protective

22     Order is punishable by order of the Arbitrator; and that I hereby submit to the jurisdiction of the

23     Santa Monica office of JAMS for the purposes of enforcement of the Protective Order.

24     5.      I understand and agree that, pursuant to the Protective Order, I am required to retain

25     all Copies of any of the materials that I receive that have been so designated as containing

26     Confidential Information in a container, cabinet, drawer, room or other safe place in a manner

27     consistent with this Protective Order, that all Copies are to remain in my custody until they are to

28     be returned or destroyed as specified in the Protective Order.  I acknowledge that such return or

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8880704

- 2 -

STIPULATION AND JOINT APPLICATION FOR PROTECTIVE ORDER

1

2  the destruction of such materials shall not relieve me from any of the continuing obligations

3  imposed on me by the Protective Order.

4

5

6  Dated: _____          _____

7                                                  (Signature)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

8880704

- 3 -

STIPULATION AND JOINT APPLICATION FOR PROTECTIVE ORDER

1

**PROOF OF SERVICE**

2      I am employed in the County of Orange, State of California.  I am over the age of 18 and
not a party to the within action.  My business address is 840 Newport Center Drive, Suite 400,
3    Newport Beach, California 92660-6324.

4      On May 10, 2016, I served the foregoing document described as Stipulation and Joint
Application for Protective Order on each interested party, as follows:
5

6                        James G. Sammataro
                        John R. Loftus
7                        Strook & Stroock & Lavan LLP
                        2029 Century Park East, Suite 1600
                        Los Angeles, CA 90067
8                        jsammataro@strook.com
                        jloftus@strook.com
9

10

11    ☒         (BY ELECTRONIC MAIL)  I caused the foregoing document to be served
               electronically by electronically  mailing a true and correct copy through Irell &
               Manella LLP's electronic mail system to the e-mail address(es), as set forth
12               above, and the transmission was reported as complete and no error was reported.

13    Executed on May 10, 2016, at Newport Beach, California.

14      I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.
15

16
       Heather L. Benzmiller
17    _(hbenzmiller@irell.com)_____              ___/s/ Heather L. Benzmiller_____
            (Type or print name)                              (Signature)
18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Nu Image, Inc. vs. Calrissian LP et al.
Reference No. 1210033079

I, Marilyn Anthony, not a party to the within action, hereby declare that on  May 13, 2016, I served

the attached STIPULATION AND JOINT APPLICATION FOR PROTECTIVE ORDER on the parties in the

within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon

fully prepaid, in the United States Mail, at Los Angeles, CALIFORNIA, addressed as follows:

Robert M. Schwartz Esq.
Michael H. Strub Jr. Esq.
Irell & Manella, LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA  90067
Phone: 310-277-1010
rschwartz@irell.com
mstrub@irell.com
    Parties Represented:
    Nu Image, Inc.

Schuyler M. Moore Esq.
John R. Loftus Esq.
Stroock & Stroock & Lavan LLP
2029 Century Park East
16th Floor
Los Angeles, CA  90067
Phone: 310-556-5800
smoore@stroock.com
jloftus@stroock.com
    Parties Represented:
    Calrissian LP
    Virgo Investment Group, LLC
    Virgo Societas Partnership III (Offshore), LP
    Virgo Societas Partnership III (Onshore), LP

Mr. James Sammataro
Stroock & Stroock & Lavan LLP
200 S. Biscayne Blvd.
Suite 3300
Miami, FL  33131-2385
Phone: 305-358-9900
jsammataro@stroock.com
    Parties Represented:
    Calrissian LP
    Virgo Investment Group, LLC
    Virgo Societas Partnership III (Offshore), LP
    Virgo Societas Partnership III (Onshore), LP

I declare under penalty of perjury the foregoing to be true and correct. Executed at Los Angeles,

CALIFORNIA on  May 13, 2016.

