# Exhibit 3

# ALLEN & OVERY

**BY ECF**

The Honorable Paul G. Gardephe
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007-1312

**Allen & Overy LLP**
1221 Avenue of the Americas
New York, NY  10020
Tel                   212 610 6300
Fax                  212 610 6399
Direct line       212 610 6384
Emanuel.Grillo@AllenOvery.com

July 18, 2023

*Re:  Emigrant Bank and Pacific Mercantile Bank v. SunTrust Bank et. al.,*
     *No. 1:20-cv-02391 (PGG)*

Dear Judge Gardephe:

We write in our role as co-counsel with Daniels & Tredennick, PLLC, on behalf of non-party Virgo Investment Group LLC ("VIG"), in connection with the subpoena dated May 8, 2023 (the "Subpoena")[1] served on non-party Baker Tilly US LLP ("Baker Tilly") by plaintiffs Emigrant Bank ("Emigrant") and Pacific Mercantile Bank ("PMB" and when taken together with Emigrant, "Plaintiffs") in the above-referenced action. We write pursuant to Your Honor's Individual Rule IV.A to respectfully request a pre-motion conference regarding VIG's request for leave to file a motion to intervene and motion to quash or, in the alternative, for a protective order with respect to the Subpoena.[2] This request is distinct from, though inextricably related to, the request previously submitted by VIG, Virgo Societas Partnership III (Offshore), L.P. ("Offshore") and Virgo Societas Partnership III (Onshore) ("Onshore") (collectively, the "Virgo Parties") to the Court on June 11, 2023 [ECF 80], relating to a third-party subpoena to Nu Image, Inc.

Plaintiffs claim that the documents they seek from Baker Tilly "are relevant to the strength of the underlying alter ego claim against Virgo"—specifically, whether Calrissian L.P. ("Calrissian") is the alter ego of the Virgo Parties (*see* First Am. Compl. ("FAC") ¶ 35 [ECF 45]).  But in reality, the discovery materials that Plaintiffs seek are wholly unrelated to the claims and defenses raised by the parties in this proceeding, including the alter ego theory. The reason is simply one of timing: in January 2014, VIG, as investment manager of Onshore and Offshore, hired Baker Tilly as a consultant to assist VIG in analyzing the financial performance of Our Alchemy, LLC f/k/a Millennium Entertainment, LLC ("Alchemy") to determine whether to invest in Alchemy.  In August 2014, nearly ***seven months after VIG engaged***

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning(s) ascribed to them in the Subpoena. A copy of the Subpoena is attached hereto as **Exhibit 1**. Filings made to this action's docket are referenced as "ECF."

[2] Andrea L. Kim of Daniels & Tredennick, PLLC attended a meet and confer teleconference with Plaintiffs and Baker Tilly on July 5, 2023, regarding the Subpoena. On July 7, 2023, Plaintiffs sent a letter to Baker Tilly providing its response to Baker Tilly's objections to the Subpoena, offering further meet and confer on the issues. On July 17, 2023, Plaintiffs, Baker Tilly, and VIG held a further meet and confer teleconference, during which time VIG expressed its opposition to production by Baker Tilly of the report and other documents not relevant to this action. The parties have, therefore, reached an impasse.

Allen & Overy LLP is a limited liability partnership registered in England and Wales with registered number OC306763. It is authorized and regulated by the Solicitors Regulation Authority of England and Wales (SRA number 401323). Allen & Overy LLP is a multi-jurisdictional law firm with lawyers admitted to practise in a variety of jurisdictions. A list of the members of Allen & Overy LLP and their professional qualifications is open to inspection at its registered office, One Bishops Square, London, E1 6AD and at the above address. The term partner is used to refer to a member of Allen & Overy LLP or an employee or consultant with equivalent standing and qualifications.
Allen & Overy LLP or an affiliated undertaking has an office in each of: Abu Dhabi, Amsterdam, Antwerp, Bangkok, Beijing, Belfast, Boston, Bratislava, Brussels, Budapest, Casablanca, Dubai, Dublin, Düsseldorf, Frankfurt, Hamburg, Hanoi, Ho Chi Minh City, Hong Kong, Istanbul, Jakarta (associated office), Johannesburg, London, Los Angeles, Luxembourg, Madrid, Milan, Munich, New York, Paris, Perth, Prague, Rome, San Francisco, São Paulo, Seoul, Shanghai, Silicon Valley, Singapore, Sydney, Tokyo, Warsaw, Washington, D.C.

***Baker Tilly, Calrissian was formed*** by Onshore and Offshore to purchase a substantial portion of the membership interests in Alchemy (the "Alchemy Purchase"). The Subpoena seeks (a) the report that Baker Tilly prepared for VIG (which is dated June 13, 2014), including drafts thereof; (b) underlying materials related to Alchemy (irrespective of whether they were relied on by Baker Tilly in preparing the report); (c) the engagement letter between VIG and Baker Tilly; and (d) documents and communications related to (i) the engagement, (ii) the report, and (iii) Baker Tilly's work. Materials prepared months ***before*** Calrissian's formation cannot constitute evidence as to whether Calrissian was an alter ego of the Virgo Parties. Rather, the Subpoena is yet another attempt by Plaintiffs to abuse the discovery process in this action to seek documents for use in the dismissed New York Supreme Court action against VIG that Plaintiffs are currently attempting to appeal to the New York Court of Appeals. Such abuses should not be countenanced; and thus, VIG's request for intervention and leave to move to quash the Subpoena or, in the alternative, for the entry of a protective order should be granted.

## I.    Relevant Background.

**Baker Tilly Engagement.** In advance of the Alchemy Purchase, VIG engaged Baker Tilly as a consultant to perform due diligence and prepare a report for VIG's use alone in performing its own due diligence of Alchemy on behalf of the investment funds it advises. VIG was also contractually obligated not to disclose the report to any third party without Baker Tilly's written consent. VIG did not share the report with SunTrust Robinson Humphries (the Agent's sister entity and investment bank selling Alchemy) or PMB (Alchemy's incumbent lender in 2014).[3] As Baker Tilly's counsel has told Plaintiffs they would swear to in a formal declaration as needed, the documents relied on by Baker Tilly in creating the report came solely from a confidential data-room hosted by Alchemy for the sale process, to which, upon information and belief, the Agent also had access. Baker Tilly's report was dated June 13, 2014, two months before the Alchemy Purchase.

**Creation of Calrissian.** Calrissian was formed on August 4, 2014 as a holding company solely to own the membership interests in Alchemy. FAC ¶ 29-30.[4] On August 18, 2014, Calrissian, Offshore, and Onshore executed a Purchase Agreement with respect to the Alchemy Purchase. FAC ¶ 31. Thus, Baker Tilly's final work product was completed months before Calrissian was formed. As such, Baker Tilly's work could not relate to any act by Calrissian; nor is it relevant to the allegation that Calrissian was the alter ego of any Virgo Party. Yet, Emigrant's first loan to Alchemy took place in June 2015, a *year* after Baker Tilly's diligence report was completed solely for VIG. FAC ¶¶ 55-61.

**The Calrissian Alter Ego Claim.** On September 27, 2021, Plaintiffs filed the First Amended Complaint (the "Complaint") against SunTrust Bank and Truist Bank (collectively, the "Agent") in this action. The claims in the Complaint are premised on the Agent's failure to commence a claim on Plaintiffs' behalf against the Virgo Parties "under the Guaranty, on the grounds that Virgo is the principal and/or alter ego of Calrissian." Plaintiffs further allege the Agent was obligated to do so upon Plaintiffs' request. FAC ¶¶ 106, 118.[5]

---

[3] Plaintiffs allege—inaccurately—that VIG asked Baker Tilly to change its negative assessments of Alchemy's finances but such allegations are not relevant, and cannot make the report relevant, when neither the Agent nor Plaintiffs ever saw it.

