**ALLEN & OVERY**

**By ECF**

The Honorable Ona T. Wang
United States Magistrate Judge
Daniel Patrick Moynahan U.S. Courthouse
500 Pearl Street
New York, NY 10007

September 29, 2023

Allen & Overy LLP
1221 Avenue of the Americas
New York, NY 10020

| | |
|---|---|
| Tel | 212 610 6300 |
| Fax | 212 610 6399 |
| Direct line | 212 610 6384 |

Emanuel.Grillo@allenovery.com

Re:   *Emigrant Bank et al. v. SunTrust Bank et al.*, No. 1:20-cv-02391 (PGG) (OTW)

Dear Judge Wang:

We write in our role as co-counsel with Daniels & Tredennick, PLLC, on behalf of the Virgo Non-Parties,[1] in response to Your Honor's request for supplemental briefing at the September 20, 2023 hearing (the "Hearing") on the Virgo Non-Parties' pre-motion letters [ECF 80, 85, and 97] filed in response to subpoenas issued by Plaintiffs in the above-referenced action. At the Hearing, Your Honor requested that the parties answer three questions:

(1) What can Plaintiffs get in the subpoenas at issue[2] that is not "a fishing expedition" or "duplicative"[3] given what they already have had access to;

(2) How are Plaintiffs' discovery and claims not precluded, estopped, or waived, given the Alchemy bankruptcy, the state court action, and the bar order; and

(3) What other relevance arguments do the Virgo Parties have?[4]

In summary, the respective answers are:

**(1) Nothing.** The documents Plaintiffs now seek regarding Baker Tilly and the Nu Image arbitration merely consist of VIG's diligence before its funds purchased Alchemy or Calrissian was formed. The information VIG received from Alchemy during diligence just consists of *Alchemy's* documents in a data room[5], to which all parties had access. Indeed, the parties here had

---

[1] Capitalized terms not otherwise defined herein have the same meaning ascribed to them in pre-motion letters submitted to this Court at [ECF 80, 85, and 97]. Filings made to this action's docket are referenced as "ECF."

[2] *See* Ex. 1 to Virgo Non-Parties' Letter Mot. for Conf. [ECF 80-1] [hereinafter "Nu Image Subp."]; Ex. 1 to VIG's Letter Mot. for Conf. re Baker Tilly Subpoena [ECF 85-1] [hereinafter "Baker Tilly Subp."]; Ex. 1 to VIG's Letter Mot. for Conf. re VIG Subpoena [ECF 97-1] [hereinafter "VIG Subp."], at Requests No. 19, 22.

[3] Hr'g Tr. [hereinafter "Hearing Tr."] at 29:6-9.

[4] *See* Hearing Tr. at 27:7-9, 14; 34:24-35:8.

[5] See **Ex. 1**, Decl. of Willian A. Chapman.

Allen & Overy LLP is a limited liability partnership registered in England and Wales with registered number OC306763. It is authorized and regulated by the Solicitors Regulation Authority of England and Wales (SRA number 401323). Allen & Overy LLP is a multi-jurisdictional law firm with lawyers admitted to practice in a variety of jurisdictions. A list of the members of Allen & Overy LLP and their professional qualifications is open to inspection at its registered office, One Bishops Square, London, E1 6AD and at the above address. The term partner is used to refer to a member of Allen & Overy LLP or an employee or consultant with equivalent standing and qualifications.

Allen & Overy LLP or an affiliated undertaking has an office in each of: Abu Dhabi, Amsterdam, Antwerp, Bangkok, Beijing, Belfast, Boston, Bratislava, Brussels, Budapest, Casablanca, Dubai, Dublin, Düsseldorf, Frankfurt, Hamburg, Hanoi, Ho Chi Minh City, Hong Kong, Istanbul, Jakarta (associated office), Johannesburg, London, Los Angeles, Luxembourg, Madrid, Milan, Munich, New York, Paris, Perth, Prague, Rome, San Francisco, São Paulo, Seoul, Shanghai, Silicon Valley, Singapore, Sydney, Tokyo, Warsaw, Washington, D.C.

even more information: PMB was Alchemy's incumbent bank and SunTrust's captive investment bank provided the diligence.

