# Exhibit 2

## Rebecca Muff Randolph

| | |
|---|---|
| **From:** | Rebecca Muff Randolph |
| **Sent:** | Wednesday, September 27, 2023 4:51 PM |
| **To:** | Ken Fowler; Andrea L. Kim; Emanuel.Grillo@allenovery.com |
| **Cc:** | leighaempson@quinnemanuel.com; Gary E. Gans; Corey Worcester; Sage Vanden Heuvel; Daniel Loud; Shane Flanagan; Jeffrey Miller; David Tetrick; Kathryne Hunter; Kevin O'Brien |
| **Subject:** | RE: Emigrant Bank, et al. v. SunTrust Bank, et al., No. 1:20-cv-02391-PGG-OTW |
| **Attachments:** | Alchemy Trustee's Original 2004 Request to VIG in 2018.pdf |

Counsel,

You have collectively asked VIG to identify what documents it produced in the Calrissian Bankruptcy, whether in response to SunTrust's 2004 Motion or any other discovery request. As neither Quinn Emanuel nor King & Spalding were involved at that time—well over 5 years ago—we wanted to clarify for you the chain of events resulting in VIG's production of documents that are responsive to the 53 requests SunTrust made in the Calrissian bankruptcy.

On March 29, 2018, the Alchemy Trustee informally sent 53 requests for documents to VIG, Onshore, and Offshore (the "Virgo Parties"). Those requests are attached here. As you can see, those requests touched on a wide range of topics, including documents relating to Calrissian and Calrissian's finances (even though made by the <u>Alchemy</u> Trustee). Shortly thereafter, the Virgo Parties and the Trustee began discussions to narrow the extremely overly broad requests. Ultimately, the Virgo Parties made rolling productions to the Trustee of documents with the Bates label prefix "2004ALCHTRUSTEE" between May 31, 2018 and June 27, 2018. Notably, these productions included Calrissian bank records, Calrissian formation documents, and Calrissian financials—all of which have already been produced again here in response to Emigrant's subpoena to VIG (*see* documents labeled VIG_SUBPOENA_000001-26, 310130, 421-497,5390540, and 24192-24196).

In the midst of the Trustee's discussions with the Virgo Parties to narrow the Trustee's overly-broad requests, SunTrust did two things. First, it filed a Motion to Convert the Calrissian LP from a Chapter 11 to a Chapter 7 case on May 15, 2018.  Second—mere days later—SunTrust filed motions under Rule 2004 to compel responses to 53 identical requests to the Virgo Parties in both the Calrissian and Alchemy bankruptcies. Critically—as we indicated to SunTrust's counsel at the time, Akin Gump—SunTrust's 53 requests were not only identical to one other but were also ***identical to the Trustee's requests***.  Given that the requests were identical to those of the Trustee, the Trustee was pursuing claims on behalf of all of Alchemy's creditors (including SunTrust and the other lender banks), and the Virgo Parties were already working with the Trustee to narrow the overly broad requests, the Virgo Parties offered to produce to the Trustee and then allow the Trustee to produce those documents to SunTrust (after a review for privilege) if SunTrust would withdraw its overly broad, duplicative requests. SunTrust declined. The Virgo Parties continued to produce document to the Trustee—which, in effect, was the same thing as producing to SunTrust, given the sharing agreement between the Trustee and SunTrust. The day after the Virgo Parties' last Rule 2004 production, the Trustee filed its adversary proceeding against the Virgo Parties, on June 28, 2018.

SunTrust's Motion to Convert and Motions to Compel were heard together by Judge Gross on August 2, 2018. On August 10, 2018, Judge Gross converted the Calrissian bankruptcy to a Chapter 7 and held its ruling in abeyance. In his conversion order, Judge Gross stated, "[t]he Court will await the appointment of a Chapter 7 trustee before deciding the Rule 2004 Motion, to see if the trustee will pursue litigation against the Virgo Entities or issue a Report of No Distribution and seek dismissal." [ECF 102, at p. 7]. He further noted that certain "document requests relate to litigation being pursued in the Our Alchemy bankruptcy case and those documents may be beyond the propriety of a Rule 2004 Motion." *Id.*

Thereafter, SunTrust made *no effort whatsoever* to either renew its Rule 2004 Motion to Compel or issue new Rule 2004 requests in the 11 months that the Calrissian bankruptcy remained open.  Nor, in the 5 years since the Calrissian conversion, has SunTrust asked the Alchemy bankruptcy Court to rule on their Motion to Compel the 53 *identical* documents requests in the Alchemy bankruptcy proceeding.  Presumably, that is because SunTrust had access to all of the documents it needed or could want, by virtue of the sharing agreement between the banks and the Trustee.

