# Exhibit 4

# Chart of Duplicative Discovery Requests Regarding Baker Tilly & Nu Image

| This Action | | State Court Litigation | Trustee Action | Alchemy Bankruptcy | | Calrissian Bankruptcy |
|---|---|---|---|---|---|---|
| Plaintiffs' Subpoenas to Baker Tilly & Nu Image | Plaintiffs' Subpoena to VIG | Plaintiffs' Requests for Production to VIG | Alchemy Trustee's Requests for Production | Alchemy Trustee's 2004 Subpoena | Agent Bank's 2004 Subpoena | Agent Bank's 2004 Subpoena |
| **BAKER TILLY**<br><br>3. All Documents and Communications Relating to any **analysis, review, evaluation, assessment, investigation, valuation, or due diligence conducted concerning Alchemy,** including all accounting and financial records and work files.<br><br>8. All Documents and Communications relating to any **assessment, due diligence, valuation, or analysis** that You conducted or reviewed **relating to the Alchemy Purchase**, the AN Connect Transaction, or the ARC Transaction. | 19. All Documents and Communications related to **any assessment, due diligence, or analysis of Alchemy**, Calrissian, the Credit Agreement, the Borrowing Base, or the Guaranty Agreement conducted by: (a) You; (b) **Baker Tilly**; (c) Salem Partners; (d) Sword Rowe; (e) SunTrust; or (f) FTI Consulting. | 31. All Documents and Communications related to **any assessment, due diligence, or analysis of Alchemy**, Calrissian, the Credit Agreement, the Borrowing Base, or the Guaranty Agreement conducted by: (a) Any Defendant; (b) **Baker Tilly**; (c) Salem Partners; (d) Sword Rowe; (e) SunTrust; or (f) FTI Consulting. | 7. **All valuations of [Alchemy** and Anderson Digital, LLC] performed at any time during the period from August 2014 to the Petition Date. | 3. **All Documents and Communications Relating to any financial advisors or consultants retained** by either Alchemy, Calrissian or You, including **Baker Tilly** and BDO USA LLP.<br><br>5. **All Documents and Communications Relating to any due diligence** undertaken by You or any other Person **relating to Alchemy** or Anderson Merchandisers, including any due diligence undertaken in connection with the (i) August 2014 Transaction or the (ii) Loan Documents. | | |

## Chart of Duplicative Discovery Requests Regarding Baker Tilly & Nu Image

| This Action | | State Court Litigation | Trustee Action | Alchemy Bankruptcy | | Calrissian Bankruptcy |
|---|---|---|---|---|---|---|
| Plaintiffs' Subpoenas to Baker Tilly & Nu Image | Plaintiffs' Subpoena to VIG | Plaintiffs' Requests for Production to VIG | Alchemy Trustee's Requests for Production | Alchemy Trustee's 2004 Subpoena | Agent Bank's 2004 Subpoena | Agent Bank's 2004 Subpoena |
| **NU IMAGE**<br><br>1. **All Documents produced** by any party in the Nu Image Arbitration.<br><br>2. **All transcripts** (partial or whole), DVDs, or other records of **any depositions (including exhibits), hearings, arguments** or other proceedings in the Nu Image Arbitration.<br><br>3. **All exhibits** and expert reports in the Nu Image Arbitration.<br><br>4. All Documents containing orders, rulings, or awards (both interim and final) issued by the arbitrator in the Nu Image Arbitration. | 22. With respect to the Nu Image Arbitration: (a) All **Documents produced** by any party; (b) All **transcripts** (partial or whole) or other records **of any depositions (including exhibits), hearings, arguments or other proceedings**; (c) All **Documents filed or served** on any other party; (d) All **exhibits** and expert reports; and (e) All Documents containing **orders, rulings, or awards** (both interim and final) issued by the arbitrator. | 24. All **Documents produced** by any party in the Nu Image Arbitration.<br><br>25. All **transcripts** (partial or whole), DVDs, or other records **of any depositions (including exhibits), hearings, arguments or other proceedings** in the Nu Image Arbitration.<br><br>26. All **exhibits** in the Nu Image Arbitration.<br><br>27. All Documents containing **orders, rulings, or awards** (both interim and final) issued by the arbitrator in the Nu Image Arbitration. | 29. All documents relating to Nu Image, Inc. v. Calrissian LP, et al., JAMS Reference No. 1210033079, including, but not limited to all **pleadings, opinions, briefs, discovery documents, hearing and deposition transcripts, and hearing exhibits**. | | | 39. All **Documents and Communications Relating to Your defenses and counterclaims in the Nu Image Arbitration,** including any claim that any aspect of Alchemy's financial condition was misrepresented at the time of the August 2014 Transaction.<br><br>40. **All Documents and Communications Relating to the Nu Image Arbitration** including without limitation any **awards or decisions** related thereto. |

# Plaintiffs' Requests for Production to VIG (State Court Litigation)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

EMIGRANT BANK; PACIFIC MERCANTILE BANK,

                Plaintiffs,

           -against-

VIRGO INVESTMENT GROUP LLC; VIRGO SOCIETAS PARTNERS, LLC; VIRGO SOCIETAS PARTNERSHIP III (ONSHORE), L.P.; VIRGO SOCIETAS PARTNERSHIP III (OFFSHORE), L.P.; VIRGO SERVICE COMPANY, LLC; JESSE WATSON; MARK PEREZ; AND DOES 1 THROUGH 10, INCLUSIVE,

                Defendants.

Index No. 654350/2021

Part 53

Honorable Justice Andrew S. Borrok

## PLAINTIFF EMIGRANT BANK'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Please note that, pursuant to Article 31 of the New York Civil Practice Law and Rules, and Rule 11 of the Rules of the Commercial Division of the Supreme Court of the State of New York, Plaintiff Emigrant Bank ("Emigrant"), by and through its undersigned counsel, hereby serves the following First Set of Requests for Production of Documents (the "Requests") on Defendants Virgo Investment Group LLC, Virgo Societas Partners, LLC, Virgo Societas Partnership III (Onshore), L.P., Virgo Societas Partnership III (Offshore), L.P., Virgo Service Company, LLC, Jesse Watson, and Mark Perez (collectively, "Defendants"). Pursuant to CPLR 3122(a), Defendants must serve on Emigrant any objections on or before December 3, 2021 that state with reasonable particularity the reasons for each objection, and if objection is made to part of an item or category, the part shall be specified. Emigrant further requests that Defendants produce the requested Documents at the office of Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison

Avenue, 22nd Floor, New York. New York, 10010, or at a place and time mutually agreed to by counsel.  Emigrant reserves the right to serve additional requests for production at a later date.

The Documents requested are to be produced according to the definitions and instructions herein.

## DEFINITIONS

Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common, ordinary sense.  The words and phrases set forth below shall be defined as follows when used in the Requests:

1.     "Action" refers to the above-captioned action.

2.     "Alchemy" means Our Alchemy, LLC and its predecessors (including Millennium Entertainment LLC), successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf.

3.     "Alchemy Bankruptcy" shall refer to the Chapter 7 bankruptcy proceeding in the Bankruptcy Court for District of Delaware, under the caption *In re Our Alchemy, LLC* (Case No. 16-11596).

4.     "Alchemy Purchase Agreement" shall refer to the Purchase Agreement dated August 18, 2014 between Calrissian *et al*. and Nu Image, *et al*.

5.     "Alchemy Transaction" shall refer to the sale of Alchemy (then named Millennium Entertainment, LLC) by Nu Image, *et al*. to Calrissian, *et al*. as reflected in the Alchemy Purchase Agreement.

6.     "ANConnect" means ANConnect LLC and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all

of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf.

7.   "ANConnect Purchase Agreement" means the Asset Purchase Agreement dated May 7, 2015 between Alchemy and ANConnect.

8.   "ANConnect Transaction" means the transaction set forth in the ANConnect Purchase Agreement.

9.   "ARC" shall mean ARC Entertainment, LLC and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf.

10.   "ARC Transaction" shall mean the transaction set forth in the Contribution Agreement between Calrissian, OA Holdings, and ARC dated July 9, 2015.

11.   "Avagliano" means John Avagliano, the former Chief Financial Officer of Alchemy.

12.   "Baker Tilly" means Baker Tilly Virchow Krause, LLP and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, or any person who otherwise acted or is acting on its behalf.

13.   "Borrowing Base" has the meaning set forth in Section 1.1 of the Credit Agreement.

14.   "Calrissian" means Calrissian L.P. and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all

of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf.

15.     "Channel Stuffing" means a business practice by which an entity deliberately ships more physical product to distributors and retailers than it expects to be sold.

16.     "Communication" means any transmittal of information (in the form of facts, ideas, inquiries, or otherwise) whether orally or by document, telephone, telecopier, mail, fax, email, voicemail, cellular phone text message, instant message, personal delivery, or by any other means, be they analog, electronic, or otherwise.

17.     "Credit Agreement" means the Revolving Credit and Term Loan Agreement by and among SunTrust, PMB, Preferred Bank, and Alchemy, dated as of September 4, 2014 (as amended from time to time), as well as the Amended and Restated Revolving Credit and Term Loan Agreement by and between Emigrant, Preferred Bank, PMB, SunTrust, and Alchemy, dated as of July 9, 2015 (as amended from time to time).

18.     "Defendants" means Defendants Virgo, Virgo Societas, Virgo Onshore, Virgo Offshore, Virgo Service, Watson, and Perez.

19.     "Document" shall be construed to the fullest extent permissible under New York law and means, without limitation, the original and all copies and translations of any information in any written, recorded, electronic, or graphic form including all memoranda, notes, interoffice and intra-office communications, telegrams, telecopies, letters, reports, stenographic notes, bulletins, notices, emails, text messages or other messaging-application messages, instant messages or other electronic-chat messages, telephonic or personal communications, computer models, spreadsheets, data, accounts, records, calendars, diaries, minutes, contracts or other legal papers, resolutions, written policies or procedures, insurance policies, audio records, photographs,

microform, film, and any electronically stored information stored in any medium, including computer backup devices, hard drives, electronic share drives, or any other virtual or physical space.  A draft or non-identical copy is a separate Document within the meaning of this term.

20.     "DVD Return Rate" means the rate at which DVDs are returned to the provider of the products from the distributors or retailers.

21.     "Emigrant" means Emigrant Bank and its advisors, agents, representatives, attorneys, and affiliates thereof (including Aperture Media Partners), and all of their directors, officers, employees, and any other persons acting on their behalf.

22.     "FTI Consulting" means FTI Consulting, Inc. and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, or any person who otherwise acted or is acting on its behalf.

23.     "Guaranty Agreement" means the Guaranty and Security Agreement, entered into by and between Alchemy, Calrissian, and SunTrust, on behalf of itself and the other Lenders, dated as of September 4, 2014 (as amended from time to time).

24.     "Guaranteed Obligations" shall have the meaning set forth in Section 2.1 of the Guaranty Agreement and shall include the Loans and Obligations (as defined in these Definitions).

25.     "Including" shall be construed to mean "including, without limitation" or "including, but not limited to."

26.     "Joinder Agreement" means the Term Loan Joinder Agreement by and among Emigrant, Alchemy, SunTrust, PMB, and Preferred Bank, dated as of July 10, 2015 (as amended from time to time).

27.     "Lenders" means each and all of the following:   Preferred Bank, SunTrust, Emigrant, and PMB.

28.     "Loans" shall have the meaning set forth in Section 1.1 of the Credit Agreement.

29.     "Nu Image" means Nu Image, Inc. and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf.

30.     "Nu Image Arbitration" means the JAMS arbitration between Claimant Nu Image and Respondents Virgo, *et al*., with JAMS Reference number 1210033079.

31.     "Obligations" shall have the meaning set forth in Section 1.1 of the Credit Agreement.

32.     "Perez" means Defendant Mark Perez.

33.     "Person" means, without limitation, any natural person, corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, group, organization or entity, and shall include the present and former officers, executives, partners, members, controlling shareholders and any other person acting or purporting to act on behalf of any of them, and any of their present or former parent corporations, subsidiaries, affiliates, divisions, predecessors and successors in interest.

34.     "Plaintiffs" means Emigrant and PMB.

35.     "PMB" means Pacific Mercantile Bank and its advisors, agents, representatives, attorneys, and affiliates thereof, and all of their directors, officers, employees, and any other persons acting on their behalf.

36.     "Related to" means regarding, concerning, referring to, reflecting, discussing, describing, analyzing, supporting, evidencing, comprising, constituting, setting forth, containing, showing, disclosing, explaining, summarizing, or mentioning.

37.     "Salem Partners" means Salem Partners LLC and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf.

38.     "SunTrust" means SunTrust Bank and all of its divisions, subdivisions, affiliates (including SunTrust Robinson Humphreys), parents, predecessors, successors (including Truist), joint ventures, present and former officers, directors, employees, representatives, agents, attorneys, accountants, advisors, assigns, and any other persons who otherwise acted or is acting on its behalf.

39.     "Sword Rowe" means Sword, Rowe & Company LLC and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf.

40.     "Truist" means Truist Bank and all of its divisions, subdivisions, affiliates, parents, predecessors (including SunTrust), successors, joint ventures, present and former officers, directors, employees, representatives, agents, attorneys, accountants, advisors, assigns, and any other persons who otherwise acted or is acting on its behalf.

41.     "Virgo" means Defendant Virgo Investment Group, LLC and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and

affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf.

42.     "Virgo Societas" means Defendant Virgo Societas Partners, LLC and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf.

43.     "Virgo Onshore" means Defendant Virgo Societas Partnership III (Onshore), L.P. and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf.

44.     "Virgo Offshore" means Virgo Societas Partnership III (Offshore), L.P. and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf.

45.     "Virgo Service" means Defendant Virgo Service Company, LLC and its predecessors, successors, related entities, divisions, direct or indirect subsidiaries, parent companies, and affiliates thereof, and all of its officers, directors, employees, agents, attorneys, assigns, representatives, owners with more than 5% interest, or any person who otherwise acted or is acting on its behalf.

46.     "Watson" means Defendant Jesse Watson.

47.     "You" or "Your" shall refer to Defendants (as defined in these Requests).

## **INSTRUCTIONS**

The following instructions apply to each request set forth herein.

1.      Unless otherwise stated in a specific Request, these Requests seek responsive information and Documents authored, generated, disseminated, drafted, produced, reproduced, or otherwise created or distributed in, or relating to, the period from September 1, 2013 to the present.

2.      The use of a verb in any tense shall be construed to be in the tense necessary to bring within the scope of a Request all Documents that might otherwise be construed as outside its scope.

3.      In responding to these Requests, you must produce all responsive Documents (including those stored electronically) that are in your possession, custody or control, or in the possession, custody or control of your predecessors, successors, parents, subsidiaries, divisions or affiliates, or any of your respective directors, officers, managers, employees, agents, or attorneys.

4.      Emigrant Bank reserves the right to request inspection of the original Documents, including those stored electronically, as they are kept in the usual course of business. If the original is not in your custody, then a copy thereof, and all non-identical copies which differ from the original or from the other copies produced for any reason, including, without limitation, the making of notes thereon.

