# EXHIBIT 10



DANIELS & TREDENNICK PLLC
ATTORNEYS AT LAW

Andrea Levin Kim
6363 Woodway Drive, Suite 700
Houston, TX 77057
(713) 917-0024 Office
(713) 917-0026 Fax
Andrea.Kim@dtlawyers.com

October 20, 2023

***Via Email to garygans@quinnemanuel.com***
Gary Gans, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue
22nd Floor
New York, New York 10010

Re: Emigrant Bank and Pacific Mercantile Bank v. SunTrust Bank et. al., No. 1:20-cv-02391 (PGG)

Counsel:

We write in our role as co-counsel with Allen & Overy LLP, on behalf of our client, Virgo Investment Group LLC ("VIG") in response to your letter dated October 16, 2023 (the "October Letter") sent on behalf of Emigrant Bank and Pacific Mercantile Bank's ("Plaintiffs") and in connection with the subpoena served on non-party VIG on May 9, 2023 (the "Subpoena") in the above-referenced matter. This letter is provided subject to and without waiving VIG's responses and objections to the Subpoena served on the Plaintiffs on May 23, 2023 ("R&Os").

VIG, as a non-party, has already made four productions following a commercially reasonable review of readily accessible materials (the "Alchemy Production"). Despite receipt of (a) these multiple productions, (b) presumably millions of documents obtained from SunTrust (the true principal party-defendant to this litigation) and (c) roughly three terabytes of data produced (or agreed to be produced) by the Alchemy Trustee, Plaintiffs appear determined to impose extraordinary costs and burdens on non-party VIG in flagrant violation of Plaintiffs' obligations under Rule 45, regardless of the redundancy or the burden of such discovery, revealing their real motive which is an unfounded, vindictive seven-year war against VIG and its management.





**I. <u>Plaintiffs have purposefully failed to avoid imposing undue burden or expense on VIG and should bear the costs of their overbroad and redundant requests.</u>**

Plaintiffs must take reasonable steps under Rule 45(d)(1) of the Federal Rules of Civil Procedure to avoid imposing an undue burden on third parties, such as VIG.[1] However, the Plaintiffs have steadfastly refused to take ***<u>any</u>*** steps to avoid imposing an undue burden on VIG here. Plaintiffs have ignored entirely VIG's repeated requests to narrow the scope of their Subpoena in any way, despite (i) the unjustifiably excessive breadth of the requests described above and (ii) the high likelihood that Plaintiffs have already obtained much of the discovery from other sources.

As we have repeatedly informed you (including most recently in our letter dated September 15, 2023) the burden on VIG, a non-party, is substantial—conservatively, upwards of $30,000. In order for VIG to access records for the period between 2013 and 2017, which are stored in archived form, VIG would have to hire a third-party vendor to host the archived data—***<u>at a minimum cost of more than $10,000 per month</u>***. Not to mention, VIG would also have to employ counsel to review the documents for privilege and responsiveness—a lengthy and expensive endeavor given the breadth of Plaintiffs' requests Plaintiffs' insistence on a nearly decade-long discovery period. Furthermore, because the archived data cover the period from 2013 through 2017 only, VIG would have to perform additional collection searches for documents created between 2018 and the present date – documents created after Alchemy and Calrissian declared bankruptcy. After incurring fees and expenses associated with performing such searches, VIG would then have to incur additional costs associated with hosting the additional documents, reviewing them for responsiveness and privilege, and producing responsive documents. All of which is totally avoidable because the exercise has already been performed in responding to the Alchemy Trustee's discovery, which broadly covered all of VIG (and all its affiliates') transactions of any kind with Alchemy, including the same transactions that Plaintiffs previously asserted in claims against VIG and its affiliates and management, which claims are now barred.

Accordingly, VIG ***yet again*** asks Plaintiffs to limit the scope of the discovery sought[2] and bear the costs incurred by VIG in connection with the Alchemy Production. Rule 45(d)(1) states that the court "must enforce" the issuing party's duty to take "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and "impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." FRCP 45(d)(1). "Courts in this district have found [c]ost-shifting… particularly appropriate in the context of subpoenas, since Rule 45 directs courts to minimize the burden on non-parties." *In re Novartis and Par Antitrust Lit.*, 2020 WL 3317203 (S.D.N.Y. Jun. 18, 2020).

