**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7471**

WRITER'S EMAIL ADDRESS
**coreyworcester@quinnemanuel.com**

November 20, 2023

**VIA ECF**

Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 2104
New York, NY 10007

Re:     *Emigrant Bank, et al. v. SunTrust Bank, et al.*, No. 1:20-cv-02391-PGG-OTW

Dear Judge Gardephe:

We represent Plaintiffs Emigrant Bank and Pacific Mercantile Bank ("Plaintiffs") and write in response to the November 16, 2023 letter filed by non-party Virgo Investment Group LLC ("VIG") requesting a pre-motion conference for proposed motions for protective orders in connection with (i) a document subpoena served by Plaintiffs on non-party SS&C Technologies, Inc. ("SS&C"), which maintained Calrissian's books and records (the "SS&C Subpoena"); and (ii) deposition subpoenas served by Plaintiffs on VIG and three of its employees (the "Deposition Subpoenas").  ECF No. 133 (the "Letter').

## I.     BACKGROUND AND MAGISTRATE JUDGE WANG'S NOVEMBER 13 ORDER

As will be set forth in Plaintiffs' forthcoming Objection to Magistrate Judge Wang's November 13 Order (ECF No. 131, the "November 13 Order"), the disputes with VIG center on a fundamental, unresolved issue of burden of proof: specifically, whether Plaintiffs must prove that a breach of contract action against VIG and its affiliates (collectively, "Virgo") based on the theory that Virgo is the alter ego or principal of Calrissian LP ("Calrissian") would have been successful. Plaintiffs thus respectfully submit that their forthcoming Objection to the November 13 Order should be resolved in conjunction with any resolution of VIG's Letter.

Plaintiffs have brought this action for breach of contract for SunTrust Bank's failure, as administrative agent under the relevant Credit Agreement, to pursue claims against Virgo at the demand of a majority of lenders.  In response to Plaintiffs' claim, SunTrust has raised the defense

**quinn emanuel urquhart & sullivan, llp**

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON |
LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY |
SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

that "Plaintiffs must prove that . . . Virgo is the alter ego of Calrissian" but that "Plaintiffs lack sufficient evidence to make that showing." *E.g.*, ECF No. 91 (SunTrust's Amended Answer) at 24. Thus, whether Plaintiffs have sufficient evidence to show that Virgo was the alter ego of Calrissian is a critical issue, one that requires documents and testimony from Virgo and Calrissian, and this is the basis for Plaintiffs' subpoenas to VIG and SS&C.

VIG's Letter is largely based on the November 13 Order. ECF No. 131. Magistrate Judge Wang issued protective orders as to subpoenas issued to VIG and two other third parties and denied Plaintiffs' motion to compel the production of documents by VIG, concluding that discovery into whether Virgo was Calrissian's alter ego is irrelevant. Specifically, Magistrate Judge Wang held that "[w]hat the Virgo entities knew or did . . . is irrelevant to this claim" (*id.* at 4), and "[w]hether the Virgo entities were in fact alter egos of Calrissian or Alchemy, is also of limited applicability here" (*id.* at 4 n.2).

However, if SunTrust's defense—that Plaintiffs cannot show Virgo was Calrissian's alter ego—is viable, Plaintiffs must be able to conduct discovery to counter the defense, *i.e.*, discovery as to whether Virgo was Calrissian's alter ego. If the Court agrees with Magistrate Judge Wang and VIG that evidence of alter ego is irrelevant for discovery purposes, SunTrust cannot at summary judgment or trial pursue its defense that Plaintiffs must, but cannot, show that an alter ego claim against Virgo would have been successful. Plaintiffs cannot be denied discovery as to whether Virgo was Calrissian's alter ego, but then later have to prove that the underlying alter ego claim would have been successful.

Thus, in connection with this dispute and Plaintiffs' forthcoming objection to the November 13 Order, the Court should determine the relevance of discovery into the alter ego relationship between Virgo and Calrissian to resolve the fundamental disagreement over both the scope of discovery and the corresponding proof required at trial. Plaintiffs are willing to submit additional briefing on this issue if the Court so requests.

## II. LEGAL STANDARD

Under Rule 45, a party may command a third party to "produce designated documents . . . in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). "Relevance is . . . to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Hoxhaj v. Michael Cetta, Inc.*, 2022 WL 1664963, at *1 (S.D.N.Y. May 25, 2022) (citation and quotations omitted). This broad standard extends to subpoenaed depositions. *See Ferguson v. Lion Holding, Inc.*, 2005 WL 1216300, at *2 (S.D.N.Y. May 23, 2005) (requested deposition "well within this generous standard of relevance"); *Nat'l R.R. Passenger Corp. v. Commonwealth Ins. Co.*, 2023 WL 5917923, at *1 (S.D.N.Y. Sept. 6, 2023) (compelling deposition under "broad" discovery rules).

