## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

EMIGRANT BANK; AND PACIFIC MERCANTILE BANK,

                       Plaintiffs,

       -against-

SUNTRUST BANK; TRUIST BANK; AND DOES 1 THROUGH 10, INCLUSIVE,

                   Defendants.

Case No. 1:20-cv-02391-PGG-OTW

## PLAINTIFFS EMIGRANT BANK AND PACIFIC MERCANTILE BANK'S OBJECTION TO MAGISTRATE JUDGE WANG'S NOVEMBER 13, 2023 ORDER

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................2

FACTUAL AND PROCEDURAL BACKGROUND........................................................................4

    A.    SunTrust Breaches The Credit Agreement ...........................................................4

    B.    Virgo And Calrissian Engage In The Nu Image Arbitration ...................................6

    C.    Plaintiffs Pursue Fraud Claims Against Virgo In State Court ................................6

    D.    The Alchemy Bankruptcy Does Not Bar Any Claim That Virgo Is
        Calrissian's Alter Ego ...........................................................................................7

    E.    SunTrust Asserts That Plaintiffs Must, But Cannot, Prove Virgo Is
        Calrissian's Alter Ego ...........................................................................................8

    F.    VIG Seeks To Block Plaintiffs' Subpoenas Regarding Nu Image And
        Baker Tilly ...........................................................................................................8

    G.    VIG Refuses To Comply With Plaintiffs' Subpoena.............................................10

    H.    Magistrate Judge Wang Issues The October 30 Order ........................................11

    I.    Magistrate Judge Wang Issues The November 13 Order ....................................12

STANDARD OF REVIEW .................................................................................................12

ARGUMENT ..................................................................................................................13

I.    THE NOVEMBER 13 ORDER CLEARLY ERRED IN HOLDING THE
    DISCOVERY SOUGHT IS NOT RELEVANT OR PROPORTIONAL.........................13

    A.    SunTrust Has Raised The Defense That Plaintiffs Must—But Cannot—
        Prove Virgo Is Calrissian's Alter Ego ..................................................................14

    B.    The VIG Subpoena Seeks Relevant Documents....................................................15

    C.    The Baker Tilly Subpoena Seeks Relevant Documents .........................................18

    D.    The Nu Image Subpoena Seeks Relevant Documents............................................20

II.    THE NOVEMBER 13 ORDER'S SUGGESTION THAT PLAINTIFFS ARE
    BARRED FROM THIS DISCOVERY IS CLEAR ERROR AND CONTRARY
    TO LAW .........................................................................................................22

    A.    The Alchemy Bar Order Does Not Prohibit Plaintiffs From Seeking
        Discovery In This Action .....................................................................................22

    B.    The November 13 Order's Statements Regarding Standing Do Not
        Support A Protective Order ..................................................................................23

    C.    The Actions Of The Calrissian And Alchemy Trustees Have No Bearing
        On The Relevance Or Proportionality Of Plaintiffs' Discovery............................24

CONCLUSION.................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page**

<u>Cases</u>

*In re Adler, Coleman Clearing Corp.*,
    469 F. Supp. 2d 112 (S.D.N.Y. 2007)......................................................................................15

*Bromfield v. Bronx Lebanon Special Care Ctr., Inc.*,
    2020 WL 495460 (S.D.N.Y. Jan. 30, 2020) ...........................................................................13

*City of New York v. FedEx Ground Package Sys., Inc.*,
    2017 WL 633445 (S.D.N.Y. Feb. 14, 2017).......................................................................17, 20

*GE Healthcare Bio-Sciences AB v. Bio-Rad Lab., Inc.*,
    2015 WL 7582967 (S.D.N.Y. Nov. 25, 2015)...........................................................18, 20, 21

*Gotham Holdings, LP v. Health Grades, Inc.*,
    580 F.3d 664 (7th Cir. 2009) ..................................................................................................21

*Hoxhaj v. Michael Cetta, Inc.*,
    2022 WL 1664963 (S.D.N.Y. May 25, 2022) .........................................................................13

*N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*,
    766 F.3d 212 (2d Cir. 2014)....................................................................................................15

*Roche Freedman LLP v. Cyrulnik*,
    2022 WL 17157670 (S.D.N.Y. Nov. 22, 2022)....................................................13, 18, 20, 21

*In re Rule 45 Subpoena Issued to JP Morgan Chase Bank, N.A.*,
    319 F.R.D. 132 (S.D.N.Y. Dec. 9, 2016)................................................................................23

*S.E.C. v. Finazzo*,
    360 F. App'x 169 (2d Cir. 2009) .............................................................................................23

*Safe Step Walk-in Tub Co. v. CKH Industries, Inc.*,
    2023 WL 1383678 (S.D.N.Y. Jan. 31, 2023) .........................................................................18

*Somaxon Pharma. Inc. v. Actavis Elizabeth LLC*,
    2022 WL 3577904 (S.D.N.Y. Aug. 18, 2022).........................................................................18

*Tribune Co. v. Purcigliotti*,
    1996 WL 337277 (S.D.N.Y. June 19, 1996) ..........................................................................21

*U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co.*,
    2012 WL 5395249 (S.D.N.Y. Nov. 5, 2012)..........................................................................18

**<u>Rules/Statutes</u>**

11 U.S.C. § 362 ................................................................................................................7

Federal Rule of Civil Procedure 26 ...........................................................................4, 13

Federal Rule of Civil Procedure 72(a) .......................................................................1, 13

Federal Rule of Evidence 401 ......................................................................................13

Pursuant to Federal Rule of Civil Procedure 72(a), Plaintiffs Emigrant Bank ("Emigrant") and Pacific Mercantile Bank ("PMB") respectfully submit this Objection to Magistrate Judge Wang's November 13, 2023 Order (ECF No. 131, the "November 13 Order").

The November 13 Order erroneously prevents Plaintiffs from obtaining third-party discovery regarding one of the central defenses raised by Defendants SunTrust Bank and Truist Bank (collectively, "SunTrust"): whether Plaintiffs can prove that Virgo Investment Group, LLC ("VIG") and its affiliates (collectively, "Virgo") were the alter ego and/or principal of their subsidiary, Calrissian LP ("Calrissian"). The November 13 Order granted VIG's requests for protective orders as to Plaintiffs' subpoenas for documents relating to Virgo's relationship with Calrissian, instead ruling that "[w]hat the Virgo entities knew or did . . . is irrelevant" to Plaintiffs' contract claims against SunTrust. ECF No. 131 at 2-4. But SunTrust has injected the issue into this case. It asserted in its Amended Answer that Plaintiffs "must prove that . . . Virgo is the alter ego of Calrissian" to establish causation and damages. ECF No. 91 at 24; *see also id.* at 31-32. Plaintiffs will be prejudiced if they are denied discovery regarding Virgo's relationship with Calrissian—discovery that is relevant to the elements of alter ego—but then are required at trial to prove that Virgo was Calrissian's alter ego.

