# King & Spalding

King & Spalding LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

Kenneth Fowler
Direct Dial: +1 212 556 2227
kfowler@kslaw.com

December 12, 2023

**VIA ECF**
Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 2204
New York, NY 10007

      Re:    *Emigrant Bank, et al. v. SunTrust Bank, et al.*, No. 1:20-cv-02391-PGG-OTW

Dear Judge Gardephe:

      We represent Defendant Truist Bank, successor by merger to Defendant SunTrust Bank ("Truist"), and we write to request a pre-motion conference to compel discovery of documents Plaintiffs Emigrant Bank and Pacific Mercantile Bank ("Plaintiffs") have improperly withheld.

      The documents relate to a witness, former Our Alchemy controller Rex Bowring, whom Plaintiffs noticed as a supposed third-party fact deponent. But Mr. Bowring's deposition testimony, on December 5, 2023, revealed for the first time that Plaintiffs' counsel, Quinn Emanuel, also retained him as a consultant in 2018. Plaintiffs' counsel represented on the record that Plaintiffs were not asserting "any attorney-client privilege" over correspondence with Mr. Bowring and allowed Mr. Bowring to testify about the substance of his discussions and communications with Quinn Emanuel. Nonetheless, Plaintiffs have refused to agree to produce notes that Mr. Bowring testified that he made about documents he reviewed in preparation for his deposition, despite Mr. Bowring testifying that he would not have been able to provide all of his testimony without his review of those documents—including documents he had never seen before.

      Mr. Bowring's notes regarding documents he reviewed in preparation for his deposition, and his correspondence with Quinn Emanuel, are relevant, responsive, and discoverable. Truist seeks an order compelling their production.

**A.**    **Background**

      Following the parties' conference with the Court on October 26, 2023, Plaintiffs' counsel informed Truist that Plaintiffs intended to depose Mr. Bowring and requested that Truist agree that Plaintiffs could take his deposition after the fact discovery deadline of December 7, 2023, if the Court did not grant Plaintiffs' requested discovery extension. At the time, Plaintiffs had not disclosed that Plaintiffs' counsel had retained Mr. Bowring as a consultant, and Truist understood Mr. Bowring to be a third-party fact witness. Given that the fact discovery deadline could be

changed only by order of the Court, Truist did not agree to Plaintiffs' request.  On November 17, 2023, Plaintiffs noticed the deposition of Mr. Bowring for December 5, 2023.

During the December 5 deposition, Mr. Bowring testified that Quinn Emanuel retained him as a consultant in 2017 or 2018 and that he had executed a consulting agreement around that time to serve as a paid consultant for Quinn Emanuel.  Mr. Bowring also testified that he spent approximately 100 hours in the month leading up to his deposition reviewing documents pertaining to certain issues in this case related to Our Alchemy, Calrissian, Virgo, and affiliated entities, and that he would bill at his hourly rate for that time.  Among other things, Mr. Bowring testified that he reviewed documents through a document review platform provided by Quinn Emanuel and that he wrote and saved notes on various documents in the platform.  Mr. Bowring admitted that, as part of this exercise, he reviewed not only documents he had previously seen, but also documents he had never seen before.  Plaintiffs' counsel also elicited testimony from Mr. Bowring that he would not have been able to testify to all the matters addressed during his deposition had he not reviewed the documents in the review platform.

During the deposition, Plaintiffs' counsel represented that Plaintiffs were not asserting any attorney-client privilege over Mr. Bowring's communications with Quinn Emanuel.  Indeed, Plaintiffs allowed Mr. Bowring to testify to, among other things, the substance of his discussions with Quinn Emanuel within the past "three or four weeks" about his work and deposition, including Quinn Emanuel's specific request for him to identify emails "that would go to their case in the litigation against SunTrust or anything senior management might have done that [Mr. Bowring] didn't agree with in the way of financial reporting."  Mr. Bowring further testified, without objection, that he "did identify some [information] that would not necessarily support [Plaintiffs'] case," including a particular document he saw that "would not support necessarily [Plaintiffs'] case in an advantageous way based on a cursory review."

Prior to the deposition, Plaintiffs failed to produce the consulting agreement with Mr. Bowring and the notes Mr. Bowring made regarding documents he reviewed in preparation for his deposition.[1]  After learning of the existence of these documents during Mr. Bowring's deposition, Truist promptly requested that Plaintiffs produce the consulting agreement and notes, by letter dated December 7, 2023.  Plaintiffs subsequently produced the consulting agreement but have refused to commit to producing Mr. Bowring's notes and his correspondence with Quinn Emanuel, suggesting now that the notes and correspondence might be protected by the work product doctrine.

