UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMIGRANT BANK; AND PACIFIC MERCANTILE BANK,<br><br>                    Plaintiffs,<br><br>          -against-<br><br>SUNTRUST BANK; TRUIST BANK; AND DOES 1 THROUGH 10, INCLUSIVE,<br><br>                    Defendants. | Case No. 1:20-cv-02391-PGG-OTW |

**PLAINTIFFS EMIGRANT BANK AND PACIFIC MERCANTILE BANK'S REPLY IN SUPPORT OF PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE WANG'S NOVEMBER 13, 2023 ORDER**

**Table of Contents**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...................................................................................................................................2

I. PLAINTIFFS' CLAIMS ARE NOT BARRED, SETTLED, DISMISSED OR DEFAULTED......................................................................................................................2

II. THE COURT SHOULD REJECT VIG'S ATTEMPT TO LITIGATE THE MERITS OF THE UNDERLYING ALTER EGO CLAIM................................................4

    A. The November 13 Order Did Not Reach The Merits Of Plaintiffs' Claims............4

    B. VIG's Argument Is Procedurally Improper—This Is A Discovery Dispute, Not A Dispositive Motion..........................................................................................5

    C. VIG Misrepresents The Law And The Facts When Arguing That Calrissian Is Not Virgo's Alter Ego.............................................................................................6

III. THE DISCOVERY AT ISSUE IS RELEVANT TO PLAINTIFFS' CLAIMS..................7

    A. The VIG Subpoena Seeks Relevant Documents.......................................................7

    B. The Baker Tilly Subpoena Seeks Relevant Documents .........................................8

    C. The Nu Image Subpoena Seeks Relevant Documents............................................9

CONCLUSION................................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs.*,
    597 F. Supp. 3d 557 (S.D.N.Y. 2022)......................................................................................5

*In re Adler, Coleman Clearing Corp.*,
    469 F. Supp. 2d 112 (S.D.N.Y. 2007)......................................................................................6

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Am.*,
    262 F.R.D. 293 (S.D.N.Y. 2009) .............................................................................................7

*Baby Phat Holding Co., LLC v. Kellwood Co.*,
    997 N.Y.S.2d 67 (1st Dep't 2014) ...........................................................................................6

*G-I Holdings, Inc. v. Baron & Budd*,
    2002 WL 1822929 (S.D.N.Y. Aug. 7, 2002)...........................................................................5

*Hoxhaj v. Michael Cetta, Inc.*,
    2022 WL 1664963 (S.D.N.Y. May 25, 2022) .........................................................................7

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    2020 WL 8465433 (S.D.N.Y. Oct. 30, 2020)..........................................................................5

*Maher v. Monahan*,
    2000 WL 777877 (S.D.N.Y. June 15, 2000) ...........................................................................5

*Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*,
    2013 WL 238176 (S.D.N.Y. Jan. 18, 2013) ............................................................................8

*Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*,
    394 F. Supp. 3d 461 (S.D.N.Y. 2019)....................................................................................10

*In re Teligent, Inc.*,
    640 F.3d 53 (2d Cir. 2011).................................................................................................9, 10

*Tribune Co. v. Purcigliotti*,
    1996 WL 337277 (S.D.N.Y. June 19, 1996) .........................................................................10

**RULES/STATUTES**

Fed. R. Civ. P. 26...................................................................................................................1, 5, 7

Fed. R. Civ. P. 45...................................................................................................................... 1, 7

Plaintiffs Emigrant Bank and Pacific Mercantile Bank ("Plaintiffs") respectfully submit this Reply in further support of their Objection to Magistrate Judge Wang's November 13, 2023 Order (ECF No. 138, the "Objection").

