# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

February 28, 2024

**VIA ECF**
Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 2204
New York, NY 10007

      Re:    *Emigrant Bank, et al. v. SunTrust Bank, et al.*, No. 1:20-cv-02391-PGG-OTW

Dear Judge Gardephe:

      We represent Defendant Truist Bank, successor by merger to SunTrust Bank ("Truist"). We write in response to Plaintiffs Emigrant Bank ("Emigrant") and Pacific Mercantile Bank's ("PMB") letter regarding their anticipated motion for partial summary judgment (ECF 157). Although Plaintiffs seek to move for summary judgment as to *portions* of four of Truist's defenses, Plaintiffs arguments fail as to each defense.

      *First*, Plaintiffs confuse both the burden and the law with respect to the portions of Truist's two defenses relating to Plaintiffs' inability to establish that any affiliate of Virgo Investment Group, LLC was the alter ego of Calrissian LP. Plaintiffs bear the burden of establishing that any entity was Calrissian's alter ego because, absent such proof, Plaintiffs cannot establish that they suffered any damage as a result of Truist declining to sue the entity under an alter ego theory. Moreover, Plaintiffs misapply the law of the case doctrine, which does not—and cannot—eliminate their burden to establish damages. And Truist has brought forth more than sufficient evidence to support the challenged portions of its defenses.

      *Second*, Plaintiffs ignore Truist's documentary evidence establishing the scrivener's error, alleged in Truist's eighth defense, regarding the carve-out limiting Plaintiffs' rights upon certain events of default. As detailed herein, Truist adduced evidence establishing that a line-edit during the negotiation of the credit agreement altered the numbering of the specified events of default but inadvertently failed to alter the corresponding cross-references to the applicable events of default in the carve-out.

      *Third*, contrary to Plaintiffs' assertions, Truist adduced documentary and testimonial evidence regarding its opinion that filing the lawsuit demanded by Plaintiffs "may expose the Administrative Agent to liability." Under the credit agreement, the Administrative Agent has no obligation to take such an act, even upon Plaintiffs' demand in their capacity as "Required Lenders." Plaintiffs' attempt to wish away Truist's evidence fails, underscored by Plaintiffs' refusal to quote correctly the relevant contractual language.

Accordingly, the Court should deny the motion for partial summary judgment that Plaintiffs seek to file.

I. **Plaintiffs Are Not Entitled to Summary Judgment as to the Portions of Truist's Defenses Regarding Alleged Alter Ego Status (Truist's Second and Tenth Defenses)[1]**

A. **The Law of the Case Doctrine Does Not Apply.**

Remarkably, Plaintiffs argue that Magistrate Judge Wang's order on a discovery dispute between Plaintiffs and **nonparties** eliminates their need to establish that any entity was Calrissian's alter ego—which they are required to show to prove damages. Plaintiffs contend the law of the case doctrine bars Truist from arguing otherwise, despite Plaintiffs themselves arguing the order was "clearly erroneous and contrary to law" in their pending objection to the order. (ECF 138, at 3.) Plaintiffs' argument fails.

The law of the case doctrine is "a discretionary option, not a hard-edged rule; it serves as a cautionary admonition to be applied when the occasion demands it and judicial sensibilities should play no part in the disposition of suitors' rights." *Strauch v. Demskie*, 892 F. Supp. 503, 506 (S.D.N.Y. 1995) (cleaned up). Its application "depends, in part, on the context in which the court made its first ruling." *Pinyuk v. CBE Grp., Inc.*, 561 F. Supp. 3d 334, 338 (E.D.N.Y. 2021). The doctrine "does not limit a court's power to reconsider … decisions prior to final judgment." *In re Nassau Cnty. Strip Search Cases*, 958 F. Supp. 2d 339, 343 (E.D.N.Y. 2013) (cleaned up).

