**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

February 28, 2024

WRITER'S DIRECT DIAL NO.
(212) 849-7471

<u>VIA ECF</u>

WRITER'S EMAIL ADDRESS
coreyworcester@quinnemanuel.com

Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 2104
New York, NY 10007

Re:   *Emigrant Bank, et al. v. SunTrust Bank, et al.*, No. 1:20-cv-02391-PGG-OTW

Dear Judge Gardephe:

We represent Plaintiffs Emigrant Bank and Pacific Mercantile Bank ("Plaintiffs") and write in response to the pre-motion letter regarding summary judgment filed by Defendants SunTrust Bank and Truist Bank (together, "SunTrust").  ECF No. 158 (the "Letter").

## I.   INTRODUCTION

The Credit Agreement[1] provides that in the event of default, SunTrust, as administrative agent, "***upon written request of the Required Lenders shall***" exercise any remedies available at law.  Credit Agreement § 8.1.  There is no dispute that (i) several events of default occurred (*see* Ex. 1, SunTrust 30(b)(6) Oct. 12, 2023 Dep. Tr. at 219:09-18); (ii) the Required Lenders made a written request for SunTrust to sue Virgo Investment Group LLC ("VIG") and its affiliates (collectively, "Virgo") (ECF No. 45-7); and (iii) SunTrust refused.

Faced with clear evidence of breach, SunTrust resorts to arguments that are not only irrelevant to its refusal to perform but are also inconsistent with the record.  *First*, far from attempting to sue "anyone and everyone" (Letter at 1), Plaintiffs have filed just two lawsuits:  (i) an action against Virgo, which was dismissed on the grounds that "the Lenders agreed to a process by which if the Required Lenders [] directed the Administrative Agent to bring suit, the Administrative Agent was required to bring a lawsuit" (Ex. 2 at 1 (citations omitted)); and (ii) this action for SunTrust's refusal to bring suit against Virgo at the direction of the Required Lenders.  *Second*, the Required Lenders' request was not a baseless attempt to "pin the blame on the equity sponsor" (Letter at 1), but was consistent with SunTrust's own counsel's opinion that the claims against Virgo were "at least colorable."  ECF No. 157-6.  *Third*, SunTrust's repeated complaint that Plaintiffs did not specify which entity they wanted SunTrust to sue (Letter at 4) is flat wrong.  Ex. 3 (EB00034114) (identifying specific Virgo entities).

---

[1]   Capitalized terms not defined herein have the same meaning ascribed to them in Plaintiffs' pre-motion letter regarding partial summary judgment.  ECF No. 157.

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

SunTrust's contemporaneous conduct betrays the *post hoc*, made-for-litigation nature of its arguments. When it refused the Required Lenders' request, SunTrust never asked which Virgo entity Plaintiffs wanted to sue, referenced a bankruptcy stay, objected to the terms of Emigrant's offer to pay SunTrust's litigation costs, or stated that a lawsuit would be frivolous. Indeed, SunTrust's 30(b)(6) representative testified: "I don't believe SunTrust considered the filing of the lawsuit frivolous." Ex. 1 at 298:20-23. Contrary to SunTrust's story, this action is not based on some personal agenda but, rather, on SunTrust's refusal do its job as administrative agent.

## II. THERE ARE MATERIAL ISSUES OF FACT REGARDING SUNTRUST'S FAILURE TO SUE VIRGO

### A. The Loan Documents Do Not Bar Plaintiffs' Claims

***Guaranty Section 7.4:*** SunTrust's argument that Section 7.4 of the Guaranty overrides Section 8.1 of the Credit Agreement, granting SunTrust total discretion to refuse the Required Lenders' request to sue Virgo, fails for several reasons. *First*, there is no conflict between the Guaranty and the Credit Agreement. Section 7.4 of the Guaranty gives SunTrust discretion to sue Virgo. Section 8.1 of the Credit Agreement similarly gives SunTrust discretion, but ***also*** provides that "***upon written request of the Required Lenders***," SunTrust "***shall***" take action. *See Aries Fire Protection, Inc. v. Tutor Perini/Parsons Joint Venture, J.V.*, 2022 WL 2292801, at *2 (S.D.N.Y. June 26, 2022) ("the court is required to adopt an interpretation of the subcontract that gives meaning to the entire contract and reconciles seemingly conflicting provisions"). Further, the Guaranty makes clear that the Credit Agreement, not the Guaranty, governs the responsibilities of the Administrative Agent to the Lenders. *See* Guaranty § 8.4.

