**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EMIGRANT BANK AND PACIFIC MERCANTILE BANK,<br><br>                        Plaintiffs,<br><br>    v.<br><br>SUNTRUST BANK; TRUIST BANK; AND DOES 1 THROUGH 10 INCLUSIVE,<br><br>                        Defendants. | Civil Action No. 1:20-cv-02391-PGG-OTW |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE WANG'S ORDER DATED APRIL 11, 2024**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND ............................................................................................................... 3

    A.    From the Outset of Discovery, Plaintiffs State They Will Seek Discovery From Virgo Witnesses to Support Their Claims, and that the Witnesses Will Resist. ........................................................................................... 3

    B.    Plaintiffs Repeatedly Concede That Proving Alter Ego Status Is Part of Their Claim, Rather than an Affirmative Defense Truist Must Prove. ................. 4

    C.    Plaintiffs Initially Pursue <u>Other</u> Third-Party Discovery ......................................... 5

    D.    Plaintiffs Continue Their Unreasonable Delay in Pursuing the Discovery at Issue Here. ............................................................................. 6

    E.    The Virgo Intervenors' Pre-Motion Letter and the Parties' Responses. ................. 8

    F.    The Parties Complete Expert Discovery and Submit Summary Judgment Pre-Motion Letters. ................................................................... 9

    G.    Plaintiffs Take Inconsistent Positions at the Hearing and in Their Objection. ........................................................................................... 10

LEGAL STANDARD ..................................................................................................... 13

ARGUMENT ................................................................................................................. 14

I.    No Good Cause Exists to Reopen Discovery Based on Plaintiffs' Failure to Diligently Pursue the Discovery at Issue Here. ................................................ 14

    A.    Plaintiffs Lack Good Cause Because They Unreasonably Delayed Seeking the Discovery at Issue and Failed to Act with Any Diligence. .............. 14

    B.    Reopening Discovery Would Prejudice Truist. .................................................... 16

II.    If the Court Does Not Overrule the Objection on Rule 16 Grounds, It Should Find that Discovery Regarding Alter Ego Status is Relevant to Plaintiffs' Claims, But It Should Narrow Plaintiffs' Requested Discovery. ............................ 17

    A.    Plaintiffs Bear the Burden to Prove That Virgo Entities Were Calrissian's Alter Egos, and Discovery Regarding That Issue Is Generally Relevant. ............................................................................. 17

    B.    Numerous Categories of Information Sought in the Subpoenas at Issue Here are Not Relevant to Any Claims or Defenses. ............................................ 20

CONCLUSION ............................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Between The Bread Realty Corp. v. Salans Hertzfeld Heilbronn Christy & Viener,*
   290 A.D.2d 380 (1st Dep't 2002) ........................................................................ 18

*Brown v. Lockwood,*
   76 A.D.2d 721 (2d Dep't 1980) ...................................................................... 17, 19

*City of New York v. Beretta U.S.A. Corp.,*
   No. 00-CV-3641, 2005 WL 1279183 (E.D.N.Y. May 26, 2005)............................ 13

*Enzymotec Ltd. v. NBTY,*
   754 F. Supp. 2d 527 (E.D.N.Y. 2010) .................................................................. 14

*Levine v. Lacher & Lovell-Taylor,*
   256 A.D.2d 147 (1st Dep't 1998) ........................................................................ 19

*Logalbo v. Plishkin, Rubano & Baum,*
   558 N.Y.S.2d 185 (2d Dep't 1990) ...................................................................... 18

*Makhoul v. Watt, Tieder, Hoffar & Fitzgerald, LLP,*
   No. 11-CV-05108, 2014 WL 3490215 (E.D.N.Y. July 10, 2014)........................... 15

*N. Jersey Media Grp. Inc. v. Fox News Network, LLC,*
   No. 14-CV-7630, 2015 WL 7444822 (S.D.N.Y. Nov. 23, 2015)............................ 13

*Richardson v. Selsky,*
   5 F.3d 616 (2d Cir. 1993) .................................................................................... 13

*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC,*
   282 F.R.D. 76 (S.D.N.Y. 2012) ............................................................................ 13

*Slomiak v. Bear Stearns & Co.,*
   No. 83-CV-1542, 1985 WL 410 (S.D.N.Y. Mar. 12, 1985) .................................... 14

*Sokol Holdings, Inc. v. BMD Munai Inc.,*
   No. 05-CV-3749, 2009 WL 2524611 (S.D.N.Y. Aug. 14, 2009)............................ 14

*Thomas E. Hoar, Inc. v. Sara Lee Corp.,*
   900 F.2d 522 (2d Cir. 1990).................................................................................. 13

*U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc.*,
   No. 04-CV-6189, 2007 WL 2327068 (S.D.N.Y. Aug. 13, 2007)............................ 13

*Wood v. Mut. Redevelopment Houses, Inc.*,
   No. 14-CV-7535, 2019 WL 6174369 (S.D.N.Y. Nov. 19, 2019)............................ 14

*Xiong Ping Tang v. Marks*,
   133 A.D.3d 455 (1st Dep't 2015) ................................................................... 18, 19

*Zee-Bar, Inc. v. Kaplan*,
   162 F.R.D. 422 (D.N.H. 1993) ............................................................................ 13

**Statutes**

28 U.S.C. § 636(b)(1)(A) ............................................................................................. 13

**Other Authorities**

Fed. R. Civ. P. 16(b)(4)........................................................................................... 14, 15

Fed. R. Civ. P. 72(a) ................................................................................................... 13

Defendant Truist Bank, successor by merger to Defendant SunTrust Bank (collectively, "Truist"), submits this Response in Opposition to Plaintiffs' Objection (the "Objection," ECF 170) to Judge Wang's Order dated April 11, 2024 (the "Order," ECF 169).

