UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMIGRANT BANK; AND PACIFIC
MERCANTILE BANK,

                    Plaintiffs,

            v.

SUNTRUST BANK, TRUIST BANK, and DOES
1 THROUGH 10, Inclusive,

                 Defendants.

Civil Action No. 1:20-cv-02391-PGG

## THIRD PARTIES' RESPONSE TO PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE WANG'S APRIL 11, 2024 ORDER

# TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ....................................... 3

    A.   factual background from 2012 to present day ............................................ 3

    B.   Procedural Background ................................................................................ 3

III.    STANDARD OF REVIEW ................................................................................ 8

IV.     ARGUMENT ...................................................................................................... 9

    A.   VIG's knowledge and the knowledge of Messrs. Watson, Perez, and MacDonald is irrelevant. ................................................................................ 9

    B.   Overturning the April 11 Order would require reopening of discovery, resulting in significant additional costs to third parties and significant delays in case administration. ............................................ 11

    C.   Documents already in Plaintiffs' possession make clear that Calrissian is not the alter ego of any "Virgo" entity under New York Law. .......................................................................................................... 12

V.      CONCLUSION ................................................................................................ 15

## **TABLE OF AUTHORITIES**

**Cases**                                                                                               **Page(s)**

*Arista Records LLC v. Lime Group LLC*,
   No. 06 Civ. 5936(KMW), 2011 WL 781198 (S.D.N.Y. Mar.4, 2011)         8

*Aurora Loan Servs., Inc. v. Posner*,
   499 F. Supp. 2d 475 (S.D.N.Y. 2007).........................................................................8

*Babitt v. Vebeliunas (In re Vebeliunas)*,
   332 F.3d 85 (2d Cir. 2003).............................................................................12, 14

*In re Blackstone Partners, L.P.*,
   No. 04 Civ. 7757 (NRB), 2005 WL 1560505 (S.D.N.Y. July 1, 2005)..................10

*Bogan v. Nw. Mut. Life Ins. Co.*,
   144 F.R.D. 51 (S.D.N.Y. 1992) ..........................................................................8

*Edmonds v. Seavey*,
   No. 08 Civ. 5646(HB), 2009 WL 2150971 (S.D.N.Y. July 20, 2009) ................8, 9

*Eisai Ltd. v. Dr. Reddy's Lab'ys., Inc.*,
   406 F.Supp.2d 341 (S.D.N.Y. 2005)...................................................................8

*Harapeti v. CBS TV Stations Inc.*,
   No. 21 MISC. 680 (PAE), 2021 WL 3932424 (S.D.N.Y. Sept. 2, 2021).............10

*Iowa Pub. Emps' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
   No. 17 Civ. 6221 (KPF), 2020 WL 6273396 (S.D.N.Y. Aug. 28, 2020) ................9

*Jenny Yoo Collection, Inc. v. David's Bridal, Inc.*,
   18 Civ 9926 (PGG) (BCM), 2019 WL 6841966 (S.D.N.Y. Dec. 16, 2019)
   (Gardephe, J.).................................................................................................15

*Nikkal Indus., Ltd. v. Salton, Inc.*,
   689 F.Supp.187 (S.D.N.Y. 1988) ......................................................................8

*Pullano v. UBS/Paine Webber, Inc.*,
   No. 03 Civ. 6313, 2007 WL 9779148 (W.D.N.Y. Mar. 21, 2007).........................10

*Rodriguez v. SLM Corp.*,
   Civ. No. 3:07 Civ 1866 (WWE), 2010 WL 1286989 (D. Conn. Mar. 26, 2010) ..................10

*Scott v. Chipotle Mexican Grill Inc.*,
   306 F.R.D. 120 (S.D.N.Y. 2015) ........................................................................9

*Shim-Larkin v. City of New York*,
   No. 16 Civ 6099 (AJN), 2020 WL 5758751 (S.D.N.Y. Sept. 28, 2020)..................8

*In re Terrorist Attacks on Sept. 11, 2001*,
    03 MDL 1570, 2023 WL 5035142 (S.D.N.Y. Aug. 8, 2023) ............................................9, 15

*U2 Home Ent., Inc. v. Hong Wei Int'l Trading Inc.*,
    No.04 Civ 6189(JKK), 2007 WL 2327068 (S.D.N.Y. Aug. 13, 2007) ...................................8

**Other Authorities**

Fed. R. Civ. P. 30(b)(6)..............................................................................................................5, 9

Fed. R. Civ. P. 72......................................................................................................................8

Fed. R. Civ. P. 72(a) ..............................................................................................................1, 8

