**A&O SHEARMAN**

<u>VIA ECF</u>

The Honorable Paul G. Gardephe
United States District Court Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 2204

Allen Overy Shearman Sterling US LLP
1221 Avenue of the Americas
New York, NY 10020

| | |
|---|---|
| Tel | +1 212-610-6300 |
| Fax | +1 212 610 6399 |
| Direct Line | +1 212-610-6384 |

Emanuel.Grillo@aoshearman.com

July 31, 2024

**Re:** *Emigrant Bank and Pacific Mercantile Bank v. SunTrust Bank, et al.*, No. 1:20-cv-02391

Dear Judge Gardephe:

We write on behalf of our clients, non-parties Virgo Investment Group LLC ("VIG"), Virgo Societas Partnership III (Offshore), L.P., and Virgo Societas Partnership III (Onshore), L.P. (collectively the "Virgo Entities") pursuant to Rules II.B. and IV.B. of Your Honor's Individual Rules of Practice in Civil Cases, to move for approval to partially redact the Plaintiffs' expert reports (the "Expert Reports"), filed temporarily under seal at ECF Nos. 160 and 162 in connection with Defendants' response to Plaintiffs' letter motion for partial summary judgment (which has been denied). The Expert Reports contain proprietary, confidential, and commercially sensitive information of the Virgo Entities, the disclosure of which would be extremely detrimental to the Virgo Entities' business, particularly as non-parties. The proposed redacted text is attached as Exhibit 1 (Rule Report) and Exhibit 2 (Sheppard Report), and the unredacted copies of Exhibit 1 and Exhibit 2 have been filed under seal.

The Virgo Entities are not, and have never been, parties to this litigation. Yet, the Virgo Entities' privacy interests are deeply impacted by Plaintiffs' Expert Reports—which purport to opine, over 66 combined pages, about VIG's (a private equity investment manager) and its unspecified affiliates' role and knowledge with respect to Offshore and Onshore's (both VIG-managed funds) investment in Our Alchemy, LLC ("Alchemy") by way of Calrissian, LP, the special purpose entity created to hold the membership interests in Alchemy. The Virgo Entities' privacy interests, despite being non-parties, could not be more squarely at issue.

The Expert Reports purport to describe the inner workings, private equity strategy, and corporate structure of "Virgo"—a purposefully vague term Plaintiffs define as "Virgo Investment Group LLC and its affiliates collectively." Plaintiffs' loose definition is no accident; rather, it is part of Plaintiffs' campaign to try VIG in the courts of public opinion—now that Plaintiffs' years-

Allen Overy Shearman Sterling US LLP is a limited liability partnership organized under the laws of the State of Delaware. Allen Overy Shearman Sterling US LLP is affiliated with Allen Overy Shearman Sterling LLP, a limited liability partnership registered in England and Wales with registered number OC306763 and with its registered office at One Bishops Square, London E1 6AD. It is authorized and regulated by the Solicitors Regulation Authority of England and Wales (SRA number 401323). The term partner is used to refer to a member of Allen Overy Shearman Sterling LLP or an employee or consultant with equivalent standing and qualifications. A list of the members of Allen Overy Shearman Sterling LLP and of the non-members who are designated as partners is open to inspection at its registered office at One Bishops Square, London E1 6AD.
Allen Overy Shearman Sterling US LLP is an affiliate of Allen Overy Shearman Sterling LLP. Allen Overy Shearman Sterling LLP or an affiliated undertaking has an office in each of: Abu Dhabi, Amsterdam, Antwerp, Austin, Bangkok, Beijing, Belfast, Boston, Bratislava, Brussels, Budapest, Casablanca, Dallas, Dubai, Dublin, Düsseldorf, Frankfurt, Hamburg, Hanoi, Ho Chi Minh City, Hong Kong, Houston, Istanbul, Jakarta (associated office), Johannesburg, London, Los Angeles, Luxembourg, Madrid, Menlo Park, Milan, Munich, New York, Paris, Perth, Prague, Riyadh, Rome, San Francisco, São Paulo, Seoul, Shanghai, Silicon Valley, Singapore, Sydney, Tokyo, Toronto, Warsaw, Washington, D.C.

long attempts to try VIG in the courts of law have all been stymied. Using the term "Virgo" throughout the Expert Reports (as opposed to identifying any specific affiliate of VIG), Plaintiffs' experts quote documents selectively and out of context, making misleading statements that impugn the character of third parties (including past and present VIG-related individuals) and will result in real, though incalculable, reputational damage to VIG—a private equity fund manager whose reputation is critical to its ability to obtain private equity for the various funds under its management[1]—and who is not a party to the instant litigation.

