A&O SHEARMAN

Allen Overy Shearman Sterling US LLP<br>
1221 Avenue of the Americas<br>
New York, NY 10020<br><br>
Tel            +1 212-610-6300<br>
Fax          +1 212 610 6399<br>
Direct Line   +1 212-610-6384<br>
Emanuel.Grillo@aoshearman.com

<u>VIA ECF</u>

The Honorable Paul G. Gardephe
United States District Court Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 2104
New York, New York 10007

August 12, 2024

**Re:** *Emigrant Bank and Pacific Mercantile Bank v. SunTrust Bank, et al.*, No. 1:20-cv-02391

Dear Judge Gardephe:

We write on behalf of our client, non-party Virgo Investment Group LLC ("VIG"), pursuant to Rule I.D. of Your Honor's Individual Rules of Practice in Civil Cases and the Court's order dated July 26, 2024 ordering VIG to complete supplemental document discovery by August 16, 2024, ECF No. 189 (the "Order"), to request a 14-day extension to complete document discovery by August 30, 2024 and deposition discovery by September 23, 2024. This is VIG's first request for an extension.[1] Non-parties Baker Tilly US LLP and SS&C Technologies, Inc. (collectively with VIG, the "Non-Parties") join this request. Counsel for the Parties do not consent to this request.[2]

VIG, a non-party to this action, first received notice of the Court's Order sustaining Plaintiffs' objections to Magistrate Judge Wang's discovery orders (ECF Nos. 125, 131, and 169)—relating to the May 9, 2023 subpoena issued to VIG (the "VIG Subpoena") and to subpoenas

---

[1] Plaintiffs and Defendants have requested a total of seven extensions. *See* ECF Nos. 16, 47, 67, 84, 90, 103, 130. All requests, except for ECF No. 130 were granted. *See* ECF Nos. 48, 68, 92, 106. ECF No. 130 was disposed of by a joint stipulation between the Parties. ECF No. 153.

[2] Defendants will only consent to a one-week extension for the Non-Parties' compliance with the Court's Order but would not consent to a commensurate extension to take depositions. Plaintiffs conditioned their consent on an unequivocal guarantee of complete production by the requested extension date. Given the uncertainties of document review and collection, and the large scope of requests and time period at issue warranting this extension, VIG could not in good faith make the guarantee Plaintiffs sought.

Allen Overy Shearman Sterling US LLP is a limited liability partnership organized under the laws of the State of Delaware. Allen Overy Shearman Sterling US LLP is affiliated with Allen Overy Shearman Sterling LLP, a limited liability partnership registered in England and Wales with registered number OC306763 and with its registered office at One Bishops Square, London E1 6AD. It is authorized and regulated by the Solicitors Regulation Authority of England and Wales (SRA number 401323). The term partner is used to refer to a member of Allen Overy Shearman Sterling LLP or an employee or consultant with equivalent standing and qualifications. A list of the members of Allen Overy Shearman Sterling LLP and of the non-members who are designated as partners is open to inspection at its registered office at One Bishops Square, London E1 6AD.
Allen Overy Shearman Sterling US LLP is an affiliate of Allen Overy Shearman Sterling LLP. Allen Overy Shearman Sterling LLP or an affiliated undertaking has an office in each of: Abu Dhabi, Amsterdam, Antwerp, Austin, Bangkok, Beijing, Belfast, Boston, Bratislava, Brussels, Budapest, Casablanca, Dallas, Dubai, Dublin, Düsseldorf, Frankfurt, Hamburg, Hanoi, Ho Chi Minh City, Hong Kong, Houston, Istanbul, Jakarta (associated office), Johannesburg, London, Los Angeles, Luxembourg, Madrid, Menlo Park, Milan, Munich, New York, Paris, Perth, Prague, Riyadh, Rome, San Francisco, São Paulo, Seoul, Shanghai, Silicon Valley, Singapore, Sydney, Tokyo, Toronto, Warsaw, Washington, D.C.

issued to the Non-Parties—on July 26, 2024. *See* Declaration of Rebecca M. Randolph in Support of the Virgo Investment Group LLC's Letter-Motion to Extend Third-Party Discovery ("Decl. Randolph") ¶ 4. The Order stated that "[f]or the reasons stated in open court today, Plaintiffs' objections are sustained . . . [and] [s]upplemental document discovery in accordance with this Order is to be provided by August 16, 2024." The Order did not specify which of the requests it was compelling VIG or the other Non-Parties to provide documents in response to, nor which of the depositions it was compelling occur. Although non-party VIG immediately requested a copy of the transcript to ascertain this information,[3] it did not obtain a copy of the transcript until the afternoon of Monday, July 29, 2024. Decl. Randolph ¶ 5. After receiving the transcript on Monday, July 29th, VIG began gathering and reviewing documents on Tuesday, July 30th. *Id.* ¶ 6.

