quinn emanuel trial lawyers | new york

295 Fifth Avenue, New York, New York 10016 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7471**

August 26, 2025

WRITER'S EMAIL ADDRESS
**coreyworcester@quinnemanuel.com**

<u>**VIA ECF**</u>

Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 2104
New York, NY 10007

Re:   <u>*Emigrant Bank, et al. v. SunTrust Bank, et al.*</u>, No. 1:20-cv-02391-PGG-OTW

Dear Judge Gardephe:

Plaintiffs Emigrant Bank ("Emigrant") and Pacific Mercantile Bank ("PMB") respectfully submit this request for a pre-motion conference regarding their motion for partial summary judgment with respect to Defendants SunTrust Bank and Truist Bank's ("SunTrust's") Second, Third, Eighth, and Tenth Defenses in their Amended Answer. ECF No. 91 ("Answer").

## I.   FACTUAL BACKGROUND

Plaintiffs, SunTrust, and non-party Preferred Bank (collectively, "Lenders") were lenders under an Amended and Restated Revolving Credit and Term Loan Agreement. ECF No. 45-1 (the "Credit Agreement"). SunTrust was the Administrative Agent for the Lenders. Under the Credit Agreement, the Lenders established a credit facility for the borrower, Our Alchemy, LLC ("Alchemy"). Alchemy's obligations were guaranteed under a Guaranty and Security Agreement (the "Guaranty") (ECF No. 45-2) by Calrissian L.P. ("Calrissian"), an entity formed by Virgo Investment Group LLC ("VIG") to acquire Alchemy on VIG's behalf. Calrissian was fully owned and controlled by VIG and its affiliates, Virgo Societas Partnership III (Onshore), L.P. ("Virgo Onshore"), Virgo Societas Partnership III (Offshore), L.P. ("Virgo Offshore"), and Virgo Service Company LLC ("VSC") (collectively, "Virgo").

Alchemy defaulted on the loan in 2017, and Calrissian failed to pay under the Guaranty. Alchemy filed a Chapter 7 bankruptcy, and Calrissian filed a Chapter 11 bankruptcy. Under the Credit Agreement, SunTrust, as Administrative Agent, was required to take certain actions upon the written request of Lenders who collectively hold over 50% of the outstanding debt (the "Required Lenders"). Credit Agreement § 8.1. In 2019 and 2020, Plaintiffs, as Required Lenders, made written requests for SunTrust to sue Virgo for breach of the Guaranty as the alter ego or principal of Calrissian. SunTrust refused. Plaintiffs then filed this action for breach of the Credit Agreement. ECF No. 1.

On February 21, 2024, Plaintiffs filed their original Pre-Motion Letter. ECF No. 157. After discovery was re-opened in July 2024 (ECF No. 194), Plaintiffs discovered further indisputable evidence of SunTrust's breach and Virgo's alter ego relationship with Calrissian.

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

In 2014, VIG sought to purchase Alchemy (then called Millenium) ■■■ ■■■ Ex. 1 (VIGPROD_170753) at -759. However, due diligence revealed that Alchemy was a risky investment. VIG's accounting firm, Baker Tilly, issued a draft report stating that Alchemy had ■■■ ■■■ Ex. 2 (VIGPROD_157217) at -228. Without disclosing that information to the Lenders, ■■■ ■■■ See Ex. 3 (VIGPROD_170924); *compare* Ex. 4 (VIGPROD_170807) *with* Ex. 1. ■■■ ■■■ Ex. 5 (VIGPROD_088893) at -893. Accordingly, Virgo created Calrissian to acquire Alchemy on its behalf and guaranty Alchemy's debt under the Credit Agreement.

The general partner of Calrissian was VSC, and Virgo Onshore and Virgo Offshore were limited partners. *See generally* Ex. 6 (TRUIST_00000192). VIG, VSC, Virgo Onshore, Virgo Offshore, and Calrissian all had substantially the same ■■■ ■■■ See Ex. 7 (Watson Nov. 5, 2024 Dep. Tr.) at 18:20-19:16, 25:8-25, 34:1-07, 46:04-47:21, 72:21-73:11, 89:25-90:02, 221:15-16; Ex. 8 (Perez Nov. 8, 2024 Dep. Tr.) at 17:04-13. For example, Jesse Watson, the founder and CIO of VIG, and the Manager of Calrissian, signed the Calrissian Limited Partnership Agreement on behalf of all three partners, Virgo Onshore, Virgo Offshore, and VSC. Ex. 6 at -228-30. Calrissian had ■■■ Ex. 7 at 44:03-16; Ex. 9 (VIG 30(b)(6) Nov. 6, 2024 Dep. Tr.) at 134:23-135:04.

