# EXHIBIT 28

Page 1

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF NEW YORK

3          Civil Action No. 1:20-cv-02391-PGG-OTW

4

   _____

5

   EMIGRANT BANK; AND PACIFIC MERCANTILE

6  BANK,

7              Plaintiffs,

8  -against-

9  SUNTRUST BANK; TRUIST BANK; AND DOES 1

   THROUGH 10, INCLUSIVE,

10

              Defendants.

11 _____

12

13

14          VIDEO-RECORDED DEPOSITION OF

15          JUAN RAMON de JESUS-CABALLERO

16              (Taken by Plaintiffs)

17          Charlotte, North Carolina

18          Wednesday, October 11, 2023

19                 9:36 a.m.

20

21

22

23

24

   Reported stenographically by

25 V. Dario Stanziola, CCR (GA)(NJ), RPR, CRR

```
 1                    APPEARANCES
 2

    ON BEHALF OF THE PLAINTIFFS:
 3              GARY E. GANS, Esquire
                Quinn Emanuel Urquhart & Sullivan, LLP
 4              865 S. Figueroa Street, 10th Floor
                Los Angeles, California 90017
 5              (213) 443-3000
                garygans@quinnemanuel.com
 6
                DANIEL LOUD, Esquire
 7              Quinn Emanuel Urquhart & Sullivan, LLP
                51 Maidson Avenue, 22nd Floor
 8              New York, New York 10010
                (212) 849-7000
 9              danielloud@quinnemanuel.com
10

    ON BEHALF OF THE DEFENDANTS SUNTRUST BANK AND
11  TRUIST BANK:
                DAVID TETRICK, JR., Esquire
12              King & Spalding LLP
                1180 Peachtree Street, NE, Suite 1600
13              Atlanta, Georgia 30309
                (404) 572-3526
14              dtetrick@kslaw.com
15

16  Also Present:
17              SAMEER KAPOOR, Esquire
                Truist Bank
18
19              AMANDA SMITH, Videographer
20
21
22
23
24
25
```

Page 3

1          VIDEO-RECORDED DEPOSITION OF JUAN RAMON

2    de JESUS-CABALLERO, a witness called on behalf of

3    the Plaintiffs, before V. Dario Stanziola, CCR

4    (GA)(NJ), RPR, CRR, Notary Public, in and for the

5    State of North Carolina, held at the law offices

6    of King & Spalding LLP, 300 South Tryon Street,

7    Suite 1700, Charlotte, North Carolina, on

8    Wednesday, October 11, 2023, commencing at 9:36

9    a.m.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 59

1        A.    Well, clearly, if we refer to the prior

2   paragraph, they changed their scope of the

3   engagement.

4        Q.    Okay.  And you consider that to be

5   interfering in the process, right?

6        A.    At the time we did, yes.

7        Q.    And that interference by Virgo resulted

8   in a failure to consummate a transaction with any

9   of the prospects to refinance the company, right?

10       A.    It appears so, yes.

11       Q.    And resulted in a bankruptcy

12  eventually, right?

13       A.    Yes.

14       Q.    Do you think that it was wrong for

15  Virgo to be excessively involved unbeknownst to

16  the senior lenders and to interfere in an attempt

17  to influence the transaction or retain control of

18  Alchemy?

19            MR. TETRICK:  Object to the form of the

20         question as vague and ambiguous.

21       A.    Could you please repeat the question?

22       Q.    Sure.

23            Do you think that it was wrong for

24  Virgo to be excessively involved, unknown to the

25  senior lenders, and to interfere in an attempt to

Page 60

1  influence the transaction and retain control of

2  Alchemy for itself?

3           MR. TETRICK:  Same objection.

4      A.    I do.

5      Q.    Now, you were involved in calls with

6  other potential financiers like Morgan Stanley

7  with -- with Virgo, right?

8      A.    Again, seven years ago, plus, so hard

9  for me to confirm how many calls or what calls I

10 was involved in.  At the time the financial

11 advisor, Carl Marks, which I seem to remember was

12 engaged as a CRO, chief restructuring officer,

13 had engaged Peter Hoffman to run a process.  And

14 Peter Hoffman was selected by the bank group with

15 particular endorsement from one of your clients,

16 Aperture, as somebody with extensive knowledge of

17 the industry and contacts in the industry.  And

18 the idea was that they would try to find options.

19           And so options were sort of brought.

20 It may have included not just the

21 recapitalization of the business, but also the

22 possible sale of the business is an -- if an

23 interested party would come forward with an offer

24 that was acceptable to the lenders.

25           So most of the conversations with these

Page 256

1          Q.    Do you understand the question?

2          A.    I do not.

3          Q.    Wasn't beautifully asked.  I have to

4    agree with Mr. Tetrick on that.

5               When SunTrust was evaluating whether to

6    sue Virgo at the request of Emigrant and Pacific

7    Mercantile, wasn't it concerned about whether

8    there was evidence that Virgo had acted

9    wrongfully?

10              MR. TETRICK:  Object to the form of the

11         question as ambiguous.

12         A.    When SunTrust was considering whether

13   or not to sue Virgo at the request of Pacific

14   Mercantile Bank and Aperture, we considered a

15   number of factors, not the least of which is

16   whether there was any basis for suing them and

17   the likelihood, based on advice of counsel

18   following the Dan Ray investigation, as to

19   whether or not there were valid claims that could

20   be reasonably pursued.

21              And, quite frankly, valid claims that

22   could be reasonably pursued that were not already

23   being pursued by the trustee.  So there are a lot

24   of factors considered in that decision process,

25   all of which were done with counsel and, quite

Page 257

1   frankly, the end result on advice of counsel.

2        Q.   One of the factors that you thought

3   about at the time was whether there was evidence

4   that Virgo had acted wrongfully, right?

5        A.   One of the factors was whether there

6   were facts that would lead to an actual claim as

7   opposed to a potentially colorable claim with

8   limited likelihood of success as pointed out by

9   counsel with the collaboration of Mr. Ray

10  following Mr. Ray's assessment.

11       Q.   Okay.  Can you answer my question now,

12  please?

13       A.   I believe I've answered your question.

14       Q.   Okay.  That wasn't quite the question.

15            One of the factors that you thought

16  about was whether there was evidence that Virgo

17  had acted wrongfully; isn't that correct?

18            MR. TETRICK:  Object to the form of the

19       question.

20       Q.   And I can go back and ask the -- start

21  again, if that helps.

22            When SunTrust was evaluating whether to

23  sue Virgo at the request of Emigrant and Pacific

24  Mercantile, weren't you concerned about whether

25  there was evidence that Virgo acted wrongfully?