**A&O SHEARMAN**

<u>VIA ECF</u>

The Honorable Paul G. Gardephe
United States District Court Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 2204

**Allen Overy Shearman Sterling US LLP**
599 Lexington Avenue
New York, NY 10022

Tel          +1 212-610-6300
Fax         +1 212 610 6399

August 29, 2025

Re:   *Emigrant Bank and Pacific Mercantile Bank v. SunTrust Bank, et al.*, No. 1:20-cv-02391

Dear Judge Gardephe:

We write on behalf of our clients, non-parties Virgo Investment Group LLC ("VIG"), Virgo Societas Partnership III (Offshore), L.P. ("Offshore"), and Virgo Societas Partnership III (Onshore), L.P. ("Onshore") (collectively the "Virgo Entities") pursuant to Rules II.B. and IV.B. of Your Honor's Individual Rules of Practice in Civil Cases, to move for approval to keep under seal and/or partially redact Plaintiff's pre-motion conference letter for partial summary judgment ECF No. 122 (the "Pre-Motion Letter") and Exhibits 1-5, 7-9, 11-13, 17-18, and 21[1] (the "Exhibits") attached thereto, filed temporarily under seal on August 26, 2025. The Exhibits and Pre-Motion Letter contain or discuss proprietary, confidential, and commercially sensitive information of the Virgo Entities, the disclosure of which would be extremely detrimental to the Virgo Entities' business, particularly as non-parties. To the extent certain of the Exhibits could be redacted, the proposed redacted text is attached to this letter as Exhibit A (Redacted Exhibit 12), Exhibit B (Redacted Exhibit 17), Exhibit C (Redacted Exhibit 18), and Exhibit D (Redacted Exhibit 21), with unredacted copies previously filed under seal by Plaintiffs.

The Virgo Entities are not, and have never been, parties to this litigation. Yet, the Virgo Entities' privacy interests are deeply impacted by the Exhibits—which reveal the highly confidential, proprietary process of VIG's (a private equity investment manager) and its affiliates' role and knowledge with respect to Offshore and Onshore's (both VIG-managed funds) investment in Our Alchemy, LLC ("Alchemy") by way of Calrissian, L.P., the special purpose entity created

---

[1] Although Exhibits 22 – 24 to the Pre-Motion Letter were also filed under seal by Plaintiffs, the Virgo Entities do not seek to seal these documents. The Virgo Entities do, however, agree with the redactions made by Plaintiffs to their Pre-Motion Letter.

Allen Overy Shearman Sterling US LLP is a limited liability partnership organized under the laws of the State of Delaware. Allen Overy Shearman Sterling US LLP is affiliated with Allen Overy Shearman Sterling LLP, a limited liability partnership registered in England and Wales with registered number OC306763 and with its registered office at One Bishops Square, London E1 6AD.  It is authorized and regulated by the Solicitors Regulation Authority of England and Wales (SRA number 401323).  The term partner is used to refer to a member of Allen Overy Shearman Sterling LLP or an employee or consultant with equivalent standing and qualifications.  A list of the members of Allen Overy Shearman Sterling LLP and of the non-members who are designated as partners is open to inspection at its registered office at One Bishops Square, London E1 6AD.
Allen Overy Shearman Sterling US LLP is an affiliate of Allen Overy Shearman Sterling LLP. Allen Overy Shearman Sterling LLP or an affiliated undertaking has an office in each of: Abu Dhabi, Amsterdam, Antwerp, Austin, Bangkok, Beijing, Belfast, Boston, Bratislava, Brussels, Budapest, Casablanca, Chicago, Dallas, Dubai, Dublin, Düsseldorf, Frankfurt, Hamburg, Hanoi, Ho Chi Minh City, Hong Kong, Houston, Istanbul, Jakarta (associated office), London, Los Angeles, Luxembourg, Madrid, Milan, Munich, New York, Paris, Perth, Prague, Riyadh, Rome, San Francisco, São Paulo, Seoul, Shanghai, Silicon Valley, Singapore, Sydney, Tokyo, Toronto, Warsaw, Washington, D.C.

to hold the membership interests in Alchemy. The Virgo Entities' privacy interests, despite being non-parties, could not be more squarely at issue.

Additionally, the Pre-Motion Letter purports to describe the inner workings, private equity strategy, and corporate structure of "Virgo"—a collective term Plaintiffs define to include "VIG and its affiliates," Onshore, Offshore, and Virgo Service Company LLC ("VSC"). Plaintiffs' loose definition is no accident; rather, it is part of Plaintiffs' campaign to try VIG in the courts of public opinion—now that Plaintiffs' years-long attempts to try VIG in the courts of law have all been stymied. Using the term "Virgo" throughout the Pre-Motion Letter (as opposed to identifying specific affiliate of VIG), Plaintiffs quote and cite documents selectively and out of context, making misleading statements that impugn the character of third parties (including past and present VIG-related individuals) and will result in real, though incalculable, reputational damage to VIG—a private equity fund manager whose reputation is critical to its ability to obtain private equity for the various funds under its management[2]—and who is not a party to the instant litigation.

