quinn emanuel trial lawyers | new york
295 Fifth Avenue, New York, New York 10016 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7471**

September 9, 2025

WRITER'S EMAIL ADDRESS
**coreyworcester@quinnemanuel.com**

<u>VIA ECF</u>

Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 2104
New York, NY 10007

Re: <u>Emigrant Bank, et al. v. SunTrust Bank, et al.</u>, No. 1:20-cv-02391-PGG-OTW

Dear Judge Gardephe:

Plaintiffs Emigrant[1] and PMB write in response to the pre-motion letter regarding summary judgment by Defendants SunTrust and Truist (together, "Truist"), ECF No. 220 (the "Letter").

## I.    INTRODUCTION

The Credit Agreement provides that in the event of default, Truist, as administrative agent, "***upon written request of the Required Lenders shall***" exercise any remedies available at law. Credit Agreement § 8.1. There is no dispute that (i) several events of default occurred (*see* Ex. 1; Truist 30(b)(6) Oct. 12, 2023 Dep. Tr. at 219:09–18); (ii) the Required Lenders made a written request for Truist to sue Virgo (ECF No. 45-7); and (iii) Truist refused.

Faced with undisputed evidence of breach, Truist resorts to arguments that are contrary to the parties' contracts and the record. *First*, while Truist argues that it was not obligated to act upon Plaintiffs' request, this argument was rejected by this Court in its Order on Truist's motion to dismiss (ECF No. 65 at 18) and by New York state courts dismissing Plaintiffs' action against Virgo on the grounds that "the Lenders agreed to a process by which if the Required Lenders [] directed the Administrative Agent to bring suit, the Administrative Agent was *required* to bring a lawsuit" (Ex. 2 at 1) (emphasis added). *Second*, while Truist claims there is no triable issue regarding damages since it obtained a default judgment against Calrissian and VSC, Truist omits that *both entities are insolvent*, and Truist still has failed to sue the Virgo entities with assets. *Third*, while Truist argues that the alter ego and agency theories lack evidentiary support, its own prior counsel opined that the claims against Virgo were "at least colorable" (ECF No. 157-6), and Truist now concedes that "any theoretical alter ego claim remains viable" (Letter at 4).

Truist's contemporaneous conduct betrays the post hoc, made-for-litigation nature of its arguments. When it refused Plaintiffs' request, it never cited any supposed contractual limit on liability or stated that a lawsuit would be contrary to law or would violate the automatic stay. Ex.

---

[1] Capitalized terms not defined herein have the same meaning ascribed to them in Plaintiffs' pre-motion letter regarding partial summary judgment. ECF No. 223.

quinn emanuel urquhart & sullivan, llp
ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

1 at 298:20–23. Truist breached its contractual obligations as administrative agent, causing harm to Plaintiffs, and this issue is ripe for trial.

## II.     TRUIST BREACHED THE CREDIT AGREEMENT BY NOT SUING VIRGO

Truist's refusal to sue Virgo for breach of the Guaranty as the alter ego or principal of Calrissian constitutes a breach of Section 8.1 of the Credit Agreement. Plaintiffs have presented clear evidence that there is at least a viable claim of an alter ego relationship between Calrissian and several Virgo entities under New York law, which Truist fails to refute (*compare* ECF No. 223 at 3-4 *with* Letter at 4-5). Truist's defenses in its Answer and in its Letter are baseless or, at least, subject to genuine dispute.

### A.     The Loan Documents Do Not Bar Plaintiffs' Claims

***Guaranty Section 7.4:*** Truist argues that Section 7.4 of the Guaranty, to which Plaintiffs are ***not*** parties, eviscerates Plaintiffs' rights under the Credit Agreement, to which they ***are*** parties. However, as non-parties, Plaintiffs' rights are not barred by the Guaranty. Indeed, the Guaranty expressly states that ***the Credit Agreement, not the Guaranty, governs the responsibilities of the Administrative Agent to Plaintiffs***. *See* Guaranty § 8.4. Further, Truist's interpretation of Section 7.4 of the Guaranty would render meaningless Section 8.1 of the Credit Agreement providing that Truist "shall" act upon Plaintiffs' request. *See Greylock Glob. Opportunity Master Fund Ltd. v. Province of Mendoza*, 2004 WL 2290900, at *3 (S.D.N.Y. Oct. 12, 2004) ("It is well settled that, under New York law, courts will refuse, wherever possible, to interpret a contractual term in such a way as to nullify other provisions."). Truist's argument that the Guaranty overrides the Credit Agreement, granting Truist total discretion to refuse Plaintiffs' request to sue Virgo, also fails because there is no real conflict between the Guaranty and the Credit Agreement. The Guaranty gives Truist discretion to sue Virgo; the Credit Agreement similarly gives Truist discretion except that when the Required Lenders make a written request after a default, Truist "***shall***" take action. *See Aries Fire Protection, Inc. v. Tutor Perini/Parsons Joint Venture, J.V.*, 2022 WL 2292801, at *2 (S.D.N.Y. June 26, 2022) (a court must adopt an interpretation of a contract "that gives meaning to the entire contract and reconciles seemingly conflicting provisions"). Finally, any conflict between Section 8.1 of the Credit Agreement and Section 7.4 of the Guaranty cannot be resolved as a matter of law. *See* ECF No. 65 at 20*; see also DBC Real Estate Mgmt., LLC v. Marsh USA Inc.*, 2019 WL 8301701, at *10 (S.D.N.Y. Sept. 29, 2019) (Gardephe, J.) (denying summary judgment where contract was ambiguous and no extrinsic evidence was offered).