Marilyn Anthony
manthony@jamsadr.com

Exhibit 3

EMIGRANT BANK; AND PACIFIC )    Civil Action No. 1:20-cv-02391-PGG
MERCANTILE BANK, )

          Plaintiff, )

vs. )

SUNTRUST BANK; TRUIST BANK; AND )
DOES 1 THROUGH 10, INCLUSIVE, )

          Defendant. )

 

| | |
|---|---|
| EMIGRANT BANK; AND PACIFIC MERCANTILE BANK, <br><br> Plaintiff, <br><br> vs. <br><br> SUNTRUST BANK; TRUIST BANK; AND DOES 1 THROUGH 10, INCLUSIVE, <br><br> Defendant. | Civil Action No. 1:20-cv-02391-PGG <br><br><br> **NON-PARTY NU IMAGE, INC.'S OBJECTIONS AND RESPONSES TO SUBPOENA *DUCES TECUM* ISSUED BY PLAINTIFFS EMIGRANT BANK; AND PACIFIC MERCANTILE BANK** |

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, non-party Nu Image, Inc. ("Nu Image"), through its undersigned counsel, hereby serves these Objections and Responses to the Subpoena *Duces Tecum* ("Subpoena") issued by Plaintiffs Emigrant Bank and Pacific Mercantile Bank ("Plaintiffs") in the above-captioned litigation (the "Litigation") and served on Nu Image's counsel via email on May 9, 2023 as follows:

## PRELIMINARY STATEMENT

These Objections and Responses, while based on diligent inquiry and investigation by Nu Image, necessarily reflect only the current state of Nu Image's knowledge, understanding, and belief based upon the information reasonably available to Nu Image at this time. Without in any way obligating itself to do so, Nu Image reserves the right to modify, supplement, revise, or amend these Objections and Responses and to correct any errors or omissions which may be contained herein in light of the information that Nu Image may subsequently obtain or discover. Nu Image disclaims that its response to any Request or Topic constitutes an explicit or implicit admission, acceptance, or acquiescence to any facts, occurrences, or characterizations, whether legal or non-legal in nature. This Preliminary Statement applies to each and every Objection and Response

given herein and shall be incorporated by reference as though set forth in each objection and response appearing below.

## GENERAL STATEMENTS AND OBJECTIONS

Nu Image makes the following General Statements and Objections to each and every Definition, Instruction, and Request in the Subpoena. From time to time, for emphasis, certain objections set forth in the General Objections are also repeated in the specific objections in response to individual requests. The specific objections are submitted without prejudice to, and without in any way waiving, the General Objections listed below.

1.      Nu Image objects to the Subpoena's June 8, 2023 return date because it "fails to allow a reasonable time to comply." Fed. R. Civ. P. 45(d)(3)(A)(i).

2.      Nu Image objects to the Subpoena to the extent that it seeks or purports to impose obligations beyond or inconsistent with those imposed by the Federal Rules of Civil Procedure, other applicable federal law, or any applicable protective order or other relevant order.

3.      Nu Image objects to the Subpoena as calling for information, documents, and things that are not relevant to any issue pending in the Litigation.

4.      Nu Image objects to the Subpoena as calling for Nu Image to conduct a search for information, documents, and things that are not proportional to the needs of the Litigation.

5.      Nu Image objects to the Subpoena because it is facially overly broad, unduly burdensome, and oppressive. The demands made in the Subpoenas would impose undue burden and expense on non-party Nu Image.

6.      Nu Image objects to the Subpoena to the extent that it calls for information, documents, or things that are confidential or proprietary to, and/or that comprise trade secrets of, Nu Image or any third party. Any statement herein or in any subsequent agreement that Nu Image will produce materials responsive to any Request is subject to any such materials first being protected by an appropriate protective order in the Litigation on terms acceptable to Nu Image,

and is further subject to all reasonable costs of Nu Image's production having been paid by Plaintiffs prior to such production. Further, to the extent any third party objects to Nu Image producing confidential materials in Nu Image's possession, custody, or control, Nu Image will not produce such materials until such objections have been resolved to Nu Image's satisfaction or until an order is entered compelling production.

7.    Nu Image objects to the Subpoena on the ground and to the extent that it seeks information, documents, or things that: (i) are not in Nu Image's possession, custody, or control; (ii) are publicly available; (iii) are in the possession of Emigrant Bank and Pacific Mercantile Bank, parties to the Litigation, or third parties other than Nu Image who are equally available to Plaintiffs and from whom Plaintiffs should more appropriately seek such information, documents, or things; or (iv) are otherwise obtainable by Plaintiffs from more convenient, less burdensome, or less expensive sources.

8.    Nu Image objects to the Subpoena on the ground that it is unbounded as to time and thus purport to impose undue burden and expense on Nu Image.

9.    Nu Image objects to the Subpoena to the extent that it fails to describe the information, documents, and things requested with reasonable particularity.