[4] The Agent and PMB were aware that Calrissian was a holding company with no assets other than Calrissian's membership interests. *See* Revolving Credit and Term Loan Agreement, FAC, Ex. C at 20 (referring to Calrissian throughout as "HoldCo"); Emails dated August 29, 2014 between, among others, Mark Perez, Sutton Fannon of SunTrust and Alissa Miller of Akin Gump Straus Hauer & Feld LLP, attached hereto as **Exhibit 2** (discussing the Calrissian guaranty, with SunTrust's counsel acknowledging that Calrissian "is just a shell company.").

[5] Two of the claims in the FAC were dismissed. *See* Memorandum Opinion & Order [ECF 65]. The remaining claims allege that SunTrust improperly paid to itself proceeds received from the Alchemy's chapter 7 trustee (the "Alchemy Trustee") rather

## II.     The Baker Tilly Documents Are Irrelevant to the Present Action.

Rule 26(b)(1) provides that the scope of permissible discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ." Fed. R. Civ. P. 26(b)(1). However, discovery of information that is unrelated to claims and defenses is not permitted. *See, e.g., Collens v. City of New York*, 222 F.R.D. 249, 252-253 (S.D.N.Y. 2004) ("[C]ourts should not grant discovery requests based on pure speculation that amount to nothing more than a fishing expedition into actions or past wrongdoing not related to the alleged claims or defenses."). The documents sought from Baker Tilly in the Subpoena are not relevant for two primary reasons.

First, the documents requested in the Subpoena pre-date any conduct relevant to Plaintiffs' claims. The Baker Tilly engagement took place between January and June of 2014 and the work was completed before the creation of Calrissian, the Alchemy Purchase, or the loans made under the Credit Agreement. Accordingly, the Baker Tilly report and all related materials have no relevance to the claims in this case.

Second, and more significantly, the Subpoena calls for documents that would only yield information as to whether Alchemy—not Calrissian—was an alter ego of a Virgo Party. It seeks Alchemy-provided documents and a report on Alchemy from Baker Tilly. In determining whether to pierce the corporate veil under New York law, a plaintiff must establish that: "(1) the owner exercised such control that the corporation has become a mere instrumentality of the owner, who is the real actor; (2) the owner used this control to commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to the plaintiff." *Babitt v. Vebeliunas (In re Vebeliunas)*, 332 F.3d 85, 91-92 (2d Cir. 2003) (internal quotations omitted).

In this instance, based on Plaintiffs' own allegations, the relevant "corporation" at issue is Calrissian, not Alchemy.  Moreover, the "fraud or other wrong" involved would have to have been perpetrated through Calrissian as guarantor of the obligations under the Credit Agreement, not through the inducement of Plaintiffs to extend loans to Alchemy under the Credit Agreement. Alchemy's financial condition and what the Virgo Parties knew of it has no bearing on (i) whether the Virgo Parties exercised sufficient control over Calrissian to make it a mere instrumentality, (ii) whether the Virgo Parties used Calrissian to commit a fraud or wrongdoing through its guaranty, or (iii) whether such alleged wrongdoing resulted in unjust loss or injury—or whether such loss or injury was the result of another cause such as Plaintiffs' own deficient diligence into Calrissian's sole asset, that is, its interests in Alchemy.

The documents that Plaintiffs seek from Baker Tilly, all of which concern Alchemy and not Calrissian, will not provide any relevant information regarding the Calrissian-Virgo Parties relationship in accordance with the factors or the other considerations identified by the Second Circuit. Accordingly, the information sought from Baker Tilly in the subpoena is wholly irrelevant to Plaintiffs' claims and not discoverable under Rule 26.

Notably absent from the Complaint is any claim premised on SunTrust's refusal to bring a claim against the Virgo Parties as the alter ego of Alchemy under the Credit Agreement.[6]  Plaintiffs cannot plausibly

---

than remitting such proceeds to Plaintiffs. FAC ¶¶ 121-128, 135-141. As such payments would have occurred in 2021, any documents related to Baker Tilly's 2014 engagement cannot possibly be relevant to such claims.

[6] Plaintiffs have at various times characterized their claims against the Agent as being premised on the Virgo Parties being alter egos of Calrissian alone or both Alchemy and Calrissian, depending on which is advantageous at the time. *See, e.g.* FAC, Ex G at 2 ("Emigrant and PMB believe that [. . . ] (iii) Virgo is liable to the Lenders as Alchemy's and Calrissian's alter ego and/or principal.").

assert that SunTrust breached the Credit Agreement by failing to bring claims against the Virgo Parties as the alter egos of Alchemy because any claim based on the notion that any of the Virgo Parties are Alchemy's alter ego belongs to Alchemy's bankruptcy estate. *See Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 627 (D. Del. 2018) (holding a creditor lacks standing to bring claims that defendant was alter ego of bankrupt debtor because such claims are property of bankruptcy estate). The Bankruptcy Court barred such claims, holding that Plaintiffs "may not pursue causes of action or theories of recovery in the State Court Litigation against a party on the basis that that party was the alter ego of" Alchemy.[7] Indeed, such a claim is so lacking in merit that neither Alchemy's chapter 7 bankruptcy trustee nor Calrissian's chapter 7 bankruptcy trustee chose to pursue it despite their rights to bring such claims.

## III.     Plaintiffs' Ulterior Purpose Is to Use Discovery in this Matter Against the Virgo Parties.

As set forth more fully in the Virgo Parties' pre-motion conference letter filed on June 11, 2023 [ECF 80], the Virgo Parties have been or currently remain in litigation in multiple forums that concern Plaintiffs and nearly identical claims and allegations to those raised here. Given the lack of relevance of the documents requested in the Subpoena to this action, it is evident that the Plaintiffs intend to try to use such documents against the Virgo Parties in another forum.

Plaintiffs should not be able to pursue the materials through the Subpoena when their obvious intent in doing so is to use such materials to further one or more other litigations against the Virgo Parties. Courts routinely prohibit parties from engaging in such gamesmanship. *See, e.g., Nicholas v. Poughkeepsie Sav. Bank/FSB*, 1991 WL 113279, at *2 (S.D.N.Y. June 14, 1991) ("[A] court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery is properly denied.") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 n.17 (1978)).

## IV.     The Limited Request for Leave to Intervene Should Be Granted.

The Virgo Parties respectfully request to intervene here as a matter of right. To prevail on a motion to intervene as a matter of right under Rule 24(a), the applicant must: (i) file a timely application, (ii) show an interest in the action; (iii) demonstrate that the interest may be impaired by the disposition of the action; and (iv) show that the interest is not adequately protected by the parties to the action. *In re Hornbeam Corp.*, No. 14-MISC-424-PART1, 2015 WL 13647606, at *2 (S.D.N.Y. Sept. 17, 2015), *aff'd*, 722 F. App'x 7 (2d Cir. 2018), and *aff'd*, 722 F. App'x 7 (2d Cir. 2018). Each of the requirements to intervene as a matter of right are satisfied here.

***First***, the Virgo Parties filed the application timely because they submitted the filing shortly after reaching impasse with Plaintiffs regarding the Subpoena and the materials have not been produced.