**(2) Plaintiffs are estopped from obtaining further discovery on their claims.** Acting in concert with the Alchemy Trustee, the banks have had countless opportunities to contrive claims against the Virgo Parties, including through a series of third parties: independent consultants (Hemming Morse), the Alchemy Trustee, and the Calrissian chapter 7 trustee that the banks themselves *insisted* upon installing. All claims have been settled, barred, dismissed (and affirmed), or defaulted. Plaintiffs' agents narrowed or abandoned efforts to obtain the very same documents Plaintiffs again seek.[6]

**(3) The documents Plaintiffs seek are not relevant to their purported claims, would not reveal information Plaintiffs claim they need, and in any event, Plaintiffs already have such information.** Plaintiffs' ostensible purpose for seeking the Nu Image arbitration and Baker Tilly documents—to see what (unspecified) "Virgo" entities knew about Alchemy's financial condition in August 2014—is a mere pretext. Plaintiffs have already obtained all Alchemy documents from the Alchemy Trustee, including all documents regarding Alchemy's financial condition in 2014— i.e., the very documents available in the Alchemy data room that VIG, Baker Tilly,[7] Plaintiff PMB, and SunTrust (the "Agent Bank") relied on in diligencing the Alchemy Purchase. Accordingly, there is no justification for invading the Nu Image arbitration or VIG's propriety confidential decision-making process to "discover" this information.

### I.     Plaintiffs' requests are, without question, duplicative.

As made abundantly clear in **Exhibit 4**, Plaintiffs' requests here are duplicative of ***five other attempts*** by the Agent Bank and Alchemy Trustee to obtain documents in ***four other forums*** since 2018.

### II.    Plaintiffs have waived any right to, and are estopped from demanding, the discovery.

In September 2016, the banks engaged financial consultants Hemming Morse, LLP "to assist in an investigation of potential claims against Alchemy, Calrissian, Virgo, and other entities."[8] Around the same time, the banks entered into a sharing agreement with the Alchemy Trustee:

> [T]he Trustee and the Trustee's professionals will participate in ***conference calls with [the banks] on a weekly basis*** to provide updates on . . . matters pending in the Debtors' Chapter 7 cases, and shall also ***provide to and share*** with [the banks] such documents and other information . . . as may be requested by [the banks] in connection with its analysis and pursuit of any litigation claims it may be entitled to bring against third parties.[9]

In March 2018, the Alchemy Trustee issued 53 requests for documents to the Virgo Parties under Bankruptcy Rule 2004. The Agent Bank issued 53 *identical* Rule 2004 requests and filed motions

---

[6] *See* **Ex. 2**, Email Summ. Historical Produc.
[7] *See* **Ex. 1**, Decl. of Willian A. Chapman. ***Critically***, "the documents relied on by Baker Tilly in creating the report came ***solely from***" [this same] dataroom. *Id.* at ¶ 5 (emphasis added).
[8] FAC ¶ 83. Apparently, after the Agent Bank refused to provide Plaintiffs with the Hemming Morse findings on April 27, 2017, Plaintiffs waited nearly three years (until March 2020) to file any action to obtain that information from the Agent Bank. *See* FAC ¶ 84-92.
[9] **Ex. 3**, Sharing Agreement, at ¶ 5 (emphases added).

to compel in both bankruptcies.[10] As more fully detailed in **Exhibit 2**, the Virgo Parties produced responsive documents—including Calrissian's bank statements, financial statements, and formation documents (which have been re-produced to Plaintiffs recently also)—in May and June 2018. On June 28, 2018, the Alchemy Trustee filed the Trustee Action, at which point further discovery under Rule 2004 was foreclosed.[11] Thereafter, the Alchemy Trustee sought (and Virgo Parties produced) documents in the Trustee Action—all of which VIG has produced here.[12] The Alchemy Trustee neither sought additional documents nor moved to compel production of any other documents in the Trustee Action.