Thus, the suggestion made at the hearing that the banks "were unable to" obtain Rule 2004 discovery regarding Calrissian by virtue of their Rule 2004 document requests specifically asking for Calrissian documents—requests that were **_identical_** to the Trustee's 2004 requests, *to which the Virgo Parties responded by producing documents*— is simply nonsensical.

We trust this answers the questions you have raised.

Thank you,



Rebecca Muff Randolph
Senior Associate | Daniels & Tredennick PLLC
6363 Woodway Dr., Suite 700, Houston, Texas 77057
P: 713.917.0024| D: 713.800.3617
**Attorneys licensed in**
**TX, CO, MN, MO, NE, NY**





**CONFIDENTIALITY NOTICE:** This electronic transmission and any attachments constitute confidential information which is intended only for the named recipient(s) and may be legally privileged.  If you have received this communication in error, please contact the sender immediately.  Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication by anyone other than the named recipient(s) is strictly prohibited.

---

**From:** Ken Fowler <KFowler@KSLAW.com>
**Sent:** Wednesday, September 27, 2023 10:32 AM
**To:** Andrea L. Kim <andrea@dtlawyers.com>; Emanuel.Grillo@allenovery.com; Rebecca Muff Randolph <rebecca@dtlawyers.com>
**Cc:** leighaempson@quinnemanuel.com; Gary E. Gans <garygans@quinnemanuel.com>; Corey Worcester <coreyworcester@quinnemanuel.com>; Sage Vanden Heuvel <sagevandenheuvel@quinnemanuel.com>; Daniel Loud <danielloud@quinnemanuel.com>; Shane Flanagan <shaneflanagan@quinnemanuel.com>; Jeffrey Miller <jeffreymiller@quinnemanuel.com>; David Tetrick <DTetrick@KSLAW.com>; Kathryne Hunter <KHunter@KSLAW.com>; Kevin O'Brien <KOBrien@KSLAW.com>
**Subject:** RE: Emigrant Bank, et al. v. SunTrust Bank, et al., No. 1:20-cv-02391-PGG-OTW

---

CAUTION: EXTERNAL EMAIL

---

Andrea, Manny, Rebecca –

I am writing to follow up on my email below.  Rebecca, I am re-sending and including you here consistent with your email this morning asking to be copied on all correspondence.

All the best,
Ken



**Kenneth Fowler (Ken)**
*Partner*

T: +1 212 556 2227  |  E: kfowler@kslaw.com  |  Bio  |  vCard

King & Spalding LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036



kslaw.com

**From:** Ken Fowler
**Sent:** Wednesday, September 20, 2023 9:12 PM
**To:** Andrea L. Kim <andrea@dtlawyers.com>; Emanuel.Grillo@allenovery.com
**Cc:** leighaempson@quinnemanuel.com; Gary E. Gans <garygans@quinnemanuel.com>; Corey Worcester
<coreyworcester@quinnemanuel.com>; Sage Vanden Heuvel <sagevandenheuvel@quinnemanuel.com>; Daniel Loud
<danielloud@quinnemanuel.com>; Shane Flanagan <shaneflanagan@quinnemanuel.com>; Jeffrey Miller
<jeffreymiller@quinnemanuel.com>; David Tetrick <DTetrick@KSLAW.com>; Kathryne Hunter <KHunter@KSLAW.com>;
Kevin O'Brien <KOBrien@KSLAW.com>
**Subject:** Emigrant Bank, et al. v. SunTrust Bank, et al., No. 1:20-cv-02391-PGG-OTW

Andrea, Manny –

I hope this note finds you well.  During today's hearing, you indicated that Virgo Investment Group had made a Rule
2004 production of documents to the Trustee and to the Lender banks in connection with the Calrissian
Bankruptcy.  Can you please clarify what documents you contend that Virgo produced in response to SunTrust's May 18,
2018 Rule 2004 Motion in the Calrissian Bankruptcy (ECF 72; *see also* ECF 75; ECF 102) or otherwise in the Calrissian
Bankruptcy?

All the best,
Ken



**Kenneth Fowler (Ken)**
*Partner*

T: +1 212 556 2227  |  E: kfowler@kslaw.com  |  Bio  |  vCard

King & Spalding LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036



kslaw.com

King & Spalding Confidentiality Notice:

This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message. Click here to view our Privacy Notice.