5.      You are to produce each Document requested herein in its entirety, without deletion or excision (except on privilege grounds), regardless of whether you consider the entire document to be relevant or responsive to the Requests.

6.     Unless otherwise agreed to by the parties, any Document withheld on the basis of a claim of privilege or other immunity from discovery must be identified on a privilege log that meets the requirements of CPLR 3122(b).  If only a part of a Document is subject to an asserted privilege or immunity, the Document must be produced in redacted form.  You shall identify the redaction by stamping the word "Redacted" on the Document at each place where information has been redacted and separately logging each redaction, and the basis for the redaction, on the privilege log.

7.     If production of Documents is withheld on privilege grounds, as to each such withheld document, state the following information:

(a)  which privilege is claimed;

(b)  who is asserting the privilege;

(c)  a precise statement of the facts upon which said claim of privilege is based;

(d)  the following information describing each purportedly privileged document:

i)   a brief description sufficient to identify its nature, *i.e.*, agreement, letter, memorandum, type, etc.;

ii)  a brief description sufficient to identify the subject matter and purpose of the document;

(e)  the date it was prepared;

(f)  the date it bears;

(g)  the date it was sent;

(h)  the date it was received;

(i)  the identity of the person preparing it;

(j)  the identity of the person sending it;

(k) the identity of each person to whom it was sent or was to have been sent, including all addresses and all recipients of copies;

(l) a statement as to whom each identified person represented or purported to represent at all relevant times;

(m) all persons to whom its contents have been disclosed; and

(n) a precise description of the place where each copy of that document is kept, including the title or description of the file in which said document may be found and the location of such file.

8.      If a portion of any document responsive to these Requests is withheld under claim of privilege, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted. Whenever a document is not produced in full or is produced in redacted form, so indicate on the document, identifying those portions of the document which are not being produced.  For each document that is redacted, in addition to providing the redacted version of the document, furnish logs which comply with the legal requirements under federal law, but at a minimum include the following information:

(a) the Begin Production ID (Bates) of the document;

(b) the End Production ID (Bates) of the document;

(c) a description of why privilege is being asserted over the document; and

(d) which privilege is asserted.

9.      Privilege and redaction logs may be produced on a rolling basis. The producing party shall provide the logs and supplements for each production within thirty (30) days of each given production date.

10.     If a document responsive to these Requests was at any time in your possession, custody or control but is no longer available for production, as to each such document state the following information:

(a)  whether the document is missing or lost;

(b)  whether it has been destroyed;

(c)  whether the document has been transferred or delivered to another person and, if so, to whom and at whose request;

(d)  whether the document has been otherwise disposed of; and

(e)  a precise statement of the circumstances surrounding the disposition of the document and the date of its disposition.

11.     These requests for Documents and things are continuing in nature.  If, after producing the requested Documents and things, you obtain or become aware of any further responsive Documents or things, you are required by Article 31 of the CPLR to produce such additional Documents to Plaintiffs at the offices of Quinn Emanuel Urquhart & Sullivan, LLP.

**Form of Production – Hard Copy Documents**

12.     Hard copy Documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.* .dat).  The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME" and "CUSTODIAN."  The Documents should be logically unitized (*i.e.*, distinct Documents shall not be merged into a single record, and single Documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business.  If an original document contains color to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG

compression and a high-quality setting as to not degrade the original image. Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

**Form of Production – Electronically Stored Information (ESI)**

13.   Format: ESI should be produced in single-page, black and white, TIFF Group IV, 300 DPI TIFF images, with the exception of spreadsheet type files, source code, audio and video files, which should be produced in native format. TIFFs should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFFs of email messages should include the BCC line. PowerPoint Documents shall be processed with hidden slides and all speaker notes unhidden, and shall be processed to show both the slide and the speaker's notes on the TIFF image. If an original document contains color, the document should be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image. Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.

14.   Format of Native Files: If a document is produced in native format, a single-page, Bates-stamped image slip sheet stating the document has been produced in native format should also be provided. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either party believes that specific Documents or classes of Documents, not already identified within this protocol, should be produced in native format, the parties should meet and confer in good faith.

15.     De-Duplication:  You should remove exact duplicate Documents based on MD5 or SHA-1 hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates.  An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.   Removal of near-duplicate Documents and email thread suppression is not acceptable. De-duplication should be done across the entire collection (global de-duplication) and the CUSTODIAN field should list each custodian, separated by a semi-colon, who was a source of that document.  Should the CUSTODIAN metadata field produced become outdated due to rolling productions, an overlay file providing all the custodians for the affected Documents should be produced prior to substantial completion of the document production.

16.     Metadata: All ESI shall be produced with a delimited, database load file that contains the metadata fields listed in Table 1 below.  The metadata produced should have the correct encoding to enable preservation of the Documents' original language.

17.     Compressed Files Types: Compressed file types (*i.e.* .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

18.     Redactions: If You redact Documents produced in native format, you must ensure that proper formatting and usability are maintained.

## **Table 1: Production Fields**

| Field | Description | E-mail | Non-E-mail Electronically Stored Information |
|---|---|---|---|
| Bates Begin | Beginning page Bates number | x | x |
| Bates End | Ending page Bates number | x | x |
| Parent Bates | Beginning page Bates number of parent document in family | x | x |
| Page Count | Number of pages in document | x | x |

| Field | Description | E-mail | Non-E-mail Electronically Stored Information |
|---|---|:---:|:---:|
| Attachment Range | Beginning and ending attachment range pages | x | x |
| Attachment Begin | Beginning page of attachment range | x | x |
| Attachment End | Ending page of attachment range | x | x |
| Attachment | Whether document contains attachments | x | x |
| Family Range | Beginning page of parent document and ending page of attachment range | x | x |
| Family Count | Number of documents in family | x | x |
| Custodian | Production custodian or non-human production data source associated with the produced document | x | x |
| All Custodians | All custodians that had custody of the document prior to deduplication | x | x |
| File Name | File name of document |  | x |
| File Extension | File extension of document |  | x |
| File Size | Size of file |  | x |
| Document Type | Type of document file or format | x | x |
| Title | Title from document metadata | x | x |
| E-mail Subject | Subject of email | x |  |
| Author | Document author |  | x |
| From | Email author | x |  |
| To | Email recipients | x |  |
| CC | Email copyees | x |  |
| BCC | Email blind copyees | x |  |
| Date Sent | Date sent in Eastern Standard Time (EST) | x |  |
| Time Sent | Time sent in Eastern Standard Time (EST) | x |  |
| Date Received | Date received in Eastern Standard Time (EST) | x |  |
| Time Received | Time received in Eastern Standard Time (EST) | x |  |
| Date Created | Date created in Eastern Standard Time (EST) |  | x |
| Date Last Modified | Date last modified in Eastern Standard Time (EST) |  | x |

| Field | Description | E-mail | Non-E-mail Electronically Stored Information |
|---|---|---|---|
| Message ID | A unique identifier for a digital message, most commonly a globally unique identifier used in email and Usenet newsgroups | | |
| Reference Chain | Sometimes referred to as Conversation ID, a collection of MessageIDs that allows Outlook or other mailbox clients to group conversations together. | | |
| Hash Value (MD5 or SHA-1) | Unique electronic signature of email or electronic file | x | x |

## DOCUMENT REQUESTS

**REQUEST NO. 1:**

All Documents and Communications related to the creation, negotiation, drafting, revision or execution of the Credit Agreement, including but not limited to all drafts of the Credit Agreement.

**REQUEST NO. 2:**

All Documents and Communications related to the creation, negotiation, drafting, revision, or execution of the Guaranty Agreement, including but not limited to all drafts of the Guaranty Agreement.

**REQUEST NO. 3:**

All Documents and Communications related to the creation, negotiation, drafting, revision, or execution of the Joinder Agreement, including but not limited to all drafts of the Joinder Agreement.

**REQUEST NO. 4:**

All Documents and Communications related to the creation, negotiation, drafting, revision, or execution of the Alchemy Purchase Agreement, including but not limited to all drafts of the Alchemy Purchase Agreement.

**REQUEST NO. 5:**

All Documents and Communications related to the creation, negotiation, drafting, revision, or execution of the ANConnect Purchase Agreement, including but not limited to all drafts of the ANConnect Purchase Agreement.

**REQUEST NO. 6:**

All Documents and Communications related to any analyses, evaluations, or due diligence that any Defendant conducted, reviewed, or received relating to the Alchemy Transaction.

**REQUEST NO. 7:**

All Documents and Communications related to any analyses, evaluations, or due diligence that any Defendant conducted, reviewed, or received relating to the ANConnect Transaction.

**REQUEST NO. 8:**

All Documents and Communications related to any analyses, evaluations, or due diligence that any Defendant conducted, reviewed, or received relating to the ARC Transaction.

**REQUEST NO. 9:**

All Documents and Communications related to any analyses, evaluations, or due diligence that any Defendant conducted, reviewed, or received relating to the Credit Agreement.

**REQUEST NO. 10:**

All Documents and Communications related to any analyses, evaluations, or due diligence that any Defendant conducted, reviewed, or received relating to the Guaranty Agreement.

**REQUEST NO. 11:**

All Documents and Communications related to any analyses, evaluations, or due diligence that any Defendant conducted, reviewed, or received relating to the Joinder Agreement.

**REQUEST NO. 12:**

All Communications between any Defendant and Alchemy related to the Credit Agreement, the Guaranty Agreement, the Joinder Agreement, the Guaranteed Obligations, the Borrowing Base, Channel Stuffing, the Alchemy Transaction, the ANConnect Transaction, or the ARC Transaction.

**REQUEST NO. 13:**

All Documents and Communications related to any of Alchemy's financial statements (including but not limited to borrowing base certificates, balance sheets, cash flow statements, income statements, equity statements, and tax returns, as well as all documents used to prepare any of the aforementioned documents).

**REQUEST NO. 14:**

All Documents and Communications related to any of Calrissian's financial statements (including but not limited to balance sheets, cash flow statements, income statements, equity statements, and tax returns, as well as all documents used to prepare any of the aforementioned documents).

**REQUEST NO. 15:**

All Communications between any Defendant and Calrissian related to the Credit Agreement, the Guaranty Agreement, the Joinder Agreement, the Guaranteed Obligations, the Borrowing Base, Channel Stuffing, the Alchemy Transaction, the ANConnect Transaction, or the ARC Transaction.

**REQUEST NO. 16:**

All Communications related to Emigrant or PMB.

**REQUEST NO. 17:**

All Communications between any Defendant and any of the Lenders related to the Credit Agreement, the Guaranty Agreement, the Joinder Agreement, the Guaranteed Obligations, the Borrowing Base, the Alchemy Transaction, the ANConnect Transaction, the ARC Transaction, or the Alchemy Bankruptcy.

**REQUEST NO. 18:**

All Documents and Communications related to any meetings with any Lender in which any Defendant discussed the Alchemy Transaction, the ANConnect Transaction, the ARC Transaction, the Borrowing Base, Alchemy's business, or any present or future investment in Alchemy, specifically including all Documents and Communications related to any presentation to the Lenders on or around May 29, 2015.

**REQUEST NO. 19:**

All Communications with or within any Defendant related to the Credit Agreement, the Guaranty Agreement, the Guaranteed Obligations, the Joinder Agreement, the Borrowing Base, Channel Stuffing, the Alchemy Transaction, the ANConnect Transaction, or the ARC Transaction.

**REQUEST NO. 20:**

All Communications with or within any Defendant related to Alchemy's business from January 1, 2014 through July 1, 2016.

**REQUEST NO. 21:**

All Documents and Communications related to Alchemy's DVD Return Rates, including projected rates of return and actual rates of return.

**REQUEST NO. 22:**

All Documents and Communications related to the decision to terminate Alchemy Chief Financial Officer John Avagliano, including but not limited to all Documents and Communications relating to Mr. Avagliano's involvement (or alleged involvement) in:

(a) Channel Stuffing;

(b) Misrepresentation of Alchemy's financial statements, including budgets and the Borrowing Base;

(c) The ANConnect Transaction;

(d) The ARC Transaction;

(e) The Alchemy Transaction;

(f) The Credit Agreement;

(g) The Guaranty Agreement; or

(h) The Joinder Agreement.

**REQUEST NO. 23:**

All Documents and Communications related to the decision to terminate Alchemy Chief Executive Officer Bill Lee in December 2015, including but not limited to all Documents and Communications relating to Mr. Lee's involvement (or alleged involvement) in:

(a) Channel Stuffing;

(b) Misrepresentation of Alchemy's financial statements and budgets, including the Borrowing Base;

(c) The ANConnect Transaction;

(d) The ARC Transaction;

(e) The Alchemy Transaction;

(f) The Credit Agreement;

(g) The Guaranty Agreement; or

(h) The Joinder Agreement.

**REQUEST NO. 24:**

All Documents produced by any party in the Nu Image Arbitration.

**REQUEST NO. 25:**

All transcripts (partial or whole), DVDs, or other records of any depositions (including exhibits), hearings, arguments or other proceedings in the Nu Image Arbitration.

**REQUEST NO. 26:**

All exhibits in the Nu Image Arbitration.

**REQUEST NO. 27:**

All Documents containing orders, rulings, or awards (both interim and final) issued by the arbitrator in the Nu Image Arbitration.

**REQUEST NO. 28:**

All Communications with any Lender related to Alchemy's ability to fulfill its obligations under the Credit Agreement.

**REQUEST NO. 29:**

All Communications with any Lender related to Calrissian's ability to fulfill its obligations under the Guaranty Agreement.

**REQUEST NO. 30:**

All Documents and Communications related to the formation and capitalization or other financing of Calrissian, including the Calrissian operating agreement.

**REQUEST NO. 31:**

All Documents and Communications related to any assessment, due diligence, or analysis of Alchemy, Calrissian, the Credit Agreement, the Borrowing Base, or the Guaranty Agreement conducted by:

    (a) Any Defendant;

    (b) Baker Tilly;

(c) Salem Partners;

(d) Sword Rowe;

(e) SunTrust; or

(f) FTI Consulting.

**REQUEST NO. 32:**

All Documents and Communications related to any actual or suspected improper, misleading or fraudulent representations or business practices by Alchemy, including but not limited to the effect of such practices on Alchemy's financial statements, borrowing base certificates, and tax returns.

**REQUEST NO. 33:**

Organizational charts, tables, diagrams, or other documents sufficient to identify each Defendant's corporate organizational and/or hierarchical structure from January 1, 2014 through December 31, 2016.

**REQUEST NO. 34:**

Organizational charts, tables, diagrams, or other documents sufficient to identify Alchemy's corporate organizational and/or hierarchical structure from January 1, 2014 through July 1, 2016.

**REQUEST NO. 35:**

Organizational charts, tables, diagrams, or other documents sufficient to identify Calrissian's corporate organizational and/or hierarchical structure from January 1, 2014 through December 31, 2016.

**REQUEST NO. 36:**

All Documents and Communications related to any actions taken by Perez to manage, control, direct, instruct, advise, consult with, or oversee Alchemy or Calrissian between August 1, 2014 and July 1, 2016.

**REQUEST NO. 37:**

All Documents and Communications related to any actions taken by Watson to manage, control, direct, instruct, advise, consult with, or oversee Alchemy or Calrissian between August 1, 2014 and July 1, 2016.