---

[1] *See Copantitla v. Fiskardo Estiatorio, Inc.*, No. 09 Civ. 1608, 2010 WL 1327921, at *10 (S.D.N.Y Apr. 5, 2010) ("[S]pecial weight [should be given] to the burden on non-parties of producing documents to parties involved in litigation.") (citation omitted).

[2] Magistrate Judge Wang likewise advised Plaintiffs to narrow their requests at the September 20, 2023 conference regarding Plaintiffs' other document requests.






Here, cost-shifting is undoubtedly warranted. First, Plaintiffs served extremely broad document requests covering "All Documents and Communications" regarding a myriad of topics over the past decade, which, as set forth above, are not relevant to this action. Plaintiffs clearly intend to re-litigate claims they have lost or are time-barred from asserting. The time and cost to VIG, a non-party to this action, of delivering the Alchemy Production have already imposed an undue burden given their negligible importance to Plaintiffs' breach of contract case against SunTrust. Second, Plaintiffs have failed to take ***any action whatsoever***, let alone reasonable steps required by Rule 45, to mitigate the burden of the open discovery requests despite VIG's multiple responsive productions. Moreover, Plaintiffs ignore the fact that they have received or will receive substantial discovery from other sources—much of which is duplicative of the very information they seek from VIG—despite having been repeatedly informed of the burden imposed by their requests on multiple occasions. Under such circumstances, Plaintiffs, not VIG, should bear all of the fees and costs incurred in connection with the Subpoena.[3]

**II. <u>Plaintiffs' October 16 Letter sets forth demonstrably false claims regarding VIG's production to date.</u>**

We would like to address some of the disingenuous and demonstrably false claims Plaintiffs make in their October Letter.

First, Plaintiffs claim VIG has failed to provide "any documents prior to August 18, 2014." ***This is demonstrably false***. *See, e.g.,* documents VIG produced at VIG_SUBPOENA_000001-26, 539-540, and 24196, and VIG0016013, 160179, 16181, 16340 and 16342.

Likewise, Plaintiffs claim VIG failed to provide "a meaningful number of—or any—documents" related to Calrissian's formation (Request No. 1). ***Again, this is demonstrably false***. *See, e.g.,* documents provided at VIG_SUBPOENA_000001-26, 421-497, 539-540, and 24196.

Plaintiffs also disingenuously claim VIG has failed to provide "a meaningful number of internal VIG communications." But Plaintiffs previously pointed out in their September 11, 2023 letter that VIG produced 69 emails "exchanged between addresses with the 'virgollc.com' domain." Apparently these 69 emails are not "meaningful" to Plaintiffs (which begs the question why Plaintiffs made requests for non-meaningful documents in the first instance), but Plaintiffs fail to explain what number of emails would be meaningful. It is clear that Plaintiffs' true purpose

[3] *See, e.g., Breaking Media*, 2021 WL 1299108, at *8 (imposing sanctions where requesting party "refused to narrow the scope of the Subpoena or otherwise address any of Petitioner's objections on privilege, relevance, and proportionality grounds, which objections Petitioner raised in multiple meet-and-confers"); *Angelo, Gordon & Co., L.P.,*2020 WL 4700910, at *3 (awarding attorney's fees because the subpoena "did not demonstrate any measures taken to mitigate the burden on" the subpoenaed party); *Zoological Soc. of Buffalo, Inc. v. Carvedrock, LLC*, No. 10-CV-35A, 2013 WL 5652759, at *2-4 (W.D.N.Y. Oct. 15, 2013) (awarding costs and attorneys' fees incurred by non-party as sanction for overbroad subpoena); *Night Hawk Ltd. v. Briarpatch Ltd.*, No. 03 Civ.1382 (RWS), 2003 WL 23018833, at *9 (S.D.N.Y. Dec. 23, 2003) ("Sanctions are properly imposed and attorney's fees are awarded where, as here, the party improperly issuing the subpoena refused to withdraw it, requiring the non-party to institute a motion to quash.").





in seeking this discovery is solely to continue harassing VIG because it has failed in all other forums to bring legitimate claims again VIG.

Additionally, Plaintiffs claim VIG failed to provide "a meaningful number of—or any—documents" related to VIG's due diligence prior to the Alchemy acquisition. As with the documents Plaintiffs seek from and regarding Baker Tilly, however, these documents are simply not relevant. What VIG may or may not have known about ***Alchemy*** before Calrissian's formation has no bearing on whether any of the Virgo Parties is ***Calrissian's*** alter ego or used ***Calrissian*** to perpetrate fraud or other wrongdoing.