## III. THE SUBPOENA TO SS&C SEEKS RELEVANT DOCUMENTS

The documents sought in the SS&C Subpoena are relevant to SunTrust's asserted defense that Plaintiffs must prove that the underlying alter ego claim against Virgo would have been successful. Documents produced in discovery indicate SS&C maintained Calrissian's books and

records, so Plaintiffs issued a subpoena to SS&C for those records.  If Plaintiffs must prove that Virgo was Calrissian's alter ego, Calrissian's books and records are plainly relevant.

*First*, as a threshold issue, VIG does not have standing to object to the SS&C Subpoena on relevance grounds.  *City of Almaty, Kazakhstan v. Ablyazov*, at *1 2020 WL 1130670 (S.D.N.Y. Mar. 9, 2020) (denying non-subpoenaed party's motion to quash on grounds of burden and irrelevance).  Absent a claim of privilege or right—which VIG does not and cannot assert—VIG has no standing to object to a subpoena directed to a different non-party.  *See Universitas Educ., LLC v. Nova Group, Inc.*, 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013).

*Second*, even if VIG had standing to object to the SS&C Subpoena, the subpoena seeks discovery relevant to SunTrust's defense that Plaintiffs must prove an alter ego claim against Virgo.  The elements of alter ego liability are that Virgo (i) had control over Calrissian, and (ii) used that control to commit a fraud or other wrong.  *See In re Adler, Coleman Clearing Corp.*, 469 F. Supp. 2d 112, 117 (S.D.N.Y. 2007).  In evaluating control, courts consider factors like corporate formalities, capitalization, overlap in ownership and management, and whether the related corporations deal at arm's length.  *See N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014).  Each request in the SS&C Subpoena goes to these factors.

Plaintiffs initially sought this discovery from Calrissian.  Ex. 1 (Calrissian subpoena). When Calrissian failed to respond to that subpoena, Plaintiffs moved to compel production in the District of Delaware.  That motion was granted on August 14, 2023.[1]  The SS&C Subpoena seeks categories of documents that Calrissian was already ordered to produce; SS&C maintained Calrissian's books and records and thus likely has relevant documents.  Each Request at issue in the SS&C Subpoena seeks documents relevant to overcoming SunTrust's defense that Plaintiffs cannot prove an alter ego claim would have succeeded.  *See* ECF No. 133-1, Requests Nos. 1-3 (the formation, capitalization, finances, and management of Calrissian), No. 5 (distributions, payments, or transfers among Alchemy, Calrissian, Virgo, and others); and Nos. 4, 6-9 (communications regarding Calrissian, the Guaranty Agreement, and the Calrissian Bankruptcy).

VIG paints this as an attempt to circumvent Magistrate Judge Wang's November 13 Order, but that is nonsensical.  Plaintiffs served the subpoena in October; Magistrate Judge Wang's Order did not issue until November.  Plaintiffs served the SS&C Subpoena pursuant to their right to seek relevant discovery under the Federal Rules of Civil Procedure and to avoid severe prejudice in the event that Plaintiffs must prove an alter ego claim against Virgo would have been successful in a hypothetical lawsuit brought by SunTrust.

*Third*, VIG argues that the SS&C Subpoena is duplicative because "any documents that SS&C might have, would have been provided by VIG already."  Letter at 3.  But VIG has not confirmed that it has produced all of the documents subpoenaed and, indeed, very likely has not, because VIG refused to make a meaningful production of documents even before it was granted a protective order by Magistrate Judge Wang.  *See* ECF No. 124.  VIG also previously misrepresented to Magistrate Judge Wang which documents it had produced.  *See* ECF No. 118 at

---

[1]  *See Emigrant Bank, et al. v. Calrissian L.P. et al.*, Case No. 1:23-mc-00341-RGA-LDH (D. Del.), ECF No. 9.

3.  VIG's argument that SS&C is an improper source of the documents because SS&C would have gotten Calrissian's documents from VIG does not provide a basis to quash the subpoena.  *See In re Rule 45 Subpoena Issued to JP Morgan Chase Bank, N.A.*, 319 F.R.D. 132, 135 (S.D.N.Y. Dec. 9, 2016) (objection that documents could have been sought through other means was "not persuasive on the merits").  However, in an effort to compromise, Plaintiffs are willing to narrow the scope of this Subpoena to avoid any duplication of documents already produced by VIG.

*Fourth*, the SS&C Subpoena is timely.  VIG asserts that the SS&C Subpoena is "even more 'untimely' than the Nu Image, Baker Tilly, and VIG Subpoenas" (ECF No. 133 at 3), but the November 13 Order did not rule that those subpoenas were untimely, nor could it.  All relevant subpoenas were served by Plaintiffs consistent with the case schedule in this action, including the SS&C Subpoena which was served nearly two months before the end of third-party discovery.

The documents sought in the SS&C Subpoena are relevant and should be produced.