The November 13 Order further errs by suggesting that Plaintiffs' claims are barred by a bankruptcy court bar order. But the bar order in question does not reference this lawsuit or these claims. Instead, it bars Plaintiffs from pursuing causes of action or theories of recovery premised on Virgo being the alter ego of ***Our Alchemy, LLC ("Alchemy")*** in a state court action; it does not even concern ***Calrissian***. The bar order has no relevance here.

For these reasons, the Objection to the Order should be sustained.

## PRELIMINARY STATEMENT

Emigrant and PMB brought the present action for breach of contract against SunTrust based on its failure to comply with its contractual duties as the Administrative Agent in a syndicated loan agreement.  Specifically, when both the borrower (Alchemy) and the guarantor (Calrissian) defaulted on over $46 million in loans extended by Plaintiffs and SunTrust, Plaintiffs formally demanded that SunTrust bring a breach of contract suit against Virgo as the alter ego or principal of Calrissian.  SunTrust refused, demanding that Plaintiffs provide it with a full release of all known and unknown claims before it would take any action.  In at least two of its defenses, SunTrust has argued that to succeed on their claims, Plaintiffs must prove that Virgo is Calrissian's alter ego.  ECF No. 91 at 24, 31-32.

Soon after fact discovery began, Plaintiffs served targeted third-party subpoenas seeking documents relevant to whether Virgo was the alter ego of Calrissian.  These included subpoenas to VIG, Nu Image, Inc. ("Nu Image"), and Baker Tilly US LLP ("Baker Tilly").  These subpoenas sought documents relating to Virgo's formation of Calrissian, its domination and control of Calrissian, and its fraudulent and wrongful actions that caused Plaintiffs to lose tens of millions of dollars when Alchemy and Calrissian went bankrupt.

Each of these third parties have relevant documents that cannot be obtained elsewhere.  VIG created Calrissian to purchase Alchemy from Nu Image in 2014 and to guaranty the loans needed for the purchase.  Baker Tilly conducted due diligence into that transaction on behalf of VIG.  VIG wrongfully used Calrissian to siphon funds from Alchemy for the next two years, ultimately leaving both Alchemy and Calrissian insolvent and causing Plaintiffs to lose tens of millions of dollars.  Documents from VIG, Nu Image, and Baker Tilly will thus demonstrate Virgo's control and use of Calrissian to act for Virgo's benefit, Virgo's knowledge of Alchemy's

true finances when it chose to form and use Calrissian, and Virgo's mismanagement of Alchemy through Calrissian.

Nu Image and Baker Tilly were willing to produce the requested documents.  VIG, however, did not want Plaintiffs to obtain this discovery and filed pre-motion letters seeking protective orders to prohibit compliance with these subpoenas by the third parties.  ECF Nos. 80, 81, 85, 93, 118-20.  VIG also sought a protective order to avoid producing from its files the same categories sought from Baker Tilly and Nu Image.  ECF Nos. 97, 99.  At the same time, VIG refused to produce documents responsive to Plaintiffs' other requests.  On October 30, 2023, Plaintiffs filed a pre-motion letter to compel VIG to produce documents in response to the subpoena.  ECF No. 124.

Following a pre-motion conference on September 20, 2023, Magistrate Judge Wang issued the November 13 Order granting VIG's requests for protective orders and denying Plaintiffs' motion to compel, largely based on Magistrate Judge Wang's conclusion that "[w]hat the Virgo entities knew or did . . . is irrelevant to this claim" and "[w]hether the Virgo entities were in fact alter egos of Calrissian or Alchemy, is . . . of limited applicability here."  ECF. No. 131 at 4.  Magistrate Judge Wang further held that "[Plaintiffs'] third-party discovery here seems aimed to prove the very claims that they were told not to bring [by the Bankruptcy Court], and which the Calrissian and Alchemy Trustee – exercising his fiduciary duties – elected not to bring."  *Id*. at 5.

The November 13 Order is clearly erroneous and contrary to law for two main reasons. *First*, the November 13 Order erred in finding the documents sought by the subpoenas were irrelevant.  The requests at issue seek documents directly relevant to establishing that Virgo was the alter ego of Calrissian, which SunTrust has asserted Plaintiffs must prove to win this case.  If

the Court ultimately agrees with SunTrust and determines that Plaintiffs must establish that Virgo was Calrissian's alter ego, Plaintiffs should not be denied this critical discovery.

*Second*, the November 13 Order erred in finding this discovery was contrary to a bar order issued by the Delaware bankruptcy court and contrary to actions taken by the Alchemy and Calrissian trustees.  ECF No. 131 at 5.  The bar order only applies to theories of recovery in a specific state court action alleging that Virgo is the alter ego of ***Alchemy***, not Calrissian.  Ex. 1 (the "Alchemy Bar Order") at 2.  In other words, the bankruptcy court's bar order does *not* apply to Calrissian, this litigation, these claims, or this discovery.  There is no order barring Plaintiffs from pursuing discovery into whether Virgo was Calrissian's alter ego or asserting that Virgo was Calrissian's alter ego.  The November 13 Order also suggests that Plaintiffs' claims were considered and rejected by the Alchemy and Calrissian bankruptcy trustees, a suggestion that is unsupported by the record, irrelevant as a matter of law even if it were true, and inappropriate given that this is a discovery dispute governed by the broad standards of Federal Rule of Civil Procedure 26 and not a proceeding on the merits of Plaintiffs' case.

Plaintiffs respectfully request that their Objection to the November 13 Order be sustained.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     SunTrust Breaches The Credit Agreement

This action stems from an Amended and Restated Revolving Credit and Term Loan Agreement (the "Credit Agreement") entered into by Plaintiffs, Defendant SunTrust Bank, and non-party Preferred Bank (collectively, the "Lenders") in July 2015.  In the Credit Agreement, the Lenders established a $59.5 million loan facility for the borrower, a film and DVD

distribution company called Alchemy.   ¶ 2.[1]   Repayment of the loans was guaranteed in a Guaranty Agreement by Calrissian, a shell company created by Virgo to purchase Alchemy from another film company called Nu Image.  ¶¶ 3, 31.

As part of the original transaction, Virgo hired an accounting firm, Baker Tilly, to conduct due diligence as to Alchemy's finances.  Baker Tilly's draft report stated that Alchemy had a poor quality of earnings.  ¶ 28.  Virgo partner Mark Perez instructed Baker Tilly to remove that negative assessment from its final report, and Baker Tilly complied.  *Id*.  Neither the Baker Tilly report nor Virgo's manipulation of its due diligence findings were disclosed to the Lenders.