Truist met and conferred with Plaintiffs by Zoom on December 11, 2023.  Following that conference, Plaintiffs produced Mr. Bowring's consulting agreement but declined to commit to producing Mr. Bowring's notes about the documents he reviewed in preparation for his deposition or his correspondence with Quinn Emanuel.  Accordingly, Truist seeks to compel production of all notes Mr. Bowring made in connection with his review of documents and any other correspondence he had with Quinn Emanuel.  Given that the issue only arose at Mr. Bowring's

---

[1] Mr. Bowring executed the consulting agreement with Quinn Emanuel in 2018, but Plaintiffs did not produce that document during fact discovery.  While any notes that Mr. Bowring recently created could not have been produced during party fact discovery, Plaintiffs should have produced Mr. Bowring's consulting agreement prior to his deposition.

deposition two days before the close of fact discovery, and that the case has now moved into expert discovery, Truist is seeking court intervention promptly following the meet-and-confer process.

**B.     Argument**

Mr. Bowring's notes on documents he reviewed in preparation for his deposition, and his correspondence with Quinn Emanuel, are plainly relevant and responsive.  Among other things, in discovery, Truist timely requested that Plaintiffs produce (a) all documents regarding their contention that Virgo is Calrissian's alter ego; (b) all documents referring to or relating to Calrissian; (c) all documents referring to or relating to Virgo; (d) all documents referring to or relating to Alchemy; and (e) all "notes from, or other records of any depositions, testimony, witness statements, or similar statements related to this Lawsuit, whether produced or provided by any entity, witness, or other party or third party."  The notes Mr. Bowring created in preparing for his deposition, while reviewing documents about Alchemy, Calrissian, and Virgo—including documents he had never seen before—are responsive to these and other document requests.

Moreover, the documents Truist seeks are not protected.  Plaintiffs represented on the record that they are not asserting any attorney-client privilege over their communications with Mr. Bowring.  And the documents are not protected by the work-product doctrine.  Although Quinn Emanuel may have retained Mr. Bowring as a consultant, that does not shield his notes about documents he reviewed in advance of his deposition.  As the court in *State of N.Y. v. Solvent Chemical Co.* explained in a case where one party retained a former employee (and fact witness) as a litigation consultant:

> The court has no difficulty in finding that the consulting agreement, and any related documents that may reveal the facts and circumstances surrounding [the individual's] retention as a litigation consultant by [the party], as well as the terms and conditions of his retention, are not protected from disclosure under the work product rule.  The rule is intended to protect the privacy of litigants and their representatives only insofar as their conduct does not erode the integrity of the adversary process.

166 F.R.D. 284, 289 (W.D.N.Y. 1996).  The *Solvent Chemical* court thus ordered the party that retained the consultant to produce his consulting agreement, a list of all documents shown to the fact witness in preparation of his deposition, a list of all documents reviewed by the individual under the consulting agreement, "all notes or writings prepared by consultant under the consulting agreement, and all records of communications" with the consultant.  *Id.* at 292.

The same result should follow here:  Plaintiffs apparently believe that Mr. Bowring is a key fact witness.  Plaintiffs issued him a subpoena for his fact witness deposition testimony.  Mr. Bowring reviewed documents he had never seen before in advance of his deposition, drafted notes about the documents he was reviewing, and testified that he would not have been able to provide all of his testimony without his review of the documents he saw in advance of the deposition.  As in *Solvent Chemical*, shielding Mr. Bowring's notes he prepared in advance of his deposition and his other communications with Quinn Emanuel from discovery by Truist would erode the integrity of the adversary process in this case.  Truist is entitled to Mr. Bowring's notes for numerous

December 12, 2023
Page 4

reasons, including without limitation to understand the basis for his supposed fact testimony, which has been tainted by his admission that he testified to subjects about which he otherwise would not have been able to testify, thanks to his review of documents, *including documents he had never seen before*. The work product doctrine thus does not shield from discovery Mr. Bowring's notes on the documents he reviewed or his other correspondence.

Moreover, even if the work-product doctrine might otherwise protect Mr. Bowring's communications with Quinn Emanuel or notes, Plaintiffs waived any such protection by allowing Mr. Bowring to testify about the substance of his communications with Quinn Emanuel.

**C.    Conclusion**

Plaintiffs lack any basis to withhold Mr. Bowring's notes or any communications between Mr. Bowring and Quinn Emanuel, and the Court should compel their production.

Respectfully submitted,

*/s/ Kenneth B. Fowler*
Kenneth B. Fowler
*Counsel for Truist Bank,
successor by merger to SunTrust Bank*

cc:    All Counsel of Record via ECF