## PRELIMINARY STATEMENT

The issue before this Court is a simple question of relevance under the broad standard of Rules 26 and 45. In this action, Plaintiffs have brought claims against Defendant SunTrust[1] for its refusal to sue non-party Virgo Investment Group LLC ("VIG") and its affiliates (collectively, "Virgo") as the alter ego of Calrissian for breach of a Guaranty Agreement. SunTrust states in its Amended Answer that Plaintiffs cannot show causation or damages, arguing that Plaintiffs must, but cannot, prove that "Virgo is the alter ego of Calrissian" and that "the loan amounts are, in fact, recoverable from Virgo." ECF No. 91 (SunTrust's Amended Answer) at 24. In order to rebut these defenses, Plaintiffs served timely discovery requests on third parties VIG, Baker Tilly, and Nu Image to seek documents relevant to the underlying alter ego claim.

The November 13 Order denied Plaintiffs this discovery based in large part on Magistrate Judge Wang's ruling that "[w]hether the Virgo entities were in fact alter egos of Calrissian or Alchemy, is . . . of limited applicability here." ECF. No. 131 at 4 n.2. Unless this Court agrees that Plaintiffs do not have to prove whether "Virgo is the alter ego of Calrissian" or that "the loan amounts are, in fact, recoverable from Virgo," the November 13 Order denying discovery relating to Plaintiffs' alter ego claim is contrary to law and clearly erroneous.

VIG's response brief (ECF No. 139, the "Response" or "Resp.") offers no basis to overrule Plaintiffs' Objection or affirm the November 13 Order. Instead, VIG mischaracterizes

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the Objection.

1

Plaintiffs' claims and the relevant litigation history, improperly attempts to litigate the merits of the underlying alter ego claim, and disregards the relevance of the documents at issue.

*First*, VIG inaccurately claims that Plaintiffs are seeking to relitigate claims that have been "barred, settled, dismissed, or defaulted" in prior litigation. Resp. 1, 2, 17, 20, 24. That is untrue. VIG conflates other cases involving different plaintiffs and different claims. Plaintiffs' claims in this case have never been litigated, much less "barred, settled, dismissed, or defaulted." VIG has never faced a lawsuit for breach of the Guaranty Agreement because SunTrust (the only entity with the authority to do so) failed to bring it.

*Second*, VIG improperly argues the merits of Plaintiffs' claims, treating this as a dispositive motion by a non-party rather than a discovery dispute. Such arguments should be disregarded in their entirety. VIG cites selective documents to argue that Plaintiffs cannot prove VIG engaged in wrongdoing, but VIG is simultaneously seeking to prevent Plaintiffs—through the November 13 Order—from obtaining documents that could prove such wrongdoing.

*Third*, VIG fails to establish that the discovery at issue is irrelevant or protected from discovery. Nor could it; Plaintiffs' document requests to VIG, Nu Image, and Baker Tilly seek documents specific to Virgo's liability as the alter ego of Calrissian. Plaintiffs cannot be required to prove the underlying alter ego claim against Virgo while at the same time being denied discovery relevant to that claim.

For these reasons, the Court should sustain the Objection to the November 13 Order.

## ARGUMENT

### I. PLAINTIFFS' CLAIMS ARE NOT BARRED, SETTLED, DISMISSED OR DEFAULTED

As explained in Plaintiffs' Objection, the November 13 Order erred in suggesting that a bar order issued in the Alchemy Bankruptcy bars Plaintiffs' claims. Obj. 7-8, 22-23. The

2

Alchemy Bar Order provided only that Plaintiffs may not bring claims based on Virgo's status as the alter ego of *Alchemy, not Calrissian,* in Plaintiffs' State Court Litigation against Virgo.  *Id*.  The Alchemy Bar Order makes no reference to claims based on the theory that Virgo is the alter ego of *Calrissian,* nor does it reference this litigation.  ECF. No. 138-1 (Alchemy Bar Order).

Rather than acknowledge the plain language of the Alchemy Bar Order, VIG seeks to confuse the Court by alleging that Plaintiffs' claims are somehow precluded.  VIG lists other lawsuits and bankruptcies to argue that Plaintiffs are seeking to relitigate claims that are "barred, settled, dismissed, or defaulted" in prior litigation.  Resp. 1, 2, 17, 20, 24.  This is an egregious misstatement of the record.  None of the other cases cited by VIG involve the same claims at issue here, and Plaintiffs' claims have never been "barred, settled, dismissed, or defaulted."