The doctrine is inapplicable here. ***First***, Plaintiffs have failed to identify a single case applying the law of the case doctrine to obtain a judgment on a defense based on an earlier discovery ruling—let alone a non-party discovery ruling subject to an objection pending before the Court. ***Second***, Plaintiffs ignore their prior contention that Judge Wang's order was "clearly erroneous and contrary to law" (ECF 138, at 3), as they must because "the efficiency concerns that underlie the [law of the case] doctrine do not support its application in cases where the original ruling is clearly erroneous." *Strauch*, 892 F. Supp. at 506. ***Third***, Plaintiffs cannot establish the type of prejudice that the law of the case doctrine is meant to avoid, which "does not mean harm resulting from the failure to adhere to the prior decision," but instead "refers to a lack of sufficiency of notice or a lack of sufficient opportunity to prepare armed with the knowledge that the prior ruling is not deemed controlling." *In re Hellas Telecommunications (Luxembourg) II SCA*, 555 B.R. 323, 342 (Bankr. S.D.N.Y. 2016) (quotation marks omitted; alterations adopted). Here, Plaintiffs have more than sufficient notice and knowledge that the prior ruling might not be deemed controlling, as Plaintiffs' own objection to the prior order remains pending with the Court. The doctrine does not apply.

The cases Plaintiffs cite miss the mark. *American Civil Liberties Union v. U.S. Dep't of Justice* applied the law of the case doctrine to a successive summary judgment motion based on a prior summary judgment order. *See* 210 F. Supp. 3d 467, 486 (S.D.N.Y. 2016) (2016 summary judgment ruling); 252 F. Supp. 3d 217, 226 (S.D.N.Y. 2017) (2017 summary judgment ruling). And *Hamlen v. Gateway Energy Services Corp.* involved a motion to dismiss an amended complaint after the magistrate judge had ruled that the proposed amended complaint adequately

---

[1] Plaintiffs do not move for summary judgment on the entirety of Truist's second or tenth defense. (ECF 157, at 2 n.2.)

pleaded certain claims—with no objection to that order. 2018 WL 1568761, at *1 (S.D.N.Y. Mar. 29, 2018). None of those circumstances are present here.[2]

### B. Plaintiffs' Burden-Shifting Argument Fails.

Plaintiffs bear the burden to prove damages—e.g., that the "alter ego" lawsuit they demanded would have been successful and led to a recovered judgment upon establishing that one or more specific entities were Calrissian's alter ego. *See Nat'l Mkt. Share, Inc. v. Sterling Nat'l. Bank*, 392 F.3d 520, 525 (2d Cir. 2004) ("a plaintiff must prove that a defendant's breach directly and proximately caused his or her damages") (emphasis removed). Contrary to Plaintiffs' suggestion, Plaintiffs bear the burden to establish that an entity was Calrissian's alter ego in order to establish damages, and Truist's assertion of a related defense does not shift the burden of proof away from Plaintiffs onto Truist. *See Windward Bora LLC v. Browne*, 2023 WL 2744684, at *7 (S.D.N.Y. Mar. 31, 2023) (defenses that "challenge plaintiff's prima facie case are not, in reality, affirmative defenses, and do not alter the burden of proof as to the elements of plaintiff's claim").

### C. Plaintiffs' Contested Expert Reports, Challenged by Truist's Expert and Fact Evidence, Cannot Eliminate Questions of Material Fact.

Because Calrissian is a Delaware limited partnership, Delaware law governs the alter ego analysis. *See MMA Meadows at Green Tree, LLC v. Millrun Apartments, LLC*, 130 A.D.3d 529, 530 (N.Y. App., 1st Dept. 2015). To succeed on an alter ego theory under Delaware law, a plaintiff must show that the entity was "a sham and exist[ed] for no other purpose than as a vehicle for fraud." *In re Sunstates Corp. S'holder Litig.*, 788 A.2d 530, 534 (Del. Ch. 2001).