*Second*, SunTrust's interpretation of Section 7.4 would render meaningless the provision of Section 8.1 that SunTrust "shall" act upon written request of the Required Lenders. *See Greylock Glob. Opportunity Master Fund Ltd. v. Province of Mendoza*, 2004 WL 2290900, at *3 (S.D.N.Y. Oct. 12, 2004) ("It is well settled that, under New York law, courts will refuse, wherever possible, to interpret a contractual term in such a way as to nullify other provisions.").

The Court previously noted in its Order on SunTrust's Motion to Dismiss that any conflict between Section 8.1 of the Credit Agreement and Section 7.4 of the Guaranty cannot be resolved as a matter of law. ECF No. 65 at 20; *see also DBC Real Estate Mgmt., LLC v. Marsh USA Inc.*, 2019 WL 8301701, at *10 (S.D.N.Y. Sept. 29, 2019) (Gardephe, J.) (denying summary judgment where contract was ambiguous and no extrinsic evidence was offered). Therefore, SunTrust should not be granted leave to file a motion for summary judgment on this basis.

***Guaranty Section 8.2:*** SunTrust's reliance on Section 8.2 of the Guaranty is misplaced. Section 8.2 describes SunTrust's rights and duties with respect to the guarantors, not the Lenders. Guaranty § 8.2 ("***Grantor*** . . . waives any right to require the Administrative Agent or any other Secured Party to proceed against any Grantor or other Person, exhaust any Collateral or enforce any other remedy . . . .") (emphasis added). Further, Section 8.2 has a carveout for gross negligence and willful misconduct, which are questions of fact. *See infra* at § II(E). And Section 8.4 states that "the rights and responsibilities of the Administrative Agent . . . shall, as between the Administrative Agent and the other Secured Parties, be governed by the Credit Agreement . . . ."

2

*Credit Agreement Section 9.2:* As set forth in Plaintiffs' Pre-Motion Letter (ECF No. 157 at 5), SunTrust's reliance on Section 9.2 of the Credit Agreement is baseless. SunTrust refers to "undisputed evidence" that it was SunTrust's opinion that an action against Virgo was "frivolous." Letter at 3. But SunTrust's 30(b)(6) representative testified that SunTrust did *not* believe an action against Virgo was frivolous. Ex. 1 at 298:20-23 ("I don't believe SunTrust considered the filing of the lawsuit frivolous."). Further, although SunTrust relies entirely on the advice of counsel, it has refused to produce that advice. *See generally* ECF Nos. 154 and 157.

*Credit Agreement Section 8.1:* SunTrust is wrong that the Credit Agreement "eliminates Plaintiffs' 'written demand' rights" when an event of default under subsection (i) of Section 8.1 occurs.[2] Letter at 3. Section 8.1 lists events of default and provides that "in every such event (other than an event described in subsection (h) or (i) of this Section) . . . the Administrative Agent may, and upon the written request of the Required Lenders shall," take certain actions. Credit Agreement § 8.1. Section 8.1 nowhere says an event of default under subsection (i) eliminates Plaintiffs' right to request action by SunTrust if *other events of default* have occurred, which SunTrust has conceded. Ex. 1 at 219:09-18; *see also* ECF No. 157 at 4.

### B.   The Automatic Stay Does Not Excuse SunTrust's Breach

The automatic stay in the Calrissian Bankruptcy (Letter at 3) does not excuse SunTrust's refusal to comply with Plaintiffs' request. While Plaintiffs made their initial request on December 13, 2019, the Calrissian Bankruptcy closed shortly thereafter on January 9, 2020. On that day, and subsequently, Plaintiffs maintained and renewed their requests for SunTrust to sue Virgo. *See, e.g.*, Ex. 4 (EB00162914), Ex. 5 (EB00237930). There was no stay in effect at those times. Further, before the bankruptcy closed, SunTrust could have moved for relief from the automatic stay, which likely would have been granted because the bankruptcy was soon to close.[3] Finally, there is *no* contemporaneous evidence that SunTrust believed the stay barred suit.