## PRELIMINARY STATEMENT

Plaintiffs' must prove that entities affiliated with Virgo Investment Group were alter egos of Calrissian LP because it is an element essential to their case against Truist. Plaintiffs and Truist were lenders under a credit agreement to borrower Our Alchemy, LLC, with Calrissian acting as guarantor. Alchemy and Calrissian each defaulted in 2016 and entered bankruptcy. That left the lenders with about $46 million in unrepaid debt. Years later, Plaintiffs demanded that Truist sue four non-party Virgo affiliates to try to recoup the debt from those entities under a theory that they were Calrissian's alter egos. Truist did not bring alter ego lawsuit (though it obtained a judgment against one entity on other grounds). Plaintiffs sued Truist for breach of contract for not bringing the alter ego lawsuit. But Truist's refusal didn't cause Plaintiffs to lose the money it lent to the borrower; that loss occurred years earlier as a direct result of borrower's default and Calrissian's failure to make good on the guaranty. Instead, Plaintiffs theorize that the alter ego claims would have succeeded and produced a *recovery* from Virgo entities—but they did not obtain that recovery due to Truist's refusal to sue. Thus, in order to establish damage and loss causation, as they must, Plaintiffs must prove that the Virgo entities were Calrissian's alter ego, and the demanded suit would have produced a judgment and recovery. Accordingly, whether the entities were Calrissian's alter egos is plainly relevant.

Plaintiffs previously conceded that they bear this burden. In their Objection, however, Plaintiffs suggest that they need not prove this element of their claim—and that whether Virgo entities were Calrissian's alter ego might not be relevant at all. The Court should flatly reject those arguments. However, the Court need not decide the burden and relevance issues in order to

overrule Plaintiffs' Objection because Plaintiffs' Objection fails for a different reason:  No good cause exists to reopen discovery to allow Plaintiffs to obtain discovery that they failed to seek diligently.  Discovery opened in March 2023, and Plaintiffs represented to the Court in April 2023 that, if they pursued the third-party discovery they seek now, it would be the subject of extensive motion practice.  In fact, Plaintiffs informed the Court that, if they sought the depositions at issue here, they anticipated extensive opposition and "enforcement actions in different jurisdictions." The Court repeatedly warned the parties to complete discovery expeditiously, and it set an initial fact discovery deadline of August 14, 2023.  Despite this, Plaintiffs sat on their hands for months, not even attempting to begin the process of seeking depositions of Virgo witnesses as the original fact discovery deadline expired and as the extended deadline quickly approached.  Plaintiffs finally served the deposition subpoenas at issue on November 6, 2023, and Virgo Intervenors (not Plaintiffs) first brought the dispute to the Court's attention on November 16, 2023—just weeks away from the twice-extended fact discovery deadline.  Put simply, Plaintiffs waited to serve the subpoenas at issue until it was impossible to obtain compliance during the fact discovery period.

Reopening discovery now will impose significant unnecessary costs and prejudice on Truist.  At this point, fact discovery is closed, and expert discovery has also concluded.  Truist served three expert reports, including a report responding to two reports from Plaintiffs' experts relating to the alter ego issues that are the subject of the discovery requested here.  The parties conducted five expert depositions by the expert discovery deadline of February 16, 2024.  Pursuant to the Court-ordered schedule, the parties then submitted their summary judgment pre-motion letters and responses on February 21 and February 28.  Plaintiffs' desire to reopen discovery now raises the specter of Plaintiffs serving amended expert reports, potential demands for additional expert depositions, and lengthy delays in reaching summary judgment.  None of this is justified.

Plaintiffs cannot satisfy Rule 16's good cause standard to support reopening fact discovery. Accordingly, the Court should and should overrule their Objection on that ground alone.

## <u>BACKGROUND</u>

### A.    From the Outset of Discovery, Plaintiffs State They Will Seek Discovery From Virgo Witnesses to Support Their Claims, and that the Witnesses Will Resist.

The discovery stay in this matter was lifted on March 28, 2023.  ECF 65.  On April 13, 2023, the Court held a case management conference, during which counsel for Plaintiffs stated that they "agree[d], in large part," with Truist's position that, "for the plaintiffs to prevail here, they're going to have to show that had [Truist] brought the claims against Virgo that the required lenders demanded that [Truist] bring, that those claims would in fact have prevailed and would have resulted in [our]  recovering the money that [Plaintiffs] say that they're entitled to here" because "[i]t's simply a matter of loss causation, an element of [Plaintiffs'] claim."  ECF 84-1 (April 13 Hr'g Tr.) at 3:14–4:9.[1]  Counsel for Plaintiffs further argued that "[a]n important part of our claim is that Virgo and its subsidiary [*sic*] are essentially alter ego, and the depositions that we would need to take of the overlapping Virgo and Calrissian employees would be used to show that alter ego status."  *Id.* at 4:4–9.

As of the April 13 conference, Truist had not yet served its Answer or asserted any defenses. *See* ECF 72.  Nonetheless, consistent with Plaintiffs' burden on the alter ego issue, Plaintiffs already anticipated serving deposition subpoenas on Virgo Investment Group ("VIG"), affiliates of VIG ("Virgo entities"), and VIG's employees—and needing to move to compel compliance with those subpoenas.  ECF 84-1, at 3:2–5 ("From Virgo, we would expect . . . two to three depositions . . . [and w]e're expecting to compel motion practice in terms of [those depositions]").

---

[1] Citations to transcripts reflect transcript pagination; citations to other documents reflect the ECF page numbers.

On the afternoon of April 13, 2023, the Court issued a case management order, setting a deadline of August 14, 2023, to complete fact discovery, including non-party discovery.  ECF 71.

**B.**     **Plaintiffs Repeatedly Concede That Proving Alter Ego Status Is Part of Their Claim, Rather than an Affirmative Defense Truist Must Prove.**

Throughout the litigation, Plaintiffs have asserted that their claims require discovery from and about Virgo entities to establish their "underlying" alter ego claim, consistent with the fact that their claims require proof of the Virgo entities' alter ego status as a necessary causation or damages element of their claims.  Plaintiffs have made the following statements, among others:

- April 13, 2023, Case Management Conference: "**An important part of our claim is that Virgo and its subsidiary are essentially alter ego**, and the depositions that we would need to take of the overlapping Virgo and Calrissian employees would be used to show that alter ego status."  ECF 84-1, at 4:4–9 (emphasis added).

- June 14, 2023, Letter to Court: "Virgo's motion should be denied for three reasons.  First, **the documents at issue are plainly relevant to Plaintiffs' claims in this litigation**."  ECF 81, at 1 (emphasis added).

- July 28, 2023, Letter to Court: "The Baker Tilly documents thus relate to Virgo's knowledge that Alchemy's financial reporting was overstated, its control of Calrissian in the transaction with Nu Image, and its failure to disclose material facts to the Lenders, all of which bear on **the alter ego issue which underlies Plaintiffs' claims** against SunTrust." ECF 93, at 3 (emphasis added).