Fed R. Civ P. 72(a) advisory committee's note to 1983 amendment .............................................1

Pursuant to Fed. R. Civ. P. 72(a),[1] non-parties Virgo Investment Group, LLC ("**VIG**"), a private equity investment manager, Virgo Societas Partnership III (Onshore), L.P. ("**Onshore**"), and Virgo Societas Partnership III (Offshore), L.P. ("**Offshore**" and collectively with VIG and Onshore, the "**Virgo Parties**")[2] respectfully submit this Response to Plaintiffs' Emigrant Bank ("**Emigrant**") and Pacific Mercantile Bank ("**PMB**" and collectively with Emigrant, "**Plaintiffs**") *Objection to Magistrate Judge Wang's April 11, 2024 Order*, ECF No. 170 (the "**Objection**"), and in support thereof, state as follows:

## I.   INTRODUCTION

Over the last *eight years*—in three other forums—Plaintiffs' have relentlessly attempted to hold the Virgo Parties liable for Plaintiffs' own failed investment in Our Alchemy, LLC ("**Alchemy**")[3] by asserting claims which are duplicative of claims already settled by the Alchemy Bankruptcy Estate, or have been barred or dismissed.

In this forum, Magistrate Judge Wang has repeatedly held that Plaintiffs' third-party discovery requests—directed at obtaining information from or about the Virgo Parties, ostensibly to support their claim that some unnamed "Virgo" entity was the alter ego of Calrissian—are overreaching, irrelevant, and not proportional to the needs of the case, and should therefore be quashed in their entirety.[4] Most recently, Magistrate Judge Wang ruled from the bench at an April 11, 2024 status conference (the "**April 11 Conference**" and such ruling, along with ECF No. 169,

---

[1] The 1983 Advisory Committee Notes concerning Fed. R. Civ. P. 72(a) specifically contemplate "that a party who is successful before the magistrate will be afforded an opportunity to respond to objections raised to the magistrate's ruling." Fed R. Civ P. 72(a) advisory committee's note to 1983 amendment.

[2] The term "Virgo Parties" as used herein does not include the unspecified, unnamed "affiliates" of VIG to which Plaintiffs loosely refer to as "Virgo" in their complaint.

[3] Alchemy is formerly known as Millennium Entertainment, LLC.

[4] *See generally* Order, ECF No. 125; Op. and Order, ECF No. 131; Order, ECF No. 169; Sept. 20, 2023 Hr'g Tr., ECF No. 109; April 11, 2024 Conference Tr., ECF No. 173.

the "**April 11 Order**"), quashing five subpoenas Plaintiffs had issued to VIG, SS&C Technologies, Inc. ("**SS&C**"), Jesse Watson, Mark Perez, and Chris MacDonald. Magistrate Judge Wang's ruling was founded primarily on "the reasons stated in [her November 13, 2023] opinion and order, ECF No. 131"[5] (the "**November 13 Order**")—i.e., that the information sought by Plaintiffs was neither relevant nor proportional to the needs of the case.

Shockingly, after nearly a year of *insisting* that various third parties should be compelled to produce documents and provide testimony, Plaintiffs reversed course entirely at the April 11 Conference, "actually agree[ing] with" Magistrate Judge Wang "on the relevance ruling" in her November 13 Order and "conced[ing] that . . . the logic of [her] prior ruling would apply to these [subpoenas]" at issue in the April 11 Order.

Perhaps unsurprisingly, Plaintiffs have reversed course yet again. Plaintiffs now object to Magistrate Judge Wang's April 11 Order, rehashing the same arguments they have repeatedly made before Magistrate Judge Wang (and this Court) in hopes of obtaining a different result. But Plaintiffs do not get an umpteenth bite at the apple in this case. For the reasons set forth herein and below, the April 11 Order—which is accorded a highly deferential standard of review by this Court—is far from clearly erroneous or contrary to law and, therefore, the Virgo Parties respectfully submit that the April 11 Order, should be upheld and the Objection should be overruled.