Moreover, as non-parties to the litigation, VIG, VIG-related individuals, and the Virgo Entities have extremely limited opportunities under procedural rules to combat the reputational harms imposed by the unsealing of misleading Expert Reports, being unable to counter such statements by providing rebuttal expert reports, filing *Daubert* motions, or filing a response to the parties' summary judgment motion. Indeed, the Second Circuit has recognized the significant risk that court files may be used "to gratify private spite or promote public scandal" and suggested "certain methods courts can employ to protect the judicial process from being coopted for such purposes"—including issuing protective orders, striking material from the filings on the grounds that it is "redundant, immaterial, impertinent, or scandalous," and requiring certain material to be filed under seal. *Brown v. Maxwell*, 929 F.3d 41, 51 (2d Cir. 2019).

**There is no presumption of access because the Expert Reports are not admissible evidence.** In *Lugosch v. Pyramid Co. of Onondaga*, the Second Circuit has articulated a three-step process for determining whether sealing is appropriate. 435 F.3d 110, 119 (2d Cir. 2006). **First**, a court must determine whether the presumption of access attaches. *Id.* A presumption of access attaches only to an item that constitutes a "judicial document." *Id.* In order to be designated a judicial document, the papers filed must be "relevant to the performance of the judicial function and useful in the judicial process." *Id.* (quotations omitted). Documents submitted in a summary judgment motion are generally deemed to be "judicial documents" as a matter of law such that they are entitled to a presumption of access. *Brown*, 929 F.3d at 47 (citing *Lugosch*, 435 F.3d at 121). However, entitlement to the presumption is founded on the concept that papers attached to a summary judgment actually constitute admissible evidence. Thus, as the Second Circuit has observed:

> [O]ur holding in *Lugosch* relies on the general principle that parties may 'be assumed to have supported their papers **with admissible evidence** and non-frivolous arguments.' Insofar as a district court has . . . specifically found that assumption inapplicable, the categorical rule in *Lugosch* may not apply.

*Brown*, 929 F.3d at 47 n.12 (emphasis added) (quoting *Lugosch*, 435 F.3d at 122). Here, the Expert Reports are not admissible evidence and the presumption of access under *Lugosch* does not attach in the first instance. Apart from the sealing motion to which they are attached, the Expert Reports are attachments to only one filing before this court—Defendant Truist Bank's *Letter Response*, ECF No. 160, to Plaintiffs' *Pre-Motion Letter*, ECF No. 157, (the "MSJ Letter") regarding Plaintiffs' anticipated motion for partial summary judgment (which has already been denied). But in citing Plaintiffs' own expert reports, Defendant does not rely on the Expert Reports to provide evidence—much less admissible evidence—of anything. Quite the opposite; Defendant

---

[1] *See* Decl. of Anthony Lubiano at ¶ 9 ("Lubiano Decl.").

attaches the Expert Reports for the limited purpose of arguing about what those reports ***do not contain***—namely:

- Any expert opinion "as to whether an alter ego relationship existed";
- Any expert opinion "that Calrissian was merely a 'sham' entity'";
- Identification of "*any* specific entity that was, or even had indicia of being, Calrissian's alter ego"; or
- Identification of "any specific entity . . . that caused fraud, injustice, or other harm to the lenders."

The Expert Reports simply do not constitute evidence of anything; as such, they are not subject to the presumption of access under the *Lugosch* framework.

Nor do the Expert Reports constitute ***admissible*** evidence. The Expert Reports selectively quote and summarize documents produced by parties and third-parties, including a number of emails purportedly from VIG-related individuals. Not only do these selectively-quoted and summarized email excerpts suffer from hearsay objections (*see* Fed. R. Evid. 802)—and in some cases, hearsay-within-hearsay objections—but they also violate the best evidence rule, which requires that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. The *Lugosch* framework, premised on the idea that documents attached to summary judgment motions must contain admissible evidence for the presumption of access to apply, does not govern where, as here, the documents do not constitute admissible evidence. Thus, the Expert Reports are not entitled to a presumption of access.