VIG began collecting potentially responsive documents and communications. In addition to searching its files, VIG also queried its electronic communications stored in its cloud-based document retention system. *Id.* ¶ 7. After applying broad keywords such as Calrissian, Alchemy, Millennium, Borrowing Base, Baker Tilly, and several domain name searches to identify potentially responsive documents, the search rendered a search universe of over 90,000 documents. *Id.* ¶ 8. Beginning on July 31st through August 6th, documents were transferred to a third-party vendor to process the data. *Id.* ¶ 9. The third-party vendor completed processing the data on August 6th. *Id*. After the use of Boolean searches, the collected universe was reduced to roughly 23,000 documents. *Id.* ¶ 9. However, for the reasons described below, due to breadth of five of the eighteen requests, further scoping of the review is proving frustrating, leaving an extensive population of documents to be reviewed. *Id.* ¶¶ 14–22. VIG will be unable to complete review and production by the deadline of August 16, 2024. *Id.* ¶ 22.

**VIG requests a 14-day extension of time to produce documents responsive to five of the eighteen requests.** While VIG recognizes that the Order states plainly that "[n]o extensions will be granted," as set forth below, compliance with the Order's deadline to complete supplemental document is virtually impossible for five requests (Request Nos. 2, 4, 5, 13, and 14). Even as limited by the Order, the VIG Subpoena propounds 18 different documents requests on VIG, calling for documents and communications from as early as January 2013. Conf. Tr. 32:16-17; *see also* ECF No. 97-1, VIG Subpoena. However, Request Nos. 2, 4, 5, 13, and 14 pose unique challenges to compliance by the deadline due to their breadth. Specifically:

Request No. 2 asks for "All Documents and Communications related to the capitalization of Calrissian, including equity or debt financing and all transfers of money or other assets to Calrissian from any Person."[4] Calrissian was always planned to be, and in fact was, a holding company formed solely to hold the membership interests in Alchemy, as the Defendants were well aware.[5] From the beginning of contemplation of the leveraged buyout of Alchemy, the two Funds that planned to acquire interests in companies always planned to acquire those interests through a

---

[3]   In the transcript, the Court ordered VIG to produce documents responsive to Request Nos. 2-7, 9-18, 20, and 21. Conf. Tr. 32:16-17. The Court also ordered VIG to produce documents in response to only certain portions of Request Nos. 8 12, and 22. Conf. Tr. 33:2-34:9. The Court found that VIG had already provided documents responsive to Request No. 1 and therefore need not produce any further documents in response thereto.

[4]   ECF No. 97-1 at 17.

[5]   Ex. 2 to VIG's Letter Mot. for Conf., ECF No. 85-2, at 2.

holding company (as is standard for such transactions). Calrissian became that holding company, but it was not formed on August 4, 2014.[6] The acquisition of Alchemy followed shortly after, on August 18, 2014.[7] But as Plaintiffs allege, the transaction was contemplated prior to August 4, 2014.[8] Thus, any discussion of Calrissian's capitalization (to the extent it was discussed—beyond the fact that Calrissian would be a holding company that would not hold cash, as disclosed to the Defendants[9]) would not be easily found by searching documents for "Calrissian," as the name "Calrissian" was not even determined until July 29, 2014, shortly before its formation. Decl. Randolph ¶ 16. Although VIG is endeavoring to locate and review potentially responsive documents, given the breadth and timeframe of documents it must search—"[a]ll documents and communications" over a multi-year period—and the unlikelihood that search terms will effectively aid in narrowing that broad search, VIG needs additional time to continue to search for, review, and produce documents in response to this Request. *Id.*