Significantly, Virgo did not capitalize Calrissian—Calrissian's bankruptcy filings show it never had any assets (other than an equity interest in Alchemy, which was insolvent) or operating income. Indisputably, Calrissian never had the ability to perform under the Guaranty if Alchemy defaulted. Ex. 10 (Calrissian Assets and Liabilities and Statement of Financial Affairs).

Virgo thus not only owned Calrissian, but it also completely controlled and managed Calrissian as well as Calrissian's sole asset, Alchemy. Mark Perez, a director and founding partner of VIG, wrote that ■■■ ■■■ Ex. 11 (VIGPROD_088911) at -912 (emphasis added).

Virgo used Calrissian to control Alchemy, guaranty its debt, and funnel money from Alchemy through Calrissian to Virgo Onshore and Virgo Offshore, leaving Alchemy insolvent and unable to pay Lenders under the Credit Agreement and leaving Calrissian insolvent and unable to pay Lenders under the Guaranty. For example, in 2015, ■■■ ■■■ Ex. 8 at 108:21-25. Indeed, the payments left Alchemy and Calrissian bankrupt.

At the same time, Virgo concealed key information about Alchemy's finances from the Lenders. For example, five days after the Amended Credit Agreement was signed, ■■■ ■■■ 12 (VIGPROD_076625) at -625. Virgo had been planning ■■■ for months, but had never disclosed this to the Lenders (even though ■■■ was an event of default under the Credit Agreement) and never disclosed that ■■■ Ex. 13 (VIGPROD_035301).

2

According to SunTrust, Virgo "mismanaged" Alchemy. Ex. 14 (SunTrust Motion to Convert Calrissian Bankruptcy, at ¶ 2); Ex. 15 (Truist 30(b)(6) Oct. 12, 2025 Dep. Tr.) at 113:12-114:01, 117:03-18. Virgo's mismanagement and siphoning of money caused Alchemy to become insolvent, and Virgo put Alchemy into a Chapter 7 bankruptcy. Ex. 16 (ALC00162203). SunTrust then called on Calrissian to pay under the Guaranty, but Calrissian had no assets because Virgo did not capitalize Calrissian. ████████████████████████████████████████ Exs. 17-18 (VIGPROD_151409; VIGPROD_151413). Unsurprisingly, ████████████████████████████████████ and Virgo put Calrissian into a a Chapter 11 bankruptcy. Ex. 19 (Calrissian Voluntary Petition for Non-Individuals Filing for Bankruptcy).

SunTrust, as an agent for the Lenders, moved to convert the Calrissian Chapter 11 bankruptcy to a Chapter 7. Ex. 14. SunTrust argued that a Chapter 7 Trustee should investigate alter ego claims against Virgo (VIG, Virgo Onshore, and Virgo Offshore), telling the Court that Virgo "*entirely controlled*" Calrissian "*with no apparent degree of separateness.*" *Id.* at 2 (emphasis added). The Court converted the case to a Chapter 7, but the case was dismissed because the Calrissian estate had no assets. Ex. 20 (July 16, 2019 Chapter 7 Trustee's Report).

## II. LEGAL STANDARD

A court will grant summary judgment in whole or in part when there is no genuine dispute of material fact as to all or some issues. *Johnson v. City of New York*, 2011 WL 1044852, at *3 (S.D.N.Y. Mar. 18, 2011) (Gardephe, J.). "A plaintiff who uses a summary judgment motion 'to challenge the legal sufficiency of an affirmative defense . . . may satisfy its burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case." *U.S. v. 111 E. 88th Partners*, 2020 WL 1989396, at *10 (S.D.N.Y. Apr. 27, 2020) (Gardephe, J.) (citations omitted).

## III. PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' SECOND AND TENTH AFFIRMATIVE DEFENSES

Plaintiffs are entitled to summary judgment on SunTrust's Second and Tenth Defenses, which state that "Plaintiffs must prove that the loan amounts are, in fact, recoverable from Virgo—that is, [] Virgo is the alter ego of Calrissian." Answer at 24–25, 31–32.