Moreover, as non-parties to the litigation, VIG, VIG-related individuals, and the Virgo Entities have extremely limited opportunities under procedural rules to combat the reputational harms imposed by the unsealing of highly confidential and proprietary Exhibits and the Pre-Motion Letter, being unable to counter such statements by filing a response to the Plaintiff's Pre-Motion Letter. Indeed, the Second Circuit has recognized the significant risk that court files may be used "to gratify private spite or promote public scandal" and suggested "certain methods courts can employ to protect the judicial process from being coopted for such purposes"—including issuing protective orders, striking material from the filings on the grounds that it is "redundant, immaterial, impertinent, or scandalous," and requiring certain material to be filed under seal. *Brown v. Maxwell*, 929 F.3d 41, 51 (2d Cir. 2019).

In *Lugosch v. Pyramid Co. of Onondaga*, the Second Circuit has articulated a three-step process for determining whether sealing is appropriate. 435 F.3d 110, 119 (2d Cir. 2006). **First**, a court must determine whether the presumption of access attaches. *Id.* A presumption of access attaches only to an item that constitutes a "judicial document." *Id.* In order to be designated a judicial document, the item filed must be "'relevant to the performance of the judicial function and useful in the judicial process.'" *Id.* (quotations omitted). Documents submitted in a summary judgment motion are generally deemed to be "judicial documents" as a matter of law such that they are entitled to a presumption of access. *Brown*, 929 F.3d at 47 (citing *Lugosch*, 435 F.3d at 121). However, entitlement to the presumption is founded on the concept that papers attached to a summary judgment actually constitute admissible evidence. Thus, as the Second Circuit has observed:

> [O]ur holding in *Lugosch* relies on the general principle that parties may 'be assumed to have supported their papers **with admissible evidence** and non-frivolous arguments.' Insofar as a district court has . . . specifically found that assumption inapplicable, the categorical rule in *Lugosch* may not apply.

*Brown*, 929 F.3d at 47 n.12 (emphasis added) (quoting *Lugosch*, 435 F.3d at 122). Here, the misleading summarizations and selective quotes in the Pre-Motion Letter are not admissible

---

[2] *See, e.g.,* ECF No. 191, Declaration of Anthony Lubiano at ¶ 9 ("Lubiano Decl.").

evidence, and the presumption of access under *Lugosch* does not attach in the first instance. The Pre-Motion Letter itself does not constitute evidence of anything; as such, it is not subject to the presumption of access under the *Lugosch* framework. Nor does the MSJ constitute **admissible** evidence. The Pre-Motion Letter selectively quotes and purports to summarize documents produced by parties and third parties, including a number of emails purportedly from VIG-related individuals. The *Lugosch* framework, premised on the idea that documents attached to summary judgment motions must contain admissible evidence for the presumption of access to apply, does not govern where, as here, the Pre-Motion Letter (which itself is not a summary judgment motion, but a pre-motion letter) does not constitute admissible evidence. Thus, the Pre-Motion Letter is not entitled to a presumption of access.

Even if this Court were to determine that the Pre-Motion Letter and attached Exhibits are judicial documents to which a presumption of access applies, it must then take the next steps under *Lugosch*. **Second**, *if* the court determines that the item to be sealed is a judicial document, the court must *then* determine the weight of the presumption of access. *Lugosch*, 435 F.3d at 119. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* (internal quotations omitted). If the Pre-Motion Letter and attached Exhibits are determined to be judicial documents submitted in a summary judgment motion, to which a presumption of public access should apply, that presumption is typically a strong presumption. *Id* at 121.

**Third**, "after determining the weight of the presumption of access, the court must 'balance competing considerations against it.'" *Id.* at 120 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)). Thus, the sealing of judicial documents is appropriate with specific, on-the-record findings that the sealing is necessary to preserve higher values and is narrowly tailored to protect those values. *Brown*, 929 F.3d at 47. One such higher value is the privacy of interest of those who resist disclosure. *Id.* at 47 n.13 (citing *Sec. & Exch. Comm'n. v. TheStreet.Com*, 273 F.3d 222, 232 (2d Cir. 2001)). A further countervailing consideration to public access is "the privacy interests of innocent third parties" which "should weigh heavily in a court's balancing equation." *Application of Newsday, Inc.*, 895 F.2d 74, 79–80 (2d Cir. 1990).