***Guaranty Section 8.2:*** Truist's reliance on Section 8.2 of the Guaranty also is misplaced. Section 8.2 concerns Truist's rights and duties with respect to the guarantor (*i.e.,* the "Grantor"), ***not*** the Lenders. Guaranty § 8.2 ("Grantor ... waives any right to require the Administrative Agent or any other Secured Party to proceed against any Grantor or other Person, exhaust any Collateral or enforce any other remedy ...."). Further, Section 8.2 has a carveout for gross negligence and willful misconduct, which are questions of fact. *See infra* at § II(E). And Section 8.4 of the Guaranty states that the duties of the Administrative Agent "shall, as between the Administrative Agent and the other Secured Parties, be governed by ***the Credit Agreement*** ...."

***Credit Agreement Section 8.1:*** Truist also is wrong that the Credit Agreement "eliminates Plaintiffs' rights" when an event of default under subsection (i) of Section 8.1 occurs. Letter at 3. Section 8.1 lists several events of default and provides that "in ***every*** such event (other than an event described in subsection (h) or (i)) ... the Administrative Agent may, and upon the written request of the Required Lenders shall," take certain actions. Credit Agreement § 8.1 (emphasis added). An event of default under subsection (i) does not eliminate Plaintiffs' right to request

action by Truist if *other events of default* have occurred, and Truist has conceded that other events of default had occurred. Ex. 1 at 219:09–18; *see also* ECF No. 65 at 16; ECF No. 157 at 4.

### B. The Automatic Stay Does Not Excuse Truist's Breach

The automatic stay in the Calrissian Bankruptcy (Letter at 3) does not excuse Truist's refusal to comply with Plaintiffs' requests to sue Virgo, who was not in bankruptcy. Among other things, while Plaintiffs made their initial request on December 13, 2019, the Calrissian Bankruptcy closed shortly thereafter on January 9, 2020. On that day, and subsequently, Plaintiffs maintained and renewed their requests for Truist to sue Virgo. *See, e.g.*, Ex. 3 (EB00162914), Ex. 4 (EB00237930). There was no stay in effect at those times. Further, before the bankruptcy closed, Truist could have moved for relief from the automatic stay if it applied, which likely would have been granted because the Trustee had filed a statement of no distribution on July 22, 2019, and there would be no impact on the bankruptcy estate from a suit against Virgo. Ex. 5 (Calrissian Bankr. ECF No. 118). And, as a result of the Trustee's filing, Truist knew the Calrissian Bankruptcy would close imminently and that it could file an action against Virgo thereafter. Finally, Truist never invoked the stay in refusing to sue Virgo. Ex. 6 (EB00237898).

### C. There Is Sufficient Evidence Of Damage From Truist's Failure To Sue Virgo

There is ample evidence of damage resulting from Truist's failure to sue Virgo. Discovery has shown that the Virgo entities who had sufficient assets to pay the amount of the Guaranty may have distributed those assets in the years *after* Plaintiffs made their demand to Truist. Thus, Truist's delays and inaction over the past five years have unquestionably damaged Plaintiffs.

*First,* while Truist trumpets its default judgment against VSC, it neglects to mention that ▬▬▬▬. *See* Letter at 3. That is why Plaintiffs demanded that Truist sue *other* Virgo entities with assets that could have performed under the Guaranty, *i.e.,* VIG, Virgo Onshore, and Virgo Offshore. *See* Ex. 7 (EB00034414).

*Second*, Truist's failure to sue Virgo Onshore and Virgo Offshore is actionable because there is a viable claim they are alter egos and principals of Calrissian under New York law, not because they are Calrissian's limited partners under Delaware law. *Id.*; Letter at 2-3.