10.    Nu Image objects to the Subpoena to the extent that it seeks information, documents, and things that are protected by the attorney-client privilege, attorney work-product doctrine, the joint defense privilege, and/or any common interest privilege or doctrine, are protected by an existing protective order, or are otherwise protected under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or any relevant statutes or case law. Any production of documents by Nu Image will be made without waiver of, and with preservation of, the right to withhold any information subject to any such privilege or immunity. Any inadvertent or unintentional disclosure of such information shall not be deemed a waiver of any applicable privilege or restriction.

11.    Nu Image objects to the Subpoena's purported definitions to the extent that they: (i) are unclear, ambiguous, overly broad, or unduly burdensome; (ii) are inconsistent with the

ordinary and customary meaning of the words or phrases they purport to define; (iii) seek to impose obligations different from, or in excess of, those created by the Federal Rules of Civil Procedure or any other applicable rule or order; or (iv) incorporate other purported definitions that suffer from such defects.

12.     Nu Image objects to the Subpoena's purported definitions as irrelevant to the extent that defined terms do not appear in a specific Request.

13.     Nu Image objects to the Subpoena's definitions of "Nu Image," "You," and "Your" as vague, ambiguous, overly broad, unduly burdensome, and oppressive, including because they purport to include "Nu Image, Inc. and its predecessors, successors, divisions, related entities, direct or indirect subsidiaries, parent companies, and affiliates thereof (including Millennium Media, Inc.), and all of its officers, directors, employees, agents, assigns attorneys, representatives, owners with more than 5% interest, and any person wo otherwise acted or is acting on its behalf." For purposes of these Objections and Responses, Nu Image will treat these definitions as each referring to Nu Image, Inc., the non-party on whom the Subpoena was served.

14.     Nu Image objects to the Subpoena's definition of "Alchemy" as vague, ambiguous, overly broad, unduly burdensome, and oppressive, including because it purports to include "its predecessors (including Millennium Entertainment LLC), successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any persons wo otherwise acted or is acting on its behalf." For purposes of these Objections and Responses, Nu Image will treat this definition as referring to Our Alchemy, LLC.

15.     Nu Image objects to the Subpoena's definition of "Baker Tilly" as vague, ambiguous, overly broad, unduly burdensome, and oppressive, including because it purports to include "Baker Tilly Virchow Krause, LLP and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, or any person who

otherwise acted or is acting on its behalf." For purposes of these Objections and Responses, Nu Image will treat this definition as referring to Baker Tilly Virchow Krause, LLP.

16. Nu Image objects to the Subpoena's definition of "Calrissian" as vague, ambiguous, overly broad, unduly burdensome, and oppressive, including because it purports to include "Calrissian L.P, and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf." For purposes of these Objections and Responses, Nu Image will treat this definition as referring to Calrissian L.P.

17. Nu Image objects to the Subpoena's definition of "SunTrust" as vague, ambiguous, overly broad, unduly burdensome, and oppressive, including because it purports to include "SunTrust Bank and all of its divisions, subdivisions, affiliates (including SunTrust Robinson Humphreys), parents, predecessors, and successors (including Truist Bank), joint ventures, present and former officers, directors, employees, representatives, agents, attorneys, accountants, advisors, assigns, and any other persons who otherwise acted or is acting on its behalf." For purposes of these Objections and Responses, Nu Image will treat this definition as referring to SunTrust Bank.

18. Nu Image objects to the Subpoena's definition of "Virgo" as vague, ambiguous, overly broad, unduly burdensome, and oppressive, including because it purports to include "Virgo Investment Group, Virgo Societas, Virgo Onshore, Virgo Offshore, Virgo Service, Watson, and Perez as well as their predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of their officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on their behalf."

19. Nu Image objects to the Subpoena's definition of "Virgo Investment Group" as vague, ambiguous, overly broad, unduly burdensome, and oppressive, including because it purports to include "Virgo Investment Group, LLC and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all

of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf." For purposes of these Objections and Responses, Nu Image will treat this definition as referring to Virgo Investment Group, LLC.

20. Nu Image objects to the Subpoena's definition of "Virgo Societas" as vague, ambiguous, overly broad, unduly burdensome, and oppressive, including because it purports to include "Virgo Societas Partners, LLC and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf." For purposes of these Objections and Responses, Nu Image will treat this definition as referring to Virgo Societas Partners, LLC.