***Second***, the Virgo Parties have an interest in objecting to the Subpoena. The Plaintiffs seek discovery of the Virgo Parties' documents indirectly through Baker Tilly for purposes of continuing Plaintiffs' quixotic, multi-forum litigation elsewhere against the Virgo Parties. Additionally, the documents sought from Baker Tilly implicate the Virgo Parties' proprietary and confidential investment strategy.

***Third***, the Virgo Parties' will be directly impacted by Plaintiffs obtaining unwarranted discovery to continue their vexatious litigation strategy. Additionally, disclosure of their confidential information would provide competitors and potential acquisition targets with information regarding how the Virgo Parties conduct diligence on, assess and negotiate potential investments, thereby risking placing the Virgo Parties at a competitive disadvantage.

---

[7] A copy of the Bankruptcy Court's order is attached hereto as **Exhibit 3.**

***Finally***, the existing parties, and the subpoenaed party, Baker Tilly, do not adequately represent the Virgo Parties' interests since those parties do not have an interest in putting an end to Plaintiffs' abuse of the discovery process and preserving the Virgo Parties' confidences.[8]

## V.    Request for Leave to Move to Quash or, in the Alternative, for Entry of a Protective Order, Should Also Be Granted.

The Virgo Parties respectfully request leave to move to quash the subpoena pursuant to Rule 45 or, in the alternative, for entry of a protective order pursuant to Rule 26, to prevent disclosure of confidential information held by Baker Tilly that is not relevant to this case.  Rule 45 permits this Court, "[o]n timely motion … [to] quash or modify a subpoena that … requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" Fed. R. Civ. P. 45(d)(3)(A)(iii). Pursuant to Rule 26, a court may, for good cause, issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including by forbidding the disclosure or discovery. Fed. R. Civ. P. 26(c)(1).

Here, the materials sought are irrelevant to the claims and defenses in this matter and are, instead, intended to harass and oppress the Virgo Parties. Plaintiffs have suggested that the Baker Tilly information is relevant to what the Virgo Parties knew and/or failed to disclose about *Alchemy's* financial situation to the Agent and to Plaintiffs. However, they make no attempt to draw a link between that inquiry and their actual claims and defenses in respect of Calrissian.[9] Put simply, what the Virgo Parties may or may not have known about Alchemy ***before Calrissian's formation*** has no bearing on whether any of the Virgo Parties is Calrissian's alter ego or used Calrissian to perpetrate fraud or other wrongdoing.

There is no unfairness to Plaintiffs if they are not provided with such discovery for nearly the same reason: as set forth above, the documents sought are not relevant to any claim or defense asserted by Plaintiffs or Defendants in this action.  Furthermore, the Virgo Parties—in responding to the subpoena directed at VIG—have provided Plaintiffs with requested documents relevant to Calrissian, along with additional documents previously produced to the Alchemy Trustee. Moreover, as Plaintiffs have been informed, the documents Baker Tilly relied upon for its work and analysis came from an Alchemy-hosted data-room to which Baker Tilly no longer has access.  Plaintiffs should therefore seek such information from the Defendants, ***who had access to the same data-room***, or the Alchemy Trustee, who would have access to the underlying records that would have been in the data-room.

For these reasons, the Court should grant the Virgo Parties the relief sought herein.

---

[8] Alternatively, the Virgo Parties should be permitted to intervene by virtue of the Court's broad discretion to allow intervention under Rule 24(b). *In re Hornbeam Corp.*, 2015 WL 13647606, at *2. A court considers the same factors as intervention as a matter of right, as well as whether the proposed intervention will unduly delay or prejudice the adjudication of the parties' rights. *Id*. Here, for the same reasons outlined above, intervention will not delay the proceedings or cause any prejudice as Plaintiffs are not entitled to discovery that is irrelevant to the any party's claims or defenses.

[9] Plaintiffs do not allege in the Complaint that the Agent should have brought claims on the premise that Alchemy was the Virgo Parties' alter ego or that the Virgo Parties used Alchemy to perpetuate wrongdoing against Plaintiffs.  Pursuant to the Bar Order entered in the Alchemy bankruptcy case, they cannot.  Rather, the relevant claims rely on the purported alter ego relationship between Calrissian and the Virgo Parties and the resulting liability of the Virgo Parties on Calrissian's Guaranty.

Respectfully submitted,

ALLEN & OVERY LLP

By: /s/ *Emanuel C. Grillo*
Emanuel C. Grillo
1221 Avenue of the Americas
New York, New York 10020
Tel: 212-610-6300
Emanuel.Grillo@allenovery.com

*Attorneys for non-party Virgo Investment Group LLC*

# EXHIBIT 1

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### Southern District of New York

| | |
|---|---|
| Emigrant Bank and Pacific Mercantile Bank | ) |
| *Plaintiff* | ) |
| v. | ) |
| SunTrust Bank et al. | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.   1:20-cv-02391-PGG

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:        Baker Tilly US LLP c/o Corporation Service Company
               251 Little Falls Dr., Wilmington, DE 19808

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A, attached

| Place:   Potter Anderson & Corroon LLP | Date and Time: |
|---|---|
| 1313 N. Market Street, 6th Floor | |
| Wilmington, DE 19801 | 06/07/2023 5:00 pm |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:       05/08/2023

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | /s/ Corey Worcester |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Emigrant Bank
and Pacific Mercantile Bank                                                          , who issues or requests this subpoena, are:

Corey Worcester, 51 Madison Ave., 22nd Floor, New York, NY 10010, coreyworcester@quinnemanuel.com,
(212) 849-7000

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:20-cv-02391-PGG

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____  on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____            _____
                                              *Server's signature*

                                      _____
                                              *Printed name and title*

                                      _____
                                              *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  **(A) Appearance Not Required.** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B) Objections.** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**
  **(A) When Required.** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B) When Permitted.** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C) Specifying Conditions as an Alternative.** In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A) Documents.** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B) Form for Producing Electronically Stored Information Not Specified.** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C) Electronically Stored Information Produced in Only One Form.** The person responding need not produce the same electronically stored information in more than one form.
  **(D) Inaccessible Electronically Stored Information.** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A) Information Withheld.** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B) Information Produced.** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS

Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense. The words and phrases set forth below shall be defined as follows when used in the Requests:

1.    **"Alchemy"** means Our Alchemy, LLC and its predecessors (including Millennium Entertainment LLC), successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf.

2.    **"Alchemy Purchase"** shall refer to the sale of Alchemy (then named Millennium Entertainment, LLC) by Nu Image, *et al.* to Calrissian, *et al.* as reflected in the Alchemy Purchase Agreement.

3.    **"Alchemy Purchase Agreement"** shall refer to the Purchase Agreement dated August 18, 2014 between Calrissian *et al.* and Nu Image, *et al.*

4.    **"Baker Tilly"** means Baker Tilly US, LLP, formerly known as Baker Tilly Virchow Krause, LLP, and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, or any person who otherwise acted or is acting on its behalf.

5.    **"Baker Tilly Report"** means any draft or final report, memorandum, analysis, evaluation, assessment, valuation, investigation, or due diligence conducted by Baker Tilly Relating to Alchemy, the Alchemy Purchase, or the Alchemy Purchase Agreement.

1

6. **"Borrowing Base"** means the "Borrowing Base" defined in Sections 1.1 of the Original Credit Agreement and the Amended Credit Agreement.

7. **"Calrissian"** means Calrissian L.P. and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf.

8. **"Channel Stuffing"** means a business practice used to inflate sales or earnings figures by deliberately sending distributors and retailers more products than end-users are expected to purchase.