In the midst of these productions, the Alchemy Trustee and Agent Bank moved to convert the Calrissian bankruptcy to a chapter 7 case, arguing conversion would be in the best interests of the creditors and argued before the court and suggesting that the Chapter 7 trustee would have (i) the attorney-client privilege on behalf of Calrissian and thus, (ii) the final word on the viability of any third party claims.[13]

On August 10, 2018, the Bankruptcy Court ordered conversion, declining to rule on the Agent Bank's motions to compel. The Court warned, "[i]f the Chapter 7 trustee does not believe she can make a strong case . . . she should not hesitate to determine that she does not believe the case is warranted and issue a Report of No Distribution."[14] The trustee did just that,[15] and the case closed eleven months later—during which time the Agent Bank never renewed its motions to compel.[16]

In affirmatively seeking and entering into the sharing agreement and insisting on appointment of a chapter 7 trustee,[17] the banks made the two trustees their agents (and fiduciaries) for purposes of seeking discovery and investigating claims, and are therefore estopped from again seeking these documents.[18] Further, in failing to renew their motions to compel discovery after the Alchemy Trustee and Calrissian chapter 7 trustee took over, the banks waived their right to seek further

---

[10] *See* **Ex. 4**, Duplicative Disc. Reqs.; Nu Image Subp.; Baker Tilly Subp.; VIG Supb. at Reqs No. 19, 22.

[11] *See In re Ecam Publ'ns, Inc.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991) ("[O]nce an adversary proceeding or another contested matter has been initiated, parties must proceed with discovery for that litigation pursuant to the Federal Rules of Civil Procedure."). *See also In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 29 (Bankr. N.D.N.Y. 1996) ("[A] trustee, like a creditor, must look to Fed. R. Bankr. P. 7026 *et seq.* after an adversary proceeding is commenced for discovery [.]").

[12] *See* **Ex. 2**, supra.

[13] **Ex. 5**, Calrissian Conversion Hr'g Tr. [hereinafter "Conversion Tr."] at 29:17-20, 30:10-12, 30:23-31:4, 33:23-34:2, 36:3-5, 56:2-4, 60:3-8.

[14] **Ex. 6**, Calrissian Conversion Order. Notably, the Bankruptcy Court opined that "the confidentiality of the [Nu Image] arbitration documents may preclude them from being produced." *Id.* at p. 7.

[15] *See* **Ex. 7**, Calrissian Bankr. Docket from Aug. 2, 2018 to Present [hereinafter, "Calrissian Docket"], at Dkt. 118 ("Chapter 7 Trustee's Report of No Distribution: having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law.")

[16] *See generally,* **Ex. 7**, Calrissian Docket.

[17] *See Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 627 (D. Del. 2018) (holding that alter ego claims were property of the debtor's bankruptcy estate).

[18] *See Roth v. Ducks Hockey Club*, 276 N.Y.S.2d 246, 248 (Dist. Ct. Suffolk Cnty. 1966) ("Apparent authority has been defined as that authority which the principal holds the agent out as possessing, or which he permits the agent to represent that he possesses, and which the parties are estopped to deny."); *see also Landtek Grp., Inc. v. N. Am. Specialty Flooring, Inc.*, No. CV 14-1095 (SJF) (AKT), 2016 WL 11264722, at *10 (E.D.N.Y. Aug. 12, 2016) (discussing parameters of apparent authority); *cf. Lancaster Factoring Co. v. Mangone*, 90 F.3d 38, 41 (2d Cir. 1996) (implicitly recognizing that agency relationships can exist for purposes of seeking discovery via subpoena).

discovery on topics already covered in the prior requests—including the Baker Tilly report and the Nu Image arbitration materials.[19]

### III. The Nu Image arbitration and Baker Tilly documents are not relevant.

***Plaintiffs' claimed purpose for seeking documents is pretextual.*** Plaintiffs have repeatedly claimed that they need documents relating to the Baker Tilly report and Nu Image arbitration to demonstrate Virgo's "control" over Calrissian and its use of that "control" to commit a fraud. But there is no dispute about who managed Calrissian. Moreover, the banks knew that Calrissian was merely a holding company without any additional assets. From the beginning, Calrissian was created solely to be a holding company to own the interests in Alchemy and all parties were well aware of the terms of the transaction.[20] In negotiating the loan documents, VIG argued against having Calrissian provide a guaranty and notified Agent Bank that if it were required to do so, it would "hold potential cash in a different entity not HoldCo [Calrissian]."[21] It did exactly that.