March 29, 2018

**SENT VIA E-MAIL**
**AKIM@DIAMONDMCCARTHY.COM**

**John T. Carroll, III**
Direct Phone    302-295-2028
Direct Fax      215-701-2140
jcarroll@cozen.com

**Keith L. Kleinman**
Direct Phone    302-295-2077
Direct Fax      302-250-4363
kkleinman@cozen.com

Virgo Investment Group LLC,
Virgo Societas Partnership III (Offshore) L.P., and
Virgo Societas Partnership III (Onshore) L.P.
c/o Diamond McCarthy LLP
Attn:  Andrea Levin Kim, Esquire
Two Houston Center
909 Fannin Street, 37th Floor
Houston, TX  77010

> Re:    Our Alchemy, LLC, Case No. 16-11596 (KG)
>        Anderson Digital, LLC, Case No. 16-11597 (KG)
>        Subject:  Bankruptcy Rule 2004 Subpoena

Dear Andrea:

As you know, we represent George L. Miller, chapter 7 trustee (the "Trustee") to the estates of Our Alchemy, LLC (Case No. 16-11596 (KG)) and Anderson Digital, LLC (Case No. 16-11597 (KG)) (collectively, the "Debtors") in their bankruptcy cases pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

The Trustee is in the process of investigating certain aspects of each of the Debtors' respective business and financial affairs.  As a result, the Trustee seeks the production of certain documents (the "Documents") within the possession, custody, or control of Virgo Investment Group LLC, Virgo Societas Partnership III (Offshore) L.P., and Virgo Societas Partnership III (Onshore) L.P. (collectively, "Virgo").  To facilitate the production of the Documents, the Trustee has drafted the attached Bankruptcy Rule 2004 Subpoena that he intends to serve upon Virgo.

Pursuant to the Local Rules for the United States Bankruptcy Court for the District of Delaware, the Trustee is contacting Virgo prior to filing a motion ordering the production of the Documents pursuant to Bankruptcy Rule 2004 in an attempt to reach an agreement between the Trustee and Virgo with respect to the date, time, place, and scope of the production of the Documents.

We ask that you review the attached Bankruptcy Rule 2004 Subpoena and contact us no later than April 13, 2018 to discuss Virgo's production of the Documents sought in the Bankruptcy Rule 2004 Subpoena.

LEGAL\34242705\2 00601.0823.000/390810.000



P a g e | **2**

      We look forward to resolving this request in a prompt and efficient manner.

Sincerely,

COZEN O'CONNOR

By:    John T. Carroll, III
         Keith L. Kleinman

Enclosures

cc:  (via e-mail w/enc.)  Emanuel Grillo, Esquire (emanuel.grillo@bakerbotts.com)

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

### For the ___ District of ___Delaware___

In re _Our Alchemy, LLC & Anderson Digital, LLC_ ___     Case Nos. _16-11596 (KG) & 16-11597 (KG)_
Debtors

Chapter _7_____

## RULE 2004 SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE

To:    Virgo Investment Group LLC, Virgo Societas Partnership III (Offshore) L.P., and Virgo Societas Partnership III (Onshore) L.P.

*(Name of person to whom the subpoena is directed)*

[X] *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the documents, electronically stored information, or objects identified on Exhibit "A" attached hereto, and to permit inspection, copying, testing, or sampling of such material at the time, date, and place set forth below:

| PLACE: Cozen O'Connor, 1201 N. Market Street, Suite 1001, Wilmington, DE 19801 | DATE AND TIME: April ____, 2018 at 10 a.m. (EST) |
|---|---|

[ ] *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____, 2018 _____

CLERK OF COURT

OR

_____            _____
*Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* the Chapter 7 *Trustee* who issues or requests this subpoena, are: John T. Carroll, III, Esq., 1201 N. Market Street, Suite 1001, Wilmington, DE 19801, jcarroll@cozen.com, 302-295-2028.

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2 )

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)*_____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on (*date*) _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $_____.

  My fees are $_____ for travel and $_____ for services, for a total of $_____.


        I declare under penalty of perjury that this information is true and correct.

Date:  _____

                                                    _____
                                                            *Server's signature*

                                                    _____
                                                          *Printed name and title*

                                                    _____
                                                            *Server's address*


Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3 )

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
  **(A)** production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

### *EXHIBIT A*

### DEFINITIONS

1.      "Alchemy" means (i) the entity formerly known as Millennium Entertainment, LLC and now known as Our Alchemy LLC, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

2.      "All" shall be construed as all, each, any, and every.