**REQUEST NO. 38:**

All insurance policies or agreements, including directors and officers liability insurance policies or agreements, which may satisfy all or part of a possible judgment in this action or to indemnify or reimburse for payments made to satisfy a possible judgment in this Action.

**REQUEST NO. 39:**

If You deny the allegations of paragraph 85 of the Complaint, all Documents and Communications related to Your denial.

**REQUEST NO. 40:**

If You deny the allegations of paragraph 96 of the Complaint, all Documents and Communications related to Your denial.

**REQUEST NO. 41:**

If You deny the allegations of paragraph 105 of the Complaint, all Documents and Communications related to Your denial.

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Dated: November 4, 2021

*/s/ Corey Worcester*
Corey Worcester
Leigha Empson
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Gary E. Gans (*pro hac vice forthcoming*)
Sage Vanden Heuvel (*pro hac vice forthcoming*)
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 4, 2021, I served the foregoing upon all counsel of record via electronic mail.

_/s/ Leigha Empson_
Leigha Empson

# Alchemy Trustee's Requests for Production (Trustee Action)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 7 |
| OUR ALCHEMY, LLC, *et al.*,[1] | Case No. 16-11596-JTD |
| *Debtors.* | Jointly Administered |
| | |
| GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Our Alchemy, LLC and Anderson Digital, LLC, | Adv. Pro. No. 18-50633-JTD |
| *Plaintiff,* v. | |
| ANCONNECT, LLC, *et al.*, | |
| *Defendants.* | |

## PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
## OF DOCUMENTS DIRECTED TO DEFENDANTS

Pursuant to Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure and the

Local Rules for the United States Bankruptcy Court for the District of Delaware, Plaintiff

George L. Miller, the Chapter 7 Trustee ("Plaintiff" or the "Trustee") for the jointly-administered

bankruptcy estates of Our Alchemy, LLC ("Alchemy") and Anderson Digital, LLC ("Anderson

Digital," and together with Alchemy, the "Debtors"), directs the following requests for the

production of documents to Defendants ANConnect, LLC, Anderson Merchandisers, LLC, Virgo

Investment Group, LLC, Virgo Societas Partners, LLC, Virgo Societas Partnership III (Onshore),

L.P., Virgo Societas Partnership III (Offshore), L.P., Virgo Service Company, LLC, OA

Investment Holdings LLC, OA Investment Partners LLC, Jesse Watson, Todd Dorfman, Mark

---

[1]     The Debtors are: Our Alchemy, LLC, Case No. 16-11596 and Anderson Digital, LLC, Case No. 16-11597.

Perez, Stephen Lyons, and Freyr Thor (collectively, the "Defendants") in the above-captioned

matter. Production shall be made at the offices of Kaufman, Coren & Ress, P.C., Two

Commerce Square, 2001 Market Street, Suite 3900, Philadelphia, PA 19103.

## General Instructions

1.      Answer each request for production of documents separately and as completely as

possible.

2.      If you object to any request for production of documents, in whole or in part, state

the nature of the objection and the extent to which it applies. An objection to a portion or

subpart does not relieve you of your obligation to respond to the remainder of the document

request and, to the extent that the objection does not apply, you must provide the requested

information or documents.

3.      If you contend that any of the information requested by these requests for

production of documents is protected by any privilege, state the nature of the privilege asserted,

the extent to which it applies, and a general description of the information which you contend is

protected. If you claim a privilege with respect to any documents, state the type of document,

the author(s), the date(s) on which the document was prepared and distributed, the person(s) to

whom the document was distributed (including those copies or blind copied) or otherwise

provided, whether intentionally or inadvertently, and the purpose for which the document was

prepared. If the asserted privilege applies to only a portion of a document, produce the

remainder of the document. If you claim a privilege with respect to information other than a

document, state the name of the person(s) from whom the privileged information was obtained,

the purpose for which it was obtained, the names of any person(s) to whom the information was

disclosed or communicated, whether intentionally or inadvertently, and the context in which it was disclosed or otherwise communicated.

4.      When a full and complete response to a particular request is not possible, production should be made to the extent possible and a statement should be made indicating why only a partial production is given and what must occur before complete production may be given.

5.      These requests shall be deemed continuing, so as to require additional production if additional information is obtained between the time the initial production is made and the time of trial.  Such additional production shall be made no later than five (5) days after such additional documents are received or before trial, whichever is earlier.

6.      "Identify" a person by providing the person's name, employer, title, last known address, and telephone number.

7.      "Identify" a document by stating the document's title, author(s), date, recipient(s), Bates-label number, and subject matter.

8.      If any document requested has been lost, destroyed, or otherwise transferred from your possession or control, please identify the document as completely as possible, the reasons for its destruction or removal, the person authorizing its destruction or removal, and the date the document was lost, destroyed, or removed.

## **Definitions**

1.      The term "You" or "Your" refers to each Defendant to whom these requests are directed, their predecessors, successors, parents, subsidiaries, and affiliated companies, agents, employees, directors, investigators, attorneys, representatives, and any other person acting on their behalf.

2. The term "ANConnect" refers to ANConnect, LLC, its predecessors, successors, parents, subsidiaries, and affiliated companies, agents, employees, directors, investigators, attorneys, representatives, and any other person acting on its behalf.

3. The term "Anderson Merchandisers" refers to Anderson Merchandisers, LLC, its predecessors, successors, parents, subsidiaries, and affiliated companies, agents, employees, directors, investigators, attorneys, representatives, and any other person acting on its behalf.

4. The term "Virgo" refers, individually and collectively, to Virgo Investment Group, LLC, Virgo Societas Partners, LLC, Virgo Societas Partnership III (Onshore), L.P. ("Virgo Onshore"), Virgo Societas Partnership III (Offshore), L.P. ("Virgo Offshore"), and Virgo Service Company, LLC, and any of their predecessors, successors, parents, subsidiaries, and affiliated companies, agents, managers, members, partners, employees, investigators, attorneys, representatives, and any other person acting of their behalf (including without limitation Jesse Watson, Todd Dorfman, and Mark Perez).

5. The term "OA Holdings" refers to OA Investment Holdings LLC, its predecessors, successors, parents, subsidiaries, and affiliated companies, agents, employees, directors, investigators, attorneys, representatives, and any other person acting on its behalf.

6. The term "OA Partners" refers to OA Investment Partners LLC, its predecessors, successors, parents, subsidiaries, and affiliated companies, agents, employees, directors, investigators, attorneys, representatives, and any other person acting on its behalf.

7. The term "Complaint" refers to the Complaint filed in the above-captioned adversary proceeding on June 29, 2018.

8. The term "Calrissian Distribution" refers to the $14,539,123.65 transfer from Alchemy to Calrissian on September 4, 2014, as described in Paragraphs 35-39 of the Complaint.

9.      The term "Anderson Transaction" refers to Alchemy's acquisition of ANConnect's physical and digital distribution business in July 2015, pursuant to the terms of the Asset Purchase Agreement dated as of May 7, 2015 (the "APA"), as subsequently amended.

10.     The term "ARC" refers to ARC Entertainment, LLC, its predecessors, successors, parents, subsidiaries, and affiliated companies, agents, employees, members, investigators, attorneys, representatives, and any other person acting on its behalf.

11.     The term "ARC Transaction" refers to the transaction in which certain ARC assets and liabilities were assigned, conveyed, and transferred to Calrissian and in turn contributed to OA Holdings, pursuant to the terms of the Contribution Agreement dated July 9, 2015 (the "Contribution Agreement") and agreements ancillary thereto.

12.     The term "Alchemy Accounts Receivable" refers to all accounts receivable collected by ANConnect or its affiliates pursuant to the Transition Services Agreement dated July 9, 2015.

13.     The term "Delaware State Court Action" refers to *ANConnect, LLC, et al. v. Our Alchemy, LLC*, C.A. Co. N16C-02-152 WCC [CCLD], filed in the Superior Court of Delaware.

14.     The term "AD Working Capital Transfer" refers to the July 2, 2015 transfer of $1,001,864 from Anderson Digital to an escrow account at Bank of America, as described in Paragraph 73 of the Complaint.

15.     The term "document" means any written, printed, typed, recorded or graphic matter, however produced or reproduced, including but not limited to correspondence, telegrams, memoranda, and other written communications, e-mails, notes, telephone messages, voice-mail, meeting minutes, work papers, diaries and calendars, studies, surveys, projections, analyses and other written compilations of data, drawings, sketches, blueprints, plans, specifications, graphs,

5

printed or published articles, audio and video tapes, computer diskettes and information compiled, stored or generated by computer or other processing methods, photographs, films and negative, whether copies or originals, in your possession, custody or control, your agents, officers, or employees, attorneys, investigators, and/or any other person acting on your behalf. The term "document" includes the original document or item, and each and every non-individual copy (whether different from the original for any reason, including notes made on the copy, etc.) together with all drafts of the document or item, worksheets, supporting documents, and all other relevant material.  The term "document" includes all electronic documents and all electronically stored information as they are ordinarily maintained.

16.     The term "communications" refers to both oral and written communications, including but not limited to correspondence, e-mail, voice-mail, memoranda, telephone calls, meetings and other discussions, whether formal or informal.

17.     The term "person" means a natural individual, partnership, corporation, trust or other business or trade entity or association, governmental representative or agency, department or unit.

18.     The terms "relate" and "relating to" mean constituting, comprising, setting forth, showing, evidencing, disclosing, describing, explaining, summarizing, concerning, supporting, memorializing, or referring to, whether directly or indirectly.

19.     Unless otherwise indicated in a particular request, the time period to which these requests relate is from August 2014 to the Petition Date.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

Plaintiff requests that You identify and produce the following documents, to the extent such documents are in Your possession:

1.      All documents concerning Calrissian LP's acquisition of Millennium Entertainment, LLC, including but not limited to negotiations and financing relating to the acquisition and to due diligence conducted by or at the direction of Virgo in connection with the acquisition.

2.      All documents relating to the Calrissian Distribution, including but not limited to (i) all documents and communications authorizing, effectuating, or discussing the Calrissian Distribution, and (ii) all documents and communications regarding the subsequent distribution of those funds to Virgo Onshore, Virgo Offshore, or any other entity.

3.      All documents relating to capital injections, bridge financing, or other loans provided by Calrissian or Virgo to the Debtors.

4.      All documents relating to the Debtors' financial condition at any time during the period from August 2014 to the Petition Date, including but not limited to documents regarding (i) solvency; (ii) cash flow; (iii) payment plans; (iv) vendor or creditor disputes; or (v) the impact of the Calrissian Distribution, Anderson Transaction, ARC Transaction, or other transfers set forth in the Complaint on Alchemy's financial condition.

5.      All documents relating to the negotiation of the Anderson Transaction, including but not limited to: (i) the terms of the APA; (ii) the amount, allocation, and funding of the purchase price; (iii) the scope of assumed liabilities; and (iv) the purchase of Anderson Digital.

6.      All documents concerning due diligence performed in connection with the Anderson Transaction, including but not limited to documents regarding: (i) ANConnect's assets, liabilities, liquidity, cash flow, and operations; (ii) Anderson Digital's assets, liabilities, liquidity, cash flow, and operations; (iii) industry trends; and (iv) valuations, projections,

7

forecasts, or business plans regarding ANConnect or Anderson Digital performed in connection with or during the two (2) years preceding the Anderson Transaction.

7.      All valuations of the Debtors performed at any time during the period from August 2014 to the Petition Date.

8.      All communications with SunTrust Bank or SunTrust Robinson Humphrey relating to: (i) the Anderson Transaction, including the underwriting and financing thereof; (ii) the Debtors' credit facilities; (iii) the Debtors' attempted debt recapitalization in April 2016; or (iv) the other transactions set forth in the Complaint (including but not limited to the Calrissian Distribution and ARC Transaction).

9.      All communications with BDO or Salem Partners concerning or related to the Anderson Transaction.

10.     All documents relating to ANConnect's or Alchemy's relationship with Group 1200 Media.

11.     All documents relating to the Debtors' attempted debt recapitalization in April 2016, including but not limited to presentations, memorandums, valuations, and communications relating thereto.

12.     All documents relating to the ARC Transaction, including but not limited to documents and communications (including with Ardon Moore) concerning: (i) negotiation of the terms of the Contribution Agreement and agreements ancillary thereto; (ii) due diligence performed in advance of the ARC Transaction; (iii) assumption of ARC's obligation to Sony DADC US Inc.; and (iv) the employment of Trevor Drinkwater.

13.     All documents concerning ARC's financial condition, including but not limited to solvency, assets, and liabilities.

14.     All documents relating to post-closing adjustments under the APA, including but not limited to documents or communications regarding: (i) calculation or payment of amounts owed due to post-closing adjustments, and (ii) any agreement(s) to offset amounts owed in connection with post-closing adjustments.

15.     All documents relating to or supporting ANConnect and Anderson Merchandisers' claims in the Delaware State Court Action.

16.     All documents relating to or supporting the Proofs of Claim filed by ANConnect and Anderson Merchandisers.

17.     All documents, communications, and accounting data relating to the Alchemy Accounts Receivable, including but not limited to documents sufficient to evidence all amounts collected and/or retained by ANConnect, Anderson Merchandisers, or any other affiliate thereof in connection with the Transition Services Agreement.

18.     All documents relating to Reimbursement Fees (as defined in the Complaint), including but not limited to the basis for and payment of such fees.

19.     All documents relating to the Debtors' payment or assumption of obligations on behalf of OA Partners, OA Holdings, or any other Virgo affiliate, including but not limited to all documents or communications authorizing, effectuating, or discussing such transfers.

20.     All documents relating to Alchemy's acquisition of Stephen Lyons' shares in Anderson Digital, including but not limited to communications concerning negotiation of the purchase price, Alchemy's assumption and payment of severance obligations, and Alchemy's payment of legal fees on Lyons' behalf.

21.     All documents relating to Alchemy's acquisition of Freyr Thor's shares in Anderson Digital, including but not limited to communications concerning negotiation of the purchase price.

22.     All documents concerning the AD Working Capital Transfer, including but not limited to communications (i) authorizing, approving, or effectuating the transfer, or (ii) relating to negotiations between the parties as to the treatment of Anderson Digital's working capital in connection with the Anderson Transaction.

23.     All documents relating to: OA Holdings' corporate structure and governance; OA Holdings' assets; the Management Services Agreement between Alchemy and OA Holdings; OA Holdings' contractual relationships with or relating to ARC; and transfers made to or from OA Holdings that are set forth in the Complaint.

24.     All documents relating to OA Partners' corporate structure and governance, the Mezzanine Loan Agreement dated July 9, 2015 between Alchemy and OA Partners, and transfers made to or from OA Partners that are set forth in the Complaint.

25.     All minutes or other recorded notes of meetings of Alchemy's Board of Managers, and all presentations or memorandums prepared in connection with such meetings.

26.     All communications concerning the Debtors' operations, management, financial condition, transactions, vendor relations, or bankruptcy filing, including Your internal communications, Your communications with the Debtors, and Your communications with third parties regarding such matters.