Finally, Plaintiffs claim VIG failed to provide "a meaningful number of—or any—documents" related to negotiation of the Credit Agreement, Guaranty Agreement, and Joinder Agreement (Request Nos. 9-11). By their very nature, negotiations are two-sided—thus, any "negotiations" of these agreements would have been reflected in correspondence with SunTrust as agent bank or plaintiff PMB as the incumbent lender. Plaintiffs already have such documents in Plaintiff PMB's own possession or can obtain (and presumably already have obtained) these documents from SunTrust—a party to this action. Such a blatantly duplicative request to VIG, a non-party, where the Plaintiffs already have access to these very same documents from parties to the litigation is harassing, an undue burden, and cannot be countenanced.

Apart from the forgoing spurious claims, Plaintiffs' October Letter addresses two groups of documents that Plaintiffs posit would be responsive to Request Nos. 2-8, 13-18, and 21—VIG's communications with SunTrust, and "internal Virgo communications." We address each of these categories in turn.

**III. <u>Requests supposedly relating to communications between VIG and SunTrust</u>**

Plaintiffs claim that with respect to Request Nos. 2-8, 13-18, and 21, "VIG's communications with SunTrust would be responsive" and, therefore, Plaintiffs apparently insist that VIG produce such communications. But Plaintiffs insistence on production of these documents is unfounded.

*First*, Request Nos. 3 and 7 do not ask for *any* communications in the first place—meaning VIG's communications with SunTrust could not possibly be responsive.

*Second*, Request No. 14 asks for "internal communications"—which do not appear to include communications between VIG and external party SunTrust. Again, VIG's communications with SunTrust could not possibly be responsive.

*Third*—and most damningly—Plaintiffs can obtain (and presumably already have obtained) any communications with SunTrust directly from SunTrust, a party to this action. Such a duplicative request to VIG, a non-party, where the Plaintiffs already have access to these very same documents from parties to the litigation is harassing, an undue burden, and cannot be countenanced. VIG hereby demands that Plaintiffs withdraw its request for *any* communications between non-party VIG and actual-party SunTrust ***<u>by Wednesday, October 25, 2023</u>***. Failure to do so will force VIG to seek court intervention, including seeking sanctions under Fed. R. Civ. P. 45(d)(1).






**IV. <u>Requests supposedly relating to "internal Virgo communications"</u>**

Plaintiffs also claim that with respect to Request Nos. 2-8, 13-18, and 21 that "internal Virgo communications (as defined in our September 11 Letter)" would be responsive. However, in direct contravention to Plaintiffs' claim, Plaintiffs did *not* define the term "internal Virgo communications" anywhere in their September 11 Letter. At best, Plaintiffs' letter appears to suggest that the term "internal Virgo communications" could mean one of two things: (1) any emails where the only domain in the to, from, and cc/bcc lines is "virgollc.com" or (2) "communications exclusively among VIG officers or employers[sic] , or between VIG and its affiliates and subsidiaries." In either case, such a definition is wildly overbroad, because, as Plaintiffs are aware, as an investment firm, VIG has multiple funds and various affiliates associated with investments that have absolutely nothing to do with the Alchemy investment. VIG will not agree to search the emails/files of all VIG officers, "employers" (or employees), affiliates, and subsidiaries.

Additionally, with respect to specific Request Nos. 2-8, 13-18, and 21, Plaintiffs claim that it is entitled to discovery of "internal Virgo communications" responsive to each of these requests is unfounded for the reasons set forth below.

**A. Requests for which "internal Virgo communications" are facially nonresponsive.**

Request Nos. 3 and 7 do not ask for *any* communications in the first place—meaning "internal Virgo communications" could not possibly be responsive.

Request No. 13 asks for certain communications between VIG "and any other entity." Thus, "internal Virgo communications" could not possibly be responsive to this request, as this request specifically asks for communications with *other* (non-VIG) entities.