## IV.  THE DEPOSITION SUBPOENAS TO VIG AND ITS OFFICERS SEEK RELEVANT TESTIMONY

If the Court agrees with SunTrust that Plaintiffs must prove the underlying alter ego claim against Virgo, it should reject VIG's request.  Testimony from VIG and its employees is critical to establishing the elements of alter ego and agency.  To that end, Plaintiffs noticed the depositions of a corporate representative of VIG and three VIG officers who were directly involved in the transactions and events underlying Plaintiffs' claims.  VIG argues that a protective order should issue because the underlying alter ego claim is irrelevant.  If VIG's argument is correct, SunTrust's defense must fail.  If VIG's argument is incorrect or premature, Plaintiffs must be permitted to take these depositions.

**VIG's 30(b)(6):**  Plaintiffs have sought testimony from a corporate representative of VIG on topics directly relevant to the underlying alter ego claim against Virgo, including:  Virgo's formation of Calrissian; Virgo's capitalization of and control over Calrissian; and Virgo's knowledge of Alchemy's finances when it made certain representations to the lenders and used Calrissian to guarantee the loans and transfer funds from Alchemy through Calrissian to Virgo. ECF No. 133-5.  VIG has made no effort to meet and confer with Plaintiffs with respect to its objections to the topics in Plaintiffs' 30(b)(6) notice, failing to even serve responses and objections.

**Mark Perez:**  Mark Perez is a founding partner of Virgo and was directly involved in negotiating the Credit Agreement and Guaranty Agreement, as well as the purchase of Alchemy by Calrissian.  During Virgo's due diligence into Alchemy prior to the acquisition, Virgo's accounting firm (Baker Tilly) issued a draft report that Alchemy had a low quality of earnings, which Perez instructed Baker Tilly to change, and then Virgo concealed Baker Tilly's opinion from the lenders.  ECF No. 45 ("AC") at ¶ 28.  After Calrissian acquired Alchemy, Perez was heavily involved in Alchemy's day-to-day operations and engaged in wrongful actions, such as misrepresenting financial information, that ultimately cost Plaintiffs tens of millions of dollars. His testimony is relevant to whether Calrissian, which owned Alchemy, was merely Virgo's alter ego and whether VIG used Calrissian as a shell company to commit wrongful acts.

**Jesse Watson:**   Jesse Watson, another founding partner of Virgo, was directly involved in the formation of Calrissian immediately prior to Virgo's acquisition of Alchemy.  He also executed Calrissian's Limited Partnership Agreement on behalf of the general partner and two limited partners, all Virgo entities.  Like Perez, Watson was also directly involved in discussions with the lenders, pitching them in meetings and written material on the credit facility and the strength of Alchemy's finances while knowing that Alchemy's finances had been misstated.  *E.g.*, AC at ¶ 51-52.  In fact, Emigrant was in part originally induced to enter into the Credit Agreement due to discussion between Watson and Emigrant.  Watson also executed the Guaranty Agreement on behalf of Calrissian.  ECF No. 45-2.

**Chris MacDonald:**   Chris MacDonald, the third founding partner of Virgo, had significant involvement in the efforts by the lenders to save Alchemy when it defaulted on its obligations.  He attended at least one meeting with the lenders after Alchemy defaulted on its obligations, and he would have discoverable testimony regarding Virgo's decision not to provide Alchemy with the funding necessary to avoid bankruptcy.

VIG's argument that the subpoenas should be quashed based on the apex doctrine ignores that each witness subpoenaed was directly involved in the underlying events and has personal and unique knowledge regarding the underlying facts.  "[H]ighly-placed executives are not immune from discovery" where they have "relevant, direct knowledge." *Andes Petroleum Ecuadro Ltd. v. Occidental Exploration & Prod. Co.*, 2022 WL 3227874, at *3 (S.D.N.Y. Aug. 10, 2022) (citations and quotations omitted).  This is not a situation where subpoenas have been served on high-level corporate executives who were not directly involved and do not have unique personal knowledge compared to lower-ranking employees who should have been subpoenaed instead.  As explained above, Perez, Watson, and MacDonald were all directly involved in the negotiation of the Credit Agreement and Guaranty Agreement, the operation of Alchemy by Virgo through Calrissian, and Virgo's response when Alchemy and Calrissian became unable to satisfy their loan obligations. Plaintiffs have no other source of testimony from Virgo regarding the underlying events, corporate relationships, and transactions at issue.  If Plaintiffs are not permitted to depose Perez, Watson, and MacDonald, there would be nobody with direct personal knowledge to depose.  *Id.* ("the subpoenas do not violate the considerations not to harass high-level executives when the facts are known, not directly by them, but by lower-ranking employees").

This significant involvement and personal knowledge relevant to the action means the apex doctrine does not justify a protective order here.  *See, e.g.*, *Andes Petroleum*, 2022 WL 3227874, at *3 ("[E]ach of the identified witnesses [has] relevant, direct knowledge.  Each allegedly was involved either in the transactions . . . or has access to specialized knowledge."); C*hevron Corp. v. Donziger*, 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013) (permitting deposition of chairman and chief executive officer where he had "personal knowledge" relevant to litigation).  VIG does not even try to articulate how the subpoenaed individuals lack personal or unique knowledge relevant to the underlying alter ego claim, because they plainly do.

Respectfully submitted,

*/s/ Corey Worcester*
Corey Worcester