Alchemy declared bankruptcy within a year, largely due to Virgo's financial mismanagement and usurpation of Alchemy's assets.  ¶¶ 7, 9.  Calrissian and Virgo then refused to repay the loans under the Guaranty Agreement.  *Id*.  SunTrust, as Administrative Agent on behalf of the Lenders, brought suit against Calrissian in 2016, and Calrissian declared bankruptcy shortly thereafter.  SunTrust has not recovered any funds for the Lenders through that lawsuit.

In December 2019, Plaintiffs—as majority-stake Lenders—invoked their right under Section 8.1 of the Credit Agreement to demand that SunTrust sue VIG and its affiliates for breach of the Guaranty Agreement under an alter ego or agency theory.[2]  ¶ 10.  Despite unambiguous language in the Credit Agreement that SunTrust "***shall***" exercise all remedies in any of the "Loan Documents" and "exercise any other remedies available at law or in equity," SunTrust refused to comply unless Plaintiffs agreed to release SunTrust from all known and

---

[1]   Citations to ¶ __ are to the Amended Complaint (ECF No. 45).

[2]   Plaintiffs could not have pursued such a claim for breach of the Guaranty Agreement against Virgo themselves because SunTrust, as Administrative Agent, has the exclusive right to enforce the Guaranty Agreement.  *See* ECF No. 45-1 at § 9.13.

unknown claims for wrongful conduct.  ¶ 11.  Calrissian emerged from bankruptcy in January 2020, but SunTrust continued to refuse to take any action against VIG.

Plaintiffs then filed this lawsuit based on SunTrust's breach of the Credit Agreement. SunTrust filed a motion to dismiss, which the Court denied in part and granted in part on March 27, 2023.  ECF No. 65.

### B.      Virgo And Calrissian Engage In The Nu Image Arbitration

Nu Image commenced an arbitration in 2016 against Virgo and Calrissian for their failure to make certain post-closing payments (the "Nu Image Arbitration").  Virgo and Calrissian brought counterclaims, alleging that Nu Image misrepresented Alchemy's finances.  The hearing took place in 2016 and included testimony and exhibits from key witnesses at Virgo and Alchemy.  Virgo's Mark Perez, Alchemy's Controller (Rex Bowring), and Alchemy's CFO (John Avagliano) each testified regarding Virgo's purchase of Alchemy through Calrissian, Virgo's manipulation of the Baker Tilly report, and Alchemy's financial performance.  The arbitrator ruled in Nu Image's favor, finding that Virgo knew about Alchemy's poor finances. The exhibits, expert reports, and transcripts from the Nu Image Arbitration are highly relevant to SunTrust's defenses in this lawsuit, since these documents contain evidence regarding Virgo's misuse of Calrissian.

### C.      Plaintiffs Pursue Fraud Claims Against Virgo In State Court

Although Plaintiffs lacked standing to sue Virgo for breach of the Guaranty Agreement, Plaintiffs brought claims against Virgo for fraud in New York state court.  *Emigrant Bank and Pacific Mercantile Bank v. Virgo Investment Group LLC, et al.*, Index. No. 65450/2021 (N.Y. Sup. Ct.) (the "State Court Litigation").  The New York Supreme Court issued an order dismissing the Virgo Action on the basis that only SunTrust has standing to bring suit against Virgo.  *See* ECF No. 57.  That order is on appeal.

### D. The Alchemy Bankruptcy Does Not Bar Any Claim That Virgo Is Calrissian's Alter Ego

As part of the Alchemy bankruptcy, the Alchemy Trustee initiated an adversary proceeding[3] against Virgo, alleging that Virgo improperly transferred approximately $14 million from Alchemy to itself through Calrissian, leaving Alchemy insolvent.  ECF No. 119-10 (Trustee Action Complaint) at ¶ 208(a).

The Alchemy Trustee and Virgo settled the adversary proceeding.  As part of that settlement, Virgo required the Alchemy Trustee to move for an order under the automatic stay provisions of 11 U.S.C. § 362, barring claims in the State Court Litigation based on allegations that Virgo was the alter ego of Alchemy.  Virgo asserted that Plaintiffs had alleged Virgo was the alter ego of Alchemy in the State Court Litigation, and that any alter ego claim was the property of the Alchemy Trustee, who had exclusive standing to bring the claim.  In fact, Plaintiffs were not seeking any recovery from Virgo based on its status as the alter ego of Alchemy.  Instead, Plaintiffs sought recovery based on Virgo's direct fraudulent misrepresentations to Plaintiffs.

The Bankruptcy Court did not bar or stay any claim in the State Court Litigation.  Rather, it entered what it later described as "limited and specific relief"[4] that Plaintiffs "may not pursue causes of action or theories of recovery in the State Court Litigation against a party on the basis that that party was the alter ego of Debtors (***Our Alchemy, LLC and Anderson Digital, LLC***, collectively the Debtors)."  Ex. 1 (Alchemy Bar Order) at 2 (emphasis added).  The Bankruptcy Court did not find that Plaintiffs had pursued such a claim in the State Court Litigation or had violated any stay.  *Id.*

---

[3]   *Miller v. ANConnect, LLC et al.*, Adv. Pro. No. 18-50633-JTD (Bankr. D. Del.) (the "Trustee Action").

[4]   Ex. 2 (Feb. 22, 2023 Order in Trustee Action) at 1.

At the hearing on the Alchemy Trustee's motion, the Bankruptcy Court made it clear that it was not barring Plaintiffs from pursuing the State Court Litigation, stating:  "I'm not going to bar [Plaintiffs] from pursuing the complaint."  *See* Ex. 3 (Sept. 21, 2022 Trustee Action Hearing Transcript) at 69:1-2.  The Bankruptcy Court entered an order only that Plaintiffs may not bring claims based on Virgo's status as the alter ego of ***Alchemy***; it did not find a violation of the automatic stay, and it did not bar any claim that Virgo is the alter ego of ***Calrissian***. Ex. 1 at 2.

### E.   SunTrust Asserts That Plaintiffs Must, But Cannot, Prove Virgo Is Calrissian's Alter Ego

SunTrust has raised multiple defenses stating that Plaintiffs cannot establish damages or proximate causation unless they prove that Virgo is Calrissian's alter ego.   ECF No. 91 (SunTrust's Amended Answer) at 24 ("Plaintiffs' claims are barred or limited by their inability to establish injury or damages" because "Plaintiffs must prove that . . . Virgo is the alter ego of Calrissian [but] Plaintiffs lack sufficient evidence to make that showing."); *see also id*. at 31 ("Plaintiffs also cannot show the Truist's alleged actions or omission were the proximate cause of any losses or damages").[5]  Thus, whether Plaintiffs have sufficient evidence to show that Virgo was the alter ego of Calrissian is critical.  Plaintiffs sought this discovery by, *inter alia*, issuing timely subpoenas in May 2023 to VIG, Nu Image, and Baker Tilly.