A simple review of the causes of action in each dispute mentioned by VIG (Resp. 9-15) makes clear that none of these cases involves the same parties and claims at issue here:

- *Alchemy Trustee Action*:  The Alchemy Trustee brought claims against Virgo for fraudulent transfer and avoidance.  There were no claims alleging Virgo's breach of the Guaranty Agreement and no claim that Virgo was the alter ego of Calrissian.[2]  Virgo paid over $5 million to settle this dispute.[3]

- *Calrissian Bankruptcy*:  No claims were brought against Virgo.[4]

- *SunTrust v. Calrissian*:  Default judgment was granted against Calrissian and its general partner, Virgo Service Company, LLC, for breach of the Guaranty Agreement.  SunTrust never alleged that VIG or any other Virgo entity was Calrissian's alter ego as part of this lawsuit.[5]

---

[2]   *See Miller v. ANConnect, LLC et al.*, Adv. Pro. No. 18-50633-JTD (Bankr. D. Del.), ECF No. 1 at ¶¶ 208-308.

[3]   *Id.* at ECF No. 202-3.

[4]   *See In re Calrissian L.P.*, Case No. 17-10356-KG (Bankr. D. Del.), ECF No. 118 (declining to initiate claims on behalf of Calrissian's estate).

[5]   *See SunTrust Bank v. Calrissian LP*, Index No. 654148/2016 (N.Y. Sup. Ct.) NYSCEF No. 48 at ¶¶ 72-78.

- *Nu Image Arbitration*: Nu Image brought claims against Virgo and Calrissian for failure to make payments related to Virgo's acquisition of Alchemy. The arbitrator ruled against Virgo (Resp. 9-10), and Plaintiffs understand that Virgo ultimately paid an undisclosed sum to settle the dispute.

- *State Court Litigation*: Plaintiffs brought fraud claims against Virgo relating to misrepresentations made by Virgo to Plaintiffs. These claims were dismissed solely on the basis that SunTrust, not Plaintiffs, had standing to bring those claims. *See* ECF No. 57. The dismissal is currently on appeal.

In other words, none of these cases involve the same parties and claims at issue here. In particular, none of these cases involve a claim against Virgo as the alter ego or principal of Calrissian, and none involve a claim against Virgo under the Guaranty Agreement. Some of these prior disputes necessarily involve the same events at issue here, but this is typical when a large company declares bankruptcy and leaves unpaid creditors in its wake. Virgo's wrongdoing exposed it to liability or potential liability to many entities in many forums, leading it to settle various claims for millions of dollars and permit its affiliates to suffer default judgment for millions more. A claim against VIG for breach of the Guaranty Agreement as Calrissian's alter ego has not been litigated, dismissed, barred, settled, or defaulted anywhere. Plaintiffs' discovery requests regarding these claims are proper.

## II. THE COURT SHOULD REJECT VIG'S ATTEMPT TO LITIGATE THE MERITS OF THE UNDERLYING ALTER EGO CLAIM

VIG treats this discovery dispute as a dispositive motion, citing selective documents to argue that Plaintiffs' alter ego allegations lack merit. Resp. 18-21. The Court should disregard this argument; the November 13 Order does not endorse this argument, VIG lacks standing to make this procedurally improper argument, and VIG misstates the law and the facts.

### A. The November 13 Order Did Not Reach The Merits Of Plaintiffs' Claims

The November 13 Order did not discuss, much less rule on, the merits of Plaintiffs' alter ego allegations. Instead, the November 13 Order erroneously ruled that the underlying alter ego

4

claim was irrelevant to Plaintiffs' claims against SunTrust.  ECF No. 131 at 2-5.  VIG's attempt to support the November 13 Order using an argument that was not a basis for that Order should be disregarded.