Although Plaintiffs wrongly contend that their experts have "confirmed" that an alter ego relationship existed (ECF 157, at 3), neither of their experts opined as to whether an alter ego relationship existed or that Calrissian was merely a "sham" entity. *See* Ex. A (Expert Report of Mark Rule); Ex. B (Rule Tr. 121:22-122:1). Ex. C (Expert Report of Ben Sheppard); Ex. D (Sheppard Tr. 108:9 – 109:4). Indeed, Plaintiffs' expert reports failed to identify *any* specific entity that was, or even had indicia of being, Calrissian's alter ego—or that caused fraud, injustice, or other harm to the lenders. *See generally* Ex. A; Ex. C.

Moreover, Plaintiffs' expert opinions fail to establish an entitlement to summary judgment, as Truist offered rebuttal expert opinion detailing Plaintiffs' experts methodological and substantive flaws, including where they were based on pure speculation, as well as related fact evidence contradicting Plaintiffs' expert opinions. *See, e.g.*, Ex. E (Expert Rebuttal Report of Carlyn Irwin); *Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) (expert opinions inconsistent with facts or based on speculation inappropriate material at summary judgment). And Plaintiffs' contention that they are entitled to summary judgment because "SunTrust has not offered an expert (or any) opinion that no alter ego relationship existed"

---

[2] If the Court holds that the law of the case doctrine mandates a finding that the alter ego issue is irrelevant, that determination would foreclose Plaintiffs from presenting any evidence at trial as to damages—and thus require dismissal of Plaintiffs' claims or judgment in Truist's favor.

February 28, 2024
Page 4

is brazenly wrong, as **Plaintiffs' own experts** likewise refused to opine as to whether any alter ego relationship existed. See Ex. B (Rule Tr. 121:22-122:1); Ex. D (Sheppard Tr. 108:9-12 – 109:4).

Plaintiffs thus fail in their attempt to use their controverted expert reports to obtain summary judgment in their favor.

### II. Plaintiffs Are Not Entitled to Partial Summary Judgment Regarding Truist's Scrivener's Error Defense (Eighth Defense)

Truist adduced evidence of a scrivener's error regarding the carve-out that limits Plaintiffs' rights upon the occurrence of certain events of default under the Credit Agreement.

As of August 15, 2014, the working draft of the credit agreement at Section 8.1 listed events of default, and subsections (h) and (i) of that section identified involuntary and voluntary bankruptcies, respectively. Ex. F (Defs.' Ex. 90), at VIG0016495-96. Later in Section 8.1, the draft precluded a written demand from the "Required Lenders" upon an event of default under subsection (h) or (i)—the bankruptcy events of default. Id. at VIG0016497. On August 28, 2014, counsel for the Borrower sent a revised version of the credit agreement, removing one of the events of default, which re-numbered the bankruptcy events of default as subsections (g) and (h). Ex. G (TRUIST_00043496, at TRUIST_00043496, TRUIST_00043747-48). In making that change, however, the parties failed to update the cross-reference later in Section 8.1 regarding the written demand carve-out. Id. at TRUIST_00043749. Plaintiffs do not address this documentary evidence showing the mutual mistake. See also Ex. H (PMB 30(b)(6) Tr. 59:12–62:9) (PMB's corporate representative witness testifying "I don't know" when asked about PMB's intent regarding the provision at issue).

Plaintiffs try to avoid this outcome by asserting that the carve-out does not apply if other events of default also occur, contending that Truist's interpretation would render those events of default meaningless. (ECF 157, at 4.) Plaintiffs are incorrect. First, the other events of default are not meaningless because the "written request of the Required Lenders" provision applies unless and until an event of default specified in the carve-out occurs. Second, it makes perfect sense for the credit agreement to contemplate the Administrative Agent taking various actions and engaging in self-help upon an event of default prior to the borrower or guarantor's bankruptcy, but ending any obligation to do so once such a bankruptcy filing occurs. At that point, the Administrative Agent is limited in what actions it can take in respect of a debtor entity, a bankruptcy trustee may be appointed (as here) to seek recoveries for the debtor's creditors (including the lenders), and actions against the debtor are stayed. See 11 U.S.C. 362(a).[3]

---

[3] In any event, if a scrivener's error did not occur, then the carve-out plainly applies because the Credit Agreement, as written, creates a carve-out for the events of default in Section 8.1(i), which include when Calrissian or Alchemy "become unable to pay, shall admit in writing its inability to pay, or shall generally fail to pay, its debts as they become due[.]" (ECF 45-1 § 8.1(i).) Here, Calrissian and Alchemy became unable to pay, and failed to pay, their debts as they became due. (ECF 45, ¶ 53; ECF 158-14 (PMB 30(b)(6) Dep. 44:5–7)).