### C.   SunTrust's Argument Regarding Specific Virgo Entities Fails

SunTrust argues that Plaintiffs' claims as to three Virgo entities fail (Letter at 3-4), but its silence as to Plaintiffs' request to sue VIG is deafening. SunTrust offers no excuse for its failure to sue VIG, which is at the core of this dispute: VIG managed and controlled Calrissian and Alchemy such that they became insolvent, resulting in a loss to Plaintiffs of over $33 million. *See* ECF No. 157 at 3-4. Even if SunTrust's arguments regarding the other Virgo entities were afforded weight, SunTrust has offered no excuse for failing to sue VIG and is thus not entitled to summary judgment. Plaintiffs address each of SunTrust's arguments regarding the other entities in turn:

*First*, SunTrust's assertion that Plaintiffs "initially fail[ed] to identify the specific parties they wanted" SunTrust to sue (Letter at 4) is wrong. *See, e.g.*, Ex. 3.

*Second*, SunTrust's suit against Virgo Service Company, LLC ("VSC")—under a different

---

[2] This argument contradicts SunTrust's Eighth Affirmative Defense that there was a scrivener's error such that subsection (i) does not apply. *See* ECF No. 91 at 30-31; ECF No. 157 at 4.

[3] The Calrissian Trustee filed a statement of no distribution on July 22, 2019, almost five months before Plaintiffs made their initial demand. Ex. 6 (Calrissian Bankr. ECF No. 118). Therefore, it was clear to SunTrust that the Calrissian Bankruptcy would soon close, lifting the automatic stay.

3

theory of liability than that requested by Plaintiffs—does not excuse SunTrust's failure to sue all Virgo entities identified by Plaintiffs and illustrates the consequences of that failure. To date, SunTrust has not collected a penny from what it calls its "successful" suit against VSC.

*Third*, SunTrust's argument that Virgo Societas Partnership III (Onshore), L.P. and Virgo Societas Partnership III (Offshore), L.P. are not liable for Calrissian's debts as limited partners under Delaware law (Letter at 4) is misplaced. Plaintiffs requested that SunTrust sue these entities as **alter egos or principals** of Calrissian, not as liable for Calrissian's debts due to their limited partner status. *E.g.*, ECF No. 45-7. SunTrust's argument is thus irrelevant as a matter of law. *See Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*, 2016 WL 1267781, at *22 (S.D.N.Y. Mar. 30, 2016) (limited partners can be subject to alter ego liability). And in any event, Delaware law does not apply. *See infra* at § II(D).

### D.     There Is Sufficient Evidence Of Agency And Alter Ego

With respect to alter ego and agency liability, SunTrust applies the wrong law and misconstrues the burden of proof.[4] SunTrust assumes without explanation that Delaware law governs despite the clear language of the Credit Agreement (§ 10.5) and the Guaranty (§ 10.6) that New York law governs. *See Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131 (2d Cir. 1991). Moreover, as set forth in Plaintiffs' pre-motion letter for summary judgment, there is ample evidence that Virgo was the alter ego of Calrissian. ECF No. 157 at 2-4.

*Alter Ego:* Plaintiffs have demonstrated (and SunTrust has conceded) that Virgo used Calrissian's corporate form to perpetrate an injustice. As explained in Plaintiffs' pre-motion letter, SunTrust has *admitted* facts demonstrating an alter ego relationship: SunTrust acknowledged that Virgo used Calrissian, a shell company without assets, to act as the guarantor of the loan to induce the Lenders to make the loan. ECF No. 157 at 2-4. Further, SunTrust represented to the Bankruptcy Court, and confirmed in discovery here, *inter alia,* that Virgo "controlled" and "mismanage[d]" Calrissian and Alchemy, causing them to default on the loan and go into bankruptcy. *Id.* Virgo also used Calrissian to siphon funds from Alchemy, leaving both Alchemy and Calrissian bankrupt. *See* Ex. 7 (Bowring Tr.) at 213:21-214:16, 300:05-303:07.