- October 24, 2023, Letter to Virgo Intervenors: "PLAINTIFFS' REQUESTS ARE REASONABLE IN SCOPE AND **RELEVANT TO PLAINTIFFS' CLAIMS AGAINST SUNTRUST** . . . Request No. 1 (Documents related to Calrissian's formation): This Request is relevant to VIG's intent and purpose in forming Calrissian, which speaks directly to whether a claim against VIG as Calrissian's alter ego would have been successful. . . . **These documents are relevant to Plaintiffs' claims.**  Documents showing VIG's management of Alchemy through its domination and control of Calrissian support **Plaintiffs' allegations that Calrissian was VIG's alter ego**."  ECF 124-11, at 5–6 (emphasis added).

- October 30, 2023, Letter to Court: "The documents sought in the Subpoena are relevant and **critical to proving Plaintiffs' underlying claim that Virgo was Calrissian's alter ego and/or its principal**."  ECF 124, at 3 (emphasis added).

As set forth herein, despite acknowledging that their claims require them to prove that Virgo entities were Calrissian's alter ego, Plaintiffs consciously chose not to pursue depositions of

Virgo witnesses for months, until the very end of the discovery period, even though they previously

told the Court they expected protracted motion practice related to any such deposition subpoenas.

### C.    Plaintiffs Initially Pursue <u>Other</u> Third-Party Discovery.

Plaintiffs chose strategic staging of discovery over diligence.  Knowing they bore the

burden to establish that Virgo entities were Calrissian's alter ego, Plaintiffs commenced *some* third-

party discovery shortly after the case management conference.  On May 8, 2023, Plaintiffs served

document subpoenas on seven non-parties, including VIG, Nu Image, Inc., and Baker Tilly US

LLP.  ECF 80-1 (Nu Image); 85-1 (Baker Tilly); 97-1 (VIG).

Plaintiffs were right about Virgo's resistance to discovery: On May 23, VIG served

objections to the document subpoena directed at it.  ECF 124-2.  Then, on June 11, 2023, the Virgo

Intervenors filed a pre-motion letter regarding their anticipated motion to intervene for a protective

order over the Nu Image subpoena.  ECF 80.  On July 18, VIG filed a separate pre-motion letter

regarding an anticipated motion to intervene and quash, or alternatively for a protective order

regarding, the subpoena Plaintiffs served on Baker Tilly.  ECF 85.  And on August 17, 2023, VIG

filed a pre-motion letter regarding an anticipated motion for protective order with respect to two

of the 22 requests that Plaintiffs included in their subpoena served on VIG.  ECF 97.

Plaintiffs filed opposition letters to all three disputes raised with the Court between June

and August.  ECF 81; ECF 93; ECF 99.  Plaintiffs did not, however, move to compel VIG to

produce documents with respect to any other requests, nor did Plaintiffs take any action to seek or

serve deposition subpoenas on any Virgo witnesses, let alone move to compel any  depositions—

despite telling the Court on April 13 that they wanted Virgo depositions and anticipated motion

practice to compel them.  *See id.*; ECF 84-1 at 3:2–5.

On June 14, 2023, Plaintiffs wrote to the Court, noting that "[t]he fact discovery deadline

in this action is quickly approaching in mid-August, and the parties need to proceed with document

collection and review so that they may proceed with depositions."  ECF 81, at 5.  Despite that, even though discovery had been ongoing for months, Plaintiffs still had not served a single deposition subpoena on anyone affiliated with the Virgo entities at that point.

On July 14, 2023, still having taken no action to seek Virgo depositions, Plaintiffs filed a letter with the Court, noting that they may take depositions of third parties "located outside the jurisdiction of this Court," who "may resist having their depositions taken."  ECF 84, at 4. Plaintiffs noted that they had anticipated since May 2022 that such third-party discovery "was likely to be extensive and require enforcement actions in different jurisdictions."  *Id.* at 1 n.1. Despite that, Plaintiffs failed to serve a single deposition subpoena on a Virgo witness over the next four months.

> ### D.    Plaintiffs Continue Their Unreasonable Delay in Pursuing the Discovery at Issue Here.

On September 20, 2023, Judge Wang held a hearing on the three discovery disputes between the Virgo Intervenors and Plaintiffs, which were raised between June and August.  *See* ECF 118-1 (Sept. 20 Hr'g Tr.).  At the hearing, Judge Wang stated she was "extremely concerned that the discovery sought from these subpoenas is duplicative and not relevant and untimely" and directed the parties to provide "one last shot at explaining their position."  *Id.* at 33:21 – 34:19. On September 29, Plaintiffs, VIG, and Truist filed supplemental letter briefs.  ECF 118, 119, 120. Despite the fact that the Court set the original discovery cutoff for August 14, 2023,[2] and despite

---

[2] On July 27, the Court extended the third-party discovery deadline to November 14.  ECF 92.  On September 20, the Court extended the deadline to December 7.  ECF 106.  For reasons unknown to Truist, Plaintiffs never moved to compel production of any documents or depositions from VIG until more than a month and a half after the hearing before Judge Wang and more than a month after the parties' filed their supplemental briefs.

Judge Wang's warning, as of September 29, Plaintiffs still had not served any Virgo witness deposition subpoenas. *See id.*; ECF 84-1 at 3:2–5.

On October 30, 2023, Plaintiffs filed a letter seeking to compel VIG to produce documents for the first time. ECF 124. At that point, discovery had opened more seven months earlier, and Plaintiffs *still* had not served a single deposition subpoena on any Virgo witness or entity.[3] On the evening of October 30, Judge Wang denied Plaintiffs' letter request as moot. ECF 125. Judge Wang referenced the September 20 hearing, noting the Plaintiffs' new letter concerned "the same subpoenas and the same dispute, but oddly [did] not mention the hearing of September 20, 2023, the guidance [Judge Wang] gave at the hearing, and the subsequent briefing." ECF 125.