---

[5] April 11, 2024 Conference Tr. 19:5-6.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background From 2012 to Present Day

The long and tortured history of this case begins over a decade ago, in mid-2012, when Plaintiff PMB first became a lender to Alchemy. A series of subsequent transactions followed—including a leveraged buyout ("**LBO**") of Alchemy, investment by certain Virgo Parties in Alchemy through holding company Calrissian LP, and both Plaintiffs and SunTrust ("**Defendant**" or the "**Administrative Agent**") becoming lenders to Alchemy. Ultimately, Alchemy sought bankruptcy protection in 2016, and eight years of litigation has since ensued. A fulsome account of the factual background leading up to the bankruptcy and the "tortured past"[6] that ensued is set forth in significant detail in the Virgo Parties' *Response to Plaintiffs' Objection to Magistrate Judge Wang's November 13, 2023 Order*, ECF No. 139 and in the Virgo Parties' various other filings before this Court.[7] Rather than reiterating the history of the dispute yet again, the Virgo Parties refer the Court to Sections II.A–II.G (pp. 7–21), of ECF No. 139, and incorporate those sections by reference as if specifically set forth herein.[8] Suffice it to say, since 2016, Plaintiffs have sought to pursue claims against the Virgo Parties in multiple forums on multiple theories of liability, but to date, each of those claims, which are duplicative of claims already settled by the Alchemy Bankruptcy Estate, have been barred, or dismissed. Plaintiffs cannot effectively abuse the federal discovery process in this forum to pursue such claims.

### B.  Procedural Background

Exactly one year ago, Plaintiffs began its coordinated campaign of seeking to obtain

---

[6] Sept. 20, 2023 Hr'g Tr. 3:13.

[7] *See, e.g.,* ECF Nos. 80, 85, 97, 104, 108, 119, 133, 139.

[8] Capitalized terms not defined herein shall have the meaning set forth in the Virgo Parties' Response to Plaintiffs' Objection to Magistrate Judge Wang's November 13, 2023 Order, ECF No. 139.

discovery purportedly relating to Plaintiffs' claim that some unnamed "Virgo" entity was the alter ego of Calrissian (Alchemy's parent). To that end, in May 2023, Plaintiffs issued subpoenas to ***at least five*** third parties, including VIG, Nu Image, Inc., and Baker Tilly US LLP.[9] The Virgo Parties sought protective orders in response to the VIG, Nu Image, and Baker Tilly subpoenas.[10] Magistrate Judge Wang held a status conference on the Virgo Parties' requests for protective orders on September 20, 2023 (the "**September 20 Hearing**"). Following an extensive discussion of the background of this dispute at the September 20 Hearing, Magistrate Judge Wang provided guidance indicating that she would likely curb the scope of Plaintiffs' third-party discovery.

Following additional briefing,[11] Plaintiffs requested a conference regarding an anticipated motion to compel production of documents from VIG.[12] On October 30, 2023, Magistrate Judge Wang denied Plaintiffs' request for a pre-motion conference as moot, reasoning in a minute order (the "**October 30 Order**") that she had already "clearly indicated that [she] would likely grant the protective order" at the September 20 Hearing.[13]

Undeterred, ***after*** Magistrate Judge Wang provided her guidance at the September 20 Hearing, Plaintiffs served a second wave of additional subpoenas seeking both documents and testimony from, or concerning, the Virgo Parties. This second wave consisted of ***five additional*** third-party subpoenas, including:

---

[9] The Virgo Parties have also been made aware of Plaintiffs' third-party subpoenas issued to Alchemy's parent company Calrissian, L.P. ("**Calrissian**") and Calrissian's general partner and manager Virgo Service Company LLC ("**VSC**"). The subpoenas to Calrissian and VSC are not before this Court. The subpoenas to Nu Image and Baker Tilly are the subject of Magistrate Judge Wang's prior order entered on November 13, 2023.

[10] *See* Letter Mot. for Protective Order, ECF No. 80; Letter Mot. for Protective Order, ECF No. 85, and Letter Mot. For Protective Order, ECF No. 97.

[11] *See* Def.'s Suppl. Br., ECF No. 117; Pls.' Suppl. Br., ECF No. 118; Third Parties' Suppl. Br., ECF No. 119.

[12] *See* Pls' Letter Mot. for Conference, ECF No. 124.

[13] Order, ECF No. 125.

1. A document subpoena to the Virgo Parties' fund administrator, SS&C, dated October 17, 2023 (the "**SS&C Subpoena**"). The SS&C Subpoena sought production of the very same documents that Plaintiffs unsuccessfully sought from VIG (and others), in a clear attempt to evade the spirit of Magistrate Judge Wang's guidance at the September 20 Hearing.[14]

2. Another subpoena to VIG, dated November 6, 2023 (the "**VIG Depo Subpoena**"), which sought deposition testimony of VIG's corporate representative pursuant to Fed. R. Civ. P. 30(b)(6) regarding "Virgo's formation of Calrissian; Virgo's capitalization of and control over Calrissian; Virgo's ability to pay the Guaranty, and Virgo's knowledge of Alchemy's finances when it made certain representations to the lenders and when it used Calrissian to guarantee the loans and transfer funds from Alchemy through Calrissian to Virgo."[15]