**Competing considerations weigh in favor of sealing over any weight of a presumption of access, if any.** Even if this Court were to determine that the Expert Reports are judicial documents to which a presumption of access applies, it must then take the next steps under *Lugosch*. ***Second***, *if* the court determines that the item to be sealed is a judicial document, the court must *then* determine the weight of the presumption of access. *Lugosch*, 435 F.3d at 119. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* (internal quotations omitted). If the Expert Reports are determined to be judicial documents submitted in a summary judgment motion, to which a presumption of public access should apply, that presumption is typically a strong presumption. *Id*.

***Third***, "after determining the weight of the presumption of access, the court must 'balance competing considerations against it.'" *Id.* at 120 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)). Thus, the sealing of judicial documents is appropriate with specific, on-the-record findings that the sealing is necessary to preserve higher values and is narrowly tailored to protect those values. *Brown*, 929 F.3d at 47. One such higher value is the privacy of interest of those who resist disclosure. *Id.* at 47 n.13 (citing *Sec. & Exch. Comm'n. v. TheStreet.Com*, 273 F.3d 222, 232 (2d Cir. 2001)). A further countervailing consideration to public access is "the privacy interests of innocent third parties" which "should weigh heavily in a court's balancing equation." *Application of Newsday, Inc.*, 895 F.2d 74, 79–80 (2d Cir. 1990).

Applying these standards, courts have found that business and "financial information may raise such 'significant privacy interests' that overcome the strong presumption of public access, given this information's minimal relevance to a court's decision on summary judgment motions." *Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, No. 20 CIV. 10832 (AT), 2023 WL 3477552, at *3 (S.D.N.Y. May 16, 2023) (quoting *City of Almaty, Kazakhstan v. Ablyazov*, No. 15 Civ. 5345, 2021 WL 1177737, at *2 (S.D.N.Y. Mar. 29, 2021)). For example, in *Ripple*, the court found that, even under the elevated standards for summary judgment materials, disclosure of documents that may cause substantial harm to "investor relationships" will overcome the strong presumption of public access to judicial documents. *Id.* 2023 WL 3477552, at *5 (citations omitted)[2]. Thus, information such as audited financial statements, confidential internal financial reports, "including past financial statements, contain[ing] . . . confidential balance sheet[s], revenue and expense figures, pricing, costs, revenue, profit information about past and present business lines, investments in third parties, litigation expenses and settlements" qualified for sealing because such materials were found to cause competitive harm on the disclosing enterprise. *Id.* at *4.

The Virgo Entities' proposed redactions meet this high standard for redaction. The redactions fall into two categories: (i) redactions of portions of the Expert Reports that purport to describe the confidential and proprietary inner workings, private equity strategy, and corporate structure of "Virgo" and make misleading statements about "Virgo's" role and knowledge with respect to Calrissian and Alchemy; and (ii) redactions of that portions of the Expert Reports that selectively quote and purport to summarize confidential emails, taken out of context, sent by certain VIG-related personnel in connection with the investment in Alchemy. Both categories rely on highly sensitive and confidential business and proprietary information,[3] and both result in misleading statements regarding "Virgo" or VIG-related personnel. Disclosure of such misleading statements would cause material harm to VIG's business, competitive standing, relationships with investors, and ability to compete for and secure business partnerships and investors.[4]

<u>Misleading descriptions of corporate structure and business strategy.</u> Certain portions of the Expert Reports purport to describe the inner workings, private equity strategy, and corporate structure of "Virgo" (loosely defined to include VIG and unspecified affiliates) in connection with Onshore and Offshore's investment in Alchemy.[5] In doing so, the Expert Reports make misleading statements about "Virgo's" role and knowledge with respect to Calrissian and Alchemy, with no acknowledgement whatsoever that multiple corporate entities with different functions were in place between Virgo Investment Group LLC—the investment manager for Onshore and

---

[2] *See also Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 156 (S.D.N.Y. 2015) (permitting sealing of "internal corporate documents that govern investment strategies, information regarding proprietary modeling assumptions, and more generally, customer names, account numbers, and pricing information"); *W.J. Deutsch & Sons Ltd. v. Diego Zamora, S.A.*, No. 1:21-CV-11003-LTS, 2022 WL 890184, at *3 (S.D.N.Y. Mar. 25, 2022) (granting a sealing request where "disclosure of this confidential business information would subject [movant] to a competitive disadvantage").