Request No. 4 asks for "All Documents and Communications related to ***any*** actions taken by Virgo (including actions taken by Perez or Watson) to manage, control, direct, instruct, advise, or consult with Calrissian regarding Alchemy, the Credit Agreement, the Guaranty Agreement, the Lenders, the Guaranteed Obligations, the Guaranty Action, or the Calrissian Bankruptcy." VIG has undertaken efforts to gather *potentially* responsive documents through the custodial collection of Alchemy Board members, including Mr. Perez and Mr. Watson, which has yielded over half a million collected documents. Decl. Randolph ¶ 17. The further review and search of this universe requires additional time. *Id.*

Request No. 5 asks for "All Documents and Communications related to ***any*** actions taken by Virgo (including actions taken by Mr. Perez or Mr. Watson) to manage, control, direct, instruct, consult with, or advise Alchemy." VIG has undertaken efforts to gather *potentially* responsive documents through the custodial collection of Alchemy Board members, including Mr. Perez and Mr. Watson, which has yielded over half a million collected documents. Decl. Randolph ¶ 18. The further review and search of this universe requires additional time. *Id.*

Request No. 13 asks for "All Communications and Documents exchanged between You and any other entity (including, but not limited to, Alchemy, Calrissian, and SunTrust) related to the Credit Agreement, Borrowing Base Certificates, the Guaranty Agreement, the Joinder Agreement, the Guaranteed Obligations, or Alchemy's default under the Credit Agreement." Given the breadth of this request (in both time and scope), the request does not lend itself to simple search terms. Decl. Randolph ¶ 19. As such, VIG requires additional time to complete its search, review, and production for materials. *Id.*

Request No. 14 asks for "All internal communications related to the Credit Agreement the Guaranty Agreement, the Joinder Agreement, or the Guaranteed Obligations."[10] Given the breadth of this request (unlimited in time and broad in scope), the request does not lend itself to simple search terms either. Decl. Randolph ¶ 20.

---

[6]   Am. Compl., ECF No. 45, at ¶ 29.
[7]   *Id*. at ¶ 31.
[8]   *Id*. at ¶¶ 27–28.
[9]   Ex. 2 to VIG's Letter Mot. for Conf., ECF No. 85-2, at 2.
[10]  *Id*.

In sum, compliance with the deadline is virtually impossible for these five requests because the temporal span (nearly ten years) and breadth of the requests "***all*** documents and communications" relating to (1) the due diligencing, acquisition via leveraged buyout, subsequent bolt-on transaction, and ultimate bankruptcy of Alchemy; (2) the multiple financing and ancillary agreements related thereto; (3) certain reporting by Alchemy; (4) certain financial transactions of Alchemy and Calrissian; (4) certain decisions taken by Alchemy management, and (5) "***any actions taken*** . . . to manage, control, direct, instruct, consult with, or advise Alchemy"; as well as all or substantially all documents relating to one litigation and one arbitration, plus further financial documents) are enormous. Decl. Randolph ¶ 15. To comply, VIG has collected four custodians yielding a sum of over half a million documents. *Id.* ¶ 11. Review and production of responsive documents from this universe will take at least another two weeks, until August 30.

For these reasons, the Non-Parties respectfully request a 14-day extension of time, up to and including August 30, 2024, to produce documents so that they can comply with this Court's order.

**Request for 14-Day extension of time to produce witnesses for deposition.** Finally, because extending the time for production of documents is likely to impact both the parties' and VIG's ability to prepare for the depositions ordered by the Court—including deposition of several VIG personnel and deposition of VIG itself pursuant to Fed. R. Civ. P. 30(b)(6)—VIG respectfully requests a 14-day extension of time, up to and including September 23, 2024 to present witnesses for depositions as ordered by the Court.

Respectfully submitted,

ALLEN OVERY SHEARMAN STERLING US LLP

By: /s/ *Emanuel C. Grillo*
Emanuel C. Grillo
1221 Avenue of the Americas
New York, New York 10020
Tel: 212-610-6300
Emanuel.Grillo@aoshearman.com

*Attorneys for non-parties Virgo Investment Group LLC, Virgo Societas Partnership III (Offshore), L.P., and Virgo Societas Partnership III (Onshore), L.P.*