The Court has ruled that to defeat SunTrust's Second and Tenth Defenses, "plaintiffs must prove that they had a *viable alter ego claim* that defendants wrongfully chose to forgo." ECF No. 194 at 25:12–14 (emphasis added). Here, there is no genuine dispute that there was a viable claim that the Virgo entities[1] were alter egos of Calrissian. Under New York law, which applies to the Guaranty and the Credit Agreement, the elements of an alter ego claim are: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Conason v. Megan Holding, LLC*, 25 N.Y.3d 1, 18 (2015) (citation omitted).

***Domination***. The evidence of Virgo's domination over Calrissian is overwhelming. Calrissian had no separate management, employees, offices, or any other independent operations; ████████████████████████████████████████████████████████████████████████ *Supra* at 2-3.

---

[1] SunTrust may argue that Plaintiffs refer to "Virgo" generally rather than each specific Virgo entity. However, undisputed facts establish that each Virgo entity satisfies the standard for alter ego liability. *Supra* at 2-3. In fact, SunTrust referred to the Virgo entities collectively as "Virgo" in requesting that a trustee pursue an alter ego claim in the Calrissian bankruptcy. Ex. 14, at ¶ 2.

████████████████ *See, e.g.*, Exs. 21-24 (VIGPROD_084225; VIGPROD_084656; VIGPROD_127727, VIGPROD_127736). As SunTrust represented to the Bankruptcy Court, "[S]*ince its formation, Calrissian has been entirely controlled, with no apparent degree of separateness, by its investors and affiliates, the Virgo Entities*." Ex. 14, at ¶ 2 (emphasis added). SunTrust's expert did not dispute that statement. Ex. 25 (Irwin June 19, 2025 Supp. Dep. Tr.) at 77:03-08. There can be no dispute that the first element of alter ego is satisfied.

*Wrongdoing*. Undisputed evidence shows Virgo used Calrissian to commit wrongdoing against the Lenders in multiple ways. *First*, Virgo created Calrissian as a shell corporation to acquire Alchemy on its behalf and guaranty Alchemy's loan, while failing to capitalize Calrissian for the purpose of guarantying the debt, knowing that Calrissian could not perform under the guaranty if Alchemy defaulted. *See Am. Federated Title Corp. v. GFI Mgmt. Servs.*, 39 F. Supp. 3d 516, 526-27 (S.D.N.Y. 2014); *Ventresca Realty Corp. v. Houlihan*, 41 A.D.3d 707, 709 (2d Dep't 2007) (using a dominated "shell entity created solely for the purpose of signing [a] lease," then breaching the lease, is a sufficient wrong to justify piercing the corporate veil).

*Second*, using Calrissian as the ostensible owner of Alchemy, Virgo siphoned cash from both Alchemy and Calrissian, leaving them insolvent. *See Am. Federated*, 39 F Supp. 3d at 527 ("stripping of corporate assets by shareholders to render the corporation judgment proof constitutes a fraud or wrong justifying piercing the corporate veil."); *Elghourab v. Vista JFK, LLC*, 2022 WL 17771995, at *7 (E.D.N.Y. Sept. 2, 2022) (defendant diverted funds through their "complete domination over Defendant.")

*Third*, Virgo concealed from Lenders that Alchemy's CFO had committed fraudulent financial practices to inflate revenues and induce Lenders to enter into the Credit Agreement. Exs. 16, 26-27 (ALC00162203; ALC00947623; ALC05324456). Virgo also concealed its intent to fire ████████████████████████████████████████████████████ Exs. 12-13.

*Fourth*, Virgo caused Alchemy and Calrissian to make payments to Virgo affiliates in violation of the Lenders' first-priority security interests under both the Credit Agreement and the Guaranty. *See* Credit Agreement §10.5(a); Guaranty §10.6(a). Total payments of $32.8 million left both Alchemy and Calrissian bankrupt and unable to pay the guaranteed debt.

*Fifth*, when Alchemy was trying to restructure to avoid bankruptcy, Virgo interfered in the process, which Truist's senior vice president agreed was "wrong." Ex. 28 (de Jesus-Caballero Oct. 11, 2023 Dep. Tr.) at 59:14-60:4.

The Lenders, including Plaintiffs, were injured when Calrissian defaulted on the Guaranty. *See Elghourab*, 2022 WL 17771995, at *7 ("Plaintiff has adequately linked its inability to collect on its judgment to wrongful affirmative acts taken by Defendants, including misrepresentations …, inadequate capitalization, and diversion of funds belonging to Defendant …. Thus, Defendant and non-parties committed wrongful acts by stripping Defendant of its assets."); *Balmer v. 1716 Realty LLC*, 2008 WL 2047888, at *6-7 (E.D.N.Y. May 9, 2008) ("[D]efendants siphon[ing] off millions of dollars from [alter-ego] during a time when the company was insolvent and faced increasing liability to its creditors" leaving "[alter-ego] not able to satisfy its debts" is sufficient injury resulting from defendants' domination.").