Applying these standards, courts have found that business and "financial information may raise such 'significant privacy interests' that overcome the strong presumption of public access, given this information's minimal relevance to a court's decision on summary judgment motions." *Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, No. 20 CIV. 10832 (AT), 2023 WL 3477552, at *3 (S.D.N.Y. May 16, 2023) (quoting *City of Almaty, Kazakhstan v. Ablyazov*, No. 15 Civ. 5345, 2021 WL 1177737, at *2 (S.D.N.Y. Mar. 29, 2021)). For example, in *Ripple*, the court found that, even under the elevated standards for summary judgment materials, disclosure of documents that may cause substantial harm to "investor relationships" will overcome the strong presumption of public access to judicial documents. *Id.* 2023 WL 3477552, at *5 (citations omitted)[3]. Thus,

---

[3] *See also Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 156 (S.D.N.Y. 2015) (permitting sealing of "internal corporate documents that govern investment strategies, information regarding proprietary modeling assumptions, and more generally, customer names, account numbers, and pricing information"); *W.J. Deutsch & Sons Ltd. v. Diego Zamora, S.A.*, No. 1:21-CV-11003-LTS, 2022 WL 890184, at *3 (S.D.N.Y. Mar. 25, 2022) (granting a sealing

information such as audited financial statements, confidential internal financial reports, "including past financial statements, contain[ing] . . . confidential balance sheet[s], revenue and expense figures, pricing, costs, revenue, profit information about past and present business lines, investments in third parties, litigation expenses and settlements" qualified for sealing because such materials were found to cause competitive harm on the disclosing enterprise. *Id.* at *4.

The Virgo Entities' proposed redactions meet this high standard for redaction Here, the Exhibits fall into five distinct categories: (i) emails, memoranda, and reports containing highly confidential, proprietary investment analyses and strategy between VIG-related individuals or third-party consultants[4] (Exhibits 1-5, 11, 13); (ii) deposition excerpts of VIG and VIG partners (Exhibits 7-9); (iii) capital call notices (Exhibits 17-18); (iv) financial documents containing financial information relating to VIG-advised funds that are wholly unrelated to transactions at issue in this case (Exhibits 21); and (v) emails discussing personnel matters, including sensitive salary information of third parties (Exhibit 12).

Of these, categories (i) and (ii) rely on highly sensitive and confidential business and proprietary information, disclosure of which would cause material harm to VIG's business, competitive standing, relationships with investors, and ability to compete for and secure business partnerships and investors. As a private equity fund manager, VIG's reputation is critical to its ability to obtain both investors and funds to support the Investment Funds under its management.[5] If counterparties (such as investors and lenders) do not trust VIG's ability to manage investments, these parties will be unwilling to provide VIG with sensitive information in future negotiations, or simply transact with one of VIG's competitors.[6] These documents should be kept entirely under seal, as redaction would be required of nearly every page of the documents.

Categories (iii) and (iv) of the documents likewise rely on highly sensitive and confidential business and proprietary information and additionally contain sensitive and confidential information of third parties wholly unrelated to the dispute here—including of VIG-advised investments unrelated to Alchemy. Disclosure of this information would not only cause material harm to VIG's business, but to third parties who are not present before this court. If counterparties (such as investors and lenders) do not trust VIG's ability to maintain confidential financial information, these parties will be unwilling to provide VIG with sensitive information in future negotiations or simply transact with one of VIG's competitors. Finally, category (v) contains sensitive financial information (e.g., salary information) of third parties not before this court, disclosure of which could cause material harm to those third parties. Accordingly, the Virgo Entities have proposed redactions for the documents in these latter three categories at Exhibit A (Redacted Exhibit 12), Exhibit B (Redacted Exhibit 17), Exhibit C (Redacted Exhibit 18), and

---

request where "disclosure of this confidential business information would subject [movant] to a competitive disadvantage").

[4] *E.g.,* Baker Tilly, whose engagement agreement *required* VIG not to share Baker Tilly's analysis with anyone, which necessitated VIG seeking a motion for protection with regard to Plaintiffs' request for production of the same. VIG produced the highly confidential Baker Tilly analysis only after expressly ordered to do so by this Court.

[5] *See* ECF No. 191, Lubiano Decl. at ¶ 9.

[6] *See id.* at ¶ 9.

Exhibit D (Redacted Exhibit 21), with unredacted copies having been filed under seal previously by Plaintiffs.

      For these reasons, the proposed redactions to the Exhibits identified in Exhibits A – D hereto and the permanent sealing of Exhibits 1-5, 7-9, 11, and 13 to the Pre-Motion Letter, as well as the continued redaction of the Pre-Motion Letter (as proposed by Plaintiffs) are critical to VIG's business and competitive standing and to protection of third parties who have nothing to do with the instant case. Because unsealing these documents (including the Pre-Motion Letter) will cause competitive harm to VIG—a non-party that cannot adequately countermand reputational damages given its procedural posture—the privacy interests of the Virgo Entities overcome any presumption of public access. Moreover, the Virgo Entities' proposed redactions are narrowly tailored, and therefore, sealing is appropriate and necessary to protect the Virgo Entities' significant privacy interests. *See Ripple*, 2023 WL 3477552, at. *6.

Respectfully submitted,

ALLEN OVERY SHEARMAN STERLING US LLP

By: /s/ *Christopher Newcomb*
Christopher Newcomb
599 Lexington Avenue
New York, New York 10022
Tel: 212-610-6334
chris.newcomb@@aoshearman.com

*Attorneys for non-parties Virgo Investment Group LLC, Virgo Societas Partnership III (Offshore), L.P., and Virgo Societas Partnership III (Onshore), L.P.*