*Third*, whatever assets VIG may have had in 2019 when Plaintiffs made their initial request to Truist, and whether Truist would have received costs under the Credit Agreement if it had prevailed in a suit against VIG, are irrelevant to the issue of liability. Plaintiffs need not prove the amount it could have recovered in 2019, which was *before* a lawsuit would even have been filed, let alone resolved; Plaintiffs only need to prove there was a viable alter ego claim that could have been filed after December 2019 against any Virgo entity. *See* ECF No. 194 at 25:12–14. Besides, VIG could have called on outstanding debt, taken on more debt, or financed its obligations by other means to satisfy some or all of the Guaranty. *See* Letter at 3-4.

*Finally,* Truist is wrong that its belated judgment enforcement action in California, filed five years after Plaintiffs' request, bars Plaintiffs' claim. Although Truist concedes an alter ego claim is "viable," it has not made an alter ego claim or any other claim that could result in collecting on the Guaranty—it has not even attempted to add any solvent Virgo entity (*e.g.*, VIG, Virgo Onshore, or Virgo Offshore) as a judgment debtor. *See supra.* Further, Truist is actively opposing a finding of alter ego in this action, underscoring their inadequate representation of the Lenders' interests in the judgment enforcement action. Ex. 8 (September 4, 2024 Ltr. from G. Gans to K. Fowler). This is pointedly evidenced by Truist's present motion where it argues that Virgo is not Calrissian's alter ego, an admission that would be *fatal* to any tardy alter ego claim it may bring

against Virgo in California. As Truist's action and inaction have demonstrated, Plaintiffs cannot rely on Truist to adequately pursue alter ego and agency claims against Virgo in California, and further delay would only lead to additional dissipation of evidence and assets for recovery.

### D. There Is Sufficient Evidence Of Agency And Alter Ego

With respect to the evidence of alter ego and agency liability, Truist applies the wrong law and misconstrues the burden of proof. *First,* Truist assumes without explanation that Delaware law governs despite clear language in the Credit Agreement (§ 10.5) and the Guaranty (§ 10.6) that New York law governs. *See Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131 (2d Cir. 1991). *Second,* Truist has the burden of proof as to its affirmative defense that there is insufficient evidence of alter ego. *See* ECF No. 157 at n.5. *Third,* Truist argues that Plaintiffs have the burden of "identif[ying] evidence in this action to establish [] alter ego." ECF No. 220-0 at II.C. That is not the correct standard—as this Court stated, "[i]n order to demonstrate damages here, plaintiffs must prove that they had a ***viable*** alter ego claim against Virgo that defendants wrongfully chose to forgo." *See* ECF No. 194 at 25:12–14 (emphasis added). Plaintiffs are not required to "win" an alter ego trial-within-a-trial. *Fourth,* Truist makes no showing that Calrissian was not the agent of Virgo. The evidence set forth in Plaintiffs' pre-motion letter for summary judgment confirms that, *at a minimum*, a triable issue exists as to liability under alter ego and agency law. ECF No. 222 at 2-4.

*Alter Ego:* Plaintiffs have demonstrated (and Truist has conceded) that Virgo used Calrissian's corporate form to perpetrate an injustice. The record undisputedly shows an alter ego relationship, including that Virgo and Calrissian had no separate officers, managers, employees, or operations; Calrissian was undercapitalized (it had ***no*** assets to satisfy the Guaranty) and no revenue; and Virgo controlled Calrissian and its sole asset, Alchemy. *Id.* Further, Virgo used Calrissian to commit wrongdoing, including inducing Plaintiffs into funding the acquisition of Alchemy despite knowing that Calrissian could not perform under the Guaranty if Alchemy defaulted; siphoning cash from Calrissian and Alchemy leaving them insolvent; concealing from the Lenders and misstating Alchemy's true financial condition and mismanagement; and causing Calrissian and Alchemy to violate Lenders' first priority security interests. *Id.* Truist itself has admitted facts showing Virgo's alter ego liability, including that Virgo "entirely controlled" Calrissian "with no [] separateness"; Calrissian had no operations, employees, or assets; Virgo "mismanage[d]" Calrissian and Alchemy causing them to default; and Virgo used Calrissian as an undercapitalized shell to guarantee the Loan. ECF No. 157 at 3-4.