21. Nu Image objects to the Subpoena's definition of "Virgo Onshore" as vague, ambiguous, overly broad, unduly burdensome, and oppressive, including because it purports to include "Virgo Societas Partnership III (Onshore), L.P. and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf." For purposes of these Objections and Responses, Nu Image will treat this definition as referring to Virgo Societas Partnership III (Onshore), L.P.

22. Nu Image objects to the Subpoena's definition of "Virgo Offshore" as vague, ambiguous, overly broad, unduly burdensome, and oppressive, including because it purports to include "Virgo Societas Partnership III (Offshore), L.P. and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf." For purposes of

these Objections and Responses, Nu Image will treat this definition as referring to Virgo Societas Partnership III (Offshore), L.P.

23.     Nu Image objects to the Subpoena's definition of "Virgo Service" as vague, ambiguous, overly broad, unduly burdensome, and oppressive, including because it purports to include "Virgo Service Company, LLC and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf."  For purposes of these Objections and Responses, Nu Image will treat this definition as referring to Virgo Service Company, LLC.

24.     Nu Image objects to the Subpoena's definition of "Communication" as vague, ambiguous, overly broad, unduly burdensome, and oppressive.

25.     Nu Image objects to the Subpoena's definition of "Document" to the extent that it seeks to impose obligations different from, or in excess of, those created by the Federal Rules of Civil Procedure or any other applicable rule or order.

26.     Nu Image objects to the Subpoena to the extent that it includes Definitions, Instructions, Requests, or Topics that are vague or ambiguous, or that lack sufficient specificity to reasonably identify the information, documents, or things requested.

27.     Nu Image objects to the Subpoena to the extent that it calls for any legal analysis and/or conclusions.

28.     Nu Image objects to the Subpoena to the extent that it includes Requests that contain subparts, or contain compound, conjunctive, or disjunctive clauses.

29.     Nu Image objects to the Subpoena to the extent that it includes Requests that are duplicative or redundant.  Nu Image's response to any particular Request or Topic does not in any way imply or express that such Request is unique or covers subject matter different in scope from that of prior or succeeding Requests.

Subject to and without waiving or limiting in any manner any of the foregoing General Statements and Objections, and incorporating the General Statements and Objections into the following Specific Objections and Responses to the extent applicable, Nu Image hereby objects and responds to the Subpoena as follows:

## DOCUMENT REQUESTS

**REQUEST NO. 1**:

All Documents produced by any party in the Nu Image Arbitration.

**RESPONSE TO REQUEST NO. 1**:

Nu Image incorporates each and all of its Preliminary Statements and General Objections as if restated herein. Nu Image further objects to this Request to the extent that it seeks, in whole or in part, materials protected from disclosure by the attorney-client privilege, work-product immunity, the joint defense or common interest doctrine, or any other privilege afforded by applicable law. Nu Image further objects to this Request on the basis that it seeks confidential materials that are protected by a Protective Order that was entered in the Nu Image Arbitration. Nu Image further objects to this Request to the extent that it seeks information that is not relevant to any party's claim or defense and that it is not proportional to the needs of the Litigation, considering the importance of the issues at stake in the action, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery, particularly to a non-party, outweighs its likely benefit. Nu Image further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome. Nu Image further objects to this Request to the extent that it seeks documents that can be obtained via less burdensome means, such as from parties to the Litigation or their affiliates.

Subject to and without waiving the foregoing objections, Nu Image responds that it will produce Nu Image's own entire document production from the Nu Image Arbitration, to the

extent that such documents can be located after a reasonably diligent search.  To the extent this Request seeks any additional materials, counsel for Nu Image is prepared to meet and confer with counsel for Plaintiffs regarding the scope of this Request.

**REQUEST NO. 2**:

All transcripts (partial or whole), DVDs, or other records of any depositions (including exhibits), hearings, arguments or other proceedings in the Nu Image Arbitration.

**RESPONSE TO REQUEST NO. 2**

Nu Image incorporates each and all of its Preliminary Statements and General Objections as if restated herein.  Nu Image further objects to this Request to the extent that it seeks, in whole or in part, materials protected from disclosure by the attorney-client privilege, work-product immunity, the joint defense or common interest doctrine, or any other privilege afforded by applicable law.  Nu Image further objects to this Request on the basis that it seeks confidential materials that are protected by a Protective Order that was entered in the Nu Image Arbitration.  Nu Image further objects to this Request to the extent that it seeks information that is not relevant to any party's claim or defense and that it is not proportional to the needs of the Litigation, considering the importance of the issues at stake in the action, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery, particularly to a non-party, outweighs its likely benefit.  Nu Image further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome.