9. **"Communication"** means any transmittal of information (in the form of facts, ideas, inquiries, or otherwise) whether orally or by document, telephone, telecopier, mail, fax, email, voicemail, cellular phone text message, instant message, personal delivery, or by any other means, be they analog, electronic, or otherwise.

10. **"Complaint"** shall refer to the First Amended Complaint in the above-captioned litigation, ECF No. 45. The Complaint and its exhibits are attached hereto as Attachment 1.

11. **"Credit Agreement"** means, collectively, the Revolving Credit and Term Loan Agreement by and among SunTrust, PMB, Preferred Bank, and Alchemy, dated as of September 4, 2014 (as amended from time to time) (the **"Original Credit Agreement"**), as well as the Amended and Restated Revolving Credit and Term Loan Agreement by and between Emigrant, Preferred Bank, PMB, SunTrust, and Alchemy, dated as of July 9, 2015 (as amended from time to time) (the **"Amended Credit Agreement"**). The Amended Credit Agreement and Original Credit Agreement are attached as Exhibits A and C to the Complaint, which is attached hereto as Attachment 1.

12.     "**Document**" shall be construed to the fullest extent permissible under the Federal Rules of Civil Procedure and means, without limitation, the original and all copies and translations of any information in any written, recorded, electronic, or graphic form including all memoranda, notes, interoffice and intra-office communications, telegrams, telecopies, letters, reports, stenographic notes, bulletins, notices, emails, text messages or other messaging-application messages, instant messages or other electronic-chat messages, telephonic or personal communications, computer models, spreadsheets, data, accounts, records, calendars, diaries, minutes, contracts or other legal papers, resolutions, written policies or procedures, insurance policies, audio records, photographs, microform, film, and any electronically stored information stored in any medium, including computer backup devices, hard drives, electronic share drives, or any other virtual or physical space.  A draft or non-identical copy is a separate Document within the meaning of this term.

13.     "**Emigrant**" means Emigrant Bank and its advisors, agents, representatives, attorneys, and affiliates thereof (including Aperture Media Partners), all predecessors and successors thereof, and all of their directors, officers, employees, and any other persons acting on their behalf.

14.     "**Including**" shall be construed to mean "including, without limitation" or "including, but not limited to."

15.     "**Lenders**" means each and all of the following:  Preferred Bank, SunTrust, Emigrant, and PMB.

16.     "**Nu Image**" means Nu Image, Inc. and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all

of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf.

17.    **"Person"** means, without limitation, any natural person, corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, group, organization or entity, and shall include the present and former officers, executives, partners, members, controlling shareholders and any other person acting or purporting to act on behalf of any of them, and any of their present or former parent corporations, subsidiaries, affiliates, divisions, predecessors and successors in interest.

18.    **"Plaintiffs"** means Emigrant and PMB as defined herein.

19.    **"PMB"** means Pacific Mercantile Bank and its predecessors, successors, advisors, agents, representatives, attorneys, and affiliates thereof, and all of their directors, officers, employees, and any other persons acting on their behalf.

20.    **"Relating to," "Related to," "Concerning,"** or **"Regarding"** in addition to their customary and usual meanings, means regarding, concerning, referring to, pertaining to, making reference to, reflecting, discussing, describing, analyzing, supporting, evidencing, comprising, constituting, setting forth, containing, showing, disclosing, explaining, summarizing, mentioning, identifying, alluding to, responding to, connected with, commenting on, with respect to, in respect of, about, resulting from, embodying, contradicting, having a relationship to, or in any way being factually, legally, or logically connected to, in whole or in part, the stated subject matter.

21.    **"SunTrust"** means SunTrust Bank and all of its divisions, subdivisions, affiliates (including SunTrust Robinson Humphreys), parents, predecessors, successors (including Truist), joint ventures, present and former officers, directors, employees, representatives, agents,

4

attorneys, accountants, advisors, assigns, and any other persons who otherwise acted or is acting on its behalf.

22.     **"Truist"** means Truist Bank and all of its divisions, subdivisions, affiliates, parents, predecessors (including SunTrust), successors, joint ventures, present and former officers, directors, employees, representatives, agents, attorneys, accountants, advisors, assigns, and any other persons who otherwise acted or is acting on its behalf.

23.     **"Virgo"** means Virgo Investment Group, LLC and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, including but not limited to Virgo Societas Partners LLC, Virgo Societas Partnership III (Onshore) L.P., Virgo Societas Partnership III (Offshore) L.P., and Virgo Service Company, LLC, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf.

24.     **"You"** or **"Your"** shall refer to Baker Tilly as defined herein.

## INSTRUCTIONS

1.     Unless otherwise indicated, the Documents requested to be inspected and produced in this request include all Documents in Your possession, custody, or control.  Without limiting the terms "possession, custody, or control" as used in the preceding sentence, a Document is in Your possession, custody, or control if You have actual possession or custody or the right to obtain the Document or a copy thereof upon demand from one or more of Your members, employees, representatives, agents, attorneys, assigns, affiliates, parents, subsidiaries, independent contractors, consultants, or any other Person or public or private entity that has actual physical possession thereof.  In respect of email, the terms "possession, custody, or control" include, without regard to the subdirectory path where stored: (a) "deleted" emails that have not been permanently deleted,

(b) "sent" emails, (c) "received" emails, (d) emails stored in any personal accounts, and (e) any Drafts of the foregoing that have not been permanently deleted.

2.      Produce each Document as it is kept in the usual course of business.

3.      Select Documents from files and other sources and number such Documents so that the source of each Document may be readily determined.

4.      Produce file folders with tabs or labels intact with such Documents.

5.      Produce complete electronic-file directories intact with such Documents.

6.      A document with handwritten, typewritten or other recorded notes, editing marks, etc., is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

7.      Do not separate Documents attached to each other.

8.      Produce each Document in its entirety, without abbreviation or redaction, and include all attachments, transmittal sheets, notes, cover letters, exhibits, appendices, enclosures, and all Drafts and non-identical copies of each Document.

9.      Produce Documents not otherwise responsive to a request if such Documents are attached to, or enclosed with, any responsive Document.  In respect of email, produce the email and all attachments if either the email or any attachment is responsive.

10.     Produce Documents not otherwise responsive to these requests if such Documents mention, discuss, refer to, or explain the Documents that are called for by the requests, or if such Documents are attached to Documents called for by these requests and constitute routing slips, transmittal memoranda, letters, emails, comments, evaluations, or similar materials.

6

11.     If You withhold any Document requested herein on the basis of any assertion of privilege or other immunity from discovery, comply with the requirements of Federal Rule of Civil Procedure 45.

12.     You are further requested to provide all portions of requested Documents that are not subject to a claim of privilege or other reason for nonproduction by excising or otherwise protecting the portions for which a privilege is asserted, if such a technique does not result in disclosing the contents of the portions for which some privilege is asserted.

13.     If Your response to a particular request is a statement that You lack the ability to comply with that request, specify whether the inability to comply is because the particular item or category of information never existed; was destroyed, lost, misplaced, or stolen; or was never, or is no longer, in Your possession, custody, or control.  Provide the name and address of any Person known or believed by You to have possession, custody, or control of that particular item or category of information.

14.     In the event that any Document responsive to the Requests was, but is no longer, in Your possession, custody, or control, or has been lost, destroyed, discarded, or otherwise disposed of, You are requested to identify such Document as completely as possible, including without limitation, the following information:  (a) the nature of the Document; (b) the person who prepared or authorized the Document and, if applicable, the person to whom the Document was sent; (c) the date on which the Document was prepared or transmitted; and (d) if possible, what has happened to the Document and where it or any copies of it may be located, or if the Document was lost or destroyed, the date on which the Document was lost or destroyed, and, if destroyed, the conditions of and the reasons for such destruction and the persons requesting and performing the destruction.