Any claims of mismanagement belonged to the Calrissian bankruptcy estate,[22] and the chapter 7 trustee did not bring those claims. Indeed, when the chapter 7 trustee was appointed in August 2018, the banks were well aware of the claims they now press—that an unspecified "Virgo" entity "siphoned funds through Calrissian"[23]—by virtue of the Alchemy Trustee's allegations in the Trustee Action.[24] The banks either raised these allegations with the Calrissian trustee at that time, or they should have. Furthermore, the Alchemy Trustee ***did*** bring ***exactly the claim*** Plaintiffs' counsel brought up before this Court that Plaintiffs are supposedly seeking discovery on, and that claim was settled and a global release on behalf of all creditors (including Plaintiffs) was given to all the Virgo Parties—which settlement Plaintiffs here did not object to and was approved by the Bankruptcy Court.[25] Plaintiffs are not entitled to discovery regarding previously settled claims.[26]

***No "Virgo" party had a duty to disclose information to the banks.*** Plaintiffs' arguments that the Baker Tilly report and Nu Image arbitration documents relate to "Virgo's knowledge of Alchemy's finances"[27] are all premised on the assumption that—***even if*** some unspecified "Virgo" entity had secret knowledge—such entity had a duty to share that knowledge to the banks. But no duty exists.

---

[19] *See DesRosiers v. Moran*, 949 F.2d 15, 22–23 (1st Cir. 1991) (holding plaintiff waived his request for production reasoning, "plaintiff chose neither to resurrect the issue nor to ask the judge at a later time to make an up-or-down ruling. In our view, a party who seeks a ruling must persist in his quest to some reasonable extent. If the court postpones action, the proponent must ordinarily call the matter to the court's attention at a later point . . . if he is to preserve his rights.")

[20] *See* **Ex. 8,** July 31, 2014 SunTrust Commitment Letter, at p. 1 ("[T]he proceeds [of the syndicated loan] . . . shall be used to (i) finance the purchase of l00% of the LLC interests of [Alchemy] by a newly formed special purpose entity controlled by [VIG] or its affiliates[.]"); *see also* Ex. C to FAC [ECF 45-3], at p. 20 (2014 Credit Agreement defining "Holdco" to "mean Calrissian LP, a Delaware limited partnership.").

[21] Ex. 2 to VIG's Letter Motion for Conference re Baker Tilly Subpoena [ECF 85-2], at p. 2.

[22] *See Harrison*, 320 F. Supp. 3d at 627 ( alter ego claims are property of bankruptcy estate); *cf.* **Ex. 9**, Bar Order, at p. 2 (Alchemy Bankruptcy Court barred Plaintiffs here from bringing claims "against a party on the basis that that party was the alter ego of the Debtors").

[23] Hr'g Tr. at 30:14-15

[24] *See* **Ex. 10**, Tr. Action Compl., at ¶¶ 35-39; *see also* **Ex. 11**, Allegation Comparison Chart.

[25] *See* **Ex. 12**, Alchemy Tr. Settlement Agreement; **Ex. 13**, Order Approving Settlement Agreement.

[26] *See Jenny Yoo Collection, Inc. v. David's Bridal, Inc.*, No. 18-CV-9926 (PGG) (BCM), 2019 WL 6841966, at *3 (S.D.N.Y. Dec. 16, 2019) ("[I]it would be inefficient to permit [movant] to expand the scope of discovery in this action to match the discovery to which it would have been entitled had it not settled the [prior] Action.").

[27] Hearing Tr. at 26:23.

*First*, the banks did their own diligence in connection with the syndicated loan[28] and had no right to rely on representations from Virgo about the borrower, Alchemy. It was instead as Justice Borrok recognized, a "failure of diligence."[29] *Second*, Plaintiffs failed to identify the source of any duty of Virgo despite being ordered to provide briefing on that very issue to the Bankruptcy Court in connection with the Bar Order.[30] *Third*, nothing in the Credit Agreement or Guaranty required Calrissian or any Virgo-related entity to provide information to the banks (including information about Calrissian's assets).[31] The ***only party*** with a reporting duty was the borrower—Alchemy.[32] Thus, any representation by an unspecified "Virgo" entity about Alchemy would not be actionable unless *"Virgo"* was the alter ego of Alchemy[33]—which is precluded by the Bar Order.[34] With no duty to disclose, the only *arguable* harm is non-performance on the guaranty—but Calrissian's lack of assets beyond its interests in Alchemy was no secret.