3.      "ANconnect, LLC" means (i) the entity known as ANconnect LLC, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

4.      "And/or" shall be construed conjunctively or disjunctively, as required by the context to bring within the scope of these requests any information that might be deemed outside their scope by any other construction.

5.      "Anderson Digital" means Anderson Digital LLC., a Delaware limited liability company.

6.      "Anderson Merchandisers" means (i) the entity known as Anderson Merchandisers, LLC, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers,

or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

7.  "Any" means one or more.

8.  "ARC Entertainment" means (i) the entity known as ARC Entertainment, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

9.  "August 2014 Purchase Agreement" means the August 18, 2014 purchase agreement (including all amendments thereto), whereby the sellers, Nu Image, Inc., Prentice Consumer Partners, LP, Nigel Sinclair, Guy East, and Bill Lee, and the buyer, Calrissian, agreed to the sale and purchase of each seller's membership interest in Alchemy.

10.  "August 2014 Transaction" means the transaction effectuated by the August 2014 Purchase Agreement (including all amendments thereto), the closing thereof, and all post-closing adjustments.

11.  "Baker Tilly" means (i) the entity known as Baker Tilly Virchow Krause, LLP, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

LEGAL\35017039\2 00601.0823.000/390810.000

12.     "Calrissian" means (i) the entity known as Calrissian LP, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

13.     "Communication" means any verbal, written, or electronic exchange of information and includes, but is not limited to, discussions, negotiations, correspondence, faxes, telegrams, telexes, memoranda, notes, conversations, speeches, meetings, conferences, remarks, questions, answers, panel discussions, and symposia, whether written or oral. The term includes both communications and statements which are face-to-face and those which are transmitted by any media including, but not limited to, intercom, telephone, television, radio, modem, social media, text message, or electronic mail.

14.     "Credit Agreement" means the Amended and Restated Revolving Credit and Term Loan Agreement, dated as of July 9, 2015 (as amended by Amendment No. 1 and Waiver dated as of December 18, 2015, and as further amended, supplemented or otherwise modified, renewed or replaced from time to time to date), to which Alchemy is a Party.

15.     "Document" means the original and all non-identical copies and drafts, regardless of origin or location, of any writing and any written, printed, typed, electronic or other graphic or photographic matter of any kind or description, in draft or final form, including, but not limited to, correspondence, letters, telegrams, facsimiles, cables, telex messages, e-mail, memoranda, notes, interoffice and interdepartmental communications, transcripts, minutes of conversations or meetings, reports, studies, any audio or video recordings, voicemail, contracts, calendar or diary

entries, pamphlets, handwritten notes, charts, tabulations, records of meetings, conferences, telephone or other conversations or communications, and tapes or slides, and other data compilations from which information can be obtained or translated, if necessary, by you through detection devices into reasonably usable form, and all other records kept by electronic photographic, or mechanical means however denominated, which are in your possession, custody, or control.  If a Document has been prepared in several copies, or additional copies have been made, or copies are not identical (or, which by reason of subsequent modification of a copy by the addition of notations or other modifications, are no longer identical), each non-identical copy is a separate Document.

16.     "Emigrant Bank" means (i) the entity known as Emigrant Bank, its affiliates and direct or indirect subsidiaries; (ii) any of their past, present, or future officers, directors, partners, members, employees, or managers; (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof; and (iv) Professionals of any Person within (i), (ii), or (iii).

17.     "Guaranty Agreement" means the Guaranty and Security Agreement, dated as of September 4, 2014 (as amended, supplemented or modified from time to time), to which Calrissian is a Party.

18.     "Including" means including but not limited to.

19.     "Lenders" means (i) any of Emigrant Bank, Pacific Mercantile Bank, Preferred Bank, or SunTrust Bank; (ii) any of their affiliates and direct or indirect subsidiaries; (iii) any of their past, present, or future officers, directors, partners, members, employees, or managers; (iv) any past, present, or future board of directors, board of managers, or similar body, and any

4

committee or subcommittee thereof; and (v) Professionals of any Person within (i), (ii), (iii) or (iv).

20.     "Loan Documents" means the Original Credit Agreement, the Credit Agreement, and the Guaranty Agreement.

21.     "May 2015 Purchase Agreement" means the May 7, 2015 purchase agreement between ANconnect and Alchemy (including all amendments thereto).