27.     All documents of any nature whatsoever which relate in any way to the allegations described in Plaintiff's Complaint, or Your alleged defenses thereto.

28.     All documents referenced in, reviewed in connection with, or used in the preparation of Your Answer to the Complaint, or which provide the basis for any affirmative defenses set forth in Your Answer.

29.     All documents relating to *Nu Image, Inc. v. Calrissian LP, et al.*, JAMS Reference No. 1210033079, including, but not limited to all pleadings, opinions, briefs, discovery documents, hearing and deposition transcripts, and hearing exhibits.

Dated: November 19, 2020

/s/ John. T. Carroll, III
John T. Carroll, III (DE Bar No. 4060)
COZEN O'CONNOR
1201 North Market Street
Suite 1001
Wilmington, DE 19801
Tel: (302) 295-2028
Fax: (302) 295-2013
jcarroll@cozen.com

-and-

Steven M. Coren, Esq.
Benjamin M. Mather, Esq.
Andrew J. Belli, Esq.
KAUFMAN, COREN & RESS, P.C.
Two Commerce Square
2001 Market Street, Suite 3900
Philadelphia, PA 19103
Tel: (215) 735-8700
Fax: (215) 735-5170
scoren@kcr-law.com
bmather@kcr-law.com
abelli@kcr-law.com

*Counsel for Plaintiff*
*George L. Miller, Ch. 7 Trustee*

11

# Alchemy Trustee's Rule 2004 Subpoena
# (Alchemy Bankruptcy)



March 29, 2018

**SENT VIA E-MAIL**
**AKIM@DIAMONDMCCARTHY.COM**

**John T. Carroll, III**
Direct Phone    302-295-2028
Direct Fax      215-701-2140
jcarroll@cozen.com

**Keith L. Kleinman**
Direct Phone    302-295-2077
Direct Fax      302-250-4363
kkleinman@cozen.com

Virgo Investment Group LLC,
Virgo Societas Partnership III (Offshore) L.P., and
Virgo Societas Partnership III (Onshore) L.P.
c/o Diamond McCarthy LLP
Attn:  Andrea Levin Kim, Esquire
Two Houston Center
909 Fannin Street, 37th Floor
Houston, TX  77010

> Re:    Our Alchemy, LLC, Case No. 16-11596 (KG)
>        Anderson Digital, LLC, Case No. 16-11597 (KG)
>        Subject:  Bankruptcy Rule 2004 Subpoena

Dear Andrea:

As you know, we represent George L. Miller, chapter 7 trustee (the "Trustee") to the estates of Our Alchemy, LLC (Case No. 16-11596 (KG)) and Anderson Digital, LLC (Case No. 16-11597 (KG)) (collectively, the "Debtors") in their bankruptcy cases pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

The Trustee is in the process of investigating certain aspects of each of the Debtors' respective business and financial affairs.  As a result, the Trustee seeks the production of certain documents (the "Documents") within the possession, custody, or control of Virgo Investment Group LLC, Virgo Societas Partnership III (Offshore) L.P., and Virgo Societas Partnership III (Onshore) L.P. (collectively, "Virgo").   To facilitate the production of the Documents, the Trustee has drafted the attached Bankruptcy Rule 2004 Subpoena that he intends to serve upon Virgo.

Pursuant to the Local Rules for the United States Bankruptcy Court for the District of Delaware, the Trustee is contacting Virgo prior to filing a motion ordering the production of the Documents pursuant to Bankruptcy Rule 2004 in an attempt to reach an agreement between the Trustee and Virgo with respect to the date, time, place, and scope of the production of the Documents.

We ask that you review the attached Bankruptcy Rule 2004 Subpoena and contact us no later than April 13, 2018 to discuss Virgo's production of the Documents sought in the Bankruptcy Rule 2004 Subpoena.

LEGAL\34242705\2 00601.0823.000/390810.000



P a g e | **2**

      We look forward to resolving this request in a prompt and efficient manner.

Sincerely,

COZEN O'CONNOR

By:    John T. Carroll, III
        Keith L. Kleinman

Enclosures

cc:  (via e-mail w/enc.)  Emanuel Grillo, Esquire (emanuel.grillo@bakerbotts.com)

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

For the _____ District of ___Delaware___

In re _Our Alchemy, LLC & Anderson Digital, LLC_     Case Nos. _16-11596 (KG) & 16-11597 (KG)_
Debtors

Chapter _7_____

## RULE 2004 SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE

To:    Virgo Investment Group LLC, Virgo Societas Partnership III (Offshore) L.P., and Virgo Societas Partnership III (Onshore) L.P.

*(Name of person to whom the subpoena is directed)*

[X] *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the documents, electronically stored information, or objects identified on Exhibit "A" attached hereto, and to permit inspection, copying, testing, or sampling of such material at the time, date, and place set forth below:

| PLACE:<br>Cozen O'Connor, 1201 N. Market Street, Suite 1001, Wilmington, DE 19801 | DATE AND TIME:<br>April _____, 2018 at 10 a.m. (EST) |
|---|---|

[ ] *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

     The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____, 2018 _____

               CLERK OF COURT

                           OR

    _____        _____
    *Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* the Chapter 7 *Trustee* who issues or requests this subpoena, are: John T. Carroll, III, Esq., 1201 N. Market Street, Suite 1001, Wilmington, DE 19801, jcarroll@cozen.com, 302-295-2028.

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2 )

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)*_____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on (*date*) _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $_____.

My fees are $_____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true and correct.

Date:  _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3 )

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
   **(A)** production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## *EXHIBIT A*

## DEFINITIONS

1.  "Alchemy" means (i) the entity formerly known as Millennium Entertainment, LLC and now known as Our Alchemy LLC, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

2.  "All" shall be construed as all, each, any, and every.

3.  "ANconnect, LLC" means (i) the entity known as ANconnect LLC, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

4.  "And/or" shall be construed conjunctively or disjunctively, as required by the context to bring within the scope of these requests any information that might be deemed outside their scope by any other construction.

5.  "Anderson Digital" means Anderson Digital LLC., a Delaware limited liability company.

6.  "Anderson Merchandisers" means (i) the entity known as Anderson Merchandisers, LLC, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers,

or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

7.       "Any" means one or more.

8.       "ARC Entertainment" means (i) the entity known as ARC Entertainment, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

9.       "August 2014 Purchase Agreement" means the August 18, 2014 purchase agreement (including all amendments thereto), whereby the sellers, Nu Image, Inc., Prentice Consumer Partners, LP, Nigel Sinclair, Guy East, and Bill Lee, and the buyer, Calrissian, agreed to the sale and purchase of each seller's membership interest in Alchemy.

10.      "August 2014 Transaction" means the transaction effectuated by the August 2014 Purchase Agreement (including all amendments thereto), the closing thereof, and all post-closing adjustments.

11.      "Baker Tilly" means (i) the entity known as Baker Tilly Virchow Krause, LLP, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

2

12.     "Calrissian" means (i) the entity known as Calrissian LP, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

13.     "Communication" means any verbal, written, or electronic exchange of information and includes, but is not limited to, discussions, negotiations, correspondence, faxes, telegrams, telexes, memoranda, notes, conversations, speeches, meetings, conferences, remarks, questions, answers, panel discussions, and symposia, whether written or oral. The term includes both communications and statements which are face-to-face and those which are transmitted by any media including, but not limited to, intercom, telephone, television, radio, modem, social media, text message, or electronic mail.

14.     "Credit Agreement" means the Amended and Restated Revolving Credit and Term Loan Agreement, dated as of July 9, 2015 (as amended by Amendment No. 1 and Waiver dated as of December 18, 2015, and as further amended, supplemented or otherwise modified, renewed or replaced from time to time to date), to which Alchemy is a Party.

15.     "Document" means the original and all non-identical copies and drafts, regardless of origin or location, of any writing and any written, printed, typed, electronic or other graphic or photographic matter of any kind or description, in draft or final form, including, but not limited to, correspondence, letters, telegrams, facsimiles, cables, telex messages, e-mail, memoranda, notes, interoffice and interdepartmental communications, transcripts, minutes of conversations or meetings, reports, studies, any audio or video recordings, voicemail, contracts, calendar or diary

3

entries, pamphlets, handwritten notes, charts, tabulations, records of meetings, conferences, telephone or other conversations or communications, and tapes or slides, and other data compilations from which information can be obtained or translated, if necessary, by you through detection devices into reasonably usable form, and all other records kept by electronic photographic, or mechanical means however denominated, which are in your possession, custody, or control.  If a Document has been prepared in several copies, or additional copies have been made, or copies are not identical (or, which by reason of subsequent modification of a copy by the addition of notations or other modifications, are no longer identical), each non-identical copy is a separate Document.

16.     "Emigrant Bank" means (i) the entity known as Emigrant Bank, its affiliates and direct or indirect subsidiaries; (ii) any of their past, present, or future officers, directors, partners, members, employees, or managers; (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof; and (iv) Professionals of any Person within (i), (ii), or (iii).

17.     "Guaranty Agreement" means the Guaranty and Security Agreement, dated as of September 4, 2014 (as amended, supplemented or modified from time to time), to which Calrissian is a Party.

18.     "Including" means including but not limited to.

19.     "Lenders" means (i) any of Emigrant Bank, Pacific Mercantile Bank, Preferred Bank, or SunTrust Bank; (ii) any of their affiliates and direct or indirect subsidiaries; (iii) any of their past, present, or future officers, directors, partners, members, employees, or managers; (iv) any past, present, or future board of directors, board of managers, or similar body, and any

committee or subcommittee thereof; and (v) Professionals of any Person within (i), (ii), (iii) or (iv).

20.     "Loan Documents" means the Original Credit Agreement, the Credit Agreement, and the Guaranty Agreement.

21.     "May 2015 Purchase Agreement" means the May 7, 2015 purchase agreement between ANconnect and Alchemy (including all amendments thereto).

22.     "May 2015 Transaction" means the transaction effectuated by the May 2015 Purchase Agreement (including all amendments thereto), the closing thereof, and all post-closing adjustments.

23.     "Merchandising Agreement" means the July 9, 2015 agreement (including any amendments thereto) between Alchemy and Anderson Merchandisers, whereby Alchemy engaged Anderson Merchandisers to perform certain merchandising services.

24.     "Nu Image Arbitration" means the arbitration styled as *Nu Image, Inc. vs. Calrissian LP, et al.*, JAMS Reference No. 1210033079, and any related actions, including appeals.

25.     "Original Credit Agreement" means the Revolving Credit and Term Loan Agreement, dated as of September 4, 2014, to which Alchemy is a Party.

26.      "Person" means any natural person, corporate entity, partnership, association, limited liability company, joint venture, government entity, trust, religious order or other entity.

27.     "PMB" means (i) the entity known as Pacific Mercantile Bank, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or

5

subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

28.     "PMB 2013 Loan" means the First Amended and Restated Revolving Credit, Security Agreement, dated as of March 23, 2013, between Alchemy, as borrower, and PMB, as lender, and any amendments thereto.

29.     "Preferred Bank" means (i) the entity known as Preferred Bank, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

30.     "Professional" means any counsel, consultant, advisor, testifying expert, non-testifying expect, agent, representative, or other Person engaged to provide or involved in providing at any time any services.

31.     "Relating to" means concerning, reflecting, referring to, pertaining to, containing, describing, regarding, illustrating, mentioning, evidencing, embodying, involving, analyzing, reporting on, commenting on, constituting, supporting, discussing, or having any logical or factual connection whatsoever with the subject matter in question.

32.     "Salem Partners" means (i) the entity known as Salem Partners LLC, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or

subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

33.      "SunTrust" means (i) SunTrust Bank, in its capacity as Lender and as administrative agent under the Original Credit Agreement and the Credit Agreement; (ii) any of its affiliates and direct or indirect subsidiaries, including SunTrust Robinson Humphrey; (iii) any of its past, present, or future officers, directors, partners, members, employees, or managers; (iv) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof; and (v) Professionals of any Person within (i), (ii), (iii) or (iv).

34.      "Transition Services Agreement" means the July 9, 2015 agreement between ANconnect and Alchemy (including any amendments thereto).

35.      "Trustee" means George L. Miller in his capacity as chapter 7 Trustee for the bankruptcy estates of Alchemy, case no. 16-11596 (KG) and Anderson Digital, case no. 16-11597 (KG) which bankruptcy cases are pending in the United States Bankruptcy Court for the District of Delaware.

36.      "Virgo" collectively means (i) the entities known as Virgo Investment Group LLC, Virgo Societas Partnership III (Offshore) L.P., and Virgo Societas Partnership III (Onshore) L.P. their past and present affiliates, direct or indirect subsidiaries, and parent entities; (ii) any of their past, present, or future officers, directors, partners, members, employees, or managers; (iii) any past, present, or future board of directors, board of managers, or similar body, or any committee or subcommittee thereof; or (iv) Professionals of any Person within (i), (ii), or (iii).

37.     "<u>You</u>" or "<u>Your</u>" means Virgo, as well as its affiliates, predecessors, successors, partners, principals, officers, directors, attorneys, and professionals, and other advisors, agents, employees, representatives, and other persons acting or purporting  to act on Virgo's behalf.

## **<u>INSTRUCTIONS</u>**

1.     The preceding definitions apply to these Instructions and each of the succeeding requests ("Requests"), notwithstanding that the definitions, may be reiterated, in full or in part, in a particular Request or that a particular Request may incorporate supplemental instructions or definitions.

2.     All terms defined above shall have the meanings set forth therein, whether capitalized in the Requests or not.

3.     The use of the singular form of any word shall include the plural and vice versa.

4.     Unless otherwise defined herein, capitalized terms shall bear the meaning ascribed to them in the Credit Agreement.

5.     All Documents must be produced in the order they are kept in the ordinary course of business, and must be produced in their original folders, binders, covers, or containers.

6.     These Requests relate to all Documents that are in Your possession, custody, or control, or in the possession, custody, or control of Your predecessors, successors, parents, subsidiaries, divisions, affiliates, or Your respective officers, directors, agents, attorneys, advisors, consultants, accountants, employees, partners, or other persons occupying similar positions or performing similar functions.

7.     These Requests call for the production of all responsive Documents to the fullest extent of permissible discovery.  Responsive Documents include all non-identical copies of such

Documents in extant physical or electronic form (*i.e.*, electronically-stored information), including drafts, revisions and other non-identical versions, whether maintained in paper form or on magnetic tape, videotape, microfilm, computer database, electronic mail, or any other electronic storage media.  Any copy of a Document that varies in any way whatsoever from the original or from any other copy of the Document, whether by reason of handwritten or other notation or any omission, shall constitute a separate Document and must be produced, whether or not the original of such a Document is within your possession, custody or control.

8.      Unless otherwise agreed between the parties, all electronic Documents or electronic data shall be produced in a form which reveals all available electronic information regarding such electronic Documents or data.

9.      Each Document shall be produced in such fashion as to identify from whose possession and from what location that Document was collected.  Electronic Documents shall be produced with an accompanying index that states the following metadata:

> a.  Date created/sent;
>
> b.  Author;
>
> c.  Recipients;
>
> d.  Cc- copies; and
>
> e.  Bcc – blind copies.