Request No. 15 asks for communications "with any Lender." But "internal Virgo communications" could not possibly be responsive to this request, as this request specifically asks for communications with *other* entities—the Lenders. Moreover, Plaintiffs are already in possession of this information because either (1) Plaintiffs are the very "Lenders" with whom such communications were made, or (2) Defendant SunTrust is the "Lender" with whom such communications were made, and VIG's communications with SunTrust are in the hands of SunTrust, an actual party to this case. Duplicative requests to VIG, a non-party, where the Plaintiffs already have access to these very same documents, is an undue burden in violation of Fed. R. Civ. P. 26(b)(2)(C) and 45.[4]

---

[4] Fed. R. Civ. P. 26(b)(2)(C) (requiring courts to limit discovery when the request is unreasonably duplicative or can be obtained from a more convenient or less burdensome source); *see also N'Diaye v. Met. Life Ins. Co.*, 17-CV-4260 (GBD) (BCM) 2018 WL 2316335 at *7 (S.D.N.Y. May 8, 2018) (Noting that the considerations of Rule 26 are "particularly salient where, as here, a party has opted to seek documents from non-parties, via subpoena, without first attempting to compel its adversary to produce the same documents."); *Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017) (courts apply the parameters of Rule 26 when determining factors under Rule 45, such as relevance).






**B. Requests for which Plaintiffs already have the documents they seek because the Alchemy Trustee agreed to provide Plaintiffs with all of Alchemy's documents.**

Request No. 5 asks for documents and communications "related to any actions taken by Virgo (including actions taken by Perez or Watson) to manage, control, direct, instruct, consult with, or advise Alchemy." But to the extent any "Virgo" personnel were managing, controlling, directing, instructing, consulting with, or advising ***Alchemy***, Plaintiffs already have all communications reflecting such actions because they have all of Alchemy's files from the Alchemy Trustee.

Request Nos. 16 and 17 ask for communications relating to decisions to terminate Alchemy executives John Avigliano and Bill Lee. But any decision to terminate an Alchemy employee would have been made ***by Alchemy***—not VIG—and would therefore appear in Alchemy's files, the entirety of which Plaintiffs already have from the Alchemy Trustee.

Request No. 18 asks for communications "related to Borrowing Base Certificates prepared by Alchemy." Any preparation of Borrowing Base Certificates ***by Alchemy*** would appear in Alchemy's files, the entirety of which Plaintiffs already have from the Alchemy Trustee.

Request No. 8 asks for documents and communications relating to transfers of assets from Alchemy. Plaintiffs already have all of Alchemy's files from the Alchemy Trustee—which would include Alchemy's general ledgers, which reflect ***all transfers to or from Alchemy***. Plaintiffs have failed to even attempt to explain why they think they need "internal Virgo communications" regarding transfers made by Alchemy, when (1) Plaintiffs already have the underlying financial documents and (2) Plaintiffs are barred from claiming that any "Virgo" entity is the alter ego of Alchemy.

**C. Requests for which Plaintiffs already have the underlying financial information they seek because VIG produced Calrissian's financial documents.**

Request Nos. 2 and 6 ask for documents and communications relating to Calrissian's capitalization and Calrissian's finances. VIG previously produced all of the underlying financial information evidencing Calrissian's finances and capitalization—in the form of all of Calrissian's bank statements, financial statements, general ledgers, and publicly-available post-bankruptcy financial documents—at VIG_SUBPOENA_000027-130, 399-420, 498-538, 541-637, and 24193-24196. Plaintiffs have failed to even attempt to explain why they think they need "internal Virgo communications" regarding Calrissian's capitalization or finances ***when Plaintiffs already have the underlying information evidencing Calrissian's finances and capitalization***.

Request No. 8 also asks for documents and communications relating to transfers of assets from Calrissian. VIG previously produced all of Calrissian's financial information—in the form of all of Calrissian's bank statements, financial statements, general ledgers, and publicly-available post-bankruptcy financial documents—at VIG_SUBPOENA_000027-130, 399-420, 498-538, 541-637, and 24193-24196. Plaintiffs have failed to even attempt to explain why they think they need "internal Virgo communications" regarding transfers made by Calrissian, ***when Plaintiffs already have the underlying information evidencing those transfers.***






Request No. 21 asks for documents and communications "related to the Calrissian Bankruptcy, including all documents relating to Calrissian's financial condition and all documents relating to the decision for Calrissian to enter into a bankruptcy proceeding." As previously noted, VIG already produced all of Calrissian's financial information—in the form of all of Calrissian's bank statements, financial statements, general ledgers, and publicly-available post-bankruptcy financial documents—at VIG_SUBPOENA_000027-130, 399-420, 498-538, 541-637, and 24193-24196. Yet again, Plaintiffs have failed to even attempt to explain why they think they need "internal Virgo communications" regarding Calrissian's bankruptcy, ***when Plaintiffs already have the underlying financial information***. Moreover, any "internal Virgo communications" relating to the decision to enter into a bankruptcy proceeding would contain discussions of attorney-client communications or attorney work product (i.e., attorney advice), and are therefore privileged and not discoverable.