### F.   VIG Seeks To Block Plaintiffs' Subpoenas Regarding Nu Image And Baker Tilly

Plaintiffs issued a document subpoena to Nu Image seeking hearing transcripts, exhibits, and expert reports, among other things, from the Nu Image Arbitration.   Ex. 5.   These documents, arising from the same transactions at issue here, are relevant to Virgo's control over

---

[5]    SunTrust also asserted at a status conference that Plaintiffs must prove that Virgo is Calrissian's alter ego.  Ex. 4 (Oct. 26, 2023 Conference Transcript) at 24:09-11.  And in response to Magistrate Judge Wang's ruling (*see infra* at 13), SunTrust still argues that Plaintiffs must prove that Virgo was Calrissian's alter ego.  ECF No. 136 at 5 n.7.

Calrissian, Virgo's knowledge of Alchemy's finances when it used Calrissian as the guarantor and to siphon funds, and Virgo's misrepresentations made to induce the lenders to lend money to Alchemy, which Virgo usurped through Calrissian.

While the November 13 Order states that Plaintiffs are seeking "confidential arbitration documents" (ECF. No. 131 at 2), the documents concern a transaction between two bankrupt companies almost ten years ago, and many other documents from the Nu Image Arbitration have been produced in this litigation, including the pleadings, Nu Image's document production, the arbitrator's ruling, and a draft settlement agreement. Nu Image was willing to produce the other arbitration documents sought by Plaintiffs, but VIG sought a protective order to quash the subpoena. ECF No. 80; *see also* ECF No. 81 (Plaintiffs' response letter).

Plaintiffs issued a document subpoena to Baker Tilly seeking two Baker Tilly due diligence reports and communications with Virgo regarding these reports. Ex. 6. As explained above, Virgo's Mark Perez instructed Baker Tilly to delete negative comments in the draft report regarding Alchemy's earnings. These reports, and the communications regarding them, are relevant to Virgo's knowledge of Alchemy's finances, which it concealed from the Lenders when it induced them to enter into the Credit Agreement. Baker Tilly has not retained its communications with Virgo, but it was willing to produce its draft and final due diligence reports. VIG, however, sought a protective order prohibiting Baker Tilly from producing these two documents. ECF Nos. 85; *see also* ECF No. 93 (Plaintiffs' response letter).

Plaintiffs also issued a document subpoena to VIG seeking various categories of documents. Ex. 7. VIG filed a pre-motion letter seeking a protective order as to Request Nos. 19(b) and 22 in VIG Subpoena, which sought documents related to the Nu Image Arbitration and Baker Tilly. ECF No. 97. The three related disputes were referred to Magistrate

Judge Wang and scheduled for hearing on September 20, 2023.  ECF Nos. 98, 107.  A transcript

of that hearing is attached as Exhibit 8.  On September 29, 2023, the parties submitted

supplemental briefing pursuant to Magistrate Judge Wang's request, in which Plaintiffs narrowed

their requests and addressed Magistrate Judge Wang's stated concerns.  ECF Nos. 118-20.[6]

### G.    VIG Refuses To Comply With Plaintiffs' Subpoena

Plaintiffs' subpoena to VIG sought other categories of documents related to VIG's

relationship with Calrissian and its use or abuse of Calrissian's corporate form.  Since May,

Plaintiffs and VIG have participated in multiple meet and confers and have exchanged numerous

letters.[7]  While VIG complained that the document subpoena is too burdensome, Plaintiffs have

stated repeatedly that they are "willing to discuss reasonable limitations on specific document

requests, as well as other reasonable means to limit [VIG's] burden," such as search terms and

custodians.  *See* ECF No. 124-3 at 2.  VIG has not accepted any of these offers.

Instead, VIG made four meager document productions consisting of two categories of

documents:  (i) a re-production of documents that VIG produced in the Trustee Action; and (ii) a

small set of Calrissian's founding documents, financial records, and bankruptcy filings.

Plaintiffs' review of VIG's productions was delayed for over six weeks because VIG's initial

productions had severe technical defects.  VIG did not reproduce its documents in a usable

format until mid-August.  *See* ECF No. 124-6.

Plaintiffs' review identified several categories of documents that were missing entirely or

not fully produced.  ECF Nos. 124-7, 124-9, 124-11.  For example, VIG produced *no* internal

---

[6]   The relevant subpoenas are attached hereto, with attachments excluded for ease of review.  Ex. 5 ("Nu Image Subpoena"); Ex. 6 ("Baker Tilly Subpoena"); Ex. 7 ("VIG Subpoena").

[7]   The letters reflecting Plaintiffs' negotiations with VIG can be found at ECF Nos. 124-2–11.

communications pre-dating Calrissian's purchase of Alchemy on August 18, 2014, *no* emails at all predating August 1, 2014, only 69 internal communications ***total*** across a multiyear period thereafter, and *no* documents relating to the Nu Image Arbitration or the Baker Tilly reports. VIG's production thus excludes a significant portion of documents that relate to the formation and capitalization of Calrissian, Virgo's due diligence regarding Alchemy, its knowledge of Alchemy's finances, and its control of Calrissian and Alchemy, which it owned through Calrissian.  VIG has not denied that it has such documents; its only explanation for these failures to produce them is that producing additional documents would be burdensome.

Once it was clear that VIG was engaging in delay tactics and would not produce the responsive documents at issue, Plaintiffs filed their letter motion seeking to compel VIG to produce the documents.  ECF. No. 124.  Although Plaintiffs' letter motion included the two requests relating to Nu Image and Baker Tilly (Request Nos. 19(b) & 22), the letter motion primarily focused on fifteen requests in the subpoena that were not pending before Magistrate Judge Wang.  VIG has acknowledged that these requests were excluded from the issues previously briefed before the Court.  *See, e.g.*, ECF No. 97 at 2 ("the parties continue to discuss, and have not yet reached impasse, on the remaining 20 VIG Subpoena Requests").

### H.    Magistrate Judge Wang Issues The October 30 Order

Approximately one hour after Plaintiffs filed their pre-motion letter to compel VIG to produce documents, Magistrate Judge Wang denied it as "moot," holding that it involved "the same subpoenas and the same dispute" as VIG's prior requests.  ECF No. 125 (the "October 30 Order").  Magistrate Judge Wang did not address the fifteen requests at issue in Plaintiffs' letter motion that were not already pending before the Court.  Plaintiffs objected to the October 30 Order, given that the disputes then pending before Judge Wang did not encompass the fifteen additional requests at issue in the letter motion.  ECF No. 132.