### B. VIG's Argument Is Procedurally Improper—This Is A Discovery Dispute, Not A Dispositive Motion

Courts have regularly held that the merits of a party's claims or defenses should not be decided in the context of a discovery dispute.  *See, e.g., In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2020 WL 8465433, at *3 (S.D.N.Y. Oct. 30, 2020) (denying discovery motion where the moving party sought to "accelerate the evaluation of their sham litigation claims on the merits into this discovery dispute"); *Maher v. Monahan*, 2000 WL 777877, at *4 (S.D.N.Y. June 15, 2000) ("We need not, however, address the ultimate merits of plaintiff's claim in order to assess the immediate discovery dispute.").  The Court should not indulge VIG's efforts to litigate the merits of Plaintiffs' claims before discovery is complete.

Moreover, VIG is a non-party to this litigation and therefore lacks standing to argue the merits of the underlying claim.  VIG has moved to intervene in this dispute solely to make the discovery motions at issue here.  *See* ECF Nos. 80 at 4; 85 at 4.  VIG thus should not be permitted to argue the merits of the claims or defenses in this litigation.  *See, e.g., 1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs.*, 597 F. Supp. 3d 557, 566 (S.D.N.Y. 2022) (non-parties may not move to dismiss arbitral award unless they formally intervene for that purpose); *G-I Holdings, Inc. v. Baron & Budd*, 2002 WL 1822929, at *1 (S.D.N.Y. Aug. 7, 2002) (non-parties may not move for partial summary judgment without intervening for that purpose).

At this stage, the issue before the Court is a simple question of relevance under Rule 26(b)(1).  Plaintiffs' claims in this litigation survived a motion to dismiss, and SunTrust has

raised the necessity of proving the underlying alter ego claim as a defense. Therefore, evidence regarding that alter ego claim is plainly relevant. Unless the Court determines now that Plaintiffs do not bear the burden of proving the underlying alter ego allegations, the November 13 Order should be vacated, and Plaintiffs should be permitted this discovery.

        **C.    VIG Misrepresents The Law And The Facts When Arguing That Calrissian Is Not Virgo's Alter Ego**

VIG's argument regarding the merits of Plaintiffs' claims should be disregarded for a third reason: VIG misstates the law and the facts.

*First*, VIG misstates the law by stating that "[w]ithout a fraud, no alter ego claim exists." Resp. 20. Under New York law, fraud is not a necessary element of alter ego liability. *Baby Phat Holding Co., LLC v. Kellwood Co.*, 997 N.Y.S.2d 67, 70 (1st Dep't 2014) (an alter ego claim does not require allegations of actual fraud). Instead, a plaintiff need only prove that the dominant entity used its alter ego "to commit a fraud **or other wrong**." *In re Adler, Coleman Clearing Corp.*, 469 F. Supp. 2d 112, 117 (S.D.N.Y. 2007) (emphasis added).

*Second*, VIG misrepresents the facts by citing a single email chain (that Plaintiffs were not on) in order to argue that Virgo did not mislead the Lenders regarding Calrissian's status as a holding company. Resp. 19-20. But the "fraud or other wrong" element of alter ego liability does not require deception about the corporate relationship. Plaintiffs allege that Virgo misused its control of Calrissian in a multitude of other ways that harmed Plaintiffs. For example:

- Virgo knew Alchemy's revenues were inflated through channel stuffing and understated return rates, but Virgo withheld this information from Plaintiffs and used Calrissian to insulate itself from Alchemy's losses. ECF No. 45 ("Compl.") ¶¶ 45-48.

- While knowing Alchemy was struggling financially, Virgo siphoned $34 million out of Alchemy through Calrissian to repay itself, leaving Alchemy and Calrissian undercapitalized and ultimately insolvent. *Id.* at ¶¶ 43-44.

6

- Virgo, through its control of Calrissian, caused Alchemy to issue misleading borrowing base certificates to the Lenders. *Id.* at ¶ 60.

Plaintiffs are entitled to discovery from VIG, Nu Image, and Baker Tilly relevant to their claims. VIG should not be permitted to argue the merits of Plaintiffs' claims while simultaneously seeking to deny the very discovery that could prove those claims.