February 28, 2024
Page 5

### III. Plaintiffs Are Not Entitled to Summary Judgment as to the Portion of Truist's Defense Regarding The Administrative Agent's Opinion (Truist's Third Defense)[4]

Section 9.2 of the Credit Agreement, which Plaintiffs fail to quote, provides that "***the Administrative Agent shall not be required to take any action that, in its opinion*** or the opinion of its counsel, ***may expose the Administrative Agent to liability*** or that is contrary to any Loan Document or applicable law." ECF 45-1, § 9.2 (emphasis added). Plaintiffs' suggestion that Truist "has provided no evidence to support" its contention that Truist held the opinion that filing the demanded lawsuit "may expose the Administrative Agent to liability" is patently wrong. *Contra* ECF 157, at 5.

In response to Plaintiffs' written demand, Truist explained on January 3, 2020, that it would not file—nor could Plaintiffs force Truist to file—the requested lawsuit because, among other things, "'the Administrative Agent shall not be required to take any action that, in its opinion or the opinion of its counsel, may expose [it] to liability[,]'" which "includes filing potentially frivolous lawsuits." ECF 37-1, at 2 (quoting ECF 45-1). During discovery, Truist witness Juan De Jesus-Caballero testified that Truist believed that filing the demanded lawsuit could expose it to liability, including "that it could . . . be exposed to liability for pursuing what could be frivolous litigation." ECF 158-15, at 228:4 – 229:4. Truist has thus put forth more than sufficient evidence that it had the opinion that the lawsuit Plaintiffs demanded "may expose" Truist to liability.

Plaintiffs' reliance on other testimony by Mr. De Jesus-Caballero is misplaced. While Mr. De Jesus-Caballero agreed that he did not think the lawsuit would be "frivolous," the question under the Credit Agreement is not whether *Truist* believed the lawsuit was "frivolous"; the question is whether Truist believed there was a *risk* that a *court* could conclude that the lawsuit was frivolous or otherwise subject Truist to liability for bringing the suit. (*See* ECF 45-1, § 9.2 (referring to opinion that the action "may expose" Truist to liability).) This distinction reveals the importance of Plaintiffs' failure to quote the relevant contractual language: Plaintiffs' argument depends on a higher and nonexistent standard—whether the action "***would have*** exposed [Truist] to liability" (ECF 157, at 5 (emphasis added)).

Here, Plaintiffs demanded that Trust engage in the risky business of suing "Virgo" as Calrissian alter ego when the lenders knew that they had no evidence for the necessary element of fraud or wrongdoing. (ECF 158-7, at 9.) And Truist was not alone in its concern about liability stemming from an alter-ego lawsuit against "Virgo," as Plaintiff PMB demanded from Emigrant—and received—full indemnification for any liability incurred due to suing "Virgo." ECF 158-4, at 3–4. Plaintiffs' summary judgment argument thus fails.

### IV. Conclusion

For the foregoing reasons, the Court should deny the motion for partial summary judgment that Plaintiffs seek to file.

---

[4] Plaintiffs do not move for summary judgment on the entirety of Truist's third defense. (ECF 157, at 2 n.2.)

February 28, 2024
Page 6

                                        Respectfully submitted,

                                        */s/ Kenneth B. Fowler*
                                        Kenneth B. Fowler
                                        *Counsel for Truist Bank,*
                                        *successor by merger to SunTrust Bank*

cc:      All Counsel of Record via ECF