*Agency:* Sufficient evidence exists to hold Virgo liable as Calrissian's principal. ECF No. 157 at 2-4. Among other things, (i) Calrissian acted on behalf of Virgo and for its benefit, creating an appearance of agency; (ii) Virgo's intentional and negligent acts in negotiating the loan documents and in managing Calrissian and Alchemy also created an appearance of agency; (iii) the Lenders reasonably and in good faith relied on these acts; and (iv) such reliance resulted in harm to the Lenders. *See, e.g.*, Ex. 8 (SunTrust 30(b)(6) Oct. 18, 2023 Dep. Tr.) at 147:20-148:11, 195:21-25, Ex. 9 (ALC00787439), Ex. 10 (ALC00844265), Ex. 11 (EB00084856). This is sufficient to establish agency liability. *See Astra Oil Co., LLC v. Hydro Syntec Chems., Inc.*, 2014 WL 630676, at *4 (S.D.N.Y. Feb. 18, 2014) (listing elements of agency); *Carruthers v. Flaum*, 365 F. Supp. 2d 448, 475 (S.D.N.Y. 2005) (principal can be liable for agent's breach of contract). In any event, the question of agency is "normally a question of fact" and "therefore inappropriate for resolution using a summary judgment standard." *Astra Oil*, 2014 WL 630676, at *4.

---

[4]   As noted in Plaintiffs' pre-motion letter, SunTrust has the burden of proof on its affirmative defenses that there is no evidence of alter ego. ECF No. 157 at 3 n.5.

4

E.     **Issues Of Fact Exist As To SunTrust's Conduct**

SunTrust ignores a plethora of evidence showing it acted with gross negligence and willful misconduct and is thus not protected by Section 9.2 of the Credit Agreement. The Court previously found that Plaintiffs sufficiently pleaded gross negligence and willful misconduct because SunTrust showed "'deliberate . . . indifference to the rights of [Plaintiffs]'" by "refusing to perform its duties and responsibilities under the Credit Agreement unless Plaintiffs provided SunTrust with a general release of all claims." ECF No. 65 at 38 (citations omitted). Nothing in SunTrust's Letter contradicts this. SunTrust's argument (Letter at 5) that it did not request a release in response to Plaintiffs' demand to sue but rather in connection with the cost sharing proposal is fiction—SunTrust clearly refused to sue Virgo or to participate in a lawsuit funded by Emigrant without a general release of all known and unknown claims, past and present, whether or not related to this transaction. Ex. 12.[5] Indeed, SunTrust's corporate representative testified that absent "an acceptable release" or assignment, there was no circumstance in which SunTrust would join a suit against Virgo. Ex. 1 at 299:19-300:21. As the Court previously held, such conduct could constitute gross negligence and/or willful misconduct.[6] Further, the fact that SunTrust sued one (defunct) Virgo entity under a different theory than the one requested by Plaintiffs does not eliminate the misconduct in refusing to sue the other Virgo entities without a release.[7]

Moreover, the evidence shows many other instances of misconduct, including: (i) the failure to sue Virgo for ulterior reasons; (ii) the refusal to provide the Lenders with material information, including Hemming Morse's work product; and (iii) the improper distribution of proceeds, including SunTrust's wrongful reimbursement of its own expenses.

III.   **THERE IS EVIDENCE OF DAMAGES FROM SUNTRUST'S FAILURE TO DISTRIBUTE FUNDS TO THE LENDERS**

There is ample evidence of Plaintiffs' damages resulting from SunTrust's undisputed failure to reimburse Plaintiffs' expenses with distributions from the Alchemy Bankruptcy estate. SunTrust ignores that Plaintiffs have provided *three* calculations of their reimbursable expenses. Exs. 13-15.[8] In fact, SunTrust's own expert provided a calculation of Plaintiffs' damages. Ex. 16 (Boland Rebuttal Ex. 2-A); Ex. 17 (Boland Rebuttal Ex. 2-B). For these reasons, there is a triable issue of fact as to the damages resulting from SunTrust's improper distributions.

---

[5] Plaintiffs' expert has opined that demanding such a release is not consistent with custom and practice of administrative agents.

[6] The fact that Emigrant gave PMB a release in connection with this litigation is irrelevant, **as PMB had no obligation or standing to sue Virgo** for breach of the Guaranty, and the release SunTrust sought was far more expansive than PMB's.

[7] SunTrust's claim that it requested a general release in relation to the cost-sharing proposal and not the demand to sue has no evidentiary basis and its logic is incomprehensible. If it were true, SunTrust could have simply sued Virgo, as directed, without regard to the cost-sharing proposal.

[8] It is not necessary for Plaintiffs to have an expert provide a calculation of their reimbursable expenses, since Plaintiffs' damages are based on simple addition of their counsel's invoices. *See Tardif v. City of New York*, 344 F. Supp. 3d 579, 596 (S.D.N.Y. 2018) (expert testimony "should not be directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help.").

5

Respectfully submitted,

*/s/ Corey Worcester*
Corey Worcester