A week after Judge Wang denied Plaintiffs' request to compel VIG to produce documents, on November 6, 2023, Plaintiffs for the first time served the deposition subpoenas on VIG, Chris MacDonald, Jesse Watson, and Mark Perez. ECF 133-2 (Perez); ECF 133-3 (Watson); ECF 133-4 (MacDonald); ECF 133-5 (VIG corporate representative). Despite Plaintiffs having informed the Court months earlier that they expected significant motion practice and enforcement actions in other jurisdictions regarding these subpoenas (ECF 84, at 1, 4), Plaintiffs waited more than seven months after discovery opened to serve them—and they served the subpoenas with only 31 days remaining in the twice-extended discovery period.[4] ECF 133-2; ECF 133-3; ECF 133-4; ECF

---

[3] At the October 26 Court conference, Plaintiffs requested an extension of non-party fact discovery until January 14, 2024. Plaintiffs made this request *before* serving the Virgo witness deposition subpoenas. Truist did not join the request. Truist did not oppose the request given the three motions pending before Judge Wang at the time, each of which had been raised relatively quickly. The deposition subpoenas and SS&C document subpoena at issue here are not similarly situated.

[4] It appears that Plaintiffs had not even notified the Virgo Intervenors that they intended to seek the depositions until they sent a letter to counsel for the Virgo Intervenors, dated October 16, 2023. ECF 124-9, at 2, 4. In that letter, Plaintiffs recognized that "[t]hird-party discovery in this matter concludes on December 7, 2023." *Id.* at 4.

133-5.  Plaintiffs have not explained why they waited for months to serve these subpoenas, until the end of the discovery period, given that Plaintiffs knew on April 13, 2023, that they would need to move to compel deposition testimony from Virgo witnesses.  *See* ECF 84-1, at 3:2–5.

### E.   The Virgo Intervenors' Pre-Motion Letter and the Parties' Responses.

On November 13, 2023, Judge Wang issued an opinion and order granting VIG's motions for protective orders regarding the Nu Image, Baker Tilly, and VIG subpoenas, and denied Plaintiffs' motion to compel further compliance with the VIG subpoena.  ECF 131.   Three days later, on November 16, 2023, VIG, Virgo Onshore and Virgo Offshore filed a pre-motion letter seeking a conference on their anticipated motion to quash the Virgo witness deposition subpoenas.  ECF 133.  In the Virgo Intervenors' letter, they also sought to quash a document subpoena that Plaintiffs served on SS&C Technologies, Inc. ("SS&C").  *See id.* at 3.  Although Plaintiffs contend that SS&C maintained Calrissian's books and records (ECF 135, at 2–3), Plaintiffs did not serve the subpoena until October 17, 2023 (ECF 133-1), more than six months after discovery opened.

Plaintiffs responded on November 20, 2023.  ECF 135.  In their response letter, Plaintiffs argued that "whether Plaintiffs have sufficient evidence to show that Virgo was the alter ego of Calrissian is a critical issue, one that requires documents and testimony from Virgo and Calrissian, and this is the basis for Plaintiffs' subpoenas to VIG and SS&C."  *Id.* at 2.[5]

Truist responded by separate letter, noting that "Plaintiffs' claims *do* require Plaintiffs to prove Truist would have successfully established that specific entities were Calrissian's alter ego."

---

[5] Although Plaintiffs responded to the Virgo Intervenors' letter, Plaintiffs never commenced an enforcement action in any jurisdiction against Mr. Perez, Mr. Watson, and Mr. MacDonald—even though none of those individuals has appeared in this case and apparently work and live in the Northern District of California.  Given that, is unclear if Plaintiffs' Objection will resolve the dispute with those individual witnesses, or if further enforcement actions in the Northern District of California will be necessary.

ECF 136, at 5 n.7.  Truist, however, further explained that Plaintiffs were delinquent in seeking depositions from the Virgo Intervenors and that neither Plaintiffs' belated attempts to seek depositions of Virgo witnesses nor Plaintiffs' document subpoena to SS&C justified or established "good cause" for an extension of the fact discovery deadline beyond December 7, 2023.  ECF 136, at 1 n.1 & 4.  Citing multiple cases decided in this District, Truist also noted that "[c]ourts regularly decline to enforce subpoenas issued shortly before the close of discovery where the issuing party did not demonstrate due diligence in seeking enforcement." *Id.* at 4.

### F.    The Parties Complete Expert Discovery and Submit Summary Judgment Pre-Motion Letters.

The fact discovery period closed on December 7, 2023.  ECF 106, at 5.[6]  The parties' affirmative expert reports were due and served on December 14, 2023.  *See* ECF 153, at 1.  Plaintiffs served three affirmative expert reports, including a report by Mark Rule of AlixPartners, regarding his opinions on "Virgo's" alleged indicia of alter ego, and a report by Ben Sheppard of GHJ Advisors, regarding his opinions on alleged harm caused by "Virgo" and whether "Virgo" had the ability to pay a judgment if Truist had sued "Virgo" under an alter ego theory of liability.  *See* ECF 162-1 (Rule Report); ECF 162-3 (Sheppard Report); *see also* ECF 159, at 1.

The parties' rebuttal expert reports were due and served on January 18, 2024.  *See* ECF 153, at 1.  Truist served two expert rebuttal reports, including a report by Carlyn Irwin of

---

[6] Pursuant to Judge Wang's April 11 order, one Truist witness appeared on May 1 for the continuation of a deposition limited by both time (90 minutes) and scope (testimony only about his knowledge on one specific issue).  ECF 170-1, at 25:22–27:16.  Judge Wang also ordered Plaintiffs to produce certain notes they previously withheld.  ECF 169, at 1.  In doing so, however, Judge Wang did <u>not</u> generally extend the fact discovery deadline beyond December 7, 2023 and instead expressly held that discovery would be allowed only as to those limited items.  *Id.* at 1 ("Fact discovery is extended to **May 10, 2024, <u>solely</u>** for the limited continued deposition of Mr. De Jesus-Caballero and the production of Mr. Bowring's handwritten notes[.]" (emphasis in original)).

Cornerstone, responding to Mr. Rule's affirmative report on alleged indicia of alter ego relating to "Virgo" and Mr. Sheppard's report on alleged harm caused by "Virgo" and "Virgo's" ability to pay a judgment.  *See* ECF 162-5; *see also* ECF 159, at 1.  In total, the parties served seven expert reports from five proffered expert witnesses.  Following the service of those reports, the parties completed the depositions of the five experts by February 16, 2024.  *See* ECF 153, at 2.