3. A deposition subpoena to VIG's founder and Chief Executive Officer, Jesse Watson, dated November 6, 2023 (the "**Watson Subpoena**"). Plaintiffs assert that Mr. Watson was purportedly "directly involved in the formation of Calrissian prior to Virgo's acquisition of Alchemy" and "executed the Guaranty Agreement on behalf of Calrissian."[16]

4. A deposition subpoena to VIG partner Mark Perez, dated November 6, 2023 (the "**Perez Subpoena**"). Plaintiffs assert that Mr. Perez's "testimony is relevant to whether Calrissian, which owned Alchemy, was merely Virgo's alter ego and whether VIG used Calrissian as a shell company to commit wrongful acts."[17]

5. A deposition subpoena to Chris MacDonald, "another founding partner of Virgo," dated November 6, 2023 (the "**MacDonald Subpoena**"). Plaintiffs assert that Mr. MacDonald "had significant involvement in the efforts by the lenders to reorganize Alchemy when it defaulted under the Credit Agreement [and] attended at least one meeting with the lenders after Alchemy defaulted on its obligations[.]"[18]

Notably, Plaintiffs issued and served each of the four deposition subpoenas—to VIG and Messrs. Watson, Perez, and MacDonald (collectively, the "**Deposition Subpoenas**")—more than a month after Magistrate Judge Wang provided guidance regarding her intention to grant the Virgo Parties'

---

[14] *See* Third Parties' Letter Mot. for Conference, ECF No. 133, at 3.

[15] Pls' Obj. to Magistrate Judge Wang's Apr. 11, 2024 Order, ECF No. 170 at 13.

[16] *Id.* at 14.

[17] *Id*.

[18] *Id*.

protective order at the September 20 Hearing, and roughly a week after she reiterated that guidance in the October 30 Order.

Thereafter, as she had repeatedly indicated she would, Magistrate Judge Wang granted the Virgo Parties' motions for protective orders and denied Plaintiffs' anticipated motion to compel production from VIG, issuing a carefully considered and well-reasoned *Opinion and Order*, ECF No. 131, on November 13, 2023 (the "**November 13 Order**"). In the November 13 Order, Magistrate Judge Wang recognized Plaintiffs' third-party discovery requests for what they are—a naked attempt to:

> effectively pursu[e] the litigation that the Bankruptcy Court barred [Plaintiffs] from pursuing in state court, and which SunTrust refused to pursue on their behalf . . . and which the Calrissian and Alchemy Trustee[s] – exercising [their] fiduciary duties – elected not to bring.[19]

Shortly following issuance of the November 13 Order, on November 16, 2023, the Virgo Parties filed their *Letter Motion for Conference*, ECF No. 133 (the "**Motion to Quash**"), requesting that the Court quash the SS&C Subpoena and the Deposition Subpoenas. On November 20, 2023, Plaintiffs filed their *Letter Response to the Motion to Quash*, ECF No. 135, in which Plaintiffs argued in no uncertain terms that "[t]he documents sought in the SS&C Subpoena are relevant and should be produced" and that "…Plaintiffs must be permitted to take the[] depositions" of VIG, Watson, Perez, and MacDonald.[20] In line with this position, on November 27, 2023, Plaintiffs filed their *Objection to Magistrate Judge Wang's November 13, 2024 Order*, ECF No. 138, in which Plaintiffs argued that "the November 13 Order erred in finding the documents sought by the subpoenas were irrelevant."[21]

---

[19] Op. and Order, ECF No. 131 at 4–5 (citations omitted).

[20] Pls' Letter Mot. for Conference, ECF No. 135 at 4.

[21] Pls' Obj., ECF No. 138 at 7.

The Court once again referred discovery matters to Magistrate Judge Wang, who scheduled a conference for April 11, 2024. At the April 11 Conference, in an abrupt about-face, Plaintiffs suddenly conceded that the documents and testimony they sought through the SS&C Subpoena and the Deposition Subpoenas—information purportedly relating to whether some unnamed Virgo entity was the alter ego of Calrissian—*is not relevant*, admitting:

> We actually agree with your Honor on the relevance ruling. . .[22] [W]e do concede that the subpoenas largely overlap, and the logic of your prior ruling would apply to these. . .[23] I concede that if we lose on the objection [to the November 13 Order] we would be withdrawing the subpoena [to SS&C] obviously. With respect to the three individuals that we subpoenaed for testimony, the point there is the same.[24]

At the April 11 Conference, Magistrate Judge Wang ruled from the bench quashing the SS&C Subpoena and the Deposition Subpoenas. Magistrate Judge Wang's ruling was founded primarily on "the reasons stated in [the November 13] opinion and order, ECF No. 131"[25]—i.e., that the information sought by Plaintiffs was neither relevant nor proportional to the needs of the case. Based on Plaintiffs' statements at the April 11 Conference, Plaintiffs ostensibly agreed.