[3] *See* Lubiano Decl. ¶ 6.

[4] *See id.* at ¶ 8.

[5] *See* redactions at pp. 15 n.13, 16, 26 (second and third bullets), 29 n.126, 36 ¶ 58, 37 ¶ 60 (second and third bullets) and n.157 of Ex. 1 (Rule Report); redactions at page pp. 1–2, 15, 27 and at ¶¶ 27–30, 32, 33, 35, 37, 38 n.12, 39–43, v., and 66–67. of Ex. 2 (Sheppard Report).

4

Offshore—and Calrissian and Alchemy.[6] Disclosure of the Expert Reports' misleading statements regarding "Virgo's" purported corporate structure would be detrimental to VIG's business relationships with current and potential investors and harm VIG's competitive standing in the marketplace.[7] Furthermore, revelation of this highly confidential information would cause material harm to VIG's business, competitive standing, relationships with investors, and ability to compete for and secure business partnerships and investors.[8] As a private equity fund manager, VIG's reputation is critical to its ability to obtain both investors and funds to support the Investment Funds under its management.[9] If counterparties (such as investors and lenders) do not trust VIG's ability to manage investments, these parties will be unwilling to provide VIG with sensitive information in future negotiations, or simply transact with one of VIG's competitors.[10]

<u>Misleading selective quoting of emails from VIG-related personnel.</u> Certain portions of the Expert Report selectively quote and purport to summarize confidential emails sent by certain VIG-related personnel in connection with the investment in Alchemy.[11] Such selective quotation of emails, which are taken out of context (and suffer from hearsay objections and violate the best evidence rule) would mislead the public—including current and potential investors—regarding VIG and VIG-funds and serve only to impugn the character of past and present VIG-related individuals.[12] Disclosure of the Expert Reports' misleading statements regarding "Virgo's" purported corporate structure and misleadingly summarized emails would be detrimental to VIG's business relationships with current and potential investors and harm VIG's competitive standing in the marketplace.[13] As a private equity fund manager, VIG's reputation is critical to its ability to obtain both investors and funds to support the Investment Funds under its management.[14] If counterparties (such as investors and lenders) do not trust VIG's ability to manage investments, these parties will be unwilling to provide VIG with sensitive information in future negotiations, or simply transact with one of VIG's competitors.[15]

For these reasons, the proposed redactions to the Expert Reports identified in Exhibit 1 and Exhibit 2 are critical to VIG's business and competitive standing. Because these two categories of misleading statements will cause competitive harm to VIG—a non-party that cannot adequately countermand reputational damages given its procedural posture—the privacy interests of the Virgo Entities overcome any presumption of public access. Moreover, the Virgo Entities' proposed redactions are narrowly tailored, and therefore, sealing is appropriate and necessary to protect the Virgo Entities' significant privacy interests. *See Ripple*, 2023 WL 3477552, at *6.

---

[6]   *See* Lubiano Decl. at ¶ 8.
[7]   *See id*.
[8]   *See id*.
[9]   *See id*. at ¶ 9.
[10]  *See id.* at ¶ 9.
[11]  *See* redactions at pp. 6, 15 n.13, 22–25, 26 (first through fourth bullets), 27–28, 29 (second bullet), 32–33 n.138, 34, 35, 36 (first and second bullets), 37 ¶ 60 (first bullet) of Ex. 1 (Rule Report); redactions at pp 7–8 n.20, 9 n.23, 10–11 n.26, 12 n.12, 13–14 n.37, 22 n.61. of Ex. 2 (Sheppard Report).
[12]  *See* Lubiano Decl. at ¶ 9.
[13]  *See id*.
[14]  *See id*.
[15]  *See id*.

5

Respectfully submitted,

ALLEN OVERY SHEARMAN STERLING US LLP

By: /s/ *Emanuel C. Grillo*
Emanuel C. Grillo
1221 Avenue of the Americas
New York, New York 10020
Tel: 212-610-6300
Emanuel.Grillo@aoshearman.com

*Attorneys for non-parties Virgo Investment Group LLC, Virgo Societas Partnership III (Offshore), L.P., and Virgo Societas Partnership III (Onshore), L.P.*