## IV. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON DEFENDANTS' SCRIVENER'S ERROR DEFENSE

SunTrust's Eighth Defense asserts that it has no liability because the Credit Agreement contains a scrivener's error. Section 8.1 of the Credit Agreement requires that, upon an event of default, SunTrust must take certain actions upon the request of the Required Lenders, including

4

"exercising all remedies available at law or in equity." Section 8.1 carves out events of default in subsections (h) and (i) from this requirement. SunTrust argues that a default under subsection (g), concerning voluntary bankruptcy, should have been carved out rather than subsection (i). To establish this defense, SunTrust must prove a mutual mistake, *i.e.*, that all Lenders intended Section 8.1 to carve out subsection (g) rather than (i). *Inv. Ins. Co. of Am. v. Dorinco Reins. Co.*, 917 F.2d 100, 105 (2d Cir. 1990). Indisputably, SunTrust cannot.

*First*, there is no evidence that Emigrant, PMB, or Preferred Bank intended that subsection (g) rather than subsection (i) be carved out. *See, e.g., Citigroup, Inc. v. Indus. Risk Insurers*, 336 F. Supp. 2d 282, 293 (S.D.N.Y. 2004) (granting summary judgment where party was "unable to show" mutual mistake because it "proffered no evidence" of the other party's intent); *Inv. Ins. Co. of Am.*, 917 F.2d at 105 (similar). *Second*, any such scrivener's error would be irrelevant because Events of Default occurred under subsections (a), (b), (e), (d), and (i) of Section 8.1 when Alchemy and Calrissian failed to pay principal and interest on the loan. *See, e.g.*, Answer at ¶ 63 (admitting Events of Default under subsections (a) and (d)). Thus, even if voluntary bankruptcy were carved out, SunTrust still was obligated to file suit based on other defaults. *See e.g., Ins. Co. of N. Am. v. Milberg Weiss Bershad Specthrie & Lerach*, 1996 WL 520902, at *1-4 (S.D.N.Y. Sep. 12, 1996) (granting summary judgment where "even if [the contracts] were reformed," the outcome would not be affected).

## V. PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' THIRD DEFENSE

SunTrust's Third Defense asserts, based on Section 9.2 of the Credit Agreement, that it was not obligated to sue Virgo because it was SunTrust's opinion and/or the opinion of its counsel that an action against Virgo would have exposed SunTrust to liability or would have been contrary to the Loan Documents or applicable law. Answer at 25-26. SunTrust has withdrawn the advice of its counsel prong of its defense. ECF No. 154 at 3 ("Truist will not assert an advice of counsel defense.").

As to the first prong of this defense, SunTrust admitted it did not believe an action against Virgo would have exposed it to liability. SunTrust's corporate representative testified "I don't believe SunTrust considered the filing of the lawsuit frivolous," and he was not aware of any basis on which Virgo could have pursued claims against SunTrust as a result of SunTrust bringing alter ego claims. Ex. 15 at 298:14-23; Ex. 29 (de Jesus-Caballero May 1, 2024 Dep. Tr.) at 24:18-25:08. Ultimately, he testified that SunTrust chose not to sue the Virgo entities because it felt the case was not strong enough, even though its counsel said it had "colorable" claims. Ex. 28 at 256:05-257:10; Ex. 30 (Akin Gump memo). Other than the bankruptcy stay, which would not have barred an action against Virgo, SunTrust's vice president testified that he could not identify any reason that a lawsuit against Virgo would be contrary to the loan documents or any applicable law. Ex. 29 at 59:02-12.

To the extent SunTrust argues that the Calrissian Bankruptcy automatic stay would have barred an action against Virgo, SunTrust is wrong, and SunTrust's letter refusing Plaintiffs' demand made no mention of the Calrissian Bankruptcy. Ex. 31 (EB00237898). Moreover, SunTrust's refusal continued after the automatic stay ended on January 9, 2020. In fact, Plaintiffs made demands on January 9, 2020, the day the case was dismissed, and February 4, 2020, a month later. *See* Ex. 32 (*In re Calrissian LP*, Case No. 17-10356-KG (Bankr. D. Del.)), Jan. 9, 2020 Docket Order.

Respectfully submitted,

*/s/ Corey Worcester*
Corey Worcester