Truist's critique of Plaintiffs' experts ignores that alter ego veil-piercing is a fact specific inquiry. *See Wm. Passalacqua Builders, Inc.*, 933 F.2d at 137-40 (reversing directed verdict for defendant and finding jury trial warranted because alter ego liability was a "fact specific" inquiry). A reasonable fact-finder can find domination and wrongdoing based on facts stated above. In any event, Plaintiffs' experts *do* opine that the record reflects indicia of alter ego liability between the Virgo entities and Calrissian. *See, e.g.*, Ex. 9 (Rule June 16, 2025 Dep. Tr. at 18:7–23:24, 26:14–27:16) (identifying ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

*Agency:* Sufficient evidence exists to hold Virgo liable because Calrissian was its ostensible agent. Among other things, (i) there was an appearance of agency because Calrissian acted on behalf of Virgo and for its benefit in acquiring Alchemy, Calrissian entered into the Guaranty for Virgo's benefit, Virgo managed Alchemy through Calrissian, and Virgo siphoned funds from Alchemy using Calrissian as a pass-through; (ii) the Lenders reasonably and in good faith relied on these acts; and (iii) such reliance resulted in harm to the Lenders. *See, e.g.*, Ex. 10 (Truist 30(b)(6) Oct. 18, 2023 Dep. Tr. at 147:20–148:11, 195:21–25); Ex. 11 (ALC00787439);

Ex. 12 (ALC00844265); Ex. 13 (EB00084856). This is sufficient to establish agency liability, and Truist does not dispute any of these facts.[2] *See Astra Oil Co., LLC v. Hydro Syntec Chems., Inc.*, 2014 WL 630676, at *4 (S.D.N.Y. 2014) (listing elements of agency); *Carruthers v. Flaum*, 365 F. Supp. 2d 448, 475 (S.D.N.Y. 2005) (principal can be liable for agent's breach of contract). Further, agency is typically a fact question inappropriate to resolve on summary judgment. *Astra Oil*, 2014 WL 630676, at *4.

### E. Issues Of Fact Exist As To Truist's Conduct

Truist ignores the abundance of evidence showing it acted with gross negligence and willful misconduct in violation of the Credit Agreement. *See* ECF No. 45-1, § 9.2. The Court previously found that Plaintiffs sufficiently pleaded gross negligence and willful misconduct because SunTrust showed "deliberate ... indifference to the rights of [Plaintiffs]" by "refusing to perform its duties and responsibilities under the Credit Agreement unless Plaintiffs provided SunTrust with a general release of all claims." ECF No. 65 at 38 (citations omitted). The record supports Plaintiffs' allegations. Truist refused to sue Virgo or even participate in a lawsuit funded by Plaintiffs without a general release of all known and unknown claims, past and present, whether or not related to this transaction. Ex. 14 (EB00237839). Truist's corporate representative had no legitimate excuse for failing to comply with Plaintiffs' request, testifying that absent "an acceptable release" or assignment (neither of which were required under the Credit Agreement), Truist would not join a suit against Virgo. Ex. 1 at 299:19–300:21. Truist's argument that it requested a release only in connection with cost sharing is pure fiction.[3] Further, the fact that Truist is suing a single defunct Virgo entity ***six years after Plaintiffs' initial request*** under a different theory than the one requested by Plaintiffs does not eliminate its misconduct in refusing to sue the other Virgo entities.[4]

## III. THERE IS EVIDENCE OF DAMAGES FROM TRUIST'S FAILURE TO DISTRIBUTE FUNDS TO THE LENDERS

There is ample evidence of damages resulting from SunTrust's undisputed failure to reimburse Plaintiffs' expenses with distributions from the Alchemy Bankruptcy estate. When SunTrust received those distributions, it reimbursed itself, but not Plaintiffs, for expenses relating to this Action, thereby breaching § 10.3 of the Credit Agreement, and reducing the amount of funds available for distribution to Plaintiffs. SunTrust ignores that Plaintiffs have provided calculations of their reimbursable expenses. Exs. 15-17. In fact, SunTrust's own expert provided a calculation of Plaintiffs' damages. Ex. 18 (Boland Rebuttal Ex. 2-A); Ex. 19 (Boland Rebuttal Ex. 2-B).

---

[2] Truist's reliance on *Wenske v. Blue Bell Creameries, Inc.* is misplaced. That case held that a principal could not be vicariously liable for an agent's non-tortious breach of contract under Delaware law. 2018 WL 5994971, at *3 (Del. Ch. 2018). First, Delaware law does not apply. Second, Plaintiffs are asserting *principal liability*, not vicarious liability. Both New York and Delaware follow traditional agency theory for claims of principal liability for breach of contract. *See* Restatement (Third) of Agency § 6.03 (2006).

[3] Truist's claim that it requested a general release in relation to a cost-sharing proposal and not Plaintiffs' demand to sue has no evidentiary basis and is illogical. If true, Truist could have simply sued Virgo, as directed, without regard to any cost-sharing proposal.

[4] That Emigrant gave PMB a limited release is irrelevant. PMB had no obligation or standing to sue Virgo for breach of the Guaranty because it was not the administrative agent.

Respectfully submitted,

*/s/ Corey Worcester*
Corey Worcester