Subject to and without waiving the foregoing objections, Nu Image responds as follows: subject to Plaintiffs first resolving confidentiality and related objections raised by counsel for non-parties Virgo/Carlissian, Nu Image is prepared to produce non-privileged "transcripts (partial or whole), DVDs, or other records of any depositions (including exhibits), hearings,

arguments or other proceedings in the Nu Image Arbitration," to the extent that such documents can be located after a reasonably diligent search.

**REQUEST NO. 3**:

All exhibits and expert reports in the Nu Image Arbitration.

**RESPONSE TO REQUEST NO. 2**:

Nu Image incorporates each and all of its Preliminary Statements and General Objections as if restated herein.  Nu Image further objects to this Request to the extent that it seeks, in whole or in part, materials protected from disclosure by the attorney-client privilege, work-product immunity, the joint defense or common interest doctrine, or any other privilege afforded by applicable law.  Nu Image further objects to this Request on the basis that it seeks confidential materials that are protected by a Protective Order that was entered in the Nu Image Arbitration.  Nu Image further objects to this Request to the extent that it seeks information that is not relevant to any party's claim or defense and that it is not proportional to the needs of the Litigation, considering the importance of the issues at stake in the action, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery, particularly to a non-party, outweighs its likely benefit.  Nu Image further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome.

Subject to and without waiving the foregoing objections, Nu Image responds as follows: subject to Plaintiffs first resolving confidentiality and related objections raised by counsel for non-parties Virgo/Carlissian, Nu Image is prepared to produce non-privileged "exhibits and expert reports" from the Nu Image Arbitration, to the extent that such documents can be located after a reasonably diligent search.

**REQUEST NO. 4**:

All Documents containing orders, rulings, or awards (both interim and final) issued by the arbitrator in the Nu Image Arbitration.

**RESPONSE TO REQUEST NO. 4**:

Nu Image incorporates each and all of its Preliminary Statements and General Objections as if restated herein.  Nu Image further objects to this Request to the extent that it seeks, in whole or in part, materials protected from disclosure by the attorney-client privilege, work-product immunity, the joint defense or common interest doctrine, or any other privilege afforded by applicable law.  Nu Image further objects to this Request on the basis that it seeks confidential materials that are protected by a Protective Order that was entered in the Nu Image Arbitration. Nu Image further objects to this Request to the extent that it seeks information that is not relevant to any party's claim or defense and that it is not proportional to the needs of the Litigation, considering the importance of the issues at stake in the action, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery, particularly to a non-party, outweighs its likely benefit.  Nu Image further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome.

Subject to and without waiving the foregoing objections, Nu Image responds as follows: subject to Plaintiffs first resolving confidentiality and related objections raised by counsel for non-parties Virgo/Carlissian, Nu Image is prepared to produce "orders, rulings, or awards (both interim and final) issued by the arbitrator in the Nu Image Arbitration," to the extent that such documents can be located after a reasonably diligent search.

**REQUEST NO. 5**:

All Documents and Communications exchanged between You and the following entities or individuals regarding the Alchemy Purchase:

- 11 -

     (a)     Virgo;

     (b)     Calrissian;

     (c)     Baker Tilly;

     (d)     SunTrust; and

     (e)     PMB.

**RESPONSE TO REQUEST NO. 5**:

Nu Image incorporates each and all of its Preliminary Statements and General Objections as if restated herein. Nu Image further objects to this Request to the extent that it seeks, in whole or in part, materials protected from disclosure by the attorney-client privilege, work-product immunity, the joint defense or common interest doctrine, or any other privilege afforded by applicable law. Nu Image further objects to this Request to the extent it seeks confidential materials that are protected by a Protective Order that was entered in the Nu Image Arbitration. Nu Image further objects to this Request to the extent that it seeks information that is not relevant to any party's claim or defense and that it is not proportional to the needs of the Litigation, considering the importance of the issues at stake in the action, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery, particularly to a non-party, outweighs its likely benefit. Nu Image further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome.