15.     If no Documents are responsive to a particular Request, you are to state that no responsive Documents exist.

16.     In the event that you object to any Request on the ground that it is overbroad or unduly burdensome for any reason, respond to that Request as narrowed to the least extent necessary, in your judgment, to render it not overbroad/unduly burdensome and state specifically the extent to which you have narrowed that Request for purposes of your response and the factual basis for your conclusion.

17.     Production of any Document by another Person does not relieve You of Your obligation to produce Your copy of the same Document, even if the two Documents are identical.

18.     The singular includes the plural and vice versa.  The words "and" and "or" are either conjunctive or disjunctive so that the scope of any request is most inclusive.  The words "all" and "any" mean "any and all."  The words "each" and "every" shall mean "each and every."

19.     These requests are continuing.  Supplement Your responses in the event You obtain or discover additional information after any of Your responses.

20.     Each request is independent.  No request limits the scope of any other request.

21.     The use of defined terms apply whether or not they are capitalized.

22.     References to a gender shall be interpreted to include the masculine, feminine, and neuter.

23.     The past tense shall be construed to include the present tense and vice versa.

24.     References to entities or corporations other than natural persons, including SunTrust, Alchemy, Virgo, and Calrissian, shall be deemed to include, in addition to the entity named, its divisions, departments, subsidiaries, affiliates, parents, predecessors, present or former officers, present or former directors, employees, agents, representatives, accountants and attorneys,

8

successors, and all other persons acting or purporting to act on behalf of each such entity or corporation.

25.     Documents in electronic form, including emails, should be produced in color in single page tagged image file format ("TIFF"). TIFFs shall show all text and images that would be visible in the original electronic format (native format), including redlines and speaker notes, and Plaintiffs reserve the right to make a reasonable request for the production of any Documents in native format. An associated load file linking the images to the corresponding Document should be provided. All metadata associated with any electronically stored information shall be produced in text format linked to the associated Document. Extracted text or, if extracted text is not available, optical character recognition (OCR) text should be provided in Document-level text files. Alternatively, Documents in electronic form may be produced in a manner consistent with any e-discovery stipulation that is filed in this action.

26.     Unless otherwise specified, these requests seek Documents prepared, sent, provided, received, in possession during, or relating to, the period from January 1, 2014 to January 1, 2019 (the "Relevant Period"), or relating to such period whenever prepared.

## DOCUMENT REQUESTS

**REQUEST NO. 1:**

All Documents and Communications Relating to the Baker Tilly Report, including but not limited to:

a.     All drafts and versions of the Baker Tilly Report;

b.     All Documents and Communications Relating to the Baker Tilly Report;

c.     All Documents and Communications reviewed or considered by Baker Tilly in preparing the Baker Tilly Report;

d.     All Documents and Communications provided to Baker Tilly in preparation for or Relating to the Baker Tilly Report;

e.     All work papers relating to the Baker Tilly Report; and

g.     All Documents and Communications Relating to Baker Tilly's retention to analyze, review, evaluate, assess, investigate, value, or conduct due diligence on the Alchemy Purchase.

**REQUEST NO. 2:**

All Documents and Communications Relating to the terms of your engagement Relating to Alchemy.

**REQUEST NO. 3:**

All Documents and Communications Relating to any analysis, review, evaluation, assessment, investigation, valuation, or due diligence conducted concerning Alchemy, including all accounting and financial records and work files.

**REQUEST NO. 4:**

All Documents and Communications Relating to any opinion or analysis expressed by Baker Tilly concerning Alchemy's earnings, including statements of earnings that were the result of possible or suspected fraud, misrepresentations, false statements, material omissions, or accounting misstatements.

**REQUEST NO. 5:**

All Documents and Communications Relating to any actual or suspected improper or fraudulent business practices by Alchemy, including but not limited to the effect of such practices on Alchemy's financial reports and borrowing base certificates. Examples of improper or fraudulent business practices include, but are not limited to:

      a.      Channel Stuffing;

      b.      Use of an incorrect return rate for DVDs;

      c.      Use of any incorrect budget;

      d.      Inflation of any financial performance; and

      d.      Reporting, distribution, circulation, or presentation of incorrect financial reports.

**REQUEST NO. 6:**

All Documents and Communications Relating to Alchemy's return rates for DVDs, including projected rates of return and actual rates of return, for the period from January 2011 through August 2014.

**REQUEST NO. 7:**

All Documents and Communications relating to Alchemy's financial statements, including but not limited to annual and quarterly budgets, balance sheets, profit and loss

statements, cash flow statements, income statements, equity statements, return reserves, and borrowing base certificates.

**REQUEST NO. 8:**

All Documents and Communications relating to any assessment, due diligence, valuation, or analysis that You conducted or reviewed relating to the Alchemy Purchase, the ANConnect Transaction, or the ARC Transaction.

**REQUEST NO. 9:**

All Documents and Communications Relating to any direction or request that Baker Tilly change any content or conclusion in Baker Tilly's analysis of Alchemy or the Baker Tilly Report (or drafts thereof), including but not limited to a request from Virgo to change an assessment of the Alchemy Purchase or any aspect of Alchemy's finances.

**REQUEST NO. 10:**

All Documents and Communications exchanged between You and any of the following Persons regarding Alchemy's finances:

     a.     Alchemy;

     b.     Calrissian;

     c.     Virgo;

     d.     Any Lender; or

     e.     Nu Image.

# ATTACHMENT 1

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

EMIGRANT BANK; AND PACIFIC MERCANTILE BANK,

               Plaintiffs,

        -against-

SUNTRUST BANK; TRUIST BANK; AND DOES 1 THROUGH 10, INCLUSIVE,

              Defendants.

Civil Action No. 1:20-cv-02391-PGG

**FIRST AMENDED COMPLAINT**

Plaintiffs Emigrant Bank ("Emigrant") and Pacific Mercantile Bank ("PMB," and, collectively with Emigrant, "Plaintiffs"), by and through their counsel Quinn Emanuel Urquhart & Sullivan, LLP, bring this First Amended Complaint against Defendants SunTrust Bank and Truist Bank (collectively, "SunTrust"), and Defendants Doe 1 through Doe 10 ("Doe Defendants"), alleging as follows:

### Nature of the Case

1.      Emigrant is a privately-owned bank that is the oldest savings bank in New York City. PMB is a bank in Orange County, California that provides commercial banking services to businesses, business owners, and professionals. Defendant SunTrust Bank is a large national commercial bank based in Atlanta, Georgia. As of December 6, 2019, SunTrust Bank merged with Branch Banking and Trust Company to become Defendant Truist Bank.

2.      Emigrant, PMB, and SunTrust are parties to an Amended and Restated Revolving Credit and Term Loan Agreement, dated as of July 9, 2015, as amended (the "Credit Agreement"). A copy of the Credit Agreement is annexed hereto as **Exhibit A**. In the Credit Agreement, SunTrust, Emigrant, PMB, and Preferred Bank ("Preferred" and, collectively with

SunTrust, Emigrant, and PMB, the "Lenders") established a $59.5 million revolving credit and term loan facility for their borrower, Our Alchemy, LLC ("Alchemy"), an independent film and video distributor.