***Plaintiffs' arguments at the Hearing do not constitute actionable claims in the present case.*** Plaintiffs argue that "what's relevant here is Virgo's knowledge of Alchemy's finances before it entered into the transaction" because "it's [sic] created Calrissian as a guarantor and has siphoned funds through Calrissian, while attempting to shield itself from liability for those debts."[35] But this very "siphoning" claim was expressly brought—and settled—by the Alchemy Trustee.[36] Moreover, because the purchase of Alchemy was structured as an LBO,[37] all parties—Plaintiffs included—were aware of and fully executed Alchemy's sale to Calrissian as contemplated.[38]

---

[28] *See* Ex. C to FAC, at § 9.3 ("Each of the Lenders acknowledges that it has, independently and without reliance upon the Administrative Agent or any other Lender and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this [Credit Agreement].").

[29] **Ex. 14**, State Ct. MTD Hr'g Tr., at 34:16.

[30] *See* **Ex. 15**, Tr. of Nov. 2022 Hr'g on Lenders' Mot. to Amend, at 54:25-55:7 ("[COUNSEL FOR PLAINTIFFS]: [T]here is a duty to disclose because Virgo had superior knowledge. That is our theory. THE COURT: That is -- all right. It might be your theory, but it's not a good one because that is not the basis for a duty to disclose. . . . It has to be a special relationship between the parties and there isn't one.").

[31] *See generally,* Ex. C to FAC; Ex. B to FAC.

[32] *See* Ex. C to FAC, at § 4.12 ("***The Borrower*** represents and warrants . . . [t]he Borrower has disclosed to the Administrative Agent and the Lenders all . . . matters known to any of them, that, either individually or in the aggregate, could reasonably be expected to result in a Material Adverse Effect. None of the . . . information furnished by or on behalf of the Borrower to the Administrative Agent or any Lender in connection with the negotiation or syndication of this Agreement or any other Loan Document . . . contains any material misstatement of fact or omits to state any material fact necessary to make the statements . . . not misleading[.]"); *see id.* at § 1.1 (defining "Borrower" as Alchemy only).

[33] *See* **Ex. 16,** Tr. of Appellate Oral Arg. Nov. 2, 2022 at p. 7:19-24 ("how could that be actionable unless they're alter egos of each other?").

[34] *See* **Ex. 9**, Bar Order, at p. 2 ("[Emigrant and PMB] may not pursue causes of action or theories of recovery in the State Court Litigation against a party on the basis that that party was the alter ego of the Debtors (Our Alchemy, LLC and Anderson Digital, LLC, collectively the Debtors).").

[35] Hearing Tr. at 30:4-5, 14-16.

[36] *See* **Ex. 11**, Allegation Comparison Chart.

[37] *See* **Ex. 8**, July 31, 2014 SunTrust Commitment Letter, at p. 1.

[38] *See* **Ex. 17**, Alchemy Purchase Agreement, at §§ 1.27 and 2.3(a); *see also* **Ex. 18**, Presentation to Lenders, at p. 5 ("Virgo is contributing $22.4 million of cash equity at close . . . . The $41.0 million purchase price includes $36.0 million cash at close[.]").When one of the syndicate banks could not close on time, Virgo investment funds made a short-term loan to Calrissian to bridge the lending gap. *See* **Ex. 19**, Promissory Note. When the banks closed 17 days later, Alchemy repaid Calrissian, and Calrissian repaid the funds' bridge loan—as explicitly intended under the Credit Agreement. *See* Ex. C to FAC, at § 5.11 ("The borrower will use the proceeds of all Loans . . . (vi) to finance the partial reimbursement to Holdco of an amount not to exceed $20,000,000 of its equity payment to Sellers in connection with the [Alchemy Purchase].").

Respectfully submitted,

ALLEN & OVERY LLP

By: /s/ *Emanuel C. Grillo*
Emanuel C. Grillo
1221 Avenue of the Americas
New York, New York 10020
Tel: 212-610-6300
Emanuel.Grillo@allenovery.com

*Attorneys for non-parties*
*Virgo Investment Group LLC,*
*Virgo Societas Partnership III(Offshore)*
*L.P., and Virgo Societas Partnership III*
*(Onshore) L.P.*

Cc: Sage Vanden Heuvel, Esq.
Leigha Empson, Esq.
Daniel Loud, Esq.
Jeff Miller, Esq.
Andrea Levin Kim, Esq.
Rebecca Muff-Randolph, Esq.
Rebecca Cecchini, Esq.
Jacob Herz, Esq.

Exhibits