22.     "May 2015 Transaction" means the transaction effectuated by the May 2015 Purchase Agreement (including all amendments thereto), the closing thereof, and all post-closing adjustments.

23.     "Merchandising Agreement" means the July 9, 2015 agreement (including any amendments thereto) between Alchemy and Anderson Merchandisers, whereby Alchemy engaged Anderson Merchandisers to perform certain merchandising services.

24.     "Nu Image Arbitration" means the arbitration styled as *Nu Image, Inc. vs. Calrissian LP, et al.*, JAMS Reference No. 1210033079, and any related actions, including appeals.

25.     "Original Credit Agreement" means the Revolving Credit and Term Loan Agreement, dated as of September 4, 2014, to which Alchemy is a Party.

26.     "Person" means any natural person, corporate entity, partnership, association, limited liability company, joint venture, government entity, trust, religious order or other entity.

27.     "PMB" means (i) the entity known as Pacific Mercantile Bank, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or

subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

28.     "PMB 2013 Loan" means the First Amended and Restated Revolving Credit, Security Agreement, dated as of March 23, 2013, between Alchemy, as borrower, and PMB, as lender, and any amendments thereto.

29.     "Preferred Bank" means (i) the entity known as Preferred Bank, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

30.     "Professional" means any counsel, consultant, advisor, testifying expert, non-testifying expect, agent, representative, or other Person engaged to provide or involved in providing at any time any services.

31.     "Relating to" means concerning, reflecting, referring to, pertaining to, containing, describing, regarding, illustrating, mentioning, evidencing, embodying, involving, analyzing, reporting on, commenting on, constituting, supporting, discussing, or having any logical or factual connection whatsoever with the subject matter in question.

32.     "Salem Partners" means (i) the entity known as Salem Partners LLC, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or

subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

33.     "SunTrust" means (i) SunTrust Bank, in its capacity as Lender and as administrative agent under the Original Credit Agreement and the Credit Agreement; (ii) any of its affiliates and direct or indirect subsidiaries, including SunTrust Robinson Humphrey; (iii) any of its past, present, or future officers, directors, partners, members, employees, or managers; (iv) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof; and (v) Professionals of any Person within (i), (ii), (iii) or (iv).

34.     "Transition Services Agreement" means the July 9, 2015 agreement between ANconnect and Alchemy (including any amendments thereto).

35.     "Trustee" means George L. Miller in his capacity as chapter 7 Trustee for the bankruptcy estates of Alchemy, case no. 16-11596 (KG) and Anderson Digital, case no. 16-11597 (KG) which bankruptcy cases are pending in the United States Bankruptcy Court for the District of Delaware.

36.     "Virgo" collectively means (i) the entities known as Virgo Investment Group LLC, Virgo Societas Partnership III (Offshore) L.P., and Virgo Societas Partnership III (Onshore) L.P. their past and present affiliates, direct or indirect subsidiaries, and parent entities; (ii) any of their past, present, or future officers, directors, partners, members, employees, or managers; (iii) any past, present, or future board of directors, board of managers, or similar body, or any committee or subcommittee thereof; or (iv) Professionals of any Person within (i), (ii), or (iii).

37.     "You" or "Your" means Virgo, as well as its affiliates, predecessors, successors, partners, principals, officers, directors, attorneys, and professionals, and other advisors, agents, employees, representatives, and other persons acting or purporting  to act on Virgo's behalf.

## INSTRUCTIONS

1.      The preceding definitions apply to these Instructions and each of the succeeding requests ("Requests"), notwithstanding that the definitions, may be reiterated, in full or in part, in a particular Request or that a particular Request may incorporate supplemental instructions or definitions.

2.      All terms defined above shall have the meanings set forth therein, whether capitalized in the Requests or not.

3.      The use of the singular form of any word shall include the plural and vice versa.

4.      Unless otherwise defined herein, capitalized terms shall bear the meaning ascribed to them in the Credit Agreement.

5.      All Documents must be produced in the order they are kept in the ordinary course of business, and must be produced in their original folders, binders, covers, or containers.

6.      These Requests relate to all Documents that are in Your possession, custody, or control, or in the possession, custody, or control of Your predecessors, successors, parents, subsidiaries, divisions, affiliates, or Your respective officers, directors, agents, attorneys, advisors, consultants, accountants, employees, partners, or other persons occupying similar positions or performing similar functions.