10.     All Documents shall be produced in TIFF format with OCR images.

11.     Whenever a Document is not produced in full or is produced in redacted form, so indicate on the Document and state with particularity the reason or reasons it is not being produced in full, and describe to the best of Your knowledge, information, and belief, and with as much particularity as possible, those portions of the Documents that are not being produced.

12.     If a Document responsive to these Requests was at any time in your possession, custody, or control, but is no longer available for production, as to each such Document, state the following information:

        a.   Whether the Document is missing or lost;

        b.   Whether the Document has been destroyed;

        c.   Whether the Document has been transferred or delivered to another person, and, if so, to whom and at whose request;

        d.   Whether the Document has been otherwise disposed of; and

        e.   A precise statement of the circumstances surrounding the disposition of the Document and that date of its disposition.

13.     These Requests are continuing so as to require supplemental responses if You or any person acting on Your behalf obtains additional information called for by the request between the time of the original response and the time set for trial.  Each supplemental response must be served on the Trustee no later than thirty days after the discovery of further information.

14.     The fact that a Document is produced by another party does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical in all respects.

15.     Responsive Documents shall be produced with all attachments, enclosures and exhibits to such documents, whether now or at any time attached, enclosed or accompanying such documents.  If any portion of a Document is responsive to a request, produce the entire Document, including all attachments, enclosures, "post-it"-type notes, and any other matter physically attached to the Document, whether by paper clip or any other manner.

16.     Documents not otherwise responsive to a Request must be produced if such Documents mention, discuss, refer to, or explain the Documents that are called for by the

10

Request, or if such documents are attached to Documents called for by the Request and constitute routing slips, transmittal memoranda, or letters, comments, evaluations, or similar materials.

17.    If you object to a Request, state the grounds for objection in the response to such Request. If you claim privilege with respect to any Request, you shall provide that part of the Document requested for which privilege is not claimed, state that part of the Request to which you object and state the basis for the claim of privilege.

18.    To the extent that you claim any Document or thing is not discoverable for any reason, including, without limitation, the attorney-client privilege, the work-product doctrine, or the immunity from discovery afforded to materials prepared for or in anticipation of litigation, please identify the withheld document or thing sufficiently to provide the Trustee an opportunity to assess the claim of privilege by describing and listing on a "Privilege Log" the withheld Documents' (a) nature or type (*e.g.*, letter, memoranda, e-mail, financial model) (b) general subject matter (*e.g.*, compensation analysis, financial data); (c) date(s); and (d) such other information as is sufficient to identify the document for purposes of a subpoena, including: author(s), recipient(s), and number of page(s).

19.    If you are unable to respond to any of the following Requests in full after exercising due diligence to secure the information to do so, the response shall so state and respond to the extent possible, specifying the reasons for the inability to respond to the remainder and providing whatever information or knowledge is available concerning the unanswered portions.

20.    No response is to be left blank.  If the response to any Request or subsection of a Request is "none" or "unknown", the word "none" or "unknown" must be written in the

response.  If the Request is inapplicable, "N/A" or "not applicable" must be written in the response.

21.     Except where otherwise specified, the Requests seek Documents dated, created, or otherwise obtained on or after January 1, 2013 through the present.

## DOCUMENT REQUESTS

1.     All Documents and Communications Relating to any loan agreement, credit agreement, financing or refinancing for Alchemy or Anderson Merchandisers, including the PMB 2013 Loan.

2.     All Documents and Communications Relating to Salem Partners LLC.

3.     All Documents and Communications Relating to any financial advisors or consultants retained by either Alchemy, Calrissian or You, including Baker Tilly and BDO USA LLP.

4.     All Documents and Communications Relating to the value of the Lenders' collateral under the Credit Agreement.

5.     All Documents and Communications Relating to any due diligence undertaken by You or any other Person relating to Alchemy or Anderson Merchandisers, including any due diligence undertaken in connection with the (i) August 2014 Transaction or the (ii) Loan Documents.

6.     All Documents and Communications of any Virgo credit committee relating to (i) the August 2014 Transaction; (ii) the Original Credit Agreement; (iii) the May 2015 Transaction; or (iv) the Loan Documents.

7.    All Documents and Communications Relating to any financial projections or business plans You, Calrissian, Alchemy, or a Professional prepared in connection with the (i) August 2014 Transaction; the (ii) Loan Documents; or (iii) Alchemy.

8.    All Documents and Communications Relating to the use of funds Alchemy received from (i) You or (ii) Calrissian.

9.    All Documents and Communications Relating to the use of funds Alchemy received from the Lenders, including any proceeds ultimately distributed to (i) You and/or deposited in a bank account maintained by You or in which You have had any beneficial interest; or (ii) Calrissian and/or deposited in a bank account maintained by Calrissian or in which Calrissian has had any beneficial interest.

10.    All Documents and Communications Relating to any covenant breaches or Events of Default under the Loan Documents.

11.    All Documents and Communications Relating to Alchemy.

12.    All Documents and Communications Relating to Calrissian.

13.    All Documents and Communications Relating to Anderson Merchandisers.

14.    All Documents and Communications Relating to any waivers or potential waivers for any covenant breaches or Events of Default under the Loan Documents.

15.    All Documents and Communications Relating to any borrowing base certificates or compliance certificates prepared in connection with the Loan Documents, including Documents reflecting calculations performed for the purposes of testing compliance with bank covenants or the calculation of the borrowing base, drafts of borrowing base certificates, and work papers.

13

16.     All Documents and Communications Relating to the value of Alchemy's film library.

17.     All Documents and Communications Relating to the value of Anderson Merchandisers' film library.

18.     All Documents and Communications Relating to any returns of DVDs, including projected return rates.

19.     All Documents and Communications Relating to any modifications to the Loan Documents.

20.     All Communications with SunTrust or any of the Lenders Relating to the Loan Documents, Alchemy, or Anderson Merchandisers.

21.     All Documents and Communications Relating to Alchemy's balance sheets, earnings, income statements, solvency, ability to pay its debts as they come due, or capital adequacy, including any solvency analysis and fairness opinions prepared internally or externally.

22.     All Documents and Communications Relating to Anderson Merchandisers' balance sheets, earnings, income statements, solvency, ability to pay its debts as they come due, or capital adequacy, including any solvency analysis and fairness opinions prepared internally or externally.

23.     All Documents and Communications Relating to Calrissian's balance sheets, earnings, income statements, solvency, ability to pay its debts as they come due, or capital adequacy, including any solvency analysis and fairness opinions prepared internally or externally.

14

24.     All Documents and Communications Relating to Your balance sheets, solvency, ability to pay Your debts as they come due, or capital adequacy, including (i) any solvency analysis and fairness opinions prepared internally or externally or (ii) any aging reports Relating to accounts receivable or accounts payable.

25.     All Documents and Communications Relating to Alchemy's enterprise value, including any analyses, appraisals, reports, evaluations, forecasts, opinions, or similar documents respecting Alchemy's value and/or assets, including a transaction comparable analysis, a comparable company analysis, a weighted average cost of capital analysis, and a discounted cash flow analysis.

26.     All Documents and Communications Relating to Anderson Merchandisers' enterprise value, including any analyses, appraisals, reports, evaluations, forecasts, opinions, or similar documents respecting Alchemy's value and/or assets, including a transaction comparable analysis, a comparable company analysis, a weighted average cost of capital analysis, and a discounted cash flow analysis.

27.     All Documents and Communications Relating to Calrissian's enterprise value, including any analyses, appraisals, reports, evaluations, forecasts, opinions, or similar documents respecting Calrissian's value and/or assets, including a transaction comparable analysis, a comparable company analysis, a weighted average cost of capital analysis, and a discounted cash flow analysis.

28.     All Documents and Communications Relating to any collateral review of Alchemy's borrowing base in connection with the Loan Documents.

29.     All Documents and Communications Relating to any collateral review of Anderson Merchandisers' borrowing base in connection with the Loan Documents.

30.    For the period January 1, 2011 to the present (i) Your tax returns (ii) Calrissian's tax returns, (iii) Alchemy's tax returns, and (iv) Anderson Merchandisers' tax returns.

31.    For the period January 1, 2011 to the present, all Documents and Communications Relating to (i) Your financial statements (audited and unaudited), (ii) Calrissian's financial statements (audited or unaudited), (iii) Alchemy's financial statements (audited and unaudited), or (iv) Anderson Merchandisers' financial statements (audited and unaudited).

32.    All Documents and Communications Relating to bank statements for any account maintained by You, Calrissian, Alchemy, or Anderson Merchandisers or in which You, Calrissian, Alchemy, or Anderson Merchandisers has had any beneficial interest.

33.    All meeting minutes, presentations, consents, resolutions, agendas, board materials, transcripts, or communications of Your board of directors and/or any committees or subcommittees of Your board of directors that relate to Anderson Merchandisers, Alchemy or Calrissian.

34.    All meeting minutes, presentations, consents, resolutions, agendas, board materials, transcripts, or communications of (i) Calrissian's board of directors or any committees or subcommittees of Calrissian's board of directors, (ii) Alchemy's board of directors and/or any committees or subcommittees of Alchemy's board of directors, or (iii) Anderson Merchandisers' board of directors and/or any committees or subcommittees of Anderson Merchandisers' board of directors.

35.    All Documents and Communications Relating to (i) Alchemy's decision to file for Chapter 7 relief or (ii) the timing of the Chapter 7 filing.

36.    All Documents and Communications Relating to Alchemy's payment or non-payment to creditors for the period of July 1, 2015 to July 1, 2016.

16

37.     All Documents and Communications Relating to any actual or potential debt refinancing or capital restructuring of Alchemy or Anderson Merchandisers.

38.     All Documents and Communications Relating to (i) Calrissian's decision to file for Chapter 11 relief or (ii) the timing of the Calrissian Chapter 11 filing.

39.     All Documents and Communications Relating to Your defenses and counterclaims in the Nu Image Arbitration, including any claim that any aspect of Alchemy's financial condition was misrepresented at the time of the August 2014 Transaction.

40.     All Documents and Communications Relating to the Nu Image Arbitration including without limitation any awards or decisions related thereto.

41.     All Documents and Communications Relating to Your decision to withhold non-contingent payments owed under the August 2014 Purchase Agreement.

42.     All Documents and Communications Relating to the termination of the employment of Alchemy's Chief Financial Officer, John Avagliano.

43.     All Documents and Communications Relating to the termination of the employment of Alchemy's Chief Executive Officer, Bill Lee.

44.     All Communications with SunTrust or any of the Lenders Relating to the May 2015 Transaction or ANconnect's alleged breaches of the May 2015 Purchase Agreement.

45.     All Documents and Communications Relating to Alchemy's decision to not make payments owed under the terms of the Transition Services Agreement and/or the Merchandising Agreement.

46.     All Communications with SunTrust or any of the Lenders Relating to Alchemy's decision to not make payments owed under the terms of the Transition Services Agreement or the Merchandising Agreement.

17

47.     All Documents and Communications Relating to ANconnect's withholding of payments owed to Alchemy under the May 2015 Purchase Agreement.

48.     All Documents and Communications Relating to any due diligence undertaken on ANconnect in connection with the May 2015 Transaction.

49.     All Documents and Communications Relating to the value of ANconnect's assets, including valuation reports prepared internally or externally.

50.     All Documents and Communications Relating to Anderson's film library.

51.     All Documents and Communications Relating to the value of Anderson Merchandisers' assets, including valuation reports prepared internally or externally.

52.     All Communications with SunTrust or any of the Lenders Relating to the alleged fraudulent or other wrongful conduct of John Avagliano or Bill Lee.

53.     All Documents and Communications supporting or evidencing possible claims or causes of action of Virgo, Calrissian and/or Alchemy against BDO USA LLP and/or other Professionals.

Dated:  March 29, 2018               */s/ John T. Carroll, III*
                                     John T. Carroll, III (No. 4060)
                                     Keith L. Kleinman (No. 5693)
                                     1201 N. Market Street
                                     Suite 1001
                                     Wilmington, DE  19801
                                     Telephone:  (302) 295-2000
                                     Facsimile:   (302) 295-2013
                                     jcarroll@cozen.com
                                     kkleinman@cozen.com

                                     *Counsel for George L. Miller, Chapter 7 Trustee*

18

# Agent Bank's Rule 2004 Subpoena
# (Alchemy Bankruptcy)

**EXHIBIT A**

**(Proposed Order)**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| OUR ALCHEMY, LLC, *et al.,* | Case No. 16-11596 (KG) |
| Debtors.[4] | **Related D.I. _____** |

## ORDER PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE COMPELLING THE PRODUCTION OF DOCUMENTS FROM THE VIRGO ENTITIES

Upon the motion (the "Motion")[5] of SunTrust Bank ("SunTrust") for entry of an order, pursuant to Bankruptcy Rule 2004 and Local Rule 2004-1, compelling the Virgo Entities to produce the documents set forth on **Schedule 1** hereto; and upon consideration of the Motion and any and all responses thereto; and due and proper notice having been given, it is hereby ORDERED THAT:

1. The Motion is granted as set forth herein.

2. The Virgo Entities shall produce documents responsive to the discovery requests set forth in **Schedule 1** attached hereto to counsel to SunTrust on or before the date that is fourteen days after entry of this Order.

3. SunTrust is authorized to issue subpoenas and conduct depositions in connection with this Order.

4. Notwithstanding any applicable rule to the contrary, the terms of this Order shall be immediately effective and enforceable upon entry of this Order.

---

[4] The Debtors are: Our Alchemy, LLC, Case No. 16-11596 (KG), and Anderson Digital, LLC, Case No. 16-11597 (KG).

[5] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

5.      This Court shall retain jurisdiction with respect to any matters, claims, rights or

disputes arising from or related to the implementation of this Order.

Dated: Wilmington, Delaware
        _____, 2018

        _____
        HONORABLE KEVIN GROSS
        UNITED STATES BANKRUPTCY JUDGE

### *SCHEDULE 1*

### DEFINITIONS

1.        "Alchemy" means (i) the entity formerly known as Millennium Entertainment,

LLC and now known as Our Alchemy LLC, its affiliates, its direct or indirect subsidiaries, and

any parent entities; (ii) any past, present, or future officer, director, partner, member, employee,

or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors,

board of managers, or similar body, and any committee or subcommittee thereof of the Persons

referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

2.        "All" shall be construed as all, each, any, and every.

3.        "ANconnect, LLC" means (i) the entity known as ANconnect LLC, its affiliates,

its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer,

director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past,

present, or future board of directors, board of managers, or similar body, and any committee or

subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person

within (i), (ii), or (iii).

4.        "And/or" shall be construed conjunctively or disjunctively, as required by the

context to bring within the scope of these requests any information that might be deemed outside

their scope by any other construction.

5.        "Anderson Digital" means Anderson Digital LLC., a Delaware limited liability

company.

6.        "Anderson Merchandisers" means (i) the entity known as Anderson

Merchandisers, LLC, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii)

any past, present, or future officer, director, partner, member, employee, or manager of the

{01325249;v1 }                                    1

Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

7.     "Any" means one or more.