**D. Request No. 4, for which Plaintiffs already have relevant, non-privileged responsive documents.**

Request No. 4 asks for documents and communications "related to any actions taken by Virgo (including actions taken by Perez or Watson) to manage, control, direct, instruct, advise, or consult with Calrissian regarding Alchemy, the Credit Agreement, the Guaranty Agreement, the Lenders, the Guaranteed Obligations, the Guaranty Action, or the Calrissian Bankruptcy." This request is problematic for multiple reasons.

As to the date of production related to this request, it is tautological that you cannot manage, direct, instruct, advise, or consult with an entity that does not yet exist. Calrissian was formed on August 4, 2014. Calrissian, as you know, was a holding company that held a majority investment in Our Alchemy LLC, OA Investment Holdings LLC, and Anderson Digital LLC. If you're requesting the documents under which Calrissian came to hold those company interests, Plaintiffs already have these, and would have gotten them at the time the Plaintiff banks performed their own diligence as is called for under the Credit Agreement and Amended Credit Agreement.

As to the Calrissian Bankruptcy, which was filed after Alchemy and Anderson Digital declared bankruptcy in response to the banks' sweeping their cash and causing the need for immediate shut down, the only "actions" that could be taken were the investors in Calrissian consulting with legal counsel (which would be privileged) to ultimately decide to file Calrissian's bankruptcy and, of course, counsel for Calrissian's correspondence, pleadings and actions taken on behalf of Calrissian in the bankruptcy. The Credit Agreement was with Alchemy, which was the borrower, and again, the correspondence and results of those negotiations are all in your possession.

Finally, Plaintiffs' only remaining claim is that Calrissian was used as a fraud and an artifice to defraud the Plaintiff banks. The only relationship between Calrissian and the Banks is Calrissian as guarantor. Thus, the only relevant correspondence would be correspondence about the Guaranty that would go to prove that Calrissian was used as an artifice or fraud. But as you know, and as thoroughly discussed before Magistrate Wang on September 20, 2023, the issue of Calrissian (as guarantor) having no intention of keeping other assets in its account—except ownership of the membership interests in Alchemy—to contribute to any guaranty payment was





openly discussed with the Banks and their lawyers and rejected. Thus, to the extent this request seeks documents having to do with some unarticulated act claimed by the Plaintiffs, those documents are entirely irrelevant to Plaintiffs' remaining claims.

**E. Request No. 14, for which VIG has already produced Calrissian's bank and accounting records as well, which relate directly thereto.**

Request No. 14 asks for "All internal communications related to the Credit Agreement, the Guaranty Agreement, the Joinder Agreement, or the Guaranteed Obligations." As VIG noted in its objections to the Subpoena, Request No. 14 is overbroad and unduly burdensome as it seeks all internal communications over a period of more than nine years relating to the specified agreements and obligations. Moreover, as VIG also noted in its objections to the Subpoena, Request No. 14 fails to define "internal" such that it is clear to which entity (or entities) such communications would be "internal." Communications related to these loan agreements were undertaken with counsel to negotiate those agreements, with Alchemy management, and of course, with the banks (including your clients) and their counsel, all of which communications you have. To the extent Plaintiffs are willing to clarify this request in time and scope, VIG is willing to further meet and confer. To that end, *please provide several times over the next week in which you are available to meet and confer regarding this request*.

**V. <u>Depositions</u>**

Plaintiffs' October Letter included a request for dates for depositions of Jesse Watson, Mark Perez, Chris MacDonald, and a representative of VIG to provide testimony pursuant to Fed. R. Civ. P. 30(b)(6). Given Plaintiffs' history of insisting that VIG produce documents that are not relevant to Plaintiffs' claims, VIG is unable to agree to produce any witnesses for deposition until it is provided with topics for the 30(b)(6) witness and until Plaintiff provides an explanation for why it believes these witnesses are relevant to its claims and what relevant testimony it expects to elicit regarding those claims from these witnesses. Please provide the requested information in order that VIG may assess the relevance of the requested witnesses to determine whether it can agree to produce those witnesses for deposition.

* * *

VIG expressly reserves all rights, remedies and objections are expressly reserved, including, but not limited to its rights to seek reimbursements for costs in connection with its response to the Subpoena.

Sincerely,

DANIELS & TREDENNICK, PLLC

*<u>/s/ Andrea Levin Kim</u>*
Andrea Levin Kim