11

## I.      Magistrate Judge Wang Issues The November 13 Order

In the November 13 Order, Magistrate Judge Wang granted VIG's motions for protective orders as to the Baker Tilly, Nu Image, and VIG Subpoenas.  ECF No. 131.  Specifically, Magistrate Judge Wang held that the subpoenas sought documents that were not relevant or proportional to the needs of the case because "[w]hat the Virgo entities knew or did . . . is irrelevant to this claim" (*id*. at 4), and "[w]hether the Virgo entities were in fact alter egos of Calrissian or Alchemy, is also of limited applicability here" (*id.* at 4 n.2).  The November 13 Order concluded that discovery into whether Virgo is the alter ego of Calrissian is irrelevant, even though it is one of SunTrust's central defenses, and Plaintiffs have no other means to obtain the documents.

The November 13 Order also denied Plaintiffs' motion to compel further compliance with the VIG Subpoena based on Magistrate Judge Wang's ruling that evidence of alter ego is irrelevant and based on the Alchemy Bar Order.  ECF No. 131 at 5.  As discussed above, the Alchemy Bar Order prohibited Plaintiffs from pursuing claims premised on a theory that any entity was the alter ego of ***Alchemy*** (*see supra* at 7-8); in this case, Plaintiffs demanded that SunTrust pursue claims against Virgo on the theory that it was the alter ego of ***Calrissian***.

Plaintiffs have also issued subpoenas for the depositions of VIG and three VIG officers.  Plaintiffs intended to conduct these depositions after VIG had produced the relevant documents to be used during the depositions.  When VIG failed to do so, Plaintiffs served the subpoenas in time to comply with the third-party discovery cutoff of December 7, 2023.  VIG has moved to quash these subpoenas.  ECF Nos. 133, 135.

## STANDARD OF REVIEW

When a party timely objects to a magistrate judge's order regarding a non-dispositive discovery matter, the district court "must consider timely objections and modify or set aside any

part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "The magistrate judge's findings may be considered 'clearly erroneous' when 'on the entire evidence, the district court is left with the definite and firm conviction that a mistake has been committed.'" *Bromfield v. Bronx Lebanon Special Care Ctr., Inc.*, 2020 WL 495460, at *1 (S.D.N.Y. Jan. 30, 2020) (citation omitted). "An order is 'contrary to law' when it 'fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *Id.* (citation omitted); *see also Roche Freedman LLP v. Cyrulnik*, 2022 WL 17157670, at *1 (S.D.N.Y. Nov. 22, 2022) (sustaining objection to magistrate judge's order quashing a subpoena).

## ARGUMENT

### I.   THE NOVEMBER 13 ORDER CLEARLY ERRED IN HOLDING THE DISCOVERY SOUGHT IS NOT RELEVANT OR PROPORTIONAL

The November 13 Order granted VIG's motions for protective orders based in part on a determination that the subpoenas seek irrelevant documents not proportional to the needs of the case. ECF No. 131 at 2-5. This holding is clearly erroneous and contrary to law because (i) the documents are relevant to Plaintiffs' allegations and SunTrust's defenses, and (ii) the November 13 Order does not identify any plausible basis to find that this limited discovery is not proportional. Plaintiffs are entitled to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1) (listing proportionality factors). "Relevance is . . . to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Hoxhaj v. Michael Cetta, Inc.*, 2022 WL 1664963, at *1 (S.D.N.Y. May 25, 2022) (citation and quotations omitted). The documents sought by Plaintiffs plainly meet "the relatively low bar of relevance imposed by Rule 401 of the Federal Rules of Evidence." *Roche Freedman*, 2022 WL 17157670, at *1 (internal quotation marks omitted).

A.    **SunTrust Has Raised The Defense That Plaintiffs Must—But Cannot—Prove Virgo Is Calrissian's Alter Ego**

The November 13 Order holds that discovery into whether Calrissian and Virgo were alter egos is not relevant to Plaintiffs' claims that SunTrust breached the Credit Agreement when it failed to sue Virgo.[8] Specifically, Magistrate Judge Wang ruled that "[w]hat the Virgo entities knew or did . . . is irrelevant to this claim" (ECF No. 131 at 4), and "[w]hether the Virgo entities were in fact alter egos of Calrissian or Alchemy, is also of limited applicability here" (*id.* at 4 n.2).

This ruling is at odds with SunTrust's defenses—set forth in its Amended Answer—that Plaintiffs cannot prove damages or causation because "Plaintiffs must prove that . . . Virgo is the alter ego of Calrissian" but "Plaintiffs lack sufficient evidence to make that showing." *E.g.*, ECF No. 91 (SunTrust's Amended Answer) at 24, 31; *see also supra* at 8. In recent filings, SunTrust continues to argue that "Plaintiffs' claims do require Plaintiffs to prove Truist would have successfully established that specific [Virgo] entities were Calrissian's alter ego . . . ." ECF No. 136 at 5 n.7. SunTrust's defense seeks to create a "case within a case" where, to establish damages, Plaintiffs may need to prove that the underlying claim against Virgo would have succeeded in a hypothetical lawsuit if SunTrust brought it.

The November 13 Order—and the potential of an inconsistent ruling by the Court—poses a significant risk of prejudice to Plaintiffs. The Court has not determined whether SunTrust's defense is valid. If the Court agrees with SunTrust that Plaintiffs must prove that Virgo is the

---

[8]   Magistrate Judge Wang held that Plaintiffs' claims center on "whether SunTrust was contractually obligated to pursue a claim against the Virgo parties that some subset of them were alter egos of Calrissian and/or Alchemy, without requiring they be indemnified for costs, and whether SunTrust's refusal to do so was within its discretion under the Credit Agreement." ECF No. 131 at 4. In fact, Plaintiffs' claim is *not* premised on any allegation that Virgo was the alter ego of Alchemy, but rather only on allegations that Virgo was liable for **Calrissian's** breach of the Guaranty Agreement as its alter ego. *E.g.* ¶ 10.

alter ego of Calrissian, but Plaintiffs are denied discovery on that issue, Plaintiffs will be severely prejudiced.  Evidence of alter ego cannot be irrelevant for purposes of discovery but relevant at trial.

Accordingly, Plaintiffs respectfully request that in conjunction with the resolution of this Objection, the Court determine whether SunTrust is correct that Plaintiffs "must prove that . . . Virgo is the alter ego of Calrissian" (ECF No. 91 at 24) or, in contrast, whether Magistrate Judge Wang is correct that the alter ego issue is irrelevant, and this case is, as the Court stated, simply "a dispute about what the language in the parties' agreements means."  *See* ECF No. 131 at 3-4 (quoting ECF No. 127 at 22).  Plaintiffs are willing to provide additional briefing on this issue if the Court requests.  If the Court would prefer to defer this determination until a later date, it should sustain this Objection and permit this third-party discovery now.