### III. THE DISCOVERY AT ISSUE IS RELEVANT TO PLAINTIFFS' CLAIMS

The standard for relevance under Rules 26 and 45 is whether the discovery sought "bears on, or [] reasonably could lead to other matter that could bear on any party's claim or defense." *Hoxhaj v. Michael Cetta, Inc.*, 2022 WL 1664963, at *1 (S.D.N.Y. May 25, 2022) (citation omitted). VIG's thin arguments regarding relevance only confirm that the November 13 Order erred in ruling that the discovery requested from VIG, Baker Tilly, and Nu Image is irrelevant. Because one of SunTrust's defenses is that Plaintiffs must, but cannot, prove the underlying alter ego claim, discovery into the alter ego claim is necessary to this case. *See* Obj. 13-22.

#### A. The VIG Subpoena Seeks Relevant Documents

VIG does not attempt to argue that the discovery Plaintiffs seek from VIG is irrelevant to Plaintiffs' claims. Nor could it; the VIG Subpoena seeks documents that go to the heart of the alter ego claim against VIG and its affiliates. *See* Obj. 15-18. Plaintiffs' subpoena seeks VIG's communications regarding Alchemy and Calrissian, Calrissian's organizational documents, and VIG's documents that would establish its ability to pay a judgment. ECF. No. 138-7.

Rather than argue that the discovery sought is irrelevant, VIG argues that the production of these documents would be an undue burden. Resp. 24. But the November 13 Order did not adopt this argument, and it would be error if it had. "Inconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant [discovery]." *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Am.*, 262 F.R.D. 293, 300 (S.D.N.Y. 2009) (citation omitted). VIG

7

complains that producing the requested material is costly, but VIG is a well-capitalized entity that has raised $1.8 billion since its inception in 2009 and therefore has sufficient resources to provide the documents Plaintiffs have requested.[6] *Id.* (cost of complying is insufficient burden).[7]

Ultimately, as long as Plaintiffs are required to prove that Virgo and Calrissian had an alter-ego relationship, the discovery sought from VIG is plainly relevant. VIG's burden arguments are insufficient to outweigh the relevance of the documents Plaintiffs seek.

### B. The Baker Tilly Subpoena Seeks Relevant Documents

The documents Plaintiffs seek from Baker Tilly are also relevant to the underlying alter ego claim. As set forth more fully in the Objection, Plaintiffs expect that Baker Tilly's documents will show that VIG and its affiliates were aware of Alchemy's anemic finances based on VIG's own due diligence and then concealed that fact from the Lenders while insulating itself from potential losses through Calrissian. *See* Obj. 18-20.

As a threshold issue, the November 13 Order erroneously ignored the well-established rule that VIG, a non-party, has no basis to make any relevance objection on Baker Tilly's behalf. *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, 2013 WL 238176, at *1 (S.D.N.Y. Jan. 18, 2013) ("[Plaintiff] first argues that [third-party movant] has no standing to request the Court quash the subpoena, as it is a non-party and was not served with the subpoena . . . [movant] lacks standing to challenge the subpoena on relevance or burden grounds.") (citation omitted).

VIG asserts that documents relating to Baker Tilly's analysis of Alchemy are irrelevant because they predate the formation of Calrissian. Resp. 21. But the documents Plaintiffs seek relate to Virgo's wrongful use of its control over Calrissian. Plaintiffs expect Baker Tilly's

---

[6] *See* https://www.virgo-llc.com/about.

[7] Plaintiffs have repeatedly offered to negotiate custodians and search terms to lessen VIG's burden. VIG has never considered Plaintiffs' offers but instead opposed this discovery entirely and forced the parties to engage in costly motion practice.

8

reports—and Virgo's communications regarding them—to show that Virgo knew of Alchemy's financial condition, concealed it from the Lenders, and ultimately formed and used Calrissian to siphon funds from Alchemy, knowing it would cause the insolvency of both entities.