On February 21, 2024, pursuant to the Court's case management order, Truist and Plaintiffs each served pre-motion letters regarding their anticipated motions for summary judgment.  ECF 157 (Plaintiff's summary judgment pre-motion letter); ECF 158 (Truist's summary judgment pre-motion letter).  On February 28, 2024, also pursuant to the Court's case management order, Truist and Plaintiffs each served response letters to the opposing side's summary judgment letters.  ECF 160 (Truist's response letter); ECF 161 (Plaintiffs' response letter).

### G.    Plaintiffs Take Inconsistent Positions at the Hearing and in Their Objection.

On April 11, 2024, Judge Wang held a hearing on various disputes, including the discovery disputes between Plaintiffs and the Virgo Intervenors.  *See* ECF 170-1.  Almost immediately, counsel for Plaintiffs stated that Plaintiffs had reversed their position and now believe discovery of Virgo is *not* relevant, despite having represented to the Court for the prior year that it was a crucial part of their case: "And to be clear, we actually agree with your Honor on the relevance ruling.  We hope that this information isn't relevant to the dispute, and we hope we don't have to take it."  ECF 170-1, at 3:14–17.

Plaintiffs' incredible assertion that they *agreed* with Judge Wang's prior orders denying Plaintiffs' requested discovery flatly contradicted countless prior statements Plaintiffs made to the Court, including without limitation the following:

- "An important part of our claim is that Virgo and its subsidiary are essentially alter ego, and the depositions that we would need to take of the overlapping Virgo and Calrissian employees would be used to show that alter ego status."  ECF 84-1, at 4:4–9.

- "[T]he subpoena seeks documents relevant to Plaintiffs' allegations that Virgo was an alter ego or principal of Calrissian, and used its alter ego relationship to defraud the Lenders and for other wrongful purposes." ECF 81, at 2–3.

- "The Baker Tilly documents thus relate to Virgo's knowledge that Alchemy's financial reporting was overstated, its control of Calrissian in the transaction with Nu Image, and its failure to disclose material facts to the Lenders, all of which bear on the alter ego issue which underlies Plaintiffs' claims against SunTrust." ECF 93, at 3.

- "As set forth in Plaintiffs' prior briefing (ECF No. 93), documents relating to Baker Tilly are highly relevant." ECF 99, at 3.

- "These documents are relevant . . . The Documents Are Relevant To The Claims And Defenses In This Action." ECF 118, at 1.

- "[T]he reason that the discovery from Baker Tilly and Nu Image is relevant here is because it goes to two of the elements of alter ego liability. The first is Virgo's control over Calrissian and the second is whether Virgo used that control to commit a fraud or other wrong. So starting with Baker Tilly, your Honor, the Baker Tilly documents here, in terms of the first element of control, we think will show that Virgo was driving the transaction, it was driving the need for the loans, and that relationship between Virgo and Calrissian is relevant to the alter ego allegation." ECF 118-1, at 26:8–21.

- "The documents sought in the Subpoena are relevant and critical to proving Plaintiffs' underlying claim that Virgo was Calrissian's alter ego and/or its principal." ECF 124, at 3.

- "The document requests in the VIG Subpoena (the 'Requests') seek documents that are directly relevant to the allegations and defenses in this case." ECF 138, at 19.

- "[T]he requested documents are relevant since they provide unique evidence regarding (i) Virgo's control over Calrissian in the purchase of Alchemy; (ii) Virgo's knowledge of Alchemy's finances when it formed Calrissian to guarantee the loans; and (iii) Virgo's knowledge of Alchemy's finances when it caused Alchemy to draw on the loan and transfer the funds to Virgo via Calrissian. All of this evidence goes to the alter ego claim." ECF 138, at 24.

Plaintiffs' new position also contracted numerous statements they made to the Virgo

Intervenors when seeking discovery from them, including without limitation the following:

- "We understand from our prior meet and confer correspondence that VIG does not intend to produce any documents relating to the Baker Tilly Report or the Nu Image Arbitration, despite our explicit requests for such documents and the obvious relevance to this litigation." ECF 124-7, at 2.

- "Virgo's internal communications regarding these topics are highly relevant to this litigation. As we have explained, one of the key issues in this case is whether a breach of

contract claim alleging that Virgo is the alter ego or principal of Calrissian would have been successful." ECF 124-7, at 3.

- "Perez's testimony is highly relevant to VIG's knowledge of Alchemy's true financial state and alleged fraudulent intent in offering a guaranty through Calrissian, which is relevant to the underlying alter ego claim in this action." ECF 124-11, at 8.

- "Watson's testimony is highly relevant to VIG's control over Calrissian, which is relevant to the underlying alter ego claim in this action." ECF 124-11, at 8.

- "[MacDonald's] testimony will be particularly relevant to any fraudulent conduct with regard to Plaintiff Emigrant Bank, which is relevant to the underlying alter ego claim in this action." ECF 124-11, at 8.

Following the hearing, Judge Wang entered the Order denying Plaintiffs' discovery requests. ECF 169. Plaintiffs subsequently requested that Truist agree that the discovery Plaintiff seeks rises and falls with any ruling on Plaintiffs' prior discovery disputes with the Virgo Intervenors that are subject of pending Objections. Truist did not agree, as Plaintiffs request to compel the discovery at issue here fails for the separate and independent reason that no good cause exists to reopen or extend the fact discovery schedule to allow for depositions and document productions that Plaintiffs unreasonably delayed seeking.

Plaintiffs then filed their Objection on April 25, 2024. ECF 170. In the Objection, however, Plaintiffs vacillate between two different positions. At some points, Plaintiffs contend that discovery from the Virgo entities and witnesses is relevant, full stop, contradicting their position before Judge Wang. *Id.* at 4 ("The April 11 Order is clearly erroneous and contrary to law . . . . The April 11 Order relies solely on the prior erroneous order issued by Magistrate Judge Wang on November 13, 2023 quashing other discovery related to VIG and its affiliates."). At other points, Plaintiffs seem to suggest that discovery about Virgo entities and witnesses is relevant only if Truist is correct about whether Plaintiffs bear the burden of proof as to the underlying alter ego claim. *Id.* at 16 ("Therefore, Plaintiffs respectfully request that the Court sustain their Objections

to the November 13 Order and the April 11 Order or, in the alternative, affirm Magistrate Judge Wang's ruling that Plaintiffs need not prove that Virgo is Calrissian's alter ego.").