Nonetheless, Plaintiffs have objected to Magistrate Judge Wang's April 11 Order, again at odds with their prior position as stated at the April 11 Conference that they "actually agree[d] . . . on the relevance ruling."[26] Plaintiffs' flip-flopping notwithstanding, the April 11 Order is entitled to a high degree of deference and, for the reasons set forth below, the Virgo Parties respectfully submit it should be upheld because it is neither clearly erroneous nor contrary to law.

---

[22] April 11, 2024 Conference Tr. 3:14-17.

[23] *Id.* at 5:8-10.

[24] *Id.* at 6:9-10.

[25] *Id.* at 19:5-6.

[26] *Id.* at 3:14-15.

## III.    STANDARD OF REVIEW

Under Fed. R. Civ. P. 72(a), "[w]hen a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide… [t]he district judge… must consider timely objections [to the magistrate judge's decision] and modify or set aside any part of the order that is clearly erroneous or contrary to law."[27] Discovery matters are not dispositive. [28] A finding is "clearly erroneous" when "the district court is left with the definite and firm conviction that a mistake has been committed.[29] A finding is "contrary to law" when "it fails to apply or misapplies relevant statutes, case law or rules of procedure."[30]

"A magistrate judge is best qualified to 'judge the entire atmosphere of the discovery process.'"[31] Therefore, her rulings on discovery matters are entitled to substantial deference.[32] Indeed, "[c]ourts in this Circuit have held that a magistrate's ruling on a discovery dispute should be overturned only for an abuse of discretion."[33] "Pursuant to this highly deferential standard of review, magistrate[ ] [judges] are afforded broad discretion in resolving discovery disputes."[34] The fact that "reasonable minds may differ on the wisdom of granting [a party's] motion is not

---

[27] Fed. R. Civ. P. 72(a).

[28] *See, e.g., Eisai Ltd. v. Dr. Reddy's Lab'ys., Inc.*, 406 F.Supp.2d 341, 342 (S.D.N.Y. 2005) (holding pretrial discovery matters are non-dispositive matters under Fed. R. Civ. P. 72(a)).

[29] *Shim-Larkin v. City of New York*, No. 16 Civ 6099 (AJN), 2020 WL 5758751, at *1 (S.D.N.Y. Sept. 28, 2020) (citations and quotations omitted).

[30] *Id.*

[31] *U2 Home Ent., Inc. v. Hong Wei Int'l Trading Inc.*, No. 04 Civ 6189(JKK), 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007) (quoting *Bogan v. Nw. Mut. Life Ins. Co.*, 144 F.R.D. 51, 53 (S.D.N.Y. 1992)).

[32] *U2 Home Ent., Inc.*, 2007 WL 2327068 at *1 (citing *Nikkal Indus., Ltd. v. Salton, Inc.*, 689 F.Supp.187, 189 (S.D.N.Y. 1988)).

[33] *Arista Recs. LLC v. Lime Grp. LLC*, No. 06 Civ. 5936(KMW), 2011 WL 781198, at *2 (S.D.N.Y. Mar.4, 2011) (citing *Edmonds v. Seavey*, No. 08 Civ. 5646(HB), 2009 WL 2150971, at *2 (S.D.N.Y. July 20, 2009).

[34] *Aurora Loan Servs., Inc. v. Posner*, 499 F.Supp.2d 475, 477 (S.D.N.Y. 2007).

sufficient to overturn a magistrate judge's decision."[35] The party seeking to overturn a magistrate judge's decision "thus carries a heavy burden."[36]

## IV.   ARGUMENT

### A.  VIG's Knowledge and the Knowledge of Messrs. Watson, Perez, and MacDonald is Irrelevant.

VIG does not have information relevant to Plaintiffs' claims against Defendant. All that is relevant to this case is what the Administrative Agent knew and did, while "[w]hat the Virgo entities knew or did . . . is irrelevant to this claim."[37] Plaintiffs deposed Defendant to learn what it knew and did, but that information could only come from Defendant. Whatever VIG knew or did is irrelevant. Considering the sheer irrelevance of VIG's testimony, especially considering the hugely burdensome list of topics at issue in the 30(b)(6), Magistrate Judge Wang's order quashing the Rule 30(b)(6) deposition of VIG should be upheld.