Subject to and without waiving the foregoing objections, Nu Image responds that it will produce Nu Image's own entire document production from the Nu Image Arbitration, to the extent that such documents can be located after a reasonably diligent search, but will not otherwise search for materials potentially responsive to this Request. Nu Image also incorporates herein by reference its responses to Requests Nos. 2-4 above.

**REQUEST NO. 6**:

All Documents and Communications related to the negotiation and drafting of the Alchemy Purchase Agreement, including but not limited to all drafts of the Alchemy Purchase Agreement.

**RESPONSE TO REQUEST NO. 6**:

Nu Image incorporates each and all of its Preliminary Statements and General Objections as if restated herein.  Nu Image further objects to this Request to the extent that it seeks, in whole or in part, materials protected from disclosure by the attorney-client privilege, work-product immunity, the joint defense or common interest doctrine, or any other privilege afforded by applicable law.  Nu Image further objects to this Request to the extent it seeks confidential materials that are protected by a Protective Order that was entered in the Nu Image Arbitration.  Nu Image further objects to this Request to the extent that it seeks information that is not relevant to any party's claim or defense and that it is not proportional to the needs of the Litigation, considering the importance of the issues at stake in the action, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery, particularly to a non-party, outweighs its likely benefit.  Nu Image further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome.

Subject to and without waiving the foregoing objections, Nu Image responds that it will produce Nu Image's own entire document production from the Nu Image Arbitration, to the extent that such documents can be located after a reasonably diligent search, but will not otherwise search for materials potentially responsive to this Request.  Nu Image also incorporates herein by reference its responses to Requests Nos. 2-4 above.

**REQUEST NO. 7**:

Alchemy's financial statements including, but not limited to, balance sheets, profit and loss statements, cash flow statements, income statements, and equity statements, for the period from January 2012 through August 2014.

**RESPONSE TO REQUEST NO. 7**:

Nu Image incorporates each and all of its Preliminary Statements and General Objections as if restated herein.  Nu Image further objects to this Request to the extent that it seeks, in whole or in part, materials protected from disclosure by the attorney-client privilege, work-product immunity, the joint defense or common interest doctrine, or any other privilege afforded by applicable law.  Nu Image further objects to this Request to the extent it seeks confidential materials that are protected by a Protective Order that was entered in the Nu Image Arbitration.  Nu Image further objects to this Request to the extent that it seeks information that is not relevant to any party's claim or defense and that it is not proportional to the needs of the Litigation, considering the importance of the issues at stake in the action, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery, particularly to a non-party, outweighs its likely benefit.  Nu Image further objects to this Request as vague, ambiguous, overly broad, and unduly burdensome.

Subject to and without waiving the foregoing objections, Nu Image responds that it will produce Nu Image's own entire document production from the Nu Image Arbitration, and will also search the production of non-party BDO made in the Nu Image Arbitration for potentially responsive materials, to the extent that such production can be located after a reasonably diligent search, but will not otherwise search for materials potentially responsive to this Request.  Nu Image also incorporates herein by reference its responses to Requests Nos. 2-4 above.

- 14 -

DATED: May 23, 2023                By: _/s/ Iian Jablon_____
                                       Iian Jablon

                                       Iian Jablon (CA-205458)
                                       ijablon@irell.com
                                       Jie Gao (CA-348941)
                                       jgao@irell.com
                                       IRELL & MANELLA LLP
                                       1800 Ave. of the Stars, Ste. 900
                                       Los Angeles, CA 90067
                                       Telephone: (310) 277-1010
                                       Facsimile: (310) 203-7199

                                       Attorneys for Nu Image, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I, Iian Jablon, hereby certify that, on this 23rd day of May 2023, I did cause the foregoing document, described as NON-PARTY NU IMAGE, INC.'S OBJECTIONS AND RESPONSES TO SUBPOENA DUCES TECUM ISSUED BY PLAINTIFFS EMIGRANT BANK; AND PACIFIC MERCANTILE BANK, to be served on the parties listed below and in the manner so indicated.

BY ELECTRONIC MAIL:

**<u>Counsel for Emigrant Bank and Pacific Mercantile Bank</u>**

Corey Worcester (coreyworcester@quinnemanuel.com)
Gary E. Gans (garygans@quinnemanuel.com)
Sage Vanden Heuvel (sagevandenheuvel@quinnemanuel.com)

Quinn Emanuel Urquhart & Sullivan, LLP

DATED: May 23, 2023                    By: */s/ Iian Jablon*
                                             Iian Jablon

11225863