3.      The Credit Agreement was secured by a Guaranty and Security Agreement, dated as of September 4, 2014, as amended (the "Guaranty"). A copy of the Guaranty is annexed hereto as **Exhibit B**. The parties to the Guaranty were SunTrust (on behalf of the Lenders), Alchemy, and Calrissian L.P. ("Calrissian"). Calrissian, the 100% owner of Alchemy, was in turn wholly owned by Virgo Investment Group, LLC and its affiliates (collectively, "Virgo"). In the Guaranty, Calrissian—acting on behalf of Virgo—agreed to guaranty and secure Alchemy's obligations under the Credit Agreement.

4.      The Credit Agreement designated SunTrust as the Administrative Agent on behalf of the Lenders, vesting SunTrust with responsibilities and duties such as, *inter alia*, enforcing the Loan Documents including the Guaranty. (Ex. A, Credit Agreement §§ 8.1, 9.11, 9.13).

5.      The Credit Agreement vested certain rights in the Lenders, including, *inter alia*, the right of Lenders with a majority stake (the "Required Lenders") to demand that SunTrust, as the Administrative Agent under the Credit Agreement, "exercise all remedies contained in any other Loan Document" and "exercise any other remedies available at law or in equity" if an Event of Default has occurred. *Id.* § 8.1. Emigrant and PMB together hold more than 50% of the aggregate outstanding revolving credit exposure and term loans, and thus qualify as "Required Lenders" under the Credit Agreement.

6.      Events of Default under the Credit Agreement have occurred. In early 2016, Alchemy failed to pay amounts due under the Credit Agreement. On June 15, 2016, SunTrust, as Administrative Agent, notified Alchemy and Calrissian that all obligations owed under the

Credit Agreement were immediately due and payable (the "Debt Acceleration Notice"). The accelerated debt includes approximately $46 million in unpaid loans, plus interest and other costs. Neither Alchemy nor Calrissian has made any payment to SunTrust or the other Lenders following the Debt Acceleration Notice.

7.     On July 1, 2016, Alchemy filed a petition under Chapter 7 of Title 11 of the United States Code in the Bankruptcy Court for District of Delaware, under the caption *In re Our Alchemy, LLC* Case No. 16-11596-KG (the "Alchemy Bankruptcy"). The Alchemy Bankruptcy is still pending and being administered by a Chapter 7 trustee (the "Alchemy Trustee").

8.     On August 5, 2016, SunTrust, as Administrative Agent, filed a suit for breach of the Guaranty against Calrissian in the Supreme Court of the State of New York, under the caption *SunTrust Bank v. Calrissian LP*, Index No. 654148/2016 (the "Guaranty Action"). SunTrust sought damages of approximately $46 million based on Calrissian's breach of the Guaranty.

9.     On February 16, 2017, Calrissian filed a petition under Chapter 11 of Title 11 of the United States Code in the Bankruptcy Court for District of Delaware, under the caption *In re Calrissian LP*, Case No. 17-10356-KG (the "Calrissian Bankruptcy"). On August 10, 2018, the Calrissian Bankruptcy was converted to Chapter 7. On January 9, 2020, the Bankruptcy Court entered an order closing the Calrissian Bankruptcy.

10.    On December 13, 2019, following discussions between Plaintiffs and SunTrust, Plaintiffs made a formal demand pursuant to Section 8.1 of the Credit Agreement that SunTrust, as Administrative Agent for the Lenders, file suit against Virgo for breach of the Guaranty. Because Calrissian was the alter ego, and/or the actual or ostensible agent of Virgo, Virgo is liable for Calrissian's debt, including repayment of the loan guaranteed. Plaintiffs also proposed,

in lieu of SunTrust filing suit on its own, that SunTrust cooperate in a suit against Virgo whereby Emigrant would finance the litigation.

11.    SunTrust has refused to agree to either the demand to file suit or the cooperation proposal.  SunTrust has stated that it would only cooperate in any litigation if Emigrant would give SunTrust a full release of all claims, known and unknown.

12.    Virgo owes the Lenders in excess of $50 million pursuant to the Guaranty. Emigrant and PMB have demanded that SunTrust, as Administrative Agent, take legal action to recoup this money because Section 9.13 of the Credit Agreement specifies that the Administrative Agent has the right to enforce the Guaranty.  Emigrant even offered to manage and pay for the litigation, with no cost to SunTrust, despite Emigrant having no obligation to pay more than its proportionate share as one of the Lenders.  But rather than comply with its contractual obligations to pursue legal remedies on behalf of the Lenders, SunTrust instead has sought to leverage its power to take legal action on behalf of the Lenders to seek full and final releases of unknown claims against it.

13.    The Credit Agreement provides in Section 8.1 that, following an Event of Default, SunTrust "shall" exercise any remedies contained in any Loan Document or otherwise available at law or in equity following a written request from the Required Lenders.  By refusing to enforce the Guaranty against Virgo, SunTrust has breached its obligations under the Credit Agreement.  SunTrust's breach of the Credit Agreement will cause damages to Plaintiffs of approximately $26 million, representing their *pro rata* share of the amount due under the Credit Agreement and the Guaranty.

14.    Furthermore, after Plaintiffs filed this suit, SunTrust, as Administrative Agent, received distributions on behalf of Lenders from the Alchemy Trustee, failed to promptly

disclose the receipt of the funds to the other Lenders, and then misappropriated the funds to pay to itself the costs of the defense of this suit, among other things, while refusing to pay Plaintiffs money due to them. These actions constitute additional willful and malicious breaches of the Credit Agreement.

### Jurisdiction and Venue

15. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship, and the amount in controversy exceeds $75,000.

16. SunTrust has consented to personal jurisdiction and venue in this Court under Section 10.5(b) of the Credit Agreement, in which the parties agreed and submitted to the jurisdiction of the United Stated District Court for the Southern District of New York in any action or proceeding arising out of or relating to the Credit Agreement and waived any objection to venue in this Court for this action.

17. Furthermore, the Court has personal jurisdiction over SunTrust under CPLR §§ 301 and 302(a) because it regularly does and solicits business within the State of New York, and/or expected or reasonably should have expected that its acts would have consequences within the State of New York.

18. Venue in this Court also is proper under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

19. Although the true identity of the Doe Defendants is unknown to Plaintiffs at this time, on information and belief, each Doe Defendant may be found in this District and/or a

substantial part of the alleged events and omissions occurred and/or have had a significant effect within this District.

## The Parties

20.     Emigrant is a New York corporation with its principal place of business at 5 East 42nd Street, New York, New York.

21.     PMB is a California corporation with its principal place of business at 949 South Coast Drive, Third Floor, Costa Mesa, California.

22.     SunTrust Bank is a Georgia corporation with its principal place of business at 303 Peachtree Street, Atlanta, Georgia.

23.     Truist Bank is a North Carolina corporation with its principal place of business at 200 West Second Street, Winston-Salem, North Carolina.

24.     The true names and capacities of the Doe Defendants are presently unknown to Plaintiffs despite Plaintiffs' efforts to identify the Doe Defendants.  Plaintiffs are informed and believe, and on that basis allege, that each of the fictitiously named defendants is responsible in some manner for the occurrences alleged herein.  Plaintiffs therefore sue these defendants by such fictitious names and will amend this Complaint to state their true names and capacities when such names have been ascertained.

## Factual Background

25.     Virgo is a private investment fund that purportedly seeks to capitalize on market dislocation and unique investment opportunities.  Virgo was founded in 2009 by Jesse Watson, Mark Perez, and others.