7.      These Requests call for the production of all responsive Documents to the fullest extent of permissible discovery.  Responsive Documents include all non-identical copies of such

8

Documents in extant physical or electronic form (*i.e.*, electronically-stored information), including drafts, revisions and other non-identical versions, whether maintained in paper form or on magnetic tape, videotape, microfilm, computer database, electronic mail, or any other electronic storage media.  Any copy of a Document that varies in any way whatsoever from the original or from any other copy of the Document, whether by reason of handwritten or other notation or any omission, shall constitute a separate Document and must be produced, whether or not the original of such a Document is within your possession, custody or control.

8.     Unless otherwise agreed between the parties, all electronic Documents or electronic data shall be produced in a form which reveals all available electronic information regarding such electronic Documents or data.

9.     Each Document shall be produced in such fashion as to identify from whose possession and from what location that Document was collected.  Electronic Documents shall be produced with an accompanying index that states the following metadata:

      a.  Date created/sent;

      b.  Author;

      c.  Recipients;

      d.  Cc- copies; and

      e.  Bcc – blind copies.

10.     All Documents shall be produced in TIFF format with OCR images.

11.     Whenever a Document is not produced in full or is produced in redacted form, so indicate on the Document and state with particularity the reason or reasons it is not being produced in full, and describe to the best of Your knowledge, information, and belief, and with as much particularity as possible, those portions of the Documents that are not being produced.

9

12.     If a Document responsive to these Requests was at any time in your possession, custody, or control, but is no longer available for production, as to each such Document, state the following information:

        a.   Whether the Document is missing or lost;

        b.   Whether the Document has been destroyed;

        c.   Whether the Document has been transferred or delivered to another person, and, if so, to whom and at whose request;

        d.   Whether the Document has been otherwise disposed of; and

        e.   A precise statement of the circumstances surrounding the disposition of the Document and that date of its disposition.

13.     These Requests are continuing so as to require supplemental responses if You or any person acting on Your behalf obtains additional information called for by the request between the time of the original response and the time set for trial.  Each supplemental response must be served on the Trustee no later than thirty days after the discovery of further information.

14.     The fact that a Document is produced by another party does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical in all respects.

15.     Responsive Documents shall be produced with all attachments, enclosures and exhibits to such documents, whether now or at any time attached, enclosed or accompanying such documents.  If any portion of a Document is responsive to a request, produce the entire Document, including all attachments, enclosures, "post-it"-type notes, and any other matter physically attached to the Document, whether by paper clip or any other manner.

16.     Documents not otherwise responsive to a Request must be produced if such Documents mention, discuss, refer to, or explain the Documents that are called for by the

Request, or if such documents are attached to Documents called for by the Request and constitute routing slips, transmittal memoranda, or letters, comments, evaluations, or similar materials.

17.     If you object to a Request, state the grounds for objection in the response to such Request. If you claim privilege with respect to any Request, you shall provide that part of the Document requested for which privilege is not claimed, state that part of the Request to which you object and state the basis for the claim of privilege.

18.     To the extent that you claim any Document or thing is not discoverable for any reason, including, without limitation, the attorney-client privilege, the work-product doctrine, or the immunity from discovery afforded to materials prepared for or in anticipation of litigation, please identify the withheld document or thing sufficiently to provide the Trustee an opportunity to assess the claim of privilege by describing and listing on a "Privilege Log" the withheld Documents' (a) nature or type (*e.g.*, letter, memoranda, e-mail, financial model) (b) general subject matter (*e.g.*, compensation analysis, financial data); (c) date(s); and (d) such other information as is sufficient to identify the document for purposes of a subpoena, including: author(s), recipient(s), and number of page(s).

19.     If you are unable to respond to any of the following Requests in full after exercising due diligence to secure the information to do so, the response shall so state and respond to the extent possible, specifying the reasons for the inability to respond  to the remainder and providing whatever information or knowledge is available concerning the unanswered portions.

20.     No response is to be left blank.  If the response to any Request or subsection of a Request is "none" or "unknown", the word "none" or "unknown" must be written in the

response.  If the Request is inapplicable, "N/A" or "not applicable" must be written in the response.

21.     Except where otherwise specified, the Requests seek Documents dated, created, or otherwise obtained on or after January 1, 2013 through the present.

## DOCUMENT REQUESTS

1.     All Documents and Communications Relating to any loan agreement, credit agreement, financing or refinancing for Alchemy or Anderson Merchandisers, including the PMB 2013 Loan.

2.     All Documents and Communications Relating to Salem Partners LLC.

3.     All Documents and Communications Relating to any financial advisors or consultants retained by either Alchemy, Calrissian or You, including Baker Tilly and BDO USA LLP.