8.     "ARC Entertainment" means (i) the entity known as ARC Entertainment, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

9.     "August 2014 Purchase Agreement" means the August 18, 2014 purchase agreement (including all amendments thereto), whereby the sellers, Nu Image, Inc., Prentice Consumer Partners, LP, Nigel Sinclair, Guy East, and Bill Lee, and the buyer, Calrissian, agreed to the sale and purchase of each seller's membership interest in Alchemy.

10.     "August 2014 Transaction" means the transaction effectuated by the August 2014 Purchase Agreement (including all amendments thereto), the closing thereof, and all post-closing adjustments.

11.     "Baker Tilly" means (i) the entity known as Baker Tilly Virchow Krause, LLP, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

12. "Calrissian" means (i) the entity known as Calrissian LP, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

13. "Communication" means any verbal, written, or electronic exchange of information and includes, but is not limited to, discussions, negotiations, correspondence, faxes, telegrams, telexes, memoranda, notes, conversations, speeches, meetings, conferences, remarks, questions, answers, panel discussions, and symposia, whether written or oral. The term includes both communications and statements which are face-to-face and those which are transmitted by any media including, but not limited to, intercom, telephone, television, radio, modem, social media, text message, or electronic mail.

14. "Credit Agreement" means the Amended and Restated Revolving Credit and Term Loan Agreement, dated as of July 9, 2015 (as amended by Amendment No. 1 and Waiver dated as of December 18, 2015, and as further amended, supplemented or otherwise modified, renewed or replaced from time to time to date), to which Alchemy is a Party.

15. "Document" means the original and all non-identical copies and drafts, regardless of origin or location, of any writing and any written, printed, typed, electronic or other graphic or photographic matter of any kind or description, in draft or final form, including, but not limited to, correspondence, letters, telegrams, facsimiles, cables, telex messages, e-mail, memoranda, notes, interoffice and interdepartmental communications, transcripts, minutes of conversations or meetings, reports, studies, any audio or video recordings, voicemail, contracts, calendar or diary

entries, pamphlets, handwritten notes, charts, tabulations, records of meetings, conferences, telephone or other conversations or communications, and tapes or slides, and other data compilations from which information can be obtained or translated, if necessary, by you through detection devices into reasonably usable form, and all other records kept by electronic photographic, or mechanical means however denominated, which are in your possession, custody, or control.  If a Document has been prepared in several copies, or additional copies have been made, or copies are not identical (or, which by reason of subsequent modification of a copy by the addition of notations or other modifications, are no longer identical), each non-identical copy is a separate Document.

16.     "Emigrant Bank" means (i) the entity known as Emigrant Bank, its affiliates and direct or indirect subsidiaries; (ii) any of their past, present, or future officers, directors, partners, members, employees, or managers; (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof; and (iv) Professionals of any Person within (i), (ii), or (iii).

17.     "Guaranty Agreement" means the Guaranty and Security Agreement, dated as of September 4, 2014 (as amended, supplemented or modified from time to time), to which Calrissian is a Party.

18.     "Including" means including but not limited to.

19.     "Lenders" means (i) any of Emigrant Bank, Pacific Mercantile Bank, Preferred Bank, or SunTrust Bank; (ii) any of their affiliates and direct or indirect subsidiaries; (iii) any of their past, present, or future officers, directors, partners, members, employees, or managers; (iv) any past, present, or future board of directors, board of managers, or similar body, and any

committee or subcommittee thereof; and (v) Professionals of any Person within (i), (ii), (iii) or (iv).

20.     "Loan Documents" means the Original Credit Agreement, the Credit Agreement, and the Guaranty Agreement.

21.     "May 2015 Purchase Agreement" means the May 7, 2015 purchase agreement between ANconnect and Alchemy (including all amendments thereto).

22.     "May 2015 Transaction" means the transaction effectuated by the May 2015 Purchase Agreement (including all amendments thereto), the closing thereof, and all post-closing adjustments.

23.     "Merchandising Agreement" means the July 9, 2015 agreement (including any amendments thereto) between Alchemy and Anderson Merchandisers, whereby Alchemy engaged Anderson Merchandisers to perform certain merchandising services.

24.     "Nu Image Arbitration" means the arbitration styled as *Nu Image, Inc. vs. Calrissian LP, et al.*, JAMS Reference No. 1210033079, and any related actions, including appeals.

25.     "Original Credit Agreement" means the Revolving Credit and Term Loan Agreement, dated as of September 4, 2014, to which Alchemy is a Party.

26.      "Person" means any natural person, corporate entity, partnership, association, limited liability company, joint venture, government entity, trust, religious order or other entity.

27.     "PMB" means (i) the entity known as Pacific Mercantile Bank, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or

subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

28. "PMB 2013 Loan" means the First Amended and Restated Revolving Credit, Security Agreement, dated as of March 23, 2013, between Alchemy, as borrower, and PMB, as lender, and any amendments thereto.

29. "Preferred Bank" means (i) the entity known as Preferred Bank, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

30. "Professional" means any counsel, consultant, advisor, testifying expert, non-testifying expect, agent, representative, or other Person engaged to provide or involved in providing at any time any services.

31. "Relating to" means concerning, reflecting, referring to, pertaining to, containing, describing, regarding, illustrating, mentioning, evidencing, embodying, involving, analyzing, reporting on, commenting on, constituting, supporting, discussing, or having any logical or factual connection whatsoever with the subject matter in question.

32. "Salem Partners" means (i) the entity known as Salem Partners LLC, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or

subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

33.    "SunTrust" means (i) SunTrust Bank, in its capacity as Lender and as administrative agent under the Original Credit Agreement and the Credit Agreement; (ii) any of its affiliates and direct or indirect subsidiaries, including SunTrust Robinson Humphrey; (iii) any of its past, present, or future officers, directors, partners, members, employees, or managers; (iv) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof; and (v) Professionals of any Person within (i), (ii), (iii) or (iv).

34.    "Transition Services Agreement" means the July 9, 2015 agreement between ANconnect and Alchemy (including any amendments thereto).

35.    "Trustee" means George L. Miller in his capacity as chapter 7 Trustee for the bankruptcy estates of Alchemy, case no. 16-11596 (KG) and Anderson Digital, case no. 16-11597 (KG) which bankruptcy cases are pending in the United States Bankruptcy Court for the District of Delaware.

36.    "Virgo" collectively means (i) the entities known as Virgo Investment Group LLC, Virgo Societas Partnership III (Offshore) L.P., and Virgo Societas Partnership III (Onshore) L.P. their past and present affiliates, direct or indirect subsidiaries, and parent entities; (ii) any of their past, present, or future officers, directors, partners, members, employees, or managers; (iii) any past, present, or future board of directors, board of managers, or similar body, or any committee or subcommittee thereof; or (iv) Professionals of any Person within (i), (ii), or (iii).

37.    "You" or "Your" means Virgo, as well as its affiliates, predecessors, successors, partners, principals, officers, directors, attorneys, and professionals, and other advisors, agents, employees, representatives, and other persons acting or purporting to act on Virgo's behalf.

## INSTRUCTIONS

1.    The preceding definitions apply to these Instructions and each of the succeeding requests ("Requests"), notwithstanding that the definitions, may be reiterated, in full or in part, in a particular Request or that a particular Request may incorporate supplemental instructions or definitions.

2.    All terms defined above shall have the meanings set forth therein, whether capitalized in the Requests or not.

3.    The use of the singular form of any word shall include the plural and vice versa.

4.    Unless otherwise defined herein, capitalized terms shall bear the meaning ascribed to them in the Credit Agreement.

5.    All Documents must be produced in the order they are kept in the ordinary course of business, and must be produced in their original folders, binders, covers, or containers.

6.    These Requests relate to all Documents that are in Your possession, custody, or control, or in the possession, custody, or control of Your predecessors, successors, parents, subsidiaries, divisions, affiliates, or Your respective officers, directors, agents, attorneys, advisors, consultants, accountants, employees, partners, or other persons occupying similar positions or performing similar functions.

7.    These Requests call for the production of all responsive Documents to the fullest extent of permissible discovery. Responsive Documents include all non-identical copies of such Documents in extant physical or electronic form (*i.e.*, electronically-stored information),

including drafts, revisions and other non-identical versions, whether maintained in paper form or on magnetic tape, videotape, microfilm, computer database, electronic mail, or any other electronic storage media. Any copy of a Document that varies in any way whatsoever from the original or from any other copy of the Document, whether by reason of handwritten or other notation or any omission, shall constitute a separate Document and must be produced, whether or not the original of such a Document is within your possession, custody or control.

8. Unless otherwise agreed between the parties, all electronic Documents or electronic data shall be produced in a form which reveals all available electronic information regarding such electronic Documents or data.

9. Each Document shall be produced in such fashion as to identify from whose possession and from what location that Document was collected. Electronic Documents shall be produced with an accompanying index that states the following metadata:

     a. Date created/sent;

     b. Author;

     c. Recipients;

     d. Cc- copies; and

     e. Bcc – blind copies.

10. All Documents shall be produced in TIFF format with OCR images.

11. Whenever a Document is not produced in full or is produced in redacted form, so indicate on the Document and state with particularity the reason or reasons it is not being produced in full, and describe to the best of Your knowledge, information, and belief, and with as much particularity as possible, those portions of the Documents that are not being produced.

12.     If a Document responsive to these Requests was at any time in your possession, custody, or control, but is no longer available for production, as to each such Document, state the following information:

> a.  Whether the Document is missing or lost;
>
> b.  Whether the Document has been destroyed;
>
> c.  Whether the Document has been transferred or delivered to another person, and, if so, to whom and at whose request;
>
> d.  Whether the Document has been otherwise disposed of; and
>
> e.  A precise statement of the circumstances surrounding the disposition of the Document and that date of its disposition.

13.     These Requests are continuing so as to require supplemental responses if You or any person acting on Your behalf obtains additional information called for by the request between the time of the original response and the time set for trial.  Each supplemental response must be served on the Trustee no later than thirty days after the discovery of further information.

14.     The fact that a Document is produced by another party does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical in all respects.

15.     Responsive Documents shall be produced with all attachments, enclosures and exhibits to such documents, whether now or at any time attached, enclosed or accompanying such documents.  If any portion of a Document is responsive to a request, produce the entire Document, including all attachments, enclosures, "post-it"-type notes, and any other matter physically attached to the Document, whether by paper clip or any other manner.

16.     Documents not otherwise responsive to a Request must be produced if such Documents mention, discuss, refer to, or explain the Documents that are called for by the

Request, or if such documents are attached to Documents called for by the Request and constitute routing slips, transmittal memoranda, or letters, comments, evaluations, or similar materials.

17.     If you object to a Request, state the grounds for objection in the response to such Request. If you claim privilege with respect to any Request, you shall provide that part of the Document requested for which privilege is not claimed, state that part of the Request to which you object and state the basis for the claim of privilege.

18.     To the extent that you claim any Document or thing is not discoverable for any reason, including, without limitation, the attorney-client privilege, the work-product doctrine, or the immunity from discovery afforded to materials prepared for or in anticipation of litigation, please identify the withheld document or thing sufficiently to provide the Trustee an opportunity to assess the claim of privilege by describing and listing on a "Privilege Log" the withheld Documents' (a) nature or type (*e.g.*, letter, memoranda, e-mail, financial model) (b) general subject matter (*e.g.*, compensation analysis, financial data); (c) date(s); and (d) such other information as is sufficient to identify the document for purposes of a subpoena, including: author(s), recipient(s), and number of page(s).

19.     If you are unable to respond to any of the following Requests in full after exercising due diligence to secure the information to do so, the response shall so state and respond to the extent possible, specifying the reasons for the inability to respond to the remainder and providing whatever information or knowledge is available concerning the unanswered portions.

20.     No response is to be left blank.  If the response to any Request or subsection of a Request is "none" or "unknown", the word "none" or "unknown" must be written in the

response.  If the Request is inapplicable, "N/A" or "not applicable" must be written in the response.

21.     Except where otherwise specified, the Requests seek Documents dated, created, or otherwise obtained on or after January 1, 2013 through the present.

## **DOCUMENT REQUESTS**

1.      All Documents and Communications Relating to any loan agreement, credit agreement, financing or refinancing for Alchemy or Anderson Merchandisers, including the PMB 2013 Loan.

2.      All Documents and Communications Relating to Salem Partners LLC.

3.      All Documents and Communications Relating to any financial advisors or consultants retained by either Alchemy, Calrissian or You, including Baker Tilly and BDO USA LLP.

4.      All Documents and Communications Relating to the value of the Lenders' collateral under the Credit Agreement.

5.      All Documents and Communications Relating to any due diligence undertaken by You or any other Person relating to Alchemy or Anderson Merchandisers, including any due diligence undertaken in connection with the (i) August 2014 Transaction or the (ii) Loan Documents.

6.      All Documents and Communications of any Virgo credit committee relating to (i) the August 2014 Transaction; (ii) the Original Credit Agreement; (iii) the May 2015 Transaction; or (iv) the Loan Documents.

7.      All Documents and Communications Relating to any financial projections or business plans You, Calrissian, Alchemy, or a Professional prepared in connection with the (i) August 2014 Transaction; the (ii) Loan Documents; or (iii) Alchemy.

8.      All Documents and Communications Relating to the use of funds Alchemy received from (i) You or (ii) Calrissian.

9.      All Documents and Communications Relating to the use of funds Alchemy received from the Lenders, including any proceeds ultimately distributed to (i) You and/or deposited in a bank account maintained by You or in which You have had any beneficial interest; or (ii) Calrissian and/or deposited in a bank account maintained by Calrissian or in which Calrissian has had any beneficial interest.

10.      All Documents and Communications Relating to any covenant breaches or Events of Default under the Loan Documents.

11.      All Documents and Communications Relating to Alchemy.

12.      All Documents and Communications Relating to Calrissian.

13.      All Documents and Communications Relating to Anderson Merchandisers.

14.      All Documents and Communications Relating to any waivers or potential waivers for any covenant breaches or Events of Default under the Loan Documents.

15.      All Documents and Communications Relating to any borrowing base certificates or compliance certificates prepared in connection with the Loan Documents, including Documents reflecting calculations performed for the purposes of testing compliance with bank covenants or the calculation of the borrowing base, drafts of borrowing base certificates, and work papers.

16.     All Documents and Communications Relating to the value of Alchemy's film library.

17.     All Documents and Communications Relating to the value of Anderson Merchandisers' film library.

18.     All Documents and Communications Relating to any returns of DVDs, including projected return rates.

19.     All Documents and Communications Relating to any modifications to the Loan Documents.

20.     All Communications with SunTrust or any of the Lenders Relating to the Loan Documents, Alchemy, or Anderson Merchandisers.

21.     All Documents and Communications Relating to Alchemy's balance sheets, earnings, income statements, solvency, ability to pay its debts as they come due, or capital adequacy, including any solvency analysis and fairness opinions prepared internally or externally.

22.     All Documents and Communications Relating to Anderson Merchandisers' balance sheets, earnings, income statements, solvency, ability to pay its debts as they come due, or capital adequacy, including any solvency analysis and fairness opinions prepared internally or externally.

23.     All Documents and Communications Relating to Calrissian's balance sheets, earnings, income statements, solvency, ability to pay its debts as they come due, or capital adequacy, including any solvency analysis and fairness opinions prepared internally or externally.