If Plaintiffs must prove that Virgo is Calrissian's alter ego, then Plaintiffs must be allowed discovery regarding that alter ego claim.  The elements of an alter ego claim are that Virgo (i) had control over Calrissian, and (ii) used that control to commit a fraud or other wrong.  *See In re Adler, Coleman Clearing Corp.*, 469 F. Supp. 2d 112, 117 (S.D.N.Y. 2007).  In evaluating control, courts consider factors like corporate formalities, capitalization, overlap in ownership and management, and whether the related corporations deal at arm's length.  *See N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014).  As discussed in more detail below, the subpoenas at issue seek documents relevant to these factors, and there is simply no substitute for third-party discovery to prove this underlying claim.

**B.     The VIG Subpoena Seeks Relevant Documents**

The document requests in the VIG Subpoena (the "Requests") seek documents that are directly relevant to the allegations and defenses in this case.  The November 13 Order erred in granting VIG's motion for a protective order and denying Plaintiffs' motion to compel.

*First*, the November 13 Order includes ***no discussion*** of the fifteen Requests that were not at issue in VIG's motions for protective orders related to Baker Tilly or the Nu Image Arbitration (ECF No. 124).   Specifically, Plaintiffs moved to compel the production of documents responsive to Requests 1-2, 4-6, 8-12, 14, 16-17, 19,[9] and 21.   These Requests are central to the underlying alter ego claim, which SunTrust has placed squarely at issue:

- **The formation, capitalization, finances, and management of Calrissian** (Request Nos. 1-2, 4, 6):  These Requests are relevant to Virgo's formation of Calrissian, including its purpose for doing so, whether Virgo properly capitalized Calrissian, whether Calrissian had any independent operations, and Virgo's management and control of Calrissian.

- **Virgo's management of Alchemy, which it owned through Calrissian** (Request No. 5):  This Request is relevant to demonstrating that Virgo operated Alchemy directly because Calrissian had no independent operations outside of Virgo's operations and that Virgo was aware of Alchemy's financial issues and concealed them or misrepresented them to the Lenders.

- **Distributions, payments, or transfers among Alchemy, Calrissian, and Virgo entities** (Request No. 8):  This Request seeks internal Virgo communications regarding transfers of funds among Alchemy, Calrissian, and Virgo entities, which will go directly to Virgo's control over and use of Calrissian.  This Request is particularly relevant because Virgo caused Alchemy to draw funds from the Lenders and then transfer those funds through Calrissian to Virgo entities.

- **The relevant contracts at issue in this litigation (**Request Nos. 9-11, 14):  These Requests seek documents showing Virgo's internal discussions regarding the loans to Alchemy and Calrissian's role as guarantor, among other things.

- **Due diligence conducted prior to Virgo's acquisition of Alchemy through Calrissian** (Request Nos. 12, 19):  These Requests are relevant to whether Virgo knew about Alchemy's financial problems and failed to disclose them or misrepresented them to the Lenders.  This would contribute to showing a wrongful use of Calrissian.

- **Virgo's termination of Alchemy's CEO and CFO** (Request Nos. 16, 17): These Requests relate further to Virgo's management of Alchemy (which it only owned through Calrissian), as well as how and when Virgo learned of Alchemy's significant financial issues.

---

[9]   While subpart (b) of Request No. 19 relates to Baker Tilly, the remaining subparts do not and were not moved on by VIG.

- **Calrissian's bankruptcy** (Request No. 21): Documents related to Calrissian's decision to file for bankruptcy will show the degree of control that Virgo had over Calrissian as well as Calrissian's inadequate capitalization.

The November 13 Order does not explain why these fifteen Requests are irrelevant, disproportionate, or otherwise improper.

*Second*, Requests 19(b) and 22, which VIG moved to quash (ECF No. 97), seek relevant documents relating to the Baker Tilly reports and the Nu Image Arbitration. These documents are relevant for the reasons articulated above and below. *See supra at* 8-10*; see infra* at § I(C)-(D). Nor are these requests burdensome: Baker Tilly and Nu Image are willing to produce the Baker Tilly reports and the Nu Image Arbitration documents. Request 19(b) in the VIG Subpoena also seeks VIG's communications related to due diligence by Baker Tilly, which may reflect the instruction by Virgo's Mark Perez to change the report. Because Baker Tilly has stated that it did not preserve its communications with Virgo, the Baker Tilly-VIG communications—and VIG's internal communications regarding Baker Tilly—can only be obtained from VIG.

*Third*, rather than discussing the relevance or proportionality of the specific Requests, the November 13 Order concludes that Plaintiffs' motion to compel regarding the VIG Subpoena should be denied because "Plaintiffs are effectively pursuing the litigation that the Bankruptcy Court barred them from pursuing in state court." ECF No. 131 at 4. This ruling was in error and contrary to law for several reasons, as discussed below. *See infra* at § II(A).

The November 13 Order's ruling that VIG need not produce documents responsive to the VIG Subpoena was clearly erroneous and contrary to law, as these Requests all seek documents relevant to SunTrust's defense that to prove damages and causation, Plaintiffs must, but cannot, prove that Virgo was Calrissian's alter ego. *See City of New York v. FedEx Ground Package Sys., Inc.*, 2017 WL 633445, at *4-5 (S.D.N.Y. Feb. 14, 2017) (sustaining objection and

permitting discovery relevant to affirmative defense); *GE Healthcare Bio-Sciences AB v. Bio-Rad Lab., Inc.*, 2015 WL 7582967, at *2 (S.D.N.Y. Nov. 25, 2015) (sustaining objection and permitting discovery relevant to damages); *Roche Freedman*, 2022 WL 17157670, at *1 (sustaining objection and permitting discovery on relevance grounds); *see also Safe Step Walk-in Tub Co. v. CKH Industries, Inc.*, 2023 WL 1383678, at *2 (S.D.N.Y. Jan. 31, 2023) (similar).

### C.    The Baker Tilly Subpoena Seeks Relevant Documents

Plaintiffs seek two due diligence reports from Baker Tilly, and Baker Tilly is willing to produce them.  The November 13 Order erred in determining these documents are irrelevant or that their voluntary production by Baker Tilly is "not . . . proportional to the needs of this case." ECF No. 131 at 2.

*First*, as a threshold matter, the November 13 Order clearly erred in considering VIG's relevance objections to the Baker Tilly Subpoena, as VIG has no standing to object to the subpoena on relevance grounds.  *See, e.g., U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co.*, 2012 WL 5395249, at *2 (S.D.N.Y. Nov. 5, 2012) ("A party lacks standing to challenge, on grounds of relevance or burden, a subpoena served on a non-party"); *Somaxon Pharma. Inc. v. Actavis Elizabeth LLC*, 2022 WL 3577904, at *2 (S.D.N.Y. Aug. 18, 2022) (standing is a threshold issue in resolving a motion to quash).