Further, VIG's baseless assertions that the Lenders had access to the same data as Baker Tilly[8] do not render irrelevant the Baker Tilly reports themselves.  It is undisputed that Plaintiffs have never seen the draft Baker Tilly report or the resulting final report that was manipulated at Virgo's request.  *See* Compl. ¶ 28.  Plaintiffs are entitled to the draft report and final report, which **Baker Tilly is willing to produce**, as well as VIG's communications regarding the same.

### C. The Nu Image Subpoena Seeks Relevant Documents

The documents Plaintiffs seek from Nu Image are also relevant, as they include contemporaneous testimony by fact witnesses regarding the same transactions and events at issue here: Virgo's purchase of Alchemy through Calrissian and Alchemy's resulting failure. Plaintiffs expect that documents related to the Nu Image Arbitration will show that Virgo knew about and intentionally failed to disclose Alchemy's financial troubles, and that it used Calrissian as a shell to protect itself from Alchemy's ultimate failure.

VIG barely contests the relevance of the documents sought from Nu Image and instead relies on the supposed confidentiality of the Nu Image Arbitration.  But the standard from *In re Teligent, Inc.*, 640 F.3d 53, 57 (2d Cir. 2011) that VIG cites (Resp. 23) is inapplicable to this situation.  VIG asserts that Plaintiffs must show a "special need" for any documents from "alternative dispute resolution process[es]," but the "special need" standard established in *Teligent* only relates to confidential court ordered mediations, not private arbitrations.  As this

---

[8] Plaintiffs have not seen definitive evidence that this is the case, particularly for Emigrant, which entered the credit facility a year later. Obj. 19-20. The Chapman Declaration that VIG cites (ECF No. 119-1) only states that Baker Tilly based its report on documents in a data room; it makes no reference to Plaintiffs having access to the same data room or documents.

9

Court put it, "*In re Teligent* applies to situations in which there has been a prior court promise of confidentiality — not to discussions between parties without court involvement and not to a settlement agreement with a private promise to maintain its confidentiality." *Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*, 394 F. Supp. 3d 461, 464-65 (S.D.N.Y. 2019). And any agreement between VIG and Nu Image cannot preclude Plaintiffs' right to discovery. *Tribune Co. v. Purcigliotti*, 1996 WL 337277, at *3 (S.D.N.Y. June 19, 1996) ("[T]he mere fact that the settling parties agreed to maintain the confidentiality of their agreement cannot serve to shield it from discovery.").

Given the centrality of the underlying alter ego claim to this litigation and because years have passed since the relevant events, the documents, evidence, and testimony from the Nu Image Arbitration are highly relevant in this case. There is also no substitute for them, as many witnesses' memories of key events have likely faded over the past six years. This need outweighs any remaining confidentiality concerns related to documents concerning a nine-year-old transaction involving a company that has been in bankruptcy for seven years.

In any event, VIG waived any alleged confidentiality by previously providing many key documents from the Nu Image Arbitration to the Lenders, including the pleadings, the arbitrator's ruling, and the draft settlement agreement. Obj. 21. VIG has not established any plausible basis to prohibit the production of other arbitration materials, which in any event are protected by the Protective Order entered in this action (ECF No. 75).

## CONCLUSION

For the foregoing reasons and those set forth in the Objection, Plaintiffs' Objection to Magistrate Judge Wang's November 13 Order should be sustained.

Dated: New York, New York
December 18, 2023

        QUINN EMANUEL URQUHART &
          SULLIVAN, LLP

By:   */s/ Corey Worcester*
     Corey Worcester
     Leigha Empson
     51 Madison Avenue, 22nd Floor
     New York, NY 10010
     Telephone: (212) 849-7000
     Facsimile: (212) 849-7100

     Gary E. Gans (*pro hac vice*)
     Sage R. Vanden Heuvel (*pro hac vice*)
     865 S. Figueroa Street, 10th Floor
     Los Angeles, CA 90017
     Telephone: (213) 443-3000
     Facsimile: (213) 443-3100

     *Attorneys for Plaintiffs Emigrant Bank and Pacific Mercantile Bank*