## <u>LEGAL STANDARD</u>

Magistrate judges' orders on non-dispositive issues, including pretrial discovery motions, will be upheld unless they are clearly erroneous or contrary to law. *N. Jersey Media Grp. Inc. v. Fox News Network, LLC*, 2015 WL 7444822, at *2 (S.D.N.Y. Nov. 23, 2015) (citing *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990)); Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).

A magistrate judge's ruling is "contrary to law" only if "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 78 (S.D.N.Y. 2012) (denying request to vacate magistrate's order refusing to permit untimely discovery). A magistrate judge's order is "clearly erroneous" only when the district court reaches a "definite and firm conviction that a mistake has been committed." *Id.* (citation omitted). This is a highly deferential standard wherein "the party seeking to overturn a magistrate judge's decision thus carries a heavy burden." *N. Jersey Media Grp.*, 2015 WL 7444822, at *2 (citation omitted); *U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc.*, 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007) (finding a magistrate judge's orders on discovery matters are entitled to considerable deference and declining to overrule).

Moreover, a district court may overrule an objection for any reason supported by the record, including grounds other than those upon which the magistrate judge relied. *See City of New York v. Beretta U.S.A. Corp.*, 2005 WL 1279183, at *1 (E.D.N.Y. May 26, 2005) (affirming magistrate judge's order denying request for discovery on different, timeliness-related grounds) *(citing Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir. 1993) (The court "may affirm on any basis supported by the record, including grounds upon which the [judge] did not rely.")); *Zee-Bar, Inc. v. Kaplan,*

162 F.R.D. 422, 427 (D.N.H. 1993) ("[O]n different grounds, I affirm the Magistrate Judge's decision . . . .").

## **ARGUMENT**

I.    **No Good Cause Exists to Reopen Discovery Based on Plaintiffs' Failure to Diligently Pursue the Discovery at Issue Here.**

A.    **Plaintiffs Lack Good Cause Because They Unreasonably Delayed Seeking the Discovery at Issue and Failed to Act with Any Diligence.**

Pursuant to Rule 16, once the Court enters a case management order, the "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "To satisfy the good cause standard 'the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met.'" *Enzymotec Ltd. v. NBTY*, 754 F. Supp. 2d 527, 536 (E.D.N.Y. 2010) (quoting *Sokol Holdings, Inc. v. BMD Munai Inc*., 2009 WL 2524611, at *7 (S.D.N.Y. Aug 14, 2009)).

Courts regularly decline to enforce subpoenas issued shortly before the close of discovery where the issuing party did not demonstrate diligence in seeking enforcement. *See e.g., Wood v. Mut. Redevelopment Houses, Inc*., 2019 WL 6174369, at *9 (S.D.N.Y. Nov. 19, 2019) (declining to enforce subpoenas issued shortly before discovery closed where plaintiff had not demonstrated due diligence in seeking enforcement); *see also Slomiak v. Bear Stearns & Co.*, No. 83-cv-1542, 1985 WL 410, at *1 (S.D.N.Y. Mar. 12, 1985) ("The Court will not compel discovery after such a deadline, particularly where, as here, plaintiff's counsel knew of the witnesses and the arguable need for their testimony well in advance of the deadline.").

Here, the fact discovery period expired on December 7, 2023, under the Court-ordered schedule. ECF 106. The parties' affirmative and rebuttal expert reports were due and served on December 14, 2023, and January 18, 2024, respectively. *See* ECF 153, at 1. Expert depositions concluded on February 16, 2024. *See id.* at 2. The parties' time to serve affirmative summary

judgment pre-motion letters expired on February 21, 2024, and the time to serve responsive letters expired on February 28, 2024. *Id.* The parties submitted a total of four summary judgment letters on those dates. ECF 157; ECF 158; ECF 160; ECF 161. Accordingly, Plaintiffs must establish that good cause exists to reopen discovery to permit Plaintiffs to take the depositions of the Virgo witnesses sought and to compel SS&C to produce documents. *See* Fed. R. Civ. P. 16(b)(4).

Plaintiffs have not established—and cannot establish—good cause to justify extending or reopening discovery to obtain these depositions or documents. Plaintiffs failed to exercise diligence in pursuing the depositions and document discovery they seek here. As detailed above, Plaintiffs unreasonably delayed seeking this discovery. Plaintiffs informed the Court on April 13, 2023, that they anticipated Virgo witnesses would resist any depositions. ECF 84-1, at 3:2–5; *id.* 4:4–9. Plaintiffs subsequently told the Court that they expected enforcement actions *in different jurisdictions* if they moved forward with deposition subpoenas to Virgo witnesses. ECF 84, at 1 n.1, 4. And the Court repeatedly warned the parties to complete discovery expeditiously, consistent with the Court's initial fact discovery deadline of August 14, 2023. ECF 71. Despite all that, Plaintiffs knowingly and consciously chose not to serve deposition subpoenas on *any* Virgo witnesses for seven months, waiting until the end of the twice-extended discovery period when there was no possible way that the Virgo parties' resistance—which Plaintiffs had long anticipated—could be resolved within the fact discovery period. *See* ECF 133-2; ECF 133-3; ECF 133-4; ECF 133-5.[7]

By their unnecessary and unreasonable delays in serving the subpoenas, Plaintiffs plainly failed to act with diligence. *See Makhoul v. Watt, Tieder, Hoffar & Fitzgerald, LLP*, No. 11-cv-05108, 2014 WL 3490215, at *2 (E.D.N.Y. July 10, 2014) (denying motion to compel enforcement of deposition subpoena where moving party identified the need for the deposition three months before the

---

[7] The same is true of the SS&C subpoena, which Plaintiffs served only weeks earlier, far too late for the anticipated objections to be resolved during the fact discovery period. ECF 133-1.

end of discovery, waited until 10 days before the close of discovery to file the motion, and provided no explanation for the delay).   Accordingly, Plaintiffs the Court should overrule Plaintiffs' Objection because no good cause exists to extend or reopen discovery as required by Rule 16.

**B.      Reopening Discovery Would Prejudice Truist.**

Although a party need not show prejudice to oppose an extension of the discovery schedule where no good cause exists, reopening fact discovery now for depositions and extensive document discovery would prejudice Truist.