Moreover, Plaintiffs' proposed Deposition Subpoenas of the individuals suffer from the same flaw and were also properly quashed. This is especially true in light of the long-standing apex doctrine, which provides "an additional layer of protection for senior corporate executives subject to depositions."[38] Courts generally quash third-party subpoenas of apex witnesses unless the executive "has unique evidence, personal knowledge of the claims at issue," and "other witnesses are incapable of providing testimony about the conduct alleged, executives are safeguarded from depositions."[39] Here, as none of the subpoenaed witnesses worked for the

---

[35] *Edmonds,* 2009 WL 2150971, at *2.

[36] *In re Terrorist Attacks on Sept. 11, 2001*, 03 MDL 1570, 2023 WL 5035142, at *1 (S.D.N.Y. Aug. 8, 2023).

[37] ECF No. 131 at 3–4.

[38] *Iowa Pub. Emps.' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 17 Civ. 6221, 2020 WL 6273396, at *1 (S.D.N.Y. Aug. 28, 2020) (quoting *Scott v. Chipotle Mex. Grill Inc.*, 306 F.R.D. 120, 122 (S.D.N.Y. 2015)).

[39] *Harapeti v. CBS TV Stations Inc.*, No. 21 MISC. 680, 2021 WL 3932424, at *3 (S.D.N.Y. Sept. 2, 2021) (quashing third-party subpoena seeking testimony of a former executive); *see also Rodriguez v. SLM Corp.*, Civ. No. 3:07 Civ

Defendant, the entity whose knowledge is at issue in this litigation, there is no possible relevant information that could be provided that would not otherwise be cumulative of party discovery.

Alchemy's financial condition and what the Virgo Parties (or "Virgo" executives) knew of it before the transaction, has no bearing on (i) whether the Virgo Parties exercised sufficient control over Calrissian to make it a mere instrumentality, (ii) whether the Virgo Parties used Calrissian to commit a fraud or wrongdoing through its guaranty, or (iii) whether such alleged wrongdoing resulted in unjust loss or injury.

Additionally, to the extent Plaintiffs seek deposition testimony of Mark Perez because he allegedly changed the Baker Tilly report, VIG hired Baker Tilly to perform diligence on the Alchemy LBO *for VIG*, and VIG was contractually required not to provide—and did not provide—the results of Baker Tilly's diligence to anyone outside of VIG. Moreover, Baker Tilly previously provided a sworn statement indicating that the *only* documents it relied on in creating the report came from the Alchemy data room—*the same data room* to which the Administrative Agent and Plaintiff PMB had access. Baker Tilly—and by extension, the Virgo Parties—had the same knowledge—not superior knowledge—to the banks, none of which the Virgo Parties could use to perpetuate a fraud against Plaintiffs.

Furthermore, to the extent the Virgo Parties or VIG partners could have gleaned some additional insight through their own due diligence using the Alchemy data room documents, they had no duty to disclose such information to the banks. The banks (i) did their own diligence in

---

1866, 2010 WL 1286989, at *2, (D. Conn. Mar. 26, 2010) (quashing deposition subpoenas of two former executives); *Pullano v. UBS/Paine Webber, Inc.*, No. 03 Civ. 6313, 2007 WL 9779148 at *2 (W.D.N.Y. Mar. 21, 2007) (barring deposition of executive where "plaintiff has failed to demonstrate that [executive] has 'some unique knowledge' pertinent to the real issue in this case"); *In re Blackstone Partners, L.P.*, No. 04 Civ. 7757, 2005 WL 1560505, at *3 (S.D.N.Y. July 1, 2005) (affirming order quashing subpoena to former senior managing director at non-party partnership, which "would be cumulative and would subject [non-party partnership] to undue burden").

connection with the syndicated loan;[40] (ii) had no right to rely on representations from the Virgo Parties (or VIG partners) about the borrower, Alchemy; and (iii) negotiated nothing in the Credit Agreement or Guaranty requiring Calrissian or any Virgo-related entity to provide information to them.[41] The only party with a reporting duty was the borrower, Alchemy.[42]

Thus, the information sought in the Deposition Subpoenas is wholly irrelevant to Plaintiffs' claims and not discoverable. Magistrate Judge Wang made no clear error in quashing the Deposition Subpoenas; nor is her April 11 Order contrary to law. Accordingly, her decision must be upheld.

## B. Overturning the April 11 Order Would Require Reopening of Discovery, Resulting in Significant Additional Costs to Third Parties and Significant Delays in Case Administration.