26.     Alchemy, previously called Millennium Entertainment, LLC, is an independent film and video distribution company formed in 2010 by a company called Nu Image.

**Virgo, Acting through Calrissian, Purchases Alchemy**

27.     In April 2014, Virgo agreed to purchase Alchemy from Nu Image for $41 million. Virgo agreed to pay $36 million on closing and the remaining $5 million in non-contingent payments over the following four years.

28.     Before closing the transaction, Virgo engaged in due diligence to assess Alchemy's earnings, among other things.  On information and belief, accounting firm Baker Tilly was retained by Virgo and issued a draft report stating that Alchemy had a low quality of earnings and some of Alchemy's financial reporting could provide a misleading view of Alchemy's earnings.   On information and belief, Virgo's CFO, Perez, asked Baker Tilly to change these negative assessments in the final version of its report, and Baker Tilly complied with Perez's request.

29.     On August 4, 2014, shortly before finalizing the Alchemy purchase agreement, Virgo formed Calrissian as a Delaware limited partnership, with Virgo Service Company as its general partner, and Virgo Societas Partnership III (Onshore), L.P. ("Virgo Onshore"), Virgo Societas Partnership III (Offshore), L.P. ("Virgo Offshore"), and Santa Rita Entertainment, LLC as its limited partners.

30.     Virgo formed Calrissian for the purpose of purchasing 100% of the membership interests in Alchemy on Virgo's behalf.  Calrissian was merely a shell vehicle for Virgo; it never had any offices, employees, or substantial assets other than its equity interest in Alchemy, and it has been entirely controlled and managed by Virgo.  Virgo paid the entire purchase price for Alchemy, and Calrissian was utilized by Virgo to, among other things, exploit the credit facilities provided by the Lenders while avoiding liability to the Lenders (and others).

7

# EXHIBIT 2

| From: | Mark A. Perez |
|---|---|
| Sent: | Friday, August 29, 2014 8:29 PM CDT |
| To: | Fannon.Sutton; 'Miller, Alissa'; 'Landau, Jeremy' |
| CC: | 'Roman, Vanessa'; 'Mastroberte, Glen G.'; 'Moore, Schuyler M.'; Rowand.Matt; Schilpp.Matt; Cone.Adrian; 'Burke, John' |
| Subject: | RE: SunTrust/Millennium - UCC-1 Financing Statements |

Sutton – thanks for the response. HoldCo (Calrissian) is indeed intended to be a shell, and the only real asset that HoldCo has that is relevant to this transaction is the membership interests in Millennium Entertainment LLC (Borrower). You will already have HoldCo's pledge of these interests. A guarantee from the HoldCo would not have any value other than the interests that you already have a pledge to.

On a practical matter, however, we may elect to temporarily hold some cash at HoldCo which may or may not be injected into Millennium Entertainment as working capital, acquisition financing, etc. Until that cash is put into Millennium Entertainment, I would not consider that cash to be part of the "system of Loan Parties" so would generally not want to be put under lien or guaranty. This is more of operational matter … we can hold this potential cash in a different entity not HoldCo, but that would be more complicated on our part and would like to maintain the flexibility.

Can we please think about the practical application of a HoldCo guaranty and lien in this context? It would be easiest for us to not have to deal with a guaranty and lien (not to mention less paperwork). You would still have the same level of protection with the pledge, and then we don't have to go through the process of setting up a different process to hold cash above the Millennium Entertainment level.

Happy to discuss further. Thanks.

MP

---

**From:** Fannon.Sutton [mailto:Sutton.Fannon@SunTrust.com]
**Sent:** Friday, August 29, 2014 6:15 PM
**To:** Mark A. Perez; 'Miller, Alissa'; 'Landau, Jeremy'
**Cc:** 'Roman, Vanessa'; 'Mastroberte, Glen G.'; 'Moore, Schuyler M.'; Rowand.Matt; Schilpp.Matt; Cone.Adrian; 'Burke, John'
**Subject:** RE: SunTrust/Millennium - UCC-1 Financing Statements

We thought we had a guarantee from holdco per the term sheet. We don't need a guarantee from the funds themselves which is what I would classify as a parent guarantee.

Sent with Good (www.good.com)

-----Original Message-----
**From:** Mark A. Perez [mperez@virgo-llc.com]

CONFIDENTIAL

VIG_SUBPOENA_024187

**Sent:** Friday, August 29, 2014 08:52 PM Eastern Standard Time
**To:** Miller, Alissa; Landau, Jeremy
**Cc:** Roman, Vanessa; Mastroberte, Glen G.; Moore, Schuyler M.; Rowand.Matt; Schilpp.Matt; Fannon.Sutton; Cone.Adrian; Burke, John
**Subject:** RE: SunTrust/Millennium - UCC-1 Financing Statements

Issues arise if we hold cash at the Calrissian level for general purposes that come from our funds. We are happy to pledge our interests in Millennium, but what you are suggesting is equivalent to a parent guarantee, which I don't think is the business construct.  Would like SunTrust to confirm.

Thanks.

MP


-------- Original message --------
From: "Miller, Alissa"
Date:08/29/2014 5:43 PM (GMT-08:00)
To: "Landau, Jeremy"
Cc: "Roman, Vanessa" , "Mastroberte, Glen G." , "Mark A. Perez" , "Moore, Schuyler M." , "Rowand.Matt" , "Schilpp.Matt" , "Fannon.Sutton" , "Cone.Adrian" , "Burke, John"
Subject: Re: SunTrust/Millennium - UCC-1 Financing Statements


This is not correct. See the credit agreement (and term sheet). Mms and Calrissian are guarantors and any other sub will be as well. No one has requested that holdco is no longer a guarantor and I confirmed with Suntrust that they expect a lien in holdco. The pledge is a completely different issue- that was waived since that would have required the sponsor level funds to pledge their equity in Holdco.

Not sure what the issue is anyway if Holdco is just a shell company.


On Aug 29, 2014, at 5:36 PM, "Landau, Jeremy"
<jlandau@stroock.com<mailto:jlandau@stroock.com>> wrote:

Guaranty and Security Agreement says:

"Guarantors" shall mean, collectively, each Grantor other than the Borrower.

certain Subsidiaries of the Borrower identified on the signature pages hereto as "Guarantors" (together with the Borrower and any other Subsidiary of the Borrower that becomes a party

CONFIDENTIAL

VIG_SUBPOENA_024188

hereto from time to time after the date hereof, each, a "Grantor" and, collectively, the
"Grantors")

That doesn't include Calrissian.

The argument to get an all assets lien on Calrissian seems to be the same argument that applied
to getting a pledge of the equity in Calrissian, which SunTrust agreed to drop.

From: Miller, Alissa [mailto:almiller@akingump.com]
Sent: Friday, August 29, 2014 5:31 PM
To: Landau, Jeremy
Cc: Roman, Vanessa; Mastroberte, Glen G.; Mark A. Perez (mperez@virgo-
llc.com<mailto:mperez@virgo-llc.com>); Moore, Schuyler M.; Rowand.Matt; Schilpp.Matt;
Fannon.Sutton; Cone.Adrian; Burke, John
Subject: Re: SunTrust/Millennium - UCC-1 Financing Statements


Because they are a Guarantor and we are getting an all asset lien from each guarantor per the
credit agreement and term sheet. They are a party to the guaranty.