4.     All Documents and Communications Relating to the value of the Lenders' collateral under the Credit Agreement.

5.     All Documents and Communications Relating to any due diligence undertaken by You or any other Person relating to Alchemy or Anderson Merchandisers, including any due diligence undertaken in connection with the (i) August 2014 Transaction or the (ii) Loan Documents.

6.     All Documents and Communications of any Virgo credit committee relating to (i) the August 2014 Transaction; (ii) the Original Credit Agreement; (iii) the May 2015 Transaction; or (iv) the Loan Documents.

7.      All Documents and Communications Relating to any financial projections or business plans You, Calrissian, Alchemy, or a Professional prepared in connection with the (i) August 2014 Transaction; the (ii) Loan Documents; or (iii) Alchemy.

8.      All Documents and Communications Relating to the use of funds Alchemy received from (i) You or (ii) Calrissian.

9.      All Documents and Communications Relating to the use of funds Alchemy received from the Lenders, including any proceeds ultimately distributed to (i) You and/or deposited in a bank account maintained by You or in which You have had any beneficial interest; or (ii) Calrissian and/or deposited in a bank account maintained by Calrissian or in which Calrissian has had any beneficial interest.

10.     All Documents and Communications Relating to any covenant breaches or Events of Default under the Loan Documents.

11.     All Documents and Communications Relating to Alchemy.

12.     All Documents and Communications Relating to Calrissian.

13.     All Documents and Communications Relating to Anderson Merchandisers.

14.     All Documents and Communications Relating to any waivers or potential waivers for any covenant breaches or Events of Default under the Loan Documents.

15.     All Documents and Communications Relating to any borrowing base certificates or compliance certificates prepared in connection with the Loan Documents, including Documents reflecting calculations performed for the purposes of testing compliance with bank covenants or the calculation of the borrowing base, drafts of borrowing base certificates, and work papers.

13

16.     All Documents and Communications Relating to the value of Alchemy's film library.

17.     All Documents and Communications Relating to the value of Anderson Merchandisers' film library.

18.     All Documents and Communications Relating to any returns of DVDs, including projected return rates.

19.     All Documents and Communications Relating to any modifications to the Loan Documents.

20.     All Communications with SunTrust or any of the Lenders Relating to the Loan Documents, Alchemy, or Anderson Merchandisers.

21.     All Documents and Communications Relating to Alchemy's balance sheets, earnings, income statements, solvency, ability to pay its debts as they come due, or capital adequacy, including any solvency analysis and fairness opinions prepared internally or externally.

22.     All Documents and Communications Relating to Anderson Merchandisers' balance sheets, earnings, income statements, solvency, ability to pay its debts as they come due, or capital adequacy, including any solvency analysis and fairness opinions prepared internally or externally.

23.     All Documents and Communications Relating to Calrissian's balance sheets, earnings, income statements, solvency, ability to pay its debts as they come due, or capital adequacy, including any solvency analysis and fairness opinions prepared internally or externally.

14

24.     All Documents and Communications Relating to Your balance sheets, solvency, ability to pay Your debts as they come due, or capital adequacy, including (i) any solvency analysis and fairness opinions prepared internally or externally or (ii) any aging reports Relating to accounts receivable or accounts payable.

25.     All Documents and Communications Relating to Alchemy's enterprise value, including any analyses, appraisals, reports, evaluations, forecasts, opinions, or similar documents respecting Alchemy's value and/or assets, including a transaction comparable analysis, a comparable company analysis, a weighted average cost of capital analysis, and a discounted cash flow analysis.

26.     All Documents and Communications Relating to Anderson Merchandisers' enterprise value, including any analyses, appraisals, reports, evaluations, forecasts, opinions, or similar documents respecting Alchemy's value and/or assets, including a transaction comparable analysis, a comparable company analysis, a weighted average cost of capital analysis, and a discounted cash flow analysis.

27.     All Documents and Communications Relating to Calrissian's enterprise value, including any analyses, appraisals, reports, evaluations, forecasts, opinions, or similar documents respecting Calrissian's value and/or assets, including a transaction comparable analysis, a comparable company analysis, a weighted average cost of capital analysis, and a discounted cash flow analysis.

28.     All Documents and Communications Relating to any collateral review of Alchemy's borrowing base in connection with the Loan Documents.

29.     All Documents and Communications Relating to any collateral review of Anderson Merchandisers' borrowing base in connection with the Loan Documents.