24.    All Documents and Communications Relating to Your balance sheets, solvency, ability to pay Your debts as they come due, or capital adequacy, including (i) any solvency analysis and fairness opinions prepared internally or externally or (ii) any aging reports Relating to accounts receivable or accounts payable.

25.    All Documents and Communications Relating to Alchemy's enterprise value, including any analyses, appraisals, reports, evaluations, forecasts, opinions, or similar documents respecting Alchemy's value and/or assets, including a transaction comparable analysis, a comparable company analysis, a weighted average cost of capital analysis, and a discounted cash flow analysis.

26.    All Documents and Communications Relating to Anderson Merchandisers' enterprise value, including any analyses, appraisals, reports, evaluations, forecasts, opinions, or similar documents respecting Alchemy's value and/or assets, including a transaction comparable analysis, a comparable company analysis, a weighted average cost of capital analysis, and a discounted cash flow analysis.

27.    All Documents and Communications Relating to Calrissian's enterprise value, including any analyses, appraisals, reports, evaluations, forecasts, opinions, or similar documents respecting Calrissian's value and/or assets, including a transaction comparable analysis, a comparable company analysis, a weighted average cost of capital analysis, and a discounted cash flow analysis.

28.    All Documents and Communications Relating to any collateral review of Alchemy's borrowing base in connection with the Loan Documents.

29.    All Documents and Communications Relating to any collateral review of Anderson Merchandisers' borrowing base in connection with the Loan Documents.

30.  For the period January 1, 2011 to the present (i) Your tax returns (ii) Calrissian's tax returns, (iii) Alchemy's tax returns, and (iv) Anderson Merchandisers' tax returns.

31.  For the period January 1, 2011 to the present, all Documents and Communications Relating to (i) Your financial statements (audited and unaudited), (ii) Calrissian's financial statements (audited or unaudited), (iii) Alchemy's financial statements (audited and unaudited), or (iv) Anderson Merchandisers' financial statements (audited and unaudited).

32.  All Documents and Communications Relating to bank statements for any account maintained by You, Calrissian, Alchemy, or Anderson Merchandisers or in which You, Calrissian, Alchemy, or Anderson Merchandisers has had any beneficial interest.

33.  All meeting minutes, presentations, consents, resolutions, agendas, board materials, transcripts, or communications of Your board of directors and/or any committees or subcommittees of Your board of directors that relate to Anderson Merchandisers, Alchemy or Calrissian.

34.  All meeting minutes, presentations, consents, resolutions, agendas, board materials, transcripts, or communications of (i) Calrissian's board of directors or any committees or subcommittees of Calrissian's board of directors, (ii) Alchemy's board of directors and/or any committees or subcommittees of Alchemy's board of directors, or (iii) Anderson Merchandisers' board of directors and/or any committees or subcommittees of Anderson Merchandisers' board of directors.

35.  All Documents and Communications Relating to (i) Alchemy's decision to file for Chapter 7 relief or (ii) the timing of the Chapter 7 filing.

36.  All Documents and Communications Relating to Alchemy's payment or non-payment to creditors for the period of July 1, 2015 to July 1, 2016.

37.     All Documents and Communications Relating to any actual or potential debt refinancing or capital restructuring of Alchemy or Anderson Merchandisers.

38.     All Documents and Communications Relating to (i) Calrissian's decision to file for Chapter 11 relief or (ii) the timing of the Calrissian Chapter 11 filing.

39.     All Documents and Communications Relating to Your defenses and counterclaims in the Nu Image Arbitration, including any claim that any aspect of Alchemy's financial condition was misrepresented at the time of the August 2014 Transaction.

40.     All Documents and Communications Relating to the Nu Image Arbitration including without limitation any awards or decisions related thereto.

41.     All Documents and Communications Relating to Your decision to withhold non-contingent payments owed under the August 2014 Purchase Agreement.

42.     All Documents and Communications Relating to the termination of the employment of Alchemy's Chief Financial Officer, John Avagliano.

43.     All Documents and Communications Relating to the termination of the employment of Alchemy's Chief Executive Officer, Bill Lee.

44.     All Communications with SunTrust or any of the Lenders Relating to the May 2015 Transaction or ANconnect's alleged breaches of the May 2015 Purchase Agreement.

45.     All Documents and Communications Relating to Alchemy's decision to not make payments owed under the terms of the Transition Services Agreement and/or the Merchandising Agreement.

46.     All Communications with SunTrust or any of the Lenders Relating to Alchemy's decision to not make payments owed under the terms of the Transition Services Agreement or the Merchandising Agreement.

47.     All Documents and Communications Relating to ANconnect's withholding of payments owed to Alchemy under the May 2015 Purchase Agreement.

48.     All Documents and Communications Relating to any due diligence undertaken on ANconnect in connection with the May 2015 Transaction.

49.     All Documents and Communications Relating to the value of ANconnect's assets, including valuation reports prepared internally or externally.

50.     All Documents and Communications Relating to Anderson's film library.

51.     All Documents and Communications Relating to the value of Anderson Merchandisers' assets, including valuation reports prepared internally or externally.

52.     All Communications with SunTrust or any of the Lenders Relating to the alleged fraudulent or other wrongful conduct of John Avagliano or Bill Lee.

53.     All Documents and Communications supporting or evidencing possible claims or causes of action of Virgo, Calrissian and/or Alchemy against BDO USA LLP and/or other Professionals.

*[Remainder of Page Left Blank Intentionally]*

Dated:  May 21, 2018

**ASHBY & GEDDES, P.A.**

*/s/ Ricardo Palacio*

_____

Ricardo Palacio (#3765)
500 Delaware Avenue, 8th Floor
Wilmington, DE  19801
Telephone:  (302) 654-1888
RPalacio@ashbygeddes.com

- and -

**AKIN GUMP STRAUSS HAUER & FELD LLP**
David P. Simonds
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067
Telephone: (310) 229-1000
dsimonds@akingump.com

William F. Mongan
1 Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
wmongan@akingump.com

*Counsel to SunTrust Bank*

# Agent Bank's Rule 2004 Subpoena
# (Calrissian Bankruptcy)

# EXHIBIT A

**(Proposed Order)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CALRISSIAN LP, | Case No. 17-10356 (KG) |
| Debtor.[3] | **Related Docket No. _____** |

**ORDER PURSUANT TO RULE 2004 OF THE FEDERAL RULES**
**OF BANKRUPTCY PROCEDURE COMPELLING**
**THE PRODUCTION OF DOCUMENTS FROM THE VIRGO ENTITIES**

Upon the motion (the "Motion")[4] of SunTrust Bank ("SunTrust") for entry of an order, pursuant to Bankruptcy Rule 2004 and Local Rule 2004-1, compelling the Virgo Entities to produce the documents set forth on **Schedule 1** hereto; and upon consideration of the Motion and any and all responses thereto; and due and proper notice having been given, it is hereby ORDERED THAT:

1. The Motion is granted as set forth herein.

2. The Virgo Entities shall produce documents responsive to the discovery requests set forth in **Schedule 1** attached hereto to counsel to SunTrust on or before the date that is fourteen days after entry of this Order.

3. SunTrust is authorized to issue subpoenas and conduct depositions in connection with this Order.

---

[3] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identifications number, is Calrissian LP (0751). The Debtor's corporate headquarters is located at 1200 Howard Avenue, 3rd Floor, Burlingame, California 94010.

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

4.      Notwithstanding any applicable rule to the contrary, the terms of this Order shall be immediately effective and enforceable upon entry of this Order.

5.      This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Order.

Dated: Wilmington, Delaware
_____, 2018

_____
HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

## *SCHEDULE 1*

## **DEFINITIONS**

1.        "<u>Alchemy</u>" means (i) the entity formerly known as Millennium Entertainment, LLC and now known as Our Alchemy LLC, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

2.        "<u>All</u>" shall be construed as all, each, any, and every.

3.        "<u>ANconnect, LLC</u>" means (i) the entity known as ANconnect LLC, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

4.        "<u>And/or</u>" shall be construed conjunctively or disjunctively, as required by the context to bring within the scope of these requests any information that might be deemed outside their scope by any other construction.

5.        "<u>Anderson Digital</u>" means Anderson Digital LLC., a Delaware limited liability company.

6.        "<u>Anderson Merchandisers</u>" means (i) the entity known as Anderson Merchandisers, LLC, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the

Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

7.     "<u>Any</u>" means one or more.

8.     "<u>ARC Entertainment</u>" means (i) the entity known as ARC Entertainment, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

9.     "<u>August 2014 Purchase Agreement</u>" means the August 18, 2014 purchase agreement (including all amendments thereto), whereby the sellers, Nu Image, Inc., Prentice Consumer Partners, LP, Nigel Sinclair, Guy East, and Bill Lee, and the buyer, Calrissian, agreed to the sale and purchase of each seller's membership interest in Alchemy.

10.     "<u>August 2014 Transaction</u>" means the transaction effectuated by the August 2014 Purchase Agreement (including all amendments thereto), the closing thereof, and all post-closing adjustments.

11.     "<u>Baker Tilly</u>" means (i) the entity known as Baker Tilly Virchow Krause, LLP, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

12.     "Calrissian" means (i) the entity known as Calrissian LP, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

13.     "Communication" means any verbal, written, or electronic exchange of information and includes, but is not limited to, discussions, negotiations, correspondence, faxes, telegrams, telexes, memoranda, notes, conversations, speeches, meetings, conferences, remarks, questions, answers, panel discussions, and symposia, whether written or oral. The term includes both communications and statements which are face-to-face and those which are transmitted by any media including, but not limited to, intercom, telephone, television, radio, modem, social media, text message, or electronic mail.

14.     "Credit Agreement" means the Amended and Restated Revolving Credit and Term Loan Agreement, dated as of July 9, 2015 (as amended by Amendment No. 1 and Waiver dated as of December 18, 2015, and as further amended, supplemented or otherwise modified, renewed or replaced from time to time to date), to which Alchemy is a Party.

15.     "Document" means the original and all non-identical copies and drafts, regardless of origin or location, of any writing and any written, printed, typed, electronic or other graphic or photographic matter of any kind or description, in draft or final form, including, but not limited to, correspondence, letters, telegrams, facsimiles, cables, telex messages, e-mail, memoranda, notes, interoffice and interdepartmental communications, transcripts, minutes of conversations or meetings, reports, studies, any audio or video recordings, voicemail, contracts, calendar or diary

entries, pamphlets, handwritten notes, charts, tabulations, records of meetings, conferences, telephone or other conversations or communications, and tapes or slides, and other data compilations from which information can be obtained or translated, if necessary, by you through detection devices into reasonably usable form, and all other records kept by electronic photographic, or mechanical means however denominated, which are in your possession, custody, or control. If a Document has been prepared in several copies, or additional copies have been made, or copies are not identical (or, which by reason of subsequent modification of a copy by the addition of notations or other modifications, are no longer identical), each non-identical copy is a separate Document.

16. "Emigrant Bank" means (i) the entity known as Emigrant Bank, its affiliates and direct or indirect subsidiaries; (ii) any of their past, present, or future officers, directors, partners, members, employees, or managers; (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof; and (iv) Professionals of any Person within (i), (ii), or (iii).

17. "Guaranty Agreement" means the Guaranty and Security Agreement, dated as of September 4, 2014 (as amended, supplemented or modified from time to time), to which Calrissian is a Party.

18. "Including" means including but not limited to.

19. "Lenders" means (i) any of Emigrant Bank, Pacific Mercantile Bank, Preferred Bank, or SunTrust Bank; (ii) any of their affiliates and direct or indirect subsidiaries; (iii) any of their past, present, or future officers, directors, partners, members, employees, or managers; (iv) any past, present, or future board of directors, board of managers, or similar body, and any

committee or subcommittee thereof; and (v) Professionals of any Person within (i), (ii), (iii) or (iv).

20.     "<u>Loan Documents</u>" means the Original Credit Agreement, the Credit Agreement, and the Guaranty Agreement.

21.     "<u>May 2015 Purchase Agreement</u>" means the May 7, 2015 purchase agreement between ANconnect and Alchemy (including all amendments thereto).

22.     "<u>May 2015 Transaction</u>" means the transaction effectuated by the May 2015 Purchase Agreement (including all amendments thereto), the closing thereof, and all post-closing adjustments.

23.     "<u>Merchandising Agreement</u>" means the July 9, 2015 agreement (including any amendments thereto) between Alchemy and Anderson Merchandisers, whereby Alchemy engaged Anderson Merchandisers to perform certain merchandising services.

24.     "<u>Nu Image Arbitration</u>" means the arbitration styled as *Nu Image, Inc. vs. Calrissian LP, et al.*, JAMS Reference No. 1210033079, and any related actions, including appeals.

25.     "<u>Original Credit Agreement</u>" means the Revolving Credit and Term Loan Agreement, dated as of September 4, 2014, to which Alchemy is a Party.

26.      "<u>Person</u>" means any natural person, corporate entity, partnership, association, limited liability company, joint venture, government entity, trust, religious order or other entity.

27.     "<u>PMB</u>" means (i) the entity known as Pacific Mercantile Bank, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or

subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

28.    "PMB 2013 Loan" means the First Amended and Restated Revolving Credit, Security Agreement, dated as of March 23, 2013, between Alchemy, as borrower, and PMB, as lender, and any amendments thereto.

29.    "Preferred Bank" means (i) the entity known as Preferred Bank, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

30.    "Professional" means any counsel, consultant, advisor, testifying expert, non-testifying expect, agent, representative, or other Person engaged to provide or involved in providing at any time any services.

31.    "Relating to" means concerning, reflecting, referring to, pertaining to, containing, describing, regarding, illustrating, mentioning, evidencing, embodying, involving, analyzing, reporting on, commenting on, constituting, supporting, discussing, or having any logical or factual connection whatsoever with the subject matter in question.

32.    "Salem Partners" means (i) the entity known as Salem Partners LLC, its affiliates, its direct or indirect subsidiaries, and any parent entities; (ii) any past, present, or future officer, director, partner, member, employee, or manager of the Persons referenced in (i); (iii) any past, present, or future board of directors, board of managers, or similar body, and any committee or

subcommittee thereof of the Persons referenced in (i); and (iv) Professionals of any Person within (i), (ii), or (iii).

33.     "SunTrust" means (i) SunTrust Bank, in its capacity as Lender and as administrative agent under the Original Credit Agreement and the Credit Agreement; (ii) any of its affiliates and direct or indirect subsidiaries, including SunTrust Robinson Humphrey; (iii) any of its past, present, or future officers, directors, partners, members, employees, or managers; (iv) any past, present, or future board of directors, board of managers, or similar body, and any committee or subcommittee thereof; and (v) Professionals of any Person within (i), (ii), (iii) or (iv).

34.     "Transition Services Agreement" means the July 9, 2015 agreement between ANconnect and Alchemy (including any amendments thereto).

35.     "Trustee" means George L. Miller in his capacity as chapter 7 Trustee for the bankruptcy estates of Alchemy, case no. 16-11596 (KG) and Anderson Digital, case no. 16-11597 (KG) which bankruptcy cases are pending in the United States Bankruptcy Court for the District of Delaware.