*Second*, even if VIG had standing to object on relevance grounds to the Baker Tilly Subpoena, the Baker Tilly reports are highly relevant.  As described above (*see supra* at 9), prior to Virgo's acquisition of Alchemy via Calrissian, Virgo engaged Baker Tilly to conduct due diligence regarding Alchemy's finances.  Baker Tilly issued a draft report stating that Alchemy had a poor quality of earnings and that its financial reports were misleading.  Virgo's Mark Perez caused Baker Tilly to revise these findings in its final report.  Baker Tilly's draft and final reports are therefore relevant to (i) Virgo's knowledge of Alchemy's finances, and (ii) its strategy of

misleading the Lenders into committing millions of dollars to fund the purchase of Alchemy based on a guaranty from Calrissian.

*Third*, the November 13 Order erroneously ruled that "any evidence that VIG was Calrissian's alter ego (or that VIG hid that alleged fact) – even if relevant or necessary to <u>this</u> case – would not be found in Alchemy's data room or Baker Tilly's analysis of Alchemy documents."  ECF No. 131 at 2 (emphasis in original).  This dispute does not involve the documents in Alchemy's "data room"; instead, it involves Baker Tilly's findings that were purposely altered by Virgo.  The arbitrator in the Nu Image Arbitration determined that these documents were highly relevant to Virgo's knowledge of Alchemy's finances during the Alchemy purchase.  These documents are therefore relevant to Virgo's misrepresentations to the Lenders regarding Alchemy's finances and Virgo's motives when it used Calrissian for the wrongful purpose of guaranteeing loans Virgo knew neither Alchemy nor Calrissian would pay back.  Plaintiffs are entitled to this discovery.

*Fourth*, Baker Tilly's production of the draft and final report is not disproportionate to the needs of the case.  Plaintiffs have greatly narrowed the scope of the subpoena, to the point where Baker Tilly need only produce **two** documents.  *See* ECF No. 118 at 5.  Baker Tilly is willing to produce those documents.  *See id*.  Given the lack of any burden, the November 13 Order clearly erred in finding that production of the Baker Tilly reports are "not proportional to the needs of this case."

*Fifth*, the November 13 Order erred in holding that the Baker Tilly report was premised on the same documents available to the Lenders.  The Order states that "[i]t is undisputed that all the parties, Baker Tilly, and the Virgo Parties had access to the same data room containing Alchemy's documents" and that the documents Baker Tilly reviewed "were available to all

parties." ECF No. 131 at 2.  But it has not been established that the Lenders had access to the same documents as Baker Tilly,[10] and Plaintiffs have not seen the Baker Tilly reports.  Even if the data room documents were accessible to Plaintiffs, the Baker Tilly reports were not, and therefore the reports should be produced, as they are directly relevant to Virgo's knowledge when it used Calrissian to guarantee the loans and siphon funds.

The Objection should be sustained because the Baker Tilly reports are relevant to SunTrust's defenses, and the November 13 Order errs in finding the production of these two documents to be disproportionate.  *See, e.g.*, *City of New York*, 2017 WL 633445, at *4-5 (sustaining objection and permitting discovery relevant to affirmative defense); *see also GE Healthcare Bio-Sciences*, 2015 WL 7582967, at *2; *Roche Freedman*, 2022 WL 17157670, at *1 (sustaining objection to order quashing subpoena where testimony sought was relevant to claim).

### D.      The Nu Image Subpoena Seeks Relevant Documents

The Nu Image Arbitration centered on the same transactions and witnesses at issue in this action, and Plaintiffs' requests for rulings, transcripts, expert reports, filings, and exhibits from the arbitration—which Nu Image is willing to produce—are relevant and proportional to the needs of this action.

*First*, the requested documents are relevant since they provide unique evidence regarding (i) Virgo's control over Calrissian in the purchase of Alchemy; (ii) Virgo's knowledge of Alchemy's finances when it formed Calrissian to guarantee the loans; and (iii) Virgo's knowledge of Alchemy's finances when it caused Alchemy to draw on the loan and transfer the funds to Virgo via Calrissian.  All of this evidence goes to the alter ego claim.  *See City of New York*, 2017 WL 633445, at *4-5 (sustaining objection and permitting discovery relevant to

---

[10]  Ex. 8 at 31:08-17.  This is particularly true for Emigrant Bank, which entered into the loan a year later.

affirmative defense); *GE Healthcare Bio-Sciences*, 2015 WL 7582967, at \*2 (similar); *Roche Freedman*, 2022 WL 17157670, at \*1 (similar).  This evidence is particularly important where, as here, the underlying events occurred nine years ago.  The transcripts from key witnesses such as Mark Perez of Virgo and Alchemy's controller (Rex Bowring) and Chief Financial Officer (John Avagliano), will provide indispensable evidence given that the arbitration occurred in 2016, and memories may have faded over the subsequent seven years.

*Second*, contrary to the November 13 Order, the production of the Nu Image Arbitration documents would be proportional to the needs of the case.  Plaintiffs are seeking the filings, rulings, transcripts, expert reports, and exhibits from the arbitration.  Nu Image is willing to produce these documents, so the burden is minimal.

*Third*, the November 13 Order implicitly expresses concern that the Nu Image Arbitration was confidential.  ECF No. 131 at 2-3.  But neither VIG nor the November 13 Order has articulated why the Protective Order in this action (ECF No. 75) is not sufficient to protect the confidentiality, if any, of documents from a seven year-old arbitration, concerning a nine-year-old transaction, involving a company that has been in bankruptcy for seven years.[11]  This is particularly true considering several documents from the Nu Image Arbitration, including the pleadings, documents produced by Calrissian, an interim ruling, and a draft settlement agreement, already have been produced in this action.  ECF No. 118 at 5.

---

[11]  VIG cannot rely on a protective order to which Plaintiffs and SunTrust are not parties to bar discovery.  *See Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 665 (7th Cir. 2009) ("Contracts bind only the parties. No one can 'agree' with someone else that a stranger's resort to discovery under the Federal Rules of Civil Procedure will be cut off."); *see also Tribune Co. v. Purcigliotti*, 1996 WL 337277, at \*3 (S.D.N.Y. June 19, 1996) (similar).

## II.    THE NOVEMBER 13 ORDER'S SUGGESTION THAT PLAINTIFFS ARE BARRED FROM THIS DISCOVERY IS CLEAR ERROR AND CONTRARY TO LAW

In addition to erroneously finding that the subpoenas seek irrelevant documents, the November 13 Order ruled that "the third-party discovery sought should not be compelled in light of the tortured litigation history among these parties and non-parties."  ECF No. 131 at 3.  But the November 13 Order provides no explanation of how the litigation history would prohibit discovery relevant to Plaintiffs' claims and SunTrust's defenses now that Plaintiffs' Complaint has survived SunTrust's motions to dismiss.  Instead, the November 13 Order states that Plaintiffs' subpoenas are contrary to a bar order issued by the Alchemy Bankruptcy Court.  This is further error, since the bar order in question has no relevance to this lawsuit or this discovery.