As detailed above, opening expert reports were due and served on December 14, 2023.  *See* ECF 153, at 1.  Rebuttal reports were due and served on January 18, 2024.  *See id.* And expert depositions were completed by February 16.  *See id.* at 2. Plaintiffs served multiple reports about the very issues on which Plaintiffs now seek additional discovery.  Specifically, Mr. Rule's report included his opinions on "Virgo's" alleged indicia of alter ego, and Mr. Sheppard's report included his opinions on alleged harm caused by "Virgo" and whether "Virgo" had the ability to pay a judgment if Truist had sued "Virgo" under an alter ego theory of liability.  *See* ECF 162-1 (Rule Report); ECF 162-3 (Sheppard Report); *see also* ECF 159, at 1.  In response, Truist incurred significant expense in connection with the rebuttal report of Ms. Irwin, who responded to Mr. Rule's affirmative report on alleged indicia of alter ego relating to "Virgo" and Mr. Sheppard's report on alleged harm caused by "Virgo" and "Virgo's" ability to pay a judgment.  *See* ECF 162-5; *see also* ECF 159, at 1.  And the parties incurred significant fees and costs to depose those three experts (along with two other experts in the case) by February 16, 2024.  *See* ECF 153, at 2.

Plaintiffs' desire to reopen discovery into Virgo entities and witnesses—specifically about whether Virgo entities were Calrissian's alter egos—raises the specter of Plaintiffs serving amended expert reports, the need for additional expert depositions, and the imposition of lengthy delays in reaching summary judgment.   Indeed, Plaintiffs have maintained that they intend to

reopen expert discovery and serve new or revised expert reports if they obtain additional discovery from VIG or its affiliates.  None of this is justified, and it will prejudice Truist through extensive duplicative costs and time burdens.

Moreover, reopening discovery would set back the entire case, which the Court has long warned the parties needs to move quickly.  The parties have filed their offensive and rebuttal summary judgment pre-motion letters, and the case can proceed to full summary judgment briefing and rulings.  And the potential to reopen discovery now for these disputes arises because Plaintiffs showed no diligence, waiting nearly **seven** months before serving the deposition subpoenas at issue today.

Based on Plaintiffs' lack of good cause, and the prejudice Truist faces, the Court should overrule Plaintiffs' Objection.

**II.    If the Court Does Not Overrule the Objection on Rule 16 Grounds, It Should Find that Discovery Regarding Alter Ego Status is Relevant to Plaintiffs' Claims, But It Should Narrow Plaintiffs' Requested Discovery.**

**A.    Plaintiffs Bear the Burden to Prove That Virgo Entities Were Calrissian's Alter Egos, and Discovery Regarding That Issue Is Generally Relevant.**

Plaintiffs bear the burden to prove that the Virgo entities were alter egos of Calrissian, as proof of alter ego status is necessary for Plaintiffs to establish any damages and any loss causation. Plaintiffs bear this burden because Plaintiffs only can establish damages if the alter ego lawsuit they demanded would have successfully produced a judgment and recovery.

"It is elementary that the measure of damages in a breach of contract action is that the plaintiff is, so far as monetarily possible, to be placed in the same situation as if the contract had been fully performed by the defendant." *Brown v. Lockwood*, 76 A.D.2d 721, 742–43 (2d Dep't 1980).  "The plaintiff must therefore prove that his loss was suffered as a result of the defendant's breach." *Id.* at 743.

17

*Lockwood* is instructive.  In that case, the plaintiff and defendant executed an agreement requiring, among other things, each party to make a loan to a business that they intended to run together.  *Id.* at 725–26.  The plaintiff made such a loan, but the defendant did not.  *Id.* at 727.  The business went bankrupt, and the plaintiff could not recover on his loan to the business.  *Id.* The plaintiff sued the defendant for breach of contract.  *Id.* at 727–28.  The court held that, "[s]ince plaintiff cannot recover the proceeds of the loan from the corporation because it is a bankrupt [entity], it follows that in order to shift the duty to repay from the corporation to defendant, he must show that he would have been repaid by the corporation but for defendant's nonperformance."  *Id.* at 743.  In other words, the court held that the plaintiff was required to prove that, but for defendant's breach, the plaintiff would have been repaid the money he loaned the business.  *Id.* at 742–43.

The same is true in the legal malpractice cases, which are analogous to Plaintiffs' claims here, which center on their allegation that Truist is liable for its failure to sue certain third parties. In that context, it is blackletter law that the plaintiff bears the burden of proof on the issue: "In order to establish proximate cause, a plaintiff must demonstrate that but for the attorney's negligence, she would have *prevailed* in the underlying matter or would not have sustained *any* ascertainable damages."  *Xiong Ping Tang v. Marks*, 133 A.D.3d 455, 456 (1st Dep't 2015) (quotation marks omitted; emphasis in original); *Between The Bread Realty Corp. v. Salans Hertzfeld Heilbronn Christy & Viener*, 290 A.D.2d 380, 380 (1st Dep't 2002) (same); *Logalbo v. Plishkin, Rubano & Baum*, 558 N.Y.S.2d 185, 187 (2d Dep't 1990) (a plaintiff asserting a legal malpractice claim must prove that the attorney's "negligence was the proximate cause of the actual damages sustained by the plaintiffs, and that but for the defendants' negligence, the plaintiffs would have been successful in the underlying action").  A legal malpractice plaintiff's burden to

establish that the underlying claim would have been successful (in the case of a would-be plaintiff) is an "essential element" of their claim. *Levine v. Lacher & Lovell-Taylor*, 256 A.D.2d 147, 151 (1st Dep't 1998).

Mere "speculation" on whether the underlying claim would have succeeded "is insufficient to establish" proximate cause of damages. *Xiong Ping Tang*, 133 A.D.3d at 456 (quotation marks omitted). Indeed, courts have held that a plaintiff's failure to prove that they "would have been able to collect" on a judgment can require judgment in favor of the defendant for lack of proof of proximate causation of damages. *See Levine*, 256 A.D.2d at 149 ("In the present case, plaintiffs have failed to show that 'but for' defendants' alleged negligence they would have been able to collect on their judgment or foreclose on the collateral.").