As Magistrate Judge Wang noted in her April 11 Order, fact discovery closed on December 7, 2023, and was extended to May 10, 2024 "**solely** for the limited continued deposition of Mr. De Jesus-Caballero and the production of Mr. Bowring's handwritten notes, as discussed at the conference" (emphasis in the original).[43] Additionally, expert discovery closed several months ago, on February 16, 2024. Overturning the April 11 Order would necessitate reopening of fact discovery, and would require significant time, effort, and cost—far in excess of the proportional needs of the case—on behalf of the Virgo Parties' fund administrator, SS&C (whom certain Virgo Parties are required to indemnify), as well as on behalf of VIG and the individual defendants

---

[40] *See* First Amend. Compl. Ex. C, ECF No. 45-3 at 116 ("Each of the Lenders acknowledges that it has, independently and without reliance upon the Administrative Agent or any other Lender and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this [Credit Agreement].").

[41] *See generally* First Amend. Compl. Ex. B, ECF No. 45-2; First Amend. Compl. Ex. C, ECF No. 45-3.

[42] *See,* Tr. of Oral Arg. 9:10–13:20, *Emigrant Bank v. Virgo Inv. Grp.*, No. 2022-01054 (N.Y. App. Div. 1st. Dep't Nov. 2, 2022), ECF No. 119-16.

[43] ECF No. 169 at 1.

because the documents and testimony Plaintiffs seek date back to 2014.[44] VIG has already incurred significant costs to produce documents in this case (and in other related proceedings) and should not be forced to incur further costs to prepare for depositions that are simply not relevant to Plaintiffs' claims. Magistrate Judge Wang's April 11 Order is not clearly erroneous nor contrary to law and it must be upheld.

### C. Documents Already in Plaintiffs' Possession Make Clear that Calrissian is Not the Alter Ego of Any "Virgo" Entity Under New York Law.

In determining whether to pierce the corporate veil under New York law (and thus treat two entities as alter egos), a plaintiff must establish that:

> (1) the owner exercised such control that the corporation has become a mere instrumentality of the owner, who is the real actor; (2) the owner used this control to commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to the plaintiff.[45]

There is no dispute about who managed Calrissian. Rather, the issue is whether some unnamed "Virgo" entity used Calrissian—as guarantor of the obligations under the Credit Agreements—to perpetrate a "fraud or other wrong" against Plaintiffs. The alleged "fraud or other wrong" here, as Plaintiffs elucidate it, is that some unnamed, unspecified "Virgo" entity:

> chose to create Calrissian, a shell company, to acquiring [sic] Alchemy, to be the guarantor of the loans, knowing full well that Alchemy had cash flow problems and a poor quality of earnings, and that *__that guaranty was essentially meaningless__*. . .  [A]fter those funds became available from the lenders, Virgo caused Alchemy to draw funds from the credit facility, transfer those funds to

---

[44] To the extent that overturning the April 11 Order would also result in overturning the November 13 Order and thus result in VIG being required to produce **additional** documents in response to several of the discovery requests, even more costs and delay would result. In such a situation, Plaintiffs and would likely need to engage in meet and confers regarding various search terms. Plaintiffs' subpoenas—which seek information from nearly ten years ago—pose an extreme undue burden. As VIG has repeatedly advised Plaintiffs, VIG's records for the period between 2013 and 2017 have long been stored in only archived form. Producing responsive documents would require VIG to restore long-archived data for which hosting alone would cost VIG well over $10,000 per month with a one month minimum— separate and apart from the cost of paralegal and attorney time to re-upload, access, review for responsiveness and privilege, and produce the archived data. In light of the extreme burden imposed on VIG—a third party—and the lack of relevancy of the requested data, the Court should uphold Magistrate Judge Wang's protective order.

[45] *Babitt v. Vebeliunas (In re Vebeliunas)*, 332 F.3d 85, 91–92 (2d Cir. 2003).

Calrissian, and then to itself. So it's ***created Calrissian as a guarantor and has siphoned funds through Calrissian, while attempting to shield itself from liability for those debts.***[46]

But documents already in Plaintiffs' possession indisputably belie this supposed "fraud" entirely.

*First*, both the 2014 and 2015 Credit Agreements explicitly refer to Calrissian throughout as "HoldCo."[47] *Second*, nothing in the Credit Agreements required Calrissian to be creditworthy, or even speaks at all to Calrissian's assets, which indicates that the Lenders were never interested in and did not rely on Calrissian's guaranty for repayment in the event of Alchemy's default.[48] Instead, the guaranty was useful to Lenders only in that it allowed them to foreclose on the equity of Alchemy if they needed to do so. *Third*, the Administrative Agent, on behalf of Plaintiffs, knew that Calrissian's guaranty would not be backed by any assets—other than the interests in Alchemy—because shell company Calrissian would not hold any cash if it were required to provide the requested guaranty.[49] Indeed, VIG openly and honestly told the Administrative Agent as much:

> HoldCo (Calrissian) is indeed intended to be a shell, and the only real asset that HoldCo has that is relevant to this transaction is the membership interests in Millennium Entertainment LLC (Borrower). You will already have HoldCo's pledge of these interests. ***A guarantee from the HoldCo would not have any value other than the interests that you already have a pledge to***. . . we can hold . . . potential cash in a different entity not HoldCo.[50]

---

[46] Sept. 20, 2023 Hr'g Tr, ECF No. 138-8 at 31:5-16 (emphases added).