On Aug 29, 2014, at 5:28 PM, "Landau, Jeremy"
<jlandau@stroock.com<mailto:jlandau@stroock.com<mailto:jlandau@stroock.com%3cmailto:jl
andau@stroock.com>>> wrote:

The financing statements for ME and MMS are fine, but it's not clear to us why there is a UCC
for Calrissian. Holdco is not a party to the Guaranty and Security Agreement. If a UCC would be
relevant for Calrissian, the collateral would be limited to the "Collateral" as defined in the Pledge
Agreement, and the UCC would reference that document.

From: Roman, Vanessa [mailto:vroman@AKINGUMP.com]
Sent: Friday, August 29, 2014 4:41 PM
To: Mastroberte, Glen G.
Cc: Mark A. Perez (mperez@virgo-llc.com<mailto:mperez@virgo-
llc.com<mailto:mperez@virgo-llc.com%3cmailto:mperez@virgo-llc.com>>); Moore, Schuyler
M.; Landau, Jeremy; Rowand.Matt; Schilpp.Matt; Fannon.Sutton; Cone.Adrian; Burke, John;
Miller, Alissa
Subject: SunTrust/Millennium - UCC-1 Financing Statements


Hi Glen,

Attached please find the UCC-1 Financing Statements for ME, MMS and Calrissian. Please let

CONFIDENTIAL

us know if you have any questions or comments. Reserving SunTrust's rights.

Thanks,

Vanessa

Vanessa Foltyn Roman
AKIN GUMP STRAUSS HAUER & FELD LLP
2029 Century Park East | Suite 2400 | Los Angeles, CA 90067-3010 | USA | Direct: +1 310.728.3348 | Internal: 43348
Fax: +1 310.229.1001 |
vroman@akingump.com<mailto:vroman@akingump.com<mailto:vroman@akingump.com%3c mailto:vroman@akingump.com>> |
akingump.com<http://akingump.com><http://www.akingump.com> |
Bio<http://www.akingump.com/vroman>

---

IRS Circular 230 Notice Requirement: This communication is not given in the form of a covered opinion, within the meaning of Circular 230 issued by the United States Secretary of the Treasury. Thus, we are required to inform you that you cannot rely upon any tax advice contained in this communication for the purpose of avoiding United States federal tax penalties. In addition, any tax advice contained in this communication may not be used to promote, market or recommend a transaction to another party.

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

IRS Circular 230 Notice Requirement: This communication is not given in the form of a covered opinion, within the meaning of Circular 230 issued by the United States Secretary of the Treasury. Thus, we are required to inform you that you cannot rely upon any tax advice contained in this communication for the purpose of avoiding United States federal tax penalties. In addition, any tax advice contained in this communication may not be used to promote, market or recommend a transaction to another party.

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

IRS Circular 230 Notice Requirement: This communication is not given in the form of a covered opinion, within the meaning of Circular 230 issued by the United States Secretary of the Treasury. Thus, we are required to inform you that you cannot rely upon any tax advice contained in this communication for the purpose of avoiding United States federal tax penalties.

CONFIDENTIAL

In addition, any tax advice contained in this communication may not be used to promote, market or recommend a transaction to another party.

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.
Important: Information contained herein has been derived from sources believed to be reliable but is not guaranteed as to accuracy and does not purport to be a complete analysis of the security, company or industry involved

All prices, yields and opinions are subject to change due to market forces and other conditions. This communication is not to be construed as an offer to sell or a solicitation to buy any security. SunTrust Robinson Humphrey, Inc. or its affiliates may have a position in the securities referenced. In selling securities, SunTrust Robinson Humphrey, Inc. may act as principal for our own account or as agent for our customers or others. SunTrust Robinson Humphrey, Inc. may also have acted as underwriter for the issuers of such securities, and either we or our affiliates may currently be providing investment banking or traditional banking services to those issuers. Additional information is available on request.

The information contained in this message is intended only for the confidential use of the designated recipient. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately. Thank you.

By replying to this e-mail, you consent to SunTrust's monitoring activities of all communication that occurs on SunTrust's systems.

SunTrust Robinson Humphrey, Inc., member FINRA and SIPC. SunTrust and SunTrust Robinson Humphrey are service marks of SunTrust Banks, Inc.


[ST:XCL]

CONFIDENTIAL

# EXHIBIT 3

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| OUR ALCHEMY, LLC, *et al.*, | Lead Case No. 16-11596-JTD |
| *Debtors*.[1] | (Jointly Administered) |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Our Alchemy, LLC and Anderson Digital, LLC, | **Re: D.I. 957, 982, 983, 985, 990, 991, 992, 994, 995, 996 and 997** |
| *Plaintiff*, | Adv. Pro. No. 18-50633-JTD |
| v. | **Re: Adv. D.I. 214, 220, 221, 239, 240, 247, 248, 249, 250, 251, 252 and 253.** |
| ANCONNECT, LLC, *et al.*, | |
| *Defendants*. | |

## ORDER GRANTING IN PART AND
## DENYING IN PART THE CHAPTER 7 TRUSTEE'S MOTION FOR
## ENTRY OF BAR ORDER AND SANCTIONS FOR VIOLATING THE AUTOMATIC
## STAY AGAINST EMIGRANT BANK AND PACIFIC MERCANTILE BANK

Upon consideration of the *Motion for Entry of Bar order and Sanctions for Violating the Automatic Stay* [D.I. 957; Adv. D.I. 214] (the "Motion")[2] filed by George L. Miller in his capacity as chapter 7 trustee (the "Trustee") of the above-referenced debtors (together, the "Debtors") seeking entry of a bar order and sanctions for violating the automatic stay against Emigrant Bank ("Emigrant") and Pacific Mercantile Bank ("PMB," together with Emigrant, the "Responding Banks") in relation to the Responding Banks' commencement of the action in the

---

[1]     The Debtors in these chapter 7 cases are Our Alchemy, LLC, Case No. 16-11596 and Anderson Digital, LLC, Case No. 16-11597.

[2]     Capitalized terms shall have the same meaning ascribed in the Motion unless otherwise defined herein.

Commercial Division of the New York Supreme Court styled *Emigrant Bank vs. Virgo Investment Group LLC*, Index No. 654350/2021 (the "<u>State Court Action</u>") against Virgo Investment Group, LLC, Virgo Societas Partners, LLC, Virgo Societas Partnership III (Onshore), L.P., Virgo Societas Partnership III (Offshore), L.P., Virgo Services Company, LLC, Jesse Watson, and Mark Perez (collectively, the "Virgo Parties"); and consideration of the objections, joinders, responses, replies, supporting declarations and supplemental pleadings filed by the Trustee, Responding Banks and Virgo Parties in relation to the Motion; and it appearing that the Court having jurisdiction to consider the relief sought in the Motion in accordance with 28 U.S.C. § 1334; and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that due and proper notice of the Motion having been given under the circumstances; and the record at the hearing held on September 21, 2022 ("Hearing"); and after due deliberation thereon, and sufficient cause appearing therefore, it is hereby

**ORDERED, ADJUDGED, AND DECREED** that:

1.      The Responding Banks may not pursue causes of action or theories of recovery in the State Court Litigation against a party on the basis that that party was the alter ego of the Debtors (Our Alchemy, LLC and Anderson Digital, LLC, collectively the Debtors).

2.      Nothing in this Order or the record at the hearing shall be construed as a finding of fact or conclusion of law with respect to the nature of the factual allegations or causes of action asserted by the Responding Banks in the State Court Litigation.

3.      The Trustee's request for sanctions against the Responding Banks for violations of the automatic stay are denied.

4.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation and/or enforcement of this Order.

Dated: October 13th, 2022
Wilmington, Delaware

JOHN T. DORSEY
UNITED STATES BANKRUPTCY JUDGE