LEGAL\35017039\2 00601.0823.000/390810.000

30.     For the period January 1, 2011 to the present (i) Your tax returns (ii) Calrissian's tax returns, (iii) Alchemy's tax returns, and (iv) Anderson Merchandisers' tax returns.

31.     For the period January 1, 2011 to the present, all Documents and Communications Relating to (i) Your financial statements (audited and unaudited), (ii) Calrissian's financial statements (audited or unaudited), (iii) Alchemy's financial statements (audited and unaudited), or (iv) Anderson Merchandisers' financial statements (audited and unaudited).

32.     All Documents and Communications Relating to bank statements for any account maintained by You, Calrissian, Alchemy, or Anderson Merchandisers or in which You, Calrissian, Alchemy, or Anderson Merchandisers has had any beneficial interest.

33.     All meeting minutes, presentations, consents, resolutions, agendas, board materials, transcripts, or communications of Your board of directors and/or any committees or subcommittees of Your board of directors that relate to Anderson Merchandisers, Alchemy or Calrissian.

34.     All meeting minutes, presentations, consents, resolutions, agendas, board materials, transcripts, or communications of (i) Calrissian's board of directors or any committees or subcommittees of Calrissian's board of directors, (ii) Alchemy's board of directors and/or any committees or subcommittees of Alchemy's board of directors, or (iii) Anderson Merchandisers' board of directors and/or any committees or subcommittees of Anderson Merchandisers' board of directors.

35.     All Documents and Communications Relating to (i) Alchemy's decision to file for Chapter 7 relief or (ii) the timing of the Chapter 7 filing.

36.     All Documents and Communications Relating to Alchemy's payment or non-payment to creditors for the period of July 1, 2015 to July 1, 2016.

37.     All Documents and Communications Relating to any actual or potential debt refinancing or capital restructuring of Alchemy or Anderson Merchandisers.

38.     All Documents and Communications Relating to (i) Calrissian's decision to file for Chapter 11 relief or (ii) the timing of the Calrissian Chapter 11 filing.

39.     All Documents and Communications Relating to Your defenses and counterclaims in the Nu Image Arbitration, including any claim that any aspect of Alchemy's financial condition was misrepresented at the time of the August 2014 Transaction.

40.     All Documents and Communications Relating to the Nu Image Arbitration including without limitation any awards or decisions related thereto.

41.     All Documents and Communications Relating to Your decision to withhold non-contingent payments owed under the August 2014 Purchase Agreement.

42.     All Documents and Communications Relating to the termination of the employment of Alchemy's Chief Financial Officer, John Avagliano.

43.     All Documents and Communications Relating to the termination of the employment of Alchemy's Chief Executive Officer, Bill Lee.

44.     All Communications with SunTrust or any of the Lenders Relating to the May 2015 Transaction or ANconnect's alleged breaches of the May 2015 Purchase Agreement.

45.     All Documents and Communications Relating to Alchemy's decision to not make payments owed under the terms of the Transition Services Agreement and/or the Merchandising Agreement.

46.     All Communications with SunTrust or any of the Lenders Relating to Alchemy's decision to not make payments owed under the terms of the Transition Services Agreement or the Merchandising Agreement.

LEGAL\35017039\2 00601.0823.000/390810.000

47.     All Documents and Communications Relating to ANconnect's withholding of payments owed to Alchemy under the May 2015 Purchase Agreement.

48.     All Documents and Communications Relating to any due diligence undertaken on ANconnect in connection with the May 2015 Transaction.

49.     All Documents and Communications Relating to the value of ANconnect's assets, including valuation reports prepared internally or externally.

50.     All Documents and Communications Relating to Anderson's film library.

51.     All Documents and Communications Relating to the value of Anderson Merchandisers' assets, including valuation reports prepared internally or externally.

52.     All Communications with SunTrust or any of the Lenders Relating to the alleged fraudulent or other wrongful conduct of John Avagliano or Bill Lee.

53.     All Documents and Communications supporting or evidencing possible claims or causes of action of Virgo, Calrissian and/or Alchemy against BDO USA LLP and/or other Professionals.

Dated:  March 29, 2018

*/s/ John T. Carroll, III*
John T. Carroll, III (No. 4060)
Keith L. Kleinman (No. 5693)
1201 N. Market Street
Suite 1001
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:   (302) 295-2013
jcarroll@cozen.com
kkleinman@cozen.com

*Counsel for George L. Miller, Chapter 7 Trustee*