36.     "Virgo" collectively means (i) the entities known as Virgo Investment Group LLC, Virgo Societas Partnership III (Offshore) L.P., and Virgo Societas Partnership III (Onshore) L.P. their past and present affiliates, direct or indirect subsidiaries, and parent entities; (ii) any of their past, present, or future officers, directors, partners, members, employees, or managers; (iii) any past, present, or future board of directors, board of managers, or similar body, or any committee or subcommittee thereof; or (iv) Professionals of any Person within (i), (ii), or (iii).

37. "You" or "Your" means Virgo, as well as its affiliates, predecessors, successors, partners, principals, officers, directors, attorneys, and professionals, and other advisors, agents, employees, representatives, and other persons acting or purporting to act on Virgo's behalf.

## INSTRUCTIONS

1. The preceding definitions apply to these Instructions and each of the succeeding requests ("Requests"), notwithstanding that the definitions, may be reiterated, in full or in part, in a particular Request or that a particular Request may incorporate supplemental instructions or definitions.

2. All terms defined above shall have the meanings set forth therein, whether capitalized in the Requests or not.

3. The use of the singular form of any word shall include the plural and vice versa.

4. Unless otherwise defined herein, capitalized terms shall bear the meaning ascribed to them in the Credit Agreement.

5. All Documents must be produced in the order they are kept in the ordinary course of business, and must be produced in their original folders, binders, covers, or containers.

6. These Requests relate to all Documents that are in Your possession, custody, or control, or in the possession, custody, or control of Your predecessors, successors, parents, subsidiaries, divisions, affiliates, or Your respective officers, directors, agents, attorneys, advisors, consultants, accountants, employees, partners, or other persons occupying similar positions or performing similar functions.

7. These Requests call for the production of all responsive Documents to the fullest extent of permissible discovery. Responsive Documents include all non-identical copies of such Documents in extant physical or electronic form (*i.e.*, electronically-stored information),

including drafts, revisions and other non-identical versions, whether maintained in paper form or on magnetic tape, videotape, microfilm, computer database, electronic mail, or any other electronic storage media. Any copy of a Document that varies in any way whatsoever from the original or from any other copy of the Document, whether by reason of handwritten or other notation or any omission, shall constitute a separate Document and must be produced, whether or not the original of such a Document is within your possession, custody or control.

8. Unless otherwise agreed between the parties, all electronic Documents or electronic data shall be produced in a form which reveals all available electronic information regarding such electronic Documents or data.

9. Each Document shall be produced in such fashion as to identify from whose possession and from what location that Document was collected. Electronic Documents shall be produced with an accompanying index that states the following metadata:

      a. Date created/sent;

      b. Author;

      c. Recipients;

      d. Cc- copies; and

      e. Bcc – blind copies.

10. All Documents shall be produced in TIFF format with OCR images.

11. Whenever a Document is not produced in full or is produced in redacted form, so indicate on the Document and state with particularity the reason or reasons it is not being produced in full, and describe to the best of Your knowledge, information, and belief, and with as much particularity as possible, those portions of the Documents that are not being produced.

12.     If a Document responsive to these Requests was at any time in your possession, custody, or control, but is no longer available for production, as to each such Document, state the following information:

> a.   Whether the Document is missing or lost;
>
> b.   Whether the Document has been destroyed;
>
> c.   Whether the Document has been transferred or delivered to another person, and, if so, to whom and at whose request;
>
> d.   Whether the Document has been otherwise disposed of; and
>
> e.   A precise statement of the circumstances surrounding the disposition of the Document and that date of its disposition.

13.     These Requests are continuing so as to require supplemental responses if You or any person acting on Your behalf obtains additional information called for by the request between the time of the original response and the time set for trial.  Each supplemental response must be served on the Trustee no later than thirty days after the discovery of further information.

14.     The fact that a Document is produced by another party does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical in all respects.

15.     Responsive Documents shall be produced with all attachments, enclosures and exhibits to such documents, whether now or at any time attached, enclosed or accompanying such documents.  If any portion of a Document is responsive to a request, produce the entire Document, including all attachments, enclosures, "post-it"-type notes, and any other matter physically attached to the Document, whether by paper clip or any other manner.

16.     Documents not otherwise responsive to a Request must be produced if such Documents mention, discuss, refer to, or explain the Documents that are called for by the

Request, or if such documents are attached to Documents called for by the Request and constitute routing slips, transmittal memoranda, or letters, comments, evaluations, or similar materials.

17.     If you object to a Request, state the grounds for objection in the response to such Request. If you claim privilege with respect to any Request, you shall provide that part of the Document requested for which privilege is not claimed, state that part of the Request to which you object and state the basis for the claim of privilege.

18.     To the extent that you claim any Document or thing is not discoverable for any reason, including, without limitation, the attorney-client privilege, the work-product doctrine, or the immunity from discovery afforded to materials prepared for or in anticipation of litigation, please identify the withheld document or thing sufficiently to provide the Trustee an opportunity to assess the claim of privilege by describing and listing on a "Privilege Log" the withheld Documents' (a) nature or type (*e.g.*, letter, memoranda, e-mail, financial model) (b) general subject matter (*e.g.*, compensation analysis, financial data); (c) date(s); and (d) such other information as is sufficient to identify the document for purposes of a subpoena, including: author(s), recipient(s), and number of page(s).

19.     If you are unable to respond to any of the following Requests in full after exercising due diligence to secure the information to do so, the response shall so state and respond to the extent possible, specifying the reasons for the inability to respond  to the remainder and providing whatever information or knowledge is available concerning the unanswered portions.

20.     No response is to be left blank.  If the response to any Request or subsection of a Request is "none" or "unknown", the word "none" or "unknown" must be written in the

response.  If the Request is inapplicable, "N/A" or "not applicable" must be written in the response.

21.     Except where otherwise specified, the Requests seek Documents dated, created, or otherwise obtained on or after January 1, 2013 through the present.

## DOCUMENT REQUESTS

1.      All Documents and Communications Relating to any loan agreement, credit agreement, financing or refinancing for Alchemy or Anderson Merchandisers, including the PMB 2013 Loan.

2.      All Documents and Communications Relating to Salem Partners LLC.

3.      All Documents and Communications Relating to any financial advisors or consultants retained by either Alchemy, Calrissian or You, including Baker Tilly and BDO USA LLP.

4.      All Documents and Communications Relating to the value of the Lenders' collateral under the Credit Agreement.

5.      All Documents and Communications Relating to any due diligence undertaken by You or any other Person relating to Alchemy or Anderson Merchandisers, including any due diligence undertaken in connection with the (i) August 2014 Transaction or the (ii) Loan Documents.

6.      All Documents and Communications of any Virgo credit committee relating to (i) the August 2014 Transaction; (ii) the Original Credit Agreement; (iii) the May 2015 Transaction; or (iv) the Loan Documents.

7.    All Documents and Communications Relating to any financial projections or business plans You, Calrissian, Alchemy, or a Professional prepared in connection with the (i) August 2014 Transaction; the (ii) Loan Documents; or (iii) Alchemy.

8.    All Documents and Communications Relating to the use of funds Alchemy received from (i) You or (ii) Calrissian.

9.    All Documents and Communications Relating to the use of funds Alchemy received from the Lenders, including any proceeds ultimately distributed to (i) You and/or deposited in a bank account maintained by You or in which You have had any beneficial interest; or (ii) Calrissian and/or deposited in a bank account maintained by Calrissian or in which Calrissian has had any beneficial interest.

10.    All Documents and Communications Relating to any covenant breaches or Events of Default under the Loan Documents.

11.    All Documents and Communications Relating to Alchemy.

12.    All Documents and Communications Relating to Calrissian.

13.    All Documents and Communications Relating to Anderson Merchandisers.

14.    All Documents and Communications Relating to any waivers or potential waivers for any covenant breaches or Events of Default under the Loan Documents.

15.    All Documents and Communications Relating to any borrowing base certificates or compliance certificates prepared in connection with the Loan Documents, including Documents reflecting calculations performed for the purposes of testing compliance with bank covenants or the calculation of the borrowing base, drafts of borrowing base certificates, and work papers.

16.     All Documents and Communications Relating to the value of Alchemy's film library.

17.     All Documents and Communications Relating to the value of Anderson Merchandisers' film library.

18.     All Documents and Communications Relating to any returns of DVDs, including projected return rates.

19.     All Documents and Communications Relating to any modifications to the Loan Documents.

20.     All Communications with SunTrust or any of the Lenders Relating to the Loan Documents, Alchemy, or Anderson Merchandisers.

21.     All Documents and Communications Relating to Alchemy's balance sheets, earnings, income statements, solvency, ability to pay its debts as they come due, or capital adequacy, including any solvency analysis and fairness opinions prepared internally or externally.

22.     All Documents and Communications Relating to Anderson Merchandisers' balance sheets, earnings, income statements, solvency, ability to pay its debts as they come due, or capital adequacy, including any solvency analysis and fairness opinions prepared internally or externally.

23.     All Documents and Communications Relating to Calrissian's balance sheets, earnings, income statements, solvency, ability to pay its debts as they come due, or capital adequacy, including any solvency analysis and fairness opinions prepared internally or externally.

24.     All Documents and Communications Relating to Your balance sheets, solvency, ability to pay Your debts as they come due, or capital adequacy, including (i) any solvency analysis and fairness opinions prepared internally or externally or (ii) any aging reports Relating to accounts receivable or accounts payable.

25.     All Documents and Communications Relating to Alchemy's enterprise value, including any analyses, appraisals, reports, evaluations, forecasts, opinions, or similar documents respecting Alchemy's value and/or assets, including a transaction comparable analysis, a comparable company analysis, a weighted average cost of capital analysis, and a discounted cash flow analysis.

26.     All Documents and Communications Relating to Anderson Merchandisers' enterprise value, including any analyses, appraisals, reports, evaluations, forecasts, opinions, or similar documents respecting Alchemy's value and/or assets, including a transaction comparable analysis, a comparable company analysis, a weighted average cost of capital analysis, and a discounted cash flow analysis.

27.     All Documents and Communications Relating to Calrissian's enterprise value, including any analyses, appraisals, reports, evaluations, forecasts, opinions, or similar documents respecting Calrissian's value and/or assets, including a transaction comparable analysis, a comparable company analysis, a weighted average cost of capital analysis, and a discounted cash flow analysis.

28.     All Documents and Communications Relating to any collateral review of Alchemy's borrowing base in connection with the Loan Documents.

29.     All Documents and Communications Relating to any collateral review of Anderson Merchandisers' borrowing base in connection with the Loan Documents.

30.     For the period January 1, 2011 to the present (i) Your tax returns (ii) Calrissian's tax returns, (iii) Alchemy's tax returns, and (iv) Anderson Merchandisers' tax returns.

31.     For the period January 1, 2011 to the present, all Documents and Communications Relating to (i) Your financial statements (audited and unaudited), (ii) Calrissian's financial statements (audited or unaudited), (iii) Alchemy's financial statements (audited and unaudited), or (iv) Anderson Merchandisers' financial statements (audited and unaudited).

32.     All Documents and Communications Relating to bank statements for any account maintained by You, Calrissian, Alchemy, or Anderson Merchandisers or in which You, Calrissian, Alchemy, or Anderson Merchandisers has had any beneficial interest.

33.     All meeting minutes, presentations, consents, resolutions, agendas, board materials, transcripts, or communications of Your board of directors and/or any committees or subcommittees of Your board of directors that relate to Anderson Merchandisers, Alchemy or Calrissian.

34.     All meeting minutes, presentations, consents, resolutions, agendas, board materials, transcripts, or communications of (i) Calrissian's board of directors or any committees or subcommittees of Calrissian's board of directors, (ii) Alchemy's board of directors and/or any committees or subcommittees of Alchemy's board of directors, or (iii) Anderson Merchandisers' board of directors and/or any committees or subcommittees of Anderson Merchandisers' board of directors.

35.     All Documents and Communications Relating to (i) Alchemy's decision to file for Chapter 7 relief or (ii) the timing of the Chapter 7 filing.

36.     All Documents and Communications Relating to Alchemy's payment or non-payment to creditors for the period of July 1, 2015 to July 1, 2016.

{01325199;v1 }                                          16

37.     All Documents and Communications Relating to any actual or potential debt refinancing or capital restructuring of Alchemy or Anderson Merchandisers.

38.     All Documents and Communications Relating to (i) Calrissian's decision to file for Chapter 11 relief or (ii) the timing of the Calrissian Chapter 11 filing.

39.     All Documents and Communications Relating to Your defenses and counterclaims in the Nu Image Arbitration, including any claim that any aspect of Alchemy's financial condition was misrepresented at the time of the August 2014 Transaction.

40.     All Documents and Communications Relating to the Nu Image Arbitration including without limitation any awards or decisions related thereto.

41.     All Documents and Communications Relating to Your decision to withhold non-contingent payments owed under the August 2014 Purchase Agreement.

42.     All Documents and Communications Relating to the termination of the employment of Alchemy's Chief Financial Officer, John Avagliano.

43.     All Documents and Communications Relating to the termination of the employment of Alchemy's Chief Executive Officer, Bill Lee.

44.     All Communications with SunTrust or any of the Lenders Relating to the May 2015 Transaction or ANconnect's alleged breaches of the May 2015 Purchase Agreement.

45.     All Documents and Communications Relating to Alchemy's decision to not make payments owed under the terms of the Transition Services Agreement and/or the Merchandising Agreement.

46.     All Communications with SunTrust or any of the Lenders Relating to Alchemy's decision to not make payments owed under the terms of the Transition Services Agreement or the Merchandising Agreement.

47.     All Documents and Communications Relating to ANconnect's withholding of payments owed to Alchemy under the May 2015 Purchase Agreement.

48.     All Documents and Communications Relating to any due diligence undertaken on ANconnect in connection with the May 2015 Transaction.

49.     All Documents and Communications Relating to the value of ANconnect's assets, including valuation reports prepared internally or externally.

50.     All Documents and Communications Relating to Anderson's film library.

51.     All Documents and Communications Relating to the value of Anderson Merchandisers' assets, including valuation reports prepared internally or externally.

52.     All Communications with SunTrust or any of the Lenders Relating to the alleged fraudulent or other wrongful conduct of John Avagliano or Bill Lee.

53.     All Documents and Communications supporting or evidencing possible claims or causes of action of Virgo, Calrissian and/or Alchemy against BDO USA LLP and/or other Professionals.

*[Remainder of Page Left Blank Intentionally]*

Dated:  May 18, 2018

**ASHBY & GEDDES, P.A.**

*/s/ Ricardo Palacio*

_____

Ricardo Palacio (#3765)
500 Delaware Avenue, 8th Floor
Wilmington, DE  19801
Telephone:  (302) 654-1888
RPalacio@ashbygeddes.com

- and -

**AKIN GUMP STRAUSS HAUER & FELD LLP**
David P. Simonds
1999 Avenue of the Stars, Suite 600
Los Angeles, CA  90067
Telephone: (310) 229-1000
dsimonds@akingump.com

William F. Mongan
1 Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
wmongan@akingump.com

*Counsel to SunTrust Bank*

{01325199;v1 }
19