### A.    The Alchemy Bar Order Does Not Prohibit Plaintiffs From Seeking Discovery In This Action

The November 13 Order finds that VIG is entitled to a protective order because "Plaintiffs are effectively pursuing the litigation that the Bankruptcy Court barred them from pursuing in state court" (ECF No. 131 at 4), and Plaintiffs' subpoenas are "aimed to prove the very claims that they were told not to bring" (*id.* at 5).  That ruling is clear error because the Alchemy Bar Order has nothing to do with a claim that Virgo is the alter ego of Calrissian or the discovery at issue here.

As discussed above (*see supra* at 7-8), and as acknowledged by the November 13 Order,[12] the Alchemy Bar Order only prohibits Plaintiffs from pursuing "***causes of action or theories of recovery in the State Court Litigation*** against a party on the basis that that party was

_____

[12]    ECF No. 131 at 3 ("the Alchemy Trustee successfully obtained a bar order in the Alchemy bankruptcy that directs that Plaintiffs 'may not pursue causes of action or theories of recovery in the State Court Litigation against a [Virgo] party on the basis that that party was the alter ego of" ***Alchemy***.") (emphasis added).

**the alter ego of the Debtors (Our Alchemy, LLC and Anderson Digital, LLC, collectively the Debtors)**." Ex. 1 at 2 (emphasis added).[13]  The Alchemy Bar Order makes no mention of this litigation or Virgo's status as the alter ego of **Calrissian**, and therefore does not bar the discovery at issue here.

During the September 20, 2023 hearing on VIG's motions, Magistrate Judge Wang suggested that while the Alchemy Bar Order "may not be technically binding in this case," it may still "operate as some form of estoppel or laches or some kind of preclusion."  Ex. 8 at 27:04-10.  But affirmative defenses like estoppel or laches do not preclude discovery.  *See S.E.C. v. Finazzo*, 360 F. App'x 169, 171-72 (2d Cir. 2009) (affirmative defenses like laches do not preclude discovery); *In re Rule 45 Subpoena Issued to JP Morgan Chase Bank, N.A.*, 319 F.R.D. 132, 135 (S.D.N.Y. Dec. 9, 2016) (third party's objection that documents could have been sought through other means was "not persuasive on the merits").  Plaintiffs are unaware of any authority to support a denial of discovery based on estoppel, laches, or any other theory of preclusion in similar circumstances.  The November 13 Order erred in quashing Plaintiffs' discovery on the basis of the Alchemy Bar Order.

## B.   The November 13 Order's Statements Regarding Standing Do Not Support A Protective Order

The November 13 Order further observes that "[t]hrough the coordinated efforts with these third-party subpoenas, Plaintiffs are effectively pursuing the litigation . . . which SunTrust refused to pursue on their behalf" (ECF No. 131 at 4) and that "Plaintiffs' claims here seem to be an acknowledgement that they indeed lacked standing to pursue alter ego claims against the

---

[13]   It is also worth noting that the Order also erred in stating that in the State Court Litigation, Plaintiffs sued Virgo for "damages arising from the same disputes settled in the trustee action."  Order at 3 n.1.  The Trustee Action revolved around certain fraudulent transfers made by Virgo, while the State Court Litigation centered on fraudulent misrepresentations and omissions made by Virgo to the lenders.

Virgo parties" (*id.* at 5).  Plaintiffs have always acknowledged that they did not have standing to

sue Virgo for breach of the Guaranty Agreement; this is why Plaintiffs demanded that SunTrust

file such a lawsuit under Section 8.1 of the Credit Agreement.  *See supra* at 4-6.  The November

13 Order suggests it is problematic that Plaintiffs are seeking discovery into the claims "which

SunTrust refused to pursue on their behalf" (ECF No. 131 at 4), but that is precisely the point of

this discovery.  SunTrust has argued in its Amended Answer that the underlying claim against

Virgo would not have been successful, and thus Plaintiffs cannot prove damages.  ECF No. 91 at

24, 31.  Plaintiffs thus seek this discovery to counter SunTrust's defense and show that such a

claim would have been successful.

### C.   The Actions Of The Calrissian And Alchemy Trustees Have No Bearing On The Relevance Or Proportionality Of Plaintiffs' Discovery

In addition to its ruling that Plaintiffs may be barred from pursuing discovery aimed at

the underlying alter ego claim, the November 13 Order repeatedly notes that "[n]either the

Calrissian nor the Alchemy Trustee, exercising his fiduciary duties, pursued recovery from the

Virgo parties beyond the Alchemy settlement."  ECF No. 131 at 4; *see also id.* at n.2 (similar),

*id.* at 5 ("the Calrissian and Alchemy Trustee – exercising his fiduciary duties – elected not to

bring" the underlying alter ego claim against Virgo).

But the November 13 Order provides no explanation or case law suggesting that

Plaintiffs would be barred from seeking the discovery at issue just because the trustees in the

bankruptcies chose not to pursue certain claims against Virgo.  To be clear, ***there has been no***

***ruling by any bankruptcy court that a claim against Virgo as Calrissian's alter ego for breach***

***of the Guaranty Agreement would be meritless or barred***.  And there is no evidence concerning

the trustees' reasons not to pursue claims against Virgo; it may be that the trustees simply did not

have the resources to do so.  In any event, Plaintiffs' case rests on allegations that SunTrust

breached the Credit Agreement by failing to bring a claim against Virgo after Plaintiffs' request to do so in December 2019.  The reasoning of the Alchemy or Calrissian trustees for their action or inaction is not in the record, is irrelevant as a matter of law, and should not be cited to justify denying Plaintiffs this relevant discovery.

## **CONCLUSION**

In the November 13 Order, Magistrate Judge Wang finds that Plaintiffs' discovery concerning the alter ego relationship between Virgo and Calrissian is irrelevant.  However, SunTrust has raised as a key defense that Plaintiffs must, but cannot, prove that Virgo was Calrissian's alter ego.  Evidence of alter ego cannot be irrelevant for discovery but relevant at trial.  Therefore, Plaintiffs respectfully request that the Court sustain their objection to the November 13 Order or, in the alternative, find that Plaintiffs need not prove that Virgo is Calrissian's alter ego at trial.

Dated: New York, New York
       November 27, 2023

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By:    */s/ Corey Worcester*
       Corey Worcester
       Leigha Empson
       51 Madison Avenue, 22nd Floor
       New York, NY 10010
       Telephone: (212) 849-7000
       Facsimile: (212) 849-7100

       Gary E. Gans (*pro hac vice*)
       Sage R. Vanden Heuvel (*pro hac vice*)
       865 S. Figueroa Street, 10th Floor
       Los Angeles, CA 90017
       Telephone: (213) 443-3000
       Facsimile: (213) 443-3100

       *Attorneys for Plaintiffs Emigrant Bank and*
       *Pacific Mercantile Bank*