The same rules must apply where, as here, Plaintiffs allege not that Truist caused their loans to default, but rather that they hoped Truist could recoup some of the bad debt by suing loan non-parties, under a questionable legal theory, to recover the amounts they were due under the credit agreement. *Cf. Lockwood*, 76 A.D.2d at 743 ("Since plaintiff cannot recover the proceeds of the loan from the corporation because it is a bankrupt [entity], it follows that in order to shift the duty to repay from the [bankrupt entity] to defendant, he must show that he would have been repaid by the corporation but for defendant's nonperformance.") Here, Plaintiffs were "out" the money they loaned Alchemy and Calrissian long before they ever made a demand that Truist sue the Virgo entities. ECF 45 (Am. Compl.) ¶¶ 73–80 (borrower and guarantor's 2016 default); *id.* ¶ 87 (Plaintiffs' December 2019 demand that Truist sue "Virgo"). The only way Truist's refusal to sue the entities possibly could have caused Plaintiffs any harm or damage is if the lawsuit would have been successful and produced a recovery. *Cf. Lockwood*, 76 A.D.2d at 743; *Xiong Ping Tang*, 133 A.D.3d at 456; *Levine*, 256 A.D.2d at 149. Indeed, Plaintiffs' prior statements in this litigation

19

reflect their burden to establish the alter ego status of the Virgo entities. *See supra*, at 3–4 (recounting Plaintiffs' statements). In fact, had Truist sued but a court found the Virgo entities were not Calrissian's alter ego—or if the Virgo entities could not satisfy the judgment—the lenders would have been *worse off* because they would have spent millions of dollars on fruitless litigation.

Accordingly, Plaintiffs bear the burden to show that the four Virgo entities they have identified were Calrissian's alter ego. Discovery into that question is thus generally relevant.

**B.   Numerous Categories of Information Sought in the Subpoenas at Issue Here are Not Relevant to Any Claims or Defenses.**

While discovery into whether the four Virgo entities were Calrissian's alter ego is relevant, significant portions of Plaintiffs' proposed discovery requests stray far afield from that issue. Accordingly, even if the Court declines to overrule Plaintiffs' Objection for lack of good cause to extend or reopen discovery, the Court should narrow the scope of Plaintiffs' proposed discovery as detailed below, or remand the matter to Judge Wang to assess the scope of the requested discovery.

Numerous of Plaintiffs' proposed topics for the corporate representative deposition of VIG are overbroad and irrelevant. For example, Topic 4 seeks testimony about "Due diligence performed by You or on Your behalf relating to the Alchemy Transaction, including any due diligence performed by Baker Tilly." ECF 133-5, at 9. But there is no conceivable way that VIG's due diligence about *Alchemy* is relevant. As the Bankruptcy Court ruled, any claims alleging that a Virgo entity was *Alchemy's* alter ego belong to the Alchemy Trustee, not to any of the lenders.[8] ECF 138-1, at 3 ("[Plaintiffs] may not pursue causes of action or theories of recovery in the State Court Litigation against a party on the basis that that party was the alter ego of the Debtors (Our Alchemy, LLC and Anderson Digital, LLC, collectively the Debtors)."); *see also* 138-3, at 68:5-11 (Bankruptcy Court:

---

[8] Unlike the Calrissian bankruptcy, which was closed in 2020 without a discharge of Calrissian's debt, the Alchemy bankruptcy proceedings continue to this day.

"[Plaintiffs] certainly cannot pursue claims based on an alter ego theory. . . . So, to the extent they're trying to argue that the debtor made misrepresentations and Virgo is somehow responsible for those misrepresentations because they were the alter ego of the debtor, they can't bring those claims.").

Similarly, Topic 6 seeks testimony about "Your role in the management of Alchemy."  But, again, any deficiencies in managing *Alchemy* are not relevant to whether a different entity— *Calrissian*—was the alter ego of a Virgo entity.  ECF 133-5, at 9.  The same problem—focus on issues at Alchemy, rather than issues at Calrissian—reveals the lack of relevance of Topics 8, 9, and 10.  *Id.*

Nor have Plaintiffs offered any explanation for how Topic 11 is relevant: "The Nu Image Arbitration, including the claims at issue, the evidence presented, Your participation, and the outcome." ECF 133-5, at 9.  Accordingly, even if the Court were to order the deposition of a VIG corporate representative, the Court should strike Topics 4, 6, 8, 9, 10, and 11 from the notice of deposition.

Likewise, Request No. 5 in the document subpoena to SS&C seeks all documents and communications regarding any transactions, payments, or transfers between *any* of the following entities: "Alchemy, Calrissian, Virgo, OA Holdings, and OA Partners."  ECF 133-1, at 14.  The question in this case, however, is whether four Virgo entities (not OA Holdings or OA Partners) were the alter egos of Calrissian.  Accordingly, this request is significantly overbroad, as transactions between OA Holdings and OA Partners are irrelevant to this litigation.  Similarly, transactions between *Alchemy* and various Virgo entities or OA Partners or OA Holdings are wholly irrelevant because Plaintiffs need to show that *Calrissian*—not Alchemy—was used to cause fraud or injustice.  The Court should therefore limit the scope of this request to payments or transfers involving *Calrissian*.

## **CONCLUSION**

For the forgoing reasons, the Court should overrule Plaintiffs' Objection and deny Plaintiffs' requested discovery because Plaintiffs cannot establish good cause to reopen discovery. If the Court does not overrule the Objection on Rule 16 grounds, the Court should find that

discovery regarding whether Virgo entities were Calrissian's alter egos is relevant, and that Plaintiffs bear the burden to establish the Virgo entities were Calrissian's alter ego, as such proof is required to establish damages and loss causation.  However, if the Court sustains Plaintiffs' Objection, it should narrow the discovery sought to eliminate the irrelevant deposition topics and document requests identified above.

Dated: May 9, 2024

Respectfully submitted,

*/s/ Kenneth B. Fowler*
Peter Isajiw
Kenneth B. Fowler (admitted *pro hac vice*)
**KING & SPALDING LLP**
1185 Avenue of the Americas
New York, NY 10036
Telephone: (212) 556-2227
Facsimile: (212) 556-2222
kfowler@kslaw.com
pisajiw@kslaw.com

David Tetrick, Jr. (admitted *pro hac vice*)
Kevin J. O'Brien
**KING & SPALDING LLP**
1180 Peachtree Street, NE
Atlanta, GA 30309
Telephone: (404) 572-3526
dtetrick@kslaw.com
kobrien@kslaw.com

*Counsel for Defendants SunTrust Bank and Truist Bank*