[47] *See* First Amend. Compl. Ex. C, ECF No. 45-3 at 27.

[48] *See* First Amend. Compl. Ex. C, ECF No. 45-3; First Amend. Compl. Ex. A, ECF No. 45-1.

[49] Third Parties' Letter Mot. for Conference Ex. 2, ECF No. 85-2.

[50] *Id.* (emphasis added).

When the Administrative Agent nonetheless insisted that Calrissian provide the guaranty, as promised, Calrissian held no funds.[51] Following through on one's promise is certainly not a fraud. Furthermore, no amount of documents that Plaintiffs could obtain will negate VIG's honest and open disclosure to the Administrative Agent that Calrissian's guaranty would not have any value above and beyond Calrissian's membership interests in Alchemy.

*Fourth*, as to the supposed "siphoning" of funds from Alchemy through Calrissian, those claims were squarely at issue in the Trustee Action, which was settled, and the Virgo Parties, Watson, and Perez were released in full on behalf of all of Alchemy's creditors. Plaintiffs simply cannot use settled claims as the basis for their alter ego claim.

*Finally*, Plaintiffs' assertion that they are entitled to the discovery they seek because they may be required to win a "case within a case" is unavailing. There can be no fraud when all parties are aware of the facts. Without a fraud, no alter ego claim exists,[52] regardless of what the Virgo Parties knew or the extent to which any unspecified "Virgo" entity exerted control over Calrissian. As such, Plaintiffs cannot be prejudiced by being denied the documents they seek.

Here, Plaintiffs' attempt to obtain the documents they seek—this time, from SS&C—is nothing more than a "veiled attempt to relitigate" claims which are duplicative of claims already settled by the Alchemy Bankruptcy Estate, or have been barred or dismissed. When a party's motion to compel discovery is merely "a veiled attempt to relitigate issues" previously decided (or settled), courts will overrule objections to a magistrate judge's order denying such a motion to

---

[51] *See* First Amend. Compl. at 40 ("[T]he Guaranty provides on its face that Calrissian guarantees the repayment of up to $40 million. However, at that time . . . Calrissian had virtually no assets and had no ability to repay the Loan Obligations…").

[52] *See Babitt*, 332 F.3d at 91–92.

compel.[53] Accordingly, Magistrate Judge Wang's April 11 Order presents no clear error and is not contrary to law—and therefore, must be upheld.

## V.  CONCLUSION

Magistrate Judge Wang's April 11 Order is free of any clear error and is not contrary to law. Plaintiffs have not carried their heavy burden to overturn the order. Accordingly, this Court should uphold Magistrate Judge Wang's April 11 Order and overrule Plaintiffs' Objection thereto.

Dated: May 9, 2024
New York, New York

Respectfully submitted,

ALLEN OVERY SHEARMAN STERLING US LLP

By: /s/ Emanuel C. Grillo
Emanuel C. Grillo
1221 Avenue of the Americas
New York, New York 10020
Tel: 212-610-6300
Emanuel.Grillo@aoshearman.com

DANIELS & TREDENNICK, PLLC

Andrea L. Kim (*pro hac vice*)
Rebecca Muff Randolph (*pro hac vice*)
6363 Woodway Dr., Suite 700
Houston, Texas 77057
Tel: 713-917-0024
Andrea@dtlawyers.com
Rebecca@dtlawyers.com

*Attorneys for non-party Virgo Investment Group LLC, Virgo Societas Partnership III (Offshore), L.P., and Virgo Societas Partnership III (Onshore)*

---

[53] *In re Terrorist Attacks*, 2023 WL 5035142, at *1; *see also Jenny Yoo Collection, Inc. v. David's Bridal, Inc.*, 18 Civ 9926, 2019 WL 6841966, at *3 (S.D.N.Y. Dec. 16, 2019) (Gardephe, J.) ("[I]it would be inefficient to permit [movant] to expand the scope of discovery in this action to match the discovery to which it would have